**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **CHAPTER 11** |
| **TERI G. GALARDI,** | ) | **CASE NO. 22-50035-JPS** |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| **JACK E. GALARDI, JR. AND** | ) | |
| **EMELITA P. SY, as the TRUSTEE of the** | ) | |
| **JACK E. GALARDI, JR. SUB-TRUST,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ADVERSARY PROCEEDING** |
| | ) | **NO.** |
| **TERI G. GALARDI,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**COMPLAINT FOR A DETERMINATION THAT DEBT IS NOT**
**DISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(a)(6), § 523(a)(4), and § 523(a)(2)(A)**

COME NOW, Plaintiffs Jack E. Galardi, Jr. ("Jack") and Emelita P. Sy, as the Trustee of

the Jack E. Galardi, Jr. Sub-Trust (the "JGJ Subtrust")(collectively, "Plaintiffs") and file this

Complaint alleging that the debts owed to JGJ Subtrust by Debtor Teri G. Galardi ("Teri" or

"Debtor") are not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), § 523(a)(4), and § 523(a)(6).

**THE PARTIES**

1.

Plaintiff JGJ Subtrust is a contractual trust formed in the State of Nevada and is governed

by the laws of the State of Nevada.

2.

Plaintiff Jack E. Galardi, Jr. is the sole beneficiary of the JGJ Subtrust and is a resident of the State of Nevada.

3.

Plaintiff Emelita P. Sy, as the Trustee of the Jack E. Galardi, Jr. Sub-Trust is a resident of the State of Nevada.

4.

Debtor and Defendant Teri G. Galardi is the debtor in this Chapter 11 bankruptcy case and an individual who is resides in the State of Georgia.

## JURISDICTION AND VENUE

**5.**

On January 12, 2022 (the "Petition Date"), Teri filed a petition seeking relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code").

6.

Plaintiffs commenced this adversary proceeding in accordance with Federal Rules of Bankruptcy Procedure 7001, et seq. (the "Bankruptcy Rules").

7.

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157. The matters alleged in this Complaint constitute core proceedings within the meaning of 28 U.S.C. § 157(b).

8.

The Middle District of Georgia is the proper venue for this action pursuant to 28 U.S.C. § 1409(a) as this District is the one in which Debtor's bankruptcy case is pending.

## **THE JGJ SUBTRUST CLAIMS**

9.

Teri scheduled a debt owing to the JGJ Subtrust in her schedules in the amount of $1,688,742.00 as a contingent unsecured claim.

The JGJ Subtrust filed two proofs of claim in Teri's bankruptcy case. Proof Claim No. 112-1 in the amount of $843,509.20 for the outstanding mortgage on the Residence (as defined below) that Teri agreed to assume and pay. Proof Claim No. 113-1 in the amount of $1,053,191.20 for the amounts due and owing under the Teri Note (as defined below).

## **FACTUAL BACKGROUND**

Formation of the JGJ Subtrust

10.

Teri and Jack are siblings whose father, Jack E. Galardi ("Mr. Galardi"), passed away on December 1, 2012.

11.

Prior to his death, Mr. Galardi created a revocable living trust on November 1, 2006 by which he created the JEG Family Trust. Mr. Galardi was the Trustor and the Trustee of the JEG Family Trust.

12.

On August 16, 2012, he executed The Total Amendment and Restatement of the JEG Family Trust Originally Dated November 1, 2006 (the "Family Trust"). A true and correct copy of the Family Trust is attached hereto as Exhibit A.

3

13.

When Mr. Galardi passed away on December 1, 2012, he left a taxable estate of approximately $50,000,000. Under the terms of Mr. Galardi's will dated August 16, 2012 (the "Will"). Teri was named the personal representative in the Will. A final discharge of the of Mr. Galardi's estate was granted in the Probate Court of Clark County, Nevada (the "Probate Court") on June 25, 2014.

14.

The Family Trust provides in Article 7.1 that Teri was serve as the successor trustee of the JEG Family Trust upon the death of Mr. Galardi and of all the subtrusts created under the JEG Family Trust.

15.

Article 5.3 of the Family Trust provides that upon Mr. Galardi's death, as the successor trustee of the JEG Family Trust, she shall divide the remaining JEG Family Trust estate into two shares – the Teri Galardi Sub-Trust (the "Teri Sub-Trust") and the Jack Galardi, Jr. Sub-Trust.

16.

Article 5.3 also provides that seventy-five percent (75%) of the remaining JEG Family Trust estate shall be distributed to Teri "outright and free of trust."

17.

Article 5.3 also provides that twenty-five percent (25%) of the remaining JEG Family Trust estate shall be distributed to the JGJ Subtrust and for so long as Jack "shall live" his share shall be retained in the JGJ Subtrust and the net income and principal from the JGJ Subtrust to be distributed to him "as is necessary, in the discretion of the Trustee, for the support, comfort, well being, education or health needs of the beneficiary."

18.

Teri was named the subtrustee for the JGJ Subtrust and remained the trustee until she was removed by Stipulation and Order Re: Petition for Removal of Teri Galardi, Successor Trustee (the "Removal Order"). A true and correct copy of the Removal Order is attached hereto as Exhibit B.

19.

Emelita P. Sy ("Ms. Sy") was named the successor trustee of the JGJ Subtrust on September 27, 2019.

20.

Jack is the sole beneficiary of the JGJ Subtrust.

21.

Teri is the sole beneficiary of the remaining seventy-five percent (75%) of the JGJ Family Trust, which was the Teri Sub-Trust.

22.

Teri filed Form 706 in the Probate Court. Form 706 stated that "twenty-five percent (25%) of the remaining Trust estate shall be distributed to the Jack Galardi, Jr. Sub-Trust."

23.

Form 706 and the Family Trust also state that the remaining seventy-five percent (75%) of the Trust shall be distributed to Teri Galardi Sub-Trust (the "Teri Subtrust").

24.

All duties and power given to Teri under the Family Trust to fund the JGJ Subtrust were cloaked specifically in her fiduciary duty to the subtrust and to jack as the beneficiary.

25.

Article 9.1(s) of the Family Trust expressly states that Teri's powers are "subject always to the discharge of [her] fiduciary obligations. . .."

Teri's Funding of the JGJ Subtrust

26.

At the time of funding the two subtrusts, Form 706 indicated that the JGJ Subtrust distribution was to be $8,630,635 after deduction of federal estate taxes. In 2015, the Family Trust's general ledger indicated that the net value of the assets funding the JGJ Subtrust was $6,693,388.60.

27.

To bridge this gap in value and to fully fund the JGJ Subtrust as required under the Family Trust, Teri as the trustee of her subtrust, executed an unsecured promissory note in favor of JGJ Subtrust guaranteed by Teri individually in the amount of $1,688,742. Under the terms of this unsecured note, the Teri Subtrust was to make monthly payments to the JGJ Subtrust (the "Teri Note").

28.

Teri also placed Mr. Galardi's residence located in Las Vegas, Nevada into the JGJ Subtrust which had a value of $2,000,000 and contents with a value of $85,047.00 and a secured mortgage of $1,330,451 on the residence (the "Residence"). Again, to bridge the gap in value and to fund the JGJ Subtrust to the full twenty-five percent (25%) of its value as required under the Family Trust, Teri individually assumed the mortgage debt while paying the mortgage payments. Jack has always lived in and continues to live in the Residence.

29.

The remaining assets placed into the JGJ SubTrust were:

(a)      A $400,000 mortgage note dated September 16, 2011. Upon information and belief, the maker of this note, James Dent, currently is in a Chapter bankruptcy case.

(b)      A house and lot located at Navarro Isle, Ft. Lauderdale, Florida with a value of $4,200,000 as of December 1, 2012 (the "Ft. Lauderdale Property"). The Ft. Lauderdale Property was subject to a mortgage identified on Form 706 in the amount of $3,411,325. Teri sold this property on October 22, 2015 for a loss of $1,243,346.63 to the JGJ Subtrust.

(c)      A commercial property located at 211 New Goff Mountain Road, Cross Lanes, West Virginia that was valued at $650,000 on Form 706 and the 2015 General Ledger (the "West Virginia Property"). The West Virginia Property was rented as of December 1, 2015, but the tenant vacated. A new lease was entered into on July 12, 2016 which named the lessor as the JEG Trust, not the JGJ Subtrust (the "West Virginia Lease"). Under the terms of this lease, the tenant had the option at any time to purchase the West Virginia Property for $700,000.00 less all the rental payments the tenant had paid up to the date it exercised the option to purchase the property. Teri sold this West Virginia Property.

(d)      Five parcels of non-income producing raw land:

(i)      20 acres in Moapa Valley, Clark County, Nevada listed on Form 706 with a value of $20,000. This property was not titled to JGJ Subtrust until 2017.

(ii)      2 acres in Moapa Valley, Clark County, Nevada along with another acre nearby listed on Form 706. This property was not titled to JGJ Subtrust until 2017.

(iii)    Vacant land located at 6220 E. Adamo Drive, Tampa, Florida and ownership was not assigned to the JGJ Subtrust. Upon and information and belief, this property was sold in 2017 for the sales price of $43,778.49.

(iv)    Vacant land located at 15th Street, Marathon, Florida with a value of $43,000 on Form 706. This property appears to have been sold in 2015, but neither the property nor the sales proceeds was recorded on the 2015 General Ledger.

(v)    Vacant land located at 425 Industrial Blvd, McDonough, Georgia valued at $440,000 for a sales price of $400,000 in 2017, which generated a loss to the JGJ Subtrust of $41,055.57.

Teri's Seventy-Five Percent (75%) share of the JGJ Family Trust

30.

Under the terms of the Family Trust, Teri can distribute her seventy-five percent (75%) share of the Galardi Family Trust assets without restraint.

31.

Teri elected not to fund the JGJ Subtrust with any income producing businesses held in the Galardi Family Trust. A true and correct copy of the detailed list of the assets held by the Galardi Family Trust is attached hereto as Exhibit C.

32.

Upon information and belief, Teri and her husband receive income from these businesses.

33.

Teri contends that she could not fund the JGJ Subtrust with income producing assets given the nature of those assets.

34.

Instead, Teri as the trustee of the JGJ Subtrust made the decision to commingle her personal assets with those of the JGJ Subtrust by executing an unsecured Promissory Note in the face amount of $1,688,742.00 dated November 7, 2014 from the Teri Subtrust and guaranteed by Teri individually (the "Teri Note"). A true and correct copy of the Teri Note is attached hereto as Exhibit D.

35.

Teri mismanaged the allocation of assets into the JGJ Subtrust by electing to fund it with personal debt and not assets from the Galardi Family Trust.

36.

Teri had access to assets held by the Galardi Family Trust to fully fund Jack's subtrust without violating her fiduciary duties to the JGJ Subtrust and to Jack as the sole beneficiary.

37.

Teri made these decisions with a willful and conscious disregard of her fiduciary duties. Not only did Teri in her role as the JGJ Subtrust trustee deliberately choose to benefit herself and injure the subtrust and Jack, she also consciously disregarded the substantial and unjustifiable risk that her conduct would violate her fiduciary duties and harm the subtrust and Jack.

Teri's Fiduciary Duties as the Trustee of the JGJ Subtrust

38.

As the trustee of the JGJ Subtrust, Teri had a fiduciary duty to the subtrust and to Jack as the sole beneficiary.

9

39.

The Family Trust expressly states that each and every duty given to Teri under the Family Trust and all the discretionary power given to Teri under the Family Trust is "subject always to the discharge of his fiduciary obligations."

40.

The Family Trust requires Teri to give an accounting at the request of Jack. Family Trust § 12.2.

41.

A cardinal principle of fiduciary law is that a fiduciary cannot use her position to benefit herself. Teri had a duty to not self-deal.

42.

Teri had a duty to avoid conflicts of interest with the JGJ Subtrust and Jack as the sole beneficiary.

43.

Teri had a duty of loyalty to the JGJ Subtrust and Jack as the sole beneficiary.

44.

Teri had a duty to act in the best interests of Jack as the sole beneficiary.

45.

Teri had a duty of impartiality to the JGJ Subtrust and Jack as the sole beneficiary.

46.

Teri had a duty to not comingle her personal property with the JGJ Subtrust's property.

47.

Teri had a duty to act for and to give advice for the benefit of the JGJ Subtrust and Jack as

the sole beneficiary.

48.

Teri breached each of fiduciary duties as described in paragraphs 25-38.

Teri's Assertions Regarding Jack

49.

Teri has asserted that Jack has Asperger's syndrome and lacks the kinds of life skills that

would permit him to care for and make decisions for himself.

50.

Teri also has asserted that Jack cannot manage money and has not demonstrated any ability

to make a living for himself.

51.

Teri's intentional mismanagement of the JGJ Subtrust and failure to properly and fully

fund it given her opinions and knowledge of Jack are deliberate and malicious and certain to cause

injury to Jack.

The Nevada State Court Action

52.

In 2018, Jack became aware of Teri's breach of her fiduciary duties to the JGJ Subtrust and

to Jack as its sole beneficiary.

53.

On September 19, 2018, Jack filed in the District Court, Clark County, Nevada a Petition to Allow this Court to Take Jurisdiction Over the Trust; and Request for Removal of Named Successor Trustee (the "Petition") styled as In the Matter of the JEG Trust – Jack Galardi Jr. Sub-Trust, Case No. P-18-096792-T (the "Nevada State Court Action"). A true and correct copy of the Petition is attached hereto as Exhibit E.

54.

The Petition asks the Nevada State Court to take jurisdiction over the trust in rem pursuant to Nevada Revised Statutes § 164.010 and § 164.015 and to remove Teri as the trustee of the JGJ Subtrust based upon Teri's failure to perform her duties as the trustee of the JGJ Subtrust.

55.

On November 2, 2018, the Nevada State Court held a hearing on the Petition and on December 10, 2018 entered an Order Granting Petition (In Part) to Allow this Court to Take Jurisdiction Over the Trust and Confirmation of Successor Trustee, Teri Gale Galardi (the "Accounting Order"). A true and correct copy of the Accounting Order is attached hereto as Exhibit F.

56.

The Accounting Order required Teri to provide an accounting of the funding of the assets to the JGJ Subtrust, "which would include all activities from the date of death until transferred to the sub-trust; identifying any assets that have been separated from the JEG Trust." Teri was required to provide the accounting on or before December 2, 2018.

57.

Upon information and belief, Teri failed to provide the full accounting ordered by the Court.

58.

On September 27, 2019, in accordance with the Removal Order, Teri resigned and the Court removed her as the trustee of the JEG Subrust. Ms. Sy replaced Teri as the trustee of the JGJ Subtrust.

59.

Further, Jack waived his right to demand that Ms. Sy audit or investigate the accounts or administration of Teri as stated in Article 7.3 of the JGJ Subtrust.

60.

Jack, however, did not waive his individual right as a beneficiary to audit or investigate the accounts or administration of Teri.

61.

In the Removal Order, the court expressly stated that it retained jurisdiction over the JGJ Subtrust "as well as over Teri Gale Galardi for any actions taken by her when acting as Successor Trustee."

62.

On January 12, 2021, in the Nevada State Court Action Jack filed a Petition for Recovery of Assets from Teri Galardi, Co-Beneficiary of the JEG Trust (the "JGJ Trust Petition"). This JGJ Trust Petition was stayed given Teri's filing of this bankruptcy case.

## COUNT I
## CLAIM FOR RELIEF UNDER 11 U.S.C. § 523(a)(4)

63.

Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 62 of this
Complaint.

64.

Section 523(a)(4) provides a debtor shall not discharge a debt "for fraud or defalcation
while acting in a fiduciary capacity, embezzlement, or larceny; . . .." 11 U.S.C. § 523(a)(4).

65.

Defalcation includes intentional conduct that the fiduciary knows is improper and reckless
conduct. *Bullock v. Bank Champaign, N.A.*, 569 U.S. 267, 273 (2013). "Where actual knowledge
of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary 'consciously
disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn
out to violate a fiduciary duty." *Id.* The risk considers the nature and purpose of the conduct and
the circumstances known to the actor. *Id.*

66.

During her term as the trustee of the JGJ Subtrust, Galardi was a fiduciary under §
523(a)(4).

67.

Teri was the trustee of an express trust created by a contract, which was the Family Trust
requiring the creation of JGJ Subtrust with Teri designated as the trustee. She was in a position of
trust over the JGJ Subtrust assets with Jack as the beneficiary.

68.

Teri, through her counsel in the Nevada State Court Action, stated that Jack "has Asperger's Syndrome, a subset of autism spectrum disorder and lacks the kind of life skills that would permit him to care for and make decisions for himself." She also stated that "Jack cannot manage money and has demonstrated no ability to make a living for himself."

69.

Teri exercised complete and sole control over the assets in the JGJ Subrust at all times.

70.

As the trustee of JGJ Subtrust, Teri  owed the following fiduciary duties to the trust and to Jack as the sole beneficiary: (1) to act solely in the best interests of the Subtrust and Jack; (2) to not commingle the subtrust property with her own property; (3) to not self-deal; (4) to act impartially; (5) to avoid conflicts of interest; (6) to be loyal to the subtrust and Jack: and (7) to act for the benefit of the subtrust and Jack.

71.

Teri failed to fulfill any of these fiduciary duties while she was the trustee for JGJ Subtrust from its formation in 2014 until she was removed in 2019.

72.

During her term as the trustee, Teri committed defalcation.

73.

Teri failed to properly fund the JGJ Subtrust in accordance with the terms of the Family Trust. Teri was and is the sole beneficiary of the Teri Subtrust as the Family Trust, which provided she was to have a seventy-five percent (75%) share of the remaining Galardi Family Trust assets.

Teri also was directed to fund the JGJ Subtrust with twenty-five percent (25%) of assets from the Galardi Family Trust assets. Teri did not fund the JGJ Subtrust with Galardi Family Trust assets.

74.

Teri on behalf of the Teri Subtrust executed the Teri Note in favor of JGJ Subtrust and guaranteed that Teri Note to equalize the division of assets required under the Family Trust.

75.

Immediately upon becoming the successor trustee of the Galardi Family Trust, Teri began consciously disregarding her fiduciary duties under the Family Trust. She made decisions on how to fund the two subtrusts with substantial and unjustifiable risk that her decisions would violate her fiduciary duties to the JGJ Subtrust and Jack. Whether her conduct and decisions were intentional or reckless, Teri committed defalcation while acting as a fiduciary capacity.

76.

Teri failed to make mandatory monthly payments under the Teri Note from December 1, 2014 - April 2017.

77.

Teri allocated assets to JGJ Subtrust that were encumbered by secured debt that she purportedly assigned to herself personally to pay. Particularly, Teri personally assumed the loan on the Residence in which Jack resides but failed to remove this debt from JGJ Subtrust balance sheet. Teri also failed to disclose or properly account for in the accounting records for JGJ Subtrust the secured loans encumbering the Residence.

78.

Teri took distributions during the administration of the Galardi Family Trust after Mr. Galardi's death and prior to the division of assets.

79.

Teri failed to appropriately allocate estate taxes in accordance with NRS 150.310.

80.

Teri's breach of her fiduciary duties to the JGJ Subtrust and Jack constitute defalcation and Plaintiffs request entry of judgment in their favor denying Teri's discharge of the debt evidenced by the Teri Note and the pursuant to § 523(a)(4).

## COUNT II
## CLAIM FOR RELIEF UNDER 11 U.S.C. § 523(a)(6)

81.

Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 62 of this Complaint.

82.

Section 523(a)(6) provides a debtor shall not discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity; . . .." 11 U.S.C. § 523(a)(6).

83.

A debtor is "responsible for a willful injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Kane v. Stewart Tilghman (In re Kane),* 755 F.3d 1285 (11th Cir. 2014).

84.

Teri knew she was not fully funding the JGJ Subtrust with assets from the Galardi Family Trust. She issued the unsecured Teri Note to cover the funding shortfall, which was a commingling of her personal property as the trustee with the property of the JGJ Subtrust. This action was a distinct violation of her fiduciary duties owed to the JGJ Subtrust and Jack.

85.

The Family Trust is clear that Teri was required to allocate twenty-five percent (25%) of the Galardi Family Trust assets to fund JGJ Subtrust. A promissory note from Teri was and is not an asset of the Galardi Family Trust.

86.

Teri's deliberate actions in issuing the Teri Note to JGJ Subtrust, failing to unencumber the Residence, commingling her personal assets with JGJ Subtrust, selling the Ft. Lauderdale property at a loss, not providing an accounting for JGJ Subtrust, not providing an accounting for the funding of JGJ Subtrust, and not properly allocating estate taxes were intentionally wrongful and without any just cause which have harmed JGJ Subtrust and Jack.

87.

With Teri's knowledge that her father intended for Jack to cover his living expenses from the JGJ Subtrust, her decisions to fund JGJ Subtrust with non-Galardi Family Trust assets and especially with a note from herself were intentional with the purpose of causing injury to Jack or which she should have been substantially certain would cause injury to him.

88.

Teri's breach of her fiduciary duties to the JGJ Subtrust and Jack caused willful and malicious injury to Plaintiffs which has resulted in a loss of at least $2,000,000 and they request entry of judgment in their favor denying Teri's discharge of the debt evidenced by the Teri Note and the pursuant to § 523(a)(6).

## COUNT III
## CLAIM FOR RELIEF UNDER 11 U.S.C. § 523(a)(2)(A)

**89.**

Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 62 of this Complaint.

90.

Section 523(a)(2) provides a debtor shall not discharge a debt "for money, property, services, . . ., to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, . . .." 11 U.S.C. § 523(a)(2).

91.

A plaintiff must show that the debtor made a false representation to deceive the creditor; the creditor relied on the misrepresentation; the reliance was justified; and the creditor sustained a loss as a result of the misrepresentation. *SEC v. Bilzerian (In re Bilzerian),* 153 F. 3d 1278, 1281 (11th Cir. 1998).

92.

Teri made a false representation to Plaintiffs when she stated that she fully funded the JGJ Subtrust. Through her actions and statements, Teri indicated that she had funded the JGJ Subtrust with assets from the Galardi Family Trust. When Jack filed the Nevada State Court Action in 2018, he discovered that Teri had breached her fiduciary duty and had not fully funded the subtrust, had sold subtrust property at a loss, had funded the substrust with encumbered property, and had taken distributions from the subtrust for her personal use.

94.

Teri never intended to provide assets from the Galardi Family Trust to fund the JGJ Subtrust as required under the Family Trust. Instead, she issued the Teri Note to the JGJ Subtrust and used the income from the Galardi Family Trust income producing assets that she kept for her subtrust to pay Teri Note payments as she pleased.

95.

Teri misled her brother into believing she was providing for him as her father demanded in the Family Trust when all the while she is deceiving and misleading him to his detriment as the sole beneficiary of the JGJ Subtrust.

96.

Plaintiffs relied on this misrepresentation for three years as evidenced by not questioning and trusting Teri's decisions. Since Teri was the designated trustee for the JGJ Subtrust, Jack and the subtrust were justified in relying on Teri's misrepresentations. As a result of this reliance, Plaintiffs suffered a loss of at least $2,000,000.

97.

Teri's fraud has resulted in a loss of at least $2,000,000 to Plaintiffs and they request entry of judgment in their favor denying Teri's discharge of the debt evidenced by the Teri Note and the pursuant to § 523(a)(2)(A).

WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment in their favor on Counts I, II, and III and declare that JGJ Subtrust Claims are not dischargeable pursuant to 11 U.S.C. § 523(a)(4), § 523(a)(6), and § 523(a)(2)(A); and grant such other relief as the Court deems just and property.

This 25th day of April 2022.

Respectfully submitted,

/s/ Will Geer
Will Geer
Georgia Bar No. 940493
Geer Law Group, LLC
50 Hurt Plaza, SE
Suite 1150
Atlanta, Georgia 30303
T: 678-587-8740
F: 678-587-8740
wgeer@geerlawgroup.com
**Attorney for Jack E. Galardi, Jr.**

/s/ Garrett Nail
Will Geer
Georgia Bar No. 997924
Portnoy, Garner & Nail, LLC
3350 Riverwood Parkway, Suite 460
Atlanta, Georgia 30339
Telephone: (404) 688-8800
Facsimile: (678) 214-2313
Email:  gnail@pgnlaw.com
**Attorney for JGJ Subtrust**