**EXHIBIT**

**A**

1  PET
   SHIRLEY A. DERKE, ESQ.
2  Nevada Bar No. 2686
   627 S. Seventh St.
3  Las Vegas, NV 89101
   702-386-6800
4  shirley@Derke.lvcoxmail.com
   Attorney for Petitioner
5
                    DISTRICT COURT
6
                CLARK COUNTY, NEVADA
7  In the Matter of the            )            * * *
                                   )
8  JEG TRUST - JACK GALARDI JR.    )   Case No. P  P-18-096792-T
   SUB-TRUST                       )   Dept. PC1
9  _____)   DATE:
                                       TIME: 9:30 a.m.

10 **PETITION TO ALLOW THIS COURT TO TAKE JURISDICTION OVER THE TRUST;**
   **AND REQUEST FOR REMOVAL OF NAMED SUCCESSOR TRUSTEE**
11
        Comes now, the Petitioner, JACK GALARDI, JR., sole beneficiary of the JEG TRUST -
12
   JACK GALARDI JR. SUB-TRUST, by and through his attorney, Shirley A. Derke, Esq., hereby
13
   moves this court for an order taking jurisdiction of the trust in rem and for removal of Terri Gale
14
   Galardi, named Successor Trustee by alleging as follows:
15
                            **GENERAL FACTS**
16
        1. JACK E. GALARDI, also known as Jack Harold Edward Galardi, created a revocable
17
   living trust on November 1, 2006 and this trust was totally amended and restated on August 16,
18
   2012. At the time of restatement, Jack E. Galardi declared he was a resident of Clark County,
19
   Nevada.   The Trustor was the Trustee of this trust. A copy of this trust is provided in camera for
20
   the court.
21
        2. JACK E. GALARDI passed away on December 1, 2012, leaving a taxable estate of
22
   more than $50,000,000.
23
        3. TERI GALE GALARDI, the named Personal Representative under JACK E.
24
   GALARDI's will dated August 16, 2012 caused probate proceedings to begin in Clark County,
25
   Nevada under case No. P-13-076839-E and a final discharge was granted by this court on June
26
   25, 2014.
27
                            Page 1 of 7
28

1    4. TERI GALE GALARDI also caused the filing of the Decedent's form 706, a copy of

2    which is provided in camera for the court.

3    5. The Decedent's form 706 indicates and Section 5.3(b) of the amended and restated

4    trust states as follows:

5    (b) THE JACK GALARDI, JR. SUB-TRUST: Twenty-five percent (25%)

6    of the remaining Trust estate shall be distributed to the JACK GALARDI, JR.

7    SUB-TRUST

8    6. When attempting to fund twenty five percent of the remaining trust estate, the

9    Successor Trustee, TERI GALE GALARDI, found that the many of the assets of the trust could

10    not be held by the JACK GALARDI, JR. SUB-TRUST due to their restricted license

11    requirements. As a result, TERI GALE GALARDI was unable to use any of the business

12    interests in the funding of this trust.

13    7. From documents provided by TERI GALE GALARDI, Trustee of the JACK

14    GALARDI, JR. SUB-TRUST, it appears that the trust was funded approximately January 2015.

15    Based upon the 2015 General Ledger, the net assets recorded were $6,693,388.60 and the

16    decedent's form 706 indicates that JACK GALARDI, JR.'S distribution was to be $8,630,635

17    (which was after deducting apportioned federal estate taxes in the amount of $4,146,726).

18    8. As stated in Paragraph 6 above, due to the sensitive licensing of many of the assets of

19    the estate, TERI GALE GALARDI, the remaining beneficiary of the estate took these assets that

20    required licensing, giving the JACK GALARDI, JR. SUB-TRUST an unsecured promissory note

21    in the principal amount of $1,688,742.00, to make up the difference. This note is based upon a

22    30-year amortization with an annual interest rate of 3.32%. See Exhibit A attached hereto.

23    9. The interest rate for a 30-year secured mortgage loan for the period when this note was

24    executed was approximately 4% as shown by HSH.COM and attached hereto as Exhibit B.

25    Therefore, the interest rate appears to be below market.

26    10. TERI GALE GALARDI has made sporadic payments in various amounts since

27    January 2015, and in fact her principal balance has increased at times when the payments failed

28    Page 2 of 7

1  to fully cover the interest due at the time the payment was received. There have been checks

2  written to TERI GALE GALARDI from the JACK E. GALARDI, JR. SUB-TRUST, increasing

3  her principal balance, as follows:

    a. 1/29/16 taken out of the trust account by Debit            $1,500.00
    b. 7/8/16 taken out of the trust account by Debit - was apparently covered
       three days later with a deposit in the same amount     10,000.00
    c. 7/19/16 taken out of the trust account by Debit - was apparently
       covered 3 days later with a deposit from Goodtimes Bar    6,000.00
    d. 8/30/16 taken out of the trust account by Debit          2,120.00
    e. 9/2/16 taken out of the trust account by Debit           5,954.74
    f. 9/16/16 taken out of the trust account by Debit          6,331.59
    g. 12/16/16 taken out of the trust account by Debit        2,300.00
    h. 12/23/16 taken out of the trust account by Debit - was apparently
       covered 6 days later with a deposit          7,900.00

10      11. TERI GALE GALARDI has made at least, if not more, than required under her note -

11  $7,425.00 monthly or $89,100.00 annually. The sporadic payments, both increasing and

12  decreasing the principal balance creates an accounting nightmare for the sub-trust. It also

13  appears that the Trustee is using the trust bank account as her personal overdraft/temporary

14  funds.

15      12. The JACK GALARDI, JR. SUB-TRUST was also funded with a $400,000 mortgage

16  note given to the Decedent on September 16, 2011. This note provides for monthly interest

17  payments at the annual rate of 5.25%. Petitioner has been informed and believes that the makers

18  of this note are currently in bankruptcy and Petitioner has requested that TERI GALE GALARDI

19  provide information regarding the underlying security as well as the creditor claim filed in the

20  bankruptcy. TERI GALE GALARDI has failed to provide adequate information to determine if

21  the investment is secure.

22      13. The JACK GALARDI, JR. SUB-TRUST was also funded with a residence and lot

23  located at Navarro Isle, Ft. Lauderdale, FL with a date of death value of $4,200,000 per Form 706

24  (Schedule A, item 14) and noted in the 2015 general ledger at a value of $4,275,000. This

25  property was subject to a mortgage, listed on Schedule K, item 13 of the Form 706 in the amount

26  of $3,411,325. The information from the form 706 is confusing on this note as well. It is unclear

27  from the financial records whether this property generated any income during the time the trust

28

1    held title, but the 2015 general ledger reflects that the trust had a loss of $1,243,346.63 when

2    disposing of the property on 10/22/2015. Form 706 is also confusing (see Schedule K - item 12).

3    It lists this loan amount as a security against another property - Schedule G, Item 3. I believe that

4    this was a mistake on the 706 as this property is vacant land in Floville, GA valued at $101,000.

5        14. The JACK GALARDI, JR. SUB-TRUST was also funded with commercial property

6    located at 211 New Goff Mountain Rd., Cross Lanes, WV, which was valued at $650,000 on

7    Form 706 (Schedule A, Item 34) and also on the general ledger. This property was rented at the

8    time of the Decedent's death, pursuant to verbal information received from DANIEL GEIGER,

9    CPA for the Trust and named Successor Co-Trustee after TERRI GALE GALARDI, The

10   existing tenant was unwilling to purchase the property at the appraised value, and therefore

11   decided to vacate (unknown as to the date the tenant vacated). A new lease was entered into on

12   July 12, 2016. See Exhibit C for the 7/15/16 lease. There are problems with this lease as

13   follows:

14       a. First of all, the lessor on the lease is the JEG Trust - not the JACK GALARDI, JR.

15   SUB-TRUST.

16       b. The terms of the lease are questionable, to say the least. The tenant has an option to

17   purchase the property that states as follows:

18           Tenant, upon satisfactory performance of this lease or *at any time within*
     *the term of this lease or any renewal period, shall have the option to purchase the*
19   *real property described herein for a purchase price of $700,000.00 less all*
     *applied payments to date, as described,* provided that the Tenant timely executes
20   the option to purchase and is not in default of the Lease Agreement.

21       With this broad period allowing the Tenant to exercise their option to purchase right up

22   until the end of the lease including any extensions thereto, the tenant may use *all rental payments*

23   *against the $700,000.00 purchase price*, as well as freezing the purchase price against any

24   inflation on the property value and avoiding any interest on the principal paid over time!

25       15. The JACK GALARDI, JR. SUB-TRUST was also funded with raw land that has not

26   been income producing since the Decedent's death as follows:

27       a. 20 acres in Moapa Valley, Clark County, Nevada APN 071-18-601-015 listed on the

28

1  Form 706 as $20,000 (Schedule A, item 4). It should be noted that this property was not retitled

2  into the JACK GALARDI, JR. SUB-TRUST until 2017. The annual real property taxes on this

3  parcel are $835.71 and the Clark County Assessor's taxable value is stated as $94,500. There

4  have been 2 acre parcels next to this property that have sold for $14,000 each in 2006. The

5  Trustee has made no moves to attempt to liquidate this property.

6      b. 2 acres in Moapa Valley, Clark County, NV APN 041-25-25-301-012 along with a 1

7  acre parcel near it - APN 041-25-301-013. (Schedule A, item 5). It should be noted that this

8  property was not retitled into the JACK GALARDI, JR. SUB-TRUST until 2017. The annual

9  real property taxes on this parcels are $571.99 and the Clark County Assessor's taxable values

10 are a total of $66,551. There were two parcels totaling 5 acres adjacent to both these parcels

11 (APN 041-25-301-028 and 041-25-301-029) that sold for $570,000 in 2006.

12     c. Vacant land located at 6220 E. Adamo Dr., Tampa, FL, APN 81-96-15-000-0 that was

13 represented as titled in the name of Galardi Rentals, LLC. TERI GALE GALARDI presented

14 documents showing that the Decedent assigned all membership interest in Galardi Rentals from

15 himself personally to his 2006 trust on February 21, 2011. See Exhibit D attached hereto. There

16 is no indication that the trust assigned the ownership interest to JACK GALARDI, JR. SUB-

17 TRUST. Also, there does not appear to be any indication of income being earned and passed

18 through this entity to JACK GALARDI, JR. and therefore it is assumed that this also is non-

19 income producing. It is also interesting to note that this property was listed on Schedule A (Item

20 30) rather than on Schedule B - Stocks and Bonds as an LLC ownership. This property appeared

21 to be sold in 2017 for the sales price of $43,778.49 according to the 2017 general ledger.

22     d. DANIEL GEIGER, CPA verbally informed Petitioner that vacant property located on

23 15th St., Marathon, Florida was sold in 2015 - but did not provide any supporting documents on

24 the sale to indicate if there was a profit from the Form 706 value of $43,000 (Schedule A 17).

25 This property was never listed on 2015 the general ledger nor the sales proceeds.

26     e. The Trust sold vacant property located on 425 Industrial Blvd., McDonough, GA

27 (Schedule A Item 24 on form 706) valued at $440,000.00 for a sales price of $400,000 in 2017.

28

1    The 2017 general ledger indicates that the property was sold at a loss of $41,055.57.

2       16. The names, ages, relationships and residences of the beneficiaries, trustee and

3    Successor Trustees of the trust, so far as known to the Petitioner are as follows:

4    Jack E. Galardi, Jr., sole beneficiary
C/O Shirley A. Derke, Esq.
5    627 S. Seventh St.
Las Vegas, NV 89101

6

Teri Gale Galardi, Trustee of the JACK E. GALARDI, JR. SUB-TRUST
7    C/O Greg Smith, Esq.
Smith & Shapiro, PLLC
8    2520 St. Rose Parkway #220
Henderson, NV 89074

9

Daniel Geiger, named Successor Co-Trustee of the JACK E. GALARDI, JR. SUB-TRUST
10    2850 S. Jones Blvd, Suite 2
Las Vegas, NV 89146

11

Emelita P. Sy, named Successor Co-Trustee of the JACK E. GALARDI, JR. SUB-TRUST
12    2121 S. Highland Dr.
Las Vegas, NV 89102

13       WHEREFORE, Petitioner prays that the court finds the following:

14       A. That this court take jurisdiction over the trust in rem pursuant to NRS 164.010 and

15    164.015;

16       B. That this court find that TERI GALE GALARDI has failed to perform her duties as

17    trustee of this trust and therefore be removed;

18       C. That this court confirm DANIEL GEIGER and EMELITA P. SY as Co-Trustees of

19    the JACK E. GALARDI, JR. SUB-TRUST; and

20       D. And for such other and further relief as to the Court may seem just and proper in the

21    premises.

22       DATED this 17th day of September 2018.

23

24           _Shirley Derke_

25           SHIRLEY A. DERKE, ESQ.

26

27

28                Page 6 of 7

1  STATE OF NEVADA          )
                            ) ss:
2  COUNTY OF CLARK          )

3        JACK GALARDI, JR., being first duly sworn, deposes and says:

4        That he is the Petitioner in the above entitled matter; that he has read the above and

5  foregoing Petition and knows the contents thereof, and that the same is true of his own

6  knowledge, except as to those matters therein stated on information and belief, and for those

7  matters, he believes them to be true.

8

9                                          *Jack D. Galardi*
                                           JACK GALARDI, JR.

10 SUBSCRIBED and SWORN to before me
   this 17th day of September 2018.

11

12 _____
   NOTARY PUBLIC

13

   SHIRLEY DERKE
   Notary Public State of Nevada
   No. 92-1690-1
   My Appt. Exp. Dec. 16, 2020

14 SUBMITTED BY:

15 _____
   SHIRLEY A. DERKE, ESQ.

16

17

Page 7 of 7

# "EXHIBIT A"

## PROMISSORY NOTE

$1,688,742.00

November 7, 2014
Las Vegas, Nevada

FOR VALUE RECEIVED, JEG FAMILY TRUST - TERI GALARDI SUB-TRUST ("Maker"), and TERI GALE GALARDI, individually guarantees ("Guarantor") that she promises to pay to the order of JEG FAMILY TRUST - JACK GALARDI JR. SUB-TRUST (hereinafter "Payee"), located in Las Vegas, Nevada, or at any other place that Payee of this note may designate in writing, (as it is understood by Maker, Guarantor, and Payee (the "Parties") and that Maker upon execution of this Promissory Note (or "Note") shall execute a Security Agreement to the same, the following:

1.  The principal sum of One Million Six Hundred Eighty-eight Thousand Seven Hundred Forty-two Dollars and No Cents ($1,688,742.00), as specified further below, with interest on unpaid principal at the rate of Three and Thirty-two Hundredths percent (3.32%) per annum, commencing as of the above-stated date and continuing until paid in full (hereinafter the "Promissory Note", or "Note") ; and

2.  All costs and attorneys' fees of the Payee if (a) legal counsel is engaged to assist in the collection of this note after a default hereunder, or (b) any action is brought to construe or enforce this note or any provisions hereof, or (c) the Maker becomes subject to any Chapter of the Bankruptcy Code, as amended, and the Payee, in the exercise of prudent business practice becomes a party to, participates in, is affected by, or joins in, and expends funds for attorneys' fees and costs or investigation, whether or not suit is instituted.

### Payment of Principal & Interest:

Principal and interest shall be paid as follows: The principal and interest on the principal will be payable in Three Hundred Sixty (360) equal monthly successive installments in the aggregate amount of Seven Thousand Four Hundred Twenty-five Dollars ($7,425.00). The first installment will be paid on the last day of the month, of the month subsequent to the month of the Effective Date of the Trust Allocation Schedule of the JEG Family Trust, and thereafter, Three Hundred Fifty Eight (358) equal successive monthly principal and interest installments in the aggregate amount of Seven Thousand Four Hundred Twenty-five Dollars ($7,425.00) each on the remaining balance until on the Three Hundred Sixtieth (360th) month after the month of the Effective Date, on which date the final payment of the unpaid principal and interest of Nine Hundred Eighty-five Dollars and Thirty cents ($985.30) will be due and payable Principal and interest shall be payable in lawful money of the United States of America.

**Late Payment Penalty:**

Unless Maker obtains the express written consent of Payee prior to the event, any payment not made within Ninety (90) days of due date shall give rise to a late payment penalty due from Maker to Payee equal to Five percent (5%) of the gross monthly payment due. Notwithstanding the foregoing, this section applies only to those payments made after January 1, 2015.

**Default:**

Unless the Maker obtains the express written consent of the Payee prior to the event, the following items shall constitute a Default under this Note:

1.   Should the Maker fail to make payment of any amount due under this note within One Hundred Eighty (180) days from when payment is due, or fail to perform any other obligation of Maker provided for herein,

2.   Should Maker make an assignment for the benefit of creditors, or if a petition be filed by or against Maker under the provisions of any state insolvency law or under the provisions of the Bankruptcy Code, as amended, or should Maker become subject to the provisions of any Chapter of the Bankruptcy Code,

3.   Should Maker default any obligation defined in the Agreements.

Upon any default of Maker as defined above, Payee shall be authorized to declare as immediately due and payable the then unpaid principal and to exercise any and all of the rights and remedies provided by the Nevada Commercial Code as well as all other rights and remedies either at law or in equity possessed by the Payee of this note. The whole sum of principal and accrued interest shall become immediately due at the option of the Payee.

**Guarantee:**

In the event of default, TERI GALE GALARDI, individually, hereby unconditionally guarantees as Guarantor, the principal and accrued interest owed to Payee under the terms of this Promissory Note.

**Prepayment:**

Maker shall have the right to prepay all or part of the principal of this Note without penalty.

**General Provisions:**

A.   All sums due hereunder shall be paid in lawful money of the United States of America.

B.   Interest shall be calculated on a 365 day year. In the event of prepayment, accrued interest as shown on Schedule B1 will be revised to reflect any prepayment of principal.

C.   All payments made hereunder shall first be credited against accrued and previously unpaid interest; the balance shall be credited against principal, and interest shall thereupon cease on the principal so credited.

D.   In this note, the singular shall include the plural, each gender shall include the other.

E.   Maker, for itself and its legal representatives, successors and assigns, expressly waives demand, presentment for demand, notice of nonpayment, presentment for the purpose of accelerating maturity, dishonor, notice of dishonor, protest, notice of protest, notice of maturity and diligence in collection.

F.   The section and subpart headings contained herein are for purposes of convenience of reference only and shall not affect in any way the meaning or interpretation hereof.

G.   If this Note or any installment due is not paid in full when it becomes due, Maker is in default and agrees to pay all collection costs.

H.   Maker agrees that if any legal action is necessary to enforce this Note, the prevailing party will be entitled to reasonable attorneys' fees in addition to any other relief to which that party may be entitled. This provision is applicable to the entire Note.

I.   Payee may assign its interest in the note at its sole discretion and Maker, upon notification, shall make payments pursuant to Payee's Assignee and Maker shall execute a revised Deed of Trust for the same.

Payee:      JEG FAMILY TRUST - JACK GALARDI JR. SUB-TRUST:

_____
TERI GALE GALARDI, Trustee

Maker:      JEG FAMILY TRUST - TERI GALARDI SUB-TRUST:

_____
TERI GALE GALARDI, Trustee

GUARANTOR:

_____
TERI GALE GALARDI

STATE OF NEVADA      )
                                ) ss:
COUNTY OF CLARK      )

On this _7_ day of _November_, 2014, personally appeared before me, a Notary Public, TERI GALE GALARDI, individually and as Trustee of the JEG FAMILY TRUST - TERI GALARDI SUB-TRUST and the JEG FAMILY TRUST - JACK GALARDI, JR. SUB-TRUST, who is personally known or proved to me to be the person whose name is subscribed to the above instrument and who acknowledged to me that he executed the foregoing instrument.

NOTARY PUBLIC

# "EXHIBIT B"




**We research, you save.**

Search HSH.com

Got Questions On Rates? (855) 610-2972

| Mortgage Rates | For Homebuyers | Calculators | For Homeowners | Mortgage Market Trends |

Home » Mortgage Rates » Historical Mortgage Rates by Month - 1986 to 2016

SHARE

9

f Share

G+

Tweet

in

# National Monthly Mortgage Statistics: 1986 to 2016

...d-Rate Mortgage Indicator (FRMI) averages 30-year mortgages of all sizes, including
... expanded conforming, and jumbo. The FRMI has been published as a continuous series since
...'80s. Separate statistical series for conforming and jumbo loans have long been available to
... Scroll down the page to see the FRMI's 15-year companion as well as historical data for 5/1
...ls.

September ▼    2014    ▼    To  November ▼    2014    ▼    Update

## Historical Monthly Mortgage Rates from Sep-2014 to Nov-2014

### Mortgage Rates from 4.48%

| Loan Type | State |
|---|---|
| 30 Yr. Fixed ▼ | Nevada ▼ |



loanDepot    5.250% APR    GO

Close Your Own Loan    4.481% APR    GO

Quicken Loans    5.041% APR*    GO

Ad Disclosure    more mortgage rates

### 30 Year Fixed Rate Mortgage    See Chart Data



### Related Links

» Learn About HSH's Loan Data
» Historical Mortgage Rates
» About HSH.com and HSH Associates,
  Financial Publishers

### 15 Year Fixed Rate Mortgage    See Chart Data



### 5/1 ARM    See Chart Data





https://www.hsh.com/monthly-mortgage-rates.html

1/2

# "EXHIBIT C"

Recd
5/23/18

## Commercial Real Estate Lease With Option To Purchase

This Lease Agreement (this "Lease") is dated effective as of July 15, 2016, by and between JEG Family Trust ("Landlord"), and Barn Yard BBQ, LLC ("Tenant"). The parties agree as follows:

**PREMISES.** Landlord, in consideration of the lease payments provided in this Lease, leases to Tenant a restaurant located at 211 New Goff Mountain Road, Cross Lanes, WV (the "Premises") located at 211 Goff mountain Road,, Cross Lanes, West Virginia 25606.

**LEGAL DESCRIPTION.** The legal description for the premises is: 91/100 A ROCKY FK RELOCATED STATE ROUTE 622 PT TR -A-10 AND TR B-10 CONT 138/1000A SW CROSS LANES EX 64 LAKEVIEW DRIVE DB: 2838, PAGE: 738

**TERM.** The initial lease term will begin July 15th 2016, ending two years from that date. If and only if all other provisions of this agreement are met to the satisfaction of both parties, thereafter, there will be an additional five(5) year renewal term under the same terms contained in this original lease. However, the rent shall adjust at the beginning of the first year on the five year term increasing 5%. Thereafter rent will increase scaled on the Consumer Price Index(CPI) annually each year on the remaining four years on the addition five year term. This lease with option to purchase is not to be recognized by the tenant as a long term agreement to finance the purchase of the property. Tenant must give Landlord 60 day notice to terminate or exit the Lease Purchase at the end of the initial two-year term or at the end of each extended one year renewals during the five years. The personal guarantee of annual lease payments will not expire at the end of the initial two year term and will remain on any or all extensions provided by the Landlord.

**LEASE PAYMENTS.** Tenant shall pay to Landlord monthly lease installments, for the period starting the first of the month through the last day of each month of $4,000.00, payable in advance on or before the 15th day of each month. An additional $752.00 per month will be paid by the Tenant, and will be allocated to the property taxes. The annual amount of the property tax payments will increase or decrease depending upon the annual property tax bill. Lease payments and tax payments shall be made to the Landlord at 2121 South Highland Drive, Las Vegas, Nevada 89102, which address may be changed from time to time by the Landlord. In the event the Tenant exercises the option to purchase the Landlord agrees to credit the amount of $4,000.00 from each paid monthly lease payment towards the purchase price of the property. Any differences above the $4,000.00 on the rental amount during the additional five year term will not be credited to the purchase of the property.

**SECURITY DEPOSIT.** In lieu of repairing the parking lot, Landlord shall waive the $4,000 dollars security deposit.



CRT

**POSSESSION.** Tenant shall be entitled to possession on the first day of the term of this Lease, and shall yield possession to Landlord on the last day of the term of this Lease, unless otherwise agreed by both parties in writing. At the expiration of the term, Tenant shall remove its goods and effects and peaceably yield up the Premises to Landlord in as good a condition as when delivered to Tenant, ordinary wear and tear excepted. HV/AC units, walk-in coolers and freezers, kitchen hood systems and fire suppression systems or any improvement incorporated into the structure or mechanical workings of the building shall remain on the property and will NOT be removed by the Tenant.

**USE OF PREMISES.** Tenant may use the Premises only for a restaurant/bar operation. The Premises may be used for any other legal purpose only with the prior written consent of Landlord, which shall not be unreasonably withheld. Tenant shall notify Landlord of any anticipated extended absence from the Premises not later than the first day of the extended absence.



**PROPERTY INSURANCE.** Tenant shall maintain casualty insurance on the Premises in an amount not less than $2/000,000.00. Landlord shall be named as an additional insured in such policies. Tenant shall deliver appropriate evidence to Landlord as proof that adequate insurance is in force issued by companies reasonably satisfactory to Landlord. Landlord shall receive advance written notice from the insurer prior to any termination of such insurance policies. Tenant shall also maintain any other insurance which Landlord may reasonably require for the protection of Landlord's interest in the Premises. Tenant is responsible for maintaining casualty insurance on its own property. Lapse in or failure to maintain insurance shall be grounds for immediate default with five (5) days to cure such lapse. Landlord shall be named as an additional loss payee.

**LIABILITY INSURANCE.** Tenant shall maintain liability insurance on the Premises in a total aggregate sum of at least $2,000,000.00. Tenant shall deliver appropriate evidence to Landlord as proof that adequate insurance naming Landlord as an additional insured is in force issued by companies reasonably satisfactory to Landlord. Landlord shall receive advance written notice from the insurer prior to any termination of such insurance policies. Lapse in or failure to maintain insurance shall be grounds for immediate default without time to cure.

**TAXES.** Taxes attributable to the Premises or the use of the Premises shall be allocated as follows:

REAL ESTATE TAXES. Tenant shall pay all real estate taxes and assessments for the Premises.

PERSONAL TAXES. Tenant shall pay all personal taxes and any other charges which may be levied against the Premises and which are attributable to Tenant's use of the Premises, along with all sales and/or use taxes (if any) that may be due in connection with lease payments.



**LANDLORD'S INABILITY TO SUPPLY OR DELAY IN SUPPLYING SERVICE OR REPAIR TO TENANT.** The obligation of Tenant to pay rent hereunder and to perform all other covenants shall not be excused because Landlord is unable to supply, or is delayed in supplying, any service or repair to be supplied by Landlord under the terms of this Lease, when such inability or delay shall be due to accident, or to the extensiveness of the alterations or repairs desirable or necessary to be made, or to Landlord's inability or difficulty in securing supplies or labor for the provision of such service, or to some other cause, rather than gross negligence on the part of Landlord. No diminution or abatement of rent, or other compensation, shall be claimed or allowed for inconvenience or discomfort arising from the making of repairs or improvements to the building.

**EMINENT DOMAIN.** If the whole or any part of the leased premises shall be taken by eminent domain, the term of this Lease shall terminate from the date title vests in the governmental authority. Tenant shall have no claim against Landlord for the value of any unexpired term of this Lease. No part of any award shall belong to Tenant

**DEFAULTS.** Tenant shall be in default of this Lease if Tenant fails to fulfill any lease obligation or term by which Tenant is bound with the exception of the INSURANCE REQUIERMENTS. Subject to any governing provisions of law to the contrary, if Tenant fails to cure any financial obligation within 45 days starting after written notice of such default is provided by Landlord to Tenant, Landlord may take possession of the Premises without further notice (to the extent permitted by law), and without prejudicing Landlord's rights to damages. In the alternative, Landlord may elect to cure any default and the cost of such action shall be added to Tenant's financial obligations under this Lease. Tenant shall pay all costs, damages, and expenses (including reasonable attorney fees and expenses) suffered by Landlord by reason of Tenant's defaults. All sums of money or charges required to be paid by Tenant under this Lease shall be additional rent, whether or not such sums or charges are designated as "additional rent". Should Tenant fail to maintain insurance or such insurance lapses, this shall be construed as grounds for immediate default without time to cure. The rights provided by this paragraph are cumulative in nature and are in addition to any other rights afforded by law.

**CUMULATIVE RIGHTS.** The rights of the parties under this Lease are cumulative, and shall not be construed as exclusive unless otherwise required by law.

**NON-SUFFICIENT FUNDS.** Tenant shall be charged $100.00 for each check that is returned to Landlord for lack of sufficient funds.

**REMODELING OR STRUCTURAL IMPROVEMENTS.** Tenant shall have the obligation to conduct any construction or remodeling (at Tenant's expense) that may be required to use the Premises as specified above. Tenant may also construct such fixtures on the Premises (at Tenant's expense) that appropriately facilitate its use for such purposes.

**ACCESS BY LANDLORD TO PREMISES.** Subject to Tenant's consent (which shall not be unreasonably withheld), Landlord shall have the right to enter the Premises for inspection or other assessment of the property. However, Landlord does not assume any liability for the care or supervision of the Premises. As provided by law, in the case of an emergency, Landlord may enter the Premises without Tenant's consent.

**INDEMNITY REGARDING USE OF PREMISES.** To the extent permitted by law, Tenant agrees to indemnify, hold harmless, and defend Landlord from and against any and all losses, claims, liabilities, and expenses, including reasonable attorney fees, if any, which Landlord may suffer or incur in connection with Tenant's possession, use or misuse of the Premises, except Landlord's act or negligence.

**DANGEROUS MATERIALS.** Tenant shall not keep or have on the Premises any article or thing of a dangerous, flammable, or explosive character that might substantially increase the danger of fire on the Premises, or that might be considered hazardous by a responsible insurance company, unless the prior written consent of Landlord is obtained and proof of adequate insurance protection is provided by Tenant to Landlord.

**COMPLIANCE WITH REGULATIONS.** Tenant shall promptly comply with all laws, ordinances, requirements and regulations of the federal, state, county, municipal and other authorities, and the fire insurance underwriters. However, Tenant shall not by this provision be required to make alterations to the exterior of the building or alterations of a structural nature.

**ARBITRATION.** Any controversy or claim relating to this contract, including the construction or application of this contract, will be settled by binding arbitration, at the expense of the Tenant, and any judgment granted by the arbitrator(s) may be enforced in any court of proper jurisdiction.

**RELATIONSHIP OF PARTIES.** Landlord and Tenant shall not be considered or deemed to be joint venture's or partners and neither shall have the power to bind or obligate the other except as set forth herein.

**ASSIGNABILITY/SUBLETTING.** Tenant may not assign or sublease any interest in the Premises, nor effect a change in the majority ownership of the Tenant (from the ownership existing at the inception of this lease), nor assign, mortgage or pledge this Lease, without the prior written consent of Landlord, which shall not be unreasonably withheld.

**OPTION TO PURCHASE.** Tenant, upon satisfactory performance of this lease or at any time within the term of this lease or any renewal period, shall have the option to purchase the real property described herein for a purchase price of $700,000.00 less all applied payments to date, as described, provided that the Tenant timely executes the option to purchase and is not in default of the Lease Agreement. Thereafter, each of the parties shall promptly execute any and all further instructions or other documents including a Sale Agreement which may be reasonably required for purchase of the real property. **BUILDING AND ALL CONTENTS**

CONTAINED THEREIN ARE SOLD AS-IS.

**NOTICE REQUIRED TO EXERCISE OPTION.** To exercise the Option to Purchase, the Tenant must deliver to the Landlord, a written notice of Tenant's intent to purchase. In addition, the written notice must specify a valid closing date. The closing date must occur before the original expiration date of the Lease Agreement or within any renewal period.

**OPTION CONSIDERATION.** Nonrefundable option consideration paid by the Tenant as consideration for this Option to Purchase Agreement, shall be credited towards the purchase price at closing if, and only if, the Tenant timely exercises the option to purchase during the term of this Agreement.

**EXCLUSIVITY OF OPTION.** This Option to Purchase Agreement is exclusive and **non-assignable** and exists solely for the benefit of the named parties above. Should Tenant attempt to assign, convey, delegate, or transfer this option to purchase without the Landlord's express written permission, any such attempt shall be deemed null and void, and shall be construed as a default.

**CLOSING AND SETTLEMENT.** Tenant agrees that closing costs in their entirety, including any points, fees, and other charges required by the third-party lender, shall be the sole responsibility of Tenant. The only expense related to closing costs apportioned to Landlord shall be the pro-rated share of the ad valorem taxes due at the time of closing, for which Landlord is solely responsible.

**FINANCING DISCLAIMER.** THE PARTIES ACKNOWLEDGE THAT IT IS IMPOSSIBLE TO PREDICT THE AVAILABILITY OF OBTAINING FINANCING TOWARDS THE PURCHASE OF THIS PROPERTY. OBTAINING FINANCING SHALL NOT BE HELD AS A CONDITION OF PERFORMANCE OF THIS OPTION TO PURCHASE AGREEMENT. THE PARTIES FURTHER AGREE THAT THIS OPTION TO PURCHASEAGREEMENT IS NOT ENTERED INTO IN RELIANCE UPON ANY REPRESENTATION OR WAQRRANTY MADE BY EITHER PARTY.,

**REMEDIES UPON DEFAULT.** If Tenant defaults under this Option to Purchase Agreement or the Lease Agreement, then in addition to any other remedies available to Landlord at law or in equity, Landlord may terminate this Option to Purchase by giving written notice of the termination. If terminated, the Tenant shall lose entitlement to any refund of rent or option consideration. For this Option to Purchase Agreement to be enforceable and effective, the Tenant must comply with all terms and conditions of the Lease Agreement.

**RECORDING OF AGREEMENT.** Tenant shall not record this Option to Purchase Agreement on the Public Records of any public office without the express and written consent of Landlord.



**ACKNOWLEDGMENTS.** The parties are executing this Option to Purchase Agreement voluntarily and without any duress or undue influence. The parties have carefully read this Option to Purchase Agreement and have asked any questions needed to understand its terms, consequences, and binding effect and fully understand them and have been given an executed copy.

**GOVERNING LAW.** This Lease shall be construed in accordance with the laws of the State of West Virginia.

**CHOICE OF FORUM.** All suits arising from this Agreement shall be litigated in Georgia.

**SPECIAL STIPULATION. FOR AND IN CONSIDERATION OF LOWERING THE PURCHASE PRICE FROM $750,000 TO $700,000, TENANT AGREES TO BE SOLELY RESPONSIBLE FOR ADDRESSING ANY LIABILITIES ASSOCIATED WITH THE INSURANCE INSPECTION IN THE ATTACHED PARKING LOT.**

**ENTIRE AGREEMENT/AMENDMENT.** This Lease Agreement contains the entire agreement of the parties and there are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Lease. This Lease may be modified or amended in writing, if the writing is signed by the party obligated under the amendment.

**SEVERABILITY.** If any portion of this Lease shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Lease is invalid or unenforceable, but that by limiting such provision, it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**WAIVER.** The failure of either party to enforce any provisions of this Lease shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Lease.

**BINDING EFFECT.** The provisions of this Lease shall be binding upon and inure to the benefit of both parties and their respective legal representatives, successors and assigns.

**SIGNATURES AND NOTICE.** This Lease shall be signed by the following parties. No notice under this Lease shall be deemed valid unless given or served in writing and forwarded by mail, postage prepaid, addressed to the parties below:

**PERSONAL GUARANTEE.** Landlord requires Tenant and managing partners to personally guarantee all financial obligations under this Agreement.



**LANDLORD:**

JEG Family Trust
c/o Galardi Enterprises
2121 South Highland Drive
Las Vegas, Nevada 89102

**TENANT:**

Barn Yard BBQ, LLC
1101 Hospital Drive
Hurricane, WV 25526

Such addresses may be changed from time to time by either party by providing notice as set forth above. Notices mailed in accordance with the above provisions shall be deemed received on the third day after posting.

**SIGNATURE PAGE TO FOLLOW:**

**LANDLORD: JEG FAMILY TRUST**

By: _Terri Galardi ttre/pres_      Date: _8-1-16_
Terri Galardi,
**Trustee /President**

**SUBSCRIBED AND SWORN BEFORE ME ON THIS____ DAY OF _____,2016**

**NOTARY PUBLIC**_____

**My Commission Expires** _____      **SEAL**


**TENANT:**
**Barn Yard BBQ, LLC**

By: _Crystal R. Tincher_      Date: _7.28.16_
Crystal R. Tincher,
Manager, Member

By: _Crystal R. Tincher_      Date _7.28.16_
**PERSONAL GUARENTEE**

**SUBSCRIBED AND SWORN BEFORE ME ON THIS _28th_ DAY OF _July_,2016**

**NOTARY PUBLIC** _Donyia Garrison_ _____

**My Commission Expires** _October 29, 2019_ _____      **SEAL**

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
DONYIA A. GARRISON
P.O. BOX 136
ELEANOR, WV 25070
My commission expires October 29, 2019

**LANDLORD:JEG FAMILY TRUST**

By: _____ ttu/pres     Date: 8-1-16
Teri Galardi,
Trustee /President

SUBSCRIBED AND SWORN BEFORE ME ON THIS ___/___ DAY OF _Aug_ ,2016

NOTARY PUBLIC _____

My Commission Expires _Dec 12, 2019_     **SEAL**

**TENANT:**
**Barn Yard BBQ, LLC**

By: _____     Date: 7.28.16
Crystal R. Tincher,
Manager, Member

By: _____     Date 7.28.16
PERSONAL GUARENTEE

SUBSCRIBED AND SWORN BEFORE ME ON THIS 28 DAY OF July ,2016

NOTARY PUBLIC _____

My Commission Expires October 29, 2019     **SEAL**

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
DONYIA A. GARRISON
P.O. BOX 135
ELEANOR, WV 25070
My commission expires October 29, 2019

# "EXHIBIT D"

ASSIGNMENT AND ASSUMPTION OF MEMBERSHIP INTEREST
From
JACK E. GALARDI
To
JACK HAROLD EDWARD GALARDI, Trustee
of the JEG Family Trust u/a/d 11/01/2006

THIS ASSIGNMENT, dated this 17 day of February, 2011, is made and entered into by and between JACK E. GALARDI ("Assignor") and JEG FAMILY TRUST u/a/d 11/01/2006, JACK HAROLD EDWARD GALARDI, Trustee ("Assignee"), with reference to the following facts:

WHEREAS, Assignor owns a One Hundred percent (100%) interest in GALARDI RENTALS, LLC, which was formed pursuant to Articles of Organization, dated as of October 15, 1999 (the "Articles"); and

WHEREAS, Assignor desires to assign by gift, all of his right, title, duties, obligations, and interest in and to GALARDI RENTALS, LLC (the "Interest"), to Assignee;

NOW, THEREFORE, in view of the foregoing facts Assignor assigns, transfers and conveys the Interest to Assignee, and Assignee accepts all rights, title, duties, obligations and interest in and to the Interest.

This Assignment is made upon the following terms, covenants and conditions:

1.      It is the intent of Assignor and Assignee that Assignee succeed to the Interest as a Substituted Member, as such is defined in the Operating Agreement.

2.      By its acceptance of the Interest, Assignee hereby accepts, and agrees to be bound by, all of the terms and provisions of the Operating Agreement.

3.      Assignor hereby warrants and represents for the reliance and benefit of Assignee and the Limited Liability Company, that Assignor is the owner of the Interest, and that Assignor has not previously sold, assigned, transferred, or encumbered the Interest.

4.      The parties hereto represent and warrant for the reliance and benefit of the Limited Liability Company that this Assignment is made in accordance with all applicable laws and regulations and that Assignee meets all applicable investor suitability standards.

1

GREGORY S. SMITH, LTD.
Attorney at Law

5.    The parties hereto agree to execute and deliver such additional documents as may be necessary or appropriate to effectuate the provisions of the Articles and to consummate the assignment contemplated herein according to the terms and conditions hereof.

6.    This Agreement may be executed in several counterparts and all so executed shall constitute one Agreement, binding upon all the parties, notwithstanding that all the parties are not signatories to the original or the same counterpart.

ASSIGNOR:

_____
JACK E. GALARDI

ASSIGNEE:

JEG FAMILY TRUST u/a/d 11/01/2006:

By:    _____
JACK HAROLD EDWARD GALARDI,
Trustee

GREGORY S. SMITH, LTD.
Attorney at Law

2

## CONSENT OF MEMBERS

By executing this document, the Members of the Limited Liability Company expressly consent to the assignment of the Interest from Assignor to Assignee, approve the form and content of this document, and acknowledge that Assignee is (as to the Interest) a substituted Member.

**MEMBER:**



JACK GALARDI

STATE OF <u>NEVADA</u>     )
                         ) ss.
COUNTY OF <u>CLARK</u>     )

On this 17TH day of <u>FEBRUARY</u>, 2011, personally appeared before me, a Notary Public, **JACK GALARDI**, who acknowledged that he executed the above instrument.

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
EMELITA P. SY
No. 92-1257-1
My Appointment Expires Aug. 5, 2012

_____
NOTARY PUBLIC

S \GSS\MasterShare\!ClientFiles-Galnab, Jack ENEP-0540\assignment-western.wpd

GREGORY S. SMITH, LTD.
Attorney at Law