**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | **CHAPTER 11** |
| | ) | |
| **TERI G. GALARDI ,** | ) | **CASE NO. 22-50035-JPS** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |
| | ) | |
| **JACK E. GALARDI, JR. AND EMELITA P. SY, as the TRUSTEE of the JACK E. GALARDI, JR. SUB-TRUST,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Adversary Proceeding No. 22-05008** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TERI G. GALARDI,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S RENEWED MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO ABSTAIN**

COMES NOW, Defendant Teri G. Galardi ("Teri"), and hereby renews her motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the Complaint in that the claims are time-barred and in the alternative renews her motion for permissive abstention (the "Renewed Motion). The Court's Order of August 30, 2022, allowed for Defendant to renew her motion after the record was "more fully developed".[1]

Teri provides in her Brief in Support of this Renewed Motion the docket of the Nevada Probate Court and the pleadings filed in that case by both Jack and Teri and the Orders of the Court issued in that case.[2]

[1]The terms defined in the initial Motion and Brief in Support filed in this Adversary Proceeding [Docket No. 6] and shall have the same meanings in this Renewed Motion.
[2]Teri does not attach the notices of filing of the Orders or other non-substantive filings.

Teri has and does assert that she had provided information to Jack Jr regarding the distribution of assets of her and Jack Jr's father's estate at latest by March 2015 and that Jack Jr did not raise any claims asserting Teri breached her fiduciary duty to Jack Jr regarding the distributions until after the Nevada statute limitations period had expired.

Wherefore for all the forgoing reasons, and as more fully set forth in the Brief in Support of Defendant's Renewed Motion to Dismiss or, In the Alternative Motion to Abstain, Defendant prays that this Honorable Court Dismiss the Complaint or in the alternative, abstain from adjudication and allow the Nevada Probate Court to adjudicate the Plaintiffs claim as to the timeliness of the cause of action alleged.

Respectfully submitted,

**MCBRYAN, LLC**

/s/Louis G. McBryan
Louis G. McBryan, Ga. Bar No. 480993
6849 Peachtree Dunwoody Road
Building B-3, Suite 100
Atlanta, GA 30328
(678) 733-9322 Telephone
lmcbryan@mcbryanlaw.com
**Attorney for Defendant Teri Galardi**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | **CHAPTER 11** |
| | ) | |
| **TERI G. GALARDI ,** | ) | **CASE NO. 22-50035-JPS** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |
| | ) | |
| **JACK E. GALARDI, JR. AND EMELITA P. SY, as the TRUSTEE of the JACK E. GALARDI, JR. SUB-TRUST,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Adversary Proceeding No. 22-05008** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TERI G. GALARDI,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**BRIEF IN SUPPORT OF DEFENDANT'S RENEWED MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR COURT TO ABSTAIN**

The Nevada Probate Court's docket is at follows:[1]

## I. INTRODUCTION

| Date | Description | Tab No. |
|---|---|---|
| 09/19/2018 | Petition to Allow This Court to Take Jurisdiction Over the Trust; AND Request for Removal of Named Successor Trustee | 1 |
| 10/04/2018 | Trustee Teri Gale Galardi's Objection to Petition to Allow This Court to Take Jurisdiction Over the Trust; AND Request for Removal of Trustee | 2 |
| 10/30/2018 | Petitioner's Response to Trustee Teri Galardi's Objection to Petition to Allow This Court to Take Jurisdiction Over the Trust; AND Request for Removal of Named Successor Trustee | 3 |
| 12/7/2018 | Order Granting Petition (In Part) to Allow This Court to Take Jurisdiction of the Trust and Confirmation of Successor Trustee, Teri Gale Galardi | 4 |

[1]Teri does not attach the notices of filing of the Orders or other non-substantive filings.

| | | |
|---|---|---|
| 08/16/2019 | Petition for Removal of Teri Galardi, Successor Trustee | 5 |
| 09/27/2019 | Stipulation and Order re: Petition for Removal of Teri Galardi, Successor Trustee | 6 |
| 01/12/2021 | Petition for Recovery of Assets from Teri Galardi, Co-Beneficiary of the JEG Trust | 7 |
| 03/03/2021 | Request to Have Matter Heard by Judge | Excluded |
| 03/08/2021 | Amended Request to Have Matter Heard by Judge | Excluded |
| 03/24/2021 | Motion to Dismiss Petition for Recovery of Assets from Teri Galardi, Co-Beneficiary of the JEG Trust | 8 |
| 05/12/2021 | Opposition to Motion to Dismiss Petition for Recovery of Assets from Teri Galardi, Co-Beneficiary of the JEG Trust | 9 |
| 05/27/2021 | Reply in Support of Motion to Dismiss Petition for Recovery of Assets from Teri Galardi, Co-Beneficiary of the JEG Trust | 10 |
| 11/15/2021 | Order | 11 |
| 03/10/2022 | Petition to Enforce Court Order to Account | 12 |
| 04/13/2022 | Stipulation and Order to Continue Hearing | 13 |
| 08/14/2022 | Stipulated and Order to Continue Hearing | 14 |

The pleadings and orders of the Probate Court are attached as Tabs 1 through 14, and excludes the non-substantive filings as noted above.

Jack Jr's first action in the Nevada Probate Court was his Petition to Allow This Court to Take Jurisdiction Over the Trust; AND Request for Removal of Named Successor Trustee on September 19, 2018. [Tab 1]. After Teri filed her response and Jack Jr filed a response to Teri's response [Tabs 2 and 3], the Probate Court took jurisdiction but did not replace Teri as Trustee, but the Court did order an accounting. Order Granting Petition (In Part) To Allow this Court to Take Jurisdiction Over the Trust and Confirmation of Successor Trustee Teri Gale Galardi, entered December 7, 2018. [Tab 4].

The next action after the Order of December 7, 2018, by Jack Jr was to seek a better accounting and again sought Teri's removal as Trustee. Petition for Removal of Teri Galardi, Successor Trustee filed August 16, 2019. [Tab 5]. Teri and Jack Jr then agreed upon Teri's removal and Emelita Sy was installed as Trustee. [2] [Tab 6]. It was not until January 12, 2021, that Jack Jr

[2]Teri does not attach the notices of filing of the Orders or other non-substantive filings.

filed a pleading in the Probate Court in which he finally alleged that Teri was personally liable to him for breach of fiduciary duty. Petition for Recovery of Assets from Teri Galardi, Co-Beneficiary of the JEG Trust. [Tab 7].  Teri moved to dismiss this Petition asserting that she provided Jack Jr *at the latest on March 20, 2015* with the record of distribution of assets of their father's estate. Motion to Dismiss Petition For Recovery of Assets From Teri Galardi, Co-Beneficiary of the JEG Trust, at Exhibit 3, [Tab 8; Letter from Greg Smith, Counsel to Teri to Jack's Counsel and attachments]. Therefore, the Nevada statute of limitation of 3 years barred an action for breach of fiduciary duty.

Also, notwithstanding the Probate Court Pleadings, Jack Jr. was aware that Teri executed on November 7, 2014 the Note for the benefit of his Sub-Trust and she did in fact make payments on that Note. Complaint ¶ 27, Exhibit D.  Further, Jack Jr knew that Teri had assumed payments on the loan secured by Jack Jr.'s house in 2014. Complaint ¶ 28.  The Note and the assumption of payments on house loan, are part of the allegations of Jack Jr that Teri breached her fiduciary duty to him and the Sub-Trust.

## I.    ARGUMENT AND CITATION TO AUTHORITY

Teri incorporates by reference her arguments as originally submitted in her Brief in Support of Defendant's Motion to Dismiss Or, In the Alternative, Motion for Court to Abstain. [Docket No. 6].  As confirmed in the Order entered in the Nevada Case, there is a three-year (3) statute of limitations on Jack Jr.'s claims for breach of fiduciary duty [Tab 11].  The facts reflect that Jack Jr knew that Teri was paying on a Note to the Sub-Trust in 2014. The time to assert a claim against Teri for breach of fiduciary duty expired November 2017, three (3) years after Jack Jr. acknowledged that distributions under the Trust were made by Teri. Or, alternatively, Jack Jr become aware of the entire division of assets *no later than March 20, 2015,* when Teri's counsel provided to Jack Jr's counsel the IRS form 706 and accompanying attachments, as reflected in

Teri's Motion to Dismiss [Tab 8] and Jack Jr made no claims against Teri until January 1, 2021. Therefore, Teri seeks dismissal of Plaintiff's claims for breach of fiduciary duty as barred by the applicable statute of limitations.  See NRS § 11.190(3)(D).

If the Court does not dismiss the claims of the Trustee and Jack Jr as untimely, alternatively, Section 1334(c)(1) of title 28 of the United States Code allows a bankruptcy court to permissively abstain from "hearing a proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1).  Bankruptcy courts have broad power to permissively abstain. *SBMC* at 190; *Cashco* at 725 (citations omitted).  "A Court may abstain from both core and non-core matters when abstention best serves the interest of justice, judicial economy, or comity with state courts.  *Casco* at 725 (citations omitted). Should this Court not dismiss the claims of Plaintiffs as time-barred than the Court should abstain from hearing those claims and transfer them to the Nevada Probate Court and await its rulings.

## II.    CONCLUSION

WHEREFORE, for all the forgoing reasons, Defendant respectfully requests that the Court dismiss the Complaint or, in the alternative, abstain from adjudication.

Respectfully submitted,

**MCBRYAN, LLC**

/s/Louis G. McBryan
Louis G. McBryan, Ga. Bar No. 480993
6849 Peachtree Dunwoody Road
Building B-3, Suite 100
Atlanta, GA 30328
(678) 733-9322 Telephone
lmcbryan@mcbryanlaw.com
**Attorney for Defendant Teri Galardi**

# TAB 1

Electronically Filed
9/19/2018 9:23 AM
Steven D. Grierson
CLERK OF THE COURT

PET

SHIRLEY A. DERKE, ESQ.
Nevada Bar No. 2686
627 S. Seventh St.
Las Vegas, NV 89101
702-386-6800
shirley@Derke.lvcoxmail.com
Attorney for Petitioner

DISTRICT COURT

CLARK COUNTY, NEVADA

* * *

| In the Matter of the<br><br>JEG TRUST - JACK GALARDI JR.<br>SUB-TRUST | Case No. P-18-096792-T<br>Dept. PC1<br>DATE:<br>TIME: 9:30 a.m. |
|---|---|

**PETITION TO ALLOW THIS COURT TO TAKE JURISDICTION OVER THE TRUST; AND REQUEST FOR REMOVAL OF NAMED SUCCESSOR TRUSTEE**

Comes now, the Petitioner, JACK GALARDI, JR., sole beneficiary of the JEG TRUST - JACK GALARDI JR. SUB-TRUST, by and through his attorney, Shirley A. Derke, Esq., hereby moves this court for an order taking jurisdiction of the trust in rem and for removal of Terri Gale Galardi, named Successor Trustee by alleging as follows:

**GENERAL FACTS**

1. JACK E. GALARDI, also known as Jack Harold Edward Galardi, created a revocable living trust on November 1, 2006 and this trust was totally amended and restated on August 16, 2012. At the time of restatement, Jack E. Galardi declared he was a resident of Clark County, Nevada. The Trustor was the Trustee of this trust. A copy of this trust is provided in camera for the court.

2. JACK E. GALARDI passed away on December 1, 2012, leaving a taxable estate of more than $50,000,000.

3. TERI GALE GALARDI, the named Personal Representative under JACK E. GALARDI's will dated August 16, 2012 caused probate proceedings to begin in Clark County, Nevada under case No. P-13-076839-E and a final discharge was granted by this court on June 25, 2014.

4. TERI GALE GALARDI also caused the filing of the Decedent's form 706, a copy of which is provided in camera for the court.

5. The Decedent's form 706 indicates and Section 5.3(b) of the amended and restated trust states as follows:

> (b) THE JACK GALARDI, JR. SUB-TRUST: Twenty-five percent (25%) of the remaining Trust estate shall be distributed to the JACK GALARDI, JR. SUB-TRUST

6. When attempting to fund twenty five percent of the remaining trust estate, the Successor Trustee, TERI GALE GALARDI, found that the many of the assets of the trust could not be held by the JACK GALARDI, JR. SUB-TRUST due to their restricted license requirements. As a result, TERI GALE GALARDI was unable to use any of the business interests in the funding of this trust.

7. From documents provided by TERI GALE GALARDI, Trustee of the JACK GALARDI, JR. SUB-TRUST, it appears that the trust was funded approximately January 2015. Based upon the 2015 General Ledger, the net assets recorded were $6,693,388.60 and the decedent's form 706 indicates that JACK GALARDI, JR.'S distribution was to be $8,630,635 (which was after deducting apportioned federal estate taxes in the amount of $4,146,726).

8. As stated in Paragraph 6 above, due to the sensitive licensing of many of the assets of the estate, TERI GALE GALARDI, the remaining beneficiary of the estate took these assets that required licensing, giving the JACK GALARDI, JR. SUB-TRUST an unsecured promissory note in the principal amount of $1,688,742.00, to make up the difference. This note is based upon a 30-year amortization with an annual interest rate of 3.32%. See Exhibit A attached hereto.

9. The interest rate for a 30-year secured mortgage loan for the period when this note was executed was approximately 4% as shown by HSH.COM and attached hereto as Exhibit B. Therefore, the interest rate appears to be below market.

10. TERI GALE GALARDI has made sporadic payments in various amounts since January 2015, and in fact her principal balance has increased at times when the payments failed

to fully cover the interest due at the time the payment was received. There have been checks written to TERI GALE GALARDI from the JACK E. GALARDI, JR. SUB-TRUST, increasing her principal balance, as follows:

| | |
|---|---|
| a. 1/29/16 taken out of the trust account by Debit | $1,500.00 |
| b. 7/8/16 taken out of the trust account by Debit - was apparently covered three days later with a deposit in the same amount | 10,000.00 |
| c. 7/19/16 taken out of the trust account by Debit - was apparently covered 3 days later with a deposit from Goodtimes Bar | 6,000.00 |
| d. 8/30/16 taken out of the trust account by Debit | 2,120.00 |
| e. 9/2/16 taken out of the trust account by Debit | 5,954.74 |
| f. 9/16/16 taken out of the trust account by Debit | 6,331.59 |
| g. 12/16/16 taken out of the trust account by Debit | 2,300.00 |
| h. 12/23/16 taken out of the trust account by Debit - was apparently covered 6 days later with a deposit | 7,900.00 |

11. TERI GALE GALARDI has made at least, if not more, than required under her note - $7,425.00 monthly or $89,100.00 annually. The sporadic payments, both increasing and decreasing the principal balance creates an accounting nightmare for the sub-trust. It also appears that the Trustee is using the trust bank account as her personal overdraft/temporary funds.

12. The JACK GALARDI, JR. SUB-TRUST was also funded with a $400,000 mortgage note given to the Decedent on September 16, 2011. This note provides for monthly interest payments at the annual rate of 5.25%. Petitioner has been informed and believes that the makers of this note are currently in bankruptcy and Petitioner has requested that TERI GALE GALARDI provide information regarding the underlying security as well as the creditor claim filed in the bankruptcy. TERI GALE GALARDI has failed to provide adequate information to determine if the investment is secure.

13. The JACK GALARDI, JR. SUB-TRUST was also funded with a residence and lot located at Navarro Isle, Ft. Lauderdale, FL with a date of death value of $4,200,000 per Form 706 (Schedule A, item 14) and noted in the 2015 general ledger at a value of $4,275,000. This property was subject to a mortgage, listed on Schedule K, item 13 of the Form 706 in the amount of $3,411,325. The information from the form 706 is confusing on this note as well. It is unclear from the financial records whether this property generated any income during the time the trust

held title, but the 2015 general ledger reflects that the trust had a loss of $1,243,346.63 when disposing of the property on 10/22/2015. Form 706 is also confusing (see Schedule K - item 12). It lists this loan amount as a security against another property - Schedule G, Item 3. I believe that this was a mistake on the 706 as this property is vacant land in Floville, GA valued at $101,000.

14. The JACK GALARDI, JR. SUB-TRUST was also funded with commercial property located at 211 New Goff Mountain Rd., Cross Lanes, WV, which was valued at $650,000 on Form 706 (Schedule A, Item 34) and also on the general ledger. This property was rented at the time of the Decedent's death, pursuant to verbal information received from DANIEL GEIGER, CPA for the Trust and named Successor Co-Trustee after TERRI GALE GALARDI, The existing tenant was unwilling to purchase the property at the appraised value, and therefore decided to vacate (unknown as to the date the tenant vacated). A new lease was entered into on July 12, 2016. See Exhibit C for the 7/15/16 lease. There are problems with this lease as follows:

a. First of all, the lessor on the lease is the JEG Trust - not the JACK GALARDI, JR. SUB-TRUST.

b. The terms of the lease are questionable, to say the least. The tenant has an option to purchase the property that states as follows:

> Tenant, upon satisfactory performance of this lease or *at any time within the term of this lease or any renewal period, shall have the option to purchase the real property described herein for a purchase price of $700,000.00 less all applied payments to date, as described,* provided that the Tenant timely executes the option to purchase and is not in default of the Lease Agreement.

With this broad period allowing the Tenant to exercise their option to purchase right up until the end of the lease including any extensions thereto, the tenant may use *all rental payments against the $700,000.00 purchase price*, as well as freezing the purchase price against any inflation on the property value and avoiding any interest on the principal paid over time!

15. The JACK GALARDI, JR. SUB-TRUST was also funded with raw land that has not been income producing since the Decedent's death as follows:

a. 20 acres in Moapa Valley, Clark County, Nevada APN 071-18-601-015 listed on the

Form 706 as $20,000 (Schedule A, item 4). It should be noted that this property was not retitled into the JACK GALARDI, JR. SUB-TRUST until 2017. The annual real property taxes on this parcel are $835.71 and the Clark County Assessor's taxable value is stated as $94,500. There have been 2 acre parcels next to this property that have sold for $14,000 each in 2006. The Trustee has made no moves to attempt to liquidate this property.

b. 2 acres in Moapa Valley, Clark County, NV APN 041-25-25-301-012 along with a 1 acre parcel near it - APN 041-25-301-013. (Schedule A, item 5). It should be noted that this property was not retitled into the JACK GALARDI, JR. SUB-TRUST until 2017. The annual real property taxes on this parcels are $571.99 and the Clark County Assessor's taxable values are a total of $66,551. There were two parcels totaling 5 acres adjacent to both these parcels (APN 041-25-301-028 and 041-25-301-029) that sold for $570,000 in 2006.

c. Vacant land located at 6220 E. Adamo Dr., Tampa, FL, APN 81-96-15-000-0 that was represented as titled in the name of Galardi Rentals, LLC. TERI GALE GALARDI presented documents showing that the Decedent assigned all membership interest in Galardi Rentals from himself personally to his 2006 trust on February 21, 2011. See Exhibit D attached hereto. There is no indication that the trust assigned the ownership interest to JACK GALARDI, JR. SUB-TRUST. Also, there does not appear to be any indication of income being earned and passed through this entity to JACK GALARDI, JR. and therefore it is assumed that this also is non-income producing. It is also interesting to note that this property was listed on Schedule A (Item 30) rather than on Schedule B - Stocks and Bonds as an LLC ownership. This property appeared to be sold in 2017 for the sales price of $43,778.49 according to the 2017 general ledger.

d. DANIEL GEIGER, CPA verbally informed Petitioner that vacant property located on 15th St., Marathon, Florida was sold in 2015 - but did not provide any supporting documents on the sale to indicate if there was a profit from the Form 706 value of $43,000 (Schedule A 17). This property was never listed on 2015 the general ledger nor the sales proceeds.

e. The Trust sold vacant property located on 425 Industrial Blvd., McDonough, GA (Schedule A Item 24 on form 706) valued at $440,000.00 for a sales price of $400,000 in 2017.

The 2017 general ledger indicates that the property was sold at a loss of $41,055.57.

16. The names, ages, relationships and residences of the beneficiaries, trustee and Successor Trustees of the trust, so far as known to the Petitioner are as follows:

Jack E. Galardi, Jr., sole beneficiary
C/O Shirley A. Derke, Esq.
627 S. Seventh St.
Las Vegas, NV 89101

Teri Gale Galardi, Trustee of the JACK E. GALARDI, JR. SUB-TRUST
C/O Greg Smith, Esq.
Smith & Shapiro, PLLC
2520 St. Rose Parkway #220
Henderson, NV 89074

Daniel Geiger, named Successor Co-Trustee of the JACK E. GALARDI, JR. SUB-TRUST
2850 S. Jones Blvd, Suite 2
Las Vegas, NV 89146

Emelita P. Sy, named Successor Co-Trustee of the JACK E. GALARDI, JR. SUB-TRUST
2121 S. Highland Dr.
Las Vegas, NV 89102

WHEREFORE, Petitioner prays that the court finds the following:

A. That this court take jurisdiction over the trust in rem pursuant to NRS 164.010 and 164.015;

B. That this court find that TERI GALE GALARDI has failed to perform her duties as trustee of this trust and therefore be removed;

C. That this court confirm DANIEL GEIGER and EMELITA P. SY as Co-Trustees of the JACK E. GALARDI, JR. SUB-TRUST; and

D. And for such other and further relief as to the Court may seem just and proper in the premises.

DATED this 17th day of September 2018.

SHIRLEY A. DERKE, ESQ.

STATE OF NEVADA )
) ss:
COUNTY OF CLARK )

JACK GALARDI, JR., being first duly sworn, deposes and says:

That he is the Petitioner in the above entitled matter; that he has read the above and foregoing Petition and knows the contents thereof, and that the same is true of his own knowledge, except as to those matters therein stated on information and belief, and for those matters, he believes them to be true.

JACK GALARDI, JR.

SUBSCRIBED and SWORN to before me this 17th day of September 2018.

NOTARY PUBLIC

SHIRLEY DERKE
Notary Public State of Nevada
No. 92-1690-1
My Appt. Exp. Dec. 16, 2020

SUBMITTED BY:

SHIRLEY A. DERKE, ESQ.

# "EXHIBIT A"

# PROMISSORY NOTE

$1,688,742.00

November 7, 2014
Las Vegas, Nevada

FOR VALUE RECEIVED, JEG FAMILY TRUST - TERI GALARDI SUB-TRUST ("Maker"), and TERI GALE GALARDI, individually guarantees ("Guarantor") that she promises to pay to the order of JEG FAMILY TRUST - JACK GALARDI JR. SUB-TRUST (hereinafter "Payee"), located in Las Vegas, Nevada, or at any other place that Payee of this note may designate in writing, (as it is understood by Maker, Guarantor, and Payee (the "Parties") and that Maker upon execution of this Promissory Note (or "Note") shall execute a Security Agreement to the same, the following:

1. The principal sum of One Million Six Hundred Eighty-eight Thousand Seven Hundred Forty-two Dollars and No Cents ($1,688,742.00), as specified further below, with interest on unpaid principal at the rate of Three and Thirty-two Hundreths percent (3.32%) per annum, commencing as of the above-stated date and continuing until paid in full (hereinafter the "Promissory Note", or "Note") ; and

2. All costs and attorneys' fees of the Payee if (a) legal counsel is engaged to assist in the collection of this note after a default hereunder, or (b) any action is brought to construe or enforce this note or any provisions hereof, or (c) the Maker becomes subject to any Chapter of the Bankruptcy Code, as amended, and the Payee, in the exercise of prudent business practice becomes a party to, participates in, is affected by, or joins in, and expends funds for attorneys' fees and costs or investigation, whether or not suit is instituted.

**Payment of Principal & Interest:**

Principal and interest shall be paid as follows: The principal and interest on the principal will be payable in Three Hundred Sixty (360) equal monthly successive installments in the aggregate amount of Seven Thousand Four Hundred Twenty-five Dollars ($7,425.00). The first installment will be paid on the last day of the month, of the month subsequent to the month of the Effective Date of the Trust Allocation Schedule of the JEG Family Trust, and thereafter, Three Hundred Fifty Eight (358) equal successive monthly principal and interest installments in the aggregate amount of Seven Thousand Four Hundred Twenty-five Dollars ($7,425.00) each on the remaining balance until on the Three Hundred Sixtieth (360th) month after the month of the Effective Date, on which date the final payment of the unpaid principal and interest of Nine Hundred Eighty-five Dollars and Thirty cents ($985.30) will be due and payable Principal and interest shall be payable in lawful money of the United States of America.

**Late Payment Penalty:**

Unless Maker obtains the express written consent of Payee prior to the event, any payment not made within Ninety (90) days of due date shall give rise to a late payment penalty due from Maker to Payee equal to Five percent (5%) of the gross monthly payment due. Notwithstanding the foregoing, this section applies only to those payments made after January 1, 2015.

**Default:**

Unless the Maker obtains the express written consent of the Payee prior to the event, the following items shall constitute a Default under this Note:

1. Should the Maker fail to make payment of any amount due under this note within One Hundred Eighty (180) days from when payment is due, or fail to perform any other obligation of Maker provided for herein,

2. Should Maker make an assignment for the benefit of creditors, or if a petition be filed by or against Maker under the provisions of any state insolvency law or under the provisions of the Bankruptcy Code, as amended, or should Maker become subject to the provisions of any Chapter of the Bankruptcy Code,

3. Should Maker default any obligation defined in the Agreements.

Upon any default of Maker as defined above, Payee shall be authorized to declare as immediately due and payable the then unpaid principal and to exercise any and all of the rights and remedies provided by the Nevada Commercial Code as well as all other rights and remedies either at law or in equity possessed by the Payee of this note. The whole sum of principal and accrued interest shall become immediately due at the option of the Payee.

**Guarantee:**

In the event of default, TERI GALE GALARDI, individually, hereby unconditionally guarantees as Guarantor, the principal and accrued interest owed to Payee under the terms of this Promissory Note.

**Prepayment:**

Maker shall have the right to prepay all or part of the principal of this Note without penalty.

**General Provisions:**

A.    All sums due hereunder shall be paid in lawful money of the United States of America.

B.   Interest shall be calculated on a 365 day year. In the event of prepayment, accrued interest as shown on Schedule B1 will be revised to reflect any prepayment of principal.

C.   All payments made hereunder shall first be credited against accrued and previously unpaid interest; the balance shall be credited against principal, and interest shall thereupon cease on the principal so credited.

D.   In this note, the singular shall include the plural, each gender shall include the other.

E.   Maker, for itself and its legal representatives, successors and assigns, expressly waives demand, presentment for demand, notice of nonpayment, presentment for the purpose of accelerating maturity, dishonor, notice of dishonor, protest, notice of protest, notice of maturity and diligence in collection.

F.   The section and subpart headings contained herein are for purposes of convenience of reference only and shall not affect in any way the meaning or interpretation hereof.

G.   If this Note or any installment due is not paid in full when it becomes due, Maker is in default and agrees to pay all collection costs.

H.   Maker agrees that if any legal action is necessary to enforce this Note, the prevailing party will be entitled to reasonable attorneys' fees in addition to any other relief to which that party may be entitled. This provision is applicable to the entire Note.

I.   Payee may assign its interest in the note at its sole discretion and Maker, upon notification, shall make payments pursuant to Payee's Assignee and Maker shall execute a revised Deed of Trust for the same.

Payee:   JEG FAMILY TRUST - JACK GALARDI JR. SUB-TRUST:

TERI GALE GALARDI, Trustee

Maker:   JEG FAMILY TRUST - TERI GALARDI SUB-TRUST:

TERI GALE GALARDI, Trustee

GUARANTOR:

TERI GALE GALARDI

STATE OF NEVADA )
) ss:
COUNTY OF CLARK )

On this 7th day of November, 2014, personally appeared before me, a Notary Public, TERI GALE GALARDI, individually and as Trustee of the JEG FAMILY TRUST - TERI GALARDI SUB-TRUST and the JEG FAMILY TRUST - JACK GALARDI, JR. SUB-TRUST, who is personally known or proved to me to be the person whose name is subscribed to the above instrument and who acknowledged to me that he executed the foregoing instrument.

CHRISTOPHER L NUTTER
MY COMMISSION EXPIRES
NOTARY PUBLIC
DECEMBER 12, 2015
LUMPKIN COUNTY, GEORGIA

NOTARY PUBLIC

# "EXHIBIT B"




9/15/2016 Case 22-05008-JPS Doc 37 Filed 01/04/23 Entered 01/04/23 15:23:45 Desc Main Document Page 21 of 434
Historical Mortgage Rates by Month - 1986 to 2016

We research, you save.

Search HSH.com
Got Questions On Rates? (855) 610-2972

Mortgage Rates | For Homebuyers | Calculators | For Homeowners | Mortgage Market Trends

Home » Mortgage Rates » Historical Mortgage Rates by Month - 1986 to 2016

SHARE 9 Share G+ Tweet in

# National Monthly Mortgage Statistics: 1986 to 2016

...d-Rate Mortgage Indicator (FRMI) averages 30-year mortgages of all sizes, including ... expanded conforming, and jumbo. The FRMI has been published as a continuous series since ...80s. Separate statistical series for conforming and jumbo loans have long been available to ... Scroll down the page to see the FRMI's 15-year companion as well as historical data for 5/1 ...s.

September 2014 To November 2014 Update

Mortgage Rates from 4.48%
Loan Type 30 Yr. Fixed
State Nevada
loanDepot 5.250% APR GO
Close Your Own Loan 4.481% APR GO
QuickenLoans 5.041% APR GO
Ad Disclosure
more mortgage rates

## Historical Monthly Mortgage Rates from Sep-2014 to Nov-2014

### 30 Year Fixed Rate Mortgage

*See Chart Data*

4.25%
4.19%
4.13%
4.06%
4.00%
Avg Mortgage Rates
09/14
10/14
11/14
Month/Year

## Related Links

- Learn About HSH's Loan Data
- Historical Mortgage Rates
- About HSH.com and HSH Associates, Financial Publishers

### 15 Year Fixed Rate Mortgage

*See Chart Data*

3.50%
3.44%
3.38%
3.31%
3.25%
Avg Mortgage Rates
09/14
10/14
11/14
Month/Year

### 5/1 ARM

*See Chart Data*

3.25%
3.19%
3.13%
3.06%
Avg Mortgage Rates

https://www.hsh.com/monthly-mortgage-rates.html 1/2



# "EXHIBIT C"

Rec'd 5/23/18

**Commercial Real Estate Lease With Option To Purchase**

This Lease Agreement (this "Lease") is dated effective as of July 15, 2016, by and between JEG Family Trust ("Landlord"), and Barn Yard BBQ, LLC ("Tenant"). The parties agree as follows:

**PREMISES.** Landlord, in consideration of the lease payments provided in this Lease, leases to Tenant a restaurant located at 211 New Goff Mountain Road, Cross Lanes, WV (the "Premises") located at 211 Goff mountain Road,, Cross Lanes, West Virginia 25606.

**LEGAL DESCRIPTION.** The legal description for the premises is: 91/100 A ROCKY FK RELOCATED STATE ROUTE 622 PT TR -A-10 AND TR B-10 CONT 138/1000A SW CROSS LANES EX 64 LAKEVIEW DRIVE DB: 2838, PAGE: 738

**TERM.** The initial lease term will begin July 15th 2016, ending two years from that date. If and only if all other provisions of this agreement are met to the satisfaction of both parties, thereafter, there will be an additional five(5) year renewal term under the same terms contained in this original lease. However, the rent shall adjust at the beginning of the first year on the five year term increasing 5%. Thereafter rent will increase scaled on the Consumer Price Index(CPI) annually each year on the remaining four years on the addition five year term. This lease with option to purchase is not to be recognized by the tenant as a long term agreement to finance the purchase of the property. Tenant must give Landlord 60 day notice to terminate or exit the Lease Purchase at the end of the initial two-year term or at the end of each extended one year renewals during the five years. The personal guarantee of annual lease payments will not expire at the end of the initial two year term and will remain on any or all extensions provided by the Landlord.

**LEASE PAYMENTS.** Tenant shall pay to Landlord monthly lease installments, for the period starting the first of the month through the last day of each month of $4,000.00, payable in advance on or before the 15th day of each month. An additional $752.00 per month will be paid by the Tenant, and will be allocated to the property taxes. The annual amount of the property tax payments will increase or decrease depending upon the annual property tax bill. Lease payments and tax payments shall be made to the Landlord at 2121 South Highland Drive, Las Vegas, Nevada 89102, which address may be changed from time to time by the Landlord. In the event the Tenant exercises the option to purchase the Landlord agrees to credit the amount of $4,000.00 from each paid monthly lease payment towards the purchase price of the property. Any differences above the $4,000.00 on the rental amount during the additional five year term will not be credited to the purchase of the property.

**SECURITY DEPOSIT.** In lieu of repairing the parking lot, Landlord shall waive the $4,000 dollars security deposit.

CRT

**POSSESSION.** Tenant shall be entitled to possession on the first day of the term of this Lease, and shall yield possession to Landlord on the last day of the term of this Lease, unless otherwise agreed by both parties in writing. At the expiration of the term, Tenant shall remove its goods and effects and peaceably yield up the Premises to Landlord in as good a condition as when delivered to Tenant, ordinary wear and tear excepted. HV/AC units, walk-in coolers and freezers, kitchen hood systems and fire suppression systems or any improvement incorporated into the structure or mechanical workings of the building shall remain on the property and will NOT be removed by the Tenant.

**USE OF PREMISES.** Tenant may use the Premises only for a restaurant/bar operation The Premises may be used for any other legal purpose only with the prior written consent of Landlord, which shall not be unreasonably withheld. Tenant shall notify Landlord of any anticipated extended absence from the Premises not later than the first day of the extended absence.

**PROPERTY INSURANCE.** Tenant shall maintain casualty insurance on the Premises in an amount not less than $2,000,000.00. Landlord shall be named as an additional insured in such policies. Tenant shall deliver appropriate evidence to Landlord as proof that adequate insurance is in force issued by companies reasonably satisfactory to Landlord. Landlord shall receive advance written notice from the insurer prior to any termination of such insurance policies. Tenant shall also maintain any other insurance which Landlord may reasonably require for the protection of Landlord's interest in the Premises. Tenant is responsible for maintaining casualty insurance on its own property. Lapse in or failure to maintain insurance shall be grounds for immediate default with five (5) days to cure such lapse. Landlord shall be named as an additional loss payee.

**LIABILITY INSURANCE.** Tenant shall maintain liability insurance on the Premises in a total aggregate sum of at least $2,000,000.00. Tenant shall deliver appropriate evidence to Landlord as proof that adequate insurance naming Landlord as an additional insured is in force issued by companies reasonably satisfactory to Landlord. Landlord shall receive advance written notice from the insurer prior to any termination of such insurance policies. Lapse in or failure to maintain insurance shall be grounds for immediate default without time to cure.

**TAXES.** Taxes attributable to the Premises or the use of the Premises shall be allocated as follows:

REAL ESTATE TAXES. Tenant shall pay all real estate taxes and assessments for the Premises.

PERSONAL TAXES. Tenant shall pay all personal taxes and any other charges which may be levied against the Premises and which are attributable to Tenant's use of the Premises, along with all sales and/or use taxes (if any) that may be due in connection with lease payments.

**LANDLORD'S INABILITY TO SUPPLY OR DELAY IN SUPPLYING SERVICE OR REPAIR TO TENANT.** The obligation of Tenant to pay rent hereunder and to perform all other covenants shall not be excused because Landlord is unable to supply, or is delayed in supplying, any service or repair to be supplied by Landlord under the terms of this Lease, when such inability or delay shall be due to accident, or to the extensiveness of the alterations or repairs desirable or necessary to be made, or to Landlord's inability or difficulty in securing supplies or labor for the provision of such service, or to some other cause, rather than gross negligence on the part of Landlord. No diminution or abatement of rent, or other compensation, shall be claimed or allowed for inconvenience or discomfort arising from the making of repairs or improvements to the building.

**EMINENT DOMAIN.** If the whole or any part of the leased premises shall be taken by eminent domain, the term of this Lease shall terminate from the date title vests in the governmental authority. Tenant shall have no claim against Landlord for the value of any unexpired term of this Lease. No part of any award shall belong to Tenant

**DEFAULTS.** Tenant shall be in default of this Lease if Tenant fails to fulfill any lease obligation or term by which Tenant is bound with the exception of the INSURANCE REQUIERMENTS. Subject to any governing provisions of law to the contrary, if Tenant fails to cure any financial obligation within 45 days starting after written notice of such default is provided by Landlord to Tenant, Landlord may take possession of the Premises without further notice (to the extent permitted by law), and without prejudicing Landlord's rights to damages. In the alternative, Landlord may elect to cure any default and the cost of such action shall be added to Tenant's financial obligations under this Lease. Tenant shall pay all costs, damages, and expenses (including reasonable attorney fees and expenses) suffered by Landlord by reason of Tenant's defaults. All sums of money or charges required to be paid by Tenant under this Lease shall be additional rent, whether or not such sums or charges are designated as "additional rent". Should Tenant fail to maintain insurance or such insurance lapses, this shall be construed as grounds for immediate default without time to cure. The rights provided by this paragraph are cumulative in nature and are in addition to any other rights afforded by law.

**CUMULATIVE RIGHTS.** The rights of the parties under this Lease are cumulative, and shall not be construed as exclusive unless otherwise required by law.

**NON-SUFFICIENT FUNDS.** Tenant shall be charged $100.00 for each check that is returned to Landlord for lack of sufficient funds.

**REMODELING OR STRUCTURAL IMPROVEMENTS.** Tenant shall have the obligation to conduct any construction or remodeling (at Tenant's expense) that may be required to use the Premises as specified above. Tenant may also construct such fixtures on the Premises (at Tenant's expense) that appropriately facilitate its use for such purposes.

**ACCESS BY LANDLORD TO PREMISES.** Subject to Tenant's consent (which shall not be unreasonably withheld), Landlord shall have the right to enter the Premises for inspection or other assessment of the property. However, Landlord does not assume any liability for the care or supervision of the Premises. As provided by law, in the case of an emergency, Landlord may enter the Premises without Tenant's consent.

**INDEMNITY REGARDING USE OF PREMISES.** To the extent permitted by law, Tenant agrees to indemnify, hold harmless, and defend Landlord from and against any and all losses, claims, liabilities, and expenses, including reasonable attorney fees, if any, which Landlord may suffer or incur in connection with Tenant's possession, use or misuse of the Premises, except Landlord's act or negligence.

**DANGEROUS MATERIALS.** Tenant shall not keep or have on the Premises any article or thing of a dangerous, flammable, or explosive character that might substantially increase the danger of fire on the Premises, or that might be considered hazardous by a responsible insurance company, unless the prior written consent of Landlord is obtained and proof of adequate insurance protection is provided by Tenant to Landlord.

**COMPLIANCE WITH REGULATIONS.** Tenant shall promptly comply with all laws, ordinances, requirements and regulations of the federal, state, county, municipal and other authorities, and the fire insurance underwriters. However, Tenant shall not by this provision be required to make alterations to the exterior of the building or alterations of a structural nature.

**ARBITRATION.** Any controversy or claim relating to this contract, including the construction or application of this contract, will be settled by binding arbitration, at the expense of the Tenant, and any judgment granted by the arbitrator(s) may be enforced in any court of proper jurisdiction.

**RELATIONSHIP OF PARTIES.** Landlord and Tenant shall not be considered or deemed to be joint venture's or partners and neither shall have the power to bind or obligate the other except as set forth herein.

**ASSIGNABILITY/SUBLETTING.** Tenant may not assign or sublease any interest in the Premises, nor effect a change in the majority ownership of the Tenant (from the ownership existing at the inception of this lease), nor assign, mortgage or pledge this Lease, without the prior written consent of Landlord, which shall not be unreasonably withheld.

**OPTION TO PURCHASE.** Tenant, upon satisfactory performance of this lease or at any time within the term of this lease or any renewal period, shall have the option to purchase the real property described herein for a purchase price of $700,000.00 less all applied payments to date, as described, provided that the Tenant timely executes the option to purchase and is not in default of the Lease Agreement. Thereafter, each of the parties shall promptly execute any and all further instructions or other documents including a Sale Agreement which may be reasonably required for purchase of the real property. **BUILDING AND ALL CONTENTS**

CRT

**CONTAINED THEREIN ARE SOLD AS-IS.**

**NOTICE REQUIRED TO EXERCISE OPTION.** To exercise the Option to Purchase, the Tenant must deliver to the Landlord, a written notice of Tenant's intent to purchase. In addition, the written notice must specify a valid closing date. The closing date must occur before the original expiration date of the Lease Agreement or within any renewal period.

**OPTION CONSIDERATION.** Nonrefundable option consideration paid by the Tenant as consideration for this Option to Purchase Agreement, shall be credited towards the purchase price at closing if, and only if, the Tenant timely exercises the option to purchase during the term of this Agreement.

**EXCLUSIVITY OF OPTION.** This Option to Purchase Agreement is exclusive and **non-assignable** and exists solely for the benefit of the named parties above. Should Tenant attempt to assign, convey, delegate, or transfer this option to purchase without the Landlord's express written permission, any such attempt shall be deemed null and void, and shall be construed as a default.

**CLOSING AND SETTLEMENT.** Tenant agrees that closing costs in their entirety, including any points, fees, and other charges required by the third-party lender, shall be the sole responsibility of Tenant. The only expense related to closing costs apportioned to Landlord shall be the pro-rated share of the ad valorem taxes due at the time of closing, for which Landlord is solely responsible.

**FINANCING DISCLAIMER.** THE PARTIES ACKNOWLEDGE THAT IT IS IMPOSSIBLE TO PREDICT THE AVAILABILITY OF OBTAINING FINANCING TOWARDS THE PURCHASE OF THIS PROPERTY. OBTAINING FINANCING SHALL NOT BE HELD AS A CONDITION OF PERFORMANCE OF THIS OPTION TO PURCHASE AGREEMENT. THE PARTIES FURTHER AGREE THAT THIS OPTION TO PURCHASEAGREEMENT IS NOT ENTERED INTO IN RELIANCE UPON ANY REPRESENTATION OR WAQRRANTY MADE BY EITHER PARTY.,

**REMEDIES UPON DEFAULT.** If Tenant defaults under this Option to Purchase Agreement or the Lease Agreement, then in addition to any other remedies available to Landlord at law or in equity, Landlord may terminate this Option to Purchase by giving written notice of the termination. If terminated, the Tenant shall lose entitlement to any refund of rent or option consideration. For this Option to Purchase Agreement to be enforceable and effective, the Tenant must comply with all terms and conditions of the Lease Agreement.

**RECORDING OF AGREEMENT.** Tenant shall not record this Option to Purchase Agreement on the Public Records of any public office without the express and written consent of Landlord.

CRT

**ACKNOWLEDGMENTS.** The parties are executing this Option to Purchase Agreement voluntarily and without any duress or undue influence. The parties have carefully read this Option to Purchase Agreement and have asked any questions needed to understand its terms, consequences, and binding effect and fully understand them and have been given an executed copy.

**GOVERNING LAW.** This Lease shall be construed in accordance with the laws of the State of West Virginia.

**CHOICE OF FORUM.** All suits arising from this Agreement shall be litigated in Georgia.

**SPECIAL STIPULATION. FOR AND IN CONSIDERATION OF LOWERING THE PURCHASE PRICE FROM $750,000 TO $700,000, TENANT AGREES TO BE SOLELY RESPONSIBLE FOR ADDRESSING ANY LIABILITIES ASSOCIATED WITH THE INSURANCE INSPECTION IN THE ATTACHED PARKING LOT.**

**ENTIRE AGREEMENT/AMENDMENT.** This Lease Agreement contains the entire agreement of the parties and there are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Lease. This Lease may be modified or amended in writing, if the writing is signed by the party obligated under the amendment.

**SEVERABILITY.** If any portion of this Lease shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Lease is invalid or unenforceable, but that by limiting such provision, it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**WAIVER.** The failure of either party to enforce any provisions of this Lease shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Lease.

**BINDING EFFECT.** The provisions of this Lease shall be binding upon and inure to the benefit of both parties and their respective legal representatives, successors and assigns.

**SIGNATURES AND NOTICE.** This Lease shall be signed by the following parties. No notice under this Lease shall be deemed valid unless given or served in writing and forwarded by mail, postage prepaid, addressed to the parties below:

**PERSONAL GUARANTEE.** Landlord requires Tenant and managing partners to personally guarantee all financial obligations under this Agreement.

CRT

**LANDLORD:**

JEG Family Trust
c/o Galardi Enterprises
2121 South Highland Drive
Las Vegas, Nevada 89102

**TENANT:**

Barn Yard BBQ, LLC
1101 Hospital Drive
Hurricane, WV 25526

Such addresses may be changed from time to time by either party by providing notice as set forth above. Notices mailed in accordance with the above provisions shall be deemed received on the third day after posting.

**SIGNATURE PAGE TO FOLLOW:**

JB
CRT

**LANDLORD:JEG FAMILY TRUST**

**By:** ______________________ **Date:** 8-1-16
**Teri Galardi,**
**Trustee /President**

**SUBSCRIBED AND SWORN BEFORE ME ON THIS_____DAY OF _______,2016**

**NOTARY PUBLIC**______________________

**My Commission Expires** ______________________ **SEAL**

**TENANT:**
**Barn Yard BBQ, LLC**

By: ______________________ Date: 7.28.16
Crystal R. Tincher,
Manager, Member

By: ______________________ Date 7.28.16
PERSONAL GUARENTEE

**SUBSCRIBED AND SWORN BEFORE ME ON THIS** 28th **DAY OF** July **,2016**

**NOTARY PUBLIC**______________________

**My Commission Expires** October 29, 2019 **SEAL**

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
DONYIA A. GARRISON
P. O. BOX 136
ELEANOR, WV 25070
My commission expires October 29, 2019

**LANDLORD:JEG FAMILY TRUST**

**By:** ______________________ **Date:** 8-1-16
**Teri Galardi,**
**Trustee /President**

**SUBSCRIBED AND SWORN BEFORE ME ON THIS** 1 **DAY OF** Aug **,2016**

**NOTARY PUBLIC** ______________________

**My Commission Expires** Dec 12, 2019 **SEAL**

CHRISTOPHER LOWE NUTTER NOTARY PUBLIC EXP. Dec. 12, 2019 LUMPKIN COUNTY, GA

**TENANT:**
**Barn Yard BBQ, LLC**

By: ______________________ Date: 7.28.16
Crystal R. Tincher,
Manager, Member

By: ______________________ Date 7.28.16
PERSONAL GUARENTEE

**SUBSCRIBED AND SWORN BEFORE ME ON THIS** 28 **DAY OF** July **,2016**

**NOTARY PUBLIC** ______________________

**My Commission Expires** October 29, 2019 **SEAL**

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
DONYIA A. GARRISON
P. O. BOX 135
ELEANOR, WV 25070
My commission expires October 29, 2019

# "EXHIBIT D"

**ASSIGNMENT AND ASSUMPTION OF MEMBERSHIP INTEREST**
**From**
**JACK E. GALARDI**
**To**
**JACK HAROLD EDWARD GALARDI, Trustee**
**of the JEG Family Trust u/a/d 11/01/2006**

THIS ASSIGNMENT, dated this 17 day of February, 2011, is made and entered into by and between **JACK E. GALARDI** ("Assignor") and **JEG FAMILY TRUST u/a/d 11/01/2006, JACK HAROLD EDWARD GALARDI, Trustee** ("Assignee"), with reference to the following facts:

WHEREAS, Assignor owns a One Hundred percent (100%) interest in **GALARDI RENTALS, LLC**, which was formed pursuant to Articles of Organization, dated as of **October 15, 1999** (the "Articles"); and

WHEREAS, Assignor desires to assign by gift, all of his right, title, duties, obligations, and interest in and to **GALARDI RENTALS, LLC** (the "Interest"), to Assignee;

NOW, THEREFORE, in view of the foregoing facts Assignor assigns, transfers and conveys the Interest to Assignee, and Assignee accepts all rights, title, duties, obligations and interest in and to the Interest.

This Assignment is made upon the following terms, covenants and conditions:

1. It is the intent of Assignor and Assignee that Assignee succeed to the Interest as a Substituted Member, as such is defined in the Operating Agreement.

2. By its acceptance of the Interest, Assignee hereby accepts, and agrees to be bound by, all of the terms and provisions of the Operating Agreement.

3. Assignor hereby warrants and represents for the reliance and benefit of Assignee and the Limited Liability Company, that Assignor is the owner of the Interest, and that Assignor has not previously sold, assigned, transferred, or encumbered the Interest.

4. The parties hereto represent and warrant for the reliance and benefit of the Limited Liability Company that this Assignment is made in accordance with all applicable laws and regulations and that Assignee meets all applicable investor suitability standards.

5. The parties hereto agree to execute and deliver such additional documents as may be necessary or appropriate to effectuate the provisions of the Articles and to consummate the assignment contemplated herein according to the terms and conditions hereof.

6. This Agreement may be executed in several counterparts and all so executed shall constitute one Agreement, binding upon all the parties, notwithstanding that all the parties are not signatories to the original or the same counterpart.

**ASSIGNOR:**

JACK E. GALARDI

**ASSIGNEE:**

**JEG FAMILY TRUST u/a/d 11/01/2006:**

By: JACK HAROLD EDWARD GALARDI, Trustee

**CONSENT OF MEMBERS**

By executing this document, the Members of the Limited Liability Company expressly consent to the assignment of the Interest from Assignor to Assignee, approve the form and content of this document, and acknowledge that Assignee is (as to the Interest) a substituted Member.

**MEMBER:**

JACK GALARDI

STATE OF NEVADA )
) ss.
COUNTY OF CLARK )

On this 17TH day of FEBRUARY, 2011, personally appeared before me, a Notary Public, **JACK GALARDI**, who acknowledged that he executed the above instrument.

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
EMELITA P. SY
No: 92-1257-1
My Appointment Expires Aug. 6, 2012

NOTARY PUBLIC

S:\GSS\data\Share\ClientFiles\Galardi, Jack\DEP-0540\assignment-western.wpd

# TAB 2

Electronically Filed
10/4/2018 9:52 AM
Steven D. Grierson
CLERK OF THE COURT

Michael D. Rawlins
Nevada Bar No. 5467
**SMITH & SHAPIRO, PLLC**
3333 East Serene Avenue, Suite 130
Henderson, Nevada 89074
Telephone: (702) 318-5033
Facsimile: (702) 318-5034
Email: mrawlins@smithshapiro.com

*Attorney for Trustee, Teri Gale Galardi*

**EIGHTH JUDICIAL DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| In the Matter of the<br><br>JEG TRUST-JACK GALARDI JR., SUB-TRUST,<br><br>Deceased. | Case No.: P-18-096792-T<br>Dept. PC<br><br>Hearing Date: October 5, 2018<br>Hearing Time: 9:30 a.m. |

**TRUSTEE TERI GALE GALARDI'S OBJECTION TO *PETITION TO ALLOW THIS COURT TO TAKE JURISDICTION OVER THE TRUST; AND REQUEST FOR REMOVAL OF TRUSTEE***

Teri Galardi, Trustee of the JEG Trust—Jack Galardi Jr. Sub-Trust (the "Sub-Trust") opposes the Petition to Allow This Court to Take Jurisdiction Over the Trust; And Request for Removal of Named Successor Trustee (the "Petition"). The Petition fails to establish any factual or legal basis for removal of the Trustee. It does not even identify the legal theory upon which the Trustee should be removed. It cites to no statutes or trust provisions relating to the Trustee's duties, and, accordingly says nothing about what specific actions of the Trustee would justify her removal. The Court should deny the petition outright.

This response will briefly address the questions raised in the Petition to the extent they can be ascertained. Before doing so, however, the Court should be aware of the reason for the Sub-Trust and some of its provisions.

////

////

SMITH & SHAPIRO, PLLC
3333 E. Serene Ave., Suite 130
Henderson, NV 89074
O:(702)318-5033 F:(702)318-

SMITH & SHAPIRO, PLLC
3333 E. Serene Ave., Suite 130
Henderson, NV 89074
O:(702)318-5033 F:(702)318-

**A. Petitioner Is Unable to Take Care of Himself, and the Trustor Desired that his Daughter Teri Act as Trustee to Watch Over Petitioner.**

Jack Galardi Sr., the decedent, directed through his trust that the bulk of his estate would go to two of his children, Teri, and Jack Jr. Teri is the decedent's oldest daughter and was age 53 at the time of her father's death. Teri was involved in the management of her own businesses prior to her father's death. Her father made it clear to her that she would have to run the family businesses after his death, and that Jack Jr. should not be involved. Petitioner, Jack Jr., was 23 at the time of his father's death. He has Asperger's syndrome, a subset of autism spectrum disorder, and lacks the kinds of life skills that would permit him to care for and make decisions for himself. Among other things, Jack cannot manage money and has demonstrated no ability to make a living for himself. Jack was never involved in the family business and has, to Teri's knowledge, never held a job.

The Trust provided that Teri's share of the Trust assets could be distributed to her free of trust. But Jack's share of the assets should be held in a sub-trust and "distributed to JACK JR. as is necessary, in the discretion of the Trustee, for the support, comfort, well-being, education or health needs of the beneficiary". Teri was named the successor Trustee to her father. The Trust provides the "in the event of the death or incapacity of TERI GALE GALARDI, EMELITA P. SY and DANIEL GEIGER shall serve as the Successor Co-Trustees of all the Trusts hereunder." Trust, Ex. A at Section 7.1. Petitioner now seeks to have Teri removed as Trustee and to have Ms. Sy and Mr. Geiger appointed as substitute Trustees.

Emelita Sy is a long-time employee of the Galardi family businesses. She was the decedent's bookkeeper and personal assistant for over 34 years before his death. She continues to work for the family businesses and assists Teri Galardi. She acts as bookkeeper for the Sub-Trust. Among other things, she makes sure the mortgage payments on Petitioner's home is paid, that the bills for pool maintenance, utilities, landscaping, and the like are paid, and that Petitioner has funds for day to day expenses. Ms. Sy has known Petitioner since he was born.

Mr. Geiger was Mr. Galardi's accountant, and he continues to assist Teri and the family businesses. He reviews Ms. Sy's bookkeeping, prepares tax returns, and provides accounting

SMITH & SHAPIRO, PLLC
3333 E. Serene Ave., Suite 130
Henderson, NV 89074
O:(702)318-5033 F:(702)318-

advice to Teri. He has prepared Petitioner's tax returns throughout Petitioner's life. Both Mr. Geiger and Ms. Sy have been instrumental in assisting Teri as Trustee. Management of the Sub-Trust is a substantial undertaking. The Sub-Trust owns numerous properties, both income-producing and non-income producing. Paying Petitioner's bills alone requires hundreds of checks to be cut every year. The General Ledger for the Sub-Trust in 2017 consisted of 19 pages of fine print.

**B. Key Provisions of the Trust**

Upon the Trustor's death, after some gifts to others, the balance of the trust assets were to be divided into two shares, with 75% of the remaining estate going to Teri and 25% to Jack Jr. Ex. "A" at §5.3.

The Trust did not require a physical division of the trust assets. Even though the Trust anticipated creation of two sub-trusts, the assets themselves were not required to be separated and could be commingled so long as an accurate accounting of each trust's share of assets was kept. Section 9.4 of the Trust gives Teri, as the successor trustee, "the power to partition, allot and distribute the Trust estate in undivided interest or in kind, or party in money and partly in kind…."[i1] Section 9.1 allows the trustee to hold assets in separate or consolidated funds. "[D]ivision into the various shares comprising such fund need be made only upon Trustee's books of account." §9.1(b). As a result, if the Trustee failed to deed some of the properties allocated to

---

[1] Section 9.4 states, "the successor Trustee shall have the power to partition, allot and distribute the Trust estate in undivided interest or in kind, or partly in money and partly in kind, at valuations determined by the Trustee, and to sell such property as the Trustee, in the Trustee's discretion, considers necessary to make such division or distribution. In making any division or partial or final distribution of the Trust estate, the Trustee shall be under no obligation to make a pro rata division or to distribute the same assets to beneficiaries similarly situated. Rather, the Trustee may, in the Trustee's discretion, make non pro rata divisions between Trusts or shares and non pro rata distributions to beneficiaries as long as the respective assets allocated to separate trusts or shares or the distributions to beneficiaries have equivalent or proportionate fair market value. The income tax basis of assets allocated or distributed non pro rata need not be equivalent and may vary to a greater or lesser amount, as determined by the Trustee, in his or her discretion, and no adjustment need be made to compensate for any difference in basis.

SMITH & SHAPIRO, PLLC
3333 E. Serene Ave., Suite 130
Henderson, NV 89074
O:(702)318-5033 F:(702)318-

Jack Jr. into the Sub-Trust, but she accounted for that property as though it belonged to the Sub-Trust, she would be squarely operating within the bounds of the Trust provisions.

The Trust gives the Trustee broad discretion to hold and retain property in the form received "as long as in the exercise of [her] discretion it may be advisable so to do." The Trustee also had authority "to advance funds to any of the Trusts for any Trust purpose."

Section 12.2 of the Trust deals with the required accounting. It states:

> **Accounting.** Upon the written request delivered or mailed to the Trustee by an income beneficiary hereunder, the Trustee shall render a written statement of the financial status of the Trust. Such statement shall include the receipts and disbursements of the Trust for the period requested or for the period transpired since the last statement and the principal of the Trust at the end of such period. Statements need not be rendered more frequently than annually.

Petitioner has received a complete general ledger for the Sub-Trust for 2015, 2016, and 2017.

**C. Petitioner's Complaints and Questions**

The Petition complains about a few things, but mostly asks questions that are better handled out of court. The Trustee has always been willing to respond to questions of Petitioner, whether through his present attorney, or his prior attorneys.

The Note (Petition at paragraphs 9-11)

The Petition raises several questions about a promissory note in favor of the Sub-Trust. As mentioned in the Petition, much of the Trustor's properties (gentlemen's clubs) were subject to strict licensing requirements and could not be transferred to Petitioner's Sub-Trust. As a practical matter, the Trustee was required to allocate the operating clubs as part of her inheritance and distribute other property, such as land and cash, to Petitioner's Sub-Trust. This left Teri with the burden of operating businesses for her part of the inheritance, while Jack inherited primarily non-operating assets. To make up Jack's full 25% inheritance, Teri caused Jack to receive a note payable from her sub-trust, guaranteed by her. Cash generated by the clubs has been used to make payments on the note.

Every year since the note was issued, the Trustee has funded amounts in excess of those required by the note. For example, the Trustee caused $378,000 in payments to be made under

SMITH & SHAPIRO, PLLC
3333 E. Serene Ave., Suite 130
Henderson, NV 89074
O:(702)318-5033 F:(702)318-

the note in 2015, when under the terms of the note, only $89,100 is required to be paid. Petitioner claims that the Trustee is using the Sub-Trust bank account as her "personal overdraft/temporary funds." That is not accurate. On a few occasions, more than 18 months ago, the Trustee's bookkeeper made small transfers from the Sub-Trust account to cover short-term operating needs of the businesses whose cash flow was needed to make the payments on the note. In every case, the bookkeeper has accounted for the transfers and any interest due to the Sub-Trust. After Petitioner's counsel objected to the practice, the bookkeeper ceased using the Sub-Trust funds for short-term cash management transfers. The last short-term cash management transfer between sub-trusts ($1,000 for two days) occurred in January, 2017.

In any event, the Trust did not require the Trustee to keep separate bank accounts for the Petitioner's Sub-Trust. The Trustee was permitted to hold assets in separate or consolidated funds. Ex. A at Section 9.1.

Petitioner raises the following questions and concerns about the note:

**Why does the note use 3.32% interest when 30-year secured mortgage loans were 4% when the note was executed?** The interest rate was based on IRS Applicable Federal Rates.

**Why has Teri made sporadic payments under the note?** Note payments have varied according to the ability of the club assets to generate cash to pay the note. In 2015, Teri caused the note payments to be made at more than three times the rate required by the note. If, hypothetically, the trustee made no payments to the Sub-Trust for a year, the trustee would still be ahead of the payment schedule set forth in the note.

**Claim: The "sporadic" payments have created an accounting nightmare.** The Trust's bookkeeper, Emilita Sy, has logged every payment, the date the payment was made, and a rolling principal balance. There is no accounting nightmare.

<u>The $400,000 mortgage note from James Dent (Petition at paragraph 12).</u>

Petitioner's Sub-Trust holds a $400,000 mortgage note bearing interest at 5.25%. The obligor, James Dent, is in bankruptcy. Petitioner claims that Teri "has failed to provide adequate information to determine if the investment is secure." That is false. The deed of trust and title vesting report were emailed to Petitioner's counsel on June 28, 2018. The public records of the

SMITH & SHAPIRO, PLLC
3333 E. Serene Ave., Suite 130
Henderson, NV 89074
O:(702)318-5033 F:(702)318-

bankruptcy case indicate the property will be sold and that the Trust will recover in full on its secured claim. The debtor filed its plan of reorganization last week, and the sale is expected to occur within a few months. Petitioner does not say why anything pertaining to the Dent note warrants removal of the Trustee.

The Ft. Lauderdale residence and lot (Petition at paragraph 13)

The Fort Lauderdale residence was appraised at $4.2 million for purposes of the 706 return. It was listed on the 2015 General Ledger at $4.275 million because that valuation included the home furnishings. When the Trustee sought to sell that property, she learned its market value was less than the appraisal indicated, and Petitioner's Sub-Trust suffered a tax loss because the sale price was below the Sub-Trust's basis in the property. That loss will carry forward and wipe out taxable gains on other properties owned by the Sub-Trust.

The Fort Lauderdale residence was sold in 2015. It never generated income because the market for leasing a $4.2 million home was sparse, and the cost of maintaining the home, paying the mortgage on the $3 million plus loan, and paying taxes was substantial.

Petitioner has provided no facts about handling of the Ft. Lauderdale residence that would support removal of the Trustee.

The West Virginia Restaurant Lease (Petition at paragraph 14)

Petitioner's Sub-Trust owns a restaurant property in West Virginia. The property was a distressed property in need of substantial repairs after a fire. The Trustee engaged a real estate agent to find a purchaser or tenant willing to make the repairs at the tenant's cost. The real estate agent located a tenant willing to make substantial improvements to the premises and recommended that the Trustee accept the deal as the best available opportunity for the Sub-Trust.

Petitioner claims that the new lease is not in the name of the Sub-Trust. That is true, but the Trustee recognizes that property belongs to Petitioner's Sub-Trust, it is listed on the Sub-Trust's general ledger, and all income from the property goes into the Sub-Trust.

Petitioner also complains that the terms of the lease are "questionable" because the tenant has an option to purchase with all payments going toward the purchase price. Petitioner provides no market data, or comparables, or offers to show that a better lease is available. The fact is, there

SMITH & SHAPIRO, PLLC
3333 E. Serene Ave., Suite 130
Henderson, NV 89074
O:(702)318-5033 F:(702)318-

is very little market for the property, and the Sub-Trust is fortunate to have a tenant making improvements to the property and providing rental income to the Sub-Trust. Without the present tenant, the Sub-Trust would be forced to spend its assets to repair and improve the property. The Trustee is entitled to rely on the advice of professionals and did so in this instance.

The Moapa raw land (Petition at paragraph 15 (a)&(b)).

Petitioner claims that the Sub-Trust owns 23 acres of raw land in Moapa that are not income producing. This is true, and it is fully within the trustee's discretion to "hold and retain" property. The trustee is watching the market and will sell it when she deems it appropriate.

Petitioner complains these properties were not retitled to the Sub-Trust until 2017. The Trust does not require that property be retitled into the Sub-Trust, so long as it is properly accounted for. Ex. A. at §9.1(b).

The Adamo Dr. property in Tampa, FL (Petition at paragraph 15(c)).

Petitioner claims that raw land in Tampa, Florida hasn't been properly titled to the Sub-Trust. But as Petitioner notes, the property sold for over $40,000 in 2017 and shows up on the 2017 General Ledger provided to Petitioner. Regardless of how the property was titled, the Proceeds of this sale went into Petitioner's account. This property sold for substantially higher than the $5000 value on the 706 Return.

The Marathon Florida land (Petition at paragraph 15(d)).

Petitioner claims the Marathon, Florida land does not show on the 2015 GL. It does show on the 2015 GL. The property was sold, and the Sub-Trust received the proceeds. The Trustee will provide information about the sale upon Petitioner's request.

The McDonough, Georgia land (Petition at paragraph 15(3)).

Petitioner notes that this property was sold for about $40,000 less than the value listed on the 706 Return. Petitioner does not indicate why this justifies the removal of the Trustee.

////

////

////

////

SMITH & SHAPIRO, PLLC
3333 E. Serene Ave., Suite 130
Henderson, NV 89074
O:(702)318-5033 F:(702)318-

**Conclusion**

Petitioner has utterly failed to show grounds to remove Teri Galardi as Trustee. He has cited no statutes, no case law, and no trust provisions that would support such a move. Teri has served diligently as Trustee and has not charged the Sub-Trust for her services. She is fulfilling her Father's wishes, and Petitioner is fortunate to have Teri looking out for his interests. The Court should deny the request.

DATED this 3rd day of October, 2018.

**SMITH & SHAPIRO, PLLC**

*/s/ Michael D. Rawlins*
Michael D. Rawlins
Nevada Bar No. 5467
3333 East Serene Avenue, Suite 130
Henderson, Nevada 89074

*Attorney for Trustee, Teri Gale Galardi*

SMITH & SHAPIRO, PLLC
3333 E. Serene Ave., Suite 130
Henderson, NV 89074
O:(702)318-5033 F:(702)318-

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of Smith & Shapiro, PLLC and that, on this 3rd day of October, 2018, I served a true and correct copy of the forgoing Objection by e-serving a copy on all parties listed as Service Recipients in Odyssey File & Serve, the Court's on-line, electronic filing website, pursuant to Administrative Order 14-2, entered on May 9, 2014, and by U.S. Mail, postage pre-paid to the following:

Shirley A. Derke, Esq.
627 S. Seventh St.
Las Vegas, Nevada 89101
*Attorney for Petitioner*, *Jack E. Galardi, Jr.*

Daniel Geiger, named Successor Co-Trustee
2850 S. Jones Blvd,, Ste, 2
Las Vegas, Nevada 89146

Emelita P. Sy, named Successor Co-Trustee
2121 S. Highland Dr.
Las Vegas, NV 89102

/s/ Jennifer A. Bidwell____________
Jennifer A. Bidwell, an employee of
SMITH & SHAPIRO

# EXHIBIT A

EXHIBIT A

# THE TOTAL AMENDMENT AND RESTATEMENT
# OF THE
# JEG FAMILY TRUST
Originally Dated November 1, 2006

Prepared by
GREGORY S. SMITH, LTD.
2520 St. Rose Parkway, Suite 210
Henderson, Nevada 89074

# TABLE OF CONTENTS

ARTICLE I
NAME AND BENEFICIARIES OF THE TRUST . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARTICLE II
DISTRIBUTION OF INCOME AND PRINCIPAL
WHILE THE TRUSTOR SHALL LIVE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARTICLE III
INCAPACITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARTICLE IV
DISTRIBUTION OF CASH, HOUSEHOLD AND PERSONAL EFFECTS
AFTER DEATH OF TRUSTOR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARTICLE V
DISTRIBUTION OF INCOME AND PRINCIPAL
AFTER DEATH OF THE TRUSTOR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARTICLE VI
TRUSTEE'S DISCRETION ON DISTRIBUTION TO PRIMARY BENEFICIARIES . . . . . 9

ARTICLE VII
PROVISIONS RELATING TO TRUSTEESHIP . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARTICLE VIII
PROVISIONS RELATING TO TRUSTOR'S POWERS . . . . . . . . . . . . . . . . . . . . . . . 14

ARTICLE IX
PROVISIONS RELATING TO TRUSTEE'S POWERS . . . . . . . . . . . . . . . . . . . . . . . 14

ARTICLE X
SUBCHAPTER S STOCK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

ARTICLE XI
QUALIFIED PLANS AND IRA'S . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

ARTICLE XII
PROTECTION OF AND ACCOUNTING BY TRUSTEE . . . . . . . . . . . . . . . . . . . . . . 25

ARTICLE XIII
GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# TRUST AGREEMENT

**OF THE**

**TOTAL AMENDMENT AND RESTATEMENT**

**OF THE**

**JEG FAMILY TRUST**

THIS DECLARATION OF TRUST AGREEMENT is a Total Amendment and Restatement of the JEG FAMILY TRUST, which was originally established on November 1, 2006. This Total Amendment and Restatement, as follows, is made on August 16th, 2012, by JACK E. GALARDI, also known as JACK HAROLD EDWARD GALARDI (hereinafter referred to as the "Trustor" or "Grantor" when reference is made to him in his capacity as creator of this Trust and the transferor of the principal properties thereof), and JACK E. GALARDI, of Clark County, Nevada (hereinafter referred to as the "Trustee," when reference is made to him in his capacity as Trustee or fiduciary hereunder).

*Witnesseth:*

WHEREAS, the Trustor desires by this Trust Agreement to totally amend and restate the "JEG FAMILY TRUST" for the use and purposes hereinafter set forth, to make provisions for the care and management of certain of his present properties and for the ultimate distribution of the Trust properties;

NOW, THEREFORE, the Trustor hereby gives, grants, and transfers to the Trustee, IN TRUST, which Trustee hereby declares that he has received from the Grantor, the property listed on Schedule "A", (which schedule is attached hereto and made a part of this Trust Agreement), TO HAVE AND TO HOLD THE SAME IN TRUST, and to manage, invest and reinvest the same and any additions that may be made from time to time hereto, subject to the provisions of Trust as hereinafter provided.

All property subject to this Trust Indenture shall constitute the Trust estate and shall be held for the purpose of protecting and preserving it, collecting the income therefrom, and making distributions of the principal and income thereof as hereinafter provided.

Additional property may be added to the Trust estate, at any time and from time to time, by the Trustor or any person or persons, by inter vivos act or testamentary transfer, or by insurance contract or Trust designation.

The property comprising the original Trust estate, during the life of the Trustor, shall retain its character as his separate property, as designated on the attached Schedule "A" or document of transfer or conveyance. Property subsequently received by the Trustee during the life of the Trustor may be listed on addenda to Schedule "A" and shall have the separate character designated thereon or on the document of transfer or conveyance.

## ARTICLE I
## NAME AND BENEFICIARIES OF THE TRUST

1.1 **Name**. The Trust created in this instrument may be referred to as the "JEG FAMILY TRUST", and any separate Trust may be referred to by adding the name of the beneficiary.

1.2 **Beneficiaries**. The Trust estate created hereby shall be for the use and benefit of JACK E. GALARDI, and for the other beneficiaries named herein. The names of the five (5) now living children of the Trustor are JACKIE GALARDI, JACK GALARDI, JR., MICHAEL D. GALARDI, TERI GALE GALARDI, and KATHY HOLDER. For purposes of this Trust Indenture, the Trustor has intentionally and with full knowledge, failed to provide for JACKIE GALARDI and MICHAEL D. GALARDI, and their issue and they shall be disinherited and treated as though they predeceased the Trustor. The Trustor wishes to express his love and affection for KATHY HOLDER and he has provided for her under Sections 5.2 and 5.5, below. However, except for Sections 5.2 and 5.5, below,

KATHY HOLDER shall not be considered a child of the Trustor. JACK GALARDI, JR. and TERI GALE GALARDI shall hereinafter be designated as the "children of the Trustor."

**ARTICLE II**
**DISTRIBUTION OF INCOME AND PRINCIPAL**
**WHILE THE TRUSTOR SHALL LIVE**

2.1 **Distributions While The Trustor Lives**. During the lifetime of JACK HAROLD EDWARD GALARDI, he shall be entitled to all income and principal of the Trust property without limitation.

2.2 **Use of Residence**. While the Trustor shall live, he may possess and use, without rental or accounting to Trustee, any residence owned by this Trust.

**ARTICLE III**
**INCAPACITY**

3.1 **Incapacity of Trustor**. If at any time, as certified in writing by two licensed physicians, the Trustor has become physically or mentally incapacitated, whether or not a court of competent jurisdiction has declared him incompetent, mentally ill, or in need of a guardian or conservator, the Trustee shall pay to the Trustor or apply for his benefit, the amounts of net income and principal necessary, in the Trustee's discretion, for the proper health, support and maintenance of the Trustor in accordance with his accustomed manner of living, until the incapacitated Trustor, either in the Trustee's discretion or as certified by two licensed physicians, is again able to manage his own affairs or until his death.

3.2 **Reliance on writing**. Anyone dealing with this Trust may rely on the physicians' written statements regarding the Trustor's incapacity, or a photocopy

of the statements, presented to them by the Trustee. A third party relying on such written statements shall not incur any liability to any beneficiary for any dealings with the Trustee in reliance upon such written statements. This provision is inserted in this Trust indenture to encourage third parties to deal with the Trustee without the need for court proceedings.

## ARTICLE IV
## DISTRIBUTION OF CASH, HOUSEHOLD AND PERSONAL EFFECTS AFTER DEATH OF TRUSTOR

4.1 **Distribution of Cash and Personal Property**. After the death of the Trustor, the Trustee shall distribute all cash, tangible personal property of the deceased Trustor, including but not limited to, furniture, furnishings, rugs, pictures, books, silverplate, linen, china, glassware, objects of art, wearing apparel, jewelry, ornaments, and automobiles in accordance with any written statement or list that the Trustor leaves disposing of this property. Any such statement or list then in existence shall be determinative with respect to all bequests made therein. Any cash or property not included on said list shall be added to the Trust created in Article V below.

## ARTICLE V
## DISTRIBUTION OF INCOME AND PRINCIPAL AFTER DEATH OF THE TRUSTOR

5.1 **Payment of Expenses**. Upon the death of the Trustor, the Trustee may, in the Trustee's sole discretion, pay from the income and/or principal of this Trust, the administrative expenses, the expenses of the last illness and funeral of the Trustor, and any other debt owed by Trustor. Following such payments, the

principal and undistributed income of the Trust shall be administered and as set forth herein.

5.2 **Specific Bequest for the Benefit of KATHY HOLDER**. Upon the death of the Trustor, the Trustee shall set aside the sum of Three Hundred Thousand dollars ($300,000.00) for the benefit of KATHY HOLDER ("KATHY"), to be held in trust as follows:

(a) For so long as KATHY shall live, KATHY's share shall be retained in a separate Trust and the net income and principal from this Trust share shall be distributed to KATHY as is necessary, in the discretion of the Trustee, for the support, comfort, well-being, education or health needs of the beneficiary. In addition, principal may be used, in the discretion of the Trustee, for the education or emergency health needs of the beneficiary.

(b) Upon the death of KATHY, the remainder of this Trust share, if any, shall be distributed pursuant to Section 5.3, below.

5.3 **Distribution of the Remaining Trust Estate**. Upon the death of the Trustor, the Trustee shall divide the Trust estate into two (2) shares, namely, the TERI GALARDI SUB-TRUST and the JACK GALARDI JR. SUB-TRUST, to be administered and distributed as follows:

(a) The TERI GALARDI SUB-TRUST: Seventy-five percent (75%) of the remaining Trust estate shall be distributed to TERI GALE GALARDI, if she is then living, outright and free of trust. If TERI GALE GALARDI is not then living, then this Trust share shall be divided into as many equal shares as there are children of TERI GALE GALARDI who are then living (hereinafter referred to as "grandchildren of the Trustor" or "grandchild of the Trustor") and grandchildren of the Trustor who are deceased leaving issue then living, and these shares shall be distributed or retained as follows:

(1) If any grandchild of the Trustor is then the age of Thirty-five (35) years or older, his or her share shall be distributed to him or her outright and free of trust.

(2) For each grandchild of the Trustor who is then under the age of Thirty-five (35) years, his or her share shall be retained in a separate Trust and, until the grandchild attains the age of

Twenty-five (25) years, the net income and principal from each Trust share shall be distributed to the grandchild as is necessary, in the discretion of the Trustee, for the support, comfort, well-being, education or health needs of the grandchild. After attaining the age of Twenty-five (25) years, the net income from each Trust share shall be distributed at least quarter annually to the grandchild of the Trustor. In addition, principal may be used, in the discretion of the Trustee, for the education or emergency health needs of the beneficiary.

(3) Upon attaining the age of Twenty-five (25) years, one-third (1/3) of the then value of the grandchild's Trust share shall be distributed to him or her outright and free of trust. Upon attaining the age of Thirty (30) years, one-half (½) of the then value of the grandchild's Trust share shall be distributed to him or her outright and free of trust. Upon attaining the age of Thirty-five (35) years, the entire remaining balance of the grandchild's Trust share shall be distributed to the grandchild outright and free of trust. If a grandchild has already attained age Twenty-five (25), Thirty (30), or Thirty-five (35) at the division date, the Trustee shall, upon making the division, distribute to such grandchild one-third (1/3), one-half (½), or all of his or her Trust share, respectively.

(4) If prior to full distribution a grandchild becomes deceased, his or her remaining share shall be distributed outright equally to his or her issue who are then living under the same terms and conditions as set forth in this section or, if there are no then living issue of the grandchild, his or her remaining share shall be distributed outright to his or her then living siblings. However, if any such distributee is one for whom a Trust is then being administered under this Section 5.2, the share of such distributee shall, instead of being distributed outright, be added to that Trust and administered and distributed in accordance with its terms.

(b) <u>The JACK GALARDI, JR. SUB-TRUST</u>: Twenty-five percent (25%) of the remaining Trust estate shall be distributed to the JACK GALARDI, JR. SUB-TRUST, to be distributed or retained as follows.

(1) For so long as JACK GALARDI, JR. ("JACK JR.") shall live, JACK JR.'s share shall be retained in a separate Trust and the net income and principal from this Trust share shall be distributed to JACK JR. as is necessary, in the discretion of the Trustee, for the

support, comfort, well-being, education or health needs of the beneficiary. In addition, principal may be used, in the discretion of the Trustee, for JACK JR.'s education or emergency health needs.

(2) In the event that JACK JR. should predecease the Trustor, or, upon his death, this Trust share shall be divided into as many equal shares as there are children of JACK JR. who are then living (hereinafter referred to as "grandchildren of the Trustor" or "grandchild of the Trustor") and grandchildren of the Trustor who are deceased leaving issue then living, and these shares shall be distributed or retained as follows:

(i) If any grandchild of the Trustor is then the age of Thirty-five (35) years or older, his or her share shall be distributed to him or her outright and free of trust.

(ii) For each grandchild of the Trustor who is then under the age of Thirty-five (35) years, his or her share shall be retained in a separate Trust and, until the grandchild attains the age of Twenty-five (25) years, the net income and principal from each Trust share shall be distributed to the grandchild as is necessary, in the discretion of the Trustee, for the support, comfort, well-being, education or health needs of the grandchild. After attaining the age of Twenty-five (25) years, the net income from each Trust share shall be distributed at least quarter annually to the grandchild of the Trustor. In addition, principal may be used, in the discretion of the Trustee, for the education or emergency health needs of the beneficiary.

(iii) Upon attaining the age of Twenty-five (25) years, one-third (1/3) of the then value of the grandchild's Trust share shall be distributed to him or her outright and free of trust. Upon attaining the age of Thirty (30) years, one-half (½) of the then value of the grandchild's Trust share shall be distributed to him or her outright and free of trust. Upon attaining the age of Thirty-five (35) years, the entire remaining balance of the grandchild's Trust share shall be distributed to the grandchild outright and free of trust. If a grandchild has already attained age Twenty-five (25), Thirty (30), or Thirty-five (35) at the division date, the Trustee shall, upon making the division, distribute to such

grandchild one-third (1/3), one-half (½), or all of his or her Trust share, respectively.

(iv) If prior to full distribution a grandchild becomes deceased, his or her remaining share shall be distributed outright equally to his or her issue who are then living under the same terms and conditions as set forth in this section or, if there are no then living issue of the grandchild, his or her remaining share shall be distributed outright to TERI GALE GALARDI pursuant to the terms of Section 5.3(a), above.

5.4 **Charging Advances Against Beneficiary's Distributive Shares.** Whenever any Trust assets here under are being divided into shares and, under the provisions of this trust, the share of any person in such assets is required to be charged with any advance (with or without interest on such advance), the actual charging of such advance against such share shall be accounted for on a hotchpot basis; that is, as though the amount of such advance (based on fair market values at the effective date of such advance and including interest thereon, if so provided) were a part of an increase in the Trust assets being divided into shares and as though the amount of such advance had been allocated to and represented a prior partial distribution toward the share of the person who is charged with such advance. Likewise, whenever any Trust assets hereunder are being divided into shares and there is included among those assets a promissory note receivable (or similar monetary obligation due the Trust involved) which its Trustees determine is owed directly or indirectly by any person who is directly or indirectly a beneficiary of one of those shares, (i) such receivable shall be valued at its then face amount (including accrued but unpaid interest thereon, if any) and (ii), in the making of such division into shares, such receivables shall be allocated at such value to the share in which such debtor has a direct or indirect interest (at least insofar as the size of such share permits such allocation).

5.5 **Generation Skipping Trusts**. If the special generation skipping transfer tax exemption election provided by Section 2652(a)(3) of the Internal Revenue

Code (Code) is exercised as to any property held in this Trust or if this Trust is receiving property from any other Trust to which the special election has been made, the Trustee is authorized, at any time in the exercise of absolute discretion, to set apart such property in a separate trust so that its inclusion ratio, as defined in Section 2642(a) of the Code is or remains zero. If such Trust(s) is (are) created then any estate or death taxes as well as any discretionary distributions to the Children of the Trustor shall be first charged against and paid out of the principal of the Trust(s) as to which the special election provided by Section 2652(a)(3) is not applicable.

5.6 **Last Resort Clause**. In the event that the principal of the Trust administered under this Article V is not disposed of under the foregoing provisions, the remainder, if any, shall be distributed, outright and free of Trust, to the heirs at law of JACK HAROLD EDWARD GALARDI, their identities and shares to be determined according to the laws of the State of Nevada then in effect relating to the intestate succession of separate property.

## ARTICLE VI

## TRUSTEE'S DISCRETION ON DISTRIBUTION TO PRIMARY BENEFICIARIES

6.1 **Delay of Distribution**. Notwithstanding the distribution provisions of Article V, the following powers and directions are given to the Trustee:

(a) If, upon any of the dates described in Article V, the Trustee for any reason described below determines, in the Trustee's sole discretion, that it would not be in the best interest of the beneficiary that a distribution take place, then in that event the said distribution shall be totally or partially postponed until the reason for the postponement has been eliminated. During the period of postponement, the Trustee shall have the absolute discretion to distribute income or principal to the beneficiary as the Trustee deems advisable for the beneficiary's welfare.

(b) If said causes for delayed distribution are never removed, then the Trust share of that beneficiary shall continue until the death of the beneficiary and

then be distributed as provided in this Trust Instrument. The causes of such delay in the distribution shall be limited to any of the following:

(1) The current involvement of the beneficiary in a divorce proceeding or a bankruptcy or other insolvency proceeding.

(2) The existence of a large judgment against the beneficiary.

(3) Chemical abuse or dependency, or the conviction of the beneficiary of a felony, involving drugs or narcotics, unless a five year period has followed said conviction.

(4) The existence of any event that would deprive the beneficiary of complete freedom to expend the distribution from the Trust estate according to his or her own desires.

(5) In the event that a beneficiary is not residing in the United States of America at any given time, then the Trustee may decline to transmit to him or her any part or all of the income and shall not be required to transmit to him or her any of the principal if, in the Trustee's sole and uncontrolled judgment, the political and/or economic conditions of such place of residence of the beneficiary are such that it is likely the money would not reach him or her, or upon reaching him or her, would be unduly taxed, seized, confiscated, appropriated, or in any way taken from him or her in such a manner as to prevent his or her use and enjoyment of the same.

(6) The judicially declared incompetency of the beneficiary.

(c) The Trustee shall not be responsible unless the Trustee has knowledge of the happening of any event set forth above.

(d) To safeguard the rights of the beneficiary, if any distribution from his or her Trust share has been delayed for more than one (1) year, he or she may apply to the District Court in Las Vegas, Nevada, for a judicial determination as to whether the Trustee has reasonably adhered to the standards set forth herein. The Trustee shall not have any liability in the event the Court determines the Trustee made a good faith attempt to reasonably follow the standards set forth above.

## ARTICLE VII

## PROVISIONS RELATING TO TRUSTEESHIP

7.1 **Successor Trustee**. In the event of the death or incapacity of the original Trustee, TERI GALE GALARDI shall serve as the Successor Trustee of all of the Trusts hereunder. In the event of the death or incapacity of TERI GALE GALARDI, EMELITA P. SY and DANIEL GEIGER shall serve as the Successor co-Trustees of all of the Trusts hereunder. If either of them should become deceased, unable or unwilling to serve as a Successor co-Trustee, then MARICAR A. MARTINEZ shall serve as Successor co-Trustee with the survivor of EMELITA P. SY or DANIEL GEIGER of all of the Trusts hereunder. If the other of them and MARICAR A. MARTINEZ should become deceased, unable or unwilling to serve as a Successor co-Trustee, the survivor of EMELITA P. SY, DANIEL GEIGER or MARICAR A. MARTINEZ shall serve as sole Successor Trustee of all of the Trusts hereunder. In determining the incapacity of any Trustee serving hereunder, the guidelines set forth in Section 3.1 may be followed.

If no Successor Trustee is designated to act in the event of the death, incapacity or resignation of the Trustee then acting, or no Successor Trustee accepts the office, the Trustee then acting if there is may appoint a Successor Trustee. If no such appointment is made, the majority of the adult beneficiaries entitled to distribution from this trust may appoint a Successor Trustee.

When Two (2) Successor Trustees are serving, and an agreement can not be reached between them, the Trust Consultant, defined below, shall make the deciding vote.

7.2 **Trust Consultant**. During the lifetime of the Trustor, Gregory S. Smith (herein known as the "Consultant" to the Trust) shall have the right and power by giving ten (10) days written notice to the Trustee to remove any Trustee named herein (except the Trust Consultant may not remove the Trustor as a Trustee

hereunder) or any Successor Trustee, and to appoint either (1) an individual who is an "independent" Trustee pursuant to Internal Revenue Code Section 674, as amended, or (2) a Nevada bank or trust company to serve as Trustee or as Co-Trustees of the Trusts created hereunder. If any Trustee ceased to serve, the Trust Consultant shall have the power to appoint a successor Trustee as provided above. In the event the Trust Consultant shall fail to appoint a Successor Trustee, a majority of the adult beneficiaries may appoint a banking institution or trust company to so serve.

If no successor Trust Consultant is designated to act in the event of the death, incapacity or resignation of the Trust Consultant then acting, or no successor Trust Consultant accepts the office, the Trust Consultant then acting may appoint a successor Trust Consultant. If no such appointment is made, the majority of the adult beneficiaries entitled to distribution from this Trust may appoint a successor Trust Consultant.

7.3 **Liability Of Successor Trustee**. No Successor Trustee shall be liable for the acts, omissions, or default of a prior Trustee. Unless requested in writing within sixty (60) days of appointment by an adult beneficiary of the Trust, no Successor Trustee shall have any duty to audit or investigate the accounts or administration of any such Trustee, and may accept the accounting records of the predecessor Trustee showing assets on hand without further investigation and without incurring any liability to any person claiming or having an interest in the Trust.

7.4 **Acceptance By Trustee**. A Trustee shall become Trustee or Co-Trustee jointly with any remaining or surviving Co-Trustees, and assume the duties thereof, immediately upon delivery of written acceptance to Trustor, during his lifetime and thereafter to any Trustee hereunder, or to any beneficiary hereunder, if for any reason there shall be no Trustee then serving, without the necessity of any other act, conveyance, or transfer.

7.5 **Delegation By Trustee**. Any individual Co-Trustee shall have the right at any time, by an instrument in writing delivered to the other Co-Trustee, to delegate to such other Co-Trustee any and all of the Trustee's powers and discretion.

7.6 **Resignation Of Trustee**. Any Trustee at any time serving hereunder may resign as Trustee by delivering to Trustor, during his lifetime and thereafter to any Trustee hereunder, or to any beneficiary hereunder if for any reason there shall be no Trustee then serving hereunder, an instrument in writing signed by the resigning Trustee.

7.7 **Corporate Trustee**. During the Trust periods, if any, that a corporate Trustee acts as Co-Trustee with an individual, the corporate Trustee shall have the unrestricted right to the custody of all securities, funds, and other property of the Trusts and it shall make all payments and distributions provided hereunder.

7.8 **Majority**. Subject to any limitations stated elsewhere in this Trust Indenture, all decisions affecting any of the Trust estate shall be made in the following manner: While three or more Trustees, whether corporate or individual, are in office, the determination of a majority shall be binding. If only two Trustees are in office, they must act unanimously, except when at an impasse, then the Trust Consultant shall cast the deciding vote.

7.9 **Bond**. No bond shall ever be required of any Trustee hereunder.

7.10 **Expenses and Fees**. The Successor Trustee shall be reimbursed for all actual expenses incurred in the administration of any Trust created herein. The Successor Trustee shall be entitled to reasonable compensation for service rendered to the Trust. In no event, however, shall the fees exceed those fees that would have been charged by state or federal banks in the jurisdiction in which the Trust is being governed. However, any corporate Trustee shall be entitled to compensation for its services in accordance with its published fee schedule.

## ARTICLE VIII

## PROVISIONS RELATING TO TRUSTOR'S POWERS

8.1 **Power To Amend**. During the lifetime of the Trustor, this Trust Indenture may be amended in whole or in part by an instrument in writing, signed by the Trustor, and delivered to the Trustee. Upon the death of the Trustor, this Trust Indenture shall not be amended.

8.2 **Power To Revoke**. During the lifetime of Trustor, the Trustor may revoke this Trust Indenture by an instrument in writing, signed by the Trustor. Upon revocation, the Trustee shall deliver the revoked portion of the Trust property to the Trustor. Upon the death of the Trustor, this Trust Indenture shall not be revoked.

8.3 **Power To Change Trustee**. During the lifetime of the Trustor, he may change the Trustee or Successor Trustee of this Trust by an instrument in writing.

8.4 **Additions To Trust**. Any additional property acceptable to the Trustee may be transferred to this Trust. The property shall be subject to the terms of this Trust.

8.5 **Gift Program**. If the Trustor becomes legally incompetent, or if in the Trustee's judgment reasonable doubt exists regarding capacity, the Trustee is authorized in such Trustee's sole discretion to continue any gift program which the Trustor had previously commenced, to make use of the federal gift tax annual exclusion. Such gifts may be made outright or in trust.

## ARTICLE IX

## PROVISIONS RELATING TO TRUSTEE'S POWERS

9.1 **Management Of Trust Property**. With respect to the Trust property, except as otherwise specifically provided in this Trust, the Trustee shall have all

powers now or hereafter conferred upon trustees by applicable state law, and also those powers appropriate to the orderly and effective administration of the Trust. Any expenditure involved in the exercise of the Trustee's powers shall be borne by the Trust estate. Such powers shall include, but not be limited to, the following powers with respect to the assets in the Trust estate:

(a) To register any securities or other property held hereunder in the name of the Trustee or in the name of a nominee, with or without the addition of words indicating that such securities or other property are held in a fiduciary capacity, and to hold in bearer form any securities or other property held hereunder so that title thereto will pass by delivery, but the books and records of Trustee shall show that all such investments are part of his respective funds.

(b) To hold, manage, invest and account for the separate trusts in one or more consolidated funds, in whole or in part, as he may determine. As to each consolidated fund, the division into the various shares comprising such fund need be made only upon Trustee's books of account.

(c) To lease Trust property for terms within or beyond the term of the Trust and for any purpose, including exploration for and removal of gas, oil, and other minerals; and to enter into community oil leases, pooling and unitization agreements.

(d) To borrow money, mortgage, hypothecate, pledge or lease Trust assets for whatever period of time Trustee shall determine, even beyond the expected term of the respective Trust.

(e) To hold and retain any property, real or personal, in the form in which the same may be at the time of the receipt thereof, as long as in the exercise of his discretion it may be advisable so to do, notwithstanding same may not be of a character authorized by law for investment of trust funds.

(f) To invest and reinvest in his absolute discretion, and he shall not be restricted in his choice of investments to such investments as are permissible for fiduciaries under any present or future applicable law, notwithstanding that the same may constitute an interest in a partnership.

(g) To advance funds to any of the Trusts for any Trust purpose. The interest rate imposed for such advances shall not exceed the current rates.

(h) To institute, compromise, and defend any actions and proceedings.

(i) To vote, in person or by proxy, at corporate meetings any shares of stock in any Trust created herein, and to participate in or consent to any voting Trust, reorganization, dissolution, liquidation, merger, or other action affecting any such shares of stock or any corporation which has issued such shares of stock.

(j) To partition, allot, and distribute, in undivided interest or in kind, or partly in money and partly in kind, and to sell such property as the Trustee may deem necessary to make division or partial or final distribution of any of the Trusts.

(k) To determine what is principal or income of the Trusts and apportion and allocate receipts and expenses as between these accounts.

(l) To make payments hereunder directly to any beneficiary under disability, to the guardian of his or her person or estate, to any other person deemed suitable by the Trustees, or by direct payment of such beneficiary's expenses.

(m) To employ agents, attorneys, brokers, and other employees, individual or corporate, and to pay them reasonable compensation, which shall be deemed part of the expenses of the Trusts and powers hereunder.

(n) To accept additions of property to the Trusts, whether made by the Trustor, a member of the Trustor's family, by any beneficiaries hereunder, or by any one interested in such beneficiaries.

(o) To hold on deposit or to deposit any funds of any Trust created herein, whether part of the original Trust fund or received thereafter, in one or more savings and loan associations, bank or other financing institution and in such form of account, whether or not interest bearing, as Trustee may determine, without regard to the amount of any such deposit or to whether or not it would otherwise be a suitable investment for funds of a trust.

(p) To open and maintain safety deposit boxes in the name of this Trust.

(q) To make distributions to any Trust or beneficiary hereunder in cash or in specific property, real or personal, or an undivided interest therein, or partly in cash and partly in such property, and to do so without regard to the income tax basis of specific property so distributed. The Trustor

requests but does not direct, that the Trustee make distributions in a manner which will result in maximizing the aggregate increase in income tax basis of assets of the estate on account of federal and state estate, inheritance and succession taxes attributable to appreciation of such assets.

(r) The powers enumerated in NRS 163.265 to NRS 163.410, inclusive, are hereby incorporated herein to the extent they do not conflict with any other provisions of this instrument.

(s) The enumeration of certain powers of the Trustee shall not limit his general powers, subject always to the discharge of his fiduciary obligations, and being vested with and having all the rights, powers, and privileges which an absolute owner of the same property would have.

(t) The Trustee shall have the power to invest Trust assets in securities of every kind, including debt and equity securities, to buy and sell securities, to write covered securities options on recognized options exchanges, to buy-back covered securities options listed on such exchanges, to buy and sell listed securities options, individually and in combination, employing recognized investment techniques such as, but not limited to, spreads, straddles, and other documents, including margin and option agreements which may be required by securities brokerage firms in connection with the opening of accounts in which such option transactions will be effected.

(u) In regard to the operation of any closely held business of the Trust, the Trustee shall have the following powers:

(1) The power to retain and continue the business engaged in by the Trust or to recapitalize, liquidate or sell the same.

(2) The power to direct, control, supervise, manage, or participate in the operation of the business and to determine the manner and degree of the fiduciary's active participation in the management of the business and to that end to delegate all or any part of the power to supervise, manage or operate the business to such person or persons as the fiduciary may select, including any individual who may be a beneficiary or Trustee hereunder.

(3) The power to engage, compensate and discharge, or as a stockholder owning the stock of the Corporation, to vote for the engagement, compensation and discharge of such managers, employees, agents, attorneys, accountants, consultants or other

representatives, including anyone who may be a beneficiary or Trustee hereunder.

(4) The power to become or continue to be an officer, director or employee of a Corporation and to be paid reasonable compensation from such Corporation as such officer, director and employee, in addition to any compensation otherwise allowed by law.

(5) The power to invest or employ in such business such other assets of the Trust estate.

(v) To borrow money at interest rates then prevailing from any individual, bank or other source, irrespective or whether any such individual or bank is then acting as Trustee, and to create security interests in the Trust property by mortgage, pledge, or otherwise, to make a guaranty of, including a third party guaranty.

9.2 **Limitation on Discretionary Power**. The Trustee's discretion to distribute income and principal to a beneficiary who is also a Trustee shall be limited, with respect to such Trustee, to distributions for the beneficiary's health, education, maintenance and support.

9.3 **Power to Appoint Agent**. The Trustee is authorized to employ attorneys, accountants, investment managers, specialists, and such other agents as the Trustee shall deem necessary or desirable. The Trustee shall have the authority to appoint an investment manager or managers to manage all or any part of the assets of the Trust, and to delegate to said investment manager the discretionary power to acquire and dispose of assets of the Trust. The Trustee may charge the compensation of such attorneys, accountants, investment managers, specialists, and other agents against the Trust, including any other related expenses.

9.4 **Broad Powers Of Distribution**. After the death of the Trustor, upon any division or partial or final distribution of the Trust estate, the successor Trustee shall have the power to partition, allot and distribute the Trust estate in undivided interest or in kind, or partly in money and partly in kind, at valuations determined by the Trustee, and to sell such property as the Trustee, in the Trustee's discretion,

considers necessary to make such division or distribution. In making any division or partial or final distribution of the Trust estate, the Trustee shall be under no obligation to make a pro rata division or to distribute the same assets to beneficiaries similarly situated. Rather, the Trustee may, in the Trustee's discretion, make non pro rata divisions between Trusts or shares and non pro rata distributions to beneficiaries as long as the respective assets allocated to separate trusts or shares or the distributions to beneficiaries have equivalent or proportionate fair market value. The income tax basis of assets allocated or distributed non pro rata need not be equivalent and may vary to a greater or lesser amount, as determined by the Trustee, in his or her discretion, and no adjustment need be made to compensate for any difference in basis.

9.5 **Merger of Identical Trusts**. Should the Trustee of any separate trust hereunder at any time also be the Trustee of a trust having substantially identical dispositive provisions for the benefit of the same beneficiary or beneficiaries but created under some other trust agreement, such two identical trusts may, in the discretion of such Trustee, be merged together and thereafter administered as one single trust under the trust agreement having the earliest rule against perpetuities savings clause date. Where such a merger would be thus authorized but for differences in the identity of the contingent remainder beneficiaries of such otherwise mergeable trusts, such trusts may instead be consolidated together in a new trust created by the Trustee of such otherwise mergeable trusts under a new trust instrument executed by it having all of the same provisions as would apply to such a merger except those provisions relating to contingent remainder interests, which provisions shall be written in such manner as to preserve the relative interests of the different contingent remainder beneficiaries having an interest therein on the basis of the fair market value of the net assets of each trust entering into such consolidation as of the effective date of such consolidation as reasonably determined by such Trustee.

9.6 **Special Needs Trust.** If any beneficiary has any special needs where government assistance is utilized, and if any direct or indirect distribution from this Trust to or on behalf of the beneficiary may jeopardize the beneficiary's ability to qualify for government assistance, then the vesting of said beneficiary's share may, in the Trustee's discretion, be postponed until the Trustee(s) does as follows, if possible: the Trustee(s) is specifically empowered to place that beneficiary's share into a discretionary Special Needs Trust under the applicable state and federal statutes. The terms of the discretionary Special Needs Trust shall be such terms as are provided by default under the applicable state and federal statutes, as well as such other terms as are necessary in the discretion of the Trustee(s) in furtherance of the objectives of this Trust. If required, the Trustee(s) may seek court action to establish this discretionary sub-Trust.

9.7 **Apply For Government Assistance**. The Trustee shall have the power to deal with governmental agencies and to make applications for, receive and administer any of the following benefits, if applicable: Social Security, Medicare, Medicaid, Supplemental Security Income, In-Home Support Services, and any other government resources and community support services available to the elderly.

9.8 **Catastrophic Health Care Planning**. The Trustee shall have the power to explore and implement planning strategies and options and to plan and accomplish asset preservation in the event the Trustor needs long-term health and nursing care. Such planning shall include, but is not necessarily limited to, the power and authority to: (1) make home improvements and additions to the Trustor's family residence; (2) pay off, partly or in full, the encumbrance, if any, on the Trustor's family residence; (3) purchase a family residence, if the Trustor does not own one; (4) purchase a more expensive family residence; (5) make gifts of assets for estate planning purposes to the beneficiaries and in the proportions set forth in Article V.

**ARTICLE X**

**SUBCHAPTER S STOCK**

10.1 **S-Corporation Stock**. To the extent that any Trust created under this Instrument (for purposes of this Article an "Original Trust") owns or becomes the owner (or would but for this provision become the owner) of shares of stock of any then electing "S corporation" pursuant to Section 1361 et seq. of the Internal Revenue Code, or to the extent that any such Original Trust owns or becomes the owner of shares of stock of any "small business corporation" as defined in Section 1361 (b) of the Internal Revenue Code with respect to which the Trustees desire to continue, make, or allow to be made an S corporation election, the Trustees of such Trust shall have the power at any time, in such Trustees' sole and absolute discretion, the exercise of which shall not be subject to review by any person or court, to terminate said original Trust as to such shares of stock and to allocate, pay, and distribute (or cause to be allocated, paid, and distributed directly from any transferor) some or all of such shares of stock to either (i) a separate and distinct Qualified Subchapter S Trust pursuant to the provisions of paragraph 10.2 below, or (ii) a separate and distinct Electing Small Business Trust pursuant to the provisions of paragraph 10.3 below.

10.2 **Qualified Subchapter S Trust**. In the event shares of stock are allocated, paid, or distributed to a Qualified Subchapter S Trust pursuant to paragraph 10.1 above, such Trust and Trust fund shall be designated with the name of the same Beneficiary with whose name the Original Trust is designated (such Beneficiary with whose name the Original Trust is designated being for purposes of this Article the only "Beneficiary" of such trust) and shall be held pursuant to the same terms and conditions as the Original Trust, except that, notwithstanding any other provision in this Trust Indenture applicable to the Original Trust:

(a) Until the death of the Beneficiary of the Qualified Subchapter S Trust, the Trustees of such Qualified Subchapter S Trust shall pay and distribute to such Beneficiary and to no other person all of the net income of the Qualified Subchapter S Trust annually or at more frequent intervals. Any and all income accrued but not paid to the Beneficiary prior to the death of the Beneficiary shall be paid to the estate of the Beneficiary.

(b) Any distribution of principal from a Qualified Subchapter S Trust may be made only to the Beneficiary then entitled to receive income from such trust.

(c) The current income Beneficiary's income interest terminates on the earlier of the Beneficiary's death or the termination of the Qualified Subchapter S Trust. If the Qualified Subchapter S Trust terminates during the life of the Beneficiary, all Qualified Subchapter S Trust principal shall distribute to the income Beneficiary.

(d) Each Qualified Subchapter S Trust is intended to be a Qualified Subchapter S Trust, as defined in Section 1361 (d) of the Internal Revenue Code, as amended, or any successor provisions thereto. Accordingly, no Trustees of any Qualified Subchapter S Trust created pursuant to this Article shall have any power, the possession of which would cause any such Trust to fail to be a Qualified Subchapter S Trust; no power shall be exercisable in such a manner as to cause any such Trust to fail to be a Qualified Subchapter S Trust; and any ambiguity in this Trust Indenture shall be resolved in such a manner that each such trust shall be a Qualified Subchapter S Trust.

(e) The provisions of Articles V and VI shall have no application to the distribution of income from any Qualified Subchapter S Trust created or continued pursuant to the provisions of this Article.

(f) Any power provided in Articles V and VI of this Trust Indenture may be exercised with respect to any Qualified Subchapter S Trust created pursuant to this Article if and only if, or to the extent that, the exercise of any such power shall not violate the provisions of this Article and shall not impair or disqualify the Qualified Subchapter S Trust status of such trust.

10.3 **Electing Small Business Trust**. In the event shares of stock are allocated, paid, or distributed to an Electing Small Business Trust pursuant to paragraph 10.1 above, the Trustee shall make the proper Small Business Trust election, and such Trust and Trust fund shall be designated with a name chosen at the Trustee's

discretion, and shall be held pursuant to the same terms and conditions as the Original Trust except that, notwithstanding any other provision in this Trust Indenture applicable to the Original Trust:

(a) The Electing Small Business Trust shall not have as a beneficiary any person other than an individual or an estate, except that a charitable organization described in paragraph (2), (3), (4) or (5) of Section 170(c) of the Internal Revenue Code may hold a contingent interest.

(b) No interest in the Electing Small Business Trust may be acquired by purchase.

(c) Each Electing Small Business Trust is intended to be an Electing Small Business Trust, as defined in Section 1361(e) of the Internal Revenue Code, as amended, or any successor provisions thereto. Accordingly, no Trustees of any Electing Small Business Trust created pursuant to this Article shall have any power, the possession of which would cause any such Trust to fail to be a Electing Small Business Trust; no power shall be exercisable in such a manner as to cause any such Trust to fail to be an Electing Small Business Trust; and any ambiguity in this Trust Indenture shall be resolved in such a manner that each such trust shall be an Electing Small Business Trust.

10.4 **Effect on Beneficiaries.** In granting to the Trustee the discretion to create one or more Qualified Subchapter S Trusts and/or Electing Small Business Trusts as herein provided, the Trustor recognizes that the interest of present or future beneficiaries may be increased or diminished upon the exercise of such discretion.

## ARTICLE XI
## QUALIFIED PLANS AND IRA'S

11.1 Any Trust created hereunder may receive distributions from a Qualified Plan (as defined below). In the event a Trust which is named as a designated beneficiary of a Qualified Plan is subdivided into separate sub-trusts, the Trustee may, in the Trustee's discretion, allocate the Qualified Plan in such manner as the Trustee determines, provided that the Qualified Plan shall be allocated only to a

Trust which is or becomes irrevocable at the death of the owner of the Qualified Plan, and provided further that no allocation shall be made which would cause immediate income tax recognition of the Qualified Plan.

11.2 The Trustee is directed to take all steps necessary to qualify the Trust as a "designated beneficiary" for purposes of the minimum distribution rules set forth in § 401(a)(9) of the Code. This includes providing appropriate documentation to the plan administrator of each Qualified Plan (including the custodian of each individual retirement account) by October 31 of the calendar year immediately following the calendar year in which the Trustor's death occurs, consistent with the requirements of Treas. Reg. § 1.401(a)(9)-4, A-6.

11.3 The Trustee is further directed to receive annually from the Qualified Plan the minimum distribution amounts based on the beneficiary's life expectancy, and to immediately distribute such amounts to the beneficiary of the Trust or sub-Trust, as the case may be.

11.4 For purposes of this Article XI, the account balance in any Qualified Plan at the Trustor's death shall be considered Trust principal. Income from a Qualified Plan shall mean income in a trust accounting sense, determined under the provisions of this Declaration as if the Qualified Plan were a Trust, without regard to any provisions of the Code defining income for federal income tax purposes.

11.5 Notwithstanding any other provision of this Declaration, no debt, estate tax or expense of administration arising at the death of a trustor may be paid from a Qualified Plan for which a Trust created hereunder is designated as beneficiary. Estate taxes or GST taxes arising upon the death of a Trustor shall not be apportioned to assets held in a Qualified Plan except to the extent that failure to apportion taxes to assets of a Qualified Plan would cause a substantial disparity in the distribution of Trust assets among beneficiaries of the same class, in which case the taxes apportioned to the Qualified Plan shall be payable from other Trust assets distributable to the beneficiaries. In the alternative, rather than satisfying the taxes

from other assets of the Trust, a beneficiary whose interest in the assets of a Qualified Plan is subject to the burden of such taxes may pay the taxes personally if the beneficiary so chooses.

11.6 As used herein, the term "Qualified Plan" refers to any employee benefit plan or individual retirement arrangement that is allowed to accumulate any part of its earnings on an income tax deferred basis under the Code including, without limitation, plans described under I.R.C. § 401, I.R.C. § 403, I.R.C. 408, I.R.C. § 408A, and I.R.C. § 457. A Qualified Plan includes a plan that is reasonably believed to qualify under one or more such provisions of the Code, even if it is subsequently determined that such plan does not so qualify.

## ARTICLE XII
## PROTECTION OF AND ACCOUNTING BY TRUSTEE

12.1 **Protection**. The Trustee shall not be liable for any loss or injury to the property at any time held by him hereunder, except only such as may result from his fraud, willful misconduct, or gross negligence. Every election, determination, or other exercise by Trustee of any discretion vested, either expressly or by implication, in him, pursuant to this Trust Indenture, whether made upon a question actually raised or implied in his acts and proceedings, shall be conclusive and binding upon all parties in interest.

12.2 **Accounting**. Upon the written request delivered or mailed to the Trustee by an income beneficiary hereunder, the Trustee shall render a written statement of the financial status of the Trust. Such statement shall include the receipts and disbursements of the Trust for the period requested or for the period transpired since the last statement and the principal of the Trust at the end of such period. Statements need not be rendered more frequently than annually.

## ARTICLE XIII

## GENERAL PROVISIONS

13.1 **Controlling Law**. This Trust Indenture is executed under the laws of the State of Nevada and shall in all respects be administered by the laws of the State of Nevada; provided, however, the Trustee shall have the discretion, exercisable at any later time and from time to time, to administer any Trust created hereunder pursuant to the laws of any jurisdiction in which the Trustee may be domiciled, by executing a written instrument acknowledged before a notary public to that effect, and delivered to the then income beneficiaries. If the Trustee exercises the discretion, as above provided, this Trust Indenture shall be administered from that time forth by the laws of the other state or jurisdiction.

13.2 **Spendthrift Provision**. No interest in the principal or income of any trust created under this Trust Instrument shall be anticipated, assigned, encumbered or subjected to creditors' claims or legal process before actual receipt by a beneficiary. This provision shall not apply to the Trustor's interest in the Trust estate. The income and principal of this Trust shall be paid over to the beneficiary at the time and in the manner provided by the terms of this Trust, and not upon any written or oral order, nor upon any assignment or transfer by the beneficiary, nor by operation of law.

13.3 **Perpetuities Savings Clause**. Unless terminated earlier in accordance with other provisions of this trust, any trust hereby created or created by the exercise of any power hereunder shall terminate the later of, (1) Twenty-one (21) years after the death of the last survivor of the following: (a) the Trustor; (b) all the issue of Trustor who are living at the death of the Trustor; and (c) all named beneficiaries who are living at the death of the Trustor, or (2) upon the expiration of the maximum period authorized by the laws of the State of Nevada or the state by which the trust is then being governed. Upon such termination, the Trust estate,

and any accumulations thereon, shall be distributed to those persons and in the same proportions as the income of the trust is then being paid.

13.4 **No-Contest Provision**. The Trustor specifically desires that this Trust Indenture and these Trusts created herein be administered and distributed without litigation or dispute of any kind. If any beneficiary of these trusts or any other person, whether stranger, relative or heir, or any legatee or devisee under the Last Will and Testament of either the Trustor or the successors-in-interest of any such persons, including the Trustor's estate under the intestate laws of the State of Nevada or any other state lawfully or indirectly, singly or in conjunction with another person, seek or establish to assert any claim or claims to the assets of these Trusts established herein, or attack, oppose or seek to set aside the administration and distribution of the Trusts, or to invalidate, impair or set aside its provisions, or to have the same or any part thereof declared null and void or diminished, or to defeat or change any part of the provisions of the Trusts established herein, then in any and all of the above-mentioned cases and events, such person or persons shall receive One Dollar ($1.00), and no more, in lieu of any interest in the assets of the Trusts or interest in income or principal.

13.5 **Provision For Others**. The Trustor has, except as otherwise expressly provided in this Trust Indenture, intentionally and with full knowledge declined to provide for any and all of his heirs or other persons who may claim an interest in his respective estates or in these Trusts.

13.6 **Severability**. In the event any clause, provision or provisions of this Trust Indenture prove to be or be adjudged invalid or void for any reason, then such invalid or void clause, provision or provisions shall not affect the whole of this instrument, but the balance of the provisions hereof shall remain operative and shall be carried into effect insofar as legally possible.

13.7 **Physical Division of Property Not Necessary**. Physical segregation or division of the various trusts created hereunder is not required, except as may be

necessary by the termination of any such trust. The Trustee is required to keep separate accounts for the various undivided trusts.

13.8 **Distribution Of Small Trust**. If the Trustee, in the Trustee's absolute discretion, determines that the amount held in Trust is not large enough to be administered in Trust on an economical basis, then the Trustee may distribute the Trust assets free of Trust to those persons then entitled to receive the same; or in the case of a minor beneficiary, the Trustee may, in the Trustee's discretion, also distribute to a custodial account under the Uniform Transfers to Minors Act or similar account for the benefit of the minor beneficiary.

13.9 **Headings**. The various clause headings used herein are for convenience of reference only and constitute no part of this Trust Indenture.

13.10 **More Than One Original**. This Trust Indenture may be executed in any number of copies and each shall constitute an original of one and the same instrument.

13.11 **Interpretation**. Whenever it shall be necessary to interpret this Trust, the masculine, feminine and neuter personal pronouns shall be construed interchangeably, and the singular shall include the plural and the singular.

13.12 **Definitions**. The following words are defined as follows:

(a) **"Principal" and "Income"**. Except as otherwise specifically provided in this Trust Indenture, the determination of all matters with respect to what is principal and income of the Trust estate and the apportionment and allocation of receipts and expenses thereon shall be governed by the provisions of Nevada's Revised Uniform Principal and Income Act, or its equivalent, as it may be amended from time to time and so long as such Act does not conflict with any provision of this instrument. Notwithstanding such Act, no allowance for depreciation shall be charged against income or net income payable to any beneficiary.

(b) **"Education"**. Whenever provision is made in this Trust Indenture for payment for the "education" of a beneficiary, the term "education" shall be construed to include private schools, non profit and independent schools, pre-kindergarten through twelfth grade, include technical or trade schooling, college or postgraduate study, so long as pursued to advantage

by the beneficiary at an institution of the beneficiary's choice. In determining payments to be made for a beneficiary's education, the Trustees shall take into consideration the beneficiary's related living and traveling expenses to the extent that they are reasonable.

(c) **"Child, Children, Descendants or Issue"**. Except as otherwise set forth herein, as used in this instrument, the term "descendants" or "issue" of a person means all of that person's lineal descendants of all generations. The terms "child, children, descendants or issue" include adopted persons, but do not include a step-child or step-grandchild, unless that person is entitled to inherit as a legally adopted person.

(d) **"Tangible Personal Property"**. As used in this instrument, the term "tangible personal property" shall not include money, evidences of indebtedness, documents of title, securities and property used in a trade or business.

13.13 **Health Insurance Portability and Accountability Act Regulations**.

(a) **HIPAA Regulations Require Special Release and Consent.** The federal regulation known as the Health Insurance Portability and Accountability Act (HIPAA) regarding disclosure of individually identifiable health information necessitates a special release and consent authority to all healthcare providers before medical information will be released to agents of the patient. It is the Trustor's intent to be in compliance with HIPAA.

(b) **HIPAA Release Authority**. The Trustor hereby instructs that the Trustee(s) be treated as the Trustor wants to be treated with respect to the Trustor's rights and regarding the use and disclosure of the Trustor's individually identifiable health information or other medical records. This release authority applies to any information governed by the Health Insurance Portability and Accountability Act, 42 USC 1320d and 45 CFR 160-164.

(c) **Legal Consent for Disclosure of Health Care Information**. Any physician, healthcare professional, dentist, health plan, hospital, clinic, laboratory, pharmacy or other health care provider, any insurance company, the Medical Information Bureau Inc. or other health care clearinghouse that has provided treatment or services shall give, disclose and release to the Trustor's designated Trustee, without restriction, identifiable health information and medical records regarding any past, present or future medical or mental health condition, to include all

information relating to the diagnoses treatment of HIV/AIDS, sexually transmitted diseases, mental illness and drug or alcohol abuse.

(d) **Supersession of Prior Documents and Expiration Event**. The authority given the Trustee in this HIPAA legal consent shall supercede any prior agreements that the Trustor may have made with the Trustor's health care providers to restrict access or disclosure of the Trustor's individually identifiable health information. The authority given the Trustee has no expiration date and shall expire only in the event that the Trustor revokes the authority in writing and delivers it to the Trustor's health care provider.

(e) **Release and Hold Harmless Provision**. In order to induce the disclosing party to disclose the aforesaid private and/or protected confidential information, the Trustor hereby forever releases and holds harmless said disclosing party who relies on this instrument from any liability under confidentiality rules arising from HIPAA as a consequence of said disclosure.

EXECUTED on August 16th, 2012.

JACK E. GALARDI

**ACCEPTANCE BY TRUSTEE**

I certify that I have read the foregoing Declaration of Trust and understand the terms and conditions upon which the Trust estate is to be held, managed, and disposed of by me as Trustee. I accept the Declaration of Trust in all particulars and acknowledge receipt of the trust property described in Schedule "A" attached hereto, identified by my signature.

JACK E. GALARDI

STATE OF Georgia )
) ss.
COUNTY OF Fulton )

On AUGUST 15TH, 2012, before me, the undersigned, a Notary Public in and for such County and State, personally appeared JACK E. GALARDI, known to me to be Trustor and Trustee whose name is subscribed to the within instrument and who acknowledged to me that he executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year in this certificate first above written.

NOTARY PUBLIC

Notary Public, Fulton County, Georgia
My Commission Expires Sept. 15, 20[illegible]

# TAB 3

Electronically Filed
10/30/2018 12:42 PM
Steven D. Grierson
CLERK OF THE COURT

RESP

SHIRLEY A. DERKE, ESQ.
Nevada Bar No. 2686
627 S. Seventh St.
Las Vegas, NV 89101
702-386-6800
shirley@Derke.lvcoxmail.com
Attorney for Petitioner

DISTRICT COURT

CLARK COUNTY, NEVADA

* * *

In the Matter of the

JEG TRUST - JACK GALARDI JR. SUB-TRUST

Case No. P-18-096792-T
Dept. PC1
DATE:
TIME: 9:30 a.m.

**RESPONSE TO TRUSTEE TERI GALARDI'S OBJECTION TO PETITION TO ALLOW THIS COURT TO TAKE JURISDICTION OVER THE TRUST; AND REQUEST FOR REMOVAL OF NAMED SUCCESSOR TRUSTEE**

Comes now, the Petitioner, JACK GALARDI, JR., sole beneficiary of the JEG TRUST - JACK GALARDI JR. SUB-TRUST, by and through his attorney, Shirley A. Derke, Esq., hereby files this response to Trustee Teri Gale Galardi, named Successor Trustee's objections to the petition on file herein by alleging as follows:

**PETITIONER'S CAPACITY**

1. Teri Galardi has stated that Petitioner, JACK GALARDI, JR., "lacks the kinds of life skills that would permit him to care for and make decisions for himself" (See Paragraph A of the objection). As the person selected by her father to "run the family businesses after his death" she should have realized that she had a conflict of interest in acting as an advocate for JACK GALARDI, JR. as well as the remaining 75% beneficiary of her father's estate. To fully protect JACK GALARDI, JR., who cannot make decisions for himself, why did she not get independent counsel for JACK GALARDI, JR. when funding his sub-trust? Nevada law requires a Trustee to act in the interest of the beneficiaries as follows:

> NRS 164.715 Acting in interest of beneficiaries. A trustee shall invest and manage the trust property solely in the interest of the beneficiaries.

How does a Trustee act solely in the interest of JACK GALARDI, JR. when the Trustee

has a direct conflict as the remaining 75% beneficiary of the estate? If the Trustee truly felt it to be a conflict, why weren't steps taken to be sure that JACK GALARDI, JR.'s interest was protected by independent counsel?

2. The Trustee has failed to provide a concise and complete record of assets funding the JACK GALARDI, JR. Sub-trust. All financial information provided to him has been in the form of general ledgers for the years 2015; 2016 and 2017. It has been up to JACK GALARDI, JR. and/or his counsel to pull the information to track the Trustee's reporting of her actions. More of the Trustee's accountings will be discussed later in this response. Implying that the 2017 general ledger of 19 pages (which is a report from Quick books software) causes the position of the Trustee to be a substantial undertaking is grossly inflated. The Trustee claims to operate many family businesses and I would guess that any one of her businesses' general ledger for the entire year would exceed 19 pages. The Trustee states that the sub-trust OWNS numerous properties, both income producing and non-incoming producing. In fact the December 31, 2017-balance sheet for the sub-trust, attached hereto as Exhibit A, shows very few assets - one commercial property (as discussed herein); two promissory notes (as discussed herein); JACK GALARDI, JR.'s personal residence and vacant land. The majority of checks being written from the sub-trust bank account deal with the maintenance of JACK GALARDI, JR.'s residence. The Trustee has never allowed the beneficiary to handle these expenses and chooses to keep control of the property.

**PROMISSORY NOTE WITH TRUSTEE, TERI GALARDI**

3. Teri Galardi states that the interest rate on the unsecured promissory note given to the sub-trust in order to allow her to "run the family businesses" as the decedent requested was based upon the IRS Applicable Federal Rates. IRS Applicable Federal Rates represent the absolute minimum market rate of interest a Lender should consider charging a Borrower in order to prevent unnecessary tax complications. Generally speaking, these rates are significantly lower than market rates offered by a bank. The Trustee has offered no support on how she protected JACK GALARDI, JR.'s interest to provide a "fair market rate" of return that would have been

required from any other unrelated lender.

4. Teri Galardi admits that monies were taken from the Sub-trust for the purposes of short-term cash management (lines 8-9 on page 5 of the objection). This is a breach of fiduciary duties owed to the beneficiary. The Trustee has provided the log of every payment recorded from Teri Galardi and is attached hereto as Exhibit B for 2015 and 2016 (undated). Attached hereto is the general legder for 2016 as Exhibit C (dated 3/16/18 as printed from the trust Quick books file). These documents show conflicting figures for interest collected during 2016 from Teri Garlardi. The note receivable ledger (Exhibit B) shows $48,398.95 and pages 20-21 of the general ledger (Exhibit C) shows $45,560.53 was the interest income reported. In fact, the detail posting items to the note receivable on pages 8-9 of the general ledger clearly shows more activity than just the note payments received, which reflects the "unauthorized use" of the trust funds by the Trustee.

It should also be noted that this Galardi Note Receivable represented approximately twenty-five percent (25%) of the total trust assets at the time of funding (1,688,692/6,693,389).

**DENT $400,000.00 MORTGAGE NOTE**

5. Petitioner acknowledges that the attached documents were provided by the Trustee on the Dent note as attached hereto as Exhibit D. The documents indicate that the note appeared to be in first position at the time of sale by the Decedent. The Trustee, since filing this petition, has provided bankruptcy filings by the payer, Mr. Dent, but has not advised as to whether the Sub-trust is still in first position as of the bankruptcy filing.

**FT. LAUDERDALE RESIDENCE AND LOT**

6. As stated in the objection to this petition on page 6 - lines 5-16, this property was valued on the Decedent's form 706 for $4.275 million which included home furnishings. When attempting to liquidate, the appraised value was less than the current market price. Regardless, of this discrepancy in values from the date of death to the funding of the sub-trust with the entire property, the sub-trust's records indicate that the income tax basis of this asset was $4.275 million, subject to an existing mortgage of $3.115 million when originally funded. This caused

the entire loss on the 2015 sale (which was reflected in the sub-trust 2015 general ledger to be $1,243,346.63) to be borne solely by the sub-trust. In addition, a loss of this size to the sub-trust represents a loss of eighteen and one-half percent (18.5%) of the total assets at the time of funding (1,243,346/6,693,388)

7. Internal Revenue Code Section 643(e) states that the distribution of real property to a beneficiary is valued as the adjusted basis to the trust as follows:

IRC Code Section 643 (e) Treatment of property distributed in kind

(1) Basis of beneficiary The basis of any property received by a beneficiary in a distribution from an estate or trust shall be
(A) the adjusted basis of such property in the hands of the estate or trust immediately before the distribution, adjusted for
(B) any gain or loss recognized to the estate or trust on the distribution.
(2) Amount of distribution In the case of any distribution of property (other than cash), the amount taken into account under sections 661(a)(2) and 662(a)(2) shall be the lesser of
(A) the basis of such property in the hands of the beneficiary (as determined under paragraph (1)), or
(B) the fair market value of such property.
(3) Election to recognize gain
(A) In general. In the case of any distribution of property (other than cash) to which an election under this paragraph applies
(i) paragraph (2) shall not apply,
(ii) gain or loss shall be recognized by the estate or trust in the same manner as if such property had been sold to the distributee at its fair market value, and
(iii) the amount taken into account under sections 661(a)(2) and 662(a)(2) shall be the fair market value of such property.
(B) Election
Any election under this paragraph shall apply to all distributions made by the estate or trust during a taxable year and shall be made on the return of such estate or trust for such taxable year. Any such election, once made, may be revoked only with the consent of the Secretary.
(4) Exception for distributions described in section 663(a)
This subsection shall not apply to any distribution described in section 663(a).

8. It is not clear from the records provided by the Trustee whether the Estate made a 643(e)(3) election or not because the Trustee did not provide the 2015 Income Tax Return for the Estate, nor did the Trustee provide a copy of the 2015 Trust income tax return for the Sub-Trust. Therefore, it is not certain how the loss on the sale of this asset was reported and whether the capital loss was allocated to the estate prior to the funding of the sub-trust or to the sub-trust

alone.

9. There does not appear to be any capital losses of more than $1 million dollars on the beneficiary's 2015 Income tax return, which shows the following information passed through the trust return:

| Source | Interest Inc | Passive Loss | Passive Income | Capital Gain |
|---|---|---|---|---|
| Estate | $8,424 | $ -0- | $ 512,531 | $ -0- |
| Sub-Trust | -0- | 13,333 | -0- | -0- |

**WEST VIRGINIA RESTAURANT LEASE**

10. If the Trustee is confident in the lease agreement signed 7/15/16, why has the Trustee chosen to report the lease income as rental income subject to ordinary income tax rates, rather than as an installment sale? As pointed out in the petition on file herein, the tenant has a right to purchase the property for $700,000 *at any time with all rental payments applied to the purchase price*. The lease payments are $4,000.00 for the initial two year term, with rent increasing 5% on a 5-year renewable term for the first year with a CPI annual adjustment for the remaining four years of the renewable term. Based upon such favorable terms, why wouldn't the seller report this transaction as a sale from its inception? The buyer does not have to concern itself with a drop in market prices as well as paying interest on the principal owed!

The marginal income and capital gain tax rates applicable to the reported taxable income by the beneficiary during the past three years are as follows:

| | Marginal Income tax rate | Capital Gain rate |
|---|---|---|
| 2015 | 28% | 15% |
| 2016 | 0% | |
| 2017 | 25% | 15% |

WHEREFORE, Petitioner prays that the court finds the following:

A. That this court take jurisdiction over the trust in rem pursuant to NRS 164.010 and 164.015;

B. That this court find that TERI GALE GALARDI has breached her fiduciary duty owed to the beneficiary when taking these actions:

i. Failed to provide and/or require JACK GALARDI, JR. obtain independent counsel

when dividing up the assets of the Decedent's estate;

ii. Failed to properly report financial activity of the trust to the beneficiary on a timely basis for analysis and review;

iii. Failed to take into consideration the best possible income tax reporting options available to JACK GALARDI, JR. when making distribution of non-cash assets to the sub-trust as well as income tax elections made during the estate administration and the sub-trust administration; and

iv. Failed to act prudently with the sub-trust assets when taking monies out of the sub-trust without adequate consideration.

C. That this court confirm DANIEL GEIGER and EMELITA P. SY as Co-Trustees of the JACK E. GALARDI, JR. SUB-TRUST; and

D. And for such other and further relief as to the Court may deem just and proper in the premises.

DATED this 30th day of October 2018.

SHIRLEY A. DERKE, ESQ.

CERTIFICATE OF MAILING

Eileen A. BelBruno states that on the 30th day of October 2018 she did deposit in the United States Post Office at Las Vegas, Nevada, enclosed in a sealed envelope upon which first class postage was fully prepaid, copies of the Response to Trustee Teri Galardi's Objection to Petition to Allow this Court to Take Jurisdiction over the Trust; and Request for Removal of Named Successor Trustee as follows:

Teri Gale Galardi, Trustee of the JACK E. GALARDI, JR. SUB-TRUST
C/O Greg Smith, Esq.
Smith & Shapiro, PLLC
VIA E-FILE and e-mail

Daniel Geiger, named Successor Co-Trustee of the JACK E. GALARDI, JR. SUB-TRUST
2850 S. Jones Blvd, Suite 2
Las Vegas, NV 89146

Emelita P. Sy, named Successor Co-Trustee of the JACK E. GALARDI, JR. SUB-TRUST
2121 S. Highland Dr.
Las Vegas, NV 89102

DATED this 30th day of October 2018.

Eileen A. BelBruno an employee of
Shirley A. Derke, Esq.

SUBMITTED BY:

SHIRLEY A. DERKE, ESQ.
Case P-18-096792-T

# "EXHIBIT A"

8:37 AM

03/16/18

Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST

## Balance Sheet

As of December 31, 2017

| | | Dec 31, 17 |
|---|---|---|
| ASSETS | | |
| Current Assets | | |
| Checking/Savings | | |
| WELLS FARGO BANK | | 412,653.93 |
| Total Checking/Savings | | 412,653.93 |
| Total Current Assets | | 412,653.93 |
| Other Assets | | |
| Note Receivable-Teri Galardi | | 1,264,279.27 |
| Notes Receivable | | |
| Dent Note Receivable | 400,000.00 | |
| Total Notes Receivable | | 400,000.00 |
| Residential Properties | | |
| Residence-2200 Waldman Ave | 2,085,047.00 | |
| Total Residential Properties | | 2,085,047.00 |
| Commercial Property | | |
| West Virginia land & bldg | 650,000.00 | |
| Total Commercial Property | | 650,000.00 |
| Vacant Land | | |
| Moapa, Nevada | 107,000.00 | |
| Calaveras, CA | 67,500.00 | |
| Total Vacant Land | | 174,500.00 |
| Total Other Assets | | 4,573,826.27 |
| TOTAL ASSETS | | **4,986,480.20** |
| LIABILITIES & EQUITY | | |
| Liabilities | | |
| Long Term Liabilities | | |
| Loan Payable-LVA | | 20,000.00 |
| Advancesto/from Teri Galardi | | -7,022.37 |
| Total Long Term Liabilities | | 12,977.63 |
| Total Liabilities | | 12,977.63 |
| Equity | | |
| Trust Equity | | 5,044,612.86 |

# "EXHIBIT B"

NOTE RECEIVABLE- TERI GALARDI

| | | Payments | Interest | Principal | Balance | |
|---|---|---|---|---|---|---|
| **12/1/2014** | | | | | **1,688,692.00** | |
| 1/8/2015 | | 40,000.00 | 5,990.46 | 34,009.54 | 1,654,682.46 | |
| 1/20/2015 | | 10,000.00 | 1,806.10 | 8,193.90 | 1,646,488.56 | > 6 days |
| 1/26/2015 | | 7,500.00 | 1,797.15 | 5,702.85 | 1,640,785.71 | |
| 2/2/2015 | | 10,000.00 | 1,044.71 | 8,955.29 | 1,631,830.42 | > 4 days |
| 2/6/2015 | | 10,000.00 | 593.72 | 9,406.28 | 1,622,424.14 | |
| 2/26/2015 | | 7,500.00 | 2,951.48 | 4,548.52 | 1,617,875.62 | |
| 3/5/2015 | | 30,000.00 | 1,177.28 | 28,822.72 | 1,589,052.90 | |
| 3/20/2015 | | 10,000.00 | 2,168.08 | 7,831.92 | 1,581,220.98 | |
| 3/23/2015 | | 7,500.00 | 431.48 | 7,068.52 | 1,574,152.46 | |
| 4/8/2015 | | 30,000.00 | 2,290.93 | 27,709.07 | 1,546,443.39 | |
| 5/6/2015 | | 30,000.00 | 3,938.56 | 26,061.44 | 1,520,381.95 | |
| 5/28/2015 | | 25,000.00 | 3,042.43 | 21,957.57 | 1,498,424.38 | |
| 6/8/2015 | | 33,000.00 | 1,499.25 | 31,500.75 | 1,466,923.63 | |
| 7/8/2015 | | 35,000.00 | 4,002.89 | 30,997.11 | 1,435,926.52 | |
| 8/6/2015 | | 2,000.00 | 3,787.70 | (1,787.70) | 1,437,714.22 | |
| 8/12/2015 | | 35,000.00 | 784.64 | 34,215.36 | 1,403,498.86 | |
| 8/18/2015 | | 5,000.00 | 765.96 | 4,234.04 | 1,399,264.82 | |
| 8/31/2015 | | 3,000.00 | 1,654.58 | 1,345.42 | 1,397,919.40 | |
| 9/11/2015 | | 10,000.00 | 1,398.69 | 8,601.31 | 1,389,318.09 | |
| 10/1/2015 | | 5,000.00 | 2,527.42 | 2,472.58 | 1,386,845.51 | |
| 10/19/2015 | | 5,000.00 | 2,270.63 | 2,729.37 | 1,384,116.14 | |
| 10/20/2015 | | 2,000.00 | 125.90 | 1,874.10 | 1,382,242.04 | |
| 10/21/2015 | | 2,000.00 | 125.73 | 1,874.27 | 1,380,367.77 | |
| 10/29/2015 | | 5,000.00 | 1,004.45 | 3,995.55 | 1,376,372.22 | |
| 11/13/2015 | | 6,000.00 | 1,877.90 | 4,122.10 | 1,372,250.12 | |
| 11/24/2015 | | 5,000.00 | 1,373.00 | 3,627.00 | 1,368,623.12 | |
| 12/11/2015 | | 8,000.00 | 2,116.30 | 5,883.70 | **1,362,739.42** | |
| **2016** | | **378,500.00** | **52,547.42** | **325,952.58** | | |
| 1/19/2016 | | 8,500.00 | 4,834.18 | 3,665.82 | 1,359,073.60 | |
| 2/10/2016 | | 8,000.00 | 2,719.64 | 5,280.36 | 1,353,793.24 | |
| 2/22/2016 | | 8,000.00 | 2,709.07 | 5,290.93 | 1,348,502.31 | |
| 3/14/2016 | | 5,600.00 | 2,575.82 | 3,024.18 | 1,345,478.13 | |
| 3/23/2016 | | 7,000.00 | 1,101.45 | 5,898.55 | 1,339,579.58 | |
| 4/28/2016 | | 5,000.00 | 4,386.48 | 613.52 | 1,338,966.06 | |
| 5/19/2016 | | 7,425.00 | 4,384.47 | 3,040.53 | 1,335,925.53 | |
| 6/3/2016 | | 3,000.00 | 1,822.71 | 1,177.29 | 1,334,748.24 | |
| 6/13/2016 | | 8,000.00 | 1,214.07 | 6,785.93 | 1,327,962.31 | |
| 7/7/2016 | | 1,000.00 | 2,898.96 | (1,898.96) | 1,329,861.27 | |
| 7/15/2016 | | 7,425.00 | 967.70 | 6,457.30 | 1,323,403.97 | |
| 7/29/2016 | | 500.00 | 1,685.26 | (1,185.26) | 1,324,589.23 | |
| 8/10/2016 | | 7,125.00 | 1,445.80 | 5,679.20 | 1,318,910.03 | |
| 8/25/2016 | | 5,125.00 | 1,799.50 | 3,325.50 | 1,315,584.53 | |
| 9/6/2016 | | 1,500.00 | 1,316.31 | 183.69 | 1,315,400.84 | |
| 10/20/2016 | | 7,125.00 | 5,264.49 | 1,860.51 | 1,313,540.33 | |
| 11/14/2016 | | 6,000.00 | 2,986.95 | 3,013.05 | 1,310,527.28 | |
| 11/28/2016 | | 2,500.00 | 1,668.86 | 831.14 | 1,309,696.14 | |
| 12/6/2016 | | 2,000.00 | 953.03 | 1,046.97 | 1,308,649.17 | |
| 12/9/2016 | | 2,700.00 | 357.10 | 2,342.90 | 1,306,306.27 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 12/19/2016 | | 350.00 | [illegible].20 | [illegible] | 1,307,144.47 | |
| 12/20/2016 | | 2,000.00 | 118.90 | 1,881.10 | **1,305,263.37** | |
| | | **105,875.00** | **48,398.95** | **57,476.05** | | |

# "EXHIBIT C"

8:34 AM
03/16/18
Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
### As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| WELLS FARGO BANK | | | | | | | 182,083.95 |
| Check | 01/01/2016 | 1249 | STANLEY CONVERGENT SECURITY SO... | JANUARY, 2016 | Security | -66.85 | 182,017.10 |
| Check | 01/01/2016 | DEBIT | JEG FAMILY TRUST | | Note Receivable-Te... | -10,000.00 | 172,017.10 |
| Check | 01/04/2016 | 1250 | CLARK COUNTY TREASURER | 071-18-601-015,041-36-201-029,041... | -SPLIT- | -5,628.78 | 166,388.32 |
| Check | 01/04/2016 | 1264 | NV ENERGY | 3000102899317989415 | Power | -919.17 | 165,469.15 |
| Check | 01/04/2016 | 1265 | NV ENERGY | 3000101083510973267 | Power | -99.36 | 165,369.79 |
| Check | 01/04/2016 | 1278 | A-1 ALAMO SECURITY LOCK & SAFE | 0309 | Maintenance & Rep... | -60.00 | 165,309.79 |
| Check | 01/10/2016 | 1269 | CLARK COUNTY POOL & LAWN SERVICE | January, 2016 | Pool Service | -225.00 | 165,084.79 |
| Check | 01/11/2016 | 1276 | COX COMMUNICATIONS, INC. | 001 8610 084743002 | Cable Service | -193.24 | 164,891.55 |
| Check | 01/11/2016 | 1280 | PETTY CASH | house cleaning | Maintenance & Rep... | -150.00 | 164,741.55 |
| Check | 01/12/2016 | DEBIT | HEALTH PLAN OF NEVADA | | Health Insurance | -226.84 | 164,514.71 |
| Check | 01/12/2016 | | | Service Charge | Bank Service Char... | -10.00 | 164,504.71 |
| Check | 01/15/2016 | 1266 | JACK GALARDI, JR. | | Beneficiary distribut... | -5,000.00 | 159,504.71 |
| Check | 01/15/2016 | 1289 | DANILO PASCUA | | -SPLIT- | -400.00 | 159,104.71 |
| Check | 01/15/2016 | 1286 | VOID | | VOID | 0.00 | 159,104.71 |
| Check | 01/15/2016 | 1290 | VOID | | VOID | 0.00 | 159,104.71 |
| Deposit | 01/17/2016 | | | Deposit | -SPLIT- | 7,000.00 | 166,104.71 |
| Check | 01/18/2016 | DEBIT | AMERICAN HOME SHIELD | | Maintenance & Rep... | -70.33 | 166,034.38 |
| Check | 01/19/2016 | 1291 | WELLS FARGO BANK | | -SPLIT- | -330.57 | 165,703.81 |
| Deposit | 01/19/2016 | | | Deposit | Note Receivable-Te... | 10,000.00 | 175,703.81 |
| Check | 01/20/2016 | 1281 | REPUBLIC SERVICES | 3-0620-1243087 | Trash Service | -100.00 | 175,603.81 |
| Check | 01/21/2016 | 1277 | SAFECO INSURANCE | 7135-4233445 | House Insurance | -819.60 | 174,784.21 |
| Check | 01/21/2016 | 1295 | PETTY CASH | cleaning house | Maintenance & Rep... | -200.00 | 174,584.21 |
| Check | 01/21/2016 | 1296 | PETTY CASH | plumbing/landscaping bushes | -SPLIT- | -429.99 | 174,154.22 |
| Check | 01/22/2016 | 1282 | CENTURY LINK | 309749917 | Telephone | -151.92 | 174,002.30 |
| Check | 01/25/2016 | 1279 | LAS VEGAS VALLEY WATER DISTRICT | 3115442962-0 | Water | -1,175.55 | 172,826.75 |
| Check | 01/25/2016 | 1301 | WALLS CONSTRUCTION & REMODELIN... | DOWN PAYMENT-ELECTRICAL FI... | Insurance-Building | -5,900.00 | 166,926.75 |
| Check | 01/25/2016 | 1302 | WALLS CONSTRUCTION & REMODELIN... | DOWN PAYMENT-STRUCTURAL F... | Insurance-Building | -4,000.00 | 162,926.75 |
| Check | 01/25/2016 | 1303 | PETTY CASH | | Maintenance & Rep... | -216.25 | 162,710.50 |
| Deposit | 01/25/2016 | | | Deposit | -SPLIT- | 1,000.00 | 163,710.50 |
| Deposit | 01/26/2016 | | | Deposit | Rental Income | 4,752.00 | 168,462.50 |
| Check | 01/27/2016 | 1283 | NV ENERGY | 3000101083512544918 | Power | -100.00 | 168,362.50 |
| Check | 01/27/2016 | 1284 | NV ENERGY | 3000101083512544926 | Power | -100.00 | 168,262.50 |
| Check | 01/29/2016 | 1292 | DANILO PASCUA | | -SPLIT- | -400.00 | 167,862.50 |
| General ... | 01/29/2016 | 7 | | Pmt on Ft lauderdale received by Te... | Loss on sale Ft Lau... | 65.09 | 167,927.59 |
| Check | 01/29/2016 | DEBIT | JEG FAMILY TRUST | | -SPLIT- | -1,500.00 | 166,427.59 |
| Check | 02/01/2016 | 1306 | CALAVERAS COUNTY TAX COLLECTOR | VOID: 020-001-091-000 | Property Taxes | 0.00 | 166,427.59 |
| Check | 02/01/2016 | 1287 | STANLEY CONVERGENT SECURITY SO... | 13098513 | Security | -66.85 | 166,360.74 |
| Check | 02/01/2016 | 1288 | STANLEY CONVERGENT SECURITY SO... | 13118339 | Maintenance & Rep... | -431.00 | 165,929.74 |
| Check | 02/01/2016 | 1304 | UNITED STATES TREASURY | CP503 YEAR2014 SSN 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 | 2014 Income Tax | -2,048.39 | 163,881.35 |
| Check | 02/01/2016 | 1285 | SOUTHWEST GAS CORPORATION | 212-5892819-002 | Gas | -596.53 | 163,284.82 |
| Check | 02/02/2016 | 1293 | NV ENERGY | 3000101083510973267 | Power | -130.03 | 163,154.79 |
| Check | 02/02/2016 | 1294 | NV ENERGY | 3000102899317989 4185 | Power | -734.62 | 162,420.17 |
| Check | 02/02/2016 | 1519 | PETTY CASH | BUSHES/PLANT YARD MAINTEN... | Maintenance & Rep... | -177.60 | 162,242.57 |
| Check | 02/08/2016 | 1210 | VOID | | VOID | 0.00 | 162,242.57 |
| Deposit | 02/08/2016 | | | Deposit | -SPLIT- | 5,000.00 | 167,242.57 |
| Check | 02/09/2016 | DEBIT | AMERICAN HOME SHIELD | | Maintenance & Rep... | -70.33 | 167,172.24 |
| Check | 02/10/2016 | 1297 | CLARK COUNTY POOL & LAWN SERVICE | February, 2016 | Pool Service | -198.50 | 166,973.74 |
| Deposit | 02/10/2016 | | | Deposit | -SPLIT- | 8,000.00 | 174,973.74 |

8:34 AM
03/16/18
Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| Check | 02/11/2016 | 1305 | COX COMMUNICATIONS, INC. | 001 8610 084743002 | Cable Service | -344.07 | 174,629.67 |
| Check | 02/11/2016 | DEBIT | HEALTH PLAN OF NEVADA | | Health Insurance | -226.84 | 174,402.83 |
| Check | 02/15/2016 | 1267 | JACK GALARDI, JR. | | Beneficiary distribut... | -5,000.00 | 169,402.83 |
| Check | 02/15/2016 | 1313 | DANILO PASCUA | | -SPLIT- | -400.00 | 169,002.83 |
| Check | 02/15/2016 | 1316 | WELLS FARGO BANK | nursery, burst pipe, garage door clic... | Maintenance & Rep... | -1,059.96 | 167,942.87 |
| Check | 02/21/2016 | 1307 | SAFECO INSURANCE | 7135-4233445 | House Insurance | -819.61 | 167,123.26 |
| Check | 02/22/2016 | 1310 | CENTURY LINK | 309749917 | Telephone | -146.86 | 166,976.40 |
| Check | 02/22/2016 | DEBIT | AMERICAN HOME SHIELD | | Maintenance & Rep... | -70.37 | 166,906.03 |
| Deposit | 02/22/2016 | | | Deposit | -SPLIT- | 8,000.00 | 174,906.03 |
| Check | 02/28/2016 | 1322 | STEVE LENGEL | | Security | -200.00 | 174,706.03 |
| Check | 02/28/2016 | 1321 | KEVIN CASOLARI | OUTSIDE VIDEO | Maintenance & Rep... | -700.00 | 174,006.03 |
| Check | 02/29/2016 | 1311 | LAS VEGAS VALLEY WATER DISTRICT | 3115442962-0 | Water | -825.12 | 173,180.91 |
| Check | 02/29/2016 | 1314 | DANILO PASCUA | | -SPLIT- | -400.00 | 172,780.91 |
| Check | 02/29/2016 | 1317 | SOUTHWEST GAS CORPORATION | 211-5892819-002 | Gas | -361.66 | 172,419.25 |
| Check | 02/29/2016 | 1318 | PETTY CASH | BUSHES CLEANING EXTERIOR H... | Landscaping/Groun... | -237.50 | 172,181.75 |
| Check | 03/01/2016 | 1312 | STANLEY CONVERGENT SECURITY SO... | MARCH, 2016 793123023548 | Security | -66.85 | 172,114.90 |
| Check | 03/01/2016 | 1315 | CITY OF LAS VEGAS-SEWER | 2163422222 | Sewer | -135.12 | 171,979.78 |
| Check | 03/02/2016 | 1319 | NV ENERGY | 3000102899317989415 | Power | -560.93 | 171,418.85 |
| Check | 03/02/2016 | 1320 | NV ENERGY | 3000101083510973267 | Power | -221.62 | 171,197.23 |
| Check | 03/07/2016 | 1252 | CLARK COUNTY TREASURER | 071-18-601-015,041-36-201-029,041... | -SPLIT- | -5,628.78 | 165,568.45 |
| Check | 03/10/2016 | 1298 | CLARK COUNTY POOL & LAWN SERVICE | March, 2016 | Pool Service | -175.00 | 165,393.45 |
| Check | 03/11/2016 | DEBIT | HEALTH PLAN OF NEVADA | | Health Insurance | -303.94 | 165,089.51 |
| Check | 03/13/2016 | 1323 | COX COMMUNICATIONS, INC. | 001 8610 084743002 | Cable Service | -203.10 | 164,886.41 |
| Check | 03/14/2016 | 1328 | CALAVERAS COUNTY TAX COLLECTOR | 020-001-091-000 | Property Taxes | -748.72 | 164,137.69 |
| Deposit | 03/14/2016 | | | Deposit | -SPLIT- | 5,600.00 | 169,737.69 |
| Check | 03/15/2016 | 1331 | KANAWHA COUNTY SHERIFF'S OFFICE | ACCT NOS. 07535170;07429721 | Property Taxes | -4,507.44 | 165,230.25 |
| Check | 03/15/2016 | 1270 | JACK GALARDI, JR. | | Beneficiary distribut... | -5,000.00 | 160,230.25 |
| Check | 03/15/2016 | 1332 | DANILO PASCUA | | -SPLIT- | -400.00 | 159,830.25 |
| Check | 03/15/2016 | 1251 | VOID | | VOID | 0.00 | 159,830.25 |
| Check | 03/15/2016 | 1334 | PETTY CASH | 02/25-03/12/2016 | Landscaping/Groun... | -262.50 | 159,567.75 |
| Check | 03/16/2016 | 1325 | GEORGIA DEPARTMENT OF REVENUE | YEAR 2014,LETTER L0578740368 ... | State Taxes Paid | -616.04 | 158,951.71 |
| Check | 03/20/2016 | 1326 | REPUBLIC SERVICES | 3-0620-1221345 | Trash Service | -86.64 | 158,865.07 |
| Check | 03/21/2016 | 1337 | WELLS FARGO BANK | smiths, lowe's, home depot, gas mo... | -SPLIT- | -270.24 | 158,594.83 |
| Check | 03/22/2016 | 1324 | CENTURY LINK | 309749917 | Telephone | -151.07 | 158,443.76 |
| Deposit | 03/23/2016 | | | Deposit | -SPLIT- | 7,000.00 | 165,443.76 |
| Deposit | 03/24/2016 | | | Deposit | Rental Income | 4,500.00 | 169,943.76 |
| Check | 03/28/2016 | 1327 | LAS VEGAS VALLEY WATER DISTRICT | 3115442962-0 | Water | -978.56 | 168,965.20 |
| Check | 03/30/2016 | 1330 | SOUTHWEST GAS CORPORATION | 211-5892819-002 | Gas | -180.67 | 168,784.53 |
| Check | 03/31/2016 | 1333 | DANILO PASCUA | | -SPLIT- | -400.00 | 168,384.53 |
| Check | 03/31/2016 | 1335 | NV ENERGY | 3000101083510973267 | Power | -179.91 | 168,204.62 |
| Check | 03/31/2016 | 1336 | NV ENERGY | 3000102899317989415 | Power | -589.38 | 167,615.24 |
| Check | 04/01/2016 | 1329 | STANLEY CONVERGENT SECURITY SO... | 793123023548 | Security | -66.85 | 167,548.39 |
| Check | 04/01/2016 | 1339 | PETTY CASH | home depot, auto zone, postage, cle... | Maintenance & Rep... | -260.88 | 167,287.51 |
| Check | 04/05/2016 | 1340 | DOCTOR COOL | VOID: A/C | Maintenance & Rep... | 0.00 | 167,287.51 |
| Check | 04/05/2016 | 1341 | FIDELITY APPLIANCES | VOID: REFRIGERTION-NORTHLAND | Maintenance & Rep... | 0.00 | 167,287.51 |
| Check | 04/06/2016 | 1343 | CLARK COUNTY TREASURER | 071-18-601-015 | NV Other Pty-Prop... | -10.84 | 167,276.67 |
| Check | 04/06/2016 | 1344 | CLARK COUNTY TREASURER | 162-04-102-007 | Property Taxes | -211.42 | 167,065.25 |
| Check | 04/08/2016 | DEBIT | AMERICAN HOME SHIELD | | Maintenance & Rep... | -70.33 | 166,994.92 |
| Check | 04/09/2016 | 1345 | VOID | | VOID | 0.00 | 166,994.92 |

8:34 AM
03/16/18
Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
### As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| Check | 04/10/2016 | 1299 | CLARK COUNTY POOL & LAWN SERVICE | April, 2016 | Pool Service | -175.00 | 166,819.92 |
| Check | 04/11/2016 | 1338 | COX COMMUNICATIONS, INC. | 001 8610 084743002 | Cable Service | -246.50 | 166,573.42 |
| Check | 04/11/2016 | 1346 | KEVIN CASOLARI | outside camera | Maintenance & Rep... | -600.00 | 165,973.42 |
| Check | 04/12/2016 | DEBIT | HEALTH PLAN OF NEVADA | | Health Insurance | -252.54 | 165,720.88 |
| Deposit | 04/12/2016 | | | Deposit | Interest Income | 7,000.00 | 172,720.88 |
| Check | 04/14/2016 | 1350 | STANLEY CONVERGENT SECURITY SO... | INV. NO. 13220908 ACCT. NO. 793... | Security | -300.93 | 172,419.95 |
| Check | 04/15/2016 | 1308 | JACK GALARDI, JR. | | Beneficiary distribut... | -5,000.00 | 167,419.95 |
| Check | 04/15/2016 | 1355 | DANILO PASCUA | APRIL 1-15 | -SPLIT- | -400.00 | 167,019.95 |
| Check | 04/19/2016 | 1354 | WELLS FARGO BANK | REPAIR SUPPLIES | Maintenance & Rep... | -144.49 | 166,875.46 |
| Check | 04/22/2016 | 1357 | KEVIN CASOLARI | play station wiring | Maintenance & Rep... | -200.00 | 166,675.46 |
| Check | 04/25/2016 | 1342 | LAS VEGAS VALLEY WATER DISTRICT | 3115442962-0 | Water | -809.19 | 165,866.27 |
| Check | 04/25/2016 | 1349 | CENTURY LINK | 702 384-4487 | Telephone | -393.59 | 165,472.68 |
| Check | 04/27/2016 | 1358 | CRYSTAL TINCHER | APPALACHIAN POWER COMPAN... | Maintenance & Rep... | -4,120.40 | 161,352.28 |
| Deposit | 04/28/2016 | | | Deposit | -SPLIT- | 5,000.00 | 166,352.28 |
| Check | 04/30/2016 | 1356 | DANILO PASCUA | APRIL 16-30 | -SPLIT- | -400.00 | 165,952.28 |
| Check | 05/01/2016 | 1348 | STANLEY CONVERGENT SECURITY SO... | ACCOUNT NO. 793123023548-MAY... | Security | -67.86 | 165,884.42 |
| Check | 05/02/2016 | 1347 | SOUTHWEST GAS CORPORATION | 211-5892819-002 | Gas | -87.86 | 165,796.56 |
| Check | 05/02/2016 | 1352 | NV ENERGY | 3000102899317989415 | Power | -651.18 | 165,145.38 |
| Check | 05/02/2016 | 1353 | NV ENERGY | 3000101083510973267 | Power | -196.06 | 164,949.32 |
| Check | 05/02/2016 | 1359 | SALVADOR SOTOLONGO | CLEAN AIR DUCTS AND VENTS | Maintenance & Rep... | -840.00 | 164,109.32 |
| Check | 05/02/2016 | 1364 | VOID | | VOID | 0.00 | 164,109.32 |
| Deposit | 05/06/2016 | | | Deposit | Forfeited deposits | 5,000.00 | 169,109.32 |
| Check | 05/09/2016 | 1362 | PETTY CASH | SMART & FINAL, CLEANING SUPP... | Maintenance & Rep... | -509.00 | 168,600.32 |
| Check | 05/09/2016 | 1363 | PETTY CASH | APRIL 1-30-BUSHES | Landscaping/Groun... | -300.00 | 168,300.32 |
| Check | 05/10/2016 | 1300 | CLARK COUNTY POOL & LAWN SERVICE | May, 2016 | Pool Service | -175.00 | 168,125.32 |
| Check | 05/10/2016 | 1369 | PETTY CASH | bedspreads/mats | Supplies | -106.15 | 168,019.17 |
| Check | 05/10/2016 | DEBIT | AMERICAN HOME SHIELD | | Maintenance & Rep... | -70.33 | 167,948.84 |
| Check | 05/11/2016 | DEBIT | HEALTH PLAN OF NEVADA | | Health Insurance | -252.54 | 167,696.30 |
| Check | 05/11/2016 | DEBIT | AMERICAN HOME SHIELD | | Maintenance & Rep... | -70.33 | 167,625.97 |
| Check | 05/12/2016 | 1360 | COX COMMUNICATIONS, INC. | 001 8610 084743002 | Cable Service | -246.50 | 167,379.47 |
| Check | 05/15/2016 | 1309 | JACK GALARDI, JR. | | Beneficiary distribut... | -5,000.00 | 162,379.47 |
| Check | 05/15/2016 | 1373 | DANILO PASCUA | | -SPLIT- | -400.00 | 161,979.47 |
| Check | 05/16/2016 | 1351 | WEGENER INSURANCE AGENCY | VOID: down payment 2200 waldman... | House Insurance | 0.00 | 161,979.47 |
| Deposit | 05/17/2016 | | | Deposit | Interest Income | 5,250.00 | 167,229.47 |
| Deposit | 05/18/2016 | | | Deposit | Property Taxes | 118.98 | 167,348.45 |
| Check | 05/19/2016 | 1365 | REPUBLIC SERVICES | 3-0620-1243087 | Trash Service | -32.78 | 167,315.67 |
| Deposit | 05/19/2016 | | | Deposit | -SPLIT- | 7,425.00 | 174,740.67 |
| Check | 05/23/2016 | 1366 | CENTURY LINK | 309749917 | Telephone | -165.04 | 174,575.63 |
| Check | 05/23/2016 | 1376 | WELLS FARGO BANK | home depot | Supplies | -353.30 | 174,222.33 |
| Check | 05/23/2016 | 1374 | VOID | | VOID | 0.00 | 174,222.33 |
| Check | 05/29/2016 | 1375 | DANILO PASCUA | | -SPLIT- | -400.00 | 173,822.33 |
| Check | 05/31/2016 | 1367 | LAS VEGAS VALLEY WATER DISTRICT | 3115442962-0 | Water | -665.12 | 173,157.21 |
| Check | 05/31/2016 | 1370 | SOUTHWEST GAS CORPORATION | 211-5892819-002 | Gas | -150.00 | 173,007.21 |
| Check | 05/31/2016 | 1379 | WESTERN DOOR AND GATE | 212659 | Maintenance & Rep... | -95.00 | 172,912.21 |
| Check | 05/31/2016 | 1380 | PETTY CASH | CLEANING | Maintenance & Rep... | -362.00 | 172,550.21 |
| Check | 06/01/2016 | 1361 | CITY OF LAS VEGAS-SEWER | 2163422222 | Sewer | -135.12 | 172,415.09 |
| Check | 06/01/2016 | 1368 | STANLEY CONVERGENT SECURITY SO... | 13450737 | Security | -67.86 | 172,347.23 |
| Check | 06/02/2016 | 1371 | NV ENERGY | 3000101083510973267 | Power | -162.97 | 172,184.26 |
| Check | 06/02/2016 | 1372 | NV ENERGY | 3000102899317989415 | Power | -552.16 | 171,632.10 |

8:34 AM
03/16/18
Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
### As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| Deposit | 06/03/2016 | | | Deposit | -SPLIT- | 3,000.00 | 174,632.10 |
| Check | 06/10/2016 | 1377 | CLARK COUNTY POOL & LAWN SERVICE | JUNE, 2016 | Pool Service | -188.50 | 174,443.60 |
| Check | 06/11/2016 | 1378 | COX COMMUNICATIONS, INC. | 001 8610 084743002 | Cable Service | -238.94 | 174,204.66 |
| Deposit | 06/13/2016 | | | Deposit | Note Receivable-Te... | 8,000.00 | 182,204.66 |
| Check | 06/13/2016 | DEBIT | HEALTH PLAN OF NEVADA | | Health Insurance | -252.54 | 181,952.12 |
| Check | 06/15/2016 | 1395 | DANILO PASCUA | | -SPLIT- | -400.00 | 181,552.12 |
| Check | 06/15/2016 | 1396 | DANILO PASCUA | | -SPLIT- | -400.00 | 181,152.12 |
| Check | 06/17/2016 | 1381 | PETTY CASH | CLEANING OUTSIDE AND INSIDE ... | Maintenance & Rep... | -387.50 | 180,764.62 |
| Check | 06/20/2016 | 1384 | REPUBLIC SERVICES | 3-0620-1221345 | Trash Service | -45.00 | 180,719.62 |
| Check | 06/20/2016 | 1394 | WELLS FARGO BANK | HOME DEPOT | Supplies | -358.02 | 180,361.60 |
| Check | 06/22/2016 | 1385 | CENTURY LINK | 309749917 (702) 384-4487 | Telephone | -163.46 | 180,198.14 |
| Deposit | 06/23/2016 | | | Deposit | Insurance-Building | 4,120.40 | 184,318.54 |
| Check | 06/27/2016 | 1382 | LAS VEGAS VALLEY WATER DISTRICT | 3115442962-0 | Water | -561.47 | 183,757.07 |
| Check | 06/27/2016 | 1398 | BANK OF AMERICA | LIFELOCK MEMBERSHIP 1 YR UP ... | Fees | -219.89 | 183,537.18 |
| Check | 06/30/2016 | 1400 | PETTY CASH | LOWES, HOME DEPOT, BUSHES | -SPLIT- | -321.39 | 183,215.79 |
| Check | 07/01/2016 | 1383 | STANLEY CONVERGENT SECURITY SO... | 793123011132 | Security | -67.86 | 183,147.93 |
| Check | 07/01/2016 | 1386 | NV ENERGY | 3000101083510973267 | Power | -201.02 | 182,946.91 |
| Check | 07/01/2016 | 1387 | NV ENERGY | 3000102899317989415 | Power | -777.22 | 182,169.69 |
| Check | 07/05/2016 | 1401 | PETTY CASH | CLEANING | Maintenance & Rep... | -256.25 | 181,913.44 |
| Check | 07/06/2016 | 1403 | CRYSTAL TINCHER | WALLS CONSTRUCTION INV. NO. ... | Maintenance & Rep... | -4,627.50 | 177,285.94 |
| Check | 07/07/2016 | DEBI... | JEG FAMILY TRUST | | Note Receivable-Te... | -10,000.00 | 167,285.94 |
| Deposit | 07/07/2016 | | | Deposit | Note Receivable-Te... | 10,000.00 | 177,285.94 |
| Check | 07/08/2016 | DEBIT | AMERICAN HOME SHIELD | | Maintenance & Rep... | -70.33 | 177,215.61 |
| Check | 07/08/2016 | DEBI... | JEG FAMILY TRUST | | Note Receivable-Te... | -8,000.00 | 169,215.61 |
| Deposit | 07/08/2016 | | | Deposit | Loan Payable-LVA | 10,000.00 | 179,215.61 |
| Check | 07/08/2016 | DEBI... | JEG FAMILY TRUST | | -SPLIT- | -1,000.00 | 178,215.61 |
| Check | 07/10/2016 | 1397 | CLARK COUNTY POOL & LAWN SERVICE | JULY, 2016 | Pool Service | -175.00 | 178,040.61 |
| Check | 07/11/2016 | DEBI... | LVA MANAGEMENT | | Note Receivable-Te... | -10,000.00 | 168,040.61 |
| Check | 07/12/2016 | DEBIT | HEALTH PLAN OF NEVADA | | Health Insurance | -252.54 | 167,788.07 |
| Check | 07/12/2016 | 1399 | COX COMMUNICATIONS, INC. | 001 8610 084743002 | Cable Service | -249.65 | 167,538.42 |
| Check | 07/15/2016 | 1388 | JACK GALARDI, JR. | | Beneficiary distribut... | -5,000.00 | 162,538.42 |
| Check | 07/15/2016 | 1409 | JACK GALARDI, JR. | | Beneficiary distribut... | -5,000.00 | 157,538.42 |
| Check | 07/15/2016 | 1418 | DANILO PASCUA | | -SPLIT- | -400.00 | 157,138.42 |
| Deposit | 07/15/2016 | | | Deposit | Note Receivable-Te... | 10,000.00 | 167,138.42 |
| Deposit | 07/15/2016 | | | Deposit | -SPLIT- | 7,425.00 | 174,563.42 |
| General ... | 07/15/2016 | 11 | | | Note Receivable-Te... | 700.00 | 175,263.42 |
| Check | 07/19/2016 | DEBI... | LVA MANAGEMENT | | Note Receivable-Te... | -6,000.00 | 169,263.42 |
| Check | 07/20/2016 | 1406 | REPUBLIC SERVICES | 3-0620-1243087 | Trash Service | -22.16 | 169,241.26 |
| Check | 07/20/2016 | 1405 | VOID | | VOID | 0.00 | 169,241.26 |
| Check | 07/21/2016 | 1412 | WELLS FARGO BANK | SMITHS;HOME DEPOT | Maintenance & Rep... | -161.03 | 169,080.23 |
| Check | 07/21/2016 | 1408 | TRAVELERS INDEMNITY AND AFFILIATES | 995877642 637 1 | House Insurance | -964.60 | 168,115.63 |
| Deposit | 07/22/2016 | | | Deposit | Note Receivable-Te... | 6,000.00 | 174,115.63 |
| Check | 07/25/2016 | 1404 | LAS VEGAS VALLEY WATER DISTRICT | 31154429620 | Water | -732.33 | 173,383.30 |
| Check | 07/25/2016 | 1407 | CENTURY LINK | 309749917 | Telephone | -164.43 | 173,218.87 |
| Deposit | 07/29/2016 | | | Deposit | -SPLIT- | 500.00 | 173,718.87 |
| Check | 07/31/2016 | 1419 | DANILO PASCUA | | -SPLIT- | -400.00 | 173,318.87 |
| Check | 08/01/2016 | 1402 | STANLEY CONVERGENT SECURITY SO... | 793123023548 | Security | -67.92 | 173,250.95 |
| Check | 08/02/2016 | 2373 | NV ENERGY | 3000101083510973291 | Power | -360.26 | 172,890.69 |
| Check | 08/02/2016 | 2374 | NV ENERGY | 300010108351973283 | Power | -475.84 | 172,414.85 |

8:34 AM
03/16/18
Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
### As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| Check | 08/02/2016 | 1411 | NV ENERGY | 3000101083510973267 | Power | -291.39 | 172,123.46 |
| Check | 08/02/2016 | 1410 | NV ENERGY | 3000102899317989 4185 | Power | -1,176.93 | 170,946.53 |
| Check | 08/05/2016 | 1421 | WALLS CONSTRUCTION & REMODELIN... | electrical fire repair full payment full ... | Maintenance & Rep... | -5,255.82 | 165,690.71 |
| Check | 08/05/2016 | 1422 | WALLS CONSTRUCTION & REMODELIN... | VOID: structural fire repair full paym... | Maintenance & Rep... | 0.00 | 165,690.71 |
| Deposit | 08/05/2016 | | | Deposit | Interest Income | 3,500.00 | 169,190.71 |
| Check | 08/09/2016 | DEBIT | AMERICAN HOME SHIELD | | Maintenance & Rep... | -70.33 | 169,120.38 |
| Check | 08/10/2016 | 1413 | CLARK COUNTY POOL & LAWN SERVICE | August, 2016 | Pool Service | -225.00 | 168,895.38 |
| Deposit | 08/10/2016 | | | Deposit | -SPLIT- | 7,125.00 | 176,020.38 |
| Check | 08/11/2016 | 1415 | TRAVELERS INDEMNITY AND AFFILIATES | POLICY NO. 995877642 637 1 | House Insurance | -964.60 | 175,055.78 |
| Check | 08/11/2016 | 1414 | COX COMMUNICATIONS, INC. | 001 8610 084743002 | Cable Service | -249.65 | 174,806.13 |
| Check | 08/12/2016 | DEBIT | HEALTH PLAN OF NEVADA | | Health Insurance | -252.54 | 174,553.59 |
| Check | 08/15/2016 | 1389 | JACK GALARDI, JR. | | Beneficiary distribut... | -5,000.00 | 169,553.59 |
| Check | 08/15/2016 | 1416 | CLARK COUNTY TREASURER | 029,012,013,015,007 | -SPLIT- | -5,618.79 | 163,934.80 |
| Check | 08/15/2016 | 1437 | DANILO PASCUA | | -SPLIT- | -400.00 | 163,534.80 |
| Check | 08/16/2016 | 1429 | WELLS FARGO BANK | HOME DEPOT, WATER | Maintenance & Rep... | -391.24 | 163,143.56 |
| Check | 08/17/2016 | 1430 | PETTY CASH | cleaning house for july and aug, 2016 | Maintenance & Rep... | -431.25 | 162,712.31 |
| Deposit | 08/17/2016 | | | Deposit | Rental Income | 4,752.00 | 167,464.31 |
| Check | 08/19/2016 | 1435 | WALLS CONSTRUCTION & REMODELIN... | PAYMENT ON ACCOUNT | Maintenance & Rep... | -2,206.81 | 165,257.50 |
| Check | 08/20/2016 | 1424 | REPUBLIC SERVICES | 3-0620-1243087 | Trash Service | -44.32 | 165,213.18 |
| Check | 08/22/2016 | 1425 | CENTURY LINK | 309749917 | Telephone | -178.45 | 165,034.73 |
| Deposit | 08/25/2016 | | | Deposit | -SPLIT- | 7,125.00 | 172,159.73 |
| Check | 08/29/2016 | 1426 | LAS VEGAS VALLEY WATER DISTRICT | 3115442962-0 | Water | -851.10 | 171,308.63 |
| Check | 08/30/2016 | 1431 | PETTY CASH | cleaning supplies | Maintenance & Rep... | -73.85 | 171,234.78 |
| Check | 08/30/2016 | DEBIT | JEG FAMILY TRUST | | -SPLIT- | -2,000.00 | 169,234.78 |
| Check | 08/31/2016 | 1438 | DANILO PASCUA | | -SPLIT- | -400.00 | 168,834.78 |
| Check | 09/01/2016 | 1423 | CITY OF LAS VEGAS-SEWER | 2163422222 | Sewer | -135.12 | 168,699.66 |
| Check | 09/01/2016 | 1427 | STANLEY CONVERGENT SECURITY SO... | 793123023548 | Security | -67.92 | 168,631.74 |
| Check | 09/01/2016 | 1433 | NV ENERGY | 3000102899317989415 | Power | -1,195.52 | 167,436.22 |
| Check | 09/01/2016 | 1434 | NV ENERGY | 3000101083510973267 | Power | -316.28 | 167,119.94 |
| Check | 09/01/2016 | 1440 | FIDELITY APPLIANCES | whirlpool | Maintenance & Rep... | -75.00 | 167,044.94 |
| Check | 09/02/2016 | 1442 | NYBERG & ASSOCIATES | ACCOUNTING FESS -FIDUCIARY ... | Accounting Fees | -750.00 | 166,294.94 |
| Check | 09/02/2016 | DEBIT | JEG FAMILY TRUST | | Miscellaneous Exp... | -105,000.00 | 61,294.94 |
| Check | 09/02/2016 | DEBIT | JEG FAMILY TRUST | | -SPLIT- | -5,000.00 | 56,294.94 |
| Check | 09/06/2016 | 1432 | SOUTHWEST GAS CORPORATION | 211-5892819-002 | Gas | -53.74 | 56,241.20 |
| Deposit | 09/06/2016 | | | Deposit | -SPLIT- | 1,500.00 | 57,741.20 |
| Deposit | 09/07/2016 | | | Deposit | Miscellaneous Exp... | 105,000.00 | 162,741.20 |
| Check | 09/08/2016 | DEBIT | AMERICAN HOME SHIELD | | Maintenance & Rep... | -70.33 | 162,670.87 |
| Check | 09/10/2016 | 1436 | CLARK COUNTY POOL & LAWN SERVICE | SEPTEMBER, 2016 | Pool Service | -175.00 | 162,495.87 |
| Check | 09/11/2016 | 1439 | COX COMMUNICATIONS, INC. | 001 8610 084743002 | Cable Service | -249.65 | 162,246.22 |
| Check | 09/13/2016 | DEBIT | HEALTH PLAN OF NEVADA | | Health Insurance | -252.54 | 161,993.68 |
| Check | 09/14/2016 | 1448 | DANILO PASCUA | | -SPLIT- | -400.00 | 161,593.68 |
| Check | 09/15/2016 | 1390 | JACK GALARDI, JR. | | Beneficiary distribut... | -5,000.00 | 156,593.68 |
| Check | 09/16/2016 | BILLP... | TRAVELERS INDEMNITY AND AFFILIATES | ACCOUNT#995877642 05/21/16 P... | House Insurance | -964.60 | 155,629.08 |
| Check | 09/16/2016 | DEBIT | JEG FAMILY TRUST | | -SPLIT- | -5,000.00 | 150,629.08 |
| Check | 09/19/2016 | BILLP... | CENTURY LINK | 309749917 | Telephone | -164.45 | 150,464.63 |
| Check | 09/23/2016 | BILLP... | NV ENERGY | 3000101083512454492 6 1245 RAN... | Power | -100.00 | 150,364.63 |
| Check | 09/23/2016 | BILLP... | NV ENERGY | 3000101083512544918 1245 RANC... | Power | -100.00 | 150,264.63 |
| Check | 09/23/2016 | 1447 | STANLEY CONVERGENT SECURITY SO... | | Security | 0.00 | 150,264.63 |
| Check | 09/26/2016 | 1441 | LAS VEGAS VALLEY WATER DISTRICT | 31154429620 | Water | -1,009.90 | 149,254.73 |

8:34 AM
03/16/18
Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
### As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| Deposit | 09/29/2016 | | | Deposit | Interest Income | 3,500.00 | 152,754.73 |
| Check | 09/30/2016 | BILLP... | NV ENERGY | 300010289931798415 2200 WALD... | Power | -1,115.39 | 151,639.34 |
| Check | 09/30/2016 | BILLP... | NV ENERGY | 3000101083510973267 1245 RANC... | Power | -292.11 | 151,347.23 |
| Check | 09/30/2016 | 1449 | DANILO PASCUA | | -SPLIT- | -400.00 | 150,947.23 |
| Check | 09/30/2016 | 1451 | PETTY CASH | supplies | Maintenance & Rep... | -27.00 | 150,920.23 |
| Check | 10/01/2016 | 1445 | STANLEY CONVERGENT SECURITY SO... | ACCOUNT#793123023548 MONTHLY | Security | -67.92 | 150,852.31 |
| Check | 10/01/2016 | 1446 | CLARK COUNTY POOL & LAWN SERVICE | OCTOBER, 2016 AND SHOCKED P... | Pool Service | -195.00 | 150,657.31 |
| Check | 10/03/2016 | 1417 | CLARK COUNTY TREASURER | 029,012,013,015.007 | -SPLIT- | -5,617.04 | 145,040.27 |
| Check | 10/03/2016 | 1450 | WELLS FARGO BANK | SUPPLIES | Maintenance & Rep... | -190.12 | 144,850.15 |
| Check | 10/05/2016 | 1453 | PETTY CASH | TICKET NO. X-1489674 | Maintenance & Rep... | -50.00 | 144,800.15 |
| Check | 10/06/2016 | 1452 | VOID | | VOID | 0.00 | 144,800.15 |
| Check | 10/06/2016 | 1454 | BANK OF AMERICA | LAS VEGAS MUNICIPAL COURT C... | Fees | -210.50 | 144,589.65 |
| Deposit | 10/07/2016 | | | Deposit | Rental Income | 4,752.00 | 149,341.65 |
| Check | 10/11/2016 | DEBIT | COX COMMUNICATIONS, INC. | | Cable Service | -249.65 | 149,092.00 |
| Check | 10/11/2016 | DEBIT | AMERICAN HOME SHIELD | | Maintenance & Rep... | -70.33 | 149,021.67 |
| Check | 10/11/2016 | DEBIT | HEALTH PLAN OF NEVADA | | Health Insurance | -252.54 | 148,769.13 |
| Check | 10/12/2016 | 1456 | VOID | | VOID | 0.00 | 148,769.13 |
| Check | 10/15/2016 | 1391 | JACK GALARDI, JR. | | Beneficiary distribut... | -5,000.00 | 143,769.13 |
| Check | 10/16/2016 | BILLP... | TRAVELERS INDEMNITY AND AFFILIATES | ACCOUNT#995877642 05/21/16 P... | House Insurance | -964.60 | 142,804.53 |
| Check | 10/16/2016 | 1463 | DANILO PASCUA | | -SPLIT- | -400.00 | 142,404.53 |
| Check | 10/17/2016 | 1443 | UNITED STATES TREASURY | FORM 1040-2015 SSN 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 | 2015 Income Taxes | -108,569.00 | 33,835.53 |
| Check | 10/17/2016 | 1444 | GEORGIA DEPARTMENT OF REVENUE | FORM 500-2015 SSBN 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 | State Taxes Paid | -23,999.00 | 9,836.53 |
| Check | 10/19/2016 | 1466 | WELLS FARGO BANK | materials | -SPLIT- | -184.68 | 9,651.85 |
| Check | 10/20/2016 | 1457 | REPUBLIC SERVICES | VOID: OCT-DEC, 2016 | Trash Service | 0.00 | 9,651.85 |
| Check | 10/20/2016 | 1458 | REPUBLIC SERVICES | OCT-DEC, 2016 | Trash Service | -66.48 | 9,585.37 |
| Check | 10/21/2016 | 1455 | TRAVELERS INDEMNITY AND AFFILIATES | VOID: 995877642 | House Insurance | 0.00 | 9,585.37 |
| Check | 10/24/2016 | 1459 | CENTURY LINK | 309749917 | Telephone | -164.29 | 9,421.08 |
| Deposit | 10/24/2016 | | | Deposit | Rental Income | 4,750.00 | 14,171.08 |
| Check | 10/24/2016 | DEBIT | TRAVELERS INDEMNITY AND AFFILIATES | | House Insurance | -964.60 | 13,206.48 |
| Check | 10/25/2016 | DEBIT | CHECK IN THE MAIL | OFFICE SUPPLIES | Supplies | -52.44 | 13,154.04 |
| Check | 10/31/2016 | 1460 | LAS VEGAS VALLEY WATER DISTRICT | 3115442962-0 | Water | -910.28 | 12,243.76 |
| Check | 10/31/2016 | 1471 | PETTY CASH | POSTAGE, SUPPLIES | Maintenance & Rep... | -157.83 | 12,085.93 |
| Check | 10/31/2016 | 1475 | DANILO PASCUA | | -SPLIT- | -400.00 | 11,685.93 |
| Check | 10/31/2016 | 1482 | PETTY CASH | indoor cleaning/supplies | Maintenance & Rep... | -367.50 | 11,318.43 |
| Check | 11/01/2016 | 1461 | STANLEY CONVERGENT SECURITY SO... | ACCOUNT#793123023548 MONTHLY | Security | -67.92 | 11,250.51 |
| Check | 11/01/2016 | 1462 | STANLEY CONVERGENT SECURITY SO... | DECEMBER, 2016 | Security | -67.92 | 11,182.59 |
| Check | 11/01/2016 | 1464 | NV ENERGY | 3000101083510973267 | Power | -191.81 | 10,990.78 |
| Check | 11/01/2016 | 1465 | NV ENERGY | 3000102899317989415 | Power | -648.17 | 10,342.61 |
| Check | 11/02/2016 | 1472 | CALAVERAS COUNTY TAX COLLECTOR | VOID: 020-001-091-000 | Property Taxes | 0.00 | 10,342.61 |
| Deposit | 11/03/2016 | | | Deposit | Interest Income | 1,750.00 | 12,092.61 |
| Check | 11/07/2016 | 1467 | SOUTHWEST GAS CORPORATION | 211-5892819-002 | Gas | -104.22 | 11,988.39 |
| Check | 11/08/2016 | DEBIT | AMERICAN HOME SHIELD | | Maintenance & Rep... | -70.33 | 11,918.06 |
| Check | 11/09/2016 | SC | WELLS FARGO BANK | | Bank Service Char... | -10.00 | 11,908.06 |
| Deposit | 11/09/2016 | | | Deposit | -SPLIT- | 7,125.00 | 19,033.06 |
| Check | 11/10/2016 | 1468 | CLARK COUNTY POOL & LAWN SERVICE | NOVEMBER, 2016 | Pool Service | -175.00 | 18,858.06 |
| Check | 11/10/2016 | 1469 | COX COMMUNICATIONS, INC. | 001 8610 084743002 | Cable Service | -249.65 | 18,608.41 |
| Check | 11/14/2016 | DEBIT | HEALTH PLAN OF NEVADA | | Health Insurance | -252.54 | 18,355.87 |
| Deposit | 11/14/2016 | | | Deposit | -SPLIT- | 6,000.00 | 24,355.87 |
| Check | 11/15/2016 | 1392 | JACK GALARDI, JR. | | Beneficiary distribut... | -5,000.00 | 19,355.87 |

8:34 AM
03/16/18
Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
### As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| Check | 11/15/2016 | 1483 | PETTY CASH | supplies/maintenance | Maintenance & Rep... | -467.85 | 18,888.02 |
| Check | 11/15/2016 | 1489 | DANILO PASCUA | | -SPLIT- | -400.00 | 18,488.02 |
| Check | 11/16/2016 | BILLP... | TRAVELERS INDEMNITY AND AFFILIATES | ACCOUNT#995877642 05/21/16 P... | House Insurance | -964.60 | 17,523.42 |
| Check | 11/16/2016 | 1473 | KANAWHA COUNTY SHERIFF'S OFFICE | 21 0073 0007 0000 | Property Taxes | -397.41 | 17,126.01 |
| Check | 11/16/2016 | 1474 | KANAWHA COUNTY SHERIFF'S OFFICE | 21 0075 0000 0000 | Property Taxes | -4,474.57 | 12,651.44 |
| Deposit | 11/18/2016 | | | Deposit | Rental Income | 4,752.00 | 17,403.44 |
| Check | 11/18/2016 | 1487 | WELLS FARGO BANK | SUPPLIES | Maintenance & Rep... | -133.31 | 17,270.13 |
| Check | 11/22/2016 | 1481 | CENTURY LINK | 309749917 | Telephone | -164.29 | 17,105.84 |
| Check | 11/28/2016 | 1478 | LAS VEGAS VALLEY WATER DISTRICT | 31154429620 | Water | -854.13 | 16,251.71 |
| Check | 11/28/2016 | 1490 | UNITED STATES TREASURY | NOTICE CP14 YR2015SSN530-49-... | 2015 Income Taxes | -5,405.48 | 10,846.23 |
| Deposit | 11/28/2016 | | | Deposit | -SPLIT- | 2,500.00 | 13,346.23 |
| Check | 11/30/2016 | 1503 | DANILO PASCUA | | -SPLIT- | -400.00 | 12,946.23 |
| Check | 12/01/2016 | 1538 | HENRY COUNTY TAX COMMISSIONER | 2016-39772 BILL NO. | Property Taxes | -3,417.77 | 9,528.46 |
| Check | 12/01/2016 | 1479 | CITY OF LAS VEGAS-SEWER | 2163422222 | Sewer | -135.12 | 9,393.34 |
| Check | 12/01/2016 | 1496 | DOUG BELDEN, TAX COLLECTOR | A1599330000 | Property Taxes | -43.68 | 9,349.66 |
| Check | 12/01/2016 | 1477 | VOID | | VOID | 0.00 | 9,349.66 |
| Check | 12/02/2016 | 1484 | NV ENERGY | 3000101083510973267 | Power | -159.55 | 9,190.11 |
| Check | 12/02/2016 | 1485 | NV ENERGY | 3000102899317989415 | Power | -488.34 | 8,701.77 |
| Check | 12/04/2016 | 1505 | NV ENERGY | 3000102899317989415 | Power | -622.11 | 8,079.66 |
| Check | 12/04/2016 | 1506 | NV ENERGY | 3000101083510973267 | Power | -196.78 | 7,882.88 |
| Check | 12/06/2016 | 1486 | SOUTHWEST GAS CORPORATION | 211-5892819-002 | Gas | -54.42 | 7,828.46 |
| Check | 12/06/2016 | 12062... | UNITED STATES TREASURY | form 1040 year 2015 | 2015 Income Taxes | 0.00 | 7,828.46 |
| Deposit | 12/06/2016 | | | Deposit | Loan Payable-LVA | 2,000.00 | 9,828.46 |
| Check | 12/06/2016 | 1498 | UNITED STATES TREASURY | notice cp503 year 2015 | 2015 Income Taxes | -20.72 | 9,807.74 |
| Check | 12/08/2016 | DEBIT | AMERICAN HOME SHIELD | | Maintenance & Rep... | -70.33 | 9,737.41 |
| Deposit | 12/09/2016 | | | Deposit | -SPLIT- | 5,000.00 | 14,737.41 |
| Check | 12/10/2016 | 1488 | CLARK COUNTY POOL & LAWN SERVICE | DECEMBER, 2016 | Pool Service | -175.00 | 14,562.41 |
| Check | 12/12/2016 | 1491 | COX COMMUNICATIONS, INC. | 001 8610 084743002 | Cable Service | -249.65 | 14,312.76 |
| Check | 12/12/2016 | | | Service Charge | Bank Service Char... | -10.00 | 14,302.76 |
| Check | 12/12/2016 | DEBIT | HEALTH PLAN OF NEVADA | | Health Insurance | -252.54 | 14,050.22 |
| Check | 12/15/2016 | 1393 | JACK GALARDI, JR. | | Beneficiary distribut... | -5,000.00 | 9,050.22 |
| Check | 12/15/2016 | 1499 | CALAVERAS COUNTY TAX COLLECTOR | 020-001-091-000 | Property Taxes | -689.96 | 8,360.26 |
| Check | 12/15/2016 | 1508 | DANILO PASCUA | | -SPLIT- | -400.00 | 7,960.26 |
| Deposit | 12/15/2016 | | | Deposit | -SPLIT- | 3,000.00 | 10,960.26 |
| Check | 12/16/2016 | BILLP... | TRAVELERS INDEMNITY AND AFFILIATES | ACCOUNT#995877642 05/21/16 P... | House Insurance | -964.60 | 9,995.66 |
| Check | 12/16/2016 | 1501 | PETTY CASH | REPAIR SUPPLIES/BUSHES/CLEA... | Maintenance & Rep... | -361.75 | 9,633.91 |
| Check | 12/16/2016 | DEBIT | JEG FAMILY TRUST | | Loan Payable-LVA | -2,300.00 | 7,333.91 |
| Deposit | 12/19/2016 | | | Deposit | Interest Income | 3,500.00 | 10,833.91 |
| Deposit | 12/19/2016 | | | Deposit | Rental Income | 4,752.00 | 15,585.91 |
| Deposit | 12/19/2016 | | | Deposit | -SPLIT- | 50.00 | 15,635.91 |
| Deposit | 12/19/2016 | | | Deposit | Loan Payable-LVA | 300.00 | 15,935.91 |
| Check | 12/20/2016 | 1470 | REPUBLIC SERVICES | 3-0620-1221345 | Trash Service | -85.73 | 15,850.18 |
| Deposit | 12/20/2016 | | | Deposit | -SPLIT- | 1,980.00 | 17,830.18 |
| Check | 12/21/2016 | 1507 | WELLS FARGO BANK | 6221 | Supplies | -375.15 | 17,455.03 |
| Check | 12/21/2016 | 1511 | A RELIABLE PEST CONTROL | INV NO. 42957 | Pest Control | -262.00 | 17,193.03 |
| Check | 12/22/2016 | 1502 | CENTURY LINK | 702 384-4487 | Telephone | -164.29 | 17,028.74 |
| Check | 12/23/2016 | DEBIT | JEG FAMILY TRUST | | Note Receivable-Te... | -7,900.00 | 9,128.74 |
| Check | 12/26/2016 | 1497 | LAS VEGAS VALLEY WATER DISTRICT | 31154429620 | Water | -1,462.42 | 7,666.32 |
| Check | 12/27/2016 | 1512 | PETTY CASH | LIGHTING REPAIRS BY MICHAEL ... | Maintenance & Rep... | -180.00 | 7,486.32 |

8:34 AM
03/16/18
Accrual Basis

JACK GALARDI, JR JEG SUBTRUST
General Ledger
As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| Deposit | 12/29/2016 | | | Deposit | Note Receivable-Te... | 7,900.00 | 15,386.32 |
| Check | 12/31/2016 | 1516 | DANILO PASCUA | | -SPLIT- | -400.00 | 14,986.32 |
| Total WELLS FARGO BANK | | | | | | -167,097.63 | 14,986.32 |
| Rec.From Sale of 425 Industrial | | | | | | | 0.00 |
| Total Rec.From Sale of 425 Industrial | | | | | | | 0.00 |
| Note Receivable-Teri Galardi | | | | | | | 1,362,739.42 |
| Check | 01/01/2016 | DEBIT | JEG FAMILY TRUST | | WELLS FARGO B... | 10,000.00 | 1,372,739.42 |
| Deposit | 01/17/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -2,413.73 | 1,370,325.69 |
| Deposit | 01/19/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -10,000.00 | 1,360,325.69 |
| Deposit | 01/25/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -10.13 | 1,360,315.56 |
| Check | 01/29/2016 | DEBIT | JEG FAMILY TRUST | | WELLS FARGO B... | 1,994.93 | 1,362,310.49 |
| Deposit | 02/08/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -3,760.86 | 1,358,549.63 |
| Deposit | 02/10/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -7,752.86 | 1,350,796.77 |
| Deposit | 02/22/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -6,525.60 | 1,344,271.17 |
| Deposit | 03/14/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -3,032.26 | 1,341,238.91 |
| Deposit | 03/23/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -5,902.02 | 1,335,336.89 |
| Deposit | 04/28/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -627.41 | 1,334,709.48 |
| Deposit | 05/19/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -4,875.52 | 1,329,833.96 |
| Deposit | 06/03/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -1,185.60 | 1,328,648.36 |
| Deposit | 06/13/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -8,000.00 | 1,320,648.36 |
| Check | 07/07/2016 | DEBI... | JEG FAMILY TRUST | | WELLS FARGO B... | 10,000.00 | 1,330,648.36 |
| Deposit | 07/07/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -10,000.00 | 1,320,648.36 |
| Check | 07/08/2016 | DEBI... | JEG FAMILY TRUST | | WELLS FARGO B... | 8,000.00 | 1,328,648.36 |
| Check | 07/08/2016 | DEBI... | JEG FAMILY TRUST | | WELLS FARGO B... | 5,229.83 | 1,333,878.19 |
| Check | 07/11/2016 | DEBI... | LVA MANAGEMENT | | WELLS FARGO B... | 10,000.00 | 1,343,878.19 |
| Deposit | 07/15/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -10,000.00 | 1,333,878.19 |
| Deposit | 07/15/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -7,425.00 | 1,326,453.19 |
| General ... | 07/15/2016 | 11 | | | -SPLIT- | 149.30 | 1,326,602.49 |
| Check | 07/19/2016 | DEBI... | LVA MANAGEMENT | | WELLS FARGO B... | 6,000.00 | 1,332,602.49 |
| Deposit | 07/22/2016 | | LVA MANAGEMENT | Deposit | WELLS FARGO B... | -6,000.00 | 1,326,602.49 |
| Deposit | 07/29/2016 | | GOODTIMES BAR & NIGHTCLUB | GOODTIMES ACCOUNT-PAYROLL | WELLS FARGO B... | 1,189.33 | 1,327,791.82 |
| Deposit | 08/10/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -5,675.71 | 1,322,116.11 |
| Deposit | 08/25/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -5,321.13 | 1,316,794.98 |
| Check | 08/30/2016 | DEBIT | JEG FAMILY TRUST | | WELLS FARGO B... | 2,119.77 | 1,318,914.75 |
| Check | 09/02/2016 | DEBIT | JEG FAMILY TRUST | | WELLS FARGO B... | 5,839.77 | 1,324,754.52 |
| Deposit | 09/06/2016 | | LVA MANAGEMENT | Deposit | WELLS FARGO B... | -1,018.01 | 1,323,736.51 |
| Check | 09/16/2016 | DEBIT | JEG FAMILY TRUST | | WELLS FARGO B... | 6,204.06 | 1,329,940.57 |
| Deposit | 11/09/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -3,012.02 | 1,326,928.55 |
| Deposit | 11/14/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -2,982.60 | 1,323,945.95 |
| Deposit | 11/28/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -814.05 | 1,323,131.90 |
| Deposit | 12/09/2016 | | LVA MANAGEMENT | Deposit | WELLS FARGO B... | -3,676.14 | 1,319,455.76 |
| Deposit | 12/15/2016 | | | Deposit | WELLS FARGO B... | -2,279.90 | 1,317,175.86 |
| Deposit | 12/19/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | 429.24 | 1,317,605.10 |
| Deposit | 12/20/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -1,860.15 | 1,315,744.95 |

8:34 AM
03/16/18
Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| Check | 12/23/2016 | DEBIT | JEG FAMILY TRUST | | WELLS FARGO B... | 7,900.00 | 1,323,644.95 |
| Deposit | 12/29/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -7,900.00 | 1,315,744.95 |
| Total Note Receivable-Teri Galardi | | | | | | -46,994.47 | 1,315,744.95 |
| **Notes Receivable** | | | | | | | 400,000.00 |
| **Dent Note Receivable** | | | | | | | 400,000.00 |
| Total Dent Note Receivable | | | | | | | 400,000.00 |
| **Notes Receivable - Other** | | | | | | | 0.00 |
| Total Notes Receivable - Other | | | | | | | 0.00 |
| Total Notes Receivable | | | | | | | 400,000.00 |
| **Securities** | | | | | | | 0.00 |
| **Sirius XM Radio common stock** | | | | | | | 0.00 |
| Total Sirius XM Radio common stock | | | | | | | 0.00 |
| **Securities - Other** | | | | | | | 0.00 |
| Total Securities - Other | | | | | | | 0.00 |
| Total Securities | | | | | | | 0.00 |
| **Escrow-Las Olas** | | | | | | | 0.00 |
| Total Escrow-Las Olas | | | | | | | 0.00 |
| **Residential Properties** | | | | | | | 2,085,047.00 |
| **Residence-2200 Waldman Ave** | | | | | | | 2,085,047.00 |
| Total Residence-2200 Waldman Ave | | | | | | | 2,085,047.00 |
| **4200 Gordon Rd, Ft Lauderdale** | | | | | | | 0.00 |
| Total 4200 Gordon Rd, Ft Lauderdale | | | | | | | 0.00 |
| **Residential Properties - Other** | | | | | | | 0.00 |
| Total Residential Properties - Other | | | | | | | 0.00 |
| Total Residential Properties | | | | | | | 2,085,047.00 |
| **Commercial Property** | | | | | | | 650,000.00 |
| **West Virginia land & bldg** | | | | | | | 650,000.00 |
| Total West Virginia land & bldg | | | | | | | 650,000.00 |
| **Commercial Property - Other** | | | | | | | 0.00 |
| Total Commercial Property - Other | | | | | | | 0.00 |
| Total Commercial Property | | | | | | | 650,000.00 |
| **Vacant Land** | | | | | | | 619,500.00 |
| **3700 Jonesboro Rd., Atlanta** | | | | | | | 0.00 |
| Total 3700 Jonesboro Rd., Atlanta | | | | | | | 0.00 |

8:34 AM
03/16/18
Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
### As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| **425 Industrial Rd, Atlanta** | | | | | | | 440,000.00 |
| Total 425 Industrial Rd, Atlanta | | | | | | | 440,000.00 |
| **6220 Adamo, Tampa** | | | | | | | 5,000.00 |
| Total 6220 Adamo, Tampa | | | | | | | 5,000.00 |
| **775 Conley Road, Atlanta** | | | | | | | 0.00 |
| Total 775 Conley Road, Atlanta | | | | | | | 0.00 |
| **Marathon, Florida** | | | | | | | 0.00 |
| Total Marathon, Florida | | | | | | | 0.00 |
| **Moapa, Nevada** | | | | | | | 107,000.00 |
| Total Moapa, Nevada | | | | | | | 107,000.00 |
| **Calaveras, CA** | | | | | | | 67,500.00 |
| Total Calaveras, CA | | | | | | | 67,500.00 |
| **Vacant Land - Other** | | | | | | | 0.00 |
| Total Vacant Land - Other | | | | | | | 0.00 |
| Total Vacant Land | | | | | | | 619,500.00 |
| **Payroll Liabilities** | | | | | | | 0.00 |
| Total Payroll Liabilities | | | | | | | 0.00 |
| **Loan Payable-LVA** | | | | | | | -10,000.00 |
| Deposit | 07/08/2016 | | LVA MANAGEMENT | Deposit | WELLS FARGO B... | -10,000.00 | -20,000.00 |
| Deposit | 12/06/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -2,000.00 | -22,000.00 |
| Check | 12/16/2016 | DEBIT | JEG FAMILY TRUST | | WELLS FARGO B... | 2,300.00 | -19,700.00 |
| Deposit | 12/19/2016 | | LVA MANAGEMENT | Deposit | WELLS FARGO B... | -300.00 | -20,000.00 |
| Total Loan Payable-LVA | | | | | | -10,000.00 | -20,000.00 |
| **Advancesto/from Teri Galardi** | | | | | | | 0.00 |
| Total Advancesto/from Teri Galardi | | | | | | | 0.00 |
| **NGordon Road Note Pay** | | | | | | | 0.00 |
| Total NGordon Road Note Pay | | | | | | | 0.00 |
| **Loans from Teri Galardi** | | | | | | | 0.00 |
| Total Loans from Teri Galardi | | | | | | | 0.00 |
| **Mortgage Payable** | | | | | | | 0.00 |
| **2200 Waldman Avenue** | | | | | | | 0.00 |
| Total 2200 Waldman Avenue | | | | | | | 0.00 |
| **Ft. Lauderdale/Las Olas House** | | | | | | | 0.00 |
| Total Ft. Lauderdale/Las Olas House | | | | | | | 0.00 |

8:34 AM
03/16/18
Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
### As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| Mortgage Payable - Other | | | | | | | 0.00 |
| Total Mortgage Payable - Other | | | | | | | 0.00 |
| Total Mortgage Payable | | | | | | | 0.00 |
| **Opening Balance Equity** | | | | | | | 0.00 |
| Total Opening Balance Equity | | | | | | | 0.00 |
| **Trust Equity** | | | | | | | -5,462,905.31 |
| General ... | 01/01/2016 | 15 | | Close ditributions to equity | 2014 Income Tax | 173,534.94 | -5,289,370.37 |
| Total Trust Equity | | | | | | 173,534.94 | -5,289,370.37 |
| Beneficiary distributions | | | | | | | 173,534.94 |
| **Taxes** | | | | | | | 4,104.00 |
| **2015 Income Taxes** | | | | | | | 0.00 |
| Check | 10/17/2016 | 1443 | UNITED STATES TREASURY | FORM 1040-2015 SSN 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 | WELLS FARGO B... | 108,569.00 | 108,569.00 |
| Check | 11/28/2016 | 1490 | UNITED STATES TREASURY | PENALTY AND INTEREST | WELLS FARGO B... | 5,405.48 | 113,974.48 |
| Check | 12/06/2016 | 12062... | UNITED STATES TREASURY | form 1040 year 2015 | WELLS FARGO B... | | 113,974.48 |
| Check | 12/06/2016 | 1498 | UNITED STATES TREASURY | notice cp503 year 2015 | WELLS FARGO B... | 20.72 | 113,995.20 |
| Total 2015 Income Taxes | | | | | | 113,995.20 | 113,995.20 |
| **2014 Income Tax** | | | | | | | 4,104.00 |
| General ... | 01/01/2016 | 15 | | Close ditributions to equity | -SPLIT- | -4,104.00 | 0.00 |
| Check | 02/01/2016 | 1304 | UNITED STATES TREASURY | CP503 YEAR2014 SSN 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 | WELLS FARGO B... | 2,048.39 | 2,048.39 |
| Total 2014 Income Tax | | | | | | -2,055.61 | 2,048.39 |
| **2014 State Tax** | | | | | | | 0.00 |
| Total 2014 State Tax | | | | | | | 0.00 |
| **Taxes - Other** | | | | | | | 0.00 |
| Total Taxes - Other | | | | | | | 0.00 |
| Total Taxes | | | | | | 111,939.59 | 116,043.59 |
| **NV Other Pty-Property Taxes** | | | | | | | 887.53 |
| General ... | 01/01/2016 | 15 | | Close ditributions to equity | 2014 Income Tax | -887.53 | 0.00 |
| Check | 01/04/2016 | 1250 | CLARK COUNTY TREASURER | Misc. NV Properties | WELLS FARGO B... | 443.29 | 443.29 |
| Check | 03/07/2016 | 1252 | CLARK COUNTY TREASURER | 071-18-601-015,041-36-201-029,041... | WELLS FARGO B... | 443.29 | 886.58 |
| Check | 04/06/2016 | 1343 | CLARK COUNTY TREASURER | 071-18-601-015 | WELLS FARGO B... | 10.84 | 897.42 |
| Check | 08/15/2016 | 1416 | CLARK COUNTY TREASURER | 029,012,013,015,007 | WELLS FARGO B... | 421.13 | 1,318.55 |
| Check | 10/03/2016 | 1417 | CLARK COUNTY TREASURER | 029,012,013,015.007 | WELLS FARGO B... | 421.18 | 1,739.73 |
| Total NV Other Pty-Property Taxes | | | | | | 852.20 | 1,739.73 |

8:34 AM
03/16/18
Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| **Supplies** | | | | | | | 882.44 |
| General ... | 01/01/2016 | 15 | | Close ditributions to equity | 2014 Income Tax | -882.44 | 0.00 |
| Check | 05/10/2016 | 1369 | PETTY CASH | bedspreads/mats | WELLS FARGO B... | 106.15 | 106.15 |
| Check | 05/23/2016 | 1376 | WELLS FARGO BANK | home depot | WELLS FARGO B... | 353.30 | 459.45 |
| Check | 06/20/2016 | 1394 | WELLS FARGO BANK | HOME DEPOT | WELLS FARGO B... | 358.02 | 817.47 |
| Check | 10/25/2016 | DEBIT | CHECK IN THE MAIL | OFFICE SUPPLIES | WELLS FARGO B... | 52.44 | 869.91 |
| Check | 12/21/2016 | 1507 | WELLS FARGO BANK | 6221 | WELLS FARGO B... | 375.15 | 1,245.06 |
| Total Supplies | | | | | | 362.62 | 1,245.06 |
| **Personal Expenses** | | | | | | | 751.08 |
| General ... | 01/01/2016 | 15 | | Close ditributions to equity | 2014 Income Tax | -751.08 | 0.00 |
| Total Personal Expenses | | | | | | -751.08 | 0.00 |
| Health Insurance | | | | | | | 2,751.12 |
| General ... | 01/01/2016 | 15 | | Close ditributions to equity | 2014 Income Tax | -2,751.12 | 0.00 |
| Check | 01/12/2016 | DEBIT | HEALTH PLAN OF NEVADA | | WELLS FARGO B... | 226.84 | 226.84 |
| Check | 02/11/2016 | DEBIT | HEALTH PLAN OF NEVADA | | WELLS FARGO B... | 226.84 | 453.68 |
| Check | 03/11/2016 | DEBIT | HEALTH PLAN OF NEVADA | | WELLS FARGO B... | 303.94 | 757.62 |
| Check | 04/12/2016 | DEBIT | HEALTH PLAN OF NEVADA | | WELLS FARGO B... | 252.54 | 1,010.16 |
| Check | 05/11/2016 | DEBIT | HEALTH PLAN OF NEVADA | | WELLS FARGO B... | 252.54 | 1,262.70 |
| Check | 06/13/2016 | DEBIT | HEALTH PLAN OF NEVADA | | WELLS FARGO B... | 252.54 | 1,515.24 |
| Check | 07/12/2016 | DEBIT | HEALTH PLAN OF NEVADA | | WELLS FARGO B... | 252.54 | 1,767.78 |
| Check | 08/12/2016 | DEBIT | HEALTH PLAN OF NEVADA | | WELLS FARGO B... | 252.54 | 2,020.32 |
| Check | 09/13/2016 | DEBIT | HEALTH PLAN OF NEVADA | | WELLS FARGO B... | 252.54 | 2,272.86 |
| Check | 10/11/2016 | DEBIT | HEALTH PLAN OF NEVADA | | WELLS FARGO B... | 252.54 | 2,525.40 |
| Check | 11/14/2016 | DEBIT | HEALTH PLAN OF NEVADA | | WELLS FARGO B... | 252.54 | 2,777.94 |
| Check | 12/12/2016 | DEBIT | HEALTH PLAN OF NEVADA | | WELLS FARGO B... | 252.54 | 3,030.48 |
| Total Health Insurance | | | | | | 279.36 | 3,030.48 |
| Waldman distributions | | | | | | | 104,158.77 |
| **Pest Control** | | | | | | | 0.00 |
| Check | 12/21/2016 | 1511 | A RELIABLE PEST CONTROL | INV NO. 42957 | WELLS FARGO B... | 262.00 | 262.00 |
| Total Pest Control | | | | | | 262.00 | 262.00 |
| Sewer | | | | | | | 570.72 |
| General ... | 01/01/2016 | 15 | | Close ditributions to equity | 2014 Income Tax | -570.72 | 0.00 |
| Check | 03/01/2016 | 1315 | CITY OF LAS VEGAS-SEWER | 2163422222 | WELLS FARGO B... | 135.12 | 135.12 |
| Check | 06/01/2016 | 1361 | CITY OF LAS VEGAS-SEWER | 2163422222 | WELLS FARGO B... | 135.12 | 270.24 |
| Check | 09/01/2016 | 1423 | CITY OF LAS VEGAS-SEWER | 2163422222 | WELLS FARGO B... | 135.12 | 405.36 |
| Check | 12/01/2016 | 1479 | CITY OF LAS VEGAS-SEWER | 2163422222 | WELLS FARGO B... | 135.12 | 540.48 |
| Total Sewer | | | | | | -30.24 | 540.48 |

8:34 AM

03/16/18

Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
### As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| **Property Taxes** | | | | | | | 33,863.83 |
| General ... | 01/01/2016 | 15 | | Close ditributions to equity | 2014 Income Tax | -33,863.83 | 0.00 |
| Check | 01/04/2016 | 1250 | CLARK COUNTY TREASURER | 2200 Waldman Avenue | WELLS FARGO B... | 5,185.49 | 5,185.49 |
| Check | 03/07/2016 | 1252 | CLARK COUNTY TREASURER | 071-18-601-015,041-36-201-029,041... | WELLS FARGO B... | 5,185.49 | 10,370.98 |
| Check | 04/06/2016 | 1344 | CLARK COUNTY TREASURER | 162-04-102-007 | WELLS FARGO B... | 211.42 | 10,582.40 |
| Check | 08/15/2016 | 1416 | CLARK COUNTY TREASURER | 029,012,013,015,007 | WELLS FARGO B... | 5,197.66 | 15,780.06 |
| Check | 10/03/2016 | 1417 | CLARK COUNTY TREASURER | 029,012,013,015.007 | WELLS FARGO B... | 5,195.86 | 20,975.92 |
| Total Property Taxes | | | | | | -12,887.91 | 20,975.92 |
| **House Insurance** | | | | | | | 6,666.19 |
| General ... | 01/01/2016 | 15 | | Close ditributions to equity | 2014 Income Tax | -6,666.19 | 0.00 |
| Check | 01/21/2016 | 1277 | SAFECO INSURANCE | Balance $1,629.21 | WELLS FARGO B... | 819.60 | 819.60 |
| Check | 02/21/2016 | 1307 | SAFECO INSURANCE | 7135-4233445 | WELLS FARGO B... | 819.61 | 1,639.21 |
| Check | 05/16/2016 | 1351 | WEGENER INSURANCE AGENCY | VOID: down payment 2200 waldman... | WELLS FARGO B... | 0.00 | 1,639.21 |
| Check | 07/21/2016 | 1408 | TRAVELERS INDEMNITY AND AFFILIATES | 995877642 637 1 | WELLS FARGO B... | 964.60 | 2,603.81 |
| Check | 08/11/2016 | 1415 | TRAVELERS INDEMNITY AND AFFILIATES | POLICY NO. 995877642 637 1 | WELLS FARGO B... | 964.60 | 3,568.41 |
| Check | 09/16/2016 | BILLP... | TRAVELERS INDEMNITY AND AFFILIATES | ACCOUNT#995877642 05/21/16 P... | WELLS FARGO B... | 964.60 | 4,533.01 |
| Check | 10/16/2016 | BILLP... | TRAVELERS INDEMNITY AND AFFILIATES | ACCOUNT#995877642 05/21/16 P... | WELLS FARGO B... | 964.60 | 5,497.61 |
| Check | 10/21/2016 | 1455 | TRAVELERS INDEMNITY AND AFFILIATES | VOID: 995877642 | WELLS FARGO B... | 0.00 | 5,497.61 |
| Check | 10/24/2016 | DEBIT | TRAVELERS INDEMNITY AND AFFILIATES | | WELLS FARGO B... | 964.60 | 6,462.21 |
| Check | 11/16/2016 | BILLP... | TRAVELERS INDEMNITY AND AFFILIATES | ACCOUNT#995877642 05/21/16 P... | WELLS FARGO B... | 964.60 | 7,426.81 |
| Check | 12/16/2016 | BILLP... | TRAVELERS INDEMNITY AND AFFILIATES | ACCOUNT#995877642 05/21/16 P... | WELLS FARGO B... | 964.60 | 8,391.41 |
| Total House Insurance | | | | | | 1,725.22 | 8,391.41 |
| **Telephone** | | | | | | | 2,095.83 |
| General ... | 01/01/2016 | 15 | | Close ditributions to equity | 2014 Income Tax | -2,095.83 | 0.00 |
| Check | 01/22/2016 | 1282 | CENTURY LINK | 309749917 | WELLS FARGO B... | 151.92 | 151.92 |
| Check | 02/22/2016 | 1310 | CENTURY LINK | 309749917 | WELLS FARGO B... | 146.86 | 298.78 |
| Check | 03/22/2016 | 1324 | CENTURY LINK | 309749917 | WELLS FARGO B... | 151.07 | 449.85 |
| Check | 04/25/2016 | 1349 | CENTURY LINK | 702 384-4487 | WELLS FARGO B... | 393.59 | 843.44 |
| Check | 05/23/2016 | 1366 | CENTURY LINK | 309749917 | WELLS FARGO B... | 165.04 | 1,008.48 |
| Check | 06/22/2016 | 1385 | CENTURY LINK | 309749917 (702) 384-4487 | WELLS FARGO B... | 163.46 | 1,171.94 |
| Check | 07/25/2016 | 1407 | CENTURY LINK | 309749917 | WELLS FARGO B... | 164.43 | 1,336.37 |
| Check | 08/22/2016 | 1425 | CENTURY LINK | 309749917 | WELLS FARGO B... | 178.45 | 1,514.82 |
| Check | 09/19/2016 | BILLP... | CENTURY LINK | 309749917 | WELLS FARGO B... | 164.45 | 1,679.27 |
| Check | 10/24/2016 | 1459 | CENTURY LINK | 309749917 | WELLS FARGO B... | 164.29 | 1,843.56 |
| Check | 11/22/2016 | 1481 | CENTURY LINK | 309749917 | WELLS FARGO B... | 164.29 | 2,007.85 |
| Check | 12/22/2016 | 1502 | CENTURY LINK | 702 384-4487 | WELLS FARGO B... | 164.29 | 2,172.14 |
| Total Telephone | | | | | | 76.31 | 2,172.14 |

8:34 AM
03/16/18
Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
### As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| **Trash Service** | | | | | | | 439.61 |
| General ... | 01/01/2016 | 15 | | Close ditributions to equity | 2014 Income Tax | -439.61 | 0.00 |
| Check | 01/20/2016 | 1281 | REPUBLIC SERVICES | 3-0620-1243087 | WELLS FARGO B... | 100.00 | 100.00 |
| Check | 03/20/2016 | 1326 | REPUBLIC SERVICES | 3-0620-1221345 | WELLS FARGO B... | 86.64 | 186.64 |
| Check | 05/19/2016 | 1365 | REPUBLIC SERVICES | 3-0620-1243087 | WELLS FARGO B... | 32.78 | 219.42 |
| Check | 06/20/2016 | 1384 | REPUBLIC SERVICES | 3-0620-1221345 | WELLS FARGO B... | 45.00 | 264.42 |
| Check | 07/20/2016 | 1406 | REPUBLIC SERVICES | 3-0620-1243087 | WELLS FARGO B... | 22.16 | 286.58 |
| Check | 08/20/2016 | 1424 | REPUBLIC SERVICES | 3-0620-1243087 | WELLS FARGO B... | 44.32 | 330.90 |
| Check | 10/20/2016 | 1457 | REPUBLIC SERVICES | VOID: OCT-DEC, 2016 | WELLS FARGO B... | 0.00 | 330.90 |
| Check | 10/20/2016 | 1458 | REPUBLIC SERVICES | OCT-DEC, 2016 | WELLS FARGO B... | 66.48 | 397.38 |
| Check | 12/20/2016 | 1470 | REPUBLIC SERVICES | 3-0620-1221345 | WELLS FARGO B... | 85.73 | 483.11 |
| Total Trash Service | | | | | | 43.50 | 483.11 |
| **Power** | | | | | | | 13,519.45 |
| General ... | 01/01/2016 | 15 | | Close ditributions to equity | 2014 Income Tax | -13,519.45 | 0.00 |
| Check | 01/04/2016 | 1264 | NV ENERGY | 2200 WALDMAN AVENUE | WELLS FARGO B... | 919.17 | 919.17 |
| Check | 01/04/2016 | 1265 | NV ENERGY | 1245 S. RANCHO ROAD | WELLS FARGO B... | 99.36 | 1,018.53 |
| Check | 01/27/2016 | 1283 | NV ENERGY | 3000101083512544918 | WELLS FARGO B... | 100.00 | 1,118.53 |
| Check | 01/27/2016 | 1284 | NV ENERGY | 3000101083512544926 | WELLS FARGO B... | 100.00 | 1,218.53 |
| Check | 02/02/2016 | 1293 | NV ENERGY | 1245 SO. RANCHO DRIVE | WELLS FARGO B... | 130.03 | 1,348.56 |
| Check | 02/02/2016 | 1294 | NV ENERGY | 3000102899317989 4185 | WELLS FARGO B... | 734.62 | 2,083.18 |
| Check | 03/02/2016 | 1319 | NV ENERGY | 2200 waldman avenue | WELLS FARGO B... | 560.93 | 2,644.11 |
| Check | 03/02/2016 | 1320 | NV ENERGY | 1245 s. rancho road | WELLS FARGO B... | 221.62 | 2,865.73 |
| Check | 03/31/2016 | 1335 | NV ENERGY | 3000101083510973267 | WELLS FARGO B... | 179.91 | 3,045.64 |
| Check | 03/31/2016 | 1336 | NV ENERGY | 3000102899317989415 | WELLS FARGO B... | 589.38 | 3,635.02 |
| Check | 05/02/2016 | 1352 | NV ENERGY | 2200 WALDMAN | WELLS FARGO B... | 651.18 | 4,286.20 |
| Check | 05/02/2016 | 1353 | NV ENERGY | 1245 SO. RANCHO ROAD | WELLS FARGO B... | 196.06 | 4,482.26 |
| Check | 06/02/2016 | 1371 | NV ENERGY | 1245 so. rancho road | WELLS FARGO B... | 162.97 | 4,645.23 |
| Check | 06/02/2016 | 1372 | NV ENERGY | 2200 WALDMAN AVENUE | WELLS FARGO B... | 552.16 | 5,197.39 |
| Check | 07/01/2016 | 1386 | NV ENERGY | 3000101083510973267 | WELLS FARGO B... | 201.02 | 5,398.41 |
| Check | 07/01/2016 | 1387 | NV ENERGY | 3000102899317989415 | WELLS FARGO B... | 777.22 | 6,175.63 |
| Check | 08/02/2016 | 2373 | NV ENERGY | 3000101083510973291 | WELLS FARGO B... | 360.26 | 6,535.89 |
| Check | 08/02/2016 | 2374 | NV ENERGY | 300010108351973283 | WELLS FARGO B... | 475.84 | 7,011.73 |
| Check | 08/02/2016 | 1411 | NV ENERGY | 3000101083510973267 | WELLS FARGO B... | 291.39 | 7,303.12 |
| Check | 08/02/2016 | 1410 | NV ENERGY | 3000102899317989 4185 | WELLS FARGO B... | 1,176.93 | 8,480.05 |
| Check | 09/01/2016 | 1433 | NV ENERGY | 3000102899317989415 | WELLS FARGO B... | 1,195.52 | 9,675.57 |
| Check | 09/01/2016 | 1434 | NV ENERGY | 3000101083510973267 | WELLS FARGO B... | 316.28 | 9,991.85 |
| Check | 09/23/2016 | BILLP... | NV ENERGY | 30001010835124544926 1245 RAN... | WELLS FARGO B... | 100.00 | 10,091.85 |
| Check | 09/23/2016 | BILLP... | NV ENERGY | 3000101083512544918 1245 RANC... | WELLS FARGO B... | 100.00 | 10,191.85 |
| Check | 09/30/2016 | BILLP... | NV ENERGY | 300010289931798415 2200 WALD... | WELLS FARGO B... | 1,115.39 | 11,307.24 |
| Check | 09/30/2016 | BILLP... | NV ENERGY | 3000101083510973267 1245 RANC... | WELLS FARGO B... | 292.11 | 11,599.35 |
| Check | 11/01/2016 | 1464 | NV ENERGY | 3000101083510973267 | WELLS FARGO B... | 191.81 | 11,791.16 |
| Check | 11/01/2016 | 1465 | NV ENERGY | 3000102899317989415 | WELLS FARGO B... | 648.17 | 12,439.33 |
| Check | 12/02/2016 | 1484 | NV ENERGY | 1245 S. RANCHO DRIVE | WELLS FARGO B... | 159.55 | 12,598.88 |
| Check | 12/02/2016 | 1485 | NV ENERGY | 2200 WALDMAN AVENUE | WELLS FARGO B... | 488.34 | 13,087.22 |

8:34 AM
03/16/18
Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
### As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| Check | 12/04/2016 | 1505 | NV ENERGY | 2200 WALDMAN AVENUE | WELLS FARGO B... | 622.11 | 13,709.33 |
| Check | 12/04/2016 | 1506 | NV ENERGY | 1245 S. RANCHO ROAD | WELLS FARGO B... | 196.78 | 13,906.11 |
| Total Power | | | | | | 386.66 | 13,906.11 |
| Cable Service | | | | | | | 2,275.12 |
| General ... | 01/01/2016 | 15 | | Close ditributions to equity | 2014 Income Tax | -2,275.12 | 0.00 |
| Check | 01/11/2016 | 1276 | COX COMMUNICATIONS, INC. | 001 8610 084743002 | WELLS FARGO B... | 193.24 | 193.24 |
| Check | 02/11/2016 | 1305 | COX COMMUNICATIONS, INC. | 001 8610 084743002 | WELLS FARGO B... | 344.07 | 537.31 |
| Check | 03/13/2016 | 1323 | COX COMMUNICATIONS, INC. | 001 8610 084743002 | WELLS FARGO B... | 203.10 | 740.41 |
| Check | 04/11/2016 | 1338 | COX COMMUNICATIONS, INC. | 001 8610 084743002 | WELLS FARGO B... | 246.50 | 986.91 |
| Check | 05/12/2016 | 1360 | COX COMMUNICATIONS, INC. | 001 8610 084743002 | WELLS FARGO B... | 246.50 | 1,233.41 |
| Check | 06/11/2016 | 1378 | COX COMMUNICATIONS, INC. | 001 8610 084743002 | WELLS FARGO B... | 238.94 | 1,472.35 |
| Check | 07/12/2016 | 1399 | COX COMMUNICATIONS, INC. | 001 8610 084743002 | WELLS FARGO B... | 249.65 | 1,722.00 |
| Check | 08/11/2016 | 1414 | COX COMMUNICATIONS, INC. | 001 8610 084743002 | WELLS FARGO B... | 249.65 | 1,971.65 |
| Check | 09/11/2016 | 1439 | COX COMMUNICATIONS, INC. | 001 8610 084743002 | WELLS FARGO B... | 249.65 | 2,221.30 |
| Check | 10/11/2016 | DEBIT | COX COMMUNICATIONS, INC. | | WELLS FARGO B... | 249.65 | 2,470.95 |
| Check | 11/10/2016 | 1469 | COX COMMUNICATIONS, INC. | 001 8610 084743002 | WELLS FARGO B... | 249.65 | 2,720.60 |
| Check | 12/12/2016 | 1491 | COX COMMUNICATIONS, INC. | 001 8610 084743002 | WELLS FARGO B... | 249.65 | 2,970.25 |
| Total Cable Service | | | | | | 695.13 | 2,970.25 |
| Pool Service | | | | | | | 2,257.00 |
| General ... | 01/01/2016 | 15 | | Close ditributions to equity | 2014 Income Tax | -2,257.00 | 0.00 |
| Check | 01/10/2016 | 1269 | CLARK COUNTY POOL & LAWN SERVICE | Cleaned Filter | WELLS FARGO B... | 225.00 | 225.00 |
| Check | 02/10/2016 | 1297 | CLARK COUNTY POOL & LAWN SERVICE | installed skimmer lid | WELLS FARGO B... | 198.50 | 423.50 |
| Check | 03/10/2016 | 1298 | CLARK COUNTY POOL & LAWN SERVICE | March, 2016 | WELLS FARGO B... | 175.00 | 598.50 |
| Check | 04/10/2016 | 1299 | CLARK COUNTY POOL & LAWN SERVICE | April, 2016 | WELLS FARGO B... | 175.00 | 773.50 |
| Check | 05/10/2016 | 1300 | CLARK COUNTY POOL & LAWN SERVICE | May, 2016 | WELLS FARGO B... | 175.00 | 948.50 |
| Check | 06/10/2016 | 1377 | CLARK COUNTY POOL & LAWN SERVICE | JUNE, 2016 | WELLS FARGO B... | 188.50 | 1,137.00 |
| Check | 07/10/2016 | 1397 | CLARK COUNTY POOL & LAWN SERVICE | JULY, 2016 | WELLS FARGO B... | 175.00 | 1,312.00 |
| Check | 08/10/2016 | 1413 | CLARK COUNTY POOL & LAWN SERVICE | August, 2016 | WELLS FARGO B... | 225.00 | 1,537.00 |
| Check | 09/10/2016 | 1436 | CLARK COUNTY POOL & LAWN SERVICE | SEPTEMBER, 2016 | WELLS FARGO B... | 175.00 | 1,712.00 |
| Check | 10/01/2016 | 1446 | CLARK COUNTY POOL & LAWN SERVICE | OCTOBER, 2016 AND SHOCKED P... | WELLS FARGO B... | 195.00 | 1,907.00 |
| Check | 11/10/2016 | 1468 | CLARK COUNTY POOL & LAWN SERVICE | NOVEMBER, 2016 | WELLS FARGO B... | 175.00 | 2,082.00 |
| Check | 12/10/2016 | 1488 | CLARK COUNTY POOL & LAWN SERVICE | DECEMBER, 2016 | WELLS FARGO B... | 175.00 | 2,257.00 |
| Total Pool Service | | | | | | 0.00 | 2,257.00 |

8:34 AM
03/16/18
Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
### As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| Gas | | | | | | | 2,531.45 |
| General ... | 01/01/2016 | 15 | | Close ditributions to equity | 2014 Income Tax | -2,531.45 | 0.00 |
| Check | 02/01/2016 | 1285 | SOUTHWEST GAS CORPORATION | 212-5892819-002 | WELLS FARGO B... | 596.53 | 596.53 |
| Check | 02/29/2016 | 1317 | SOUTHWEST GAS CORPORATION | 211-5892819-002 | WELLS FARGO B... | 361.66 | 958.19 |
| Check | 03/30/2016 | 1330 | SOUTHWEST GAS CORPORATION | 211-5892819-002 | WELLS FARGO B... | 180.67 | 1,138.86 |
| Check | 05/02/2016 | 1347 | SOUTHWEST GAS CORPORATION | 211-5892819-002 | WELLS FARGO B... | 87.86 | 1,226.72 |
| Check | 05/31/2016 | 1370 | SOUTHWEST GAS CORPORATION | 211-5892819-002 | WELLS FARGO B... | 150.00 | 1,376.72 |
| Check | 09/06/2016 | 1432 | SOUTHWEST GAS CORPORATION | 211-5892819-002 | WELLS FARGO B... | 53.74 | 1,430.46 |
| Check | 11/07/2016 | 1467 | SOUTHWEST GAS CORPORATION | 211-5892819-002 | WELLS FARGO B... | 104.22 | 1,534.68 |
| Check | 12/06/2016 | 1486 | SOUTHWEST GAS CORPORATION | 211-5892819-002 | WELLS FARGO B... | 54.42 | 1,589.10 |
| Total Gas | | | | | | -942.35 | 1,589.10 |
| Maintenance & Repairs | | | | | | | 20,665.41 |
| General ... | 01/01/2016 | 15 | | Close ditributions to equity | 2014 Income Tax | -20,665.41 | 0.00 |
| Check | 01/04/2016 | 1278 | A-1 ALAMO SECURITY LOCK & SAFE | UNLOCK ROOM FACING CASITA | WELLS FARGO B... | 60.00 | 60.00 |
| Check | 01/11/2016 | 1280 | PETTY CASH | house cleaning | WELLS FARGO B... | 150.00 | 210.00 |
| Check | 01/15/2016 | 1289 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 410.00 |
| Check | 01/18/2016 | DEBIT | AMERICAN HOME SHIELD | | WELLS FARGO B... | 70.33 | 480.33 |
| Check | 01/19/2016 | 1291 | WELLS FARGO BANK | | WELLS FARGO B... | 200.00 | 680.33 |
| Check | 01/21/2016 | 1295 | PETTY CASH | cleaning house | WELLS FARGO B... | 200.00 | 880.33 |
| Check | 01/21/2016 | 1296 | PETTY CASH | plumbing/landscaping bushes | WELLS FARGO B... | 317.49 | 1,197.82 |
| Check | 01/25/2016 | 1303 | PETTY CASH | | WELLS FARGO B... | 216.25 | 1,414.07 |
| Check | 01/29/2016 | 1292 | DANILO PASCUA | | WELLS FARGO B... | 150.00 | 1,564.07 |
| Check | 02/01/2016 | 1288 | STANLEY CONVERGENT SECURITY SO... | GSM DIGITAL CELL UPGRADE SE... | WELLS FARGO B... | 431.00 | 1,995.07 |
| Check | 02/02/2016 | 1519 | PETTY CASH | BUSHES/PLANT YARD MAINTEN... | WELLS FARGO B... | 177.60 | 2,172.67 |
| Check | 02/09/2016 | DEBIT | AMERICAN HOME SHIELD | | WELLS FARGO B... | 70.33 | 2,243.00 |
| Check | 02/15/2016 | 1313 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 2,443.00 |
| Check | 02/15/2016 | 1316 | WELLS FARGO BANK | nursery, burst pipe, garage door clic... | WELLS FARGO B... | 1,059.96 | 3,502.96 |
| Check | 02/22/2016 | DEBIT | AMERICAN HOME SHIELD | | WELLS FARGO B... | 70.37 | 3,573.33 |
| Check | 02/28/2016 | 1321 | KEVIN CASOLARI | OUTSIDE VIDEO | WELLS FARGO B... | 700.00 | 4,273.33 |
| Check | 02/29/2016 | 1314 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 4,473.33 |
| Check | 03/15/2016 | 1332 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 4,673.33 |
| Check | 03/21/2016 | 1337 | WELLS FARGO BANK | smiths, lowe's, home depot, gas mo... | WELLS FARGO B... | 149.00 | 4,822.33 |
| Check | 03/31/2016 | 1333 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 5,022.33 |
| Check | 04/01/2016 | 1339 | PETTY CASH | home depot, auto zone, postage, cle... | WELLS FARGO B... | 260.88 | 5,283.21 |
| Check | 04/08/2016 | DEBIT | AMERICAN HOME SHIELD | | WELLS FARGO B... | 70.33 | 5,353.54 |
| Check | 04/11/2016 | 1346 | KEVIN CASOLARI | outside camera | WELLS FARGO B... | 600.00 | 5,953.54 |
| Check | 04/15/2016 | 1355 | DANILO PASCUA | APRIL 1-15 | WELLS FARGO B... | 200.00 | 6,153.54 |
| Check | 04/19/2016 | 1354 | WELLS FARGO BANK | REPAIR SUPPLIES | WELLS FARGO B... | 144.49 | 6,298.03 |
| Check | 04/22/2016 | 1357 | KEVIN CASOLARI | play station wiring | WELLS FARGO B... | 200.00 | 6,498.03 |
| Check | 04/30/2016 | 1356 | DANILO PASCUA | APRIL 16-30 | WELLS FARGO B... | 200.00 | 6,698.03 |
| Check | 05/02/2016 | 1359 | SALVADOR SOTOLONGO | A/C | WELLS FARGO B... | 840.00 | 7,538.03 |
| Check | 05/09/2016 | 1362 | PETTY CASH | SMART & FINAL, CLEANING SUPP... | WELLS FARGO B... | 509.00 | 8,047.03 |
| Check | 05/10/2016 | DEBIT | AMERICAN HOME SHIELD | | WELLS FARGO B... | 70.33 | 8,117.36 |
| Check | 05/11/2016 | DEBIT | AMERICAN HOME SHIELD | | WELLS FARGO B... | 70.33 | 8,187.69 |
| Check | 05/15/2016 | 1373 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 8,387.69 |
| Check | 05/29/2016 | 1375 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 8,587.69 |
| Check | 05/31/2016 | 1379 | WESTERN DOOR AND GATE | GATE 2 | WELLS FARGO B... | 95.00 | 8,682.69 |

8:34 AM
03/16/18
Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
### As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| Check | 05/31/2016 | 1380 | PETTY CASH | CLEANING | WELLS FARGO B... | 362.00 | 9,044.69 |
| Check | 06/15/2016 | 1395 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 9,244.69 |
| Check | 06/15/2016 | 1396 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 9,444.69 |
| Check | 06/17/2016 | 1381 | PETTY CASH | CLEANING OUTSIDE AND INSIDE ... | WELLS FARGO B... | 387.50 | 9,832.19 |
| Check | 06/30/2016 | 1400 | PETTY CASH | LOWES, HOME DEPOT, BUSHES | WELLS FARGO B... | 101.39 | 9,933.58 |
| Check | 07/05/2016 | 1401 | PETTY CASH | CLEANING | WELLS FARGO B... | 256.25 | 10,189.83 |
| Check | 07/08/2016 | DEBIT | AMERICAN HOME SHIELD | | WELLS FARGO B... | 70.33 | 10,260.16 |
| Check | 07/15/2016 | 1418 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 10,460.16 |
| Check | 07/31/2016 | 1419 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 10,660.16 |
| Check | 08/09/2016 | DEBIT | AMERICAN HOME SHIELD | | WELLS FARGO B... | 70.33 | 10,730.49 |
| Check | 08/15/2016 | 1437 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 10,930.49 |
| Check | 08/16/2016 | 1429 | WELLS FARGO BANK | HOME DEPOT, WATER | WELLS FARGO B... | 391.24 | 11,321.73 |
| Check | 08/17/2016 | 1430 | PETTY CASH | cleaning house for july and aug, 2016 | WELLS FARGO B... | 431.25 | 11,752.98 |
| Check | 08/30/2016 | 1431 | PETTY CASH | cleaning supplies | WELLS FARGO B... | 73.85 | 11,826.83 |
| Check | 08/31/2016 | 1438 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 12,026.83 |
| Check | 09/01/2016 | 1440 | FIDELITY APPLIANCES | whirlpool | WELLS FARGO B... | 75.00 | 12,101.83 |
| Check | 09/08/2016 | DEBIT | AMERICAN HOME SHIELD | | WELLS FARGO B... | 70.33 | 12,172.16 |
| Check | 09/14/2016 | 1448 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 12,372.16 |
| Check | 09/30/2016 | 1449 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 12,572.16 |
| Check | 09/30/2016 | 1451 | PETTY CASH | supplies | WELLS FARGO B... | 27.00 | 12,599.16 |
| Check | 10/03/2016 | 1450 | WELLS FARGO BANK | SUPPLIES | WELLS FARGO B... | 190.12 | 12,789.28 |
| Check | 10/05/2016 | 1453 | PETTY CASH | TICKET NO. X-1489674 | WELLS FARGO B... | 50.00 | 12,839.28 |
| Check | 10/11/2016 | DEBIT | AMERICAN HOME SHIELD | | WELLS FARGO B... | 70.33 | 12,909.61 |
| Check | 10/16/2016 | 1463 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 13,109.61 |
| Check | 10/19/2016 | 1466 | WELLS FARGO BANK | materials | WELLS FARGO B... | 110.00 | 13,219.61 |
| Check | 10/31/2016 | 1471 | PETTY CASH | POSTAGE, SUPPLIES | WELLS FARGO B... | 157.83 | 13,377.44 |
| Check | 10/31/2016 | 1475 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 13,577.44 |
| Check | 10/31/2016 | 1482 | PETTY CASH | indoor cleaning/supplies | WELLS FARGO B... | 367.50 | 13,944.94 |
| Check | 11/08/2016 | DEBIT | AMERICAN HOME SHIELD | | WELLS FARGO B... | 70.33 | 14,015.27 |
| Check | 11/15/2016 | 1483 | PETTY CASH | supplies/maintenance | WELLS FARGO B... | 467.85 | 14,483.12 |
| Check | 11/15/2016 | 1489 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 14,683.12 |
| Check | 11/18/2016 | 1487 | WELLS FARGO BANK | SUPPLIES | WELLS FARGO B... | 133.31 | 14,816.43 |
| Check | 11/30/2016 | 1503 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 15,016.43 |
| Check | 12/08/2016 | DEBIT | AMERICAN HOME SHIELD | | WELLS FARGO B... | 70.33 | 15,086.76 |
| Check | 12/15/2016 | 1508 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 15,286.76 |
| Check | 12/16/2016 | 1501 | PETTY CASH | REPAIR SUPPLIES/BUSHES/CLEA... | WELLS FARGO B... | 361.75 | 15,648.51 |
| Check | 12/27/2016 | 1512 | PETTY CASH | LIGHTING REPAIRS BY MICHAEL ... | WELLS FARGO B... | 180.00 | 15,828.51 |
| Check | 12/31/2016 | 1516 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 16,028.51 |
| Total Maintenance & Repairs | | | | | | -4,636.90 | 16,028.51 |

8:34 AM
03/16/18
Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
### As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| Water | | | | | | | 9,611.41 |
| General ... | 01/01/2016 | 15 | | Close ditributions to equity | 2014 Income Tax | -9,611.41 | 0.00 |
| Check | 01/25/2016 | 1279 | LAS VEGAS VALLEY WATER DISTRICT | 3115442962-0 | WELLS FARGO B... | 1,175.55 | 1,175.55 |
| Check | 02/29/2016 | 1311 | LAS VEGAS VALLEY WATER DISTRICT | 3115442962-0 | WELLS FARGO B... | 825.12 | 2,000.67 |
| Check | 03/28/2016 | 1327 | LAS VEGAS VALLEY WATER DISTRICT | 3115442962-0 | WELLS FARGO B... | 978.56 | 2,979.23 |
| Check | 04/25/2016 | 1342 | LAS VEGAS VALLEY WATER DISTRICT | 3115442962-0 | WELLS FARGO B... | 809.19 | 3,788.42 |
| Check | 05/31/2016 | 1367 | LAS VEGAS VALLEY WATER DISTRICT | 3115442962-0 | WELLS FARGO B... | 665.12 | 4,453.54 |
| Check | 06/27/2016 | 1382 | LAS VEGAS VALLEY WATER DISTRICT | 3115442962-0 | WELLS FARGO B... | 561.47 | 5,015.01 |
| Check | 07/25/2016 | 1404 | LAS VEGAS VALLEY WATER DISTRICT | 31154429620 | WELLS FARGO B... | 732.33 | 5,747.34 |
| Check | 08/29/2016 | 1426 | LAS VEGAS VALLEY WATER DISTRICT | 3115442962-0 | WELLS FARGO B... | 851.10 | 6,598.44 |
| Check | 09/26/2016 | 1441 | LAS VEGAS VALLEY WATER DISTRICT | 31154429620 | WELLS FARGO B... | 1,009.90 | 7,608.34 |
| Check | 10/31/2016 | 1460 | LAS VEGAS VALLEY WATER DISTRICT | 3115442962-0 | WELLS FARGO B... | 910.28 | 8,518.62 |
| Check | 11/28/2016 | 1478 | LAS VEGAS VALLEY WATER DISTRICT | 31154429620 | WELLS FARGO B... | 854.13 | 9,372.75 |
| Check | 12/26/2016 | 1497 | LAS VEGAS VALLEY WATER DISTRICT | 31154429620 | WELLS FARGO B... | 1,462.42 | 10,835.17 |
| Total Water | | | | | | 1,223.76 | 10,835.17 |
| Security | | | | | | | 1,318.22 |
| Check | 01/01/2016 | 1249 | STANLEY CONVERGENT SECURITY SO... | JANUARY, 2016 | WELLS FARGO B... | 66.85 | 1,385.07 |
| General ... | 01/01/2016 | 15 | | Close ditributions to equity | 2014 Income Tax | -1,318.22 | 66.85 |
| Check | 02/01/2016 | 1287 | STANLEY CONVERGENT SECURITY SO... | 13098513 | WELLS FARGO B... | 66.85 | 133.70 |
| Check | 02/28/2016 | 1322 | STEVE LENGEL | | WELLS FARGO B... | 200.00 | 333.70 |
| Check | 03/01/2016 | 1312 | STANLEY CONVERGENT SECURITY SO... | MARCH, 2016 793123023548 | WELLS FARGO B... | 66.85 | 400.55 |
| Check | 04/01/2016 | 1329 | STANLEY CONVERGENT SECURITY SO... | 793123023548 | WELLS FARGO B... | 66.85 | 467.40 |
| Check | 04/14/2016 | 1350 | STANLEY CONVERGENT SECURITY SO... | INV. NO. 13220908 ACCT. NO. 793... | WELLS FARGO B... | 300.93 | 768.33 |
| Check | 05/01/2016 | 1348 | STANLEY CONVERGENT SECURITY SO... | ACCOUNT NO. 793123023548-MAY... | WELLS FARGO B... | 67.86 | 836.19 |
| Check | 06/01/2016 | 1368 | STANLEY CONVERGENT SECURITY SO... | 13450737 | WELLS FARGO B... | 67.86 | 904.05 |
| Check | 07/01/2016 | 1383 | STANLEY CONVERGENT SECURITY SO... | 793123011132 | WELLS FARGO B... | 67.86 | 971.91 |
| Check | 08/01/2016 | 1402 | STANLEY CONVERGENT SECURITY SO... | 793123023548 | WELLS FARGO B... | 67.92 | 1,039.83 |
| Check | 09/01/2016 | 1427 | STANLEY CONVERGENT SECURITY SO... | 793123023548 | WELLS FARGO B... | 67.92 | 1,107.75 |
| Check | 09/23/2016 | 1447 | STANLEY CONVERGENT SECURITY SO... | | WELLS FARGO B... | 0.00 | 1,107.75 |
| Check | 10/01/2016 | 1445 | STANLEY CONVERGENT SECURITY SO... | ACCOUNT#793123023548 MONTHLY | WELLS FARGO B... | 67.92 | 1,175.67 |
| Check | 11/01/2016 | 1461 | STANLEY CONVERGENT SECURITY SO... | ACCOUNT#793123023548 MONTHLY | WELLS FARGO B... | 67.92 | 1,243.59 |
| Check | 11/01/2016 | 1462 | STANLEY CONVERGENT SECURITY SO... | DECEMBER, 2016 | WELLS FARGO B... | 67.92 | 1,311.51 |
| Total Security | | | | | | -6.71 | 1,311.51 |

8:34 AM
03/16/18
Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
### As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| Landscaping/Groundskeeping | | | | | | | 8,344.53 |
| General ... | 01/01/2016 | 15 | | Close ditributions to equity | 2014 Income Tax | -8,344.53 | 0.00 |
| Check | 01/15/2016 | 1289 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 200.00 |
| Check | 01/19/2016 | 1291 | WELLS FARGO BANK | | WELLS FARGO B... | 130.57 | 330.57 |
| Check | 01/21/2016 | 1296 | PETTY CASH | plumbing/landscaping bushes | WELLS FARGO B... | 112.50 | 443.07 |
| Check | 01/29/2016 | 1292 | DANILO PASCUA | | WELLS FARGO B... | 250.00 | 693.07 |
| Check | 02/15/2016 | 1313 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 893.07 |
| Check | 02/29/2016 | 1314 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 1,093.07 |
| Check | 02/29/2016 | 1318 | PETTY CASH | BUSHES CLEANING EXTERIOR H... | WELLS FARGO B... | 237.50 | 1,330.57 |
| Check | 03/15/2016 | 1332 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 1,530.57 |
| Check | 03/15/2016 | 1334 | PETTY CASH | 02/25-03/12/2016 | WELLS FARGO B... | 262.50 | 1,793.07 |
| Check | 03/21/2016 | 1337 | WELLS FARGO BANK | smiths, lowe's, home depot, gas mo... | WELLS FARGO B... | 121.24 | 1,914.31 |
| Check | 03/31/2016 | 1333 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 2,114.31 |
| Check | 04/15/2016 | 1355 | DANILO PASCUA | APRIL 1-15 | WELLS FARGO B... | 200.00 | 2,314.31 |
| Check | 04/30/2016 | 1356 | DANILO PASCUA | APRIL 16-30 | WELLS FARGO B... | 200.00 | 2,514.31 |
| Check | 05/09/2016 | 1363 | PETTY CASH | APRIL 1-30-BUSHES | WELLS FARGO B... | 300.00 | 2,814.31 |
| Check | 05/15/2016 | 1373 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 3,014.31 |
| Check | 05/29/2016 | 1375 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 3,214.31 |
| Check | 06/15/2016 | 1395 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 3,414.31 |
| Check | 06/15/2016 | 1396 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 3,614.31 |
| Check | 06/30/2016 | 1400 | PETTY CASH | LOWES, HOME DEPOT, BUSHES | WELLS FARGO B... | 220.00 | 3,834.31 |
| Check | 07/15/2016 | 1418 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 4,034.31 |
| Check | 07/31/2016 | 1419 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 4,234.31 |
| Check | 08/15/2016 | 1437 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 4,434.31 |
| Check | 08/31/2016 | 1438 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 4,634.31 |
| Check | 09/14/2016 | 1448 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 4,834.31 |
| Check | 09/30/2016 | 1449 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 5,034.31 |
| Check | 10/16/2016 | 1463 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 5,234.31 |
| Check | 10/19/2016 | 1466 | WELLS FARGO BANK | materials | WELLS FARGO B... | 74.68 | 5,308.99 |
| Check | 10/31/2016 | 1475 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 5,508.99 |
| Check | 11/15/2016 | 1489 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 5,708.99 |
| Check | 11/30/2016 | 1503 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 5,908.99 |
| Check | 12/15/2016 | 1508 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 6,108.99 |
| Check | 12/31/2016 | 1516 | DANILO PASCUA | | WELLS FARGO B... | 200.00 | 6,308.99 |
| Total Landscaping/Groundskeeping | | | | | | -2,035.54 | 6,308.99 |
| Waldman distributions - Other | | | | | | | 0.00 |
| Total Waldman distributions - Other | | | | | | | 0.00 |
| Total Waldman distributions | | | | | | -16,127.07 | 88,031.70 |

8:34 AM
03/16/18
Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
### As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| Beneficiary distributions - Other | | | | | | | 60,000.00 |
| General ... | 01/01/2016 | 15 | | Close ditributions to equity | 2014 Income Tax | -60,000.00 | 0.00 |
| Check | 01/15/2016 | 1266 | JACK GALARDI, JR. | | WELLS FARGO B... | 5,000.00 | 5,000.00 |
| Check | 02/15/2016 | 1267 | JACK GALARDI, JR. | | WELLS FARGO B... | 5,000.00 | 10,000.00 |
| Check | 03/15/2016 | 1270 | JACK GALARDI, JR. | | WELLS FARGO B... | 5,000.00 | 15,000.00 |
| Check | 04/15/2016 | 1308 | JACK GALARDI, JR. | | WELLS FARGO B... | 5,000.00 | 20,000.00 |
| Check | 05/15/2016 | 1309 | JACK GALARDI, JR. | | WELLS FARGO B... | 5,000.00 | 25,000.00 |
| Check | 07/15/2016 | 1388 | JACK GALARDI, JR. | | WELLS FARGO B... | 5,000.00 | 30,000.00 |
| Check | 07/15/2016 | 1409 | JACK GALARDI, JR. | | WELLS FARGO B... | 5,000.00 | 35,000.00 |
| Check | 08/15/2016 | 1389 | JACK GALARDI, JR. | | WELLS FARGO B... | 5,000.00 | 40,000.00 |
| Check | 09/15/2016 | 1390 | JACK GALARDI, JR. | | WELLS FARGO B... | 5,000.00 | 45,000.00 |
| Check | 10/15/2016 | 1391 | JACK GALARDI, JR. | | WELLS FARGO B... | 5,000.00 | 50,000.00 |
| Check | 11/15/2016 | 1392 | JACK GALARDI, JR. | | WELLS FARGO B... | 5,000.00 | 55,000.00 |
| Check | 12/15/2016 | 1393 | JACK GALARDI, JR. | | WELLS FARGO B... | 5,000.00 | 60,000.00 |
| Total Beneficiary distributions - Other | | | | | | 0.00 | 60,000.00 |
| Total Beneficiary distributions | | | | | | 96,555.62 | 270,090.56 |
| Teri Galardi interest | | | | | | | 0.00 |
| Deposit | 01/17/2016 | | | Deposit | WELLS FARGO B... | -4,586.27 | -4,586.27 |
| Deposit | 01/25/2016 | | | Deposit | WELLS FARGO B... | -989.87 | -5,576.14 |
| Check | 01/29/2016 | DEBIT | JEG FAMILY TRUST | | WELLS FARGO B... | -494.93 | -6,071.07 |
| Deposit | 02/08/2016 | | | Deposit | WELLS FARGO B... | -1,239.14 | -7,310.21 |
| Deposit | 02/10/2016 | | | Deposit | WELLS FARGO B... | -247.14 | -7,557.35 |
| Deposit | 02/22/2016 | | | Deposit | WELLS FARGO B... | -1,474.40 | -9,031.75 |
| Deposit | 03/14/2016 | | | Deposit | WELLS FARGO B... | -2,567.74 | -11,599.49 |
| Deposit | 03/23/2016 | | | Deposit | WELLS FARGO B... | -1,097.98 | -12,697.47 |
| Deposit | 04/28/2016 | | | Deposit | WELLS FARGO B... | -4,372.59 | -17,070.06 |
| Deposit | 05/19/2016 | | | Deposit | WELLS FARGO B... | -2,549.48 | -19,619.54 |
| Deposit | 06/03/2016 | | | Deposit | WELLS FARGO B... | -1,814.40 | -21,433.94 |
| Check | 07/08/2016 | DEBI... | JEG FAMILY TRUST | | WELLS FARGO B... | -4,229.83 | -25,663.77 |
| Deposit | 07/15/2016 | | | Deposit | WELLS FARGO B... | 0.00 | -25,663.77 |
| General ... | 07/15/2016 | 11 | | | Note Receivable-Te... | -849.30 | -26,513.07 |
| Deposit | 07/29/2016 | | | Deposit | WELLS FARGO B... | -1,689.33 | -28,202.40 |
| Deposit | 08/10/2016 | | | Deposit | WELLS FARGO B... | -1,449.29 | -29,651.69 |
| Deposit | 08/25/2016 | | | Deposit | WELLS FARGO B... | -1,803.87 | -31,455.56 |
| Check | 08/30/2016 | DEBIT | JEG FAMILY TRUST | | WELLS FARGO B... | -119.77 | -31,575.33 |
| Check | 09/02/2016 | DEBIT | JEG FAMILY TRUST | | WELLS FARGO B... | -839.77 | -32,415.10 |
| Deposit | 09/06/2016 | | | Deposit | WELLS FARGO B... | -481.99 | -32,897.09 |
| Check | 09/16/2016 | DEBIT | JEG FAMILY TRUST | | WELLS FARGO B... | -1,204.06 | -34,101.15 |
| Deposit | 11/09/2016 | | | Deposit | WELLS FARGO B... | -4,112.98 | -38,214.13 |
| Deposit | 11/14/2016 | | | Deposit | WELLS FARGO B... | -3,017.40 | -41,231.53 |
| Deposit | 11/28/2016 | | | Deposit | WELLS FARGO B... | -1,685.95 | -42,917.48 |
| Deposit | 12/09/2016 | | | Deposit | WELLS FARGO B... | -1,323.86 | -44,241.34 |
| Deposit | 12/15/2016 | | | Deposit | WELLS FARGO B... | -720.10 | -44,961.44 |

8:34 AM
03/16/18
Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
### As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| Deposit | 12/19/2016 | | | Deposit | WELLS FARGO B... | -479.24 | -45,440.68 |
| Deposit | 12/20/2016 | | | Deposit | WELLS FARGO B... | -119.85 | -45,560.53 |
| Total Teri Galardi Interest | | | | | | -45,560.53 | -45,560.53 |
| Rental Income | | | | | | | 0.00 |
| Deposit | 01/26/2016 | 13869 | BARNYARD BBQ | Deposit | WELLS FARGO B... | -4,752.00 | -4,752.00 |
| Deposit | 03/24/2016 | 92042... | CARNEY, INC. | CASHIERS CHECK | WELLS FARGO B... | -4,500.00 | -9,252.00 |
| Deposit | 08/17/2016 | 12972 | BARNYARD BBQ | W VA PROPERTY | WELLS FARGO B... | -4,752.00 | -14,004.00 |
| Deposit | 10/07/2016 | 13157 | BARNYARD BBQ | WVA | WELLS FARGO B... | -4,752.00 | -18,756.00 |
| Deposit | 10/24/2016 | 13386 | BARNYARD BBQ | Deposit | WELLS FARGO B... | -4,750.00 | -23,506.00 |
| Deposit | 11/18/2016 | 13535 | BARNYARD BBQ | Deposit | WELLS FARGO B... | -4,752.00 | -28,258.00 |
| Deposit | 12/19/2016 | 13713 | BARNYARD BBQ | Deposit | WELLS FARGO B... | -4,752.00 | -33,010.00 |
| Total Rental Income | | | | | | -33,010.00 | -33,010.00 |
| Interest Income | | | | | | | 0.00 |
| Deposit | 04/12/2016 | 1220 | JAMES & WILYE DENT | Nov, 2015-Feb, 2016 | WELLS FARGO B... | -7,000.00 | -7,000.00 |
| Deposit | 05/17/2016 | 1137 | JAMES & WILYE DENT | Deposit | WELLS FARGO B... | -5,250.00 | -12,250.00 |
| Deposit | 08/05/2016 | 1147 | JAMES & WILYE DENT | JULY & AUG, 2016 | WELLS FARGO B... | -3,500.00 | -15,750.00 |
| Deposit | 09/29/2016 | 1151 | JAMES & WILYE DENT | AUGUST-SEPTEMBER, 2016 | WELLS FARGO B... | -3,500.00 | -19,250.00 |
| Deposit | 11/03/2016 | 1155 | JAMES & WILYE DENT | Deposit | WELLS FARGO B... | -1,750.00 | -21,000.00 |
| Deposit | 12/19/2016 | 1158 | JAMES & WILYE DENT | Deposit | WELLS FARGO B... | -3,500.00 | -24,500.00 |
| Total Interest Income | | | | | | -24,500.00 | -24,500.00 |
| Accounting Fees | | | | | | | 0.00 |
| Check | 09/02/2016 | 1442 | NYBERG & ASSOCIATES | ACCOUNTING FESS -FIDUCIARY ... | WELLS FARGO B... | 750.00 | 750.00 |
| Total Accounting Fees | | | | | | 750.00 | 750.00 |
| Fees | | | | | | | 0.00 |
| Check | 06/27/2016 | 1398 | BANK OF AMERICA | LIFELOCK MEMBERSHIP 1 YR UP ... | WELLS FARGO B... | 219.89 | 219.89 |
| Check | 10/06/2016 | 1454 | BANK OF AMERICA | LAS VEGAS MUNICIPAL COURT C... | WELLS FARGO B... | 210.50 | 430.39 |
| Total Fees | | | | | | 430.39 | 430.39 |
| 425 Industrial Road-Georgia | | | | | | | 0.00 |
| Property Taxes | | | | | | | 0.00 |
| Check | 12/01/2016 | 1538 | HENRY COUNTY TAX COMMISSIONER | 2016-39772 BILL NO. | WELLS FARGO B... | 3,417.77 | 3,417.77 |
| Total Property Taxes | | | | | | 3,417.77 | 3,417.77 |
| 425 Industrial Road-Georgia - Other | | | | | | | 0.00 |
| Total 425 Industrial Road-Georgia - Other | | | | | | | 0.00 |
| Total 425 Industrial Road-Georgia | | | | | | 3,417.77 | 3,417.77 |

8:34 AM
03/16/18
Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| **Vacant Land-Wetland-Florida** | | | | | | | 0.00 |
| **Property Taxes** | | | | | | | 0.00 |
| Check | 12/01/2016 | 1496 | DOUG BELDEN, TAX COLLECTOR | A1599330000 | WELLS FARGO B... | 43.68 | 43.68 |
| Total Property Taxes | | | | | | 43.68 | 43.68 |
| Vacant Land-Wetland-Florida - Other | | | | | | | 0.00 |
| Total Vacant Land-Wetland-Florida - Other | | | | | | | 0.00 |
| Total Vacant Land-Wetland-Florida | | | | | | 43.68 | 43.68 |
| **Calaveras Property-California** | | | | | | | 0.00 |
| **Property Taxes** | | | | | | | 0.00 |
| Check | 02/01/2016 | 1306 | CALAVERAS COUNTY TAX COLLECTOR | VOID: 020-001-091-000 | WELLS FARGO B... | 0.00 | 0.00 |
| Check | 03/14/2016 | 1328 | CALAVERAS COUNTY TAX COLLECTOR | 020-001-091-000 | WELLS FARGO B... | 748.72 | 748.72 |
| Deposit | 05/18/2016 | | CALAVERAS COUNTY TAX COLLECTOR | REFUND | WELLS FARGO B... | -118.98 | 629.74 |
| Check | 11/02/2016 | 1472 | CALAVERAS COUNTY TAX COLLECTOR | VOID: 020-001-091-000 | WELLS FARGO B... | 0.00 | 629.74 |
| Check | 12/15/2016 | 1499 | CALAVERAS COUNTY TAX COLLECTOR | 020-001-091-000 | WELLS FARGO B... | 689.96 | 1,319.70 |
| Total Property Taxes | | | | | | 1,319.70 | 1,319.70 |
| **Calaveras Property-California - Other** | | | | | | | 0.00 |
| Total Calaveras Property-California - Other | | | | | | | 0.00 |
| Total Calaveras Property-California | | | | | | 1,319.70 | 1,319.70 |
| **WV Property** | | | | | | | 0.00 |
| Insurance-Building | | | | | | | 0.00 |
| Check | 01/25/2016 | 1301 | WALLS CONSTRUCTION & REMODELIN... | DOWN PAYMENT-ELECTRICAL FI... | WELLS FARGO B... | 5,900.00 | 5,900.00 |
| Check | 01/25/2016 | 1302 | WALLS CONSTRUCTION & REMODELIN... | DOWN PAYMENT-STRUCTURAL F... | WELLS FARGO B... | 4,000.00 | 9,900.00 |
| Deposit | 06/23/2016 | | ERIE INSURANCE PTY&CASUALTY | APPALACHIAN POWER COMPAN... | WELLS FARGO B... | -4,120.40 | 5,779.60 |
| Total Insurance-Building | | | | | | 5,779.60 | 5,779.60 |
| Maintenance & Repair | | | | | | | 0.00 |
| Check | 04/05/2016 | 1340 | DOCTOR COOL | VOID: A/C | WELLS FARGO B... | 0.00 | 0.00 |
| Check | 04/05/2016 | 1341 | FIDELITY APPLIANCES | VOID: REFRIGERTION-NORTHLAND | WELLS FARGO B... | 0.00 | 0.00 |
| Check | 04/27/2016 | 1358 | CRYSTAL TINCHER | APPALACHIAN POWER COMPAN... | WELLS FARGO B... | 4,120.40 | 4,120.40 |
| Check | 07/06/2016 | 1403 | CRYSTAL TINCHER | REIMBURSEMENT | WELLS FARGO B... | 4,627.50 | 8,747.90 |
| Check | 07/21/2016 | 1412 | WELLS FARGO BANK | SMITHS;HOME DEPOT | WELLS FARGO B... | 161.03 | 8,908.93 |
| Check | 08/05/2016 | 1421 | WALLS CONSTRUCTION & REMODELIN... | electrical fire repair full payment full ... | WELLS FARGO B... | 5,255.82 | 14,164.75 |
| Check | 08/05/2016 | 1422 | WALLS CONSTRUCTION & REMODELIN... | VOID: structural fire repair full paym... | WELLS FARGO B... | 0.00 | 14,164.75 |
| Check | 08/19/2016 | 1435 | WALLS CONSTRUCTION & REMODELIN... | PAYMENT ON ACCOUNT | WELLS FARGO B... | 2,206.81 | 16,371.56 |
| Total Maintenance & Repair | | | | | | 16,371.56 | 16,371.56 |

8:34 AM
03/16/18
Accrual Basis

**JACK GALARDI, JR JEG SUBTRUST**
**General Ledger**
**As of December 31, 2016**

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| **Property Taxes** | | | | | | | 0.00 |
| Check | 03/15/2016 | 1331 | KANAWHA COUNTY SHERIFF'S OFFICE | ACCT NOS. 07535170;07429721 | WELLS FARGO B... | 4,507.44 | 4,507.44 |
| Check | 11/16/2016 | 1473 | KANAWHA COUNTY SHERIFF'S OFFICE | 21 0073 0007 0000 | WELLS FARGO B... | 397.41 | 4,904.85 |
| Check | 11/16/2016 | 1474 | KANAWHA COUNTY SHERIFF'S OFFICE | 21 0075 0000 0000 | WELLS FARGO B... | 4,474.57 | 9,379.42 |
| Total Property Taxes | | | | | | 9,379.42 | 9,379.42 |
| **WV Property - Other** | | | | | | | 0.00 |
| Total WV Property - Other | | | | | | | 0.00 |
| Total WV Property | | | | | | 31,530.58 | 31,530.58 |
| **Vacant Land-Marathon, Fl** | | | | | | | 0.00 |
| **Marathon Property taxes** | | | | | | | 0.00 |
| Total Marathon Property taxes | | | | | | | 0.00 |
| **Appraisal Fees-Marathon** | | | | | | | 0.00 |
| Total Appraisal Fees-Marathon | | | | | | | 0.00 |
| **Vacant Land-Marathon, Fl - Other** | | | | | | | 0.00 |
| Total Vacant Land-Marathon, Fl - Other | | | | | | | 0.00 |
| Total Vacant Land-Marathon, Fl | | | | | | | 0.00 |
| **VOID** | | | | | | | 0.00 |
| Check | 01/15/2016 | 1286 | VOID | | WELLS FARGO B... | 0.00 | 0.00 |
| Check | 01/15/2016 | 1290 | VOID | | WELLS FARGO B... | 0.00 | 0.00 |
| Check | 02/08/2016 | 1210 | VOID | | WELLS FARGO B... | 0.00 | 0.00 |
| Check | 03/15/2016 | 1251 | VOID | | WELLS FARGO B... | 0.00 | 0.00 |
| Check | 04/09/2016 | 1345 | VOID | | WELLS FARGO B... | 0.00 | 0.00 |
| Check | 05/02/2016 | 1364 | VOID | | WELLS FARGO B... | 0.00 | 0.00 |
| Check | 05/23/2016 | 1374 | VOID | | WELLS FARGO B... | 0.00 | 0.00 |
| Check | 07/20/2016 | 1405 | VOID | | WELLS FARGO B... | 0.00 | 0.00 |
| Check | 10/06/2016 | 1452 | VOID | | WELLS FARGO B... | 0.00 | 0.00 |
| Check | 10/12/2016 | 1456 | VOID | | WELLS FARGO B... | 0.00 | 0.00 |
| Check | 12/01/2016 | 1477 | VOID | | WELLS FARGO B... | 0.00 | 0.00 |
| Total VOID | | | | | | 0.00 | 0.00 |
| **Bank Service Charges** | | | | | | | 0.00 |
| Check | 01/12/2016 | | | Service Charge | WELLS FARGO B... | 10.00 | 10.00 |
| Check | 11/09/2016 | SC | WELLS FARGO BANK | | WELLS FARGO B... | 10.00 | 20.00 |
| Check | 12/12/2016 | | | Service Charge | WELLS FARGO B... | 10.00 | 30.00 |
| Total Bank Service Charges | | | | | | 30.00 | 30.00 |
| **Legal Fees** | | | | | | | 0.00 |
| Total Legal Fees | | | | | | | 0.00 |

8:34 AM
03/16/18
Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
### As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| 2200 Waldman Avenue | | | | | | | 0.00 |
| **Escrow Expenses** | | | | | | | 0.00 |
| Total Escrow Expenses | | | | | | | 0.00 |
| **Escrow Expense** | | | | | | | 0.00 |
| Total Escrow Expense | | | | | | | 0.00 |
| **Mortgage Interest Expense** | | | | | | | 0.00 |
| Total Mortgage Interest Expense | | | | | | | 0.00 |
| **2200 Waldman Avenue - Other** | | | | | | | 0.00 |
| Total 2200 Waldman Avenue - Other | | | | | | | 0.00 |
| Total 2200 Waldman Avenue | | | | | | | 0.00 |
| **Ft Lauderdale/Las Olas Res** | | | | | | | 0.00 |
| **Miscellaneous Expenses** | | | | | | | 0.00 |
| Check | 09/02/2016 | DEBIT | JEG FAMILY TRUST | | WELLS FARGO B... | 105,000.00 | 105,000.00 |
| Deposit | 09/07/2016 | | JEG FAMILY TRUST | Deposit | WELLS FARGO B... | -105,000.00 | 0.00 |
| Total Miscellaneous Expenses | | | | | | 0.00 | 0.00 |
| **Interest Expense** | | | | | | | 0.00 |
| Total Interest Expense | | | | | | | 0.00 |
| **Escrow Expenses** | | | | | | | 0.00 |
| Total Escrow Expenses | | | | | | | 0.00 |
| **Ft Lauderdale/Las Olas Res - Other** | | | | | | | 0.00 |
| Total Ft Lauderdale/Las Olas Res - Other | | | | | | | 0.00 |
| Total Ft Lauderdale/Las Olas Res | | | | | | 0.00 | 0.00 |
| **Payroll Expenses** | | | | | | | 0.00 |
| Total Payroll Expenses | | | | | | | 0.00 |
| **Sale of 425 Industrial** | | | | | | | 0.00 |
| Total Sale of 425 Industrial | | | | | | | 0.00 |
| **Forfeited deposits** | | | | | | | 0.00 |
| Deposit | 05/06/2016 | 1504 | GREAT AMERICAN REALTY OF TAMPA | Forfeit Deposit | WELLS FARGO B... | -5,000.00 | -5,000.00 |
| Total Forfeited deposits | | | | | | -5,000.00 | -5,000.00 |
| **Sale of Wetlands** | | | | | | | 0.00 |
| Total Sale of Wetlands | | | | | | | 0.00 |
| **Loss on sale Ft Lauderdale prop** | | | | | | | 0.00 |
| General ... | 01/29/2016 | 7 | | Pmt on Ft lauderdale received by Te... | WELLS FARGO B... | -65.09 | -65.09 |
| Total Loss on sale Ft Lauderdale prop | | | | | | -65.09 | -65.09 |

8:34 AM
03/16/18
Accrual Basis

# JACK GALARDI, JR JEG SUBTRUST
## General Ledger
### As of December 31, 2016

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| **Sale of Marathon property** | | | | | | | 0.00 |
| Total Sale of Marathon property | | | | | | | 0.00 |
| **Loss on sale property** | | | | | | | 0.00 |
| Total Loss on sale property | | | | | | | 0.00 |
| **State Taxes Paid** | | | | | | | 0.00 |
| Check | 03/16/2016 | 1325 | GEORGIA DEPARTMENT OF REVENUE | YEAR 2014,LETTER L0578740368 ... | WELLS FARGO B... | 616.04 | 616.04 |
| Check | 10/17/2016 | 1444 | GEORGIA DEPARTMENT OF REVENUE | FORM 500-2015 SSBN 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 | WELLS FARGO B... | 23,999.00 | 24,615.04 |
| Total State Taxes Paid | | | | | | 24,615.04 | 24,615.04 |
| **No accnt** | | | | | | | 0.00 |
| Total no accnt | | | | | | | 0.00 |
| **TOTAL** | | | | | | **0.00** | **0.00** |

# "EXHIBIT D"

# Legal & Vesting Report

**For Property Located At**
**12449 KELSO RD, THONOTOSASSA FL 33592**

**Legal**

In the county of **HILLSBOROUGH**, State of **FL**

Assessed Owner: **DENT JAMES L / DENT WILLYE M**

Legal Description: **A PARCEL OF LAND LOCATED IN THE STATE OF FL, COUNTY OF HILLSBOROUGH, WITH A SITUS ADDRESS OF 12449 KELSO RD ,THONOTOSASSA FL 33592-2644 R001 CURRENTLY OWNED BY DENT JAMES L / DENT WILLYE M HAVING A TAX ASSESSOR NUMBER OF 059764-0320 AND BEING THE SAME PROPERTY MORE FULLY DESCRIBED AS TRACT BEG 1024.85 FT E AND 1176.72 FT S OF NW COR OF SW 1/4 RUN E 182.01 FT S 34 DEG 40 MIN 00 SEC W 768.44 FT TO N R/W OF KELSO RD THN N 55 DEG 20 MIN 00 SEC W 150 FT AND N 34 DEG 40 MIN 00 SEC E 665.36 FT TO POB 4506 0118 AND DESCRIBED IN DOCUMENT NUMBER 20709-0523 DATED 09/16/2011 AND RECORDED 09/16/2011.**

Subdivision: **FLINT LAKE PLATTED** — Legal Block/Bldg: **1**

Legal Book/Page: **79 69** — Legal Lot/Unit:

APN: **059764-0320**

**Property Address**

**12449 KELSO RD**
**THONOTOSASSA, FL 33592 - 2644**

**Mailing Address**

**12449 KELSO RD**
**THONOTOSASSA FL 33592 R001**

**Tax Information**

| | | | |
|---|---|---|---|
| Tax Year: | 2013 | Property Tax: | $12,251.43 |
| Assessed Year: | 2013 | Total Value: | $630,540 |
| Tax Rate Area: | U | | |
| Delinquent Tax Year: | 2011 | Improvement Value: | $534,990 |
| Exemption: | HOMESTEAD | % Improved: | 85% |

**Transaction History**

**History Record #: 1**

***Sale/Transfer:***

| | | | |
|---|---|---|---|
| Sale Recording Date: | 09/16/2011 | Sale Price Amnt: | $500,000.00 |
| Sale Date: | 09/16/2011 | Sale Price Type: | |
| Rec Document #: | 20709-0523 | | |
| Document Type: | WARRANTY DEED | | |
| Buyer: | DENT,JAMES L & WILLYE M | | |
| Seller: | GALARDI JACK | | |

**Finance:**

| | | | |
|---|---|---|---|
| Mtg Recording Date: | 09/16/2011 | Mtg Loan Type: | RESALE |
| Document #: | 20709-0524 | Mtg Rate: | FIXED |
| Document Type: | FINANCE | | |

Lender: GALARDI JACK
Mtg Term:
Loan Amount: $400,000.00
Interest Rate:
Borrower 1: DENT JAMES L
Borrower Vesting:
Borrower 2: DENT WILLYE M
Borrower 3:
Borrower 4:

**History Record #: 2**

***Sale/Transfer:***

Sale Recording Date: 08/31/1999
Sale Price Amnt: $185,000.00
Sale Date:
Sale Price Type:
Rec Document #: 9805.266
Document Type:
Buyer: GALARDI,JACK
Seller: OKAY,BEDII S

**History Record #: 3**

***Sale/Transfer:***

Sale Recording Date: 07/30/1999
Sale Price Amnt: $185,000.00
Sale Date:
Sale Price Type:
Rec Document #: 9756.622
Document Type:
Buyer: OKAY,BEDII S
Seller: STEVENS,WILLIAM S & DONNA M

**History Record #: 4**

**Finance:**

Mtg Recording Date: 10/27/1998
Mtg Loan Type: REFINANCE
Document #: 9304.1235
Mtg Rate: FIXED
Document Type: FINANCE
Lender: EQUICREDIT CORP
Mtg Term:
Loan Amount: $50,000.00
Interest Rate:
Borrower 1: STEVENS DONNA M
Borrower Vesting:
Borrower 2: STEVENS WILLIAM S
Borrower 3:
Borrower 4:

**History Record #: 5**

**Finance:**

Mtg Recording Date: 06/18/1998
Mtg Loan Type: REFINANCE
Document #: 9096.75
Mtg Rate: FIXED
Document Type: FINANCE

| Lender: | COLUMBIA BANK | Mtg Term: |
|---|---|---|
| Loan Amount: | $37,567.00 | Interest Rate: |
| Borrower 1: | STEVENS DONNA M | Borrower Vesting: |
| Borrower 2: | STEVENS WILLIAM S | Borrower 3: |
| Borrower 4: | | |

# TAB 4

Electronically Filed
12/7/2018 11:28 AM
Steven D. Grierson
CLERK OF THE COURT

ORDR
SHIRLEY A. DERKE, ESQ.
Nevada Bar No. 2686
627 S. Seventh St.
Las Vegas, NV 89101
702-386-6800
shirley@Derke.lvcoxmail.com
Attorney for Petitioner

DISTRICT COURT

CLARK COUNTY, NEVADA

* * *

In the Matter of the

JEG TRUST - JACK GALARDI JR. SUB-TRUST

Case No. P-18-096792-T
Dept. PC1
DATE: November 2, 2018
TIME: 9:30 a.m.

**ORDER GRANTING PETITION (IN PART) TO ALLOW THIS COURT TO TAKE JURISDICTION OVER THE TRUST AND CONFIRMATION OF SUCCESSOR TRUSTEE, TERI GALE GALARDI**

This matter came on for hearing on November 2, 2018, before the above-entitled Court, on the Petition of JACK GALARDI, JR., to allow this Court to take jurisdiction over the Trust; and to remove the named Successor Trustee; along with the objection by TERI GALE GALARDI and the Petitioner's response. Shirley A. Derke, Esq. appeared with her client, JACK E. GALRADI, JR. and Michael D. Rawlins, Esq. of Smith & Shapiro, PLLC appearing for TERI GALE GALARDI. The Court finds that due and proper notice of said hearing has been given; and having heard counsel's arguments, the Court finds as follows:

1. TERI GALE GALARDI is required to provide accountings to the beneficiary JACK E. GALARDI pursuant to Nevada Law.

2. Good cause appears for the Court to take jurisdiction of this trust pursuant to NRS 164.010 and 164.015 as the Trust's sole beneficiary resides in Nevada.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court as follows:

1. That this Court take jurisdiction over the trust in rem pursuant to NRS 164.010 and 164.015;

2. That this Court confirms that TERI GALE GALARDI is the named successor trustee in said document; and

Case 22-05008 Doc 1-6 Filed 04/25/22 Entered 04/25/22 19:09:18 Desc Exhibit F Page 4 of 4

3. That this Court orders TERI GALE GALARDI, Successor Trustees of the JACK E. GALARDI, JR. SUB-TRUST to provide an accounting of the funding of the assets to the sub-trust, which would include all activities from the date of death until transferred to the sub-trust; identifying any assets that have been separated from the JEG Trust. This accounting should be in accordance with NRS 165.135. This accounting shall be provided to JACK E. GALARDI, Jr. within 30 days from the notice of entry of this order.

4. That this Court orders TERI GALE GALARDI, Successor Trustees of the JACK E. GALARDI, JR. SUB-TRUST to provide an accounting of the sub-trust since its initial funding to date. This accounting shall be provided to JACK E. GALARDI, Jr. within 30 days from the notice of entry of this order.

DATED this 6 day of ~~November~~ Dec. 2018.

DISTRICT COURT JUDGE

SUBMITTED BY:

SHIRLEY A. DERKE, ESQ.
ATTORNEY FOR JACK GALARDI, JR.
Bar No. 2686
Case No. P-18-096792-T

APPROVED AS TO FORM AND CONTENT:

MICHAEL D. RAWLINS, ESQ.
Attorney for TERI GALE GALARDI, Successor Trustee
Bar No. 5467
SMITH & SHAPIRO, PLLC

# TAB 5

Electronically Filed
8/16/2019 3:22 PM
Steven D. Grierson
CLERK OF THE COURT

PET

SHIRLEY A. DERKE, ESQ.
Nevada Bar No. 2686
627 S. Seventh St.
Las Vegas, NV 89101
702-386-6800
shirley@Derke.lvcoxmail.com
Attorney for Petitioner

DISTRICT COURT

CLARK COUNTY, NEVADA

* * *

In the Matter of the

JEG TRUST - JACK GALARDI JR. SUB-TRUST

Case No. P 18-096792-T
Dept. PC1
DATE:
TIME: 9:30 a.m.

**PETITION FOR REMOVAL OF TERI GALARDI, SUCCESSOR TRUSTEE**

Comes now, the Petitioner, JACK GALARDI, JR., sole beneficiary of the JEG TRUST - JACK GALARDI JR. SUB-TRUST, (hereinafter referred to as JACK, JR.). by and through his attorney, Shirley A. Derke, Esq., hereby moves this court for an order removing TERI GALE GALARDI, Successor Trustee (hereinafter referred to as TERI) by alleging as follows:

**GENERAL FACTS**

1. This Court has taken jurisdiction of this Sub Trust created under JACK GALARDI, SR.'s revocable living trust dated November 1, 2006 and amended and restated on August 16, 2012 and confirmed Teri Galardi as the Successor Trustee under an order entered on December 7, 2018.

2. Under the order entered on December 7, 2018 TERI was ordered to provide the JACK JR. the following documents within 30 days from the entry of the order, which was served on TERI's counsel on December 10, 2018:

A. An accounting of the funding of the assets of the sub-trust, which includes all activities from the date of death until the sub-trust was fully funded and fully identifying all assets separated from the Family Trust.

B. An accounting of the sub-trust, since initial funding to date.

C. All accounting is to be prepared in accordance with NRS 165.135.

3. Since the entry of this Court's order on December 10, 2018, the parties have met to discuss the issues numerous times, without any final resolution.

4. TERI has provided the following accounting records (some provided prior to this court's order and others not necessarily within the 30 days as ordered by this Court) as follows:

A. Trust Income tax return form 1041 for the Galardi Family Trust for the fiscal years ending 11/30/13; 11/30/14; 11/30/15 and 11/30/16 (which was marked as a final return)

B. 2007 gift tax return form 709 for Jack E. Galardi (this was for 2 qualified personal residence trusts created by Jack E. Galardi on June 4, 2007 - Las Vegas and Florida)

C. TERI's Final Trust Allocation for the Jack Galardi Trust with asset distributions as approved by TERI on 11/7/2014

D. 2015 Quickbooks general ledger for JACK JR.'s Sub-trust - which was the initial year of financial records on sub trust

E. 2016 Quickbooks general ledger; 12/31/16 Balance Sheet and 2016 Profit & Loss on JACK, JR's sub trust

F. 2017 Quickbooks general ledger; 12/31/16 Balance Sheet and 2016 Profit & Loss on JACK, JR.'s sub trust

G. Quickbooks general ledger for the period 12/1/17-11/30/18 for JACK, JR.'s sub trust - which is not on a fiscal year, but a calender year

H. Quickbooks general ledger for the period 12/1/17-11/30/18 for the Family Trust along with the 11/30/18 Balance sheet and Profit & Loss.

I. Our files indicate on approximately March 20, 2019 Emelita Sy dropped off a general ledger for the Galardi Family trust along with Balance Sheets and profits and Loss statements for the periods ending 11/30/13 and 11/30/14. The documents were reviewed by Shirley A. Derke, Esq. prior to a 3/26/19 meeting with counsel for TERI, but it was discovered in June 2019 that the records cannot be located and a duplicate copy (preferably an electronic version of the quickbooks data) was requested by e-mail to TERI's counsel on June 25, 2019 and nothing has been received for this period.

**ESTATE TAXES HAVE NOT BEEN ALLOCATED ON SPECIFIC BEQUESTS AND/OR ASSETS DISTRIBUTED DIRECTLY TO NAMED BENEFICIARIES**

4. Upon review of the Federal Estate Tax return, form 706, it appears that there were estate taxes imposed in the amount of $16,586,905. The assets taxed on this return included items that were paid out to beneficiaries named or listed as specific bequests in the Jack E. Galardi Family Trust restated on August 15, 2012 are as follows:

| | | |
|---|---|---|
| A. Life insurance paid directly to Teri Galardi, Schedule D of 706 | | $2,000,000 |
| B. Specific Bequests listed in the trust & Form 706, Part 4, Line 5 | | |
| a. Kathy Holder | $300,000 | |
| b. Emelita Sy | 200,000 | |
| c. Maricar Martinez | 100,000 | |
| d. Jeffrey Stromatt | 65,000[a] | |
| e. Diana Pontrelli | 100,000[c] | |
| f. Daniel Geiger | 200,000 | |
| g. Michael Porter | 20,000[b] | |
| h. Daniel Purdy | 100,000 | |
| i. Charles Wright | 100,000 | 1,185,000 |
| | | $3,185,000 |

5. This trust is governed by Nevada Law. Nevada adopted the Federal Estate Tax Apportionment Law in 1957 to equitably prorate payment of the federal estate tax among those persons interested in the estate subject to that tax and is a fundamental public policy of this state subject only to the expressed will of the testator to the contrary. NRS 150.310 states, in part, as follows:

> NRS 150.310 Proration of tax among persons interested in estate; exceptions.
>
> 1. If it appears upon any accounting, or in any appropriate action or proceeding, that a personal representative, trustee or other fiduciary has paid or may be required to pay an estate tax to the Federal Government under the provisions of any federal estate tax law, now existing or hereafter enacted, upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the

---

(a) Disposition of personal property states that Jeff Stromatt was to receive a Falcon 20 (airplane?) which is not listed on the form 706. Not sure if this was cash paid out or fair market value of the airplane. Not sure who owned the Falcon 20 - possibly an asset of LVA Management, Inc., an entity transferred to Teri Galardi per the distribution schedule.

(b) Disposition of personal property states that Michel Porter was to receive a gun collection. Item F7 on form 706 groups the gun collection with jewelry and other personal items for a total value of $120,000. Teri Galardi's distribution schedule shows that she received the entire value of $120,000.

(c) Disposition of personal property states that Diana Pontrelli was to receive $200,000 in cash, not $100,000. It appears that this bequest has not been fully satisfied.

amount of the tax must be equitably prorated among the persons interested in the estate, whether residents or nonresidents of this State, to whom the property was, is or may be transferred or to whom any benefit accrues, except:

(a) Where a testator otherwise directs in his or her will.

(b) Where by written instrument, including, without limitation, an electronic trust, executed inter vivos direction is given for apportionment among the beneficiaries of taxes assessed upon the specific fund dealt with in the instrument.

6. Upon review of the Total Amendment and Restatement of the JEG Family Trust and the pour over will as admitted to probate by this Court under Case P-13-076839-E, there was no direction indicating that these beneficiaries were to receive their inheritance free from any estate taxes.

7. TERI's distribution schedule incorrectly allocates all of the estate taxes to the residual beneficiaries. In this distribution schedule signed on 11/7/14 (See Exhibit A attached hereto) TERI allocated all of the estate taxes to her portion to reduce the value of the assets she has received and thereby overstating the trust value of her 75% residual share of the remaining trust estate.

**ASSETS APPEAR TO BE NOT PROPERLY ACCOUNTED FOR**

8. Upon review of the Estate income tax returns, form 1041, along with form 706, the following discrepencies were discovered:

A. The Family Trust forms 1041 for 2012 (FYE 11/30/13) thorough 2014 (FYE 11/30/15) indicate that there was a pass-through entity reported on Schedule E, namely Red Eyed, Inc. This entity was never listed on the estate tax return, form 706. As the division of assets dated 11/7/2014 uses assets as listed on form 706, this entity has not been taken into consideration in the division. It should be noted that the pass through from this entity were losses for each taxable year, but it unknown as to the value of the entity.

B. The 2013 form 1041, Schedule D and form 8949, page 2, reports that DAMM, Inc. was written off as a capital loss in the amount of $10,000. This entity was never listed on the estate tax return, form 706. As the division of assets on 11/7/2014 uses assets as listed on form 706, this entity has not been taken into consideration in the division. If it were a worthless asset as the date of death, then there would be no capital loss to take as of 9/20/14, the

disposition date used on the income tax return.

C. Form 706 lists GFT Management and Consulting, Inc. twice on Schedule B - See item 16 and item 19 (both item reflect a fair market value of $10,000). TERI's distribution schedule lists item 16 at a value of $10 and item 19 at a value of $10,000. It has been acknowledged by TERI's accountant, Dan Geiger, as well as her counsel, that the true value of this *one* asset is $10,000 and the value was over reported on form 706.

D. The 2013 form 1041, Schedule D and form 8949, page 2 reports a sale of real property located at 3010 Overseas Hwy., Marathon, FL for a sales price of $80,000 and a basis of $91,353 with a resulting net loss of $11,353. The only Overseas Hwy., Marathon, FL property listed on Form 706 was vacant land at 1477 Overseas Hwy (See 706, Schedule A, item 35) with a basis of $225,000 - which property was allocated to JACK GALARDI, JR. sub trust and sold 11/2015. It appears that there were two real properties held by the decedent on Overseas Highway and both parcels were not reported on the form 706. As the division of assets on 11/7/2014 uses assets as listed on form 706, this property has not been taken into consideration in the division.

E. The 2013 form 1041, Schedule D and form 8949, page 2 reports a sale of real property located at North Park Court, Stockbridge, GA (see 706, Schedule A, item 38) on 12/27/13. The basis on form 706 was $504,927 and the basis reported on the sale was $431,044. There is no supporting documentation provided to show a reduction in basis from the date of death.

F. Vacant land located at 6220 E. Adamo Dr., Tampa, FL, APN 81-96-15-000-0 (Form 706, Schedule A item 30 represented as titled in the name of Galardi Rentals, LLC., but Galardi Rentals, LLC was not listed on Schedule B of the form). TERI's distribution schedule funded JACK, JR.'s sub-trust with this real property. There is no disclosure as to other assets held in the Galardi, Rentals, LLC, if any on form 706.

G. Vacant property located on 15th St., Marathon, Florida (Form 706, Schedule A, item 17) valued at $43,000 and used to fund JACK, JR.'s sub-trust. DANIEL GEIGER, CPA

verbally informed Petitioner, during one of the meetings, that the property was sold in 2015. JACK JR's sub trust general ledger as of 12/31/16 lists the property as still being held. In fact, the 2016 Profit and Loss reflects the following amounts as Other Income/Expense:

| | |
|---|---|
| Forfeited deposits received from Great American Realty of Tampa | $5,000 |
| Loss on sale of Ft. Lauderdale property | < 65> |

The records do not clearly indicate it the property was sold or not. How can the Profit and Loss show a loss on sale, yet a forfeited deposit that exceeds the recorded loss? No sale was reported in JACK JR.'s sub trust 2015 form 1041 of this property.

9. Based upon prior conversations with TERI's counsel, it was questioned why the Galardi Family Trust general ledger would include the $2,000,000 of life insurance on Jack E. Galardi when TERI was the sole beneficiary. This indicates that TERI may have been co-mingling her personal assets with the Family Trust Assets.

10. The division of assets dated 11/7/2014 states that the decedent held a publicly traded stock - 18,000 shares of Sirus XM Radio with a date of death value of $50,220. This asset was used to fund JACK JR.'s sub-trust but does not appear on JACK, JR.'s sub-trust general ledger.

11. JACK JR.'s sub-trust was funded with a residence and lot located at Navarro Isle, Ft. Lauderdale, FL with a date of death value of $4,200,000 per Form 706 (Schedule A, item 24) and recorded in JACK JR.'s sub-trust 2015 general ledger at a different value of $4,275,000. This property was subject to a mortgage, listed on Schedule K, item 12 of the Form 706 in the amount of $3,411,325. The 706 implies that there was equity in the property of $788,675. The distribution schedule improperly allocated two liens secured by other real property of the estate in the total amount of $3,592,794 - an error of $181,469 undervaluing the assets received by JACK, JR.'s sub trust. It is interesting to note that JACK JR.'s sub trust general ledger reflected the proper mortgage of $3,411,325 as of the date of death - which presumes that no payments were made against the mortgage from the date of death to the date of distribution. When the property was sold by JACK, JR.'s sub-trust on 10/22/2015, the trust showed a loss of $1,243,346.63 - a difference in equity in the property of over $2,000,000. It is also interesting to

note that this property represented 13.8% of the total assets funding JACK, JR.'s sub-trust (788,675/5,694,500).

**THE DISTRIBUTION SCHEDULE FAILS TO ADDRESS THE CHANGES IN THE ASSETS HELD AT THE TIME OF DISTRIBUTION AS WELL AS THE INCOME AND EXPENSES ALLOCATED TO JACK, JR.'S SUB-TRUST FROM THE TIME OF DEATH TO DATE OF DISTRIBUTION**

12. Proper trust accounting requires the fiduciary to have an accurate record of the assets and liabilities of the trust at all times. TERI presented a distribution of assets to the residuary beneficiaries dated 11/7/2014. This list presumes that the trust held all of the assets as listed, but in fact it was attempting to account for distribution of the assets as of the date of death and as reported on form 706 - without regard to sales of assets during administration; income and expenses during administration; payment on any existing liabilities as of the date of death including any negotiated reductions as well as additional interest and assessments; and distributions to or on behalf of the residual beneficiaries. Note that the only information provided by the Trustee was income tax returns without any general ledgers to support.

13. The following assets were disposed of prior to the 11/7/2014 distribution proposal and should not have been part of the allocations:

A. Real Property - 1730 NW 33rd St., Pompano Beach, FL (Schedule A, Item 2) was sold 2/5/14 and reported a net capital loss of $395,999

B. Real property - 13922 NW 13th St., Pompano Beach, FL (Schedule A, Item 3) was sold 10/17/13 and reported a net capital loss of $10,480. The basis on form 706 was $500,000 and the basis on Form 1041, Schedule D was $530,480. No support as to the difference in basis.

C. Real property -3445 Shoreland Dr., Buford, GA (Schedule A, Item 10) was sold 9/12/13 and reported on 2012 form 4979, Line 10, Statement 6 with a net capital loss of $228,189.

D. Real property - 1704 Hudson Bridge Rd., Stockbridge, CA (Schedule A, Item 18) was sold 9/12/13 and reported on 2012 form 4979, Line 10, Statement 6 with a net capital

gain of $106,629.

E. Real property - 973 Marrietta St., Atlanta, GA (Schedule A, Item 26) was sold 9/18/13 and reported on the Family Trust 2012 form 1041, 4979, Line 10, Statement 6 with a net capital loss of $29,672. The basis on form 706 was $750,000 and the basis on Form 1041, Schedule D was $793,561. No support as to the difference in basis. In fact, the 706 states that the sale was agreed upon prior to death and the date of death basis was taken from the 9/18/2013 closing statement. The form 706 was signed by TERI GALE GALARDI on March 3, 2014.

**TERI HAS FAILED TO DISCLOSE ALL DEBTS OF THE DECEDENT AS WELL AS ALL SECURED DEBTS AGAINST THE SUB-TRUST ASSETS**

14. TERI, acting as Trustee of the JEG LV Qualified Personal Residence Trust dated June 4, 2007, encumbered the real property of the Decedent located at 1245 S. Rancho Drive on September 10, 2012 (within 90 days prior to the decedent's death) as indicated on the $750,000 Deed of Trust attached hereto as Exhibit B. This loan is not disclosed on the Decedent's 706 or any financial reports provided by TERI This property was used to fund JACK, JR.'s sub-trust and the lien is not reflected on JACK, JR's sub-trust general ledger.

15. TERI has also failed to disclose a prior $250,000.00 mortgage lien on the real property located at 1245 S. Rancho Drive, Las Vegas, NV as indicated in the Deed of Trust attached hereto as Exhibit C. This loan is not disclosed on the Decedent's 706 or any financial reports provided by TERI. This property was used to fund JACK, JR.'s sub-trust and the lien is not reflected on JACK, JR.'s sub-trust general ledger.

16. The names, ages, relationships and residences of the beneficiaries, trustee and Successor Trustees of the trust, so far as known to the Petitioner are as follows:

Jack E. Galardi, Jr., sole beneficiary
C/O Shirley A. Derke, Esq.
627 S. Seventh St.
Las Vegas, NV 89101

Teri Gale Galardi, Trustee of the JACK E. GALARDI, JR. SUB-TRUST
C/O Greg Smith, Esq.
Smith & Shapiro, PLLC
2520 St. Rose Parkway #220
Henderson, NV 89074

Daniel Geiger, named Successor Co-Trustee of the JACK E. GALARDI, JR. SUB-TRUST
2850 S. Jones Blvd, Suite 2
Las Vegas, NV 89146

Emelita P. Sy, named Successor Co-Trustee of the JACK E. GALARDI, JR. SUB-TRUST
2121 S. Highland Dr.
Las Vegas, NV 89102

17. Prior to the Decedent's death, Daniel Geiger was the accountant and income tax preparer for JACK GALARDI, SR. To the Petitioner's knowledge, he has remained the accountant and income tax preparer to TERI, as Trustee of the JACK, JR. sub trust. Due to many of the issues contained herein and his apparent participation in the accountings complained of, Petitioner hereby objects to him acting as Successor Trustee for this Trust.

WHEREFORE, Petitioner prays that the court finds the following:

A. That this court immediately suspend TERI GALE GALARDI as Trustee of the JACK E. GALARDI, JR. SUB-TRUST;

C. That this court confirm EMELITA P. SY as Successor Trustee of the JACK E. GALARDI, JR. SUB-TRUST; and

D. And for such other and further relief as to the Court may seem just and proper in the premises.

DATED this 16th day of August 2019.

SHIRLEY A. DERKE, ESQ.

STATE OF NEVADA )
) ss:
COUNTY OF CLARK )

JACK GALARDI, JR., being first duly sworn, deposes and says:

That he is the Petitioner in the above entitled matter; that he has read the above and foregoing Petition and knows the contents thereof, and that the same is true of his own knowledge, except as to those matters therein stated on information and belief, and for those matters, he believes them to be true.

JACK GALARDI, JR.

SUBSCRIBED and SWORN to before me this 16th day of September 2019.

NOTARY PUBLIC

SHIRLEY DERKE
Notary Public State of Nevada
No. 92-1690-1
My Appt. Exp. Dec. 16, 2020

SUBMITTED BY:

SHIRLEY A. DERKE, ESQ.
Case No. P-18-096792-T

# "EXHIBIT A"

**FINAL TRUST ASSET ALLOCATION FOR THE JACK GALARDI TRUST - Effective Date 12/1/2012 (Date of Death of Jack E. Galardi)**

** As approved by Trustee Terrie Galardi. All distributions subject to T. Galardi discretion.

| Item Number | Item Description | Tax Value | Teri Galardi Trust | Jack Galardi Jr. Trust |
|---|---|---|---|---|
| | **SCHEDULE A** | | | |
| 1 | House and lot-760 Piedmont Avenue, Atlanta, GA and more specifically Dis 14, LL49, Lot 47, Piedmont Avenue, Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-1 | $ 728,000 | $ 728,000 | |
| 2 | Vacant land-1730 NW 33rd St., Pompano Beach, FL, and more specifically The Cigna Freshna Plat Two 128-418 Tract "A". Value per appraisal attached as Exhibit A-2. (Sold for 1.2M, 600k paid to Abromovitz) | 1,520,000 | 1,520,000 | - sold |
| 3 | House and lot-13922 NW 13th St, Pembroke Pines, FL. and more specifically Lot 25 Block 17 Pembroke Falls Phase #5 164-78. Value per appraisal attached as Exhibit A-3 | 500,000 | 500,000 | - sold |
| 4 | Vacant land-20 acres, Moapa Valley, Clark County, NV and more specifically APN 071-18-601-015. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-4. | 20,000 | | 20,000 |
| 5 | Vacant land-2 parcels, Clark County NV and more specifically 2 acres APN 041-25-301-012 and 1 acre APN 041-25-301-013. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-5 | 48,000 | | 48,000 |
| 6 | Vacant land-2 gross acres, Clark County, NV and more specifically apn 041-36-201-029. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-6. | 39,000 | | 39,000 |
| 7 | Land and building-2112 Western Avenue, Las Vegas, NV and more specifically APN 162-04-302-006, 162-04-302-007, 162-04-403-001. Titled in the name of New International Properties, LLC. Value per appraisal . attached as Exhibit A-7. (cheetahs) . **Property offset by Mortgage owed to Jack Galardi Jr. Trust.** | 2,260,000 | 2,260,000 | |
| 8 | Land and building-2111 and 2121 Highland Avenue, Las Vegas, NV and more specifically APN 1652-04- 403-002 and 162-04-403-003. Titled in the name of New International Properties, LLC. Value per appraisal attached as Exhibit A-8. | 380,000 | 380,000 | |
| 9 | Vacant land-6.45 acres, Naples FL, and more specifically Royal Palm Golf Estates Replat #3 Tract B. Titled in the name of Jack E Galardi LLC. Value per appraisal attached as Exhibit A-9. | 84,000 | 84,000 | |
| 10 | House and lot, 3445 Shoreland Dr., Buford GA, and more specifically LL187, 8th District, Lots 1-2, Block C, H E Compton, Hall County. Value per appraisal attached as Exhibit A-lo. | 629,000 | 629,000 | - sold |
| 11 | House and lot, 18511 Royal Hammock Blvd., Naples FL and more specifically Royal Palm Golf Estates Unit #1 Blk A Lot 66. Value per appraisal attached as Exhibit A-ll. | 230,000 | 230,000 | |
| 12 | 2 Unit Condominium warehouse/retail building located at 7951 and 7971 NW 33rd St., Doral, FL 33122 and more specifically Airport Ind Center Condo Whse Unit 1-B and 9-B-1 undivided 5% and 2.75% interest in common elements off rec Rec-11292-2134. Value per appraisal attached as Exh1bit A-12 (PINK PONY) | 755,000 | 755,000 | |
| 13 | Vacant land-Lot 58 on S/S Lake Hammond Dr, Naples Fl, and more specifically Royal Palm Golf Estates Replat #3 Lot 58. Titled in the name of Jack Galardi LLC. Value per appraisal attached as Exhibit A-13 | 31,000 | 21,000 | |
| 14 | Vacant land-1.47 acre residential lot-747-751 Scott Road, Forest Park, GA, and more specifically City of Forest Park Parcel ID# 13015D A012. Titled in the name of JEG Family Trust. Value per appraisal attached as Exh1bit A-14. | 30,000 | 30,000 | |
| 15 | Vacant land-.341 acres-775 Conley Rd. SE, Atlanta, GA and more specifically City of Atlanta, Parcel ID# 14-0032-LL-080-6 and City of Forest Park Parcel ID# 13015B B002A. Titled in the name of Walleye LLC. Value per appraisal attached as Exhibit A-15. | 135,000 | 135,000 | |
| 16 | Vacant land-.812 acres-3700 Jonesboro Rd SE, Atlanta GA and more specifically City of Atlanta Tax ID# 14 0032 LL0715 Titled in the name of JEG Family Trust. Value per appraisal attached as Exh1bit A-16 | 530,000 | 580,000 | |

| | | | | | |
|---|---|---|---|---|---|
| 17 | Vacant lot-1xx 15th St., Marathon, FL, and more specifically Parrish sub Marathon sub PB 2--18 5"ly lots 1 & 2 blk 2. Value per appraisal attached as Exhibit A-17. | | | | |
| 18 | Land and building,-1704 Hudson Bridge Rd., Stockbridge, GA and more specifically parcel ID 032-01012007. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-18 | 309,000 | 84,000 | 225,000 | |
| 19 | Land and building-3920 Jonesboro Road, Forest Park, GA and more specifically Clayton County parcel ID# 13015B 8002. Titled in the name of Walleye LLC. Value per appraisal attached as Exhibit A-19 | 245,000 | 245,000 | | sold |
| 20 | Vacant land-425 Industrial Boulevard, McDonough, GA and more specifically Henry County, City of McDonough, Parcel ID# 093-01018005, Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-20 | 650,000 | 650,000 | | |
| 21 | Land and buildings including personal property located at 18100 Royal Tree Parkway, Naples FL and more specifically APN 71370080006. Titled in the name of Jack E Galardi, LLC. Value per appraisal attached as Exhibit A-21 | 440,000 | | 440,000 | |
| 22 | Land and building-1901 Mr. Joe White Avenue, Myrtle Beach SC and more specifically APN 10100-01-031. Value per appraisal attached as Exhibit A-22 | 3,240,000 | 3,240,000 | | |
| 23 | Vacant land-Mokelumne Hill, Calaveral County, CA and more specifically APN 020-001-091. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit-A23 | 3,475,000 | 3,475,000 | | |
| 24 | House and lot-201 Navarro Isle A.K.A. Gordon Rd., Ft. Lauderdale, FL., and more specifically Lot 7,8 Navarro Isle 15-40B. Property is titled in the name of JEG LV Qualified Personal Residence Trust per appraisal, but was deeded to JEG Family Trust On July 20, 2012. Value per appraisal attached as Exhibit A-24. | 67,500 | | 67,500 | |
| 25 | Land and building-29 NE 11th St., 1135 North Miami Avenue and adjacent vacant land, all located in Miami FL. This real estate is a part of a sale, agreed to prior to December 1, 2012 and consumated December 18, 2012. Value per closing statement attached as Exhibit A-25 (GOLD RUSH) | 4,200,000 | | 4,200,000 | |
| 26 | Land and building-973 Marietta Street, Atlanta GA. This property is a part of a sale, agreed to prior to December 1, 2012 and consumated September 18, 2013. Value per closing statement attached as Exhibit A-26 | 4,500,000 | 4,500,000 | - | sold |
| 27 | Land and building-4766 Frontage Road, Forest Park, GA and more specifically APN 13044C A002. Titled in the name of JGP&P LLC. Value per appraisal attached as Exhibit A-27. (pink pony south) | 750,000 | 750,000 | - | sold |
| 28 | Vacant land-2.718 acres 10710 Walker Road, Thonotosassa, Hillsborough County, FL and more specifically, Parcel ID #U182820ZZZ000002096900 or Folio Number 061121-000. Value per appraisal attached as Exhibit A-28. See Debt Note of 400,000 at Schedule C | 450,000 | 450,000 | | |
| 29 | Land and Building-1837 Corporate Boulevard, Atlanta GA. and more specifically APN 18-156-01-003 Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-29 | | | | |
| 30 | Land-6220 E, Adamo Dr., Tampa FL and more specifically APN 81-96-15-000-0, Titled in the name of Galardi Rentals LLC. Appraisal forthcoming. | 2,491,946 | 2,491,946 | | |
| 31 | Land and building-2610 Metropolitan Parkway, and more specifically Fulton County parcel ID's 14-0092-0003-053-6 and 14-0092-003-056-9. Titled in the name of Trinidad Creations, LLC. Value per appraisal attached as Exhibit A-31 | 5,000 | | 5,000 | |
| 32 | Land and buildings-026 Knox Chapel Rd. Social Circle, Butts County, GA. And more specifically #C170-000000-0118-000. Titled in the name of Geno G's LLC, Value per appraisal attached. | 1,600,000 | 1,600,000 | | |
| 33 | Land and buildings-4730 Frontage Road, Forest Park, GA and more specifically APN 13044C A002, Titled in the name of JGP&P LLC. Appraisal forthcoming. | 448,000 | 448,000 | | |
| 34 | Land and building-211 New Golf Mountain Rd., Cross Lanes WV 25313 and more specifically Part Parcel A-10 91/100 Rocky Fork Relocated State Route 622 and B-10 Containing 36/1000 SW Cross Lanes Exit 64, Union District, Deed Book 2524, Page 366, Value per appraisal attached as Exhibit A-34 | 650,000 | 650,000 | | |
| 35 | Condominium-354 Mcgill Pl, NE, Atlanta, GA 30312 and more specifically District 14 LL 47, Unit 354, Mcgill Place. Value per appraisal attached as Exhibit A-35 | 650,000 | | 650,000 | rental |
| | | 85,000 | 65,000 | | |

**SCHEDULE B**

| No. | Description | | | | |
|---|---|---|---|---|---|
| 1 | 100% ownership - Trop, Inc., Appraisal in final review to be submitted upon receipt. Preliminary value provided by appraiser. (PINK PONY) | $ | 6,299,800 | 6,299,800 | |
| 2 | 100% ownership - Turntable Entertainment & Production Company, Inc. Appraisal in final review to be submitted upon receipt. Preliminary value provided by appraiser. | | 7,476,000 | 7,476,000 | |
| 3 | 100% ownership - Country Club, Inc. (a Georgia corporation. Appraisal in final review to be submitted upon receipt. Preliminary value provided by appraiser. | | 1,453,600 | 1,453,600 | |
| 4 | 100% ownership - Ponytail, Inc. 2555 Chantilly Drive, Atlanta, GA 30324. Appraisal in final review to be submitted upon receipt. Preliminary value provided by appraiser. | | 4,086,900 | 4,086,900 | |
| 5 | 100% ownership - Lafuente, Inc. 713 E Ogden St., Las Vegas, NV 89101, Appraisal in final review to be submitted upon receipt. Preliminary value provided by appraiser. | | 1,848,300 | 1,848,300 | |
| 6 | 100% ownership - Fly LOW, Inc. Appraisal in final review to be submitted upon receipt. Preliminary value provided by appraiser. (note - payments to fly low then to tst) | | 1,892,500 | 1,892,500 | |
| 7 | 100% ownership - Bella Mia, Inc. Value per appraisal attached as Exhibit B-7 (PINK PONY VEGAS) | | 865,700 | 865,700 | |
| 8 | 50% ownership - MBJG Inc. 2555 Chantilly Drive, Atlanta, GA. Value estimated. Appraisal forthcoming. | | 2,247,000 | 2,247,000 | |
| 9 | 100% ownership - Galardi Eagle Lakes LLC. Appraisal in final review to be submitted upon receipt. Preliminary value provided by appraiser. (GOLF COURSE) | | 2,070,000 | 2,070,000 | |
| 10 | 100% ownership - Country Club, Inc. (a South Carolina corporation). Appraisal in final review to be submitted upon receipt. Preliminary provided by the appraiser. | | 2,451,600 | 2,451,600 | |
| 11 | 100% ownership - LVA Management, Inc. 713 E. Ogden Street, Las Vegas, NV 89101, Value estimated. Appraisal forthcoming. | | 1,500,000 | 1,500,000 | |
| 12 | 100% ownership - Three Women, Inc., Value estimated. Appraisal forthcoming. | | 200,000 | 200,000 | |
| 13 | 100% ownership - Candy Pink, Inc. 713 E. Ogden st., Las Vegas, NV 89101. Value estimated. Appraisal forthcoming. | | 10,000 | 10,000 | |
| 14 | 100% ownership - E & J Inc. Value estimated. Appraisal forthcoming. 43.33 acres. | | 25,000 | 25,000 | |
| 15 | 100% ownership - The Riviera Entertainment Group, Inc. Value estimated, Appraisal forthcoming. | | 1,000 | 1,000 | |
| 16 | 100% ownership - GFT Management and Consulting, Inc., Value estimated. Appraisal forthcoming. | | 10 | 10 | |
| 17 | 100% ownership - Extreme Tours, Inc. d/b/a Rebel Adventure Tours - 713 E. Ogden Street, Las Vegas, NV 89101, Value estimated, Appraisal forthcoming. | | 50,000 | 50,000 | |
| 18 | 100% ownership - WV Country Club, Inc., Value estimated. Appraisal forthcoming. | | 1,000 | 1,000 | |
| 19 | 100% ownership - GFT Management & Consulting, Inc. Value estimated. Appraisal forthcoming. | | 10,000 | 10,000 | |
| 20 | 50% ownership - Jacmak LLC Value estimated. Appraisal forthcoming. | | 1,000 | 1,000 | |
| 21 | 100% ownership - Mia Luna, Inc. Value estimated. Appraisal forthcoming. | | 1,000 | 1,000 | |
| 22 | 18,000 shares - Sirius XM Radio Inc. common. CUSIP 82975VAUO | | 50,220 | | 50,220 |

**SCHEDULE C**

| No. | Description | | | |
|---|---|---|---|---|
| 1 | Cash on hand | $ | 20,000 | 20,000 |
| 2 | Nevada State Bank-230 Las Vegas Blvd South, Las Vegas, NV checking account | | 1,136 | 1,136 |
| 3 | Bank of North Las Vegas - 6385 Simmons St., North Las Vegas. NV checking account. | | 351 | 351 |
| 4 | Wells Fargo Bank - 1700 East Charleston Ave., Las Vegas, NV | | 1,041 | 1,041 |

| | | | | | |
|---|---|---|---|---|---|
| 5 | Note receivable-James I Dent and Willye Dent, 17817 Simms Road, Odessa FL, 33556, The note is dated September 16, 2011, payable monthly, interest only, with interest computed at 5.25% per annum. The note matures September 14, 2018 and is secured by real estate located in Hillsborough County, FL. | | 400,000 | | 400,000 int.only |
| 6 | Accrued interest on Note receivable from James I Dent and Willye M Dent. $400,000 @5.25% per annum from November 15, 2012 to December 1, 2012, or 17 days. | | 978 | 978 | |
| | **SCHEDULE F** | | | | |
| 1 | 31 Work and collectible vehicles known as the Circle G Ranch Automobile Collection, Value per appraisal attached as Exhibit F-1 | | | | |
| 2 | Contents, 2200 Waldman Avenue, Las Vegas, NV. Value per appraisal attached as Exhibit F2 | $ | 1,031,455 | 1,031,455 | |
| 3 | Contents, 4205 Gordon Avenue, Ft. Lauderdale, FL. Appraisal forthcoming. | | 85,047 | | 85,047 |
| 4 | Contents, 760 Piedmont Avenue, Atlanta, GA. Appraisal forthcoming. | | 75,000 | | 75,000 |
| 5 | Cash bond established on appeal of judgement in the Nevada Supreme Court. On May 13, 2019 | | 75,000 | 75,000 | |
| 6 | Accrued interest on cash bond - item F5 from April 21,2011 through December 1, 2012 | | 2,227,626 | 2,227,626 | |
| 7 | Gun Collection, Jewelry and other personal items - appraisals forthcoming. | | 188,401 | 188,401 | |
| 8 | 1.1192569% interest in Dominium Elwood Villas, L.P. - 2905 Northwest Blvd., ste 150, Plymouth MN. Estimated value. | | 120,000 | 120,000 | |
| 9 | 2007 Gift tax paid for which credit is being allowed. See Schedule G. | | | | |
| 10 | 100% ownership in Hazeleyes LLC - (a disregarded entity) value estimated, appraisal forthcoming. | | 655,700 | 491,775 | 163,925 |
| 11 | 100% ownership - New International Properties, LLC., 713 East Ogden st., Las vegas, NV. The only asset is real estate subject to a mortgage. Value of the real estate is reflected on Schedule A7 and A8. Liability is reflected on Schedule G2. | | 5,000 | 5,000 | |
| 12 | 100% ownership - Jack E Galardi, LLC., The only assets are real estate subject to mortgages. Values of the real estate are reflected on Schedule A9, A11, A12, and A21. Mortgages are reflected on Schedule K9 and K10 | | | | |
| 13 | 100% ownership - Walleye, LLC, The only asset is real estate subject to a mortgage. The value of the real estate is reflected on Schedule A31. The mortgage is reflected on Schedule K | | | | |
| | **SCHEDULE G** | | | | |
| 1 | House and lot-1245 Rancho Dr, Las Vegas, NV, and more specifically Parcel map, pg 28 & part NW4 sec 04 21 61. Property is titled in the name of Jeg LV Qual Personal Res Trust. Value per appraisal attached as Exhibit G2-1 | | | | |
| 2 | House and lot-2211 Edgewood Ave, Las Vegas, NV more specifically Parcel map File 31, page 28, Lot 1. Value per appraisal attached as Exhibit G2-2 | $ | 2,000,000 | | 2,000,000 |
| 3 | Vacant land-Hwy 42 South, Flovilla GA and more specifically LL33,34 of the 4th LD, cont. 51.71 acres, See Deed Book 638-160. Deeded to JEG FL Qualified Personal Residence Trust, shown on apprasal as owned by Circle G Holdings, LLC. Value per appraisal attached as Exhibit G2-3 | | 330,000 | 330,000 | |
| 4 | Vacant land-Hwy 42 South, Flovilla GA and more specifically LL33,34 of the 4th LD, cont. 30 acres. See Deed Book 434-524. Deeded to JEG FL Qualified Personal Residence Trust. Shown on appraisal as owned by Circle G Holdings, LLC. Value per appraisal attached as Exhibit G2-4 | | 101,000 | 101,000 | |
| 5 | House and lot-Highway 42 S, Flovilla, GA and more specifically LL33,34,35,56,63,64 of the 4th LD, cont. 109.364 acres, Tract A & D. See Deed Book 638-160. Deeded to JEG FL Qualified Personal Residence Trust, shown on appraisal as titled in the name of Circle G Holdings. | | 79,000 | 79,000 | |
| | | | 2,450,000 | 2,450,000 | |

**SCHEDULE J**

| | | | | | |
|---|---|---|---|---|---|
| 1 | West Memorials 2481 Brood Ave., Memphis, TN 38112 | $ | (509,013) | (509,013) | |
| 2 | Horticulture Consultation and Desig | | (78,725) | (78,725) | |
| 3 | Wrights Appraisals, 211 Theall St, Sonora CA, - Real Estate appraisal. | | (750) | (750) | |
| 4 | Auto Appraisal Network, Inc. 19 Spectrum Pointe Dr, #605 Lake Forest, CA 92630 - Vehicle appraisals | | (3,100) | (3,100) | |
| 5 | Oracle Real Estate Services, Inc. 3544 Haberdham St., Tucker, GA 30084 - Real estate appraisals | | (14,050) | (14,050) | |
| 6 | David Arenaz CAGA International Estate Auctions 900 Las Vegas Blvd S., Las Vegas NV 89101. Personal property appraisal | | (760) | (760) | |
| 7 | Landauer Valuation & Advisory 1551 N Tustin Ave., Santa Ana, CA - Real estate appraisals | | (20,500) | (20,500) | |
| 8 | Pritchett, Ball & Wise, Inc. 2295 Parklake Dr, Atlanta GA 30345 - Real estate appraisals | | (3,000) | (3,000) | |
| 9 | Casey Dean Eisner 34 Mutiny Place, Key Largo, FL 33037 - Real estate appraisal. | | (800) | (800) | |
| 10 | Dover Realty 464 W 3rd St, Jackson, GA 30233 Real estate appraisals | | (5,100) | (5,100) | |
| 11 | Bloom Sugarman Everett LLP 977 Ponce De Leon Ave., Atlanta, GA-Real estate appraisal | | (12,000) | (12,000) | |
| 12 | Balsiero & Associates Inc PO Box 10725 Tampa, FL 33624 Real Estate appraisal | | (1,800) | (1,800) | |
| | **SCHEDULE K - Debts of the Decedent** | | | | |
| 1 | United States Treasury - 2012 income tax liability-estimated | $ | (2,000,000) | (2,000,000) | |
| 2 | United States Treasury-2011 amended Federal Income Tax Return | | (508,692) | (508,692) | |
| 3 | Accured interest and penalty on 2011 amended Federal Income Tax Return -estimated | | (12,041) | (12,041) | |
| 4 | United States Treasury-2010 amended Federal income Tax return | | (407,468) | (407,468) | |
| 5 | Accrued interest and penalty on 2010 amended Federal Income Tax return -estimated | | (60,000) | (60,000) | |
| 6 | State of Georgia-2012 State Income Tax return -estimated | | (120,000) | (120,000) | |
| 7 | TEPC loan re: Florida Department of Taxation lein against item A25 | | (59,743) | (59,743) | |
| 8 | Property taxes due on item A25 | | (57,812) | (57,812) | |
| 9 | Judgement payable to Naples Polaris LLC under appeal as of December 1, 2012. Posted cash bond is shown at item F5. | | (2,227,626) | (2,227,626) | |
| 10 | Accrued interest on judgment from April 21, 2011 through December 1, 2012 | | (188,401) | (188,401) | |
| 11 | Judgement payable to Abramovitz Investment Properties LLC under appeal in the Superior Court of the State of Arizona in and for County of Maricopa as of date of decedents death. | | (3,500,000) | (3,500,000) | |
| 12 | Loan payable MBIG, Inc. The debt was incurred in 2010 and is noninterest bearing. | | (308,638) | (308,638) | |
| 13 | EstateTax Payable on Form 706 | | (16,586,905) | (16,586,905) | |
| 14 | Loan payable to Terri Galardi - Insurance Proceeds to Satisfy Tax Obligations | | (2,000,000) | (2,000,000) | |
| | **SCHEDULE K - Mortgages and Liens** | | | | |
| 1 | CITI Mortgage - Original loan was $1,805,000. Interest is computed at 5.3% per annum. Secured by item G2 | $ | (1,330,451) | (1,330,451) | |
| 2 | Sitis Companies - Original loan was $1,200,000. Interest is 8.5% per annum Secured by item A7 (CHEETAH's loan) | | (796,148) | (796,148) | |
| 3 | United Western Mortgage - Original loan was $2,000,000, interest is 8.3% per annum. Secured by item A-24 | | (561,093) | (561,093) | |
| 4 | Wachovia Bank - Original loan was $980,000. Interest is 7.5% per annum. Secured by item G12. | | (570,973) | (570,973) | |
| 5 | Harrington State Bank - Original loan was $500,000. Interest is 5.5% per annum. Secured by item A18. | | (397,582) | (397,582) | sold |
| 6 | H Earl. and Phyllis J Burcett - Original loan was $400,000. Interest is 8% per annum. Secured by item A29 | | (38,657) | (38,657) | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7 | James E Hammock - Original loan was $400,000. Interest is 6% per annum. Secured by item A27. | (337,583) | (337,583) | | | | |
| 8 | Chase Mortgage - Original loan was $440,000. Interest is 6.7% per annum. Secured by item A10. | (391,549) | (391,549) | | sold | | |
| 9 | TransCapital Bank - Original loan was $2,600,000. Interest is 8.5% per annum. Secured by item A21. | (2,450,381) | (2,450,381) | | | | |
| 10 | TransCapital Bank - Original loan was $1,200,000. Interest is at 6% per annum Secured by item A21 | (1,142,413) | (1,142,413) | | | | |
| 11 | InterAmerican Bank - Original loan was $2,000,000. Interest is 9.2% per annum. Secured by item A25 (GOLD RUSH) | (1,362,863) | (1,962,863) | | sold | | |
| 12 | TransCapital Bank - Original loan was $4,000,000. Interest is 7.5% per annum. Secured by item G3 | (3,411,325) | | (3,411,325) | | | |
| 13 | Business First Bank Secured by item A33 | (1,607,829) | (1,607,829) | | | | |
| 14 | Tumlin Enterprises Secured by item A30 | (993,045) | (993,045) | | | | |
| 15 | Key Bank - secured by item A22 | (576,029) | (576,029) | | | | |
| 16 | Wells Fargo Bank - Secured by item A3 | (692,830) | (692,830) | | | | |
| **Specific Bequests** | | | | | | | |
| 1 | Individual Bequests Per Jack Galardi Trust Instrument | (1,165,000) | (1,165,000) | | | | |
| | Remove Gift tax paid | (655,700) | (655,700) | | | | |
| | Gun collection to mike | (120,000) | (120,000) | | | | |
| | Loan payable from Terri Galardi (Cheetahs Mortgage) | | (1,688,742) | 1,688,742 | | | |
| | Gift tax paid by teri owed to teri | (280,000) | (280,000) | | | | |
| | **TOTAL** | $ 26,984,436 | $ 20,238,327 | $ 6,746,109 | | check<br>$ 26,984,436 | check<br>$ - |
| | TARGET | | 20,238,327 | 6,746,109 | | | |
| | OVER/UNDER TARGET | | - | - | | | |

I, the undersigned, Trustee of the JEG Family Trust, approve and adopt the above Trust Allocations, effective 12/1/2012

[signature] 11-7-14

Teri G. Galardi, Trustee of the JEG Family Trust, and Teri and Jack Jr. Sub Trusts. Date

# "EXHIBIT B"

Inst #: 201209190001310
Fees: $34.00
N/C Fee: $0.00
09/19/2012 10:52:16 AM
Receipt #: 1312353
Requestor:
NEVADA TITLE LAS VEGAS
Recorded By: MSH Pgs: 18
DEBBIE CONWAY
CLARK COUNTY RECORDER

I the undersigned hereby affirm that this document submitted for recording does not contain any personal information.

Signature Signature

Senior Vice President
Title

08-21-2012
Date

12-07-0285-JKH

Assessor Parcel No(s): 162-04-102-007 and 162-04-102-002

**RECORDATION REQUESTED BY:**
**VALLEY BANK OF NEVADA, Main Office, 6385 Simmons Street, North Las Vegas, NV 89031**

**WHEN RECORDED MAIL TO:**
**VALLEY BANK OF NEVADA, Main Office, 6385 Simmons Street, North Las Vegas, NV 89031**

**SEND TAX NOTICES TO:**
**VALLEY BANK OF NEVADA, Main Office, 6385 Simmons Street, North Las Vegas, NV 89031**

**FOR RECORDER'S USE ONLY**

# DEED OF TRUST

**THIS DEED OF TRUST is dated August 21, 2012, among Teri Gale Galardi, not personally but as Trustee on behalf of The JEG LV Qualified Personal Residence Trust dated June 4, 2007 ("Grantor"); VALLEY BANK OF NEVADA, whose address is Main Office, 6385 Simmons Street, North Las Vegas, NV 89031 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Nevada Title Company, whose address is 2500 N. Buffalo Dr., Ste. 150, Las Vegas, NV 89128 (referred to below as "Trustee").**

**CONVEYANCE AND GRANT. For valuable consideration, Grantor irrevocably grants, bargains, sells and conveys to Trustee with power of sale for the benefit of Lender as Beneficiary** all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property") located in Clark County, State of Nevada:**

**See EXHIBIT "A", which is attached to this Deed of Trust and made a part of this Deed of**

**Trust as if fully set forth herein.**

**The Real Property or its address is commonly known as 1245 S. Rancho Drive and 2211 Edgewood Avenue, Las Veges, NV 89102. The Real Property tax identification number is 162-04-102-007 and 162-04-102-002.**

Grantor presently, absolutely, and irrevocably assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS INCLUDING FUTURE ADVANCES AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (c) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Borrower shall pay to Lender all Indebtedness secured by this Deed of Trust as it becomes due, and Borrower and Grantor shall perform all their respective obligations under the Note, this Deed of Trust, and the Related Documents.

**STATUTORY COVENANTS.** The following Statutory Covenants are hereby adopted and made a part of this Deed of Trust: Covenants Nos. 1, 3, 4, 5, 6, 7 and 8 of N.R.S. 107.030. For Covenant 4, upon default, including failure to pay upon final maturity, the interest rate on the Note shall be increased by adding a 6.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law. The percent of counsel fees under Covenant No. 7 shall be ten percent(10%). Except for Covenants Nos. 6, 7, and 8, to the extent any terms of this Deed of Trust are inconsistent with the Statutory Covenants the terms of this Deed of Trust shall control. Covenants 6, 7, and 8 shall control over the express terms of any inconsistent terms of this Deed of Trust.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that

Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal,

clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of

payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds 50000.00. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds 50000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days

after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such

instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation. Grantor waives any legal or equitable interest in the net proceeds and any right to require any apportionment of the net proceeds of the award. Grantor agrees that Lender is entitled to apply the award in accordance with this paragraph without demonstrating that its security has been impaired.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding

paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Deed of Trust or any of the Related Documents.

**Default on Subordinate Indebtedness.** Default by Grantor under any subordinate obligation or instrument securing any subordinate obligation or commencement of any suit or other action to foreclose any subordinate lien on the Property.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of the Trust, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the

Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Borrower would be required to pay.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor to take possession of and manage the Property, and, whether or not Lender takes possession, collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over

and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Notices given by Lender or Trustee under the real property foreclosure proceedings shall be deemed reasonable. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property. The power of sale under this Deed of Trust shall not be exhausted by any one or more sales (or attempts to sell) as to all or any portion of the Real Property remaining unsold, but shall continue unimpaired until all of the Real Property has been sold by exercise of the power of sale and all Indebtedness has been paid in full.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any

court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law. Fees and expenses shall include attorneys' fees that Lender, Trustee, or both incur, if either or both are made parties to any action to enjoin foreclosure or to any legal proceeding that Grantor institutes. The fees and expenses are secured by this Deed of Trust and are recoverable from the Property.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee or Trustees to any Trustee under this Deed of Trust by an instrument executed and acknowledged by Lender, which shall be conclusive proof of the proper appointment of such substituted Trustee or Trustees. Upon the recording of such executed and acknowledged instrument in the office of the recorder of Clark County, State of Nevada, the successor trustee or trustees, without conveyance of the Property, shall succeed to, and be vested with, all the title, powers, interests, duties and trusts vested in or conferred upon the Trustee in this Deed of Trust and by applicable law. If there be more than one Trustee, either may act alone and execute the trusts upon the request of Lender, and all of the

Trustee's acts thereunder shall be deemed to be the acts of all Trustees, and the recital in any conveyance executed by such sole Trustee of such request shall be conclusive evidence thereof, and of the authority of such sole Trustee to act. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with eny other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This **Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Nevada without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Nevada.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Clark County, State of Nevada. **(Initial Here ____________ )**

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Deed of Trust shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in

the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Nevada as to all Indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means VALLEY BANK OF NEVADA, and its successors and assigns.

**Borrower.** The word "Borrower" means Jack E. Galardi and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Grantor.** The word "Grantor" means The JEG LV Qualified Personal Residence Trust dated June 4, 2007.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means VALLEY BANK OF NEVADA, its successors and assigns.

**Note.** The word "Note" means the promissory note dated August 21, 2012, **in the original principal amount of $750,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, mobile homes, manufactured homes or modular homes which have not been legally acceded to the real property in accordance with Nevada law, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to or used in the operation of the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**DEED OF TRUST**
**(Continued)**

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Nevada Title Company, whose address is 2500 N. Buffalo Dr., Ste. 150, Las Vegas, NV 89128 and any substitute or successor trustees.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.**

**GRANTOR:**

**THE JEG LV QUALIFIED PERSONAL RESIDENCE TRUST DATED JUNE 4, 2007**

**By:** ______________________________
**Teri Gale Galardi, Trustee of The JEG LV Qualified Personal Residence Trust dated June 4, 2007**

Teri Gale Galardi, Trustee of The JEG LV Qualified

**EXHIBIT "A"**
**LEGAL DESCRIPTION**

**PARCEL I:**

THAT PORTION OF THE NORTHWEST QUARTER (NW ¼) OF THE
NORTHWEST QUARTER (NW ¼) OF SECTION 4, TOWNSHIP 21 SOUTH, RANGE
61 EAST, M.D.B.&M., DESCRIBED AS FOLLOWS:

LOT ONE (1) AS SHOWN BY MAP THEREOF ON FILE 31 OF PARCEL MAPS,
PAGE 28, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY,
NEVADA.

**PARCEL II:**

THAT PORTION OF THE SOUTH HALF (S ½) OF THE NORTHWEST QUARTER
(NW ¼) OF THE NORTHWEST QUARTER (NW ¼) OF SECTION 4, TOWNSHIP 21
SOUTH, RANGE 61 EAST, M.D.B. & M., DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEASTERLY CORNER OF LOT 2, PARCEL MAP,
FILE 31, PAGE 28, RECORDED IN THE OFFICE OF THE COUNTY RECORDER
OF CLARK COUNTY, NEVADA, SAID POINT BEING ON NORTHERLY RIGHT
OF WAY LINE OF WALDMAN AVENUE (60' WIDE);
THENCE SOUTH 89°41'45" WEST ALONG SAID NORTHERLY RIGHT OF WAY
LINE A DISTANCE OF 429.56 FEET TO A POINT ON THE EASTERLY RIGHT OF
WAY LINE OF RANCHO ROAD (60' WIDE), SAID POINT ALSO BEING ON
WESTERLY LINE OF AFOREMENTIONED SECTION 4;
THENCE NORTH 1°2'20" EAST ALONG SAID EASTERLY RIGHT OF WAY LINE
OF RANCHO ROAD AND SAID WESTERLY SECTION LINE A DISTANCE OF
127.05 FEET;
THENCE NORTH 89°41'45" EAST A DISTANCE OF 212.94 FEET;
THENCE NORTH 2°35'24" EAST A DISTANCE OF 32.81 FEET;
THENCE DUE EAST A DISTANCE OF 220 FEET;
THENCE SOUTH 2°35'24" WEST A DISTANCE OF 158.82 FEET TO THE TRUE
POINT OF BEGINNING.

EXCEPTING THEREFROM THE WEST TEN (10.00) FEET AND THAT CERTAIN
SPANDREL AREA AS AWARDED TO THE CITY OF LAS VEGAS BY THAT
CERTAIN FINAL ORDER OF CONDEMNATION RECORDED MARCH 16, 1987 IN
BOOK 870316 OF OFFICIAL RECORDS AS INSTRUMENT NO. 00666.

## TRUST ACKNOWLEDGMENT

STATE OF Nevada )
) SS
COUNTY OF Clark )

This instrument was acknowledged before me on Sept 10, 2012 by **Teri Gale Galardi, Trustee of The JEG LV Qualified Personal Residence Trust dated June 4, 2007,** as designated trustee of **The JEG LV Qualified Personal Residence Trust dated June 4, 2007.**

EMELITA P. SY
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 8-5-16
Certificate No: 92-1357-1

(Seal, if any) Emelita P.SY
Exp. 8-5-16
Cert No. 92-1357-1

Emelita P. Sy
(Signature of notarial officer)

Notary Public in and for State of Nevada

## REQUEST FOR FULL RECONVEYANCE

(To be used only when obligations have been paid in full)

To: ______________________, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

______________________.

Date: ______________________ Beneficiary: ______________________

By: ______________________

Its: ______________________

# "EXHIBIT C"

5114001351 JG

APN 162-04-102-007

25.

20030613
.02292

When recorded return to:
METROCITI MORTGAGE LLC
16030 VENTURA BLVD, 4TH FLOOR
ENCINO, CALIFORNIA 91436
Loan Number 00000439

MAIL TAX STATEMENTS TO:

(9)

State of Arizona ——— Space Above This Line For Recording Data

# DEED OF TRUST
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is JUNE 6, 2003 and the parties, their addresses and tax identification numbers, if required, are as follows:

GRANTOR: JACK E GALARDI AN UNMARRIED MAN

☐ If checked, refer to the attached Addendum incorporated herein, for additional Grantors, their signatures and acknowledgments.

TRUSTEE: FIDELITY NATIONAL LOAN PORTFOLIO SOLUTIONS, A CALIFORNIA CORPORATION
TRUSTEE ADDRESS: 2520 N. REDHILL AVE. STE. 120, SANTA ANA, CALIFORNIA 92705

LENDER: METROCITI MORTGAGE LLC, A CALIFORNIA CORPORATION
15030 N. HAYDEN ROAD STE 120, SCOTTSDALE, ARIZONA, 85260

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N. #: 162-04-102-007

The property is located in CLARK (County) at 1245 SOUTH RANCHO DRIVE

(Address), LAS VEGAS (City), Arizona 89102 (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property"). Provided, that if Trustor shall pay in full all amounts owed under the Secured Debt at the time and in the manner provided therein, shall pay any and all other sums payable under this Deed of Trust, and shall perform as and when due all of the obligations of the Secured Debt, then, in such case, all right, title, and interest of Lender and Trustee in the Property shall terminate and become void, and Trustee, upon receipt of the written request of Lender, shall reconvey, without warranty, the Property, and the grantees in such reconveyance may be described as "the person or persons legally entitled thereto."

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ 250,000.00 . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

JEG

20030613
.02292

4. SECURED DEBT AND FUTURE ADVANCES. The term "Secured Debt" is defined as follows:

A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. (When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)

B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender executed after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. PAYMENTS. Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. WARRANTY OF TITLE. Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

7. PRIOR SECURITY INTERESTS. With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:

A. To make all payments when due and to perform or comply with all covenants.

B. To promptly deliver to Lender any notices that Grantor receives from the holder.

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. CLAIMS AGAINST TITLE. Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

9. DUE ON SALE OR ENCUMBRANCE. Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION. Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

20030613
.02292

11. AUTHORITY TO PERFORM. If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. ASSIGNMENT OF LEASES AND RENTS. Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument.

Grantor agrees that this assignment is immediately effective between the parties to this assignment and effective as to third parties on Grantor's default when Lender takes actual possession of the Property, when a receiver is appointed, or as the law otherwise provides. Grantor agrees that Lender or Trustee may take actual possession of the property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Grantor of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Grantor warrants that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

13. LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS. Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. DEFAULT. Grantor will be in default if any party obligated on the Secured Debt fails to make payment when due. Grantor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. REMEDIES ON DEFAULT. In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property.

If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser. Trustee shall apply the proceeds of the sale in the following order: (1) to the costs and expenses of exercising the power of sale and the sale, including the payment of Trustee's fees, and reasonable attorney's fees actually incurred; (2) to the payment of the contract or contracts secured by this Deed of Trust; (3) to the payment of all other obligations provided in or secured by this Deed of Trust; (4) to the junior lienholders or encumbrancers in order of their priority. After payment in full to all junior lienholders and encumbrancers payment shall be made to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS. Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or

20030613 .02292

otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Grantor agrees to pay for any recordation costs of such release.

17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES. As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance, and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Grantor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property

B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.

D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. CONDEMNATION. Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. INSURANCE. Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. ESCROW FOR TAXES AND INSURANCE. Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS. Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

22. JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND. All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the

20030613
.02292

Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

23. APPLICABLE LAW; SEVERABILITY; INTERPRETATION. This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. SUCCESSOR TRUSTEE. Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee by an instrument recorded in the county in which this Deed of Trust is recorded. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon the Trustee by this Deed of Trust and applicable law.

25. NOTICE. Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

26. WAIVERS. Except to the extent prohibited by law, Grantor waives any rights of appraisement relating to the Property.

27. OTHER TERMS. If checked, the following are applicable to this Security Instrument:

- ☒ Line of Credit. The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.
- ☐ Construction Loan. This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.
- ☐ Fixture Filing. Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.
- ☐ Riders. The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
  ☐ Condominium Rider ☐ Planned Unit Development Rider ☒ Other Home Equity Access Line Rider
- ☐ Additional Terms.

SIGNATURES: By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

| (Signature) JACK E GALARDI (Date) | (Signature) (Date) |
|---|---|
| (Signature) (Date) | (Signature) (Date) |
| (Signature) (Date) | (Signature) (Date) |

20030613
.02292

ACKNOWLEDGMENT:

STATE OF NEVADA , COUNTY OF CLARK } ss.

(Individual) This instrument was acknowledged before me this 6th day of June, 2003
by JACK E. Dalgren
My commission expires:
(Seal)

Aug 5, 2004 EMELITA P. SY

Emelita P. Sy
(Notary Public)

EMELITA P. SY
Notary Public Nevada
No. 92-1357-1
My appt. exp. Aug. 5, 2004

**REQUEST FOR RECONVEYANCE**
(Not to be completed until paid in full)

**TO TRUSTEE:**
The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel this Deed of Trust, which is delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

(Authorized Lender Signature) Date

20030613
.02292

Order No. : 5114001351-JH

EXHIBIT "A"

The land referred to is situated in the State of Nevada, County of Clark, City
of Las Vegas, and is described as follows:

That portion of the South Half (S 1/2) of the Northwest Quarter (NW 1/4) of the
Northwest Quarter (NW 1/4) of Section 4, Township 21 South, Range 61 East,
M.D.B. & M., described as follows:

BEGINNING at the Southeasterly corner of Lot 2, Parcel Map, File 31, Page 28,
recorded in the Office of the County Recorder of Clark County, Nevada, said
point being on Northerly right of way line of Waldman Avenue (60'wide);
THENCE South 89°41'45" West along said Northerly right of way line a distance of
429.56 feet to a point on the Easterly right of way line of Rancho Road
(60'wide), said point also being on Westerly line of aforementioned Section 4;
THENCE North 1°2'20" East along said Easterly right of way line of Rancho Road
and said Westerly Section line a distance of 127.05 feet;
THENCE North 89°41'45" East a distance of 212.94 feet;
THENCE North 2°35'24" East a distance of 32.81 feet;
THENCE due East a distance of 220 feet;
THENCE South 2°35'24" West a distance of 158.82 feet to the TRUE POINT OF
BEGINNING.

EXCEPTING THEREFROM the West ten (10.00) feet and that certain spandrel area as
awarded to the City of Las Vegas by that certain Final Order of Condemnation
recorded March 16, 1987 in Book 870316 of Official Records as Instrument No.
00666.

20030613
.02292

Loan Number 00000439

# HOME EQUITY ACCESS LINE RIDER

(Open end credit with ☐ fixed rate ☒ variable rate interest)

This Equity Line Rider is dated JUNE 6, 2003 and is an amendment to the Mortgage or Deed of Trust ("Mortgage") of the same date given by the undersigned, JACK E GALARDI

("Borrower") to secure Borrower's Equity Line Agreement with METROCITI MORTGAGE LLC

("Lender") of the same date covering the property described in the Mortgage and located at:
1245 SOUTH RANCHO DRIVE, LAS VEGAS, NEVADA 89102

In addition to the covenants and agreements made in the Mortgage, Borrower and Lender further covenant and agree as follows:

1. The word "Note", as used in the Mortgage and this Rider, refers to the Home Equity Access Line Agreement.

2. The Note evidences an open end revolving line of credit agreement between Borrower and Lender under which future advances may be made. The amount stated in the Mortgage as the principal sum of the indebtedness is the credit limit for the line of credit. All advances made at any time by Lender in accordance with the terms of the Note, and all interest on the advances, shall be secured by the Mortgage. However, at no time shall the principal amount of the indebtedness secured by the Mortgage, not including sums advanced in accordance with the Mortgage to protect the security of the Mortgage, exceed the stated credit limit for the line of credit.

3. The Note provides for:
   ☐ a fixed rate of interest expressed as a daily periodic rate of %. This corresponds to an annual percentage rate of %.
   ☒ a variable rate of interest expressed as a daily periodic rate equal to 1/365 of an actual rate of 1.050 % plus the "Index Rate". The daily periodic rate may increase if the highest prime rate published in the Wall Street Journal "Money Rates" table (the "Index Rate") increases. The initial daily periodic rate is 0.0145 %, which corresponds to an initial annual percentage rate of 5.300 %. The annual percentage rate will never be more than 18.000 %. The daily periodic rate will be adjusted on the day the Index Rate changes. An increase in the daily periodic rate may increase the monthly payment due.

Hedrl wf

20030613
.02292

NOTICE: THIS MORTGAGE SECURES CREDIT IN THE AMOUNT OF $250,000.00 . LOANS AND ADVANCES UP TO THIS AMOUNT, TOGETHER WITH INTEREST, ARE SENIOR TO INDEBTEDNESS TO OTHER CREDITORS UNDER SUBSEQUENTLY RECORDED OR FILED MORTGAGES AND LIENS.

Jack E Galardi 4/4/03
JACK E GALARDI Date

Date

Date

Date

Date

Date

***** CLARK COUNTY, NEVADA *****
FRANCES DEANE, RECORDER
RECORDED AT REQUEST OF: OLD REPUBLIC TITLE COMPANY O
06-13-2003 13:52 ADF PAGE COUNT: 9
OFFICIAL RECORDS
BOOK/INSTR:20030613-02292 FEE: 22.00
RPTT: .00

# TAB 6

Electronically Filed
9/27/2019 11:55 AM
Steven D. Grierson
CLERK OF THE COURT

24

ORDR

SHIRLEY A. DERKE, ESQ.
Nevada Bar No. 2686
627 S. Seventh St.
Las Vegas, NV 89101
702-386-6800
shirley@Derke.lvcoxmail.com
Attorney for JACK E. GALARDI, JR.

DISTRICT COURT

CLARK COUNTY, NEVADA

* * *

In the Matter of the

JEG TRUST - JACK GALARDI JR. SUB-TRUST

Case No. P-18-096792-T
Dept. PC1
DATE: September 27, 2019
TIME: 9:30 a.m.

**STIPULATION AND ORDER RE: PETITION FOR REMOVAL OF TERI GALARDI, SUCCESSOR TRUSTEE**

IT IS HEREBY STIPULATED AND AGREED by and between the parties hereto, through their respective counsel as follows:

1. TERI GALE GALARDI has resigned as Successor Trustee of the JACK E. GALARDI, JR. SUB-TRUST created under the terms of the JACK GALARDI, SR.'s revocable living trust dated November 1, 2006 and amended and restated on August 16, 2012. (See resignation attached hereto as Exhibit A)

2. DANIEL GEIGER is named in Section 7.1 of said trust as Successor Co-Trustee upon the death or incapacity of TERI GALE GALARDI. DANIEL GEIGER is refusing to act as Successor Trustee of the JACK E. GALARDI, JR. SUB-TRUST created under the terms of the JACK GALARDI, SR.'s revocable living trust dated November 1, 2006 and amended and restated on August 16, 2012. (See Declination and refusal to act attached hereto as Exhibit B).

3. EMELITA P. SY is named in Section 7.1 of said trust as Successor Co-Trustee upon the death or incapacity of TERI GALE GALARDI. EMELITA P. SY has accepted the position of Successor Trustee of the JACK E. GALARDI, JR. SUB-TRUST created under the terms of the JACK GALARDI, SR.'s revocable living trust dated November 1, 2006 and amended and restated on August 16, 2012. (See Acceptance to act attached hereto as Exhibit C).

4. EMELITA P. SY, as Successor Trustee of the JACK E. GALARDI, JR. SUB-TRUST created under the terms of the JACK GALARDI, SR.'s revocable living trust dated November 1,

2006 and amended and restated on August 16, 2012 will not be held accountable for any acts of the prior trustee(s).

5. JACK E. GALARDI, JR., the sole adult beneficiary of the JACK E. GALARDI, JR. SUB-TRUST created under the terms of the JACK GALARDI, SR.'s revocable living trust dated November 1, 2006 and amended and restated on August 16, 2012 waives any right to demand EMELITA P. SY, as Successor Trustee to audit or investigate the accounts or administration of the prior trustee as stated in Article 7.3 of said trust.

6. JACK E. GALARDI, JR. does not waive his individual right as a beneficiary to audit or investigate the accounts or administration of the prior trustee.

DATED September 20, 2019

SHIRLEY A. DERKE, ESQ.
Attorney for JACK GALARDI, JR.
Bar No. 2686
627 S. Seventh St.
Las Vegas, NV 89101

DATED September __, 2019

MICHAEL D. RAWLINS, ESQ.
Bar No. 5467
SMITH & SHAPIRO, PLLC
Attorney for TERI GALE GALARDI, Succ Trustee
3333 E. Serene Ave., Ste. 130
Henderson, NV 89074

**ORDER**

IT IS HEREBY ORDERED AS FOLLOWS:

A. TERI GALE GALARDI is hereby removed as Successor Trustee of the JACK E. GALARDI, JR. SUB-TRUST created under the terms of the JACK GALARDI, SR.'s revocable living trust dated November 1, 2006 and amended and restated on August 16, 2012.

B. EMELITA P. SY is confirmed as Successor Trustee of the JACK E. GALARDI, JR. SUB-TRUST created under the terms of the JACK GALARDI, SR.'s revocable living trust dated November 1, 2006 and amended and restated on August 16, 2012.

C. This court will continue to retain jurisdiction over this trust, as well as over TERI GALE GALARDI for any actions taken by her when acting as Successor Trustee.

DATED this 27 day of September 2019.

DISTRICT COURT JUDGE

DocuSign Envelope ID: 00B5D0A6-DB06-4305-BE23-A405C85AD0E0

**STATEMENT OF NAMED SUCCESSOR TRUSTEE DECLINATION TO ACT**

I, DANIEL GEIGER, am named in Section 7.1 of the JACK E. GALARDI, JR. SUB-TRUST created under the terms of the JACK GALARDI, SR.'s revocable living trust dated November 1, 2006 and amended and restated on August 16, 2012 to act as Successor Co-Trustee upon the death or incapacity of TERI GALE GALARDI. TERI GALE GALARDI has resigned as Successor Trustee of said trust. I decline and refuse to act as Successor Trustee of said trust.

DATED this 18 day of September 2019.

DocuSigned by:
Dan Geiger
DANIEL GEIGER

STATE OF NEVADA )
) ss:
COUNTY OF CLARK )

SUBSCRIBED and SWORN to before me on September 18, 2019

NOTARY PUBLIC

NOTARY PUBLIC
WHITNEY A. MUGAN
STATE OF NEVADA - COUNTY OF CLARK
MY APPOINTMENT EXP. JULY 8, 2022
No: 10-2511-1

## ACCEPTANCE OF SUCCESSOR TRUSTEE POSITION

I, EMELITA P. SY am named in Section 7.1 of the JACK E. GALARDI, JR. SUB-TRUST created under the terms of the JACK GALARDI, SR.'s revocable living trust dated November 1, 2006 and amended and restated on August 16, 2012 as Successor Co-Trustee upon the death or incapacity of TERI GALE GALARDI. TERI GALE GALARDI has resigned as Successor Trustee of said trust. DANIEL GEIGER, the named Co-Trustee with me, has declined and refused to act as Successor Trustee. I hereby accept the position of sole Successor Trustee of said trust, upon the condition that I am not held accountable for the actions of the prior trustee, nor will I be required to audit or investigate the actions of the prior trustee.

DATED this 18 day of September 2019.

Emelita P. Sy
EMELITA P. SY

STATE OF NEVADA )
) ss:
COUNTY OF CLARK )

SUBSCRIBED and SWORN to before me on September 18, 2019

NOTARY PUBLIC

NOTARY PUBLIC
WHITNEY A. MUGAN
STATE OF NEVADA - COUNTY OF CLARK
MY APPOINTMENT EXP. JULY 8, 2022
No: 10-2511-1

**NOTICE OF RESIGNATION AS SUCCESSOR TRUSTEE**

I, TERI GALE GALARDI am resigning as Successor Trustee of the JACK E. GALARDI, JR. SUB-TRUST created under the terms of the JACK GALARDI, SR.'s revocable living trust dated November 1, 2006 and amended and restated on August 16, 2012, effective immediately.

DATED this 18 day of September 2019.

TERI GALE GALARDI

STATE OF NEVADA )
) ss:
COUNTY OF CLARK )

SUBSCRIBED and SWORN to before me on September 18, 2019

NOTARY PUBLIC

NOTARY PUBLIC
WHITNEY A. MUGAN
STATE OF NEVADA - COUNTY OF CLARK
MY APPOINTMENT EXP. JULY 8, 2022
No: 10-2511-1

# TAB 7

Electronically Filed
1/12/2021 4:09 PM
Steven D. Grierson
CLERK OF THE COURT

PET

SHIRLEY A. DERKE, ESQ.
Nevada Bar No. 2686
627 S. Seventh St.
Las Vegas, NV 89101
702-386-6800
shirleyDerke@gmail.com
Attorney for Petitioner

DISTRICT COURT

CLARK COUNTY, NEVADA

* * *

In the Matter of the

JEG TRUST - JACK GALARDI JR. SUB-TRUST

Case No. P 18-096792-T
Dept. PC1
DATE:
TIME: 9:30 a.m.

**PETITION FOR RECOVERY OF ASSETS FROM TERI GALARDI, CO-BENEFICIARY OF THE JEG TRUST**

Comes now, the Petitioner, JACK GALARDI, JR. (hereinafter referred to as JACK, JR.), sole beneficiary of the JEG TRUST - JACK GALARDI JR. SUB-TRUST, by and through his attorney, Shirley A. Derke, Esq., who hereby moves this court for an order requiring TERI GALE GALARDI, Co-Beneficiary of the JEG TRUST (hereinafter referred to as TERI) and original acting Successor Trustee to recover assets of the JEG TRUST - JACK GALARDI JR. SUB-TRUST by alleging as follows:

**STATEMENT OF FACTS**

1. This Court has taken jurisdiction of this Sub Trust created under JACK GALARDI, SR.'s revocable living trust dated November 1, 2006 and amended and restated on August 16, 2012.

2. JACK had previously alleged in his initial petition that TERI, when acting as Successor Trustee of the JEG TRUST, made gross errors when accounting for the assets of the trust as well as when initially funding JACK's sub-trust.

3. Under the order entered on September 27, 2019 (pursuant to a stipulation entered into by the parties wherein TERI resigned as Successor Trustee) TERI's resignation was noted and this court confirmed EMILITA SY as the Successor Trustee.

4. Said stipulation and order stated that JACK "does not waive his individual right as a beneficiary to audit or investigate the accounts or administration of the prior trustee".

5. The order entered on September 27, 2019 stated "This court will continue to retain jurisdiction over this trust, as well as over TERI GALE GALARDI for any actions taken by her when acting as Successor Trustee".

6. Since September 27, 2019, counsel and accounting representatives for JACK and TERI have attempted to resolve the inaccuracies of accounting and the initial funding errors, with some agreed upon areas and some areas without any resolution. This estate has many moving parts and multiple accounting records. The Decedent held many closely-held businesses at the time of his death; real property and business investments that required liquidation during the trust administration; both income and estate tax issues that affected cash requirements, all despite the fact that the Family Trust income tax returns for the years 12/1/2012 through 11/30/15 reflected total taxable income for the three-year period in excess of $5,000,000.

**TERI FAILED TO PROPERLY INITIALLY FUND JACK'S SUB-TRUST IN ACCORDANCE WITH THE TERMS OF THE TRUST**

7. TERI presented a funding schedule for JACK's sub-trust on November 7, 2014 which allocated 25% of the total assets to the Sub-trust and the remaining 75% assets to herself, pursuant to the terms of the GARARDI TRUST as follows (Note TERI prepared this schedule based upon date of death values and said list included assets that were sold during trust administration prior to 11/7/14):

| | |
|---|---|
| 75% of Net assets to TERI | $ 20,238,327 |
| 25% of Net assets to Sub-Trust | 6,746,109 |
| Net assets available for distribution | $ 26,984,436 |

8. When looking at the bookkeeping records of the GALARDI FAMILY TRUST, as provided by TERI; the division at the November 30, 2014-distribution, reflecting the activities from the income tax records, was recorded differently as follows (See Page 4 of 57, Line 20 of Exhibit A):

| | | |
|---|---|---|
| TERI's net assets | $ 28,392,828.53 | 78% |
| JACK's Sub-trust | 7,678,342.00 | 22% |
| | $36,071,170.53 | 100% |

8. During the administration of the GALARDI FAMILY TRUST and prior to the distribution to the residual beneficiaries (TERI and Sub-Trust), it was discovered that actions taken by TERI did not benefit the Trust as a whole, but solely benefitted TERI (such as wages from closely-held entities), the division at the November 30, 2014 distribution, should be as follows:

| | | |
|---|---|---|
| TERI's net assets | $ 29,392,655.40 | 75% |
| JACK's Sub-trust | 9,797,555.13 | 25% |
| | $39,190,220.53 | 100% |

**TERI TOOK INEQUITABLE DISTRIBUTIONS DURING THE ADMINISTRATION OF THE GALARDI FAMILY TRUST PRIOR TO THE DIVISION OF ASSETS**

9. As stated above, the GALARDI FAMILY TRUST included many closely-held entities under the sole control of TERI. The books and records of each of these entities have been provided by TERI and carefully examined. JACK's examination has discovered that TERI lent monies to and from the companies and to herself; allowed officer wages to be paid to herself and her husband Michael Porter from two closely-held entities - Ponytail, Inc. and Trop, Inc.; used assets for personal purposes; dividends were taken from the entities were being in excess of her 75% equitable residual interest as well as in excess of her joint outright ownership in said entities; etc.

**TERI FAILED TO ALLOCATE ANY ESTATE TAXES TO CERTAIN ASSETS NOT INCLUDED IN THE GALARDI FAMILY TRUST AND DEDUCTED THE ENTIRE LIABILITY FROM THE RESIDUAL BENEFICIARIES SHARES**

10. This trust is governed by Nevada Law. Nevada adopted the Federal Estate Tax Apportionment Law in 1957 to equitably prorate payment of the federal estate tax among those persons interested in the estate subject to that tax and is a fundamental public policy of this state subject only to the expressed will of the testator to the contrary. NRS 150.310 states, in part, as follows:

> NRS 150.310 Proration of tax among persons interested in estate; exceptions.
> 1. If it appears upon any accounting, or in any appropriate action or proceeding, that a personal representative, trustee or other fiduciary has paid or may be required to pay an estate tax to the Federal Government under the provisions of any federal estate tax law, now existing or hereafter enacted, upon or with respect to any property required to be included in the gross estate of a

decedent under the provisions of any such law, the amount of the tax must be equitably prorated among the persons interested in the estate, whether residents or nonresidents of this State, to whom the property was, is or may be transferred or to whom any benefit accrues, except:

(a) Where a testator otherwise directs in his or her will.

(b) Where by written instrument, including, without limitation, an electronic trust, executed inter vivos direction is given for apportionment among the beneficiaries of taxes assessed upon the specific fund dealt with in the instrument.

Included in the taxable estate without taking into effect the estate taxes that should have been allocated to the non residual beneficiaries' shares:

| | | |
|---|---|---|
| A. Life insurance paid directly to Teri Galardi, Schedule D of 706 | | $2,000,000 |
| B. Specific Bequests listed in the trust & Form 706, Part 4, Line 5 | | |
| a. Kathy Holder | $300,000 | |
| b. Emelita Sy | 200,000 | |
| c. Maricar Martinez | 100,000 | |
| d. Jeffrey Stromatt | 65,000 | |
| e. Diana Pontrelli | 100,000 | |
| f. Daniel Geiger | 200,000 | |
| g. Michael Porter | 20,000 | |
| h. Daniel Purdy | 100,000 | |
| i. Charles Wright | 100,000 | 1,185,000 |
| | | $3,185,000 |

**TERI BREACHED HER FIDUCIARY DUTY TO JACK AS BENEFICIARY OF THE sub trust WHEN SELECTING ASSETS TO FUND THE TWO RESIDUAL BENEFICIARIES INTERESTS**

11. TERI funded the Sub-trust with $6,746,109 according to her initial disclosure dated 11/7/14. The Sub-trust received the following real property:

| | |
|---|---|
| House, lot and contents - 201 Navarro Isle, aka Gordon Rd., Ft. Lauderdale, FL (Form 706 Schedule A - Item 24) | $4,275,000 |
| Less secured mortgages - note this is from the quickbooks entry in the sub-trust. Form 706 Schedule K - Items 9 &10 shows the security interest as a different asset - Form 706 - Schedule A - Item 21) | <3,592,794> |
| Equity transferred (representing almost 10% of the entire trust value) | $ 682,206 |

This property was sold by the sub-trust on 10/22/15 - approximately one year after the sub-trust received ownership - for less than the outstanding mortgage, reflecting an income tax capital loss of $1,045,000 on the real property. The contents received by JACK were worthless as well. The Sub-trust lost 15% of its equity in this one transaction.

12. The Sub-trust received the Decedent's Nevada residence located at 1245 Rancho Dr., Las Vegas, NV, which has been JACK'S personal residence since his father's death. The value entered on the Sub-trust books is $2,085,047 [($2,000,000 per the date of death appraisal (Form 706, Schedule G, Item 1)] and its contents valued at $85,047 (Form 706, Schedule F, ltem 1). There was no secured mortgage assumed by the Sub-trust, even though Form 706, Schedule K indicates that this property secured a mortgage held by CITI Mortgage in the amount of $1,330,451. The distribution schedule as well as TERI's books and records shows that TERI assumed this debt, but has failed to remove the security interest held against the Sub-trust assets - improperly encumbering the sub-trust assets.

13. When TERI divided the assets, keeping all restricted assets in her 75% portion, it resulting in a disproportionate distribution. To equalize the amount to a proper 75-25 portion, TERI created an unsecured promissory note from herself to the Sub-trust in the amount $1,688,692 (Note that this represents 25% of the total assets of $6 746,109 the Sub-trust received) with an annual interest rate of 3.32% and monthly principal and interest payments to be $7,425.00. From December 1, 2014 to April 2017, TERI failed to make to mandatory monthly payment, sometimes paying more and sometimes not even paying the interest due. Demand has been made on TERI to provide security for this Note Receivable to no avail. There is no proof that the terms of the note were negotiated with JACK's independent counsel for fairness and reasonableness at the time it was created.

**TERI HAS FAILED TO DISCLOSE ALL DEBTS OF THE DECEDENT AS WELL AS ALL SECURED DEBTS AGAINST THE SUB-TRUST ASSETS**

14. TERI, when acting as Trustee of the JEG LV Qualified Personal Residence Trust dated June 4, 2007, encumbered the real property of the Decedent located at 1245 S. Rancho Drive on September 10, 2012 (within 90 days prior to the decedent's death) as indicated on the $750,000 Deed of Trust attached hereto as Exhibit B. This loan is not disclosed on the Decedent's 706 or any financial reports provided by TERI This property was used to fund JACK, JR.'s sub-trust and the lien is not reflected on JACK, JR's sub-trust general ledger.

15. TERI has also failed to disclose a prior $250,000.00 mortgage lien on the real property located at 1245 S. Rancho Drive, Las Vegas, NV as indicated in the Deed of Trust attached hereto as Exhibit C. This loan is not disclosed on the Decedent's 706 or any financial reports provided by TERI. This property was used to fund JACK, JR.'s sub-trust and the lien is not reflected on JACK, JR.'s sub-trust general ledger.

WHEREFORE, Petitioner prays that the court finds the following:

A. That this court finds that TERI GALE GALARDI as former Successor Trustee of the JACK E. GALARDI, JR. SUB-TRUST has breached her duty to JACK E. GALARDI, JR. when funding the Sub-trust herein;

B. That a judgment be entered against TERI GALE GALARDI in favor of the Sub-trust in an amount of $2,790,970.10;

C. That TERI GALE GALARDI be ordered to remove any and all secured liens against the real property located at 1245 S, Rancho Drive, Las Vegas, Nevada, whether disclosed in her accounting and/or undisclosed;

D. That TERI GALE GALARDI be ordered to provide adequate security for her Note Payable to the Sub-trust, dated and signed on November 4, 2014;

E. That TERI GALE GALARDI be ordered to pay attorney fees and costs for having to bring this action in front of the court to recover assets due the Sub-trust; and

F. And for such other and further relief as to the Court may seem just and proper in the premises.

DATED this 12th day of January 2021.

SHIRLEY A. DERKE, ESQ.

STATE OF NEVADA )
) ss:
COUNTY OF CLARK )

JACK GALARDI, JR., being first duly sworn, deposes and says:

That he is the Petitioner in the above entitled matter; that he has read the above and foregoing Petition and knows the contents thereof, and that the same is true of his own knowledge, except as to those matters therein stated on information and belief, and for those matters, he believes them to be true.

JACK GALARDI, JR.

SUBSCRIBED and SWORN to before me this 12th day of January 2021.

NOTARY PUBLIC

SHIRLEY DERKE
Notary Public, State of Nevada
No. 92-1690-1
My Appt. Exp. Dec. 16, 2024

SUBMITTED BY:

SHIRLEY A. DERKE, ESQ.
Case No. P-18-096792-T

# "EXHIBIT A"

**JACK E GALARDI SR. ESTATE TRUST**

**DATE OF DEATH: 12/01/2012**

**ANALYSIS OF JACK GALARDI JR BENEFICIAL ESTATE DIVISION**

**AS OF NOVEMBER 7, 2014, DATE OF DIVISION**

**TABLE OF CONTENTS**

| | Page |
|---|---|
| Analysis of Jack Galardi Jr. Beneficial Estate Division | 3 |
| QuickBooks Balance Sheet (Provided by Dan Geiger 08/04/2020) | 4-7 |
| Summary of Distributions (Provided by Dan Geiger 06/04/2020) | 8-9 |
| Club Wages and Distributions | 10 |
| Asset Distribution to Beneficiary at Date of Division | 11 |
| 2013 Salaries & Wages Report | 12 |
| Pages from the 2014 1120S U.S. Income Tax Return for an S Corporation – Ponytail, Inc. | 13-20 |
| Pages from the 2014 1120S U.S. Income Tax Return for an S Corporation – Trop, Inc. | 21-28 |
| Pages from the 2014 1120S U.S. Income Tax Return for an S Corporation – County Club, Inc. Goldrush Showbar | 29-35 |
| Pages from the 2014 1120S U.S. Income Tax Return for an S Corporation – LVA Management Inc. | 36-41 |
| Pages from the 2014 1120S U.S. Income Tax Return for an S Corporation – Three Women, Inc. | 42-48 |
| Pages from The Total Amendment and Restatement of the JEG Family Trust. | 49-50 |

CSW As of November 24, 2020

JACK E GALARDI SR. ESTATE TRUST
DATE OF DEATH: 12/01/2012
ANALYSIS OF JACK GALARDI JR BENEFICIAL ESTATE DIVISION
AS OF NOVEMBER 7, 2014, DATE OF DIVISION

| | A | B | C |
|---|---|---|---|
| | | JACK E GALARDI SR. ESTATE TRUST TOTAL | JACK GALARDI JR SUB-TRUST 25% BENEFICIARY |
| 1 | TOTAL JACK E GALARDI SR. ESTATE TRUST EQUITY TO BE DIVIDED PER BENEFICIAL INTEREST AS OF NOVEMBER 7, 2014, DATE OF DIVISION, BASED ON DAN GEIGER'S QUICKBOOKS (PROVIDED 08/06/2020) AT TIME OF DIVISION PRIOR TO ASSET DISTRIBUTION (PAGE 7) | $ 33,468,580.95 | |
| 2 | ADDITIONAL DISTRIBUTIONS PROVIDED BY DAN GEIGER 06/26/2020 (TERI GALARDI DISTRIBUTIONS OF $2,430,208) (JACK GALARDI JR DISTRIBUTIONS OF $159,497) (PAGE 9) | 2,430,208.00 | |
| 3 | CLUB WAGES PAID TO TERI GALARDI AND MICHAEL PORTER 2013-2014 (PAGE 10) | 791,498.00 | |
| 4 | CLUB DISTRIBUTIONS TERI GALARDI 2014 (PAGE 10) | 1,897,344.00 | |
| 5 | TOTAL JACK E GALARDI SR. ESTATE TRUST ASSETS | $ 38,587,630.95 | $ 9,646,907.74 |
| 6 | DISTRIBUTIONS 12/01/2012 TO 11/30/2014 TO BENEFICIARY PRIOR TO DATE OF DIVISION PER QUICKBOOKS AT TIME OF DIVISION PRIOR TO ASSET DISTRIBUTION (PAGE 7) | | (4,143,543.64) |
| 7 | ASSET DISTRIBUTION TO BENEFICIARY AT DATE OF DIVISION (PAGE 11) | | (2,552,897.00) |
| 8 | ADDITIONAL DISTRIBUTIONS PROVIDED BY DAN GEIGER 06/26/2020 | | |
| 9 | DISTRIBUTIONS TO JACK GALARDI JR (INCLUDED IN LINE 2) (PAGE 9) | | (159,497.00) |
| 10 | TOTAL DUE TO JACK GALARDI JR | | $ 2,790,970.10 |

Conway, Stuart & Woodbury prepared this schedule after meetings with Dan Geiger, the accountant for the successor trustee, Teri Galardi. Dan Geiger provided the books and records used by the trust adjusted to fair market value at the date of division as provided by section 9.4 of The Total Amendment and Restatement of the JEG Family Trust (Page 49-50).

9:06 AM
08/26/20
Accrual Basis

# JACK E GALARDI SR. ESTATE TRUST (JEG FAMILY TRUST)
## Balance Sheet
CSW As of November 24, 2020

As of November 30, 2014

| | A | B |
|---|---|---|
| | | Nov 30, 14 |
| 44 | **Investment Properties** | |
| 45 | IP-3920 Jonesboro Rd, Forest Pa | 650,000.00 |
| 46 | IP-425 Industrial Rd., McDonoug | 440,000.00 |
| 47 | IP-North Park Ct., Stockbridge | 504,927.00 |
| 48 | IP-1477 Overseas Hwy., Marathon | 225,000.00 |
| 49 | IP 826 Knox Chapel Rd., Social | 448,000.00 |
| 50 | IP-6220 Adamo Rd., Tampa | 5,000.00 |
| 51 | IP-10710 Walker Rd, Thonotosass | 275,000.00 |
| 52 | IP-201 Navarre Isle, Ft Lauderd | 4,200,000.00 |
| 53 | IP-Mokelumne Hill, Calaveras Co | 67,500.00 |
| 54 | IP-3700 Jonesboro Rd, Atlanta | 530,000.00 |
| 55 | IP-75 Conley Rd, Atlanta | 135,000.00 |
| 56 | IP Lot 58, Lake Hammond Dr., Na | 21,000.00 |
| 57 | IP-6.45acres, Naples | 84,000.00 |
| 58 | IP-2 gross acres | 39,000.00 |
| 59 | IP-2 parcels, Clark County | 48,000.00 |
| 60 | IP-20 acres, Moapa | 20,000.00 |
| 61 | **Total Investment Properties** | 7,692,427.00 |
| 62 | **Sirius XM Radio** | 50,220.00 |
| 63 | **C H Entities** | |
| 64 | CH-GFT Management and Consultin | 10,000.00 |
| 65 | CH-E & J Inc. | 25,000.00 |
| 66 | CH-Candy Pink | 10,000.00 |
| 67 | CH-Three Women Inc | 1,207,000.00 |
| 68 | CH-Trop, Inc. dba Pink Pony | 6,299,800.00 |
| 69 | CH-Country Club Inc dba Goldrus | 1,453,600.00 |
| 70 | CH-Ponytail, Inc. d/b/a Onyx | 4,086,900.00 |
| 71 | CH-Country Club Inc dba Masters | 2,451,600.00 |
| 72 | CH-Galardi Eagle Lakes, LLC | 2,070,000.00 |
| 73 | CH-Bella Mia-Pink Pony-Fl | 865,700.00 |
| 74 | CH-Lafuente Inc. d/b/a Cheetahs | 1,848,300.00 |
| 75 | CH-LVA Management | 1,832,100.00 |
| 76 | **Total C H Entities** | 22,160,000.00 |
| 77 | **New Investment in CH Companies** | |
| 78 | Investment in Cheetahs | 966,299.36 |
| 79 | **Total New Investment in CH Companies** | 966,299.36 |
| 80 | **Specific bequests** | |
| 81 | Work and collectible vehicles | 1,031,455.00 |
| 82 | Life Ins Policy | 2,000,000.00 |
| 83 | **Total Specific bequests** | 3,031,455.00 |
| 84 | **Total Other Assets** | 34,097,900.36 |
| 85 | **TOTAL ASSETS** | **$ 58,273,515.19** |

**JACK E GALARDI SR. ESTATE TRUST (JEG FAMILY TRUST)**
**Balance Sheet**
CSW As of November 24, 2020
**As of November 30, 2014**

| | A | B |
|---|---|---|
| | | Nov 30, 14 |
| 123 | Equity | |
| 124 | Trust Equity | 33,468,580.95 |
| 125 | | 33,468,580.95 |
| 126 | Trust Distributions | |
| 127 | Distribution of Property -Jack | (1,688,692.00) |
| 128 | Distribution-Jack Galardi, Jr | (2,454,851.64) |
| 129 | | (4,143,543.64) |
| 130 | Distribution-Teri Galardi | (3,624,847.44) |
| 131 | Total Trust Distributions | (7,768,391.08) |
| 132 | Total Equity | 25,700,189.87 |
| 133 | TOTAL LIABILITIES & EQUITY | $ 58,273,515.19 |

Summary of distributions

Quickbooks CSW As of November 24, 2020

based upon information from entities

Estate of Jack Galardi
Summary of distriutions to beneficiaries:

| | | Posted as loans | Posted as dividends | Posted as Trust distributions Teri Galardi | Posted as Trust distributions Jack Galardi Jr. | Totals Teri Galardi | Totals Jack Galardi Jr. |
|---|---|---|---|---|---|---|---|
| From (To) JEG Family Trust | 11/30/2013 | 8,547,819 | - | 197,754 | 66,251 | 8,745,573 | 66,251 |
| From (To) JEG Family Trust | 11/30/2014 | (7,037,066) | - | 127,714 | 46,238 | (6,909,352) | 46,238 |
| From (To) Trop Inc. | 11/30/2013 | 15,000 | 295,972 | | | 310,972 | - |
| From (To) Trop Inc. | 11/30/2014 | - | | | | - | - |
| From (To) LVA Management (Atl) | 11/30/2013 | 185,163 | 306,719 | | | 491,882 | - |
| From (To) LVA Management (Atl) | 11/30/2014 | | - | | | - | - |
| From (To) LVA Management (LV) | 11/30/2013 | 15,000 | 50,000 | | | 65,000 | - |
| From (To) LVA Management (LV) | 11/30/2014 | (30,000) | | | | (30,000) | - |
| From (To) Ponytails, Inc. (Onyx) | 11/30/2013 | 434,243 | | | | 434,243 | - |
| From (To) Ponytails, Inc. (Onyx) | 11/30/2014 | | | | | - | - |
| From (To) Country Club Inc. (Atl) | 11/30/2013 | (4,139) | | | | (4,139) | - |
| From (To) Country Club Inc. (Atl) | 11/30/2014 | (5,000) | | | | (5,000) | - |
| From (To) Country Club Inc. (SC) | 11/30/2013 | | | | | - | - |
| From (To) Country Club Inc. (SC) | 11/30/2014 | | | | | - | - |
| From (To) JG P & P Inc. | 11/30/2013 | (24,500) | | | | (24,500) | - |
| From (To) JG P & P Inc. | 11/30/2014 | | | | | - | - |

| Payments made on Teri's behalf from 12/01/12 thru 11/30/14 | |
|---|---|
| Payments related to Funny Time LLC | 91,114 |
| Charge Teri for personal use of aircraft | 241,654 |
| 50% of Transcapital payments made on behalf of MBJG, Inc. | 125,127 |
| 50% of Transcapital payments made on behalf of MBJG, Inc. paid by Three women, Inc. | 16,783 |

Summary of distributions

CSW As of November 24, 2020

| | | | |
|---|---|---|---|
| Estate of Jack Galardi | | | |
| Summary of distriutions to beneficiaries: | | | |
| Charge Teri for purchse od 100 acres ranch property paid by Trust | | 262,977 | |
| Charge Teri for personal use of aircraft: | | | |
| 2013 Per 1120S | | 241,653 | |
| 2014 Per 1120S | | - | |
| Adjustments for activities subsequent to closing of estate: | | | |
| Credit Teri for payment of 706 interest and trust income taxes after closing of the estate | | (1,695,122) | - |
| 50% of refunds received relating to MBJG, Inc. | | 2,001 | - |
| Payment of Waldman expenses (Jack Jr., residence) subsequent to closing of estate | | (45,905) | 45,905 |
| Receipt of deposits from 425 Industrial subsequent to closing of the estate | | 5,000 | (5,000) |
| Payment of property taxes on Adamo subsequent to closing of the estate | | (6,103) | 6,103 |
| Credit Teri for legal fees pd on Sale of King of Diamonds ($97,971 x 75%) after estate closing | | (73,478) | - |
| Additional costs on #24 - Fr lauderdale property pd after closing of the estate | | 30,331 | - |
| | Total to each beneficiary | 2,270,711 | 159,497 |
| | Total distributions | 2,430,208 | |
| Total distributions @ 75%-25% | | 1,822,656 | 607,552 |
| Excess distribution to Teri | 2,270,711-1,822,656 | 448,055 | (448,055) |

CSW As of November 24, 2020

**JACK E GALARDI SR. ESTATE TRUST**
**DATE OF DEATH: 12/01/2012**
**CLUB WAGES AND DISTRIBUTIONS**
**FOR THE YEARS ENDED DECEMBER 31, 2013 AND 2014**

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| | BENEFICIARY | PONYTAIL, INC | TROP, INC | COUNTRY CLUB, INC - ATLANTA | LVA MANAGEMENT, INC | THREE WOMEN, INC | TOTAL | REFERENCE |
| 1 | 2013: | | | | | | | |
| 2 | Teri Galardi, wages | $ 75,000.00 | $ - | $ - | $ - | $ - | $ 75,000.00 | Page 12 |
| 3 | Michael Porter, wages | - | 50,000.00 | - | - | - | 50,000.00 | Page 12 |
| 4 | Total 2013 | 75,000.00 | 50,000.00 | - | - | - | 125,000.00 | |
| 5 | 2014: | | | | | | | |
| 6 | Teri Galardi, wages | 165,000.00 | 201,000.00 | - | - | - | 366,000.00 | Page 19, 27 |
| 7 | Michael Porter, wages | 150,269.00 | 150,229.00 | - | - | - | 300,498.00 | Page 19, 27 |
| 8 | Total 2014 | 315,269.00 | 351,229.00 | - | - | - | 666,498.00 | |
| 9 | TOTAL WAGES | $ 390,269.00 | $ 401,229.00 | $ - | $ - | $ - | $ 791,498.00 | |
| 10 | | | | | | | | |
| 11 | 2014: | Page 18, 20 | Page 26, 28 | Page 34, 35 | Page 41 | Page 47, 48 | | |
| 12 | Teri Galardi, distributions | $ 417,312.00 | $ 1,261,065.00 | $ 20,273.00 | $ 193,457.00 | $ 5,237.00 | $ 1,897,344.00 | |
| 13 | TOTAL DISTRIBUTIONS | $ 417,312.00 | $ 1,261,065.00 | $ 20,273.00 | $ 193,457.00 | $ 5,237.00 | $ 1,897,344.00 | |

CSW As of November 24, 2020

PORTER 08/22/2020 8:58 AM

Form 1040 | Salaries & Wages Report | 2013

Name: Michael Porter & Teri Galardi | Taxpayer Identification Number

| | T/S | Employer | Federal Wages | Federal Withheld | Soc Sec Wages |
|---|---|---|---|---|---|
| A | T | Ponytail, Inc. | 50,000 | 11,418 | 50,000 |
| B | S | Tropicalia Inc. | 75,000 | 19,668 | 75,000 |
| C | | | | | |
| D | | | | | |
| E | | | | | |
| F | | | | | |
| G | | | | | |
| H | | | | | |
| I | | | | | |
| J | | | | | |
| K | | | | | |
| L | | | | | |
| M | | | | | |
| | | Taxpayer | 50,000 | 11,418 | 50,000 |
| | | Spouse | 75,000 | 19,668 | 75,000 |
| | | Totals | 125,000 | 31,086 | 125,000 |

| | Soc Sec Withheld | Medicare Wages | Medicare Withheld | Soc Sec Tips | Allocated Tips | Dep Care Ben | Other, Box 14 |
|---|---|---|---|---|---|---|---|
| A | 3,100 | 50,000 | 725 | | | | |
| B | 4,650 | 75,000 | 1,088 | | | | |
| C | | | | | | | |
| D | | | | | | | |
| E | | | | | | | |
| F | | | | | | | |
| G | | | | | | | |
| H | | | | | | | |
| I | | | | | | | |
| J | | | | | | | |
| K | | | | | | | |
| L | | | | | | | |
| M | | | | | | | |
| Taxpayer | 3,100 | 50,000 | 725 | | | | |
| Spouse | 4,650 | 75,000 | 1,088 | | | | |
| Totals | 7,750 | 125,000 | 1,813 | | | | |

| | State | State Wages | State Withheld | Name of Locality | Local Wages | Local Withheld |
|---|---|---|---|---|---|---|
| A | GA | 50,000 | 2,940 | | | |
| B | GA | 75,000 | 4,440 | | | |
| C | | | | | | |
| D | | | | | | |
| E | | | | | | |
| F | | | | | | |
| G | | | | | | |
| H | | | | | | |
| I | | | | | | |
| J | | | | | | |
| K | | | | | | |
| L | | | | | | |
| M | | | | | | |
| Taxpayer | | 50,000 | 2,940 | | | |
| Spouse | | 75,000 | 4,440 | | | |
| Totals | | 125,000 | 7,380 | | | |

CSW As of November 24, 2020

P1041 03/10/2015 8:19 AM

Form 1120S (2014) Ponytail, Inc. Page 2

**Schedule B Other Information** (see instructions)

| | | Yes | No |
|---|---|---|---|
| 1 | Check accounting method: a [ ] Cash b [X] Accrual c [ ] Other (specify) ◆ | | |
| 2 | See the instructions and enter the: a Business activity ◆ Nightclub b Product or service ◆ Food & Beverage | | |
| 3 | At any time during the tax year, was any shareholder of the corporation a disregarded entity, a trust, an estate, or a nominee or similar person? If "Yes," attach Schedule B-1, Information on Certain Shareholders of an S Corporation | X | |
| 4 | At the end of the tax year, did the corporation: | | |
| a | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total stock issued and outstanding of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below | | X |

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage of Stock Owned | (v) If Percentage in (iv) is 100%, Enter the Date (if any) a Qualified Subchapter S Subsidiary Election Was Made |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

| | | Yes | No |
|---|---|---|---|
| b | Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below | | X |

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

| | | Yes | No |
|---|---|---|---|
| 5a | At the end of the tax year, did the corporation have any outstanding shares of restricted stock? | | X |
| | If "Yes," complete lines (i) and (ii) below. | | |
| | (i) Total shares of restricted stock ◆ | | |
| | (ii) Total shares of non-restricted stock ◆ | | |
| b | At the end of the tax year, did the corporation have any outstanding stock options, warrants, or similar instruments? | | X |
| | If "Yes," complete lines (i) and (ii) below. | | |
| | (i) Total shares of stock outstanding at the end of the tax year ◆ | | |
| | (ii) Total shares of stock outstanding if all instruments were executed ◆ | | |
| 6 | Has this corporation filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? | | X |
| 7 | Check this box if the corporation issued publicly offered debt instruments with original issue discount ◆ [ ] If checked, the corporation may have to file Form 8281, Information Return for Publicly Offered Original Issue Discount Instruments. | | |
| 8 | If the corporation: (a) was a C corporation before it elected to be an S corporation or the corporation acquired an asset with a basis determined by reference to the basis of the asset (or the basis of any other property) in the hands of a C corporation and (b) has net unrealized built-in gain in excess of the net recognized built-in gain from prior years, enter the net unrealized built-in gain reduced by net recognized built-in gain from prior years (see instructions) ◆ $ | | |
| 9 | Enter the accumulated earnings and profits of the corporation at the end of the tax year. $ | | |
| 10 | Does the corporation satisfy both of the following conditions? | | |
| a | The corporation's total receipts (see instructions) for the tax year were less than $250,000 | | |
| b | The corporation's total assets at the end of the tax year were less than $250,000 | | X |
| | If "Yes," the corporation is not required to complete Schedules L and M-1. | | |
| 11 | During the tax year, did the corporation have any non-shareholder debt that was canceled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? | | X |
| | If "Yes," enter the amount of principal reduction $ | | |
| 12 | During the tax year, was a qualified subchapter S subsidiary election terminated or revoked? If "Yes," see instructions | | X |
| 13a | Did the corporation make any payments in 2014 that would require it to file Form(s) 1099? | X | |
| b | If "Yes," did the corporation file or will it file required Forms 1099? | X | |

Form 1120S (2014)

DAA

CSW As of November 24, 2020

P1041 09/10/2015 8:19 AM

Form 1120S (2014) Ponytail, Inc. Page 4

**Schedule K** Shareholders' Pro Rata Share Items (continued)

| | | | Total amount |
|---|---|---|---|
| Other Information | 17a Investment income | 17a | |
| | b Investment expenses | 17b | |
| | c Dividend distributions paid from accumulated earnings and profits | 17c | |
| | d Other items and amounts (attach statement) | | |
| Reconciliation | 18 Income/loss reconciliation. Combine the amounts on lines 1 through 10 in the far right column. From the result, subtract the sum of the amounts on lines 11 through 12d and 14l | 18 | 134,800 |

**Schedule L** Balance Sheets per Books

| Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|
| 1 Cash | | 331,360 | | 259,343 |
| 2a Trade notes and accounts receivable | | | | |
| b Less allowance for bad debts | ( ) | | ( ) | |
| 3 Inventories | | 43,903 | | 20,134 |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities (see instructions) | | | | |
| 6 Other current assets (attach statement) Stmt 6 | | 439,455 | | 25,143 |
| 7 Loans to shareholders | | | | |
| 8 Mortgage and real estate loans | | | | |
| 9 Other investments (attach statement) | | | | |
| 10a Buildings and other depreciable assets | 338,112 | | 389,859 | |
| b Less accumulated depreciation | ( 244,480 ) | 93,632 | ( 297,707 ) | 92,152 |
| 11a Depletable assets | | | | |
| b Less accumulated depletion | ( ) | | ( ) | |
| 12 Land (net of any amortization) | | | | |
| 13a Intangible assets (amortizable only) | | | | |
| b Less accumulated amortization | ( ) | | ( ) | |
| 14 Other assets (attach statement) | | | | |
| 15 Total assets | | 908,350 | | 396,772 |
| **Liabilities and Shareholders' Equity** | | | | |
| 16 Accounts payable | | | | |
| 17 Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 Other current liabilities (attach statement) Stmt 7 | | 7,839 | | 16,055 |
| 19 Loans from shareholders | | | | |
| 20 Mortgages, notes, bonds payable in 1 year or more | | | | |
| 21 Other liabilities (attach statement) Stmt 8 | | 500,000 | | 485,000 |
| 22 Capital stock | | 1,000 | | 1,000 |
| 23 Additional paid-in capital | | | | |
| 24 Retained earnings | | 399,511 | | -105,283 |
| 25 Adjustments to shareholders' equity (attach statement) | | | | |
| 26 Less cost of treasury stock | | ( ) | | ( ) |
| 27 Total liabilities and shareholders' equity | | 908,350 | | 396,772 |

Form **1120S** (2014)

DAA

CSW As of November 24, 2020

P1041 09/10/2015 8:18 AM

671114

☐ Final K-1 ☐ Amended K-1 OMB No. 1545-0123

Schedule K-1 (Form 1120S) **2014**

Department of the Treasury Internal Revenue Service

For calendar year 2014, or tax year beginning ______ ending ______

## Shareholder's Share of Income, Deductions, Credits, etc.

** See back of form and separate instructions.

### Part I Information About the Corporation

A Corporation's employer identification number

B Corporation's name, address, city, state, and ZIP code

Ponytail, Inc.

2555 Chantilly Dr.
Atlanta GA 30324

C IRS Center where corporation filed return

e-file

### Part II Information About the Shareholder

D Shareholder's identifying number

E Shareholder's name, address, city, state, and ZIP code

Teri G Galardi
2142 Hwy 42 South

Flovilla GA 30216

F Shareholder's percentage of stock ownership for tax year ........ 8.767123 %

For IRS Use Only

### Part III Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items

| Line | Description | Amount | Line | Description | Amount |
|---|---|---|---|---|---|
| 1 | Ordinary business income (loss) | 15,408 | 13 | Credits | |
| | | | N | | 1,229 |
| 2 | Net rental real estate income (loss) | | | | |
| 3 | Other net rental income (loss) | | | | |
| 4 | Interest income | | | | |
| 5a | Ordinary dividends | | | | |
| 5b | Qualified dividends | | 14 | Foreign transactions | |
| 6 | Royalties | | | | |
| 7 | Net short-term capital gain (loss) | | | | |
| 8a | Net long-term capital gain (loss) | | | | |
| 8b | Collectibles (28%) gain (loss) | | | | |
| 8c | Unrecaptured section 1250 gain | | | | |
| 9 | Net section 1231 gain (loss) | | | | |
| 10 | Other income (loss) | | 15 | Alternative minimum tax (AMT) items | |
| | | | A | | -295 |
| 11 | Section 179 deduction | | 16 | Items affecting shareholder basis | |
| | | | C* | | STMT |
| 12 | Other deductions | | | | |
| A | | 18 | D | | 417,312 |
| | | | 17 | Other information | |

* See attached statement for additional information.

For Paperwork Reduction Act Notice, see Instructions for Form 1120S. IRS.gov/form1120s Schedule K-1 (Form 1120S) 2014

DAA

CSW As of November 24, 2020

P1041 09/10/2015 8:18 AM

Form **1120S** **Schedule K-1 Summary Worksheet** 2014

Name: Ponytail, Inc.

Employer Identification Number

| | Shareholder Name | SSN/EIN |
|---|---|---|
| Column A | JEG Family Trust | |
| Column B | Teri G Galardi | |
| Column C | | |
| Column D | | |

| | Schedule K Items | Column A | Column B | Column C | Column D | Sch K Total |
|---|---|---|---|---|---|---|
| 1 | Ordinary income | 160,339 | 15,408 | | | 175,747 |
| 2 | Net rental RE inc | | | | | |
| 3c | Net other rental inc | | | | | |
| 4 | Interest income | | | | | |
| 5a | Ordinary dividends | | | | | |
| 5b | Qualified dividends | | | | | |
| 6 | Royalties | | | | | |
| 7 | Net ST capital gain | | | | | |
| 8a | Net LT capital gain | | | | | |
| 8b | Collectibles 28% gain | | | | | |
| 8c | Unrecap Sec 1250 | | | | | |
| 9 | Net Sec 1231 gain | | | | | |
| 10 | Other income (loss) | | | | | |
| 11 | Sec 179 deduction | | | | | |
| 12a | Contributions | 182 | 18 | | | 200 |
| 12b | Invest interest exp | | | | | |
| 12c | Sec 59(e)(2) exp | | | | | |
| 12d | Other deductions | | | | | |
| 13a | Low-inc house 42j5 | | | | | |
| 13b | Low-inc house other | | | | | |
| 13c | Qualif rehab exp | | | | | |
| 13d | Rental RE credits | | | | | |
| 13e | Other rental credits | | | | | |
| 13f | Biofuel credit | | | | | |
| 13g | Other credits | 12,787 | 1,229 | | | 14,016 |
| 14b | Gross inc all src | | | | | |
| 14d-f | Total foreign inc | | | | | |
| 14g-k | Total foreign deds | | | | | |
| 14l | Total foreign taxes | | | | | |
| 14m | Reduct in taxes | | | | | |
| 15a | Depr adjustment | -3,075 | -295 | | | -3,370 |
| 15b | Adjusted gain (loss) | | | | | |
| 15c | Depletion | | | | | |
| 15d | Inc-oil/gas/geoth | | | | | |
| 15e | Ded-oil/gas/geoth | | | | | |
| 15f | Other AMT items | | | | | |
| 16a | Tax-exempt interest | | | | | |
| 16b | Other tax-exempt | | | | | |
| 16c | Nonded expense | 12,833 | 1,233 | | | 14,066 |
| 16d | Distributions | 208,216 | 417,312 | | | 625,528 |
| 16e | Shr loan repmts | | | | | |
| 17a | Investment income | | | | | |
| 17b | Investment expense | | | | | |
| 18 | Income (loss) | 160,157 | 15,390 | | | 175,547 |

CSW As of November 24, 2020

T351 09/14/2015 8:47 AM

Form 1120S (2014) Trop, Inc. Page 2

## Schedule B Other Information (see instructions)

| | | Yes | No |
|---|---|---|---|
| 1 | Check accounting method: a [ ] Cash b [X] Accrual c [ ] Other (specify) | | |
| 2 | See the instructions and enter the: a Business activity Nightclub b Product or service Food & Beverages | | |
| 3 | At any time during the tax year, was any shareholder of the corporation a disregarded entity, a trust, an estate, or a nominee or similar person? If "Yes," attach Schedule B-1, Information on Certain Shareholders of an S Corporation | X | |
| 4 | At the end of the tax year, did the corporation: | | |
| a | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total stock issued and outstanding of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below | | X |

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage of Stock Owned | (v) If Percentage in (iv) is 100%, Enter the Date (if any) a Qualified Subchapter S Subsidiary Election Was Made |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

| | | Yes | No |
|---|---|---|---|
| b | Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below | | X |

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

| | | Yes | No |
|---|---|---|---|
| 5a | At the end of the tax year, did the corporation have any outstanding shares of restricted stock? | | X |
| | If "Yes," complete lines (i) and (ii) below. | | |
| | (i) Total shares of restricted stock | | |
| | (ii) Total shares of non-restricted stock | | |
| b | At the end of the tax year, did the corporation have any outstanding stock options, warrants, or similar instruments? | | X |
| | If "Yes," complete lines (i) and (ii) below. | | |
| | (i) Total shares of stock outstanding at the end of the tax year | | |
| | (ii) Total shares of stock outstanding if all instruments were executed | | |
| 6 | Has this corporation filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? | | X |
| 7 | Check this box if the corporation issued publicly offered debt instruments with original issue discount [ ] If checked, the corporation may have to file Form 8281, Information Return for Publicly Offered Original Issue Discount Instruments. | | |
| 8 | If the corporation: (a) was a C corporation before it elected to be an S corporation or the corporation acquired an asset with a basis determined by reference to the basis of the asset (or the basis of any other property) in the hands of a C corporation and (b) has net unrealized built-in gain in excess of the net recognized built-in gain from prior years, enter the net unrealized built-in gain reduced by net recognized built-in gain from prior years (see instructions) $ | | |
| 9 | Enter the accumulated earnings and profits of the corporation at the end of the tax year. $ | | |
| 10 | Does the corporation satisfy both of the following conditions? | | |
| a | The corporation's total receipts (see instructions) for the tax year were less than $250,000 | | |
| b | The corporation's total assets at the end of the tax year were less than $250,000 | | X |
| | If "Yes," the corporation is not required to complete Schedules L and M-1. | | |
| 11 | During the tax year, did the corporation have any non-shareholder debt that was canceled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? | | X |
| | If "Yes," enter the amount of principal reduction $ | | |
| 12 | During the tax year, was a qualified subchapter S subsidiary election terminated or revoked? If "Yes," see instructions | | X |
| 13a | Did the corporation make any payments in 2014 that would require it to file Form(s) 1099? | X | |
| b | If "Yes," did the corporation file or will it file required Forms 1099? | X | |

Form 1120S (2014)

DAA

CSW As of November 24, 2020

T351 09/14/2015 6:47 AM

**Schedule K** Shareholders' Pro Rata Share Items (continued)

| | | | Total amount |
|---|---|---|---|
| Other Information | 17a Investment income | 17a | |
| | b Investment expenses | 17b | |
| | c Dividend distributions paid from accumulated earnings and profits | 17c | |
| | d Other items and amounts (attach statement) | | |
| Reconciliation | 18 **Income/loss reconciliation.** Combine the amounts on lines 1 through 10 in the far right column. From the result, subtract the sum of the amounts on lines 11 through 12d and 14l | 18 | 1,115,490 |

**Schedule L** Balance Sheets per Books

| | Beginning of tax year (a) | Beginning of tax year (b) | End of tax year (c) | End of tax year (d) |
|---|---|---|---|---|
| **Assets** | | | | |
| 1 Cash | | 342,132 | | 177,495 |
| 2a Trade notes and accounts receivable | | | | |
| b Less allowance for bad debts | ( ) | | ( ) | |
| 3 Inventories | | 43,903 | | 63,572 |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities (see instructions) | | | | |
| 6 Other current assets (attach statement) Stmt 5 | | 876,120 | | 128,238 |
| 7 Loans to shareholders | | | | |
| 8 Mortgage and real estate loans | | | | |
| 9 Other investments (attach statement) | | | | |
| 10a Buildings and other depreciable assets | 1,165,725 | | 1,181,327 | |
| b Less accumulated depreciation | ( 744,998 ) | 420,727 | ( 771,904 ) | 409,423 |
| 11a Depletable assets | | | | |
| b Less accumulated depletion | ( ) | | ( ) | |
| 12 Land (net of any amortization) | | | | |
| 13a Intangible assets (amortizable only) | | | | |
| b Less accumulated amortization | ( ) | | ( ) | |
| 14 Other assets (attach statement) | | | | |
| 15 Total assets | | 1,682,882 | | 778,728 |
| **Liabilities and Shareholders' Equity** | | | | |
| 16 Accounts payable | | | | |
| 17 Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 Other current liabilities (attach statement) Stmt 6 | | 33,804 | | 55,646 |
| 19 Loans from shareholders | | | | |
| 20 Mortgages, notes, bonds payable in 1 year or more | | | | |
| 21 Other liabilities (attach statement) | | | | |
| 22 Capital stock | | 1,000 | | 1,000 |
| 23 Additional paid-in capital | | | | |
| 24 Retained earnings | | 1,648,078 | | 722,082 |
| 25 Adjustments to shareholders' equity (attach statement) | | | | |
| 26 Less cost of treasury stock | | ( ) | | ( ) |
| 27 Total liabilities and shareholders' equity | | 1,682,882 | | 778,728 |

DAA

CSW As of November 24, 2020

T391 03/14/2015 6:47 AM

671114

Final K-1 | Amended K-1 | OMB No. 1545-0123

**Schedule K-1 (Form 1120S)** **2014**

Department of the Treasury
Internal Revenue Service

For calendar year 2014, or tax year beginning ________ ending ________

## Shareholder's Share of Income, Deductions, Credits, etc.

See back of form and separate instructions.

### Part I Information About the Corporation

A Corporation's employer identification number

B Corporation's name, address, city, state, and ZIP code

Trop, Inc.

2555 Chantilly Drive
Atlanta GA 30324

C IRS Center where corporation filed return
e-file

### Part II Information About the Shareholder

D Shareholder's identifying number

E Shareholder's name, address, city, state, and ZIP code

Teri G Galardi
2146 Hwy 42 South

Flovilla GA 30216

F Shareholder's percentage of stock ownership for tax year 8.767123 %

For IRS Use Only

### Part III Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items

| No. | Item | Amount | No. | Item | Amount |
|---|---|---|---|---|---|
| 1 | Ordinary business income (loss) | 98,103 | 13 | Credits | |
| | | | N | | 3,129 |
| 2 | Net rental real estate income (loss) | | | | |
| 3 | Other net rental income (loss) | | | | |
| 4 | Interest income | | | | |
| 5a | Ordinary dividends | | | | |
| 5b | Qualified dividends | | 14 | Foreign transactions | |
| 6 | Royalties | | | | |
| 7 | Net short-term capital gain (loss) | | | | |
| 8a | Net long-term capital gain (loss) | | | | |
| 8b | Collectibles (28%) gain (loss) | | | | |
| 8c | Unrecaptured section 1250 gain | | | | |
| 9 | Net section 1231 gain (loss) | | | | |
| 10 | Other income (loss) | | 15 | Alternative minimum tax (AMT) items | |
| | | | A | | -147 |
| 11 | Section 179 deduction | | 16 | Items affecting shareholder basis | |
| | | | C* | | 3,129 |
| 12 | Other deductions | | D | | 1,261,065 |
| A | | 307 | | | |
| | | | 17 | Other information | |

* See attached statement for additional information.

For Paperwork Reduction Act Notice, see Instructions for Form 1120S. IRS.gov/form1120s Schedule K-1 (Form 1120S) 2014

DAA

CSW As of November 24, 2020

T351 05/14/2015 8:47 AM

Form 1120S

# Schedule K-1 Summary Worksheet

2014

Name: Trop, Inc.

Employer Identification Number

| | Shareholder Name | SSN/EIN |
|---|---|---|
| Column A | JEG Family Trust u/a/d 11/1/06 | |
| Column B | Teri G Galardi | |
| Column C | | |
| Column D | | |

| | Schedule K Items | Column A | Column B | Column C | Column D | Sch K Total |
|---|---|---|---|---|---|---|
| 1 | Ordinary income | 1,020,887 | 98,103 | | | 1,118,990 |
| 2 | Net rental RE inc | | | | | |
| 3c | Net other rental inc | | | | | |
| 4 | Interest income | | | | | |
| 5a | Ordinary dividends | | | | | |
| 5b | Qualified dividends | | | | | |
| 6 | Royalties | | | | | |
| 7 | Net ST capital gain | | | | | |
| 8a | Net LT capital gain | | | | | |
| 8b | Collectibles 28% gain | | | | | |
| 8c | Unrecap Sec 1250 | | | | | |
| 9 | Net Sec 1231 gain | | | | | |
| 10 | Other income (loss) | | | | | |
| 11 | Sec 179 deduction | | | | | |
| 12a | Contributions | 3,193 | 307 | | | 3,500 |
| 12b | Invest interest exp | | | | | |
| 12c | Sec 59(e)(2) exp | | | | | |
| 12d | Other deductions | | | | | |
| 13a | Low-inc house 42j5 | | | | | |
| 13b | Low-inc house other | | | | | |
| 13c | Qualif rehab exp | | | | | |
| 13d | Rental RE credits | | | | | |
| 13e | Other rental credits | | | | | |
| 13f | Biofuel credit | | | | | |
| 13g | Other credits | 32,562 | 3,129 | | | 35,691 |
| 14b | Gross inc all src | | | | | |
| 14d-f | Total foreign inc | | | | | |
| 14g-k | Total foreign deds | | | | | |
| 14l | Total foreign taxes | | | | | |
| 14m | Reduct in taxes | | | | | |
| 15a | Depr adjustment | -1,530 | -147 | | | -1,677 |
| 15b | Adjusted gain (loss) | | | | | |
| 15c | Depletion | | | | | |
| 15d | Inc-oil/gas/geoth | | | | | |
| 15e | Ded-oil/gas/geoth | | | | | |
| 15f | Other AMT items | | | | | |
| 16a | Tax-exempt interest | | | | | |
| 16b | Other tax-exempt | | | | | |
| 16c | Nonded expense | 32,562 | 3,129 | | | 35,691 |
| 16d | Distributions | 744,730 | 1,261,065 | | | 2,005,795 |
| 16e | Shr loan repmts | | | | | |
| 17a | Investment income | | | | | |
| 17b | Investment expense | | | | | |
| 18 | Income (loss) | 1,017,694 | 97,796 | | | 1,115,490 |

CSW As of November 24, 2020

C1043 03/08/2015 0:35 AM

Form 1120S (2014) Country Club, Inc. Page 2

**Schedule B Other Information** (see instructions)

| | | Yes | No |
|---|---|---|---|
| 1 | Check accounting method: a [ ] Cash b [X] Accrual c [ ] Other (specify) ◆ | | |
| 2 | See the instructions and enter the: a Business activity ◆ Night Club b Product or service ◆ Food & Beverages | | |
| 3 | At any time during the tax year, was any shareholder of the corporation a disregarded entity, a trust, an estate, or a nominee or similar person? If "Yes," attach Schedule B-1, Information on Certain Shareholders of an S Corporation | | X |
| 4 | At the end of the tax year, did the corporation: | | |
| a | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total stock issued and outstanding of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below | | X |

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage of Stock Owned | (v) If Percentage in (iv) is 100%, Enter the Date (if any) a Qualified Subchapter S Subsidiary Election Was Made |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | | Yes | No |
|---|---|---|---|
| b | Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below | | X |

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | | Yes | No |
|---|---|---|---|
| 5a | At the end of the tax year, did the corporation have any outstanding shares of restricted stock? If "Yes," complete lines (i) and (ii) below. | | X |
| | (i) Total shares of restricted stock ◆ | | |
| | (ii) Total shares of non-restricted stock ◆ | | |
| b | At the end of the tax year, did the corporation have any outstanding stock options, warrants, or similar instruments? If "Yes," complete lines (i) and (ii) below. | | X |
| | (i) Total shares of stock outstanding at the end of the tax year ◆ | | |
| | (ii) Total shares of stock outstanding if all instruments were executed ◆ | | |
| 6 | Has this corporation filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? | | X |
| 7 | Check this box if the corporation issued publicly offered debt instruments with original issue discount ◆ [ ] If checked, the corporation may have to file Form 8281, Information Return for Publicly Offered Original Issue Discount Instruments. | | |
| 8 | If the corporation: (a) was a C corporation before it elected to be an S corporation or the corporation acquired an asset with a basis determined by reference to the basis of the asset (or the basis of any other property) in the hands of a C corporation and (b) has net unrealized built-in gain in excess of the net recognized built-in gain from prior years, enter the net unrealized built-in gain reduced by net recognized built-in gain from prior years (see instructions) ◆ $ | | |
| 9 | Enter the accumulated earnings and profits of the corporation at the end of the tax year. $ | | |
| 10 | Does the corporation satisfy both of the following conditions? | | |
| a | The corporation's total receipts (see instructions) for the tax year were less than $250,000 | | |
| b | The corporation's total assets at the end of the tax year were less than $250,000 If "Yes," the corporation is not required to complete Schedules L and M-1. | | X |
| 11 | During the tax year, did the corporation have any non-shareholder debt that was canceled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? If "Yes," enter the amount of principal reduction $ | | X |
| 12 | During the tax year, was a qualified subchapter S subsidiary election terminated or revoked? If "Yes," see instructions | | X |
| 13a | Did the corporation make any payments in 2014 that would require it to file Form(s) 1099? | X | |
| b | If "Yes," did the corporation file or will it file required Forms 1099? | X | |

Form **1120S** (2014)

DAA

CSW As of November 24, 2020

C1043 05/08/2015 8:35 AM

Form 1120S (2014) Country Club, Inc. Page 4

**Schedule K** Shareholders' Pro Rata Share Items (continued)

| | | | Total amount |
|---|---|---|---|
| Other Information | 17a Investment income | 17a | |
| | b Investment expenses | 17b | |
| | c Dividend distributions paid from accumulated earnings and profits | 17c | |
| | d Other items and amounts (attach statement) | | |
| Recon-ciliation | 18 Income/loss reconciliation. Combine the amounts on lines 1 through 10 in the far right column. From the result, subtract the sum of the amounts on lines 11 through 12d and 14l | 18 | 293,496 |

**Schedule L** Balance Sheets per Books

| Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|
| 1 Cash | | 82,284 | | 194,609 |
| 2a Trade notes and accounts receivable | | | | |
| b Less allowance for bad debts | ( | | ( | |
| 3 Inventories | | 11,903 | | 20,134 |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities (see instructions) | | | | |
| 6 Other current assets (attach statement) Stmt 4 | | 17,273 | | 29,960 |
| 7 Loans to shareholders | | | | |
| 8 Mortgage and real estate loans | | | | |
| 9 Other investments (attach statement) | | | | |
| 10a Buildings and other depreciable assets | 630,704 | | 638,427 | |
| b Less accumulated depreciation | ( 436,774 ) | 193,930 | ( 453,857 ) | 184,570 |
| 11a Depletable assets | | | | |
| b Less accumulated depletion | ( | | ( | |
| 12 Land (net of any amortization) | | | | |
| 13a Intangible assets (amortizable only) | | | | |
| b Less accumulated amortization | ( | | ( | |
| 14 Other assets (attach statement) | | | | |
| 15 Total assets | | 305,390 | | 429,273 |
| **Liabilities and Shareholders' Equity** | | | | |
| 16 Accounts payable | | | | |
| 17 Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 Other current liabilities (attach statement) Stmt 5 | | 7,449 | | 16,517 |
| 19 Loans from shareholders | | | | |
| 20 Mortgages, notes, bonds payable in 1 year or more | | | | |
| 21 Other liabilities (attach statement) Stmt 6 | | 46,175 | | 43,495 |
| 22 Capital stock | | 1,000 | | 1,000 |
| 23 Additional paid-in capital | | | | |
| 24 Retained earnings | | 250,766 | | 368,261 |
| 25 Adjustments to shareholders' equity (attach statement) | | | | |
| 26 Less cost of treasury stock | | ( ) | | ( ) |
| 27 Total liabilities and shareholders' equity | | 305,390 | | 429,273 |

Form **1120S** (2014)

DAA

CSW As of November 24, 2020

C1043 03/03/2015 8:35 AM

671114

☐ Final K-1 ☐ Amended K-1 OMB No. 1545-0123

**Schedule K-1 (Form 1120S)** **2014**

Department of the Treasury Internal Revenue Service

For calendar year 2014, or tax year beginning ______ ending ______

## Shareholder's Share of Income, Deductions, Credits, etc.

See back of form and separate instructions.

### Part I Information About the Corporation

A Corporation's employer identification number

B Corporation's name, address, city, state, and ZIP code

Country Club, Inc.
Goldrush Showbar
2555 Chantilly Drive
Atlanta GA 30324

C IRS Center where corporation filed return

e-file

### Part II Information About the Shareholder

D Shareholder's identifying number

E Shareholder's name, address, city, state, and ZIP code

Teri G Galardi Separate Prop Trust
2146 Hwy 42 South

Flovilla GA 30216

F Shareholder's percentage of stock ownership for tax year ........ 8.767123 %

For IRS Use Only

### Part III Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items

| Line | Item | Amount | Line | Code | Item / Amount |
|---|---|---|---|---|---|
| 1 | Ordinary business income (loss) | 25,812 | 13 | N | Credits: 879 |
| 2 | Net rental real estate income (loss) | | | | |
| 3 | Other net rental income (loss) | | | | |
| 4 | Interest income | | | | |
| 5a | Ordinary dividends | | | | |
| 5b | Qualified dividends | | 14 | | Foreign transactions |
| 6 | Royalties | | | | |
| 7 | Net short-term capital gain (loss) | | | | |
| 8a | Net long-term capital gain (loss) | | | | |
| 8b | Collectibles (28%) gain (loss) | | | | |
| 8c | Unrecaptured section 1250 gain | | | | |
| 9 | Net section 1231 gain (loss) | | | | |
| 10 | Other income (loss) | | 15 | A | Alternative minimum tax (AMT) items: 17 |
| 11 | Section 179 deduction | * 81 | 16 | C* | Items affecting shareholder basis: STMT |
| 12 | Other deductions | | | D | 20,273 |
| | | | 17 | | Other information |

* See attached statement for additional information.

DAA

CSW As of November 24, 2020

LVA 08/03/2016 1:48 PM Pg 2

Form **1120S** — Department of the Treasury, Internal Revenue Service

# U.S. Income Tax Return for an S Corporation

▶ Do not file this form unless the corporation has filed or is attaching Form 2553 to elect to be an S corporation.
▶ Information about Form 1120S and its separate instructions is at www.irs.gov/form1120s.

OMB No. 1545-0123 — **2014**

For calendar year 2014 or tax year beginning , ending

A S election effective date: 04/29/93
B Business activity code number (see instructions): 541600
C Check if Sch. M-3 attached: ☐

TYPE OR PRINT — Name: LVA MANAGEMENT INC.
Number, street, and room or suite no. If a P.O. box, see instructions: 2121 S HIGHLAND DR
City or town, state or province, country, and ZIP or foreign postal code: LAS VEGAS NV 89102

COPY

D Employer identification number:
E Date incorporated: 04/27/1993
F Total assets (see instructions): $ 1,117,114

G Is the corporation electing to be an S corporation beginning with this tax year? ☐ Yes ☒ No If "Yes," attach Form 2553 if not already filed
H Check if: (1) ☐ Final return (2) ☐ Name change (3) ☐ Address change (4) ☐ Amended return (5) ☐ S election termination or revocation
I Enter the number of shareholders who were shareholders during any part of the tax year ▶ 2

Caution. Include only trade or business income and expenses on lines 1a through 21. See the instructions for more information.

| Section | Line | Description | Ref | Amount |
|---|---|---|---|---|
| Income | 1a | Gross receipts or sales | 1a | 3,907,250 |
| | b | Returns and allowances | 1b | |
| | c | Balance. Subtract line 1b from line 1a | 1c | 3,907,250 |
| | 2 | Cost of goods sold (attach Form 1125-A) | 2 | 1,063,730 |
| | 3 | Gross profit. Subtract line 2 from line 1c | 3 | 2,843,520 |
| | 4 | Net gain (loss) from Form 4797, line 17 (attach Form 4797) | 4 | |
| | 5 | Other income (loss) (see instructions—attach statement) SEE STMT 1 | 5 | 212,812 |
| | 6 | Total income (loss). Add lines 3 through 5 ▶ | 6 | 3,056,332 |
| Deductions (see instructions for limitations) | 7 | Compensation of officers (see instructions–attach Form 1125-E) | 7 | |
| | 8 | Salaries and wages (less employment credits) | 8 | |
| | 9 | Repairs and maintenance | 9 | |
| | 10 | Bad debts | 10 | |
| | 11 | Rents | 11 | |
| | 12 | Taxes and licenses | 12 | 7,104 |
| | 13 | Interest | 13 | 326,351 |
| | 14 | Depreciation not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | 14 | |
| | 15 | Depletion (Do not deduct oil and gas depletion.) | 15 | |
| | 16 | Advertising | 16 | |
| | 17 | Pension, profit-sharing, etc., plans | 17 | |
| | 18 | Employee benefit programs | 18 | |
| | 19 | Other deductions (attach statement) SEE STMT 2 | 19 | 292,681 |
| | 20 | Total deductions. Add lines 7 through 19 ▶ | 20 | 626,136 |
| | 21 | Ordinary business income (loss). Subtract line 20 from line 6 | 21 | 2,430,196 |
| Tax and Payments | 22a | Excess net passive income or LIFO recapture tax (see instructions) | 22a | |
| | b | Tax from Schedule D (Form 1120S) | 22b | |
| | c | Add lines 22a and 22b (see instructions for additional taxes) | 22c | |
| | 23a | 2014 estimated tax payments and 2013 overpayment credited to 2014 | 23a | |
| | b | Tax deposited with Form 7004 | 23b | |
| | c | Credit for federal tax paid on fuels (attach Form 4136) | 23c | |
| | d | Add lines 23a through 23c | 23d | |
| | 24 | Estimated tax penalty (see instructions). Check if Form 2220 is attached ▶ ☐ | 24 | |
| | 25 | Amount owed. If line 23d is smaller than the total of lines 22c and 24, enter amount owed | 25 | |
| | 26 | Overpayment. If line 23d is larger than the total of lines 22c and 24, enter amount overpaid | 26 | |
| | 27 | Enter amount from line 26 Credited to 2015 estimated tax ▶ Refunded ▶ | 27 | |

**Sign Here** — Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer: TERI GALARDI  Date:  Title: PRESIDENT

May the IRS discuss this return with the preparer shown below (see instructions)? ☒ Yes ☐ No

**Paid Preparer Use Only**

Print/Type preparer's name: DANIEL GEIGER | Preparer's signature: DANIEL GEIGER | Date: 09/15/15 | Check ☐ if self-employed | PTIN: P01265326

Firm's name ▶ NYBERG & ASSOCIATES | Firm's EIN ▶

Firm's address ▶ 2850 S JONES BLVD STE 2, LAS VEGAS, NV 89146 | Phone no. 702-795-7990

For Paperwork Reduction Act Notice, see separate instructions. Form **1120S** (2014)

DAA

CSW As of November 24, 2020

LVA 09/03/2016 1:46 PM Pg 4

Form 1120S (2014) LVA MANAGEMENT INC. Page 3

**Schedule K Shareholders' Pro Rata Share Items**

| Section | Line | Item | Box | Total amount |
|---|---|---|---|---|
| Income (Loss) | 1 | Ordinary business income (loss) (page 1, line 21) | 1 | 2,430,196 |
| | 2 | Net rental real estate income (loss) (attach Form 8825) | 2 | |
| | 3a | Other gross rental income (loss) — 3a | | |
| | b | Expenses from other rental activities (attach statement) — 3b | | |
| | c | Other net rental income (loss). Subtract line 3b from line 3a | 3c | |
| | 4 | Interest income | 4 | |
| | 5 | Dividends: a Ordinary dividends | 5a | |
| | | b Qualified dividends — 5b | | |
| | 6 | Royalties | 6 | |
| | 7 | Net short-term capital gain (loss) (attach Schedule D (Form 1120S)) | 7 | |
| | 8a | Net long-term capital gain (loss) (attach Schedule D (Form 1120S)) | 8a | |
| | b | Collectibles (28%) gain (loss) — 8b | | |
| | c | Unrecaptured section 1250 gain (attach statement) — 8c | | |
| | 9 | Net section 1231 gain (loss) (attach Form 4797) | 9 | |
| | 10 | Other income (loss) (see instructions) Type ▶ | 10 | |
| Deductions | 11 | Section 179 deduction (attach Form 4562) | 11 | |
| | 12a | Charitable contributions | 12a | |
| | b | Investment interest expense | 12b | |
| | c | Section 59(e)(2) expenditures (1) Type ▶ (2) Amount ▶ | 12c(2) | |
| | d | Other deductions (see instructions) Type ▶ | 12d | |
| Credits | 13a | Low-income housing credit (section 42(j)(5)) | 13a | |
| | b | Low-income housing credit (other) | 13b | |
| | c | Qualified rehabilitation expenditures (rental real estate) (attach Form 3468, if applicable) | 13c | |
| | d | Other rental real estate credits (see instructions) Type ▶ | 13d | |
| | e | Other rental credits (see instructions) Type ▶ | 13e | |
| | f | Biofuel producer credit (attach Form 6478) | 13f | |
| | g | Other credits (see instructions) Type ▶ | 13g | |
| Foreign Transactions | 14a | Name of country or U.S. possession ▶ | | |
| | b | Gross income from all sources | 14b | |
| | c | Gross income sourced at shareholder level | 14c | |
| | | Foreign gross income sourced at corporate level | | |
| | d | Passive category | 14d | |
| | e | General category | 14e | |
| | f | Other (attach statement) | 14f | |
| | | Deductions allocated and apportioned at shareholder level | | |
| | g | Interest expense | 14g | |
| | h | Other | 14h | |
| | | Deductions allocated and apportioned at corporate level to foreign source income | | |
| | i | Passive category | 14i | |
| | j | General category | 14j | |
| | k | Other (attach statement) | 14k | |
| | | Other information | | |
| | l | Total foreign taxes (check one): ▶ ☐ Paid ☐ Accrued | 14l | |
| | m | Reduction in taxes available for credit (attach statement) | 14m | |
| | n | Other foreign tax information (attach statement) | | |
| Alternative Minimum Tax (AMT) Items | 15a | Post-1986 depreciation adjustment | 15a | |
| | b | Adjusted gain or loss | 15b | |
| | c | Depletion (other than oil and gas) | 15c | |
| | d | Oil, gas, and geothermal properties – gross income | 15d | |
| | e | Oil, gas, and geothermal properties – deductions | 15e | |
| | f | Other AMT items (attach statement) | 15f | |
| Items Affecting Shareholder Basis | 16a | Tax-exempt interest income | 16a | |
| | b | Other tax-exempt income | 16b | |
| | c | Nondeductible expenses | 16c | 2,391 |
| | d | Distributions (attach statement if required) (see instructions) | 16d | 2,206,614 |
| | e | Repayment of loans from shareholders | 16e | |

Form 1120S (2014)

DAA

CSW As of November 24, 2020

LVA 08/03/2016 1:48 PM Pg 6

Form 1120S (2014) LVA MANAGEMENT INC. Page 5

**Schedule M-1 Reconciliation of Income (Loss) per Books With Income (Loss) per Return**

Note. The corporation may be required to file Schedule M-3 (see instructions)

| | | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss) per books | 2,427,220 | 5 | Income recorded on books this year not included on Schedule K, lines 1 through 10 (itemize): a Tax-exempt interest $ | |
| 2 | Income included on Schedule K, lines 1, 2, 3c, 4, 5a, 6, 7, 8a, 9, and 10, not recorded on books this year (itemize) | | | | |
| 3 | Expenses recorded on books this year not included on Schedule K, lines 1 through 12 and 14l (itemize): a Depreciation $ b Travel and entertainment $ 2,391 STMT 5 585 | 2,976 | 6 | Deductions included on Schedule K, lines 1 through 12 and 14l, not charged against book income this year (itemize): a Depreciation $ | |
| | | | 7 | Add lines 5 and 6 | |
| 4 | Add lines 1 through 3 | 2,430,196 | 8 | Income (loss) (Schedule K, line 18). Line 4 less line 7 | 2,430,196 |

**Schedule M-2 Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed** (see instructions)

| | | (a) Accumulated adjustments account | (b) Other adjustments account | (c) Shareholders' undistributed taxable income previously taxed |
|---|---|---|---|---|
| 1 | Balance at beginning of tax year | 490,911 | | |
| 2 | Ordinary income from page 1, line 21 | 2,430,196 | | |
| 3 | Other additions | | | |
| 4 | Loss from page 1, line 21 | ( ) | | |
| 5 | Other reductions STMT 6 | ( 2,976) | ( ) | |
| 6 | Combine lines 1 through 5 | 2,918,131 | | |
| 7 | Distributions other than dividend distributions | 2,206,614 | | |
| 8 | Balance at end of tax year. Subtract line 7 from line 6 | 711,517 | | |

Form 1120S (2014)

DAA

CSW As of November 24, 2020

1352 06/15/2015 1:18 PM

Form **1120S** — Department of the Treasury, Internal Revenue Service

# U.S. Income Tax Return for an S Corporation

◆ Do not file this form unless the corporation has filed or is attaching Form 2553 to elect to be an S corporation.
◆ Information about Form 1120S and its separate instructions is at www.irs.gov/form1120s.

OMB No. 1545-0123 — **2014**

For calendar year 2014 or tax year beginning , ending

A S election effective date: 01/15/05
B Business activity code number (see instructions): 522300
C Check if Sch. M-3 attached: ☐

Name: Three Women, Inc.
Number, street, and room or suite no.: 2555 Chantilly Drive
City or town, state or province, country, and ZIP or foreign postal code: Atlanta GA 30324

D Employer identification number:
E Date incorporated: 12/16/2004
F Total assets (see instructions): $ 1,587,005

G Is the corporation electing to be an S corporation beginning with this tax year? ☐ Yes ☒ No If "Yes," attach Form 2553 if not already filed

H Check if: (1) ☐ Final return (2) ☐ Name change (3) ☐ Address change (4) ☐ Amended return (5) ☐ S election termination or revocation

I Enter the number of shareholders who were shareholders during any part of the tax year ◆ 2

Caution. Include only trade or business income and expenses on lines 1a through 21. See the instructions for more information.

| Section | Line | Description | | Amount |
|---|---|---|---|---|
| Income | 1a | Gross receipts or sales | 1a | |
| | b | Returns and allowances | 1b | |
| | c | Balance. Subtract line 1b from line 1a | 1c | |
| | 2 | Cost of goods sold (attach Form 1125-A) | 2 | |
| | 3 | Gross profit. Subtract line 2 from line 1c | 3 | |
| | 4 | Net gain (loss) from Form 4797, line 17 (attach Form 4797) | 4 | |
| | 5 | Other income (loss) (see instructions—attach statement) See Stmt 1 | 5 | 4,205 |
| | 6 | Total income (loss). Add lines 3 through 5 ◆ | 6 | 4,205 |
| Deductions (see instructions for limitations) | 7 | Compensation of officers (see instructions-attach Form 1125-E) | 7 | |
| | 8 | Salaries and wages (less employment credits) | 8 | |
| | 9 | Repairs and maintenance | 9 | |
| | 10 | Bad debts | 10 | |
| | 11 | Rents | 11 | |
| | 12 | Taxes and licenses | 12 | |
| | 13 | Interest | 13 | |
| | 14 | Depreciation not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | 14 | |
| | 15 | Depletion (Do not deduct oil and gas depletion.) | 15 | |
| | 16 | Advertising | 16 | 1,500 |
| | 17 | Pension, profit-sharing, etc., plans | 17 | |
| | 18 | Employee benefit programs | 18 | |
| | 19 | Other deductions (attach statement) See Stmt 2 | 19 | 20,299 |
| | 20 | Total deductions. Add lines 7 through 19 ◆ | 20 | 21,799 |
| | 21 | Ordinary business income (loss). Subtract line 20 from line 6 | 21 | -17,594 |
| Tax and Payments | 22a | Excess net passive income or LIFO recapture tax (see instructions) | 22a | |
| | b | Tax from Schedule D (Form 1120S) | 22b | |
| | c | Add lines 22a and 22b (see instructions for additional taxes) | 22c | |
| | 23a | 2014 estimated tax payments and 2013 overpayment credited to 2014 | 23a | |
| | b | Tax deposited with Form 7004 | 23b | |
| | c | Credit for federal tax paid on fuels (attach Form 4136) | 23c | |
| | d | Add lines 23a through 23c | 23d | |
| | 24 | Estimated tax penalty (see instructions). Check if Form 2220 is attached ◆ ☐ | 24 | |
| | 25 | Amount owed. If line 23d is smaller than the total of lines 22c and 24, enter amount owed | 25 | |
| | 26 | Overpayment. If line 23d is larger than the total of lines 22c and 24, enter amount overpaid | 26 | |
| | 27 | Enter amount from line 26 Credited to 2015 estimated tax ◆ Refunded ◆ | 27 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer: Teri Galardi — Date — Title: President

May the IRS discuss this return with the preparer shown below (see instructions)? ☒ Yes ☐ No

**Paid Preparer Use Only**

Print/Type preparer's name: Toni M. Schwahn
Preparer's signature: Toni M. Schwahn
Date:
Check ☐ if self-employed
PTIN: P00001626
Firm's name ◆ Whaley Hammonds Tomasello PC
Firm's EIN ◆
Firm's address ◆ 115 Westridge Ind. Blvd Suite 200, McDonough, GA 30253
Phone no. 770-914-1040

For Paperwork Reduction Act Notice, see separate instructions. Form 1120S (2014)

DAA

CSW As of November 24, 2020

T452 03/15/2015 1:15 PM

Form 1120S (2014) Three Women, Inc. Page 3

## Schedule K Shareholders' Pro Rata Share Items

| Section | Line | Description | Ref | Total amount |
|---|---|---|---|---|
| Income (Loss) | 1 | Ordinary business income (loss) (page 1, line 21) | 1 | -17,594 |
| | 2 | Net rental real estate income (loss) (attach Form 8825) | 2 | |
| | 3a | Other gross rental income (loss) — 3a | | |
| | b | Expenses from other rental activities (attach statement) — 3b | | |
| | c | Other net rental income (loss). Subtract line 3b from line 3a | 3c | |
| | 4 | Interest income | 4 | 62,395 |
| | 5 | Dividends: a Ordinary dividends | 5a | |
| | | b Qualified dividends — 5b | | |
| | 6 | Royalties | 6 | |
| | 7 | Net short-term capital gain (loss) (attach Schedule D (Form 1120S)) | 7 | |
| | 8a | Net long-term capital gain (loss) (attach Schedule D (Form 1120S)) | 8a | |
| | b | Collectibles (28%) gain (loss) — 8b | | |
| | c | Unrecaptured section 1250 gain (attach statement) — 8c | | |
| | 9 | Net section 1231 gain (loss) (attach Form 4797) | 9 | |
| | 10 | Other income (loss) (see instructions) Type ◆ | 10 | |
| Deductions | 11 | Section 179 deduction (attach Form 4562) | 11 | |
| | 12a | Charitable contributions | 12a | |
| | b | Investment interest expense | 12b | |
| | c | Section 59(e)(2) expenditures (1) Type ◆ (2) Amount ◆ | 12c(2) | |
| | d | Other deductions (see instructions) Type ◆ | 12d | |
| Credits | 13a | Low-income housing credit (section 42(j)(5)) | 13a | |
| | b | Low-income housing credit (other) | 13b | |
| | c | Qualified rehabilitation expenditures (rental real estate) (attach Form 3468, if applicable) | 13c | |
| | d | Other rental real estate credits (see instructions) Type ◆ | 13d | |
| | e | Other rental credits (see instructions) Type ◆ | 13e | |
| | f | Biofuel producer credit (attach Form 6478) | 13f | |
| | g | Other credits (see instructions) Type ◆ | 13g | |
| Foreign Transactions | 14a | Name of country or U.S. possession ◆ | | |
| | b | Gross income from all sources | 14b | |
| | c | Gross income sourced at shareholder level | 14c | |
| | | Foreign gross income sourced at corporate level | | |
| | d | Passive category | 14d | |
| | e | General category | 14e | |
| | f | Other (attach statement) | 14f | |
| | | Deductions allocated and apportioned at shareholder level | | |
| | g | Interest expense | 14g | |
| | h | Other | 14h | |
| | | Deductions allocated and apportioned at corporate level to foreign source income | | |
| | i | Passive category | 14i | |
| | j | General category | 14j | |
| | k | Other (attach statement) | 14k | |
| | | Other information | | |
| | l | Total foreign taxes (check one): ◆ ☐ Paid ☐ Accrued | 14l | |
| | m | Reduction in taxes available for credit (attach statement) | 14m | |
| | n | Other foreign tax information (attach statement) | | |
| Alternative Minimum Tax (AMT) Items | 15a | Post-1986 depreciation adjustment | 15a | |
| | b | Adjusted gain or loss | 15b | |
| | c | Depletion (other than oil and gas) | 15c | |
| | d | Oil, gas, and geothermal properties – gross income | 15d | |
| | e | Oil, gas, and geothermal properties – deductions | 15e | |
| | f | Other AMT items (attach statement) | 15f | |
| Items Affecting Shareholder Basis | 16a | Tax-exempt interest income | 16a | |
| | b | Other tax-exempt income | 16b | |
| | c | Nondeductible expenses | 16c | 1,564 |
| | d | Distributions (attach statement if required) (see instructions) | 16d | 5,237 |
| | e | Repayment of loans from shareholders | 16e | |

Form 1120S (2014)

DAA

CSW As of November 24, 2020

T352 09/15/2015 1:15 PM

Form 1120S (2014) **Three Women, Inc.** Page 5

**Schedule M-1 Reconciliation of Income (Loss) per Books With Income (Loss) per Return**

Note. The corporation may be required to file Schedule M-3 (see instructions)

| | | | |
|---|---|---|---|
| 1 Net income (loss) per books | 43,237 | 5 Income recorded on books this year not included on Schedule K, lines 1 through 10 (itemize): | |
| 2 Income included on Schedule K, lines 1, 2, 3c, 4, 5a, 6, 7, 8a, 9, and 10, not recorded on books this year (itemize) | | a Tax-exempt interest $ | |
| 3 Expenses recorded on books this year not included on Schedule K, lines 1 through 12 and 14l (itemize): | | 6 Deductions included on Schedule K, lines 1 through 12 and 14l, not charged against book income this year (itemize): | |
| a Depreciation $ | | a Depreciation $ | |
| b Travel and entertainment $ Stmt 5 1,564 | 1,564 | 7 Add lines 5 and 6 | |
| 4 Add lines 1 through 3 | 44,801 | 8 Income (loss) (Schedule K, line 18). Line 4 less line 7 | 44,801 |

**Schedule M-2 Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed** (see instructions)

| | (a) Accumulated adjustments account | (b) Other adjustments account | (c) Shareholders' undistributed taxable income previously taxed |
|---|---|---|---|
| 1 Balance at beginning of tax year | 447,409 | | |
| 2 Ordinary income from page 1, line 21 | | | |
| 3 Other additions Stmt 6 | 62,395 | | |
| 4 Loss from page 1, line 21 | ( 17,594) | | |
| 5 Other reductions Stmt 7 | ( 1,564) | ( ) | |
| 6 Combine lines 1 through 5 | 490,646 | | |
| 7 Distributions other than dividend distributions | 5,237 | | |
| 8 Balance at end of tax year. Subtract line 7 from line 6 | 485,409 | | |

Form **1120S** (2014)

DAA

CSW As of November 24, 2020

7352 09/15/2015 1:15 PM

Form **1120S** **Schedule K-1 Summary Worksheet** 2014

Name: Three Women, Inc.

Employer Identification Number

| | Shareholder Name | SSN/EIN |
|---|---|---|
| Column A | JEG Family Trust | |
| Column B | Teri G Galardi Separate Prop Trust | |
| Column C | | |
| Column D | | |

| | Schedule K Items | Column A | Column B | Column C | Column D | Sch K Total |
|---|---|---|---|---|---|---|
| 1 | Ordinary income | -16,052 | -1,542 | | | -17,594 |
| 2 | Net rental RE inc | | | | | |
| 3c | Net other rental inc | | | | | |
| 4 | Interest income | 56,925 | 5,470 | | | 62,395 |
| 5a | Ordinary dividends | | | | | |
| 5b | Qualified dividends | | | | | |
| 6 | Royalties | | | | | |
| 7 | Net ST capital gain | | | | | |
| 8a | Net LT capital gain | | | | | |
| 8b | Collectibles 28% gain | | | | | |
| 8c | Unrecap Sec 1250 | | | | | |
| 9 | Net Sec 1231 gain | | | | | |
| 10 | Other income (loss) | | | | | |
| 11 | Sec 179 deduction | | | | | |
| 12a | Contributions | | | | | |
| 12b | Invest interest exp | | | | | |
| 12c | Sec 59(e)(2) exp | | | | | |
| 12d | Other deductions | | | | | |
| 13a | Low-inc house 42j5 | | | | | |
| 13b | Low-inc house other | | | | | |
| 13c | Qualif rehab exp | | | | | |
| 13d | Rental RE credits | | | | | |
| 13e | Other rental credits | | | | | |
| 13f | Biofuel credit | | | | | |
| 13g | Other credits | | | | | |
| 14b | Gross inc all src | | | | | |
| 14d-f | Total foreign inc | | | | | |
| 14g-k | Total foreign deds | | | | | |
| 14l | Total foreign taxes | | | | | |
| 14m | Reduct in taxes | | | | | |
| 15a | Depr adjustment | | | | | |
| 15b | Adjusted gain (loss) | | | | | |
| 15c | Depletion | | | | | |
| 15d | Inc-oil/gas/geoth | | | | | |
| 15e | Ded-oil/gas/geoth | | | | | |
| 15f | Other AMT items | | | | | |
| 16a | Tax-exempt interest | | | | | |
| 16b | Other tax-exempt | | | | | |
| 16c | Nonded expense | 1,427 | 137 | | | 1,564 |
| 16d | Distributions | | 5,237 | | | 5,237 |
| 16e | Shr loan repmts | | | | | |
| 17a | Investment income | 56,925 | 5,470 | | | 62,395 |
| 17b | Investment expense | | | | | |
| 18 | Income (loss) | 40,873 | 3,928 | | | 44,801 |

considers necessary to make such division or distribution. In making any division or partial or final distribution of the Trust estate, the Trustee shall be under no obligation to make a pro rata division or to distribute the same assets to beneficiaries similarly situated. Rather, the Trustee may, in the Trustee's discretion, make non pro rata divisions between Trusts or shares and non pro rata distributions to beneficiaries as long as the respective assets allocated to separate trusts or shares or the distributions to beneficiaries have equivalent or proportionate fair market value. The income tax basis of assets allocated or distributed non pro rata need not be equivalent and may vary to a greater or lesser amount, as determined by the Trustee, in his or her discretion, and no adjustment need be made to compensate for any difference in basis.

9.5 Merger of Identical Trusts. Should the Trustee of any separate trust hereunder at any time also be the Trustee of a trust having substantially identical dispositive provisions for the benefit of the same beneficiary or beneficiaries but created under some other trust agreement, such two identical trusts may, in the discretion of such Trustee, be merged together and thereafter administered as one single trust under the trust agreement having the earliest rule against perpetuities savings clause date. Where such a merger would be thus authorized but for differences in the identity of the contingent remainder beneficiaries of such otherwise mergeable trusts, such trusts may instead be consolidated together in a new trust created by the Trustee of such otherwise mergeable trusts under a new trust instrument executed by it having all of the same provisions as would apply to such a merger except those provisions relating to contingent remainder interests, which provisions shall be written in such manner as to preserve the relative interests of the different contingent remainder beneficiaries having an interest therein on the basis of the fair market value of the net assets of each trust entering into such consolidation as of the effective date of such consolidation as reasonably determined by such Trustee.

# "EXHIBIT B"

Inst #: 201209190001310
Fees: $34.00
N/C Fee: $0.00
09/19/2012 10:52:16 AM
Receipt #: 1312353
Requestor:
NEVADA TITLE LAS VEGAS
Recorded By: MSH Pgs: 18
DEBBIE CONWAY
CLARK COUNTY RECORDER

I the undersigned hereby affirm that this document submitted for recording does not contain any personal information.

Signature Signature

Senior Vice President
Title

08-21-2012
Date

12-07-0285-JKH

Assessor Parcel No(s): 162-04-102-007 and 162-04-102-002

**RECORDATION REQUESTED BY:**
**VALLEY BANK OF NEVADA, Main Office, 6385 Simmons Street, North Las Vegas, NV 89031**

**WHEN RECORDED MAIL TO:**
**VALLEY BANK OF NEVADA, Main Office, 6385 Simmons Street, North Las Vegas, NV 89031**

**SEND TAX NOTICES TO:**
**VALLEY BANK OF NEVADA, Main Office, 6385 Simmons Street, North Las Vegas, NV 89031**

**FOR RECORDER'S USE ONLY**

## DEED OF TRUST

**THIS DEED OF TRUST is dated August 21, 2012, among Teri Gale Galardi, not personally but as Trustee on behalf of The JEG LV Qualified Personal Residence Trust dated June 4, 2007 ("Grantor"); VALLEY BANK OF NEVADA, whose address is Main Office, 6385 Simmons Street, North Las Vegas, NV 89031 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Nevada Title Company, whose address is 2500 N. Buffalo Dr., Ste. 150, Las Vegas, NV 89128 (referred to below as "Trustee").**

**CONVEYANCE AND GRANT.** For valuable consideration, Grantor irrevocably grants, bargains, sells and conveys to Trustee with power of sale for the benefit of Lender as Beneficiary all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Clark County, State of Nevada:

See EXHIBIT "A", which is attached to this Deed of Trust and made a part of this Deed of

**Trust as if fully set forth herein.**

**The Real Property or its address is commonly known as 1245 S. Rancho Drive and 2211 Edgewood Avenue, Las Vegas, NV 89102. The Real Property tax identification number is 162-04-102-007 and 162-04-102-002.**

Grantor presently, absolutely, and irrevocably assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS INCLUDING FUTURE ADVANCES AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (c) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Borrower shall pay to Lender all Indebtedness secured by this Deed of Trust as it becomes due, and Borrower and Grantor shall perform all their respective obligations under the Note, this Deed of Trust, and the Related Documents.

**STATUTORY COVENANTS.** The following Statutory Covenants are hereby adopted and made a part of this Deed of Trust: Covenants Nos. 1, 3, 4, 5, 6, 7 and 8 of N.R.S. 107.030. For Covenant 4, upon default, including failure to pay upon final maturity, the interest rate on the Note shall be increased by adding a 6.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law. The percent of counsel fees under Covenant No. 7 shall be ten percent(10%). Except for Covenants Nos. 6, 7, and 8, to the extent any terms of this Deed of Trust are inconsistent with the Statutory Covenants the terms of this Deed of Trust shall control. Covenants 6, 7, and 8 shall control over the express terms of any inconsistent terms of this Deed of Trust.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that

Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal,

clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of

payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds 50000.00. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds 50000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days

after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such

instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation. Grantor waives any legal or equitable interest in the net proceeds and any right to require any apportionment of the net proceeds of the award. Grantor agrees that Lender is entitled to apply the award in accordance with this paragraph without demonstrating that its security has been impaired.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding

paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Deed of Trust or any of the Related Documents.

**Default on Subordinate Indebtedness.** Default by Grantor under any subordinate obligation or instrument securing any subordinate obligation or commencement of any suit or other action to foreclose any subordinate lien on the Property.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of the Trust, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the

Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Borrower would be required to pay.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor to take possession of and manage the Property, and, whether or not Lender takes possession, collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over

and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Notices given by Lender or Trustee under the real property foreclosure proceedings shall be deemed reasonable. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property. The power of sale under this Deed of Trust shall not be exhausted by any one or more sales (or attempts to sell) as to all or any portion of the Real Property remaining unsold, but shall continue unimpaired until all of the Real Property has been sold by exercise of the power of sale and all Indebtedness has been paid in full.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any

court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law. Fees and expenses shall include attorneys' fees that Lender, Trustee, or both incur, if either or both are made parties to any action to enjoin foreclosure or to any legal proceeding that Grantor institutes. The fees and expenses are secured by this Deed of Trust and are recoverable from the Property.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee or Trustees to any Trustee under this Deed of Trust by an instrument executed and acknowledged by Lender, which shall be conclusive proof of the proper appointment of such substituted Trustee or Trustees. Upon the recording of such executed and acknowledged instrument in the office of the recorder of Clark County, State of Nevada, the successor trustee or trustees, without conveyance of the Property, shall succeed to, and be vested with, all the title, powers, interests, duties and trusts vested in or conferred upon the Trustee in this Deed of Trust and by applicable law. If there be more than one Trustee, either may act alone and execute the trusts upon the request of Lender, and all of the

Trustee's acts thereunder shall be deemed to be the acts of all Trustees, and the recital in any conveyance executed by such sole Trustee of such request shall be conclusive evidence thereof, and of the authority of such sole Trustee to act. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Nevada without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Nevada.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Clark County, State of Nevada. **(Initial Here** ________ **)**

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Deed of Trust shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in

the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Nevada as to all Indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means VALLEY BANK OF NEVADA, and its successors and assigns.

**Borrower.** The word "Borrower" means Jack E. Galardi and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Grantor.** The word "Grantor" means The JEG LV Qualified Personal Residence Trust dated June 4, 2007.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means VALLEY BANK OF NEVADA, its successors and assigns.

**Note.** The word "Note" means the promissory note dated August 21, 2012, **in the original principal amount of $750,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, mobile homes, manufactured homes or modular homes which have not been legally acceded to the real property in accordance with Nevada law, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to or used in the operation of the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Nevada Title Company, whose address is 2500 N. Buffalo Dr., Ste. 150, Las Vegas, NV 89128 and any substitute or successor trustees.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.**

**GRANTOR:**

**THE JEG LV QUALIFIED PERSONAL RESIDENCE TRUST DATED JUNE 4, 2007**

**By:** ______________________
**Teri Gale Galardi, Trustee of The JEG LV Qualified Personal Residence Trust dated June 4, 2007**

Teri Gale Galardi, Trustee of The JEG LV Qualified

**EXHIBIT "A"**
**LEGAL DESCRIPTION**

**PARCEL I:**

THAT PORTION OF THE NORTHWEST QUARTER (NW ¼) OF THE NORTHWEST QUARTER (NW ¼) OF SECTION 4, TOWNSHIP 21 SOUTH, RANGE 61 EAST, M.D.B.&M., DESCRIBED AS FOLLOWS:

LOT ONE (1) AS SHOWN BY MAP THEREOF ON FILE 31 OF PARCEL MAPS, PAGE 28, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

**PARCEL II:**

THAT PORTION OF THE SOUTH HALF (S ½) OF THE NORTHWEST QUARTER (NW ¼) OF THE NORTHWEST QUARTER (NW ¼) OF SECTION 4, TOWNSHIP 21 SOUTH, RANGE 61 EAST, M.D.B. & M., DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEASTERLY CORNER OF LOT 2, PARCEL MAP, FILE 31, PAGE 28, RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA, SAID POINT BEING ON NORTHERLY RIGHT OF WAY LINE OF WALDMAN AVENUE (60' WIDE);
THENCE SOUTH 89°41'45" WEST ALONG SAID NORTHERLY RIGHT OF WAY LINE A DISTANCE OF 429.56 FEET TO A POINT ON THE EASTERLY RIGHT OF WAY LINE OF RANCHO ROAD (60' WIDE), SAID POINT ALSO BEING ON WESTERLY LINE OF AFOREMENTIONED SECTION 4;
THENCE NORTH 1°2'20" EAST ALONG SAID EASTERLY RIGHT OF WAY LINE OF RANCHO ROAD AND SAID WESTERLY SECTION LINE A DISTANCE OF 127.05 FEET;
THENCE NORTH 89°41'45" EAST A DISTANCE OF 212.94 FEET;
THENCE NORTH 2°35'24" EAST A DISTANCE OF 32.81 FEET;
THENCE DUE EAST A DISTANCE OF 220 FEET;
THENCE SOUTH 2°35'24" WEST A DISTANCE OF 158.82 FEET TO THE TRUE POINT OF BEGINNING.

EXCEPTING THEREFROM THE WEST TEN (10.00) FEET AND THAT CERTAIN SPANDREL AREA AS AWARDED TO THE CITY OF LAS VEGAS BY THAT CERTAIN FINAL ORDER OF CONDEMNATION RECORDED MARCH 16, 1987 IN BOOK 870316 OF OFFICIAL RECORDS AS INSTRUMENT NO. 00666.

## TRUST ACKNOWLEDGMENT

STATE OF Nevada )
) SS
COUNTY OF Clark )

This instrument was acknowledged before me on Sept 10, 2012 by **Teri Gale Galardi, Trustee of The JEG LV Qualified Personal Residence Trust dated June 4, 2007**, as designated trustee of **The JEG LV Qualified Personal Residence Trust dated June 4, 2007**.

EMELITA P. SY
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 8-5-16
Certificate No: 92-1357-1

(Seal, if any) Emelita P.SY
Exp. 8-5-16
Cert No. 92-1357-1

Emelita P. Sy
(Signature of notarial officer)

Notary Public in and for State of Nevada

## REQUEST FOR FULL RECONVEYANCE

(To be used only when obligations have been paid in full)

To: ______________________________, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

______________________________.

Date: ______________________________ **Beneficiary:** ______________

**By:** ______________

**Its:** ______________

# “EXHIBIT C”

5114001351 JH
APN 162-04-102-007

25.

20030613
.02292

When recorded return to:
METROCITI MORTGAGE LLC
16030 VENTURA BLVD, 4TH FLOOR
ENCINO, CALIFORNIA 91436
Loan Number 00000439

MAIL TAX STATEMENTS TO:

(9)

State of Arizona ——— Space Above This Line For Recording Data ———

# DEED OF TRUST
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is JUNE 6, 2003 and the parties, their addresses and tax identification numbers, if required, are as follows:

GRANTOR: JACK E GALARDI AN UNMARRIED MAN

☐ If checked, refer to the attached Addendum incorporated herein, for additional Grantors, their signatures and acknowledgments.

TRUSTEE: FIDELITY NATIONAL LOAN PORTFOLIO SOLUTIONS, A CALIFORNIA CORPORATION
TRUSTEE ADDRESS: 2520 N. REDHILL AVE. STE. 120, SANTA ANA, CALIFORNIA 92705

LENDER: METROCITI MORTGAGE LLC, A CALIFORNIA CORPORATION
15030 N. HAYDEN ROAD STE 120, SCOTTSDALE, ARIZONA, 85260

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N. #: 162-04-102-007

The property is located in CLARK (County) at 1245 SOUTH RANCHO DRIVE (Address), LAS VEGAS (City), Arizona 89102 (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property"). Provided, that if Trustor shall pay in full all amounts owed under the Secured Debt at the time and in the manner provided therein, shall pay any and all other sums payable under this Deed of Trust, and shall perform as and when due all of the obligations of the Secured Debt, then, in such case, all right, title, and interest of Lender and Trustee in the Property shall terminate and become void, and Trustee, upon receipt of the written request of Lender, shall reconvey, without warranty, the Property, and the grantees in such reconveyance may be described as "the person or persons legally entitled thereto."

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $250,000.00. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

JEG

20030613
.02292

4. SECURED DEBT AND FUTURE ADVANCES. The term "Secured Debt" is defined as follows:

A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. (When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)

B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender executed after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. PAYMENTS. Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. WARRANTY OF TITLE. Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

7. PRIOR SECURITY INTERESTS. With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:

A. To make all payments when due and to perform or comply with all covenants.

B. To promptly deliver to Lender any notices that Grantor receives from the holder.

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. CLAIMS AGAINST TITLE. Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

9. DUE ON SALE OR ENCUMBRANCE. Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION. Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

20030613
.02292

11. AUTHORITY TO PERFORM. If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. ASSIGNMENT OF LEASES AND RENTS. Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument.

Grantor agrees that this assignment is immediately effective between the parties to this assignment and effective as to third parties on Grantor's default when Lender takes actual possession of the Property, when a receiver is appointed, or as the law otherwise provides. Grantor agrees that Lender or Trustee may take actual possession of the property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Grantor of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Grantor warrants that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

13. LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS. Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. DEFAULT. Grantor will be in default if any party obligated on the Secured Debt fails to make payment when due. Grantor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. REMEDIES ON DEFAULT. In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property.

If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser. Trustee shall apply the proceeds of the sale in the following order: (1) to the costs and expenses of exercising the power of sale and the sale, including the payment of Trustee's fees, and reasonable attorney's fees actually incurred; (2) to the payment of the contract or contracts secured by this Deed of Trust; (3) to the payment of all other obligations provided in or secured by this Deed of Trust; (4) to the junior lienholders or encumbrancers in order of their priority. After payment in full to all junior lienholders and encumbrancers payment shall be made to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS. Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or

20030613
.02292

otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Grantor agrees to pay for any recordation costs of such release.

17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES. As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance, and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Grantor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.

D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. CONDEMNATION. Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. INSURANCE. Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. ESCROW FOR TAXES AND INSURANCE. Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS. Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

22. JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND. All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the

20030613
.02292

Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

23. APPLICABLE LAW; SEVERABILITY; INTERPRETATION. This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. SUCCESSOR TRUSTEE. Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee by an instrument recorded in the county in which this Deed of Trust is recorded. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon the Trustee by this Deed of Trust and applicable law.

25. NOTICE. Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

26. WAIVERS. Except to the extent prohibited by law, Grantor waives any rights of appraisement relating to the Property.

27. OTHER TERMS. If checked, the following are applicable to this Security Instrument:

- ☒ Line of Credit. The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.
- ☐ Construction Loan. This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.
- ☐ Fixture Filing. Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.
- ☐ Riders. The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
  ☐ Condominium Rider ☐ Planned Unit Development Rider ☒ Other Home Equity Access Line Rider
- ☐ Additional Terms.

SIGNATURES: By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

| | | | |
|---|---|---|---|
| (Signature) JACK E GALARDI | (Date) | (Signature) | (Date) |
| (Signature) | (Date) | (Signature) | (Date) |
| (Signature) | (Date) | (Signature) | (Date) |

20030613
.02292

ACKNOWLEDGMENT:

STATE OF NEVADA , COUNTY OF CLARK } ss.

(Individual) This instrument was acknowledged before me this 6th day of June, 2003
by JAMES E. Dalanda
My commission expires: (Seal)
Aug 5, 2004 EMELITA P. SY

(Notary Public)

EMELITA P. SY
Notary Public Nevada
No. 92-1357-1
My appt. exp. Aug. 5, 2004

REQUEST FOR RECONVEYANCE
(Not to be completed until paid in full)

TO TRUSTEE:
The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel this Deed of Trust, which is delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

(Authorized Lender Signature) Date

20030613
.02292

Order No. : 5114001351-JH

EXHIBIT "A"

The land referred to is situated in the State of Nevada, County of Clark, City of Las Vegas, and is described as follows:

That portion of the South Half (S 1/2) of the Northwest Quarter (NW 1/4) of the Northwest Quarter (NW 1/4) of Section 4, Township 21 South, Range 61 East, M.D.B. & M., described as follows:

BEGINNING at the Southeasterly corner of Lot 2, Parcel Map, File 31, Page 28, recorded in the Office of the County Recorder of Clark County, Nevada, said point being on Northerly right of way line of Waldman Avenue (60'wide);
THENCE South 89°41'45" West along said Northerly right of way line a distance of 429.56 feet to a point on the Easterly right of way line of Rancho Road (60'wide), said point also being on Westerly line of aforementioned Section 4;
THENCE North 1°2'20" East along said Easterly right of way line of Rancho Road and said Westerly Section line a distance of 127.05 feet;
THENCE North 89°41'45" East a distance of 212.94 feet;
THENCE North 2°35'24" East a distance of 32.81 feet;
THENCE due East a distance of 220 feet;
THENCE South 2°35'24" West a distance of 158.82 feet to the TRUE POINT OF BEGINNING.

EXCEPTING THEREFROM the West ten (10.00) feet and that certain spandrel area as awarded to the City of Las Vegas by that certain Final Order of Condemnation recorded March 16, 1987 in Book 870316 of Official Records as Instrument No. 00666.

20030613
.02292

Loan Number 00000439

# HOME EQUITY ACCESS LINE RIDER

(Open end credit with ☐ fixed rate ☒ variable rate interest)

This Equity Line Rider is dated JUNE 6, 2003 and is an amendment to the Mortgage or Deed of Trust ("Mortgage") of the same date given by the undersigned,
JACK E GALARDI

("Borrower") to secure Borrower's Equity Line Agreement with METROCITI MORTGAGE LLC

("Lender") of the same date covering the property described in the Mortgage and located at:
1245 SOUTH RANCHO DRIVE, LAS VEGAS, NEVADA 89102

In addition to the covenants and agreements made in the Mortgage, Borrower and Lender further covenant and agree as follows:

1. The word "Note", as used in the Mortgage and this Rider, refers to the Home Equity Access Line Agreement.

2. The Note evidences an open end revolving line of credit agreement between Borrower and Lender under which future advances may be made. The amount stated in the Mortgage as the principal sum of the indebtedness is the credit limit for the line of credit. All advances made at any time by Lender in accordance with the terms of the Note, and all interest on the advances, shall be secured by the Mortgage. However, at no time shall the principal amount of the indebtedness secured by the Mortgage, not including sums advanced in accordance with the Mortgage to protect the security of the Mortgage, exceed the stated credit limit for the line of credit.

3. The Note provides for:
   ☐ a fixed rate of interest expressed as a daily periodic rate of %. This corresponds to an annual percentage rate of %.
   ☒ a variable rate of interest expressed as a daily periodic rate equal to 1/365 of an actual rate of 1.050 % plus the "Index Rate". The daily periodic rate may increase if the highest prime rate published in the Wall Street Journal "Money Rates" table (the "Index Rate") increases. The initial daily periodic rate is 0.0145 %, which corresponds to an initial annual percentage rate of 5.300 %. The annual percentage rate will never be more than 18.000 %. The daily periodic rate will be adjusted on the day the Index Rate changes. An increase in the daily periodic rate may increase the monthly payment due.

Hedri wf

20030613
.02292

NOTICE: THIS MORTGAGE SECURES CREDIT IN THE AMOUNT OF $250,000.00. LOANS AND ADVANCES UP TO THIS AMOUNT, TOGETHER WITH INTEREST, ARE SENIOR TO INDEBTEDNESS TO OTHER CREDITORS UNDER SUBSEQUENTLY RECORDED OR FILED MORTGAGES AND LIENS.

Jack E Galardi 6/4/03
JACK E GALARDI Date

Date

Date

Date

Date

Date

***** CLARK COUNTY, NEVADA *****
FRANCES DEANE, RECORDER
RECORDED AT REQUEST OF: OLD REPUBLIC TITLE COMPANY O
06-13-2003 13:52 ADF PAGE COUNT: 9
OFFICIAL RECORDS
BOOK/INSTR:20030613-02292 FEE: 22.00
RPTT: .00

# TAB 8

Electronically Filed
3/24/2021 11:52 AM
Steven D. Grierson
CLERK OF THE COURT

Michael D. Rawlins, Esq.
Nevada Bar No. 5467
**SMITH & SHAPIRO, PLLC**
3333 East Serene Avenue, Suite 130
Henderson, Nevada 89074
Telephone: (702) 318-5033
Facsimile: (702) 318-5034
Email: mrawlins@smithshapiro.com

Dana A. Dwiggins, Esq.
Nevada Bar No. 7049
**SOLOMON DWIGGINS & FREER, LTD.**
9060 W. Cheyenne Ave.
Las Vegas, NV 89129
Telephone: (702) 853-5483
Facsimile: (702) 853-5485
Email: ddwiggins@sdfnvlaw.com

*Attorney for Teri Gale Galardi*

SMITH & SHAPIRO, PLLC
3333 E. Serene Ave., Suite 130
Henderson, NV 89074
O:(702)318-5033 F:(702)318-5034

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

*****

| In the Matter of the<br><br>JEG TRUST-JACK GALARDI JR., SUB-TRUST,<br><br>Deceased. | Case No.: P-18-096792-T<br>Dept. PC1<br><br>**HEARING REQUESTED** |
|---|---|

**MOTION TO DISMISS PETITION FOR RECOVERY OF ASSETS FROM TERI GALARDI, CO-BENEFICIARY OF THE JEG TRUST**

TERI GALE GALARDI ("***Teri***") moves the Court to dismiss Petitioner JACK GALARDI, JR.'s ("***Jack, Jr.***") Petition for Recovery of Assets From Teri Galardi, Co-Beneficiary of the JEG Trust (the "***Petition***").

This Motion is made and based upon the papers and pleadings on file herein, the attached Memorandum of Points and Authorities, the attached affidavits and exhibits, and any oral argument the Court may wish to entertain in the premises.

\ \ \

\ \ \

DATED this 24th day of March, 2021.

**SMITH & SHAPIRO, PLLC**

*/s/ Michael D. Rawlins*
Michael D. Rawlins
Nevada Bar No. 5467
3333 East Serene Avenue, Suite 130
Henderson, Nevada 89074

*Attorney for Teri Gale Galardi*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

### A. BACKGROUND.

On or about November 1, 2006, Jack Galardi, Sr. ("***Jack, Sr.***") created the JEG Family Trust. *See* Total Amendment and Restatement of the JEG Family Trust, a true and correct copy of which is attached hereto as ***Exhibit "1"***. The Trust was amended in August 2012. *See* Exhibit "1". The initial trust and amendment thereto shall collectively be referred to as the "Trust" herein. Jack Sr. thereafter passed away on December 1, 2012. Teri, who is Jack, Sr.'s daughter, was named as personal representative in Jack, Sr.'s Last Will and Testament. As a result, Teri caused probate proceedings to be open in Clark County under Case No. P-13-076839-E.

Pursuant to Section 5.3(b) of the Trust, Teri, as successor trustee, was charged with dividing the Trust assets *See* Exhibit "1". Pursuant to the terms of the Trust, twenty-five percent (25%) of the Trust was to be distributed to the Jack Galardi, Jr. Sub-Trust (the "***Sub-Trust***"), with the remaining seventy-five percent (75%) to be distributed to Teri outright and free of trust. *See* Exhibit "1". In accordance with the terms of the Trust, on or about November 7, 2014, Teri distributed the assets of the Trust to the Sub-Trust and herself. *See* Exhibit "A" to Jack, Jr.'s Petition. In connection with the same, Teri prepared an allocation schedule setting forth the assets and value thereof distributed both to the Sub-Trust and herself ("***Allocation***").

\ \ \

SMITH & SHAPIRO, PLLC
3333 E. Serene Ave., Suite 130
Henderson, NV 89074
O:(702)318-5033 F:(702)318-5034

SMITH & SHAPIRO, PLLC
3333 E. Serene Ave., Suite 130
Henderson, NV 89074
O:(702)318-5033 F:(702)318-5034

In early 2015, Jack, Jr. retained attorney Travis Twitchell "to represent and advise him in his capacity as a beneficiary of the JEG Family Trust." *See* March 2015 Letter from Twitchell, a true and correct copy of which is attached hereto as ***Exhibit "2"***. On March 4, 2015, Jack, Jr.'s counsel sent a letter to Teri's counsel, Gregory Smith of Smith & Shapiro, PLLC, requesting: (1) "an inventory of trust assets, as well as an accounting of the trust assets from the date of his father's death until the present time," (2) a copy of the Form 706 estate tax return, and (3) a $10,000 payment from the Sub-Trust for a retainer. *See* Exhibit "2". Teri's counsel responded on March 20, 2015, providing Jack, Jr.'s counsel with a copy of the Form 706 estate tax return and Allocation. *See* March 2015 Letter to Twitchell, a true and correct copy of which is attached hereto as ***Exhibit "3"***. Thus, as of March 20, 2015, Jack, Jr. and his counsel were fully aware of how the Trust assets were valued and distributed by Teri to both the Sub-Trust and herself.

**B. PROCEDURAL POSTURE.**

Jack, Jr. initiated the instant case on September 19, 2018 by filing his Petition to Allow This Court to Take Jurisdiction over the Trust; and Request for Removal of Named Successor Trustee (the "***Original Petition***").[1] The Original Petition expressly acknowledged that Teri had provided Jack, Jr. and/or his counsel documents relating to the assets funded it the Sub-Trust, including a general ledger and the estate tax return. *See* Original Petition on file with this Court at p. 2. The Original Petition further acknowledged the specific assets allocated to the Sub-Trust and valuation thereof and recognized that, because of restrictive licensing requirements, none of the business interests were allowed to be funded in the Sub-Trust. After addressing each asset and the purported problems with Teri's allocation to the Sub-Trust, Jack, Jr. requested that this Court remove Teri and alleged she failed to perform her duties and trustee of the Sub-Trust. *See* Original Petition at p. 6, requested relief. On December 7, 2018, the Court granted the Original Petition in Part, and ordered Teri to provide an accounting of the Sub-Trust.

\\\

\\\

---

[1] A copy of the Original Petition without exhibits is attached hereto as Exhibit "4" for this Court's reference and convenience.

SMITH & SHAPIRO, PLLC
3333 E. Serene Ave., Suite 130
Henderson, NV 89074
O:(702)318-5033 F:(702)318-5034

Rather, on August 16, 2019, Jack, Jr. filed a second Petition for Removal of Teri Galardi, Successor Trustee ("***Removal Petition***").[2] The Removal Petition, in part, acknowledged that "Teri presented a distribution of assets to the residuary beneficiary dated 11/7/2014." *See* Removal Petition at p. 7, ll. 6-7. On or about September 27, 2019, the parties entered a Stipulation and Order wherein Teri resigned as successor trustee of the Sub-Trust. Although the Stipulation and Order further stated that "Jack E. Galardi, Jr. does not waive his individual right as a beneficiary to audit or investigate the accounts or administration of the prior trustee," it did not toll the statute of limitations on Jack, Jr.'s ability to initiate any claim for breach of fiduciary duty against Teri.[3]

On January 12, 2021, Jack, Jr. filed the instant Petition ("***Recovery Petition***"). For the reasons set forth herein, the Recovery Petition, along with the Original Petition, is time-barred and should be dismissed.

## II.

## STATEMENT OF AUTHORITIES

### A. LEGAL STANDARD.

Nevada Rule of Civil Procedure 12(b)(5) provides for the dismissal of actions for failure to state a claim upon which relief can be granted. Dismissal is appropriate when it appears beyond a doubt that the Plaintiff can prove no set of facts which, if true, would entitle him to relief. Buzz Stew, LLC v. City of Las Vegas, 124 Nev. 224, 227, 181 P.3d 670, 672 (2008). In ruling on a Motion to Dismiss, pursuant to N.R.C.P. 12(b)(5), the Court must regard all factual allegations in the Complaint as true and must draw all inferences in favor of the non-moving party. Schneider v. County of Elko, 119 Nev. 381, 75 P.3d 368 (2003); Hampe v. Foote, 118 Nev. 405, 47 P.3d 438 (2002). Dismissal is proper where the allegations are insufficient to establish the elements of a claim for relief. Hampe at 408.

\ \ \

\ \ \

[2] A copy of the Removal Petition without exhibits is attached hereto as Exhibit "5" for this Court's reference and convenience.

[3] A copy of the Stipulation and Order is attached hereto as Exhibit "6" for this Court's reference and convenience.

SMITH & SHAPIRO, PLLC
3333 E. Serene Ave., Suite 130
Henderson, NV 89074
O:(702)318-5033 F:(702)318-5034

**B. PETITIONER'S CLAIMS AGAINST TERI ARE TIME-BARRED.**

A court can dismiss a complaint for failure to state a claim upon which relief can be granted if the action is barred by the statute of limitations. Bemis v. Estate of Bemis, 114 Nev. 1021, 967 P.2d 437, 439 (1998). The general rule concerning statutes of limitation is that a cause of action accrues when the wrong occurs and a party sustains injuries for which relief could be sought. Id. at 440. An exception to the general rule has been recognized by the Nevada Supreme Court and many others in the form of the so-called "discovery rule." Under the discovery rule, the statutory period of limitations is tolled until the injured party discovers or reasonably should have discovered facts supporting a cause of action. Id.

Under N.R.S. § 11.190(3)(d), the statute of limitations for fraud claims is three (3) years from the date that the aggrieved party discovered the facts constituting the fraud. The Nevada Supreme Court has held that "[a] breach of fiduciary duty is a fraud giving rise to the application of the three year statute of limitations." Shupe v. Ham, 98 Nev. 61, 639 P.2d 540, 542 (Nev. 1982). In Shupe v. Ham, appellate, Shupe, brought a suit for breach of fiduciary against her former husband, Ham, for purchasing property which he held in trust for her. Id. at 541. The Nevada Supreme Court affirmed the District Court's holding that the "statute of limitations began to run when the appellant ***knew or reasonably should have known facts giving rise to respondent's alleged breach of fiduciary duty***." Id. at 542 (emphasis added). Based upon such standard, the Nevada Supreme Court affirmed the District Court's finding that appellant's claim was barred based upon the statute of limitations. Id. at 543. In so holding, the Nevada Supreme Court rejected the notion that the three-year limitation period did not commence until the beneficiary actually learned of any breach of trust. Id. at 542. *See also* Nevada State Bank v. Jamison Family Partnership, 106 Nev. 792, 800, 801 P.2d 1377, 1382 (Nev. 1990) (statute of limitations on a breach of fiduciary action commences when the aggrieved party knew, or reasonably should have known, of the facts giving rise to the breach); Millspaugh v. Millspaugh, 96 Nev. 446, 448-49 (Nev. 1980) (holding that genuine issue of material fact existed as whether appellant should have learned, through the exercise of proper diligence, of the fraud resulting in the commencement of the statute of limitations).

In this case, Jack, Jr.'s claims against Teri for breach of fiduciary duty are time-barred as a

SMITH & SHAPIRO, PLLC
3333 E. Serene Ave., Suite 130
Henderson, NV 89074
O:(702)318-5033 F:(702)318-5034

matter of law. Jack, Jr.'s Recovery Petition asserts that Teri's division of Trust assets and Allocation resulted in a breach of her fiduciary duties to Jack, Jr. when funding the Sub-Trust. Jack Jr. ignores the fact that the Allocation was initially provided to him and his legal counsel in March 2015, along with the Form 706, Estate Tax Return. The Allocation disclosed the values of the property funded into each respective subtrust based upon the valuations on the estate tax return. Jack Jr. waited until September 19, 2018, to file the Original Petition to remove Teri as Trustee based upon the contention that she breached her fiduciary duties by allocating the assets in such manner. Despite the fact that the Original Petition was barred by the statute of limitation, Jack Jr. nonetheless never pursued the breach of fiduciary claim. In fact, no further action was taken by Jack Jr. on the allegations of breach of fiduciary duty, including the submission of a scheduling order or request for an evidentiary hearing.

Thereafter, on January 21, 2021, Jack Jr. filed the instant, Recovery Petition seeking to surcharge Teri for breach of fiduciary duty, nearly six (6) years after having received the Allocation. Such claim is unequivocally barred by the three (3) year statute of limitations. The fact that Jack, Jr. may have received additional information in 2018 is immaterial because, based upon the Allocation provided to him in March 2015, Jack, Jr. knew or reasonably should have known of any purported breach by Teri. Consequently, Jack, Jr. was aware of the facts which form the alleged basis of his claim for breach of fiduciary duty no later than March 20, 2015, when his counsel received a letter from Teri's counsel attaching the Allocation schedule and the estate tax return for Jack, Sr. Thus, Jack, Jr. had until March 20, 2018 within which to file any breach of fiduciary duty claims against Teri. Jack, Jr. did not but rather waited until September 19, 2018, to initiate the Original Petition and further waited until January 21, 2021 to file the Recovery Petition. Jack, Jr.'s claims relative to the Allocation or, more specifically, the assets and value thereof funded into the Sub-Trust are barred by the statute of limitations as a matter of law. This Court should grant the instant Motion to Dismiss.

\\\

\\\

\\\

**CONCLUSION**

SMITH & SHAPIRO, PLLC
3333 E. Serene Ave., Suite 130
Henderson, NV 89074
O:(702)318-5033 F:(702)318-5034

For the reasons set forth above, Teri respectfully requests that this Honorable Court dismiss Jack, Jr.'s Petition for Recovery of Assets From Teri Galardi, Co-Beneficiary of the JEG Trust.

DATED this 24th day of March, 2021.

**SMITH & SHAPIRO, PLLC**

*/s/ Michael D. Rawlins*
Michael D. Rawlins
Nevada Bar No. 5467
3333 East Serene Avenue, Suite 130
Henderson, Nevada 89074

*Attorney for Teri Gale Galardi*

SMITH & SHAPIRO, PLLC
3333 E. Serene Ave., Suite 130
Henderson, NV 89074
O:(702)318-5033 F:(702)318-5034

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of Smith & Shapiro, PLLC and that, on this 24th day of March, 2021, I served a true and correct copy of the **MOTION TO DISMISS PETITION FOR RECOVERY OF ASSETS FROM TERI GALARDI, CO-BENEFICIARY OF THE JEG TRUST** by e-serving a copy on all parties listed as Service Recipients in Odyssey File & Serve, the Court's on-line, electronic filing website, pursuant to Administrative Order 14-2, entered on May 9, 2014, and by U.S. Mail, postage pre-paid to the following:

Shirley A. Derke, Esq.
Kirk Kaplan, Esq.
*Attorneys for Petitioner*, *Jack E. Galardi, Jr.*

Daniel Geiger, named Successor Co-Trustee
2850 S. Jones Blvd,, Ste, 2
Las Vegas, Nevada 89146

/s/ *Jennifer A. Bidwell*
Jennifer A. Bidwell, an employee of
SMITH & SHAPIRO, PLLC

# EXHIBIT 1

EXHIBIT 1

# THE TOTAL AMENDMENT AND RESTATEMENT
# OF THE
# JEG FAMILY TRUST

Originally Dated November 1, 2006

Prepared by
GREGORY S. SMITH, LTD.
2520 St. Rose Parkway, Suite 210
Henderson, Nevada 89074

TABLE OF CONTENTS

ARTICLE I
NAME AND BENEFICIARIES OF THE TRUST . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARTICLE II
DISTRIBUTION OF INCOME AND PRINCIPAL
WHILE THE TRUSTOR SHALL LIVE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARTICLE III
INCAPACITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARTICLE IV
DISTRIBUTION OF CASH, HOUSEHOLD AND PERSONAL EFFECTS
AFTER DEATH OF TRUSTOR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARTICLE V
DISTRIBUTION OF INCOME AND PRINCIPAL
AFTER DEATH OF THE TRUSTOR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARTICLE VI
TRUSTEE'S DISCRETION ON DISTRIBUTION TO PRIMARY BENEFICIARIES . . . . . 9

ARTICLE VII
PROVISIONS RELATING TO TRUSTEESHIP . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARTICLE VIII
PROVISIONS RELATING TO TRUSTOR'S POWERS . . . . . . . . . . . . . . . . . . . . . . 14

ARTICLE IX
PROVISIONS RELATING TO TRUSTEE'S POWERS . . . . . . . . . . . . . . . . . . . . . . 14

ARTICLE X
SUBCHAPTER S STOCK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

ARTICLE XI
QUALIFIED PLANS AND IRA'S . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

ARTICLE XII
PROTECTION OF AND ACCOUNTING BY TRUSTEE . . . . . . . . . . . . . . . . . . . . . 25

ARTICLE XIII
GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# TRUST AGREEMENT

**OF THE**

**TOTAL AMENDMENT AND RESTATEMENT**

**OF THE**

**JEG FAMILY TRUST**

THIS DECLARATION OF TRUST AGREEMENT is a Total Amendment and Restatement of the JEG FAMILY TRUST, which was originally established on November 1, 2006. This Total Amendment and Restatement, as follows, is made on August 16th, 2012, by JACK E. GALARDI, also known as JACK HAROLD EDWARD GALARDI (hereinafter referred to as the "Trustor" or "Grantor" when reference is made to him in his capacity as creator of this Trust and the transferor of the principal properties thereof), and JACK E. GALARDI, of Clark County, Nevada (hereinafter referred to as the "Trustee," when reference is made to him in his capacity as Trustee or fiduciary hereunder).

*Witnesseth:*

WHEREAS, the Trustor desires by this Trust Agreement to totally amend and restate the "JEG FAMILY TRUST" for the use and purposes hereinafter set forth, to make provisions for the care and management of certain of his present properties and for the ultimate distribution of the Trust properties;

NOW, THEREFORE, the Trustor hereby gives, grants, and transfers to the Trustee, IN TRUST, which Trustee hereby declares that he has received from the Grantor, the property listed on Schedule "A", (which schedule is attached hereto and made a part of this Trust Agreement), TO HAVE AND TO HOLD THE SAME IN TRUST, and to manage, invest and reinvest the same and any additions that may be made from time to time hereto, subject to the provisions of Trust as hereinafter provided.

All property subject to this Trust Indenture shall constitute the Trust estate and shall be held for the purpose of protecting and preserving it, collecting the income therefrom, and making distributions of the principal and income thereof as hereinafter provided.

Additional property may be added to the Trust estate, at any time and from time to time, by the Trustor or any person or persons, by inter vivos act or testamentary transfer, or by insurance contract or Trust designation.

The property comprising the original Trust estate, during the life of the Trustor, shall retain its character as his separate property, as designated on the attached Schedule "A" or document of transfer or conveyance. Property subsequently received by the Trustee during the life of the Trustor may be listed on addenda to Schedule "A" and shall have the separate character designated thereon or on the document of transfer or conveyance.

## ARTICLE I
## NAME AND BENEFICIARIES OF THE TRUST

1.1 **Name**. The Trust created in this instrument may be referred to as the "JEG FAMILY TRUST", and any separate Trust may be referred to by adding the name of the beneficiary.

1.2 **Beneficiaries**. The Trust estate created hereby shall be for the use and benefit of JACK E. GALARDI, and for the other beneficiaries named herein. The names of the five (5) now living children of the Trustor are JACKIE GALARDI, JACK GALARDI, JR., MICHAEL D. GALARDI, TERI GALE GALARDI, and KATHY HOLDER. For purposes of this Trust Indenture, the Trustor has intentionally and with full knowledge, failed to provide for JACKIE GALARDI and MICHAEL D. GALARDI, and their issue and they shall be disinherited and treated as though they predeceased the Trustor. The Trustor wishes to express his love and affection for KATHY HOLDER and he has provided for her under Sections 5.2 and 5.5, below. However, except for Sections 5.2 and 5.5, below,

KATHY HOLDER shall not be considered a child of the Trustor. JACK GALARDI, JR. and TERI GALE GALARDI shall hereinafter be designated as the "children of the Trustor."

## ARTICLE II
## DISTRIBUTION OF INCOME AND PRINCIPAL WHILE THE TRUSTOR SHALL LIVE

2.1 **Distributions While The Trustor Lives**. During the lifetime of JACK HAROLD EDWARD GALARDI, he shall be entitled to all income and principal of the Trust property without limitation.

2.2 **Use of Residence**. While the Trustor shall live, he may possess and use, without rental or accounting to Trustee, any residence owned by this Trust.

## ARTICLE III
## INCAPACITY

3.1 **Incapacity of Trustor**. If at any time, as certified in writing by two licensed physicians, the Trustor has become physically or mentally incapacitated, whether or not a court of competent jurisdiction has declared him incompetent, mentally ill, or in need of a guardian or conservator, the Trustee shall pay to the Trustor or apply for his benefit, the amounts of net income and principal necessary, in the Trustee's discretion, for the proper health, support and maintenance of the Trustor in accordance with his accustomed manner of living, until the incapacitated Trustor, either in the Trustee's discretion or as certified by two licensed physicians, is again able to manage his own affairs or until his death.

3.2 **Reliance on writing**. Anyone dealing with this Trust may rely on the physicians' written statements regarding the Trustor's incapacity, or a photocopy

of the statements, presented to them by the Trustee. A third party relying on such written statements shall not incur any liability to any beneficiary for any dealings with the Trustee in reliance upon such written statements. This provision is inserted in this Trust indenture to encourage third parties to deal with the Trustee without the need for court proceedings.

## ARTICLE IV
## DISTRIBUTION OF CASH, HOUSEHOLD AND PERSONAL EFFECTS AFTER DEATH OF TRUSTOR

4.1 **Distribution of Cash and Personal Property**. After the death of the Trustor, the Trustee shall distribute all cash, tangible personal property of the deceased Trustor, including but not limited to, furniture, furnishings, rugs, pictures, books, silverplate, linen, china, glassware, objects of art, wearing apparel, jewelry, ornaments, and automobiles in accordance with any written statement or list that the Trustor leaves disposing of this property. Any such statement or list then in existence shall be determinative with respect to all bequests made therein. Any cash or property not included on said list shall be added to the Trust created in Article V below.

## ARTICLE V
## DISTRIBUTION OF INCOME AND PRINCIPAL AFTER DEATH OF THE TRUSTOR

5.1 **Payment of Expenses**. Upon the death of the Trustor, the Trustee may, in the Trustee's sole discretion, pay from the income and/or principal of this Trust, the administrative expenses, the expenses of the last illness and funeral of the Trustor, and any other debt owed by Trustor. Following such payments, the

principal and undistributed income of the Trust shall be administered and as set forth herein.

5.2 **Specific Bequest for the Benefit of KATHY HOLDER**. Upon the death of the Trustor, the Trustee shall set aside the sum of Three Hundred Thousand dollars ($300,000.00) for the benefit of KATHY HOLDER ("KATHY"), to be held in trust as follows:

(a) For so long as KATHY shall live, KATHY's share shall be retained in a separate Trust and the net income and principal from this Trust share shall be distributed to KATHY as is necessary, in the discretion of the Trustee, for the support, comfort, well-being, education or health needs of the beneficiary. In addition, principal may be used, in the discretion of the Trustee, for the education or emergency health needs of the beneficiary.

(b) Upon the death of KATHY, the remainder of this Trust share, if any, shall be distributed pursuant to Section 5.3, below.

5.3 **Distribution of the Remaining Trust Estate**. Upon the death of the Trustor, the Trustee shall divide the Trust estate into two (2) shares, namely, the TERI GALARDI SUB-TRUST and the JACK GALARDI JR. SUB-TRUST, to be administered and distributed as follows:

(a) The TERI GALARDI SUB-TRUST: Seventy-five percent (75%) of the remaining Trust estate shall be distributed to TERI GALE GALARDI, if she is then living, outright and free of trust. If TERI GALE GALARDI is not then living, then this Trust share shall be divided into as many equal shares as there are children of TERI GALE GALARDI who are then living (hereinafter referred to as "grandchildren of the Trustor" or "grandchild of the Trustor") and grandchildren of the Trustor who are deceased leaving issue then living, and these shares shall be distributed or retained as follows:

(1) If any grandchild of the Trustor is then the age of Thirty-five (35) years or older, his or her share shall be distributed to him or her outright and free of trust.

(2) For each grandchild of the Trustor who is then under the age of Thirty-five (35) years, his or her share shall be retained in a separate Trust and, until the grandchild attains the age of

Twenty-five (25) years, the net income and principal from each Trust share shall be distributed to the grandchild as is necessary, in the discretion of the Trustee, for the support, comfort, well-being, education or health needs of the grandchild. After attaining the age of Twenty-five (25) years, the net income from each Trust share shall be distributed at least quarter annually to the grandchild of the Trustor. In addition, principal may be used, in the discretion of the Trustee, for the education or emergency health needs of the beneficiary.

(3) Upon attaining the age of Twenty-five (25) years, one-third (1/3) of the then value of the grandchild's Trust share shall be distributed to him or her outright and free of trust. Upon attaining the age of Thirty (30) years, one-half (½) of the then value of the grandchild's Trust share shall be distributed to him or her outright and free of trust. Upon attaining the age of Thirty-five (35) years, the entire remaining balance of the grandchild's Trust share shall be distributed to the grandchild outright and free of trust. If a grandchild has already attained age Twenty-five (25), Thirty (30), or Thirty-five (35) at the division date, the Trustee shall, upon making the division, distribute to such grandchild one-third (1/3), one-half (½), or all of his or her Trust share, respectively.

(4) If prior to full distribution a grandchild becomes deceased, his or her remaining share shall be distributed outright equally to his or her issue who are then living under the same terms and conditions as set forth in this section or, if there are no then living issue of the grandchild, his or her remaining share shall be distributed outright to his or her then living siblings. However, if any such distributee is one for whom a Trust is then being administered under this Section 5.2, the share of such distributee shall, instead of being distributed outright, be added to that Trust and administered and distributed in accordance with its terms.

(b) The JACK GALARDI, JR. SUB-TRUST: Twenty-five percent (25%) of the remaining Trust estate shall be distributed to the JACK GALARDI, JR. SUB-TRUST, to be distributed or retained as follows.

(1) For so long as JACK GALARDI, JR. ("JACK JR.") shall live, JACK JR.'s share shall be retained in a separate Trust and the net income and principal from this Trust share shall be distributed to JACK JR. as is necessary, in the discretion of the Trustee, for the

support, comfort, well-being, education or health needs of the beneficiary. In addition, principal may be used, in the discretion of the Trustee, for JACK JR.'s education or emergency health needs.

(2) In the event that JACK JR. should predecease the Trustor, or, upon his death, this Trust share shall be divided into as many equal shares as there are children of JACK JR. who are then living (hereinafter referred to as "grandchildren of the Trustor" or "grandchild of the Trustor") and grandchildren of the Trustor who are deceased leaving issue then living, and these shares shall be distributed or retained as follows:

(i) If any grandchild of the Trustor is then the age of Thirty-five (35) years or older, his or her share shall be distributed to him or her outright and free of trust.

(ii) For each grandchild of the Trustor who is then under the age of Thirty-five (35) years, his or her share shall be retained in a separate Trust and, until the grandchild attains the age of Twenty-five (25) years, the net income and principal from each Trust share shall be distributed to the grandchild as is necessary, in the discretion of the Trustee, for the support, comfort, well-being, education or health needs of the grandchild. After attaining the age of Twenty-five (25) years, the net income from each Trust share shall be distributed at least quarter annually to the grandchild of the Trustor. In addition, principal may be used, in the discretion of the Trustee, for the education or emergency health needs of the beneficiary.

(iii) Upon attaining the age of Twenty-five (25) years, one-third (1/3) of the then value of the grandchild's Trust share shall be distributed to him or her outright and free of trust. Upon attaining the age of Thirty (30) years, one-half (½) of the then value of the grandchild's Trust share shall be distributed to him or her outright and free of trust. Upon attaining the age of Thirty-five (35) years, the entire remaining balance of the grandchild's Trust share shall be distributed to the grandchild outright and free of trust. If a grandchild has already attained age Twenty-five (25), Thirty (30), or Thirty-five (35) at the division date, the Trustee shall, upon making the division, distribute to such

grandchild one-third (1/3), one-half (½), or all of his or her Trust share, respectively.

(iv) If prior to full distribution a grandchild becomes deceased, his or her remaining share shall be distributed outright equally to his or her issue who are then living under the same terms and conditions as set forth in this section or, if there are no then living issue of the grandchild, his or her remaining share shall be distributed outright to TERI GALE GALARDI pursuant to the terms of Section 5.3(a), above.

5.4 **Charging Advances Against Beneficiary's Distributive Shares.** Whenever any Trust assets here under are being divided into shares and, under the provisions of this trust, the share of any person in such assets is required to be charged with any advance (with or without interest on such advance), the actual charging of such advance against such share shall be accounted for on a hotchpot basis; that is, as though the amount of such advance (based on fair market values at the effective date of such advance and including interest thereon, if so provided) were a part of an increase in the Trust assets being divided into shares and as though the amount of such advance had been allocated to and represented a prior partial distribution toward the share of the person who is charged with such advance. Likewise, whenever any Trust assets hereunder are being divided into shares and there is included among those assets a promissory note receivable (or similar monetary obligation due the Trust involved) which its Trustees determine is owed directly or indirectly by any person who is directly or indirectly a beneficiary of one of those shares, (i) such receivable shall be valued at its then face amount (including accrued but unpaid interest thereon, if any) and (ii), in the making of such division into shares, such receivables shall be allocated at such value to the share in which such debtor has a direct or indirect interest (at least insofar as the size of such share permits such allocation).

5.5 **Generation Skipping Trusts**. If the special generation skipping transfer tax exemption election provided by Section 2652(a)(3) of the Internal Revenue

Code (Code) is exercised as to any property held in this Trust or if this Trust is receiving property from any other Trust to which the special election has been made, the Trustee is authorized, at any time in the exercise of absolute discretion, to set apart such property in a separate trust so that its inclusion ratio, as defined in Section 2642(a) of the Code is or remains zero. If such Trust(s) is (are) created then any estate or death taxes as well as any discretionary distributions to the Children of the Trustor shall be first charged against and paid out of the principal of the Trust(s) as to which the special election provided by Section 2652(a)(3) is not applicable.

5.6 **Last Resort Clause**. In the event that the principal of the Trust administered under this Article V is not disposed of under the foregoing provisions, the remainder, if any, shall be distributed, outright and free of Trust, to the heirs at law of JACK HAROLD EDWARD GALARDI, their identities and shares to be determined according to the laws of the State of Nevada then in effect relating to the intestate succession of separate property.

## ARTICLE VI

## TRUSTEE'S DISCRETION ON DISTRIBUTION TO PRIMARY BENEFICIARIES

6.1 **Delay of Distribution**. Notwithstanding the distribution provisions of Article V, the following powers and directions are given to the Trustee:

(a) If, upon any of the dates described in Article V, the Trustee for any reason described below determines, in the Trustee's sole discretion, that it would not be in the best interest of the beneficiary that a distribution take place, then in that event the said distribution shall be totally or partially postponed until the reason for the postponement has been eliminated. During the period of postponement, the Trustee shall have the absolute discretion to distribute income or principal to the beneficiary as the Trustee deems advisable for the beneficiary's welfare.

(b) If said causes for delayed distribution are never removed, then the Trust share of that beneficiary shall continue until the death of the beneficiary and

then be distributed as provided in this Trust Instrument. The causes of such delay in the distribution shall be limited to any of the following:

(1) The current involvement of the beneficiary in a divorce proceeding or a bankruptcy or other insolvency proceeding.

(2) The existence of a large judgment against the beneficiary.

(3) Chemical abuse or dependency, or the conviction of the beneficiary of a felony, involving drugs or narcotics, unless a five year period has followed said conviction.

(4) The existence of any event that would deprive the beneficiary of complete freedom to expend the distribution from the Trust estate according to his or her own desires.

(5) In the event that a beneficiary is not residing in the United States of America at any given time, then the Trustee may decline to transmit to him or her any part or all of the income and shall not be required to transmit to him or her any of the principal if, in the Trustee's sole and uncontrolled judgment, the political and/or economic conditions of such place of residence of the beneficiary are such that it is likely the money would not reach him or her, or upon reaching him or her, would be unduly taxed, seized, confiscated, appropriated, or in any way taken from him or her in such a manner as to prevent his or her use and enjoyment of the same.

(6) The judicially declared incompetency of the beneficiary.

(c) The Trustee shall not be responsible unless the Trustee has knowledge of the happening of any event set forth above.

(d) To safeguard the rights of the beneficiary, if any distribution from his or her Trust share has been delayed for more than one (1) year, he or she may apply to the District Court in Las Vegas, Nevada, for a judicial determination as to whether the Trustee has reasonably adhered to the standards set forth herein. The Trustee shall not have any liability in the event the Court determines the Trustee made a good faith attempt to reasonably follow the standards set forth above.

## ARTICLE VII

## PROVISIONS RELATING TO TRUSTEESHIP

7.1 **Successor Trustee**. In the event of the death or incapacity of the original Trustee, TERI GALE GALARDI shall serve as the Successor Trustee of all of the Trusts hereunder. In the event of the death or incapacity of TERI GALE GALARDI, EMELITA P. SY and DANIEL GEIGER shall serve as the Successor co-Trustees of all of the Trusts hereunder. If either of them should become deceased, unable or unwilling to serve as a Successor co-Trustee, then MARICAR A. MARTINEZ shall serve as Successor co-Trustee with the survivor of EMELITA P. SY or DANIEL GEIGER of all of the Trusts hereunder. If the other of them and MARICAR A. MARTINEZ should become deceased, unable or unwilling to serve as a Successor co-Trustee, the survivor of EMELITA P. SY, DANIEL GEIGER or MARICAR A. MARTINEZ shall serve as sole Successor Trustee of all of the Trusts hereunder. In determining the incapacity of any Trustee serving hereunder, the guidelines set forth in Section 3.1 may be followed.

If no Successor Trustee is designated to act in the event of the death, incapacity or resignation of the Trustee then acting, or no Successor Trustee accepts the office, the Trustee then acting if there is may appoint a Successor Trustee. If no such appointment is made, the majority of the adult beneficiaries entitled to distribution from this trust may appoint a Successor Trustee.

When Two (2) Successor Trustees are serving, and an agreement can not be reached between them, the Trust Consultant, defined below, shall make the deciding vote.

7.2 **Trust Consultant**. During the lifetime of the Trustor, Gregory S. Smith (herein known as the "Consultant" to the Trust) shall have the right and power by giving ten (10) days written notice to the Trustee to remove any Trustee named herein (except the Trust Consultant may not remove the Trustor as a Trustee

hereunder) or any Successor Trustee, and to appoint either (1) an individual who is an "independent" Trustee pursuant to Internal Revenue Code Section 674, as amended, or (2) a Nevada bank or trust company to serve as Trustee or as Co-Trustees of the Trusts created hereunder. If any Trustee ceased to serve, the Trust Consultant shall have the power to appoint a successor Trustee as provided above. In the event the Trust Consultant shall fail to appoint a Successor Trustee, a majority of the adult beneficiaries may appoint a banking institution or trust company to so serve.

If no successor Trust Consultant is designated to act in the event of the death, incapacity or resignation of the Trust Consultant then acting, or no successor Trust Consultant accepts the office, the Trust Consultant then acting may appoint a successor Trust Consultant. If no such appointment is made, the majority of the adult beneficiaries entitled to distribution from this Trust may appoint a successor Trust Consultant.

7.3 **Liability Of Successor Trustee**. No Successor Trustee shall be liable for the acts, omissions, or default of a prior Trustee. Unless requested in writing within sixty (60) days of appointment by an adult beneficiary of the Trust, no Successor Trustee shall have any duty to audit or investigate the accounts or administration of any such Trustee, and may accept the accounting records of the predecessor Trustee showing assets on hand without further investigation and without incurring any liability to any person claiming or having an interest in the Trust.

7.4 **Acceptance By Trustee**. A Trustee shall become Trustee or Co-Trustee jointly with any remaining or surviving Co-Trustees, and assume the duties thereof, immediately upon delivery of written acceptance to Trustor, during his lifetime and thereafter to any Trustee hereunder, or to any beneficiary hereunder, if for any reason there shall be no Trustee then serving, without the necessity of any other act, conveyance, or transfer.

7.5 **Delegation By Trustee**. Any individual Co-Trustee shall have the right at any time, by an instrument in writing delivered to the other Co-Trustee, to delegate to such other Co-Trustee any and all of the Trustee's powers and discretion.

7.6 **Resignation Of Trustee**. Any Trustee at any time serving hereunder may resign as Trustee by delivering to Trustor, during his lifetime and thereafter to any Trustee hereunder, or to any beneficiary hereunder if for any reason there shall be no Trustee then serving hereunder, an instrument in writing signed by the resigning Trustee.

7.7 **Corporate Trustee**. During the Trust periods, if any, that a corporate Trustee acts as Co-Trustee with an individual, the corporate Trustee shall have the unrestricted right to the custody of all securities, funds, and other property of the Trusts and it shall make all payments and distributions provided hereunder.

7.8 **Majority**. Subject to any limitations stated elsewhere in this Trust Indenture, all decisions affecting any of the Trust estate shall be made in the following manner: While three or more Trustees, whether corporate or individual, are in office, the determination of a majority shall be binding. If only two Trustees are in office, they must act unanimously, except when at an impasse, then the Trust Consultant shall cast the deciding vote.

7.9 **Bond**. No bond shall ever be required of any Trustee hereunder.

7.10 **Expenses and Fees**. The Successor Trustee shall be reimbursed for all actual expenses incurred in the administration of any Trust created herein. The Successor Trustee shall be entitled to reasonable compensation for service rendered to the Trust. In no event, however, shall the fees exceed those fees that would have been charged by state or federal banks in the jurisdiction in which the Trust is being governed. However, any corporate Trustee shall be entitled to compensation for its services in accordance with its published fee schedule.

## ARTICLE VIII

## PROVISIONS RELATING TO TRUSTOR'S POWERS

8.1 **Power To Amend**. During the lifetime of the Trustor, this Trust Indenture may be amended in whole or in part by an instrument in writing, signed by the Trustor, and delivered to the Trustee. Upon the death of the Trustor, this Trust Indenture shall not be amended.

8.2 **Power To Revoke**. During the lifetime of Trustor, the Trustor may revoke this Trust Indenture by an instrument in writing, signed by the Trustor. Upon revocation, the Trustee shall deliver the revoked portion of the Trust property to the Trustor. Upon the death of the Trustor, this Trust Indenture shall not be revoked.

8.3 **Power To Change Trustee**. During the lifetime of the Trustor, he may change the Trustee or Successor Trustee of this Trust by an instrument in writing.

8.4 **Additions To Trust**. Any additional property acceptable to the Trustee may be transferred to this Trust. The property shall be subject to the terms of this Trust.

8.5 **Gift Program**. If the Trustor becomes legally incompetent, or if in the Trustee's judgment reasonable doubt exists regarding capacity, the Trustee is authorized in such Trustee's sole discretion to continue any gift program which the Trustor had previously commenced, to make use of the federal gift tax annual exclusion. Such gifts may be made outright or in trust.

## ARTICLE IX

## PROVISIONS RELATING TO TRUSTEE'S POWERS

9.1 **Management Of Trust Property**. With respect to the Trust property, except as otherwise specifically provided in this Trust, the Trustee shall have all

powers now or hereafter conferred upon trustees by applicable state law, and also those powers appropriate to the orderly and effective administration of the Trust. Any expenditure involved in the exercise of the Trustee's powers shall be borne by the Trust estate. Such powers shall include, but not be limited to, the following powers with respect to the assets in the Trust estate:

(a) To register any securities or other property held hereunder in the name of the Trustee or in the name of a nominee, with or without the addition of words indicating that such securities or other property are held in a fiduciary capacity, and to hold in bearer form any securities or other property held hereunder so that title thereto will pass by delivery, but the books and records of Trustee shall show that all such investments are part of his respective funds.

(b) To hold, manage, invest and account for the separate trusts in one or more consolidated funds, in whole or in part, as he may determine. As to each consolidated fund, the division into the various shares comprising such fund need be made only upon Trustee's books of account.

(c) To lease Trust property for terms within or beyond the term of the Trust and for any purpose, including exploration for and removal of gas, oil, and other minerals; and to enter into community oil leases, pooling and unitization agreements.

(d) To borrow money, mortgage, hypothecate, pledge or lease Trust assets for whatever period of time Trustee shall determine, even beyond the expected term of the respective Trust.

(e) To hold and retain any property, real or personal, in the form in which the same may be at the time of the receipt thereof, as long as in the exercise of his discretion it may be advisable so to do, notwithstanding same may not be of a character authorized by law for investment of trust funds.

(f) To invest and reinvest in his absolute discretion, and he shall not be restricted in his choice of investments to such investments as are permissible for fiduciaries under any present or future applicable law, notwithstanding that the same may constitute an interest in a partnership.

(g) To advance funds to any of the Trusts for any Trust purpose. The interest rate imposed for such advances shall not exceed the current rates.

(h) To institute, compromise, and defend any actions and proceedings.

(i) To vote, in person or by proxy, at corporate meetings any shares of stock in any Trust created herein, and to participate in or consent to any voting Trust, reorganization, dissolution, liquidation, merger, or other action affecting any such shares of stock or any corporation which has issued such shares of stock.

(j) To partition, allot, and distribute, in undivided interest or in kind, or partly in money and partly in kind, and to sell such property as the Trustee may deem necessary to make division or partial or final distribution of any of the Trusts.

(k) To determine what is principal or income of the Trusts and apportion and allocate receipts and expenses as between these accounts.

(l) To make payments hereunder directly to any beneficiary under disability, to the guardian of his or her person or estate, to any other person deemed suitable by the Trustees, or by direct payment of such beneficiary's expenses.

(m) To employ agents, attorneys, brokers, and other employees, individual or corporate, and to pay them reasonable compensation, which shall be deemed part of the expenses of the Trusts and powers hereunder.

(n) To accept additions of property to the Trusts, whether made by the Trustor, a member of the Trustor's family, by any beneficiaries hereunder, or by any one interested in such beneficiaries.

(o) To hold on deposit or to deposit any funds of any Trust created herein, whether part of the original Trust fund or received thereafter, in one or more savings and loan associations, bank or other financing institution and in such form of account, whether or not interest bearing, as Trustee may determine, without regard to the amount of any such deposit or to whether or not it would otherwise be a suitable investment for funds of a trust.

(p) To open and maintain safety deposit boxes in the name of this Trust.

(q) To make distributions to any Trust or beneficiary hereunder in cash or in specific property, real or personal, or an undivided interest therein, or partly in cash and partly in such property, and to do so without regard to the income tax basis of specific property so distributed. The Trustor

requests but does not direct, that the Trustee make distributions in a manner which will result in maximizing the aggregate increase in income tax basis of assets of the estate on account of federal and state estate, inheritance and succession taxes attributable to appreciation of such assets.

(r) The powers enumerated in NRS 163.265 to NRS 163.410, inclusive, are hereby incorporated herein to the extent they do not conflict with any other provisions of this instrument.

(s) The enumeration of certain powers of the Trustee shall not limit his general powers, subject always to the discharge of his fiduciary obligations, and being vested with and having all the rights, powers, and privileges which an absolute owner of the same property would have.

(t) The Trustee shall have the power to invest Trust assets in securities of every kind, including debt and equity securities, to buy and sell securities, to write covered securities options on recognized options exchanges, to buy-back covered securities options listed on such exchanges, to buy and sell listed securities options, individually and in combination, employing recognized investment techniques such as, but not limited to, spreads, straddles, and other documents, including margin and option agreements which may be required by securities brokerage firms in connection with the opening of accounts in which such option transactions will be effected.

(u) In regard to the operation of any closely held business of the Trust, the Trustee shall have the following powers:

(1) The power to retain and continue the business engaged in by the Trust or to recapitalize, liquidate or sell the same.

(2) The power to direct, control, supervise, manage, or participate in the operation of the business and to determine the manner and degree of the fiduciary's active participation in the management of the business and to that end to delegate all or any part of the power to supervise, manage or operate the business to such person or persons as the fiduciary may select, including any individual who may be a beneficiary or Trustee hereunder.

(3) The power to engage, compensate and discharge, or as a stockholder owning the stock of the Corporation, to vote for the engagement, compensation and discharge of such managers, employees, agents, attorneys, accountants, consultants or other

representatives, including anyone who may be a beneficiary or Trustee hereunder.

(4) The power to become or continue to be an officer, director or employee of a Corporation and to be paid reasonable compensation from such Corporation as such officer, director and employee, in addition to any compensation otherwise allowed by law.

(5) The power to invest or employ in such business such other assets of the Trust estate.

(v) To borrow money at interest rates then prevailing from any individual, bank or other source, irrespective or whether any such individual or bank is then acting as Trustee, and to create security interests in the Trust property by mortgage, pledge, or otherwise, to make a guaranty of, including a third party guaranty.

9.2 **Limitation on Discretionary Power**. The Trustee's discretion to distribute income and principal to a beneficiary who is also a Trustee shall be limited, with respect to such Trustee, to distributions for the beneficiary's health, education, maintenance and support.

9.3 **Power to Appoint Agent**. The Trustee is authorized to employ attorneys, accountants, investment managers, specialists, and such other agents as the Trustee shall deem necessary or desirable. The Trustee shall have the authority to appoint an investment manager or managers to manage all or any part of the assets of the Trust, and to delegate to said investment manager the discretionary power to acquire and dispose of assets of the Trust. The Trustee may charge the compensation of such attorneys, accountants, investment managers, specialists, and other agents against the Trust, including any other related expenses.

9.4 **Broad Powers Of Distribution**. After the death of the Trustor, upon any division or partial or final distribution of the Trust estate, the successor Trustee shall have the power to partition, allot and distribute the Trust estate in undivided interest or in kind, or partly in money and partly in kind, at valuations determined by the Trustee, and to sell such property as the Trustee, in the Trustee's discretion,

considers necessary to make such division or distribution. In making any division or partial or final distribution of the Trust estate, the Trustee shall be under no obligation to make a pro rata division or to distribute the same assets to beneficiaries similarly situated. Rather, the Trustee may, in the Trustee's discretion, make non pro rata divisions between Trusts or shares and non pro rata distributions to beneficiaries as long as the respective assets allocated to separate trusts or shares or the distributions to beneficiaries have equivalent or proportionate fair market value. The income tax basis of assets allocated or distributed non pro rata need not be equivalent and may vary to a greater or lesser amount, as determined by the Trustee, in his or her discretion, and no adjustment need be made to compensate for any difference in basis.

9.5 **Merger of Identical Trusts**. Should the Trustee of any separate trust hereunder at any time also be the Trustee of a trust having substantially identical dispositive provisions for the benefit of the same beneficiary or beneficiaries but created under some other trust agreement, such two identical trusts may, in the discretion of such Trustee, be merged together and thereafter administered as one single trust under the trust agreement having the earliest rule against perpetuities savings clause date. Where such a merger would be thus authorized but for differences in the identity of the contingent remainder beneficiaries of such otherwise mergeable trusts, such trusts may instead be consolidated together in a new trust created by the Trustee of such otherwise mergeable trusts under a new trust instrument executed by it having all of the same provisions as would apply to such a merger except those provisions relating to contingent remainder interests, which provisions shall be written in such manner as to preserve the relative interests of the different contingent remainder beneficiaries having an interest therein on the basis of the fair market value of the net assets of each trust entering into such consolidation as of the effective date of such consolidation as reasonably determined by such Trustee.

9.6 **Special Needs Trust.** If any beneficiary has any special needs where government assistance is utilized, and if any direct or indirect distribution from this Trust to or on behalf of the beneficiary may jeopardize the beneficiary's ability to qualify for government assistance, then the vesting of said beneficiary's share may, in the Trustee's discretion, be postponed until the Trustee(s) does as follows, if possible: the Trustee(s) is specifically empowered to place that beneficiary's share into a discretionary Special Needs Trust under the applicable state and federal statutes. The terms of the discretionary Special Needs Trust shall be such terms as are provided by default under the applicable state and federal statutes, as well as such other terms as are necessary in the discretion of the Trustee(s) in furtherance of the objectives of this Trust. If required, the Trustee(s) may seek court action to establish this discretionary sub-Trust.

9.7 **Apply For Government Assistance**. The Trustee shall have the power to deal with governmental agencies and to make applications for, receive and administer any of the following benefits, if applicable: Social Security, Medicare, Medicaid, Supplemental Security Income, In-Home Support Services, and any other government resources and community support services available to the elderly.

9.8 **Catastrophic Health Care Planning**. The Trustee shall have the power to explore and implement planning strategies and options and to plan and accomplish asset preservation in the event the Trustor needs long-term health and nursing care. Such planning shall include, but is not necessarily limited to, the power and authority to: (1) make home improvements and additions to the Trustor's family residence; (2) pay off, partly or in full, the encumbrance, if any, on the Trustor's family residence; (3) purchase a family residence, if the Trustor does not own one; (4) purchase a more expensive family residence; (5) make gifts of assets for estate planning purposes to the beneficiaries and in the proportions set forth in Article V.

## ARTICLE X

## SUBCHAPTER S STOCK

10.1 **S-Corporation Stock**. To the extent that any Trust created under this Instrument (for purposes of this Article an "Original Trust") owns or becomes the owner (or would but for this provision become the owner) of shares of stock of any then electing "S corporation" pursuant to Section 1361 et seq. of the Internal Revenue Code, or to the extent that any such Original Trust owns or becomes the owner of shares of stock of any "small business corporation" as defined in Section 1361 (b) of the Internal Revenue Code with respect to which the Trustees desire to continue, make, or allow to be made an S corporation election, the Trustees of such Trust shall have the power at any time, in such Trustees' sole and absolute discretion, the exercise of which shall not be subject to review by any person or court, to terminate said original Trust as to such shares of stock and to allocate, pay, and distribute (or cause to be allocated, paid, and distributed directly from any transferor) some or all of such shares of stock to either (i) a separate and distinct Qualified Subchapter S Trust pursuant to the provisions of paragraph 10.2 below, or (ii) a separate and distinct Electing Small Business Trust pursuant to the provisions of paragraph 10.3 below.

10.2 **Qualified Subchapter S Trust**. In the event shares of stock are allocated, paid, or distributed to a Qualified Subchapter S Trust pursuant to paragraph 10.1 above, such Trust and Trust fund shall be designated with the name of the same Beneficiary with whose name the Original Trust is designated (such Beneficiary with whose name the Original Trust is designated being for purposes of this Article the only "Beneficiary" of such trust) and shall be held pursuant to the same terms and conditions as the Original Trust, except that, notwithstanding any other provision in this Trust Indenture applicable to the Original Trust:

(a) Until the death of the Beneficiary of the Qualified Subchapter S Trust, the Trustees of such Qualified Subchapter S Trust shall pay and distribute to such Beneficiary and to no other person all of the net income of the Qualified Subchapter S Trust annually or at more frequent intervals. Any and all income accrued but not paid to the Beneficiary prior to the death of the Beneficiary shall be paid to the estate of the Beneficiary.

(b) Any distribution of principal from a Qualified Subchapter S Trust may be made only to the Beneficiary then entitled to receive income from such trust.

(c) The current income Beneficiary's income interest terminates on the earlier of the Beneficiary's death or the termination of the Qualified Subchapter S Trust. If the Qualified Subchapter S Trust terminates during the life of the Beneficiary, all Qualified Subchapter S Trust principal shall distribute to the income Beneficiary.

(d) Each Qualified Subchapter S Trust is intended to be a Qualified Subchapter S Trust, as defined in Section 1361 (d) of the Internal Revenue Code, as amended, or any successor provisions thereto. Accordingly, no Trustees of any Qualified Subchapter S Trust created pursuant to this Article shall have any power, the possession of which would cause any such Trust to fail to be a Qualified Subchapter S Trust; no power shall be exercisable in such a manner as to cause any such Trust to fail to be a Qualified Subchapter S Trust; and any ambiguity in this Trust Indenture shall be resolved in such a manner that each such trust shall be a Qualified Subchapter S Trust.

(e) The provisions of Articles V and VI shall have no application to the distribution of income from any Qualified Subchapter S Trust created or continued pursuant to the provisions of this Article.

(f) Any power provided in Articles V and VI of this Trust Indenture may be exercised with respect to any Qualified Subchapter S Trust created pursuant to this Article if and only if, or to the extent that, the exercise of any such power shall not violate the provisions of this Article and shall not impair or disqualify the Qualified Subchapter S Trust status of such trust.

10.3 **Electing Small Business Trust**. In the event shares of stock are allocated, paid, or distributed to an Electing Small Business Trust pursuant to paragraph 10.1 above, the Trustee shall make the proper Small Business Trust election, and such Trust and Trust fund shall be designated with a name chosen at the Trustee's

discretion, and shall be held pursuant to the same terms and conditions as the Original Trust except that, notwithstanding any other provision in this Trust Indenture applicable to the Original Trust:

(a) The Electing Small Business Trust shall not have as a beneficiary any person other than an individual or an estate, except that a charitable organization described in paragraph (2), (3), (4) or (5) of Section 170(c) of the Internal Revenue Code may hold a contingent interest.

(b) No interest in the Electing Small Business Trust may be acquired by purchase.

(c) Each Electing Small Business Trust is intended to be an Electing Small Business Trust, as defined in Section 1361(e) of the Internal Revenue Code, as amended, or any successor provisions thereto. Accordingly, no Trustees of any Electing Small Business Trust created pursuant to this Article shall have any power, the possession of which would cause any such Trust to fail to be a Electing Small Business Trust; no power shall be exercisable in such a manner as to cause any such Trust to fail to be an Electing Small Business Trust; and any ambiguity in this Trust Indenture shall be resolved in such a manner that each such trust shall be an Electing Small Business Trust.

10.4 **Effect on Beneficiaries.** In granting to the Trustee the discretion to create one or more Qualified Subchapter S Trusts and/or Electing Small Business Trusts as herein provided, the Trustor recognizes that the interest of present or future beneficiaries may be increased or diminished upon the exercise of such discretion.

## ARTICLE XI
## QUALIFIED PLANS AND IRA'S

11.1 Any Trust created hereunder may receive distributions from a Qualified Plan (as defined below). In the event a Trust which is named as a designated beneficiary of a Qualified Plan is subdivided into separate sub-trusts, the Trustee may, in the Trustee's discretion, allocate the Qualified Plan in such manner as the Trustee determines, provided that the Qualified Plan shall be allocated only to a

Trust which is or becomes irrevocable at the death of the owner of the Qualified Plan, and provided further that no allocation shall be made which would cause immediate income tax recognition of the Qualified Plan.

11.2 The Trustee is directed to take all steps necessary to qualify the Trust as a "designated beneficiary" for purposes of the minimum distribution rules set forth in § 401(a)(9) of the Code. This includes providing appropriate documentation to the plan administrator of each Qualified Plan (including the custodian of each individual retirement account) by October 31 of the calendar year immediately following the calendar year in which the Trustor's death occurs, consistent with the requirements of Treas. Reg. § 1.401(a)(9)-4, A-6.

11.3 The Trustee is further directed to receive annually from the Qualified Plan the minimum distribution amounts based on the beneficiary's life expectancy, and to immediately distribute such amounts to the beneficiary of the Trust or sub-Trust, as the case may be.

11.4 For purposes of this Article XI, the account balance in any Qualified Plan at the Trustor's death shall be considered Trust principal. Income from a Qualified Plan shall mean income in a trust accounting sense, determined under the provisions of this Declaration as if the Qualified Plan were a Trust, without regard to any provisions of the Code defining income for federal income tax purposes.

11.5 Notwithstanding any other provision of this Declaration, no debt, estate tax or expense of administration arising at the death of a trustor may be paid from a Qualified Plan for which a Trust created hereunder is designated as beneficiary. Estate taxes or GST taxes arising upon the death of a Trustor shall not be apportioned to assets held in a Qualified Plan except to the extent that failure to apportion taxes to assets of a Qualified Plan would cause a substantial disparity in the distribution of Trust assets among beneficiaries of the same class, in which case the taxes apportioned to the Qualified Plan shall be payable from other Trust assets distributable to the beneficiaries. In the alternative, rather than satisfying the taxes

from other assets of the Trust, a beneficiary whose interest in the assets of a Qualified Plan is subject to the burden of such taxes may pay the taxes personally if the beneficiary so chooses.

11.6 As used herein, the term "Qualified Plan" refers to any employee benefit plan or individual retirement arrangement that is allowed to accumulate any part of its earnings on an income tax deferred basis under the Code including, without limitation, plans described under I.R.C. § 401, I.R.C. § 403, I.R.C. 408, I.R.C. § 408A, and I.R.C. § 457. A Qualified Plan includes a plan that is reasonably believed to qualify under one or more such provisions of the Code, even if it is subsequently determined that such plan does not so qualify.

## ARTICLE XII
## PROTECTION OF AND ACCOUNTING BY TRUSTEE

12.1 **Protection**. The Trustee shall not be liable for any loss or injury to the property at any time held by him hereunder, except only such as may result from his fraud, willful misconduct, or gross negligence. Every election, determination, or other exercise by Trustee of any discretion vested, either expressly or by implication, in him, pursuant to this Trust Indenture, whether made upon a question actually raised or implied in his acts and proceedings, shall be conclusive and binding upon all parties in interest.

12.2 **Accounting**. Upon the written request delivered or mailed to the Trustee by an income beneficiary hereunder, the Trustee shall render a written statement of the financial status of the Trust. Such statement shall include the receipts and disbursements of the Trust for the period requested or for the period transpired since the last statement and the principal of the Trust at the end of such period. Statements need not be rendered more frequently than annually.

## ARTICLE XIII

## GENERAL PROVISIONS

13.1 **Controlling Law**. This Trust Indenture is executed under the laws of the State of Nevada and shall in all respects be administered by the laws of the State of Nevada; provided, however, the Trustee shall have the discretion, exercisable at any later time and from time to time, to administer any Trust created hereunder pursuant to the laws of any jurisdiction in which the Trustee may be domiciled, by executing a written instrument acknowledged before a notary public to that effect, and delivered to the then income beneficiaries. If the Trustee exercises the discretion, as above provided, this Trust Indenture shall be administered from that time forth by the laws of the other state or jurisdiction.

13.2 **Spendthrift Provision**. No interest in the principal or income of any trust created under this Trust Instrument shall be anticipated, assigned, encumbered or subjected to creditors' claims or legal process before actual receipt by a beneficiary. This provision shall not apply to the Trustor's interest in the Trust estate. The income and principal of this Trust shall be paid over to the beneficiary at the time and in the manner provided by the terms of this Trust, and not upon any written or oral order, nor upon any assignment or transfer by the beneficiary, nor by operation of law.

13.3 **Perpetuities Savings Clause**. Unless terminated earlier in accordance with other provisions of this trust, any trust hereby created or created by the exercise of any power hereunder shall terminate the later of, (1) Twenty-one (21) years after the death of the last survivor of the following: (a) the Trustor; (b) all the issue of Trustor who are living at the death of the Trustor; and (c) all named beneficiaries who are living at the death of the Trustor, or (2) upon the expiration of the maximum period authorized by the laws of the State of Nevada or the state by which the trust is then being governed. Upon such termination, the Trust estate,

and any accumulations thereon, shall be distributed to those persons and in the same proportions as the income of the trust is then being paid.

13.4 **No-Contest Provision**. The Trustor specifically desires that this Trust Indenture and these Trusts created herein be administered and distributed without litigation or dispute of any kind. If any beneficiary of these trusts or any other person, whether stranger, relative or heir, or any legatee or devisee under the Last Will and Testament of either the Trustor or the successors-in-interest of any such persons, including the Trustor's estate under the intestate laws of the State of Nevada or any other state lawfully or indirectly, singly or in conjunction with another person, seek or establish to assert any claim or claims to the assets of these Trusts established herein, or attack, oppose or seek to set aside the administration and distribution of the Trusts, or to invalidate, impair or set aside its provisions, or to have the same or any part thereof declared null and void or diminished, or to defeat or change any part of the provisions of the Trusts established herein, then in any and all of the above-mentioned cases and events, such person or persons shall receive One Dollar ($1.00), and no more, in lieu of any interest in the assets of the Trusts or interest in income or principal.

13.5 **Provision For Others**. The Trustor has, except as otherwise expressly provided in this Trust Indenture, intentionally and with full knowledge declined to provide for any and all of his heirs or other persons who may claim an interest in his respective estates or in these Trusts.

13.6 **Severability**. In the event any clause, provision or provisions of this Trust Indenture prove to be or be adjudged invalid or void for any reason, then such invalid or void clause, provision or provisions shall not affect the whole of this instrument, but the balance of the provisions hereof shall remain operative and shall be carried into effect insofar as legally possible.

13.7 **Physical Division of Property Not Necessary**. Physical segregation or division of the various trusts created hereunder is not required, except as may be

necessary by the termination of any such trust. The Trustee is required to keep separate accounts for the various undivided trusts.

13.8 **Distribution Of Small Trust**. If the Trustee, in the Trustee's absolute discretion, determines that the amount held in Trust is not large enough to be administered in Trust on an economical basis, then the Trustee may distribute the Trust assets free of Trust to those persons then entitled to receive the same; or in the case of a minor beneficiary, the Trustee may, in the Trustee's discretion, also distribute to a custodial account under the Uniform Transfers to Minors Act or similar account for the benefit of the minor beneficiary.

13.9 **Headings**. The various clause headings used herein are for convenience of reference only and constitute no part of this Trust Indenture.

13.10 **More Than One Original**. This Trust Indenture may be executed in any number of copies and each shall constitute an original of one and the same instrument.

13.11 **Interpretation**. Whenever it shall be necessary to interpret this Trust, the masculine, feminine and neuter personal pronouns shall be construed interchangeably, and the singular shall include the plural and the singular.

13.12 **Definitions**. The following words are defined as follows:

(a) **"Principal" and "Income"**. Except as otherwise specifically provided in this Trust Indenture, the determination of all matters with respect to what is principal and income of the Trust estate and the apportionment and allocation of receipts and expenses thereon shall be governed by the provisions of Nevada's Revised Uniform Principal and Income Act, or its equivalent, as it may be amended from time to time and so long as such Act does not conflict with any provision of this instrument. Notwithstanding such Act, no allowance for depreciation shall be charged against income or net income payable to any beneficiary.

(b) **"Education"**. Whenever provision is made in this Trust Indenture for payment for the "education" of a beneficiary, the term "education" shall be construed to include private schools, non profit and independent schools, pre-kindergarten through twelfth grade, include technical or trade schooling, college or postgraduate study, so long as pursued to advantage

by the beneficiary at an institution of the beneficiary's choice. In determining payments to be made for a beneficiary's education, the Trustees shall take into consideration the beneficiary's related living and traveling expenses to the extent that they are reasonable.

(c) **"Child, Children, Descendants or Issue"**. Except as otherwise set forth herein, as used in this instrument, the term "descendants" or "issue" of a person means all of that person's lineal descendants of all generations. The terms "child, children, descendants or issue" include adopted persons, but do not include a step-child or step-grandchild, unless that person is entitled to inherit as a legally adopted person.

(d) **"Tangible Personal Property"**. As used in this instrument, the term "tangible personal property" shall not include money, evidences of indebtedness, documents of title, securities and property used in a trade or business.

13.13 **Health Insurance Portability and Accountability Act Regulations**.

(a) **HIPAA Regulations Require Special Release and Consent.** The federal regulation known as the Health Insurance Portability and Accountability Act (HIPAA) regarding disclosure of individually identifiable health information necessitates a special release and consent authority to all healthcare providers before medical information will be released to agents of the patient. It is the Trustor's intent to be in compliance with HIPAA.

(b) **HIPAA Release Authority**. The Trustor hereby instructs that the Trustee(s) be treated as the Trustor wants to be treated with respect to the Trustor's rights and regarding the use and disclosure of the Trustor's individually identifiable health information or other medical records. This release authority applies to any information governed by the Health Insurance Portability and Accountability Act, 42 USC 1320d and 45 CFR 160-164.

(c) **Legal Consent for Disclosure of Health Care Information**. Any physician, healthcare professional, dentist, health plan, hospital, clinic, laboratory, pharmacy or other health care provider, any insurance company, the Medical Information Bureau Inc. or other health care clearinghouse that has provided treatment or services shall give, disclose and release to the Trustor's designated Trustee, without restriction, identifiable health information and medical records regarding any past, present or future medical or mental health condition, to include all

information relating to the diagnoses treatment of HIV/AIDS, sexually transmitted diseases, mental illness and drug or alcohol abuse.

(d) **Supersession of Prior Documents and Expiration Event**. The authority given the Trustee in this HIPAA legal consent shall supercede any prior agreements that the Trustor may have made with the Trustor's health care providers to restrict access or disclosure of the Trustor's individually identifiable health information. The authority given the Trustee has no expiration date and shall expire only in the event that the Trustor revokes the authority in writing and delivers it to the Trustor's health care provider.

(e) **Release and Hold Harmless Provision**. In order to induce the disclosing party to disclose the aforesaid private and/or protected confidential information, the Trustor hereby forever releases and holds harmless said disclosing party who relies on this instrument from any liability under confidentiality rules arising from HIPAA as a consequence of said disclosure.

EXECUTED on August 16th, 2012.

JACK E. GALARDI

**ACCEPTANCE BY TRUSTEE**

I certify that I have read the foregoing Declaration of Trust and understand the terms and conditions upon which the Trust estate is to be held, managed, and disposed of by me as Trustee. I accept the Declaration of Trust in all particulars and acknowledge receipt of the trust property described in Schedule "A" attached hereto, identified by my signature.

JACK E. GALARDI

STATE OF Georgia )
) ss.
COUNTY OF Fulton )

On AUGUST 15TH, 2012, before me, the undersigned, a Notary Public in and for such County and State, personally appeared JACK E. GALARDI, known to me to be Trustor and Trustee whose name is subscribed to the within instrument and who acknowledged to me that he executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year in this certificate first above written.

NOTARY PUBLIC

# EXHIBIT 2

EXHIBIT 2

Russell K. Bowler+
Andrew F. Dixon
Travis K. Twitchell
Sheldon A. Herbert
Christopher Harris
R. Jared Holt*

+Also admitted in Arizona
*Licensed in Utah only

BOWLER DIXON
& TWITCHELL LLP

ATTORNEYS AT LAW

3137 E. Warm Springs Rd.
Suite 100
Las Vegas, Nevada 89120
Telephone: (702) 436-4333
Telefax: (702) 260-8983

Email: bdt@bdtlawyers.com
Web address: www.bdtlawyers.com

March 4, 2015

***Via Certified Mail/***
***Return Receipt Requested***

Gregory S. Smith, Esq.
2520 Saint Rose Parkway, Suite 210
Henderson, Nevada 89074

**Re: JEG Family Trust**

Dear Mr. Smith:

Our law firm has been retained by Jack Galardi, Jr. to represent and advise him in his capacity as a beneficiary of the JEG Family Trust.

To ensure his adequate protection as beneficiary of the trust, Mr. Galardi will need an inventory of trust assets, as well as an accounting of the trust assets from the date of his father's death until the present time.

In addition, Mr. Galardi would like to receive a copy of the Form 706 estate tax return filed for his father's estate. Mr. Galardi also requests the trustee of the trust pay $10,000.00 from Mr. Galardi's sub-trust to our law firm as an initial retainer fee for reviewing the trust accounting and to possibly hire other professionals (such as an accountant) to ensure that his rights as a beneficiary are being adequately protected.

If you have any questions about the foregoing, please do not hesitate to contact me.

Sincerely,

BOWLER DIXON & TWITCHELL LLP

Travis K. Twitchell

# EXHIBIT 3

EXHIBIT 3



SMITH & SHAPIRO
ATTORNEYS AT LAW

March 20, 2015

Travis K. Twitchell, Esq.
Bowler Dixon & Twitchell
3137 E. Warm Springs Rd. Suite 100
Las Vegas, NV 89120

RE: JEG Family Trust

Dear Mr. Twitchell:

We are responding to your March 4th letter on behalf of Teri Galardi, Trustee of the JEG Family Trust and the JEG Family Trust - Jack Galardi Sub-Trust. The letter requests a copy of Form 706, and a retainer of $10,000.00.

Pursuant to our discussion, enclosed are the following items:

1) IRS Form 706 as originally filed and as unfiled (copies of appraisals are available for your inspection at the offices of Daniel Geiger, accountant at Nyberg and Associates).

2) Trust allocation schedule.

3) Teri Galardi, Trustee, shall be sending the retainer directly to you.

When the 706 was originally filed, we expected to amend the 706 because many appraisals were not yet finalized. However, the IRS issued a "no change" audit on the originally filed Return; therefore, the amended 706 was not filed. The Trust allocations, however, are based on the unfiled amended Return since those numbers reflect actual fair values. See the enclosed unfiled amended 706 for your review and comparison to the Trust Allocation.

If you have any questions, please feel free to call me.

SMITH & SHAPIRO, PLLC

GREGORY S. SMITH, ESQ.

GSS:car
cc: Teri Galardi, Trustee
Emelita Sy
Daniel Geiger

Russell K. Bowler+
Andrew F. Dixon
Travis K. Twitchell
Sheldon A. Herbert
Christopher Harris
R. Jared Holt*

+Also admitted in Arizona
*Licensed in Utah only

BOWLER DIXON & TWITCHELL LLP
ATTORNEYS AT LAW

Email: bdt@bdtlawyers.com
Web address: www.bdtlawyers.com

3137 E. Warm Springs Rd.
Suite 100
Las Vegas, Nevada 89120
Telephone: (702) 436-4333
Telefax: (702) 260-8983

March 4, 2015

***Via Certified Mail/***
***Return Receipt Requested***

Gregory S. Smith, Esq.
2520 Saint Rose Parkway, Suite 210
Henderson, Nevada 89074

**Re: JEG Family Trust**

Dear Mr. Smith:

Our law firm has been retained by Jack Galardi, Jr. to represent and advise him in his capacity as a beneficiary of the JEG Family Trust.

To ensure his adequate protection as beneficiary of the trust, Mr. Galardi will need an inventory of trust assets, as well as an accounting of the trust assets from the date of his father's death until the present time.

In addition, Mr. Galardi would like to receive a copy of the Form 706 estate tax return filed for his father's estate. Mr. Galardi also requests the trustee of the trust pay $10,000.00 from Mr. Galardi's sub-trust to our law firm as an initial retainer fee for reviewing the trust accounting and to possibly hire other professionals (such as an accountant) to ensure that his rights as a beneficiary are being adequately protected.

If you have any questions about the foregoing, please do not hesitate to contact me.

Sincerely,

BOWLER DIXON & TWITCHELL LLP

Travis K. Twitchell

**FINAL TRUST ASSET ALLOCATION FOR THE JACK GALARDI TRUST - Effective Date 12/1/2012 (Date of Death of Jack E. Galardi)**

** As approved by Trustee Terrie Galardi. All distributions subject to T. Galardi discretion

| Item Number | Item Description | Tax Value | Teri Galardi Trust | Jack Galardi Jr. Trust |
|---|---|---|---|---|
| | **SCHEDULE A** | | | |
| 1 | House and lot-760 Piedmont Avenue, Atlanta, GA and more specifically Dis 14, LI49, Lot 47. Piedmont Avenue, Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-1 | $ 728,000 | $ 728,000 | |
| 2 | Vacant land-1730 NW 33rd St., Pompano Beach, FL, and more specifically The Cigna Freshna Plat Two 128-41B Tract "A". Value per appraisal attached as Exhibit A-2. (Sold for 1.2M, 600k paid to Abromovitz) | 1,520,000 | 1,520,000 | - sold |
| 3 | House and lot-13922 NW 13th St, Pembroke Pines, FL. and more specifically Lot 25 Block 17 Pembroke Falls Phase #5 164-7B. Value per appraisal attached as Exhibit A-3 | 500,000 | 500,000 | - sold |
| 4 | Vacant land-20 acres, Moapa Valley, Clark County, NV and more specifically APN 071-18-601-015. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-4. | 20,000 | | 20,000 |
| 5 | Vacant land-2 parcels, Clark County NV and more specifically 2 acres APN 041-25-301-012 and 1 acre APN 041-25-301-013. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-5 | 48,000 | | 48,000 |
| 6 | Vacant land-2 gross acres, Clark County, NV and more specifically apn 041-36-201-029. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-6. | 39,000 | | 39,000 |
| 7 | Land and building-2112 Western Avenue, Las Vegas, NV and more specifically APN 162-04-302-006, 162-04-302-007, 162-04-403-001. Titled in the name of New International Properties, LLC. Value per appraisal . attached as Exhibit A-7. (cheetahs) . **Property offset by Mortgage owed to Jack Galardi Jr. Trust.** | 2,260,000 | 2,260,000 | |
| 8 | Land and building-2111 and 2121 Highland Avenue, Las Vegas, NV and more specifically APN 1652-04- 403-002 and 162-04-403-003. Titled in the name of New International Properties, LLC. Value per appraisal attached as Exhibit A-8. | 380,000 | 380,000 | |
| 9 | Vacant land-6.45 acres, Naples FL, and more specifically Royal Palm Golf Estates Replat #3 Tract B. Titled in the name of Jack E Galardi LLC. Value per appraisal attached as Exhibit A-9. | 84,000 | 84,000 | |
| 10 | House and lot, 8445 Shoreland Dr., Buford GA, and more specifically LI167, 8th District, Lots 1-2, Block C, H E Compton, Hall County. Value per appraisal attached as Exhibit A-I0. | 629,000 | 629,000 | - sold |
| 11 | House and lot, 18511 Royal Hammock Blvd.,Naples FL and more specifically Royal Palm Golf Estates Unit #1 Blk A Lot 66. Value per appraisal attached as Exhibit A-ll. | 230,000 | 230,000 | |
| 12 | 2 Unit Condominium warehouse/retail building located at 7951 and 7971 NW 33rd St., Doral, FL 33122 and more specifically Airport Ind Center Condo Whse Unit 1-B and 8-B-1 undivided 5% and 2.75% interest in common elements off rec Rec-11292-2134. Value per appraisal attached as Exh1bit A-12 (PINK PONY) | 755,000 | 755,000 | |
| 13 | Vacant land-Lot 58 on S/S Lake Hammond Dr, Naples FL and more specifically Royal Palm Golf Estates Replat #3 Lot 58. Titled in the name of Jack Galardi LLC. Value per appraisal attached as Exhibit A-13 | 21,000 | 21,000 | |
| 14 | Vacant land-1.47 acre residential lot-747-751 Scott Road, Forest Park, GA, and more specifically City of Forest Park Parcel ID# 13015D A012. Titled in the name of JEG Family Trust. Value per appraisal attached as Exh1bit A-14. | 30,000 | 30,000 | |
| 15 | Vacant land-.341 acres-775 Conley Rd. SE, Atlanta, GA and more specifically City of Atlanta, Parcel ID# 14-0032-LL-080-6 and City of Forest Park Parcel ID# 13015B B002A. Titled in the name of Walleye LLC. Value per appraisal attached as Exhibit A-15. | 135,000 | 135,000 | |
| 16 | Vacant land-.812 acres-3700 Jonesboro Rd SE, Atlanta GA and more specifically City of Atlanta Tax ID# 14 0032 LL0715 Titled in the name of JEG Family Trust. Value per appraisal attached as Exh1bit A-16 | 530,000 | 530,000 | - |

| | | | | |
|---|---|---|---|---|
| 17 | Vacant lot-1xx 15th St., Marathon, FL, and more specifically Parrish sub Marathon sub PB 2--18 S"ly lots 1 & 2 blk 2. Value per appraisal attached as Exhibit A-17. | 309,000 | 84,000 | 225,000 |
| 18 | Land and building,-1704 Hudson Bridge Rd., Stockbridge, GA and more specifically parcel ID 032-01012007. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-18 | 245,000 | 245,000 | sold |
| 19 | Land and building-3920 Jonesboro Road, Forest Park, GA and more specifically Clayton County parcel ID# 13015B 8002. Titled in the name of Walleye LLC. Value per appraisal attached as Exhibit A-19 | 650,000 | 650,000 | |
| 20 | Vacant land-425 Industrial Boulevard, McDonough, GA and more specifically Henry County, City of McDonough, Parcel ID# 093-01018005, Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-20 | 440,000 | | 440,000 |
| 21 | Land and buildings including personal property located at 18100 Royal Tree Parkway, Naples FL and more specifically APN 71370080006. Titled in the name of Jack E Galardi, LLC. Value per appraisal attached as Exhibit A-21 | 3,240,000 | 3,240,000 | |
| 22 | Land and building-1901 Mr. Joe White Avenue, Myrtle Beach SC and more specifically APN 18100-01-031. Value per appraisal attached as Exhibit A-22 | 3,475,000 | 3,475,000 | |
| 23 | Vacant land-Mokelumne Hill, Calaveral County, CA and more specifically APN 020-001-091. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit-A23 | 67,500 | | 67,500 |
| 24 | House and lot-201 Navarro Isle A.K.A. Gordon Rd., Ft. Lauderdale, FL., and more specifically Lot 7,8 Navarro Isle 15-40B. Property is titled in the name of JEG LV Qualified Peronal Residence Trust per appraisal, but was deeded to JEG Family Trust On July 20, 2012. Value per appraisal attached as Exhibit A-24. | 4,200,000 | | 4,200,000 |
| 25 | Land and building-29 NE 11th St., 1135 North Miami Avenue and adjacent vacant land, all located in Miami FL. This real estate is a part of a sale, agreed to prior to December 1, 2012 and consumated December 18, 2012. Value per closing statement attached as Exhibit A-25 (GOLD RUSH) | 4,500,000 | 4,500,000 | - sold |
| 26 | Land and building-973 Marietta Street, Atlanta GA. This property is a part of a sale, agreed to prior to December 1, 2012 and consumated September 18, 2013. Value per closing statement attached as Exhibit A-26 | 750,000 | 750,000 | - sold |
| 27 | Land and building-4766 Frontage Road, Forest Park, GA and more specifically APN 13044C A002. Titled in the name of JGP&P LLC. Value per appraisal attached as Exhibit A-27. (pink pony south) | 450,000 | 450,000 | |
| 28 | Vacant land-2.718 acres 10710 Walker Road, Thonotosassa, Hillsborough County, FL and more specifically, Parcel ID #U182820ZZZ000002096900 or Folio Number 061121-000. Value per appraisal attached as Exhibit A-28. See Dent Note of 400,000 at Schedule C | | | |
| 29 | Land and Building-1837 Corporate Boulevard, Atlanta GA. and more specifically APN 18-156-01-003.Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-29 | 2,491,946 | 2,491,946 | |
| 30 | Land-6220 E. Adamo Dr., Tampa FL and more specifically APN 81-96-15-000-0. Titled in the name of Galardi Rentals LLC. Appraisal forthcoming. | 5,000 | | 5,000 |
| 31 | Land and building-2610 Metropolitan Parkway, and more specifically Fulton County parcel ID's 14-0092-0003-058-6 and 14-0092-003-056-9. Titled in the name of Trinidad Creations, LLC. Value per appraisal attached as Exhibit A-31 | 1,600,000 | 1,600,000 | |
| 32 | Land and buildings-826 Knox Chapel Rd. Social Circle, Butts County, GA. And more specifically #C170-000000-0118-000. Titled in the name of Geno G's LLC, Value per appraisal attached. | 448,000 | 448,000 | |
| 33 | Land and buildings-4730 Frontage Road, Forest Park, GA and more specifically APN 13044C A002, Titled in the name of JGP&P LLC. Appraisal forthcoming. | 650,000 | 650,000 | |
| 34 | Land and building-211 New Goff Mountain Rd., Cross Lanes WV 25318 and more specifically Part Parcel A-10 91/100 Rocky Fork Relocated State Route 622 and B-10 Containing 36/1000 SW Cross Lanes Exit 64, Union District, Deed Book 2524, Page 366, Value per appraisal attached as Exhibit A-34 | 650,000 | | 650,000 rental |
| 35 | Condominium-354 Mcgill Pl, NE, Atlanta, GA 30312 and more specifically District 14 LL 47,Unit 354, Mcgill Place. Value per appraisal attached as Exhibit A-35 | 85,000 | 85,000 | |

**SCHEDULE B**

| No. | Description | | | | |
|---|---|---|---|---|---|
| 1 | 100% ownership - Trop, Inc., Appraisal in final review to be submitted upon receipt. Preliminary value provided by appraiser. (PINK PONY) | $ | 6,299,800 | 6,299,800 | |
| 2 | 100% ownership - Turntable Entertainment & Production Company, Inc. Appraisal in final review to be submitted upon receipt. Preliminary value provided by appraiser. | | 7,476,000 | 7,476,000 | |
| 3 | 100% ownership - Country Club, Inc. (a Georgia corporation. Appraisal in final review to be submitted upon receipt. Preliminary value provided by appraiser. | | 1,453,600 | 1,453,600 | |
| 4 | 100% ownership - Ponytail, Inc. 2555 Chantilly Drive, Atlanta, GA 30324. Appraisal in final review to be submitted upon receipt. Preliminary value provided by appraiser. | | 4,086,900 | 4,086,900 | |
| 5 | 100% ownership - Lafuente, Inc. 713 E Ogden St., Las Vegas, NV 89101. Appraisal in final review to be submitted upon receipt. Preliminary value provided by appraiser. | | 1,848,300 | 1,848,300 | |
| 6 | 100% ownership - Fly LOW, Inc. Appraisal in final review to be submitted upon receipt. Preliminary value provided by appraiser. (note - payments to fly low then to tst) | | 1,892,500 | 1,892,500 | |
| 7 | 100% ownership -Bella Mia, Inc. Value per appraisal attached as Exhibit B-7 (PINK PONY VEGAS) | | 865,700 | 865,700 | |
| 8 | 50% ownership -MBJG Inc. 2555 Chantilly Drive, Atlanta, GA. Value estimated. Appraisal forthcoming. | | 2,247,000 | 2,247,000 | |
| 9 | 100% ownership - Galardi Eagle Lakes LLC. Appraisal in final review to be submitted upon receipt. Preliminary value provided by appraiser. (GOLF COURSE) | | 2,070,000 | 2,070,000 | |
| 10 | 100% ownership - Country Club, Inc. (a South Carolina corporation). Appraisal in final review to be submitted upon receipt. Preliminary provided by the appraiser. | | 2,451,600 | 2,451,600 | |
| 11 | 100% ownership - LVA Management, Inc, 713 E. Ogden Street, Las Vegas, NV 89101. Value estimated. Appraisal forthcoming. | | 1,500,000 | 1,500,000 | |
| 12 | 100% ownership - Three Women, Inc.,Value estimated. Appraisal forthcoming. | | 200,000 | 200,000 | |
| 13 | 100% ownership - Candy Pink, Inc. 713 B. Ogden st., Las Vegas, NV 89101. Value estimated. Appraisal forthcoming. | | 10,000 | 10,000 | |
| 14 | 100% ownership -E & J Inc. Value estimated. Appraisal forthcoming. 43.33 acres. | | 25,000 | 25,000 | |
| 15 | 100% ownership -The Riviera Entertainment Group, Inc. Value estimated, Appraisal forthcoming. | | 1,000 | 1,000 | |
| 16 | 100% ownership - GFT Management and Consulting, Inc., Value estimated. Appraisal forthcoming. | | 10 | 10 | |
| 17 | 100% ownership - Extreme Tours, Inc. d/b/a Rebel Adventure Tours - 713 E. Ogden Street, Las Vegas, NV 89101. Value estimated, Appraisal forthcoming. | | 50,000 | 50,000 | |
| 18 | 100% ownership - WV Country Club, Inc., Value estimated. Appraisal forthcoming. | | 1,000 | 1,000 | |
| 19 | 100% ownership - GFT Management & Consulting, Inc. Value estimated, Appraisal forthcoming. | | 10,000 | 10,000 | |
| 20 | 50% ownership - Jacmak LLC Value estimated. Appraisal forthcoming. | | 1,000 | 1,000 | |
| 21 | 100% ownership - Mia Luna, Inc. Value estimated. Appraisal forthcoming. | | 1,000 | 1,000 | |
| 22 | 18,000 shares - Sirius XM Radio Inc. common. CUSIP 98375YAU0 | | 50,220 | | 50,220 |

**SCHEDULE C**

| No. | Description | | | |
|---|---|---|---|---|
| 1 | Cash on hand | $ | 20,000 | 20,000 |
| 2 | Nevada State Bank-230 Las Vegas Blvd South, Las Vegas, NV checking account | | 1,136 | 1,136 |
| 3 | Bank of North Las Vegas - 6385 Simmons St., North Las Vegas, NV checking account. | | 351 | 351 |
| 4 | Wells Fargo Bank - 1700 East Charleston Ave., Las Vegas, NV | | 1,041 | 1,041 |

| | | | | | |
|---|---|---|---|---|---|
| 5 | Note receivable-James I Dent and Willye Dent, 17817 Simms Road, Odessa FL, 33556, The note is dated September 16, 2011, payable monthly, interest only, with interest computed at 5.25% per annum. The note matures September 14, 2018 and is secured by real estate located in Hillsborough County, FL. | | 400,000 | | 400,000 int only |
| 6 | Accrued interest on Note receivable from James I Dent and Willya M Dent, $400,000 @5.25% per annum from November 15, 2012 to December 1, 2012, or 17 days. | | 978 | 978 | |

**SCHEDULE F**

| | | | | | |
|---|---|---|---|---|---|
| 1 | 31 Work and collectible vehicles known as the Circle G Ranch Automobile Collection, Value per appraisal attached as Exhibit F-1 | $ | 1,031,455 | 1,031,455 | |
| 2 | Contents, 2200 Waldman Avenue, Las Vegas, NV. Value per appraisal attached as Exhibit F2 | | 85,047 | | 85,047 |
| 3 | Contents, 4205 Gordon Avenue, Ft. Lauderdale, FL. Appraisal forthcoming. | | 75,000 | | 75,000 |
| 4 | Contents, 760 Piedmont Avenue, Atlanta, GA. Appraisal forthcoming. | | 75,000 | 75,000 | |
| 5 | Cash bond established on appeal of judgement in the Navada Supreme Court, On May 13, 2013 | | 2,227,626 | 2,227,626 | |
| 6 | Accrued interest on cash bond - Item F5 from April 21,2011 through December 1, 2012 | | 188,401 | 188,401 | |
| 7 | Gun Collection, Jewelry and other personal items - appraisals forthcoming_ | | 120,000 | 120,000 | - |
| 8 | 1.1192569% interest in Dominium Elwood Villas, L.P. - 2905 Northwest Blvd., ste 150, Plymouth MN. Estimated value. | | | - | - |
| 9 | 2007 Gift tax paid for which credit is being allowed. See Schedule G. | | 655,700 | 491,775 | 163,925 |
| 10 | 100% ownership in Hazeleyes LLC - (a disregarded entity) value estimated, appraisal forthcoming. | | 5,000 | 5,000 | |
| 11 | 100% ownership - New International Properties, LLC., 713 East Ogden st., Las vegas, NV. The only asset is real estate subject to a mortgage. Value of the real estate is reflected on Schedule A7 and A8. Liability is reflected on Schedule G2. | | | | |
| 12 | 100% ownership - Jack E Galardi, LLC., The only assets are real estate subject to mortgages. Values of the real estate are reflected on Schedule A9, A11, A12, and A21. Mortgages are reflected on Schedule K9 and K10 | | | | |
| 13 | 100% ownership - Walleye, LLC, The only asset is real estate subject to a mortgage. The value of the real estate is reflected on Schedule A31. The mortgage is reflected on Schedule K | | | | |

**SCHEDULE G**

| | | | | | |
|---|---|---|---|---|---|
| 1 | House and lot-1245 Rancho Dr, Las Vegas, NV, and more specifically Parcel map, pg 28 & part NW4 sec 04 21 61. Property is titled in the name of Jeg LV Qual Personal Res Trust. Value per appraisal attached as Exhibit G2-1 | $ | 2,000,000 | | 2,000,000 |
| 2 | House and lot-2211 Edgewood Ave, Las Vegas, NV more specifically Parcel map File 31, page 28, Lot 1. Value per appraisal attached as Exhibit G2-2 | | 330,000 | 330,000 | |
| 3 | Vacant land-Hwy 42 South, Flovilla GA and more specifically LL33,34 of the 4th LD, cont. 51.71 acres, See Deed Book 638-160. Deeded to JEG FL Qualified Personal Residence Trust, shown on apprasal as owned by Circle G Holdings, LLC. Value per appraisal attached as Exhibit G2-3 | | 101,000 | 101,000 | |
| 4 | Vacant land-Hwy 42 South, Flovilla GA and more specifically LL33,34 of the 4th LD, cont. 50 acres. See Deed Book 484-524. Deeded to JEG FL Qualified Personal Residence Trust. Shown on appraisal as owned by Circle G Holdings, LLC, Value per appraisal attached as Exhibit G2-4 | | 79,000 | 79,000 | |
| 5 | House and lot-Highway 42 S, Flovilla, GA and more specifically LL33,34,35,56,63,64 of the 4th LD, cont. 109.364 acres, Tract A & D. See Deed Book 638-160. Deeded to JEG FL Qualified Personal Residence Trust, shown on appraisal as titled in the name of Circle G Holdings. | | 2,450,000 | 2,450,000 | |

**SCHEDULE J**

| # | Description | | | | |
|---|---|---|---|---|---|
| 1 | West Memorials 2481 Brood Ave., Memphis, TN 38112 | $ | (509,013) | (509,013) | |
| 2 | Horticulture Consultation and Desig | | (78,725) | (78,725) | |
| 3 | Wrights Appraisals. 211 Theall St. Sonora CA. - Real Estate appraisal. | | (750) | (750) | |
| 4 | Auto Appraisal Network, Inc. 19 Spectrum Pointe Dr. #605 Lake Forest, CA 92630 - Vehicle appraisals | | (3,100) | (3,100) | |
| 5 | Oracle Real Estate Services, Inc. 3544 Haberdham St., Tucker, GA 30084 - Real estate appraisals | | (14,050) | (14,050) | |
| 6 | David Arenaz CAGA International Estate Auctions 900 Las Vegas Blvd S., Las Vegas NV 89101. Personal property appraisal | | (760) | (760) | |
| 7 | Landauer Valuation & Advisory 1551 N Tustin Ave., Santa Ana, CA - Real estate appraisals | | (20,500) | (20,500) | |
| 8 | Pritchett, Ball & Wise, Inc. 2295 Parklake Dr,Atlanta GA 30345 - Real estate appraisals | | (3,000) | (3,000) | |
| 9 | Casey Dean Elsnor 34 Mutiny Place, Key Largo, FL 33037 - Real estate appraisal | | (800) | (800) | |
| 10 | Dover Realty 464 W 3rd St, Jackson, GA 30233 Real estate appraisals | | (5,100) | (5,100) | |
| 11 | Bloom Sugarman Everett LLP 977 Ponce De Leon Ave., Atlanta, GA-Real estate appraisal | | (12,000) | (12,000) | |
| 12 | Balsiero & Associates Inc PO Box 10725 Tampa, FL 33624 Real Estate appraisal | | (1,800) | (1,800) | |

**SCHEDULE K - Debts of the Decedent**

| # | Description | | | | |
|---|---|---|---|---|---|
| 1 | United States Treasury - 2012 income tax liability-estimated | $ | (2,000,000) | (2,000,000) | |
| 2 | United States Treasury-2011 amended Federal Income Tax Return | | (508,692) | (508,692) | |
| 3 | Accured Interest and penalty on 2011 amended Federal Income Tax Return -estimated | | (12,041) | (12,041) | |
| 4 | United States Treasury-2010 amended Federal income Tax return | | (407,468) | (407,468) | |
| 5 | Accrued interest and penalty on 2010 amended Federal Income Tax return -estimated | | (60,000) | (60,000) | |
| 6 | State of Georgia-2012 State Income Tax return -estimated | | (120,000) | (120,000) | |
| 7 | TEPC loan re: Florida Department of Taxation lein against item A25 | | (59,743) | (59,743) | |
| 8 | Property taxes due on Item A25 | | (57,812) | (57,812) | |
| 9 | Judgement payable to Naples Polaris LLC under appeal as of December 1, 2012. Posted cash bond is shown at item F5. | | (2,227,626) | (2,227,626) | |
| 10 | Accrued interest on judgment from April 21, 2011 through December 1, 2012 | | (188,401) | (188,401) | |
| 11 | Judgement payable to Abramovitz Investment Properties LLC under appeal in the Superior Court of the State of Arizona in and for County of Maricopa as of date of decedents death. | | (3,500,000) | (3,500,000) | |
| 12 | Loan payable MB/G, Inc. The debt was incurred in 2010 and is noninterest bearing. | | (308,638) | (308,638) | |
| 13 | EstateTax Payable on Form 706 | | (16,586,905) | (16,586,905) | |
| 14 | **Loan payable to Terri Galardi - Insurance Proceeds to Satisfy Tax Obligations** | | (2,000,000) | (2,000,000) | |

**SCHEDULE K - Mortgages and Liens**

| # | Description | | | | |
|---|---|---|---|---|---|
| 1 | CITI Mortgage -Original loan was $1,805,000. Interest is computed at 5.3% per annum. Secured by item G2 | $ | (1,330,451) | (1,330,451) | |
| 2 | Sifts Companies -Original loan was $1,200,000. Interest is 8.5% per annum Secured by item A7 (CHEETAH's loan) | | (796,148) | (796,148) | |
| 3 | United Western Mortgage -Original loan was $2,000,000. Interest is 8.3% per annum. Secured by item A-24 | | (561,093) | (561,093) | |
| 4 | Wachovia Bank -Original loan was $980,000. Interest is 7.5% per annum. Secured by item G12. | | (570,973) | (570,973) | |
| 5 | Harrington State Bank -Original loan was $500,000, Interest is 5.5% per annum. Secured by item A18. | | (397,582) | (397,582) | sold |
| 6 | H Earl. and Phyllis J Burcett -Original loan was $400,000. Interest is 8% per annum. Secured by item A29 | | (38,657) | (38,657) | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 7 | James E Hammock -Original loan was $400,000. Interest is 6% per annum. Secured by Item A27. | (337,583) | (337,583) | | | |
| 8 | Chase Mortgage -Original loan was $440,000. Interest is 6.7% per annum. Secured by Item A10. | (391,549) | (391,549) | sold | | |
| 9 | TransCapital Bank -Original loan was $2,600,000. Interest is 8.5% per annum. Secured by Item A21. | (2,450,381) | (2,450,381) | | | |
| 10 | TransCapital Bank - Original loan was $1,200,000. Interest is at 6% per annum Secured by item A21 | (1,142,413) | (1,142,413) | | | |
| 11 | InterAmerican Bank -Original loan was $2,000,000. Interest is 9.2% per annum. Secured by Item A25 (GOLD RUSH) | (1,362,863) | (1,362,863) | sold | | |
| 12 | TransCapital Bank -Original loan was $4,000,000. Interest is 7.5% per annum. Secured by Item G3 | (3,411,325) | | (3,411,325) | | |
| 13 | Business First Bank Secured by Item A33 | (1,607,829) | (1,607,829) | | | |
| 14 | Tumlin Enterprises Secured by Item A30 | (993,045) | (993,045) | | | |
| 15 | Key Bank - secured by item A22 | (576,029) | (576,029) | | | |
| 16 | Wells Fargo Bank- Secured by Item A3 | (692,830) | (692,830) | | | |
| **Specific Bequests** | | | | | | |
| 1 | Individual Bequests Per Jack Galardi Trust Instrument | (1,165,000) | (1,165,000) | | | |
| | Remove Gift tax paid | (655,700) | (655,700) | | | |
| | Gun collection to mike | (120,000) | (120,000) | | | |
| | Loan payable from Terri Galardi (Cheetahs Mortgage) | | (1,688,742) | 1,688,742 | | |
| | Gift tax paid by teri owed to teri | (280,000) | (280,000) | | | |
| | | | | | check | check |
| | **TOTAL** | $ 26,984,436 | $ 20,238,327 | $ 6,746,109 | $ 26,984,436 | $ - |
| | TARGET | | 20,238,327 | 6,746,109 | | |
| | OVER/UNDER TARGET | | - | - | | |

I, the undersigned, Trustee of the JEG Family Trust, approve and adopt the above Trust Allocations, effective 12/1/2012

Teri G. Galardi, Trustee of the JEG Family Trust, and Teri and Jack Jr. Sub Trusts.

11-7-14
Date

PROTECTIVE ELECTION UNDER ... DETAIL ... ATTACHED

Form **706** (Rev. August 2012) Department of the Treasury Internal Revenue Service

# United States Estate (and Generation-Skipping Transfer) Tax Return

▶ Estate of a citizen or resident of the United States (see instructions). To be filed for decedents dying after December 31, 2011, and before January 1, 2013.
▶ Information about Form 706 and its separate instructions is at www.irs.gov/form706.

OMB No. 1545-0015

## Part 1—Decedent and Executor

| | |
|---|---|
| 1a Decedent's first name and middle initial (and maiden name, if any) | Jack E |
| 1b Decedent's last name | Galardi |
| 2 Decedent's SSN | 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 |
| 3a County, state, and ZIP or foreign country and postal code, of legal residence (domicile) at time of death | Butts, GA 30216 |
| 3b Year domicile established | 2012 |
| 4 Date of birth | 04/30/1930 |
| 5 Date of death | 12/01/12 |
| 6a Name of executor (see instructions) | Teri Gale Galardi |
| 6b Executor's address (number and street including apartment or suite no.; city, town, or post office; state; country; and ZIP or postal code) and phone no. | 2146 Hwy 42 FLOVILLA GA 30216 Phone no. 404-607-8050 |
| 6c Executor's social security number (see instructions) | 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 |
| 6d If there are multiple executors, check here ☐ and attach a list showing the names, addresses, telephone numbers, and SSNs of the additional executors. | |
| 7a Name and location of court where will was probated or estate administered | Butts County Jackson, GA |
| 7b Case number | |
| 8 If decedent died testate, check here ▶ ☒ and attach a certified copy of the will. | |
| 9 If you extended the time to file this Form 706, check here ▶ ☒ | |
| 10 If Schedule R-1 is attached, check here ▶ ☐ | |
| 11 If you are estimating the value of assets included in the gross estate on line 1 pursuant to the special rule of Reg. section 20.2010-2T(a) (7)(ii), check here ▶ ☐ | |

COPY

## Part 2—Tax Computation

| Line | Description | | Amount |
|---|---|---|---|
| 1 | Total gross estate less exclusion (from Part 5—Recapitulation, item 13) | | 75,409,987 |
| 2 | Tentative total allowable deductions (from Part 5—Recapitulation, item 24) | | 23,115,545 |
| 3a | Tentative taxable estate (subtract line 2 from line 1) | | 52,294,442 |
| b | State death tax deduction | | |
| c | Taxable estate (subtract line 3b from line 3a) | | 52,294,442 |
| 4 | Adjusted taxable gifts (see instructions) | | 2,090,145 |
| 5 | Add lines 3c and 4 | | 54,384,587 |
| 6 | Tentative tax on the amount on line 5 from Table A in the instructions | | 19,015,405 |
| 7 | Total gift tax paid or payable (see instructions) | | 655,700 |
| 8 | Gross estate tax (subtract line 7 from line 6) | | 18,359,705 |
| 9a | Basic exclusion amount | 5,120,000 | |
| 9b | Deceased spousal unused exclusion (DSUE) amount from predeceased spouse(s), if any (from Section D, Part 6-Portability of Deceased Spousal Unused Exclusion) | | |
| 9c | Applicable exclusion amount (add lines 9a and 9b) | 5,120,000 | |
| 9d | Applicable credit amount (tentative tax on the amount in 9c from Table A in the instructions) | 1,772,800 | |
| 10 | Adjustment to applicable credit amount (May not exceed $6,000. See instructions.) | 0 | |
| 11 | Allowable applicable credit amount (subtract line 10 from line 9d) | | 1,772,800 |
| 12 | Subtract line 11 from line 8 (but do not enter less than zero) | | 16,586,905 |
| 13 | Credit for foreign death taxes (from Schedule P). (Attach Form(s) 706-CE.) | | |
| 14 | Credit for tax on prior transfers (from Schedule Q) | | |
| 15 | Total credits (add lines 13 and 14) | | |
| 16 | Net estate tax (subtract line 15 from line 12) | | 16,586,905 |
| 17 | Generation-skipping transfer (GST) taxes payable (from Schedule R, Part 2, line 10) | | |
| 18 | Total transfer taxes (add lines 16 and 17) | | 16,586,905 |
| 19 | Prior payments (explain in an attached statement) | | 3,000,000 |
| 20 | Balance due (or overpayment) (subtract line 19 from line 18) | | 13,586,905 |

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer other than the executor is based on all information of which preparer has any knowledge.

**Sign Here**

▶ Signature of executor ▶ Date 03/03/14

▶ Signature of executor ▶ Date

**Paid Preparer Use Only**

| | |
|---|---|
| Print/Type preparer's name | Daniel Geiger |
| Preparer's signature | Daniel Geiger |
| Date | 03/03/14 |
| Check ☐ if self-employed | |
| PTIN | P01265326 |
| Firm's name ▶ | Nyberg & Associates |
| Firm's EIN ▶ | 88-0394581 |
| Firm's address ▶ | 2850 S Jones Blvd Ste 2 Las Vegas, NV 89146 |
| Phone no. | 702-795-7990 |

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## Part 4—General Information (continued)

| If you answer "Yes" to any of the following questions, you must attach additional information as described. | Yes | No |
|---|---|---|
| 10 Did the decedent at the time of death own any property as a joint tenant with right of survivorship in which (a) one or more of the other joint tenants was someone other than the decedent's spouse, and (b) less than the full value of the property is included on the return as part of the gross estate? If "Yes," you must complete and attach Schedule E | | X |
| 11a Did the decedent, at the time of death, own any interest in a partnership (for example, a family limited partnership), an unincorporated business, or a limited liability company; or own any stock in an inactive or closely held corporation? | X | |
| b If "Yes," was the value of any interest owned (from above) discounted on this estate tax return? If "Yes," see the instructions on reporting the total accumulated or effective discounts taken on Schedule F or G | | X |
| 12 Did the decedent make any transfer described in sections 2035, 2036, 2037, or 2038? (see instructions) If "Yes," you must complete and attach Schedule G | X | |
| 13a Were there in existence at the time of the decedent's death any trusts created by the decedent during his or her lifetime? | X | |
| b Were there in existence at the time of the decedent's death any trusts not created by the decedent under which the decedent possessed any power, beneficial interest, or trusteeship? | | X |
| c Was the decedent receiving income from a trust created after October 22, 1986, by a parent or grandparent? | | X |
| If "Yes," was there a GST taxable termination (under section 2612) on the death of the decedent? | | X |
| d If there was a GST taxable termination (under section 2612), attach a statement to explain. Provide a copy of the trust or will creating the trust, and give the name, address, and phone number of the current trustee(s). | | |
| e Did the decedent at any time during his or her lifetime transfer or sell an interest in a partnership, limited liability company, or closely held corporation to a trust described in lines 13a or 13b? | | X |
| If "Yes," provide the EIN for this transferred/sold item. ▶ | | |
| 14 Did the decedent ever possess, exercise, or release any general power of appointment? If "Yes," you must complete and attach Schedule H | | X |
| 15 Did the decedent have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account? | | X |
| 16 Was the decedent, immediately before death, receiving an annuity described in the "General" paragraph of the instructions for Schedule I or a private annuity? If "Yes," you must complete and attach Schedule I | | X |
| 17 Was the decedent ever the beneficiary of a trust for which a deduction was claimed by the estate of a predeceased spouse under section 2056(b)(7) and which is not reported on this return? If "Yes," attach an explanation | | X |

## Part 5—Recapitulation.

**Note.** If estimating the value of one or more assets pursuant to the special rule of Reg. section 20.2010-2T(a)(7)(ii), enter on both lines 10 and 23 the amount noted in the instructions for the corresponding range of values. (See instructions for details.)

| Item no. | Gross estate | | Alternate value | Value at date of death |
|---|---|---|---|---|
| 1 | Schedule A—Real Estate | 1 | | 30,097,500 |
| 2 | Schedule B—Stocks and Bonds | 2 | | 33,866,730 |
| 3 | Schedule C—Mortgages, Notes, and Cash | 3 | | 22,528 |
| 4 | Schedule D—Insurance on the Decedent's Life (attach Form(s) 712) | 4 | | 2,000,000 |
| 5 | Schedule E—Jointly Owned Property (attach Form(s) 712 for life insurance) | 5 | | 0 |
| 6 | Schedule F—Other Miscellaneous Property (attach Form(s) 712 for life insurance) | 6 | | 4,463,229 |
| 7 | Schedule G—Transfers During Decedent's Life (att. Form(s) 712 for life insurance) | 7 | | 4,960,000 |
| 8 | Schedule H—Powers of Appointment | 8 | | 0 |
| 9 | Schedule I—Annuities | 9 | | 0 |
| 10 | Estimated value of assets subject to the special rule of Reg. section 20.2010-2T(a)(7)(ii) | 10 | | 0 |
| 11 | Total gross estate (add items 1 through 10) | 11 | | 75,409,987 |
| 12 | Schedule U—Qualified Conservation Easement Exclusion | 12 | | 0 |
| 13 | Total gross estate less exclusion (subtract item 12 from item 11). Enter here and on line 1 of Part 2—Tax Computation | 13 | | 75,409,987 |

| Item no. | Deductions | | Amount |
|---|---|---|---|
| 14 | Schedule J—Funeral Expenses and Expenses Incurred in Administering Property Subject to Claims | 14 | 915,548 |
| 15 | Schedule K—Debts of the Decedent | 15 | 8,178,528 |
| 16 | Schedule K—Mortgages and Liens | 16 | 14,021,469 |
| 17 | Total of items 14 through 16 | 17 | 23,115,545 |
| 18 | Allowable amount of deductions from item 17 (see the instructions for item 18 of the Recapitulation) | 18 | 23,115,545 |
| 19 | Schedule L—Net Losses During Administration | 19 | |
| 20 | Schedule L—Expenses Incurred in Administering Property Not Subject to Claims | 20 | |
| 21 | Schedule M—Bequests, etc., to Surviving Spouse | 21 | |
| 22 | Schedule O—Charitable, Public, and Similar Gifts and Bequests | 22 | |
| 23 | Estimated value of deductible assets subject to the special rule of Reg. section 20.2010-2T(a)(7)(ii) | 23 | 0 |
| 24 | Tentative total allowable deductions (add items 18 through 23). Enter here and on line 2 of the Tax Computation | 24 | 23,115,545 |

ATTACHMENT
IRS Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return
Estate of Jack E. Galardi, SSN 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
Date of Death: December 1, 2012

**PROTECTIVE ELECTION TO USE ALTERNATE DATE VALUATION**

Pursuant to Treas. Reg. § 20.2032-1(b)(2), the executrix hereby makes a protective election to use alternate date valuation of the assets in the Estate of Jack Galardi should it be subsequently determined that a decrease in both the value of the gross estate and the sum (reduced by allowable credits) of the estate tax and the generation-skipping transfer tax liability payable by reason of the decedent's death with respect to the property includable in the decedent's gross estate will result from using alternate date valuation.

Date: ____________________ ________________________________________
TERI G. GALARDI, Executrix

Form 706 (Rev. 8-2012)

| Estate of: Jack E Galardi | Decedent's social security number 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 |
|---|---|

## Part 6—Portability of Deceased Spousal Unused Exclusion (DSUE)

### Portability Election

A decedent with a surviving spouse elects portability of the deceased spousal unused exclusion (DSUE) amount, if any, by completing and timely-filing this return. No further action is required to elect portability of the DSUE amount to allow the surviving spouse to use the decedent's DSUE amount.

### Section A. Opting Out of Portability

The estate of a decedent with a surviving spouse may opt out of electing portability of the DSUE amount. Check here and do not complete Sections B and C of Part 6 only if the estate opts NOT to elect portability of the DSUE amount. ☐

### Section B. QDOT

| | Yes | No |
|---|---|---|
| Are any assets of the estate being transferred to a qualified domestic trust (QDOT)? | | X |

If "Yes," the DSUE amount portable to a surviving spouse (calculated in Section C, below) is preliminary and shall be redetermined at the time of the final distribution or other taxable event imposing estate tax under section 2056A. See instructions for more details.

### Section C. DSUE Amount Portable to the Surviving Spouse (To be completed by the estate of a decedent making a portability election.)

Complete the following calculation to determine the DSUE amount that can be transferred to the surviving spouse.

| | | | |
|---|---|---|---|
| 1 | Enter amount from line 9c, Part 2—Tax Computation | 1 | |
| 2 | Enter amount from line 7, Part 2—Tax Computation | 2 | |
| 3 | Divide amount on line 2 by 35% (0.35). (do not enter less than zero) | 3 | |
| 4 | Add lines 1 and 3 | 4 | |
| 5 | Enter the amount from line 5, Part 2—Tax Computation | 5 | |
| 6 | Subtract line 5 from line 4 (do not enter less than zero) | 6 | |
| 7 | DSUE amount portable to the surviving spouse (Enter the lesser of line 6 or line 9a, Part 2—Tax Computation) | 7 | |

### Section D. DSUE Amount Received from Predeceased Spouse(s) (To be completed by the estate of a deceased surviving spouse with DSUE amount from predeceased spouse(s))

Provide the following information to determine the DSUE amount received from deceased spouses.

| A Name of Deceased Spouse (dates of death after December 31, 2010, only) | B Date of Death (enter as mm/dd/yy) | C Portability Election Made? Yes | C No | D If "Yes," DSUE Amount Received from Spouse | E DSUE Amount Applied by Decedent to Lifetime Gifts | F Year of Form 709 Reporting Use of DSUE Amount Listed in col E | G Remaining DSUE Amount, if any (subtract col. E from col. D) |
|---|---|---|---|---|---|---|---|
| **Part 1 — DSUE RECEIVED FROM LAST DECEASED SPOUSE** | | | | | | | |
| | | | | | | | |
| **Part 2 — DSUE RECEIVED FROM OTHER PREDECEASED SPOUSE(S) AND USED BY DECEDENT** | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| **Total** (for all DSUE amounts from predeceased spouse(s) applied) | | | | | | | |

Add the amount from Part 1, column D and the total from Part 2, column E. Enter the result on line 9b, Part 2—Tax Computation ▶

DAA

ATTACHMENT
IRS Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return
Estate of Jack E. Galardi, SSN 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
Date of Death: December 1, 2012

Page 2, Part 4 – General Information

Authorization to receive confidential tax information under Reg. section 601.504(b)(2)(i); to act as the estate's representative before the IRS; and to make written or oral presentations on behalf of the estate:

First Representative:

| | |
|---|---|
| Name: | Arthur Korth, Esquire |
| State: | New Jersey |
| Address: | Cooper Levenson, P.A.<br>1125 Atlantic Avenue, 3rd Floor<br>Atlantic City, NJ 08401-4806 |
| CAF Number: | 2605-14435R |
| Telephone Number: | (609) 572-7348 |

I declare that I am one of the attorneys for the executor. I am not under suspension or disbarment from practice before the Internal Revenue Service and am qualified to practice in the state shown above.

ARTHUR KORTH, ESQUIRE — Date: February 27, 2014

Second Representative:

| | |
|---|---|
| Name: | Robert E. Salad, Esquire |
| State: | New Jersey |
| Address: | Cooper Levenson, P.A.<br>1125 Atlantic Avenue, 3rd Floor<br>Atlantic City, NJ 08401-4806 |
| CAF Number: | 2005 15617R |
| Telephone Number: | (609) 572-7777 |

I declare that I am one of the attorneys for the executor. I am not under suspension or disbarment from practice before the Internal Revenue Service and am qualified to practice in the state shown above.

ROBERT E. SALAD, ESQUIRE — Date: February 27, 2014

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi | Decedent's social security number 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

## Part 3—Elections by the Executor

**Note.** For information on electing portability of the decedent's DSUE amount, including how to opt out of the election, see Part 6—Portability of Deceased Spousal Unused Exclusion.

**Note.** Some of the following elections may require the posting of bonds or liens.

**Please check "Yes" or "No" box for each question (see instructions).**

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Do you elect alternate valuation? | 1 | | X |
| 2 | Do you elect special-use valuation? If "Yes," you must complete and attach Schedule A-1 | 2 | | X |
| 3 | Do you elect to pay the taxes in installments as described in section 6166? If "Yes," you must attach the additional information described in the instructions. **Note. By electing section 6166 installment payments, you may be required to provide security for estate tax deferred under section 6166 and interest in the form of a surety bond or a section 6324A lien.** | 3 | X | |
| 4 | Do you elect to postpone the part of the taxes due to a reversionary or remainder interest as described in section 6163? | 4 | | X |

## Part 4—General Information

**Note.** Please attach the necessary supplemental documents. **You must attach the death certificate.** (See instructions)

Authorization to receive confidential tax information under Reg. section 601.504(b)(2)(i); to act as the estate's representative before the IRS; and to make written or oral presentations on behalf of the estate:

| Name of representative (print or type) | State | Address (number, street, and room or suite no., city, state, and ZIP code) |
|---|---|---|
| Schedule Attached | | |

I declare that I am the ☐ attorney/ ☐ certified public accountant/ ☐ enrolled agent (check the applicable box) for the executor. I am not under suspension or disbarment from practice before the Internal Revenue Service and am qualified to practice in the state shown above.

| Signature | CAF number | Date | Telephone number |
|---|---|---|---|
| | | | |

1 Death certificate number and issuing authority (attach a copy of the death certificate to this return).
034259

2 Decedent's business or occupation. If retired, check here ▶ ☐ and state decedent's former business or occupation.
Corporate executive

3a Marital status of the decedent at time of death:
☐ Married ☐ Widow/widower ☐ Single ☐ Legally separated ☒ Divorced

3b For all prior marriages, list the name and SSN of the former spouse, the date the marriage ended, and whether the marriage ended by annulment, divorce, or death. Attach additional statements of the same size if necessary.

Shirley Galardi 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 01/08/87 Divorce
Joyce Wombley 04/18/69 Divorce

| 4a Surviving spouse's name | 4b Social security number | 4c Amount received (see instructions) |
|---|---|---|
| None | | |

5 Individuals (other than the surviving spouse), trusts, or other estates who receive benefits from the estate (do not include charitable beneficiaries shown in Schedule O) (see instructions).

| Name of individual, trust, or estate receiving $5,000 or more | Identifying number | Relationship to decedent | Amount (see instructions) |
|---|---|---|---|
| See Statement 1 | | | 35,707,538 |
| | | | |
| | | | |
| | | | |
| | | | |
| All unascertainable beneficiaries and those who receive less than $5,000 ▶ | | | |
| Total | | | 35,707,538 |

**If you answer "Yes" to any of the following questions, you must attach additional information as described.**

| | | Yes | No |
|---|---|---|---|
| 6 | Is the estate filing a protective claim for refund? If "Yes," complete and attach two copies of Schedule PC for each claim. | | X |
| 7 | Does the gross estate contain any section 2044 property (qualified terminable interest property (QTIP) from a prior gift or estate)? (see instructions) | | X |
| 8a | Have federal gift tax returns ever been filed? If "Yes," attach copies of the returns, if available, and furnish the following information: | X | |
| b | Period(s) covered: See Statement 2 — c Internal Revenue office(s) where filed | | |
| 9a | Was there any insurance on the decedent's life that is not included on the return as part of the gross estate? | | X |
| b | Did the decedent own any insurance on the life of another that is not included in the gross estate? | | X |

DAA

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE A — Real Estate

- For jointly owned property that must be disclosed on Schedule E, see instructions.
- Real estate that is part of a sole proprietorship should be shown on Schedule F.
- Real estate that is included in the gross estate under sections 2035, 2036, 2037, or 2038 should be shown on Schedule G.
- Real estate that is included in the gross estate under section 2041 should be shown on Schedule H.
- If you elect section 2032A valuation, you must complete Schedule A and Schedule A-1.

**Note.** If the value of the gross estate, together with the amount of adjusted taxable gifts, is less than the basic exclusion amount and the Form 706 is being filed solely to elect portability of the DSUE amount, consideration should be given as to whether you are required to report the value of assets eligible for the marital or charitable deduction on this schedule. See the instructions and Reg. section 20.2010-2T (a)(7)(ii) for more information. If you are not required to report the value of an asset, identify the property but make no entries in the last three columns.

| Item number | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| 1 | House and lot-760 Piedmont Avenue, Atlanta, GA and more specifically Dis 14, LI49, Lot 47, Piedmont Avenue. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-1 | | | 728,000 |
| 2 | Vacant land-1730 NW 33rd St., Pompano Beach, FL, and more specifically The Cigna Freshna Plat Two 128-41B Tract "A". Value per appraisal attached as Exhibit A-2. | | | 1,520,000 |
| 3 | House and lot-13922 NW 13th St, Pembroke Pines, FL. and more specifically Lot 25 Block 17 Pembroke Falls Phase #5 164-7B. Value per appraisal attached as Exhibit A-3 | | | 500,000 |
| 4 | Vacant land-20 acres, Moapa Valley, Clark County, NV and more specifically APN 071-18-601-015. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-4. | | | 20,000 |
| 5 | Vacant land-2 parcels, Clark County NV and more specifically 2 acres APN 041-25-301-012 and 1 acre APN 041-25-301-013. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-5 | | | 48,000 |
| 6 | Vacant land-2 gross acres, Clark County, NV and more specifically apn 041-36-201-029. Titled in the name of JEG Family Trust. Value per appraisal attached as | | | 39,000 |
| | Total from continuation schedules or additional statements attached to this schedule | | | 27,242,500 |
| | TOTAL. (Also enter on Part 5 — Recapitulation, page 3, at item 1.) | | | 30,097,500 |

(If more space is needed, attach the continuation schedule from the end of this package or additional statements of the same size.)

There are 5 continuation schedules attached

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE A CONTINUATION SCHEDULE

Continuation Schedule 1 of 5

| Item number | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| | Exhibit A-6. | | | |
| 7 | Land and building-2112 Western Avenue, Las Vegas, NV and more specifically APN 162-04-302-006, 162-04-302-007, 162-04-403-001. Titled in the name of New International Properties, LLC. Value per appraisal attached as Exhibit A-7. | | | 2,260,000 |
| 8 | Land and building-2111 and 2121 Highland Avenue, Las Vegas, NV and more specifically APR 1652-04-403-002 and 162-04-403-003. Titled in the name of New International Properties, LLC. Value per appraisal attached as Exhibit A-8. | | | 380,000 |
| 9 | Vacant land-6.45 acres, Naples FL, and more specifically Royal Palm Golf Estates Replat #3 Tract B. Titled in the name of Jack E Galardi LLC. Value per appraisal attached as Exhibit A-9. | | | 84,000 |
| 10 | House and lot, 3445 Shoreland Dr., Buford GA, and more specifically LI167, 8th District, Lots 1-2, Block C, H E Compton, Hall County. Value per appraisal attached as Exhibit A-10. | | | 629,000 |
| 11 | House and lot, 18511 Royal Hammock Blvd.,Naples FL and more specifically Royal Palm Golf Estates Unit #1 Blk A Lot 66. Value per appraisal attached as Exhibit A-11 | | | 230,000 |
| 12 | 2 Unit Condominium warehouse/retail building located at7951 and 7971NW 33rd St., Doral, FL 33122 and more specifically Airport Ind Center Condo Whse Unit 1-B | | | 755,000 |
| | TOTAL. (Carry forward to main schedule.) | | | 4,338,000 |

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi | Decedent's social security number 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

## SCHEDULE A CONTINUATION SCHEDULE

Continuation Schedule 2 of 5

| Item number | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| | and 9-B-1 undivided 5% and 2.75% interest in common elements off rec Rec-11292-2134. Value per appraisal attached as Exhibit A-12 | | | |
| 13 | Vacant land-Lot 58 on S/S Lake Hammond Dr, Naples FL and more specifically Royal Palm Golf Estates Replat #3 Lot 58. Titled in the name of Jack Galardi LLC. Value per appraisal attached as Exhibit A-13 | | | 21,000 |
| 14 | Vacant land-1.47 acre residential lot-747-751 Scott Road, Forest Park, GA, and more specifically City of Forest Park Parcel ID# 13015D A012. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-14. | | | 30,000 |
| 15 | Vacant land-.341 acres-775 Conley Rd. SE, Atlanta, GA and more specifically City of Atlanta, Parcel ID# 14-0032-LL-080-6 and City of Forest Park Parcel ID# 13015B B002A. Titled in the name of Walleye LLC. Value perappraisal attached as Exhibit A-15. | | | 135,000 |
| 16 | Vacant land-.812 acres-3700 Jonesboro Rd SE, Atlanta GA and more specifically City of Atlanta Tax ID# 14 0032 LL0715 Titled in the name of JEG Family Trust.Value per appraisal attached as Exhibit A-16 | | | 530,000 |
| 17 | Vacant lot-1xx 15th St., Marathon, FL, and more specifically Parrish sub Marathon sub PB 2--18 S"ly lots 1 & 2 blk 2. Value per appraisal attached as Exhibit A-17. | | | 41,000 |
| 18 | Land and building,-1704 Hudson | | | 245,000 |
| | TOTAL. (Carry forward to main schedule.) | | | 1,002,000 |

Schedule A Continuation

DAA

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number
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

## SCHEDULE A CONTINUATION SCHEDULE

Continuation Schedule 3 of 5

| Item number | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| | Bridge Rd., Stockbridge, GA and more specifically parcel ID 032-01012007. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-18 | | | |
| 19 | Land and building-3920 Jonesboro Road, Forest Park, GA and more specifically Clayton County parcel ID# 13015B B002. Titled in the name of Walleye LLC. Value per appraisal attached as Exhibit A-19 | | | 650,000 |
| 20 | Vacant land-425 Industrial Boulevard, McDonough, GA and more specifically Henry County, City of McDonough, Parcel ID# 093-01018005. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-20 | | | 440,000 |
| 21 | Land and buildings including personal property located at 18100 Royal Tree Parkway, Naples FL and more specifically APN 71370080006. Titled in the name of Jack E Galardi, LLC. Value per appraisal attached as Exhibit A-21 | | | 3,240,000 |
| 22 | Land and building-1901 Mr. Joe White Avenue, Myrtle Beach SC and more specificall APN 18100-01-031. Value per appraisal attached as Exhibit A-22 | | | 3,475,000 |
| 23 | Vacant land-Mokelumne Hill, Calaveral County, CA and more specifically APN 020-001-091. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit-A23 | | | 67,500 |
| 24 | House and lot-201 Navarro Isle A.K.A Gordon Rd., Ft. Lauderdale, FL, and more | | | 4,200,000 |
| | TOTAL. (Carry forward to main schedule.) | | | 12,072,500 |

Schedule A Continuation

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE A CONTINUATION SCHEDULE

Continuation Schedule 4 of 5

| Item number | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| | specifically Lot 7,8 Navarro Isle 15-40B. Property is titled in the name of JEG LV Qualified Personal REsidence Trust per appraisal, but was deeded to JEG Family Trust On July 20, 2012. Value per appraisal attached as Exhibit A-24 . | | | |
| 25 | Land and building-29 NE 11th St., 1135 North Miami Avenue and adjacent vacant land, all located in Miami FL. This real estate is a part of a sale, agreed to prior to December 1, 2012 and consumated December 18, 2012. Value per closing statement attached as Exhibit A-25 | | | 4,500,000 |
| 26 | Land and building-973 Marietta Street, Atlanta GA. This property is a part of a sale, agreed to prior to December 1, 2012 and consumated September 18, 2013. Value per closing statement attached as Exhibit A-26 | | | 750,000 |
| 27 | Land and building-4766 Frontage Road, Forest Park, GA and more specifically APN 13044C A002. Titled in the name of JGP&P LLC. Value per appraisal attached as Exhibit A-27. | | | 450,000 |
| 28 | Vacant land-2.718 acres 10710 Walker Road, Thonotosassa, Hillsborough County, FL and more specifically, Parcel ID #U182820ZZZ000002096900 or Folio Number 061121-000. Value per appraisal attached as Exhibit A-28. | | | 275,000 |
| 29 | Land and Building-1837 Corporate Boulevard, Atlant GA. and more | | | 950,000 |
| | TOTAL. (Carry forward to main schedule.) | | | 6,925,000 |

Schedule A Continuation

DAA

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE A CONTINUATION SCHEDULE

Continuation Schedule 5 of 5

| Item number | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| | specifically APN 18-156-01-003. Titled in the name of JEG Family Trust. Appraisal forthcomeing | | | |
| 30 | Land-6220 E. Adamo Dr., Tampa FL and more specifically APN 81-96 -15-000-0. Titled in the name of Galardi Rentals LLC. Appraisal forthcoming. | | | 5,000 |
| 31 | Land and building-2610 Metropolitan Parkway, Titled in the name of Trinidad Creations, LLC. Appraisal forthcoming. | | | 2,000,000 |
| 32 | Land and buildings-Social Circle, Butts County, GA. Appraisal forthcoming. | | | 800,000 |
| 33 | Land and building-4730 Frontage Road, Forest Park, GA and more specifically APN 13044C A002. Titled in the name of JGP&P LLC. Appraisal forthcoming. | | | 100,000 |
| | TOTAL. (Carry forward to main schedule.) | | | 2,905,000 |

DAA

Form 706 (Rev. 8-2012)

**Estate of:** Jack E Galardi

**Decedent's social security number** 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

## SCHEDULE B — Stocks and Bonds

(For jointly owned property that must be disclosed on Schedule E, see instructions.)

**Note.** If the value of the gross estate, together with the amount of adjusted taxable gifts, is less than the basic exclusion amount and the Form 706 is being filed solely to elect portability of the DSUE amount, consideration should be given as to whether you are required to report the value of assets eligible for the marital or charitable deduction on this schedule. See the instructions and Reg. section 20.2010-2T (a)(7)(ii) for more information. If you are not required to report the value of an asset, identify the property but make no entries in the last four columns.

| Item number | Description, including face amount of bonds or number of shares and par value for identification. Give CUSIP number. If trust, partnership, or closely held entity, give EIN. | CUSIP number or EIN, where applicable | Unit value | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|---|---|
| 1 | 100% ownership - Trop, Inc., 2555 Chantilly Drive, Atlanta GA 30324. Appraisal in final review to be submitted upon receipt. Preliminary value provided by appraiser. | | | | | 6,338,000 |
| 2 | 100% ownership - Turntable Entertainment & Production Company, Inc. 2555 Chantilly Drive, Atlanta, GA 30324. Appraisal in final review to be submitted upon receipt. Preliminary value provided by appraiser. | | | | | 7,476,000 |
| 3 | 100% ownership - Country Club, Inc. 2555 Chantilly Drive, Atlanta, GA 30324 (a Georgia corporation. Appraisal in final review to be submitted upon receipt. Preliminary value provided by appraiser. | | | | | 1,669,000 |
| 4 | 100% ownership - Ponytail, Inc. 2555 Chantilly Drive, Atlanta, GA 30324. Appraisal in final review to be submitted upon receipt. Preliminary value provided by appraiser. | | | | | 4,098,700 |
| 5 | 100% ownership - Lafuente, Inc. 713 E Ogden St., Las Vegas, NV 89101. Appraisal in final review to be submitted upon receipt. Preliminary value provided by appraiser. | | | | | 2,283,600 |
| 6 | 100% ownership - Fly Low, Inc. 2555 Chantilly Drive, Atlanta, GA 30324. Appraisal in final review to be submitted upon receipt. Preliminary value provided by appraiser. | | | | | 2,402,000 |
| | Total from continuation schedules (or additional statements) attached to this schedule | | | | | 9,599,430 |
| | **TOTAL.** (Also enter on Part 5—Recapitulation, page 3, at item 2.) | | | | | 33,866,730 |

(If more space is needed, attach the continuation schedule from the end of this package or additional statements of the same size.)

DAA There are 2 continuation schedules attached

Form 706 (Rev. 8-2012)

**Estate of:** Jack E Galardi

Decedent's social security number 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

# SCHEDULE B CONTINUATION SCHEDULE

Continuation Schedule 1 of 2

| Item number | Description, including face amount of bonds or number of shares and par value for identification. Give CUSIP number. If trust, partnership, or closely held entity, give EIN. | CUSIP number or EIN, where applicable | Unit value | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|---|---|
| 7 | 100% ownership - Bella Mia, Inc. 2555 Chantilly Drive, Atlanta, GA 30324. Appraisal in final review to be submitted upon receipt. Preliminary value provided by appraiser. | | | | | 909,800 |
| 8 | 50% ownership - MBJG Inc. 2555 Chantilly Drive, Atlanta, GA. Value estimated. Appraisal forthcoming. | | | | | 2,247,000 |
| 9 | 100% ownership - Galardi Eagle Lakes LLC 2555 Chantilly Drive, Atlanta, GA 30324. Appraisal in final review to be submitted upon rceipt. Preliminary value provided by appraiser. | | | | | 2,070,000 |
| 10 | 100% ownership - Country Club, Inc. 2555 Chantilly Drive, Atlanta GA 30324 (a South Carolina corporation). Appraisal in final review to be submitted upon receipt. Preliminary provided by the appraiser. | | | | | 2,523,400 |
| 11 | 100% ownership - LVA Management, Inc. 713 E. Ogden Street, Las Vegas, NV 89101. Value estimated. Appraisal forthcoming. | | | | | 1,500,000 |
| 12 | 100% ownership - Three Women, Inc., 2555 Chantilly Drive.tlanta, GA 30324. Value estimated. Appraisal forthcoming. | | | | | 200,000 |
| 13 | 100% ownership - Candy Pink, Inc. 713 E. Ogden St., Las Vegas, NV 89101. Value estimated. Appraisal forthcoming. | | | | | 10,000 |
| 14 | 100% ownership - E & J Inc. 2555 Chantilly Drive, Atlanta, GA 30324. Value estimated. | | | | | 25,000 |
| | TOTAL. (Carry forward to main schedule.) | | | | | 9,485,200 |

Schedule B Continuation

DAA

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

# SCHEDULE B CONTINUATION SCHEDULE

Continuation Schedule 2 of 2

| Item number | Description, including face amount of bonds or number of shares and par value for identification. Give CUSIP number. If trust, partnership, or closely held entity, give EIN. | CUSIP number or EIN, where applicable | Unit value | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|---|---|
| | Appraisal forthcoming. | | | | | |
| 15 | 100% ownership - The Riviera Entertainment Group, Inc. 2555 Chantilly Drive, Atlanta, GA 30324. Value estimated, Appraisal forthcoming. | | | | | 1,000 |
| 16 | 100% ownership - GFT Management and Consulting, Inc., 2555 Chantilly Drive, Atlanta GA 30324. Value estimated. Appraisal forthcoming. | | | | | 10 |
| 17 | 100% ownership - Extreme Tours, Inc. d/b/a Rebel Adventure Tours - 713 E. Ogden Street, Las Vegas, NV 89101. Value estimated, Appraisal forthcoming. | | | | | 50,000 |
| 18 | 100% ownership - WV Country Club, Inc., 2555 Chantilly Drive, Atlanta GA. 30324. Value estimated. Appraisal forthcoming. | | | | | 1,000 |
| 18 | 100% ownership - GFT Management & Consulting, Inc. 2555 Chantilly Drive, Atlanta, GA 30324. Value estimated. Appraisal forthcoming. | | | | | 10,000 |
| 19 | 50% ownership - Jacmak LLC Value estimated. Appraisal forthcoming. | | | | | 1,000 |
| 20 | 100% Ownership - Mia Luna, Inc. 2555 Chantilly Drive, Atlanta, Ga 30324. Value estimated. Appraisal forthcoming. | | | | | 1,000 |
| 21 | 18,000 shares - Sirius XM Radio Inc. common. CUSIP 98375YAU0 | | | | | 50,220 |

TOTAL. (Carry forward to main schedule.) ........ 114,230

DAA

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE C—Mortgages, Notes, and Cash

(For jointly owned property that must be disclosed on Schedule E, see instructions.)

**Note.** If the value of the gross estate, together with the amount of adjusted taxable gifts, is less than the basic exclusion amount and the Form 706 is being filed solely to elect portability of the DSUE amount, consideration should be given as to whether you are required to report the value of assets eligible for the marital or charitable deduction on this schedule. See the instructions and Reg. section 20.2010–2T (a)(7)(ii) for more information. If you are not required to report the value of an asset, identify the property but make no entries in the last three columns.

| Item number | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| 1 | Cash on hand | | | 20,000 |
| 2 | Nevada State Bank-230 Las Vegas Blvd South, Las Vegas, NV checking account | | | 1,136 |
| 3 | Bank of North Las Vegas - 6385 Simmons St., North Las Vegas, NV checking account. | | | 351 |
| 4 | Wells Fargo Bank - 1700 East Charleston Ave., Las Vegas, NV | | | 1,041 |
| | Total from continuation schedules (or additional statements) attached to this schedule | | | |
| | TOTAL. (Also enter on Part 5—Recapitulation, page 3, at item 3.) | | | 22,528 |

(If more space is needed, attach the continuation schedule from the end of this package or additional statements of the same size.)

DAA There are no continuation schedules attached

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE D — Insurance on the Decedent's Life

You must list all policies on the life of the decedent and attach a Form 712 for each policy.

**Note.** If the value of the gross estate, together with the amount of adjusted taxable gifts, is less than the basic exclusion amount and the Form 706 is being filed solely to elect portability of the DSUE amount, consideration should be given as to whether you are required to report the value of assets eligible for the marital or charitable deduction on this schedule. See the instructions and Reg. section 20.2010-2T (a)(7)(ii) for more information. If you are not required to report the value of an asset, identify the property but make no entries in the last three columns.

| Item number | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| 1 | Universal Life Insurance Policy Pacific Life Insurance Company, P O Box 2030, Omaha, NV 89103-2030, Policy # VF50001050. | | | 2,000,000 |
| | Total from continuation schedules (or additional statements) attached to this schedule | | | |
| | TOTAL. (Also enter on Part 5 — Recapitulation, page 3, at item 4.) | | | 2,000,000 |

(If more space is needed, attach the continuation schedule from the end of this package or additional statements of the same size.)

DAA There are no continuation schedules attached

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE F—Other Miscellaneous Property Not Reportable Under Any Other Schedule

(For jointly owned property that must be disclosed on Schedule E, see instructions.)

(If you elect section 2032A valuation, you must complete Schedule F and Schedule A-1.)

**Note.** If the value of the gross estate, together with the amount of adjusted taxable gifts, is less than the basic exclusion amount and the Form 706 is being filed solely to elect portability of the DSUE amount, consideration should be given as to whether you are required to report the value of assets eligible for the marital or charitable deduction on this schedule. See the instructions and Reg. section 20.2010-2T (a)(7)(ii) for more information. If you are not required to report the value of an asset, identify the property but make no entries in the last three columns.

| | | Yes | No |
|---|---|---|---|
| 1 | Did the decedent own any works of art, items, or any collections whose artistic or collectible value at date of death exceeded $3,000? If "Yes," submit full details on this schedule and attach appraisals. | | X |
| 2 | Has the decedent's estate, spouse, or any other person received (or will receive) any bonus or award as a result of the decedent's employment or death? If "Yes," submit full details on this schedule. | | X |
| 3 | Did the decedent at the time of death have, or have access to, a safe deposit box? If "Yes," state location, and if held jointly by decedent and another, state name and relationship of joint depositor. If any of the contents of the safe deposit box are omitted from the schedules in this return, explain fully why omitted. | | X |

| Item number | Description. For securities, give CUSIP number. If trust, partnership, or closely held entity, give EIN | CUSIP number or EIN, where applicable | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|---|
| 1 | 31 Work and collectible vehicles known as the Circle G Ranch Automobile Collection. Value per appraisal attached as Exhibit F-1 | | | | 1,031,455 |
| 2 | Contents, 2200 Waldman Avenue, Las Vegas, NV. Value per appraisal attached as Exhibit F-2 | | | | 85,047 |
| 3 | Contents, 4205 Gordon Avenue, Ft. Lauderdale, FL. Appraisal forthcoming. | | | | 75,000 |
| 4 | Contents, 760 Piedmont Avenue, Atlanta, GA. Appraisal forthcoming. | | | | 75,000 |
| 5 | Cash bond established on appeal of judgement in the Nevada Supreme Court. On May 13, 2013 | | | | 2,227,626 |
| 6 | Accrued interest on cash bond - Item F5 from April 21,2011 through December 1, 2012 | | | | 188,401 |
| 7 | Gun Collection, Jewelry and other personal items - appraisals forthcoming. | | | | 120,000 |
| | Total from continuation schedules (or additional statements) attached to this schedule | | | | 660,700 |
| | TOTAL. (Also enter on Part 5—Recapitulation, page 3, at item 6.) | | | | 4,463,229 |

(If more space is needed, attach the continuation schedule from the end of this package or additional statements of the same size.)

DAA There is 1 continuation schedule attached

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE F CONTINUATION SCHEDULE

Continuation Schedule 1 of 1

| Item number | Description. For securities, give CUSIP number. If trust, partnership, or closely held entity, give EIN | CUSIP number or EIN, where applicable | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|---|
| 8 | 1.1192569% interest in Dominium Elwood Villas, L.P. - 2905 Northwest Blvd., ste 150, Plymouth MN. Estimated value. | | | | |
| 9 | 2007 Gift tax paid for which credit is being allowed. See Schedule G. | | | | 655,700 |
| 10 | 100% ownership in Hazeleyes LLC - (a disregarded entity) value estimated, appraisal forthcoming. | | | | 5,000 |
| 11 | 100% ownership - New International Properties, LLC., 713 East Ogden St., Las vegas, NV. The only asset is real estate subject to a mortgage. Value of the real estate is reflected on Schedule A7 and A8. Liabilty is reflected on Schedule G2. | | | | |
| 12 | 100% ownership - Jack E Galardi, LLC., 2555 Chantilly Drive, Atlanta, GA. The only assets are real estate subject to mortgages. Values of the real estate are reflected on Schedule A9, A11, A12, and A21. Mortgages are reflected on Schedule K9 and K10 | | | | |
| 13 | 100% ownership - Walleye, LLC, 2555 Chantilly Drive, Atlanta, GA 30324. The only asset is real estate subject to a mortgage. The value of the real estate is reflected on Schedule A31, The mortgage is reflected on Schedule K | | | | |
| | TOTAL. (Carry forward to main schedule.) | | | | 660,700 |

Schedule F Continuation

DAA

Estate of:

Decedent's social security number 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

## SCHEDULE G—Transfers During Decedent's Life

(If you elect section 2032A valuation, you must complete Schedule G and Schedule A-1.)

Note. If the value of the gross estate, together with the amount of adjusted taxable gifts, is less than the basic exclusion amount and the Form 706 is being filed solely to elect portability of the DSUE amount, consideration should be given as to whether you are required to report the value of assets eligible for the marital or charitable deduction on this schedule. See the instructions and Reg. section 20.2010-2T (a)(7)(ii) for more information. If you are not required to report the value of an asset, identify the property but make no entries in the last three columns.

| Item number | Description. For securities, give CUSIP number. If trust, partnership, or closely held entity, give EIN | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| A. | Gift tax paid or payable by the decedent or the estate for all gifts made by the decedent or his or her spouse within 3 years before the decedent's death (section 2035(b)) | X X X X X | | |
| B. | Transfers includible under sections 2035(a), 2036, 2037, or 2038: | | | |
| 1 | House and lot-1245 Rancho Dr, Las Vegas, NV, and more specifically Parcel map, pg 28 & part NW4 sec 04 21 61. Property is titled in the name of Jeg LV Qual Personal Res Trust. Value per appraisal attached as Exhibit G2-1 | | | 2,000,000 |
| 2 | House and lot-2211 Edgewood Ave, Las Vegas, NV more specificall Parcel map File 31, page 28, Lot 1. Value per appraisal attached as Exhibit G2-2 | | | 330,000 |
| 3 | Vacant land-Hwy 42 South, Flovilla GA and more | | | 101,000 |

There is 1 continuation schedule attached

| | | |
|---|---|---|
| Total from continuation schedules (or additional statements) attached to this schedule | | 2,529,000 |
| TOTAL. (Also enter on Part 5—Recapitulation, page 3, at item 7.) | | 4,960,000 |

## SCHEDULE H—Powers of Appointment

(Include "5 and 5 lapsing" powers (section 2041(b)(2)) held by the decedent.)
(If you elect section 2032A valuation, you must complete Schedule H and Schedule A-1.)

Note. If the value of the gross estate, together with the amount of adjusted taxable gifts, is less than the basic exclusion amount and the Form 706 is being filed solely to elect portability of the DSUE amount, consideration should be given as to whether you are required to report the value of assets eligible for the marital or charitable deduction on this schedule. See the instructions and Reg. section 20.2010-2T (a)(7)(ii) for more information. If you are not required to report the value of an asset, identify the property but make no entries in the last three columns.

| Item number | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| | | | | |

There are no continuation schedules attached

| | | |
|---|---|---|
| Total from continuation schedules (or additional statements) attached to this schedule | | |
| TOTAL. (Also enter on Part 5—Recapitulation, page 3, at item 8.) | | 0 |

(If more space is needed, attach the continuation schedule from the end of this package or additional statements of the same size.)

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE G CONTINUATION SCHEDULE

Continuation Schedule 1 of 1

| Item number | Description. For securities, give CUSIP number. If trust, partnership, or closely held entity, give EIN | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| | specifically LL33,34 of the 4th LD, cont. 51.71 acres, See Deed Book 638-160. Deeded to JEG FL Qualified Personal Residence Trust, shown on apprasal as owned by Circle G Holdings, LLC. Value per appraisal attached as Exhibit G2-3 | | | |
| 4 | Vacant land-Hwy 42 South, Flovilla GA and more specifically LL33,34 of the 4th LD, cont. 30 acres. See Deed Book 434-524. Deeded to JEG FL Qualified Personal Residence Trust. Shown on appraisal as owned by Circle G Holdings, LLC, Value oer appraisal attached as Exhibit G2-4 | | | 79,000 |
| 5 | House and lot-Highway 42 S, Flovilla, GA and more specifically LL33,34,35,56,63,64 of the 4th LD, cont. 109.364 acres, Tract A & D. See Deed Book 638-160. Deeded to JEG FL Qualified Personal Residence Trust, shown on appraisal as titled in the name of Circle G Holdings. | | | 2,450,000 |
| | TOTAL. (Carry forward to main schedule.) | | | 2,529,000 |

Schedule G Continuation

DAA

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE J — Funeral Expenses and Expenses Incurred in Administering Property Subject to Claims

▶ Use Schedule PC to make a protective claim for refund due to an expense not currently deductible. For such a claim, report the expense on Schedule J but without a value in the last column.

**Note.** Do not list expenses of administering property not subject to claims on this schedule. To report those expenses, see instructions.

If executors' commissions, attorney fees, etc., are claimed and allowed as a deduction for estate tax purposes, they are not allowable as a deduction in computing the taxable income of the estate for federal income tax purposes. They are allowable as an income tax deduction on Form 1041, U.S. Income Tax Return for Estates and Trusts, if a waiver is filed to forgo the deduction on Form 706 (see instructions for Form 1041).

| | Yes | No |
|---|---|---|
| Are you aware of any actual or potential reimbursement to the estate for any expense claimed as a deduction on this schedule? | | X |

If "Yes," attach a statement describing the expense(s) subject to potential reimbursement. (see instructions)

| Item number | Description | Expense amount | Total amount |
|---|---|---|---|
| | A. Funeral expenses: | | |
| 1 | West Memorials<br>2481 Brood Ave., Memphis, TN 38112 | 509,013 | |
| | Horticulture Consultation and Desig | 78,725 | |
| | Total funeral expenses ▶ | | 587,738 |
| | B. Administration expenses: | | |
| | 1 Executors' commissions — . (Strike out the words that do not apply.) | | 0 |
| | 2 Attorney fees — Amount estimated, Paid . (Strike out the words that do not apply.) | | 117,050 |
| | 3 Accountant fees — Amount estimated, Paid (Strike out the words that do not apply.) | | 148,900 |
| | 4 Miscellaneous expenses: | Expense amount | |
| | Wrights Appraisals. 211 Theall St. Sonora CA. - Real Estate appraisal. | 750 | |
| | Auto Appraisal Network, Inc. 19 Spectrum Pointe Dr. #605 Lake Forest, CA 92630 - Vehicle appraisals | 3,100 | |
| | Oracle Real Estate Services, Inc. 3544 Haberdham St., Tucker, GA 30084 - Real estate appraisals | 14,050 | |
| | David Arenaz CAGA International Estate Auctions 900 Las Vegas Blvd S., Las Vegas NV 89101. Personal property appraisal | 760 | |
| | Landauer Valuation & Advisory 1551 N Tustin Ave., Santa Ana, CA - Real estate appraisals | 20,500 | |
| | Pritchett, Ball & Wise, Inc. 2295 Parklake Dr,Atlanta GA 30345 - Real estate appraisals | 3,000 | |
| | Casey Dean Eisnor | | |
| | Total miscellaneous expenses from continuation schedules (or additional statements) attached to this schedule | 19,700 | |
| | Total miscellaneous expenses ▶ | | 61,860 |
| | TOTAL. (Also enter on Part 5—Recapitulation, page 3, at item 14.) ▶ | | 915,548 |

(If more space is needed, attach the continuation schedule from the end of this package or additional statements of the same size.)

DAA There is 1 continuation schedule attached

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE J CONTINUATION SCHEDULE

Continuation Schedule 1 of 1

| | Description of Miscellaneous expense | Expense amount |
|---|---|---|
| | 34 Mutiny Place, Key Largo, FL 33037 - Real estate appraisal | 800 |
| | Dover Realty 464 W 3rd St. Jackson, GA 30233 Real estate appraisals | 5,100 |
| | Bloom Sugarman Everett LLP 977 Ponce De Leon Ave., Atlanta, GA-Real estate appraisal | 12,000 |
| | Balsiero & Associates Inc P O Box 10725 Tampa, FL 33624 Real Estate appraisal | 1,800 |

TOTAL. (Carry forward to main schedule.) .................... 19,700

DAA

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE K — Debts of the Decedent, and Mortgages and Liens

▶ Use Schedule PC to make a protective claim for refund due to a claim not currently deductible. For such a claim, report the expense on Schedule K but without a value in the last column.

| | Yes | No |
|---|---|---|
| Are you aware of any actual or potential reimbursement to the estate for any debt of the decedent, mortgage, or lien claimed as a deduction on this schedule? | | X |
| If "Yes," attach a statement describing the items subject to potential reimbursement. (see instructions) | | |
| Are any of the items on this schedule deductible under Reg. section 20.2053-4(b) and Reg. section 20.2053-4(c)? | | X |
| If "Yes," attach a statement indicating the applicable provision and documenting the value of the claim. | | |

| Item number | Debts of the Decedent — Creditor and nature of debt, and allowable death taxes | Amount |
|---|---|---|
| 1 | United States Treasury - 2012 income tax liability-estimated | 2,000,000 |
| 2 | United States Treasury-2011 amended Federal Income Tax Return | 417,478 |
| 3 | Accured interest and penalty on 2011 amended Federal Income Tax Return - estimated | 40,000 |
| 4 | United States Treasury- 2010 amended Federal income Tax return | 407,468 |
| 5 | Accrued interest and penalty on 2010 amended Federal Inome Tax return - estimated | 60,000 |
| 6 | State of Georgia-2012 State Income Tax return - estimated | 120,000 |
| 7 | TEPC loan re: Florida Department of Taxation lein against item A25 | 59,743 |
| 8 | Property taxes due on item A25 | 57,812 |
| | There is 1 continuation schedule attached | |
| | Total from continuation schedules (or additional statements) attached to this schedule | 5,016,027 |
| | TOTAL. (Also enter on Part 5 — Recapitulation, page 3, at item 15.) | 8,178,528 |

| Item number | Mortgages and Liens — Description | Amount |
|---|---|---|
| 1 | CITI Mortgage - Original loan was $1,805,000. Interest is computed at 5.3% per annum. Secured by item G2 | 1,330,451<br>1,330,451 |
| 2 | Sitis Companies - Original loan was $1,200,000. Interest is 8.5% per annum Secured by item A7 | 0<br>796,148 |
| 3 | United Western Mortgage - Original loan was $2,000,000. Interest is 8.3% per annum. Secured by item A-24 | 0<br>561,093 |
| 4 | Wachovia Bank - Original loan was $980,000. Interest is 7.5% per annum. Secured by item G5. | 0<br>570,973 |
| 5 | Harrington State Bank - Original loan was $500,000. Interest is 5.5% per annum. Secured by item A18. | 0<br>297,582 |
| 6 | H Earl and Phyllis J Burcett - Original loan was $400,000. Interest is 8% per annum. Secured by item | 0 |
| | There is 1 continuation schedule attached | |
| | Total from continuation schedules (or additional statements) attached to this schedule | 9,134,771 |
| | TOTAL. (Also enter on Part 5 — Recapitulation, page 3, at item 16.) | 14,021,469 |

(If more space is needed, attach the continuation schedule from the end of this package or additional statements of the same size.)

DAA

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE K CONTINUATION SCHEDULE - DEBTS

Continuation Schedule 1 of 1

| Item number | Debts of the Decedent — Creditor and nature of debt, and allowable death taxes | Amount |
|---|---|---|
| 9 | Judgement payable to Naples Polaris LLC under appeal as of December 1, 2012. Posted cash bond is shown at item F5. | 2,227,626 |
| 10 | Accrued interest on judgment from April 21, 2011 through December 1, 2012 | 188,401 |
| 11 | Judgement payable to Abramovitz Investment Properties LLC under appeal in the Superior Court of the State of Arizona in and for County of Maricopa as of date of decedents death. | 2,600,000 |

TOTAL. (Carry forward to main schedule) ........ 5,016,027

Schedule K Continuation Debt

DAA

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi | Decedent's social security number 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

## SCHEDULE K CONTINUATION SCHEDULE - MORTGAGES AND LIENS

Continuation Schedule 1 of 1

| Item number | Mortgages and Liens — Description | Amount |
|---|---|---|
| | A29 | 38,657 |
| 7 | James E Hammock - Original loan was $400,000. Interest is 6% per annum. Secured by item A27. | 0<br>337,583 |
| 8 | Chase Mortgage - Original loan was $$440,000. Interest is 6.7% per annum. Secured by item A10. | 0<br>391,549 |
| 9 | TransCapital Bank - Original loan was $2,600,000. Interest is 8.5% per annum. Secured by item A21. | 0<br>2,450,381 |
| 10 | TransCapital Bank - Original loan was $1,200,000. Interest is at 6% per annum Secured by item A21 | 0<br>1,142,413 |
| 11 | InterAmerican Bank - Original loan was $2,000,000. Interest is 9.2% per annum. Secured by item A25 | 0<br>1,362,863 |
| 12 | TransCapital Bank - Original Loan was $4,000,000. Interest is 7.5% per annum. Secured by item G3 | 0<br>3,411,325 |

TOTAL. (Carry forward to main schedule) ........ 9,134,771

DAA

| Form 706 | Election to Pay Estate Tax Related to Closely Held Business in Installments<br>Date of Death 12/01/12 | 2012 |
|---|---|---|

| Estate of: | Social Security Number |
|---|---|
| Jack E Galardi | 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 |

In accordance with IRC Section 6166(d) and Regulation 20.6166-1(b), the estate provides the following information with respect to its Section 6166 election:

Amount of tax being paid in installments $ 14,815,175

The first installment will be paid on 09/01/18

Tax will be paid in a total of 10 annual installments (including the first installment)

The property shown on the estate tax return that constitutes the closely held business interest is as follows:

| Estate Return Schedule | Item No. | Amount |
|---|---|---|
| See Statement 3 | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

The estate tax value of the property(ies) listed above totals: $ 48,575,500

This amount exceeds 35% of the value of the adjusted gross estate.

GALARDI706 Galardi, Jack E
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
FYE: 12/1/2012

**Federal Statements**

3/3/2014 2.44 PM

### Statement 1 - Form 706, Part 4, Line 5 - Beneficiaries Receiving $5,000 or More

| Name | TIN | Relationship to Decedent | Amount |
|---|---|---|---|
| Teri Gale Galardi | 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 | Daughter | $ 25,891,903 |
| Jack Galardi Jr. | 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 | Son | 8,630,635 |
| Kathy Holder | 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 | Daughter | 300,000 |
| Emelita Sy | 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 | Employee | 200,000 |
| Maricar Martinez | 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 | Employee | 100,000 |
| Jeffrey Stromatt | 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 | | 65,000 |
| Diana Pontrelli | 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 | | 100,000 |
| Daniel Geiger | 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 | | 200,000 |
| MIchael Porter | 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 | | 20,000 |
| Daniel Purdy | 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 | | 100,000 |
| Charles Wright | 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 | Employee | 100,000 |
| Total | | | $ 35,707,538 |

### Statement 2 - Form 706, Part 4, Line 8b and 8c - Federal Gift Tax Return Information

| Period(s) Covered | IRS Office(s) Where Filed |
|---|---|
| 2007 | Cincinnati, OH  45999 |
| 2012 | Cincinnati, OH  45999 |

GALARDI706  Galardi, Jack E
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
FYE: 12/1/2012

# Federal Statements

3/3/2014  2:44 PM

### Statement 3 - Property which Comprises Closely Held Business Interest

| Schedule | Item No. | Amount |
|----------|----------|--------|
| A | 7 | $ 2,260,000 |
| A | 21 | 3,240,000 |
| A | 22 | 3,475,000 |
| A | 24 | 4,200,000 |
| A | 31 | 2,000,000 |
| A | 32 | 800,000 |
| A | 8 | 380,000 |
| A | 29 | 950,000 |
| B | 1 | 6,338,000 |
| B | 2 | 7,476,000 |
| B | 3 | 1,669,000 |
| B | 4 | 4,098,700 |
| B | 5 | 2,283,600 |
| B | 6 | 2,402,000 |
| B | 7 | 909,800 |
| B | 9 | 2,070,000 |
| B | 10 | 2,523,400 |
| B | 11 | 1,500,000 |
| Total | | $ 48,575,500 |

3

Form **706**

**Taxable Gifts Reconciliation and Computation of Adjusted Taxable Gifts**

Date of Death 12/01/12

2012

Estate of: Jack E Galardi

Social Security Number 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

**Taxable Gifts Reconciliation**

| a. Calendar year or calendar quarter | b. Total taxable gifts for period (see Note) | c. Taxable amount included in col. b for gifts included in the gross estate | d. Taxable amount included in col. b for gifts that qualify for "special treatment of split gifts" | e. Gift tax paid by decedent on gifts in col. d | f. Gift tax paid by decedent's spouse on gifts in col. c |
|---|---|---|---|---|---|

**1. Taxable gifts made before 1977**

| | |
|---|---|
| | |
| Total | |

**2. Taxable gifts made after 1976**

| a. | b. | c. | d. | e. | f. |
|---|---|---|---|---|---|
| 12/31/07 | 2,490,445 | 2,490,445 | | 668,333 | |
| 12/31/12 | 2,090,145 | 0 | | 0 | |
| Total | 4,580,590 | 2,490,445 | 0 | 668,333 | 0 |

**Adjusted Taxable Gifts Made After 1976**

| | | |
|---|---|---|
| 1. Taxable gifts made after 1976. Enter the amount from line 2, column b, TG Worksheet | | 4,580,590 |
| 2. Taxable gifts made after 1976 reportable on Schedule G. Enter the amount from line 2, column c, TG Worksheet | 2,490,445 | |
| 3. Taxable gifts made after 1976 that qualify for "special treatment." Enter the amount from line 2, column d, TG Worksheet | 0 | |
| 4. Add lines 2 and 3 | | 2,490,445 |
| 5. Adjusted taxable gifts. Subtract line 4 from line 1. Enter here and on line 4 of the Tax Computation of Form 706 | | 2,090,145 |

Form 706

# Allocation of Residual Estate to Beneficiaries Worksheet

2012

Date of Death 12/01/12

Estate of: Jack E Galardi

Social Security Number 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

## Calculation of Residual Estate

| | | |
|---|---|---|
| Gross estate (Form 706, Part 5, Line 12) | | 75,409,987 |
| Less: | | |
| Schedule J - Funeral expenses and property administration expenses | 915,548 | |
| Schedule K - Debts of the decedent, mortgages, and liens | 22,199,997 | |
| Schedule L - Net losses during administration | | |
| Schedule L - Expenses incurred in administering property | | |
| Schedule M - Bequests to surviving spouse | | |
| Schedule O - Charitable, public, and similar gifts and bequests | | |
| Federal estate tax calculated | 16,586,905 | |
| State and other taxes paid or payable | | |
| Generation-skipping transfer tax paid | | |
| Subtotal | | 39,702,450 |
| Net residual estate available | | 35,707,537 |

## Specific Allocations to Beneficiaries

| | | |
|---|---|---|
| Specific allocations to beneficiaries | 1,185,000 | |
| Taxes allocated to beneficiaries | 16,586,905 | |
| Subtotal | | -15,401,905 |
| Residual estate available for allocation to beneficiaries | | 51,109,442 |

# Beneficiary Asset Reconciliation

Form **706** | Beneficiary: Teri Gale Galardi | Date of Death: 12/01/12 | 2012

Estate of: Jack E Galardi

Social Security Number: 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

| Sch. | Item | Description of Bequest | % | Value |
|---|---|---|---|---|
| | | ----- GROSS ESTATE DISTRIBUTIONS ----- | | |
| | | ALLOCATED FROM RESIDUAL ESTATE | | 38,332,082 |
| | | TOTAL GROSS DISTRIBUTIONS | | 38,332,082 |
| | | ---------- ALLOCATED TAXES ----------- | | |
| | | Federal Estate Taxes | 75.0000 | 12,440,179 |
| | | TOTAL BENEFITS | | 25,891,903 |

# Beneficiary Asset Reconciliation

Form 706 | Beneficiary: Jack Galardi Jr. | Date of Death: 12/01/12 | 2012

Estate of: Jack E Galardi

Social Security Number: 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

| Sch. | Item | Description of Bequest | % | Value |
|---|---|---|---|---|
| | | ----- GROSS ESTATE DISTRIBUTIONS ----- | | |
| | | ALLOCATED FROM RESIDUAL ESTATE | | 12,777,361 |
| | | TOTAL GROSS DISTRIBUTIONS | | 12,777,361 |
| | | ---------- ALLOCATED TAXES ----------- | | |
| | | Federal Estate Taxes | 25.0000 | 4,146,726 |
| | | TOTAL BENEFITS | | 8,630,635 |

# Beneficiary Asset Reconciliation

Form 706 | Beneficiary: Kathy Holder | Date of Death: 12/01/12 | 2012

Estate of: Jack E Galardi | Social Security Number: 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

| Sch. | Item | Description of Bequest | % | Value |
|---|---|---|---|---|
| | | Cash received | | 300,000 |
| | | TOTAL BENEFITS | | 300,000 |

## Beneficiary Asset Reconciliation

Form 706 | Beneficiary Emelita Sy | 2012
Date of Death 12/01/12

Estate of: Jack E Galardi

Social Security Number 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

| Sch. | Item | Description of Bequest | % | Value |
|---|---|---|---|---|
| | | Cash received | | 200,000 |
| | | TOTAL BENEFITS | | 200,000 |

## Beneficiary Asset Reconciliation

Form 706 | Beneficiary: Maricar Martinez | Date of Death: 12/01/12 | 2012

Estate of: Jack E Galardi | Social Security Number: 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

| Sch. | Item | Description of Bequest | % | Value |
|---|---|---|---|---|
| | | Cash received | | 100,000 |
| | | TOTAL BENEFITS | | 100,000 |

## Beneficiary Asset Reconciliation

Form 706 | Beneficiary: Jeffrey Stromatt | Date of Death: 12/01/12 | 2012

Estate of: Jack E Galardi

Social Security Number: 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

| Sch. | Item | Description of Bequest | % | Value |
|---|---|---|---|---|
| | | Cash received | | 65,000 |
| | | TOTAL BENEFITS | | 65,000 |

# Beneficiary Asset Reconciliation

| Form 706 | Beneficiary: Diana Pontrelli<br>Date of Death: 12/01/12 | 2012 |
|---|---|---|

| Estate of: Jack E Galardi | Social Security Number: 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 |
|---|---|

| Sch. | Item | Description of Bequest | % | Value |
|---|---|---|---|---|
| | | Cash received | | 100,000 |
| | | TOTAL BENEFITS | | 100,000 |

## Beneficiary Asset Reconciliation

Form **706** | Beneficiary Daniel Geiger | Date of Death 12/01/12 | 2012

Estate of: Jack E Galardi

Social Security Number 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

| Sch. | Item | Description of Bequest | % | Value |
|---|---|---|---|---|
| | | Cash received | | 200,000 |
| | | TOTAL BENEFITS | | 200,000 |

## Beneficiary Asset Reconciliation

Form 706 | Beneficiary: MIchael Porter | Date of Death: 12/01/12 | 2012

Estate of: Jack E Galardi | Social Security Number: 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

| Sch. | Item | Description of Bequest | % | Value |
|---|---|---|---|---|
| | | Cash received | | 20,000 |
| | | TOTAL BENEFITS | | 20,000 |

# Beneficiary Asset Reconciliation

Form 706 | Beneficiary Daniel Purdy | Date of Death 12/01/12 | 2012

Estate of: Jack E Galardi

Social Security Number 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

| Sch. | Item | Description of Bequest | % | Value |
|---|---|---|---|---|
| | | Cash received | | 100,000 |
| | | TOTAL BENEFITS | | 100,000 |

**Beneficiary Asset Reconciliation**

| Form 706 | Beneficiary: Charles Wright<br>Date of Death: 12/01/12 | 2012 |
|---|---|---|

| Estate of: | Social Security Number |
|---|---|
| Jack E Galardi | 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 |

| Sch. | Item | Description of Bequest | % | Value |
|---|---|---|---|---|
| | | Cash received | | 100,000 |
| | | TOTAL BENEFITS | | 100,000 |

* PROTECTIVE ELECTION TO USE ALTERNATIVE VALUATION DATE ATTACHED

Form **706** (Rev. August 2012) Department of the Treasury Internal Revenue Service

# United States Estate (and Generation-Skipping Transfer) Tax Return

▶ Estate of a citizen or resident of the United States (see instructions). To be filed for decedents dying after December 31, 2011, and before January 1, 2013.
▶ Information about Form 706 and its separate instructions is at www.irs.gov/form706.

OMB No 1545-0015

COPY

## Part 1—Decedent and Executor

1a Decedent's first name and middle initial (and maiden name, if any): Jack E

1b Decedent's last name: Galardi

2 Decedent's SSN: 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

3a County, state, and ZIP or foreign country and postal code, of legal residence (domicile) at time of death: Butts, GA 30216

3b Year domicile established: 2012

4 Date of birth: 04/30/1930

5 Date of death: 12/01/12

6a Name of executor (see instructions): Teri Gale Galardi

6b Executor's address (number and street including apartment or suite no., city, town, or post office; state; country; and ZIP or postal code) and phone no: 2146 Hwy 42, Flovilla GA 30216, Phone no 404-607-8050

6c Executor's social security number (see instructions): 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

6d If there are multiple executors, check here [ ] and attach a list showing the names, addresses, telephone numbers, and SSNs of the additional executors.

7a Name and location of court where will was probated or estate administered: Butts County, Jackson, GA

7b Case number:

8 If decedent died testate, check here ▶ [X] and attach a certified copy of the will.

9 If you extended the time to file this Form 706, check here ▶ [X]

10 If Schedule R-1 is attached, check here ▶ [ ]

11 If you are estimating the value of assets included in the gross estate on line 1 pursuant to the special rule of Reg. section 20.2010-2T(a) (7)(ii), check here ▶ [ ]

## Part 2—Tax Computation

| Line | Description | | | Line | Amount |
|---|---|---|---|---|---|
| 1 | Total gross estate less exclusion (from Part 5—Recapitulation, item 13) | | | 1 | 79,194,770 |
| 2 | Tentative total allowable deductions (from Part 5—Recapitulation, item 24) | | | 2 | 26,900,328 |
| 3a | Tentative taxable estate (subtract line 2 from line 1) | | | 3a | 52,294,442 |
| b | State death tax deduction | | | 3b | |
| c | Taxable estate (subtract line 3b from line 3a) | | | 3c | 52,294,442 |
| 4 | Adjusted taxable gifts (see instructions) | | | 4 | 2,090,145 |
| 5 | Add lines 3c and 4 | | | 5 | 54,384,587 |
| 6 | Tentative tax on the amount on line 5 from Table A in the instructions | | | 6 | 19,015,405 |
| 7 | Total gift tax paid or payable (see instructions) | | | 7 | 655,700 |
| 8 | Gross estate tax (subtract line 7 from line 6) | | | 8 | 18,359,705 |
| 9a | Basic exclusion amount | 9a | 5,120,000 | | |
| 9b | Deceased spousal unused exclusion (DSUE) amount from predeceased spouse(s), if any (from Section D, Part 6-Portability of Deceased Spousal Unused Exclusion) | 9b | | | |
| 9c | Applicable exclusion amount (add lines 9a and 9b) | 9c | 5,120,000 | | |
| 9d | Applicable credit amount (tentative tax on the amount in 9c from Table A in the instructions) | 9d | 1,772,800 | | |
| 10 | Adjustment to applicable credit amount (May not exceed $6,000. See instructions.) | 10 | 0 | | |
| 11 | Allowable applicable credit amount (subtract line 10 from line 9d) | | | 11 | 1,772,800 |
| 12 | Subtract line 11 from line 8 (but do not enter less than zero) | | | 12 | 16,586,905 |
| 13 | Credit for foreign death taxes (from Schedule P). (Attach Form(s) 706-CE.) | 13 | | | |
| 14 | Credit for tax on prior transfers (from Schedule Q) | 14 | | | |
| 15 | Total credits (add lines 13 and 14) | | | 15 | |
| 16 | Net estate tax (subtract line 15 from line 12) | | | 16 | 16,586,905 |
| 17 | Generation-skipping transfer (GST) taxes payable (from Schedule R, Part 2, line 10) | | | 17 | |
| 18 | Total transfer taxes (add lines 16 and 17) | | | 18 | 16,586,905 |
| 19 | Prior payments (explain in an attached statement) | | | 19 | 3,000,000 |
| 20 | Balance due (or overpayment) (subtract line 19 from line 18) | | | 20 | 13,586,905 |

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer other than the executor is based on all information of which preparer has any knowledge

**Sign Here**

▶ Signature of executor ▶ 03/03/14 Date

▶ Signature of executor ▶ Date

**Paid Preparer Use Only**

Print/Type preparer's name: Daniel Geiger
Preparer's signature: Daniel Geiger
Date:
Check [ ] if self-employed
PTIN: P01265326
Firm's name ▶ Nyberg & Associates
Firm's EIN ▶ 88-0394581
Firm's address ▶ 2850 S Jones Blvd Ste 2, Las Vegas, NV 89146
Phone no: 702-795-7990

ATTACHMENT
IRS Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return
Estate of Jack E. Galardi, SSN 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
Date of Death: December 1, 2012

Page 2, Part 4 – General Information

Authorization to receive confidential tax information under Reg. section 601.504(b)(2)(i); to act as the estate's representative before the IRS; and to make written or oral presentations on behalf of the estate:

First Representative:

| | |
|---|---|
| Name: | Arthur Korth, Esquire |
| State: | New Jersey |
| Address: | Cooper Levenson, P.A.<br>1125 Atlantic Avenue, 3rd Floor<br>Atlantic City, NJ 08401-4806 |
| CAF Number: | 2605-14435R |
| Telephone Number: | (609) 572-7348 |

I declare that I am one of the attorneys for the executor. I am not under suspension or disbarment from practice before the Internal Revenue Service and am qualified to practice in the state shown above.

______________________________ Date: February 27, 2014
ARTHUR KORTH, ESQUIRE

Second Representative:

| | |
|---|---|
| Name: | Robert E. Salad, Esquire |
| State: | New Jersey |
| Address: | Cooper Levenson, P.A.<br>1125 Atlantic Avenue, 3rd Floor<br>Atlantic City, NJ 08401-4806 |
| CAF Number: | 2005 15617R |
| Telephone Number: | (609) 572-7777 |

I declare that I am one of the attorneys for the executor. I am not under suspension or disbarment from practice before the Internal Revenue Service and am qualified to practice in the state shown above.

______________________________ Date: February 27, 2014
ROBERT E. SALAD, ESQUIRE

ATTACHMENT
IRS Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return
Estate of Jack E. Galardi, SSN 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
Date of Death: December 1, 2012

**PROTECTIVE ELECTION TO USE ALTERNATE DATE VALUATION**

Pursuant to Treas. Reg. § 20.2032-1(b)(2), the executrix hereby makes a protective election to use alternate date valuation of the assets in the Estate of Jack Galardi should it be subsequently determined that a decrease in both the value of the gross estate and the sum (reduced by allowable credits) of the estate tax and the generation-skipping transfer tax liability payable by reason of the decedent's death with respect to the property includable in the decedent's gross estate will result from using alternate date valuation.

Date: ____________________

____________________________________
TERI G. GALARDI, Executrix

Form 706 (Rev. 8-2012)

**Estate of:** Jack E Galardi

Decedent's social security number: 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

## Part 3—Elections by the Executor

**Note.** For information on electing portability of the decedent's DSUE amount, including how to opt out of the election, see Part 6—Portability of Deceased Spousal Unused Exclusion.

**Note.** Some of the following elections may require the posting of bonds or liens.

**Please check "Yes" or "No" box for each question (see instructions).**

| | Question | Line | Yes | No |
|---|---|---|---|---|
| 1 | Do you elect alternate valuation? | 1 | | X |
| 2 | Do you elect special-use valuation? If "Yes," you must complete and attach Schedule A-1 | 2 | | X |
| 3 | Do you elect to pay the taxes in installments as described in section 6166? If "Yes," you must attach the additional information described in the instructions. **Note. By electing section 6166 installment payments, you may be required to provide security for estate tax deferred under section 6166 and interest in the form of a surety bond or a section 6324A lien.** | 3 | X | |
| 4 | Do you elect to postpone the part of the taxes due to a reversionary or remainder interest as described in section 6163? | 4 | | X |

## Part 4—General Information

**Note.** Please attach the necessary supplemental documents. You must attach the death certificate. (See instructions)

Authorization to receive confidential tax information under Reg. section 601.504(b)(2)(i); to act as the estate's representative before the IRS; and to make written or oral presentations on behalf of the estate:

| Name of representative (print or type) | State | Address (number, street, and room or suite no., city, state, and ZIP code) |
|---|---|---|
| Schedule Attached | | |

I declare that I am the ☐ attorney/ ☐ certified public accountant/ ☐ enrolled agent (check the applicable box) for the executor. I am not under suspension or disbarment from practice before the Internal Revenue Service and am qualified to practice in the state shown above.

| Signature | CAF number | Date | Telephone number |
|---|---|---|---|
| | | | |

1 Death certificate number and issuing authority (attach a copy of the death certificate to this return).
034259

2 Decedent's business or occupation. If retired, check here ▶ ☐ and state decedent's former business or occupation.
Corporate executive

3a Marital status of the decedent at time of death:
☐ Married ☐ Widow/widower ☐ Single ☐ Legally separated ☒ Divorced

3b For all prior marriages, list the name and SSN of the former spouse, the date the marriage ended, and whether the marriage ended by annulment, divorce, or death. Attach additional statements of the same size if necessary.

Shirley Galardi 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 01/08/87 Divorce
Joyce Wombley 04/18/69 Divorce

| 4a Surviving spouse's name | 4b Social security number | 4c Amount received (see instructions) |
|---|---|---|
| None | | |

5 Individuals (other than the surviving spouse), trusts, or other estates who receive benefits from the estate (do not include charitable beneficiaries shown in Schedule O) (see instructions).

| Name of individual, trust, or estate receiving $5,000 or more | Identifying number | Relationship to decedent | Amount (see instructions) |
|---|---|---|---|
| See Statement 1 | | | 35,707,538 |
| | | | |
| | | | |
| | | | |
| | | | |
| All unascertainable beneficiaries and those who receive less than $5,000 ▶ | | | |
| Total | | | 35,707,538 |

**If you answer "Yes" to any of the following questions, you must attach additional information as described.**

| | Question | Yes | No |
|---|---|---|---|
| 6 | Is the estate filing a protective claim for refund? If "Yes," complete and attach two copies of Schedule PC for each claim. | | X |
| 7 | Does the gross estate contain any section 2044 property (qualified terminable interest property (QTIP) from a prior gift or estate)? (see instructions) | | X |
| 8a | Have federal gift tax returns ever been filed? If "Yes," attach copies of the returns, if available, and furnish the following information: | X | |

| b Period(s) covered | c Internal Revenue office(s) where filed |
|---|---|
| See Statement 2 | |

| | Question | Yes | No |
|---|---|---|---|
| 9a | Was there any insurance on the decedent's life that is not included on the return as part of the gross estate? | | X |
| b | Did the decedent own any insurance on the life of another that is not included in the gross estate? | | X |

Form 706 (Rev. 8-2012)

**Estate of:** Jack E Galardi

**Decedent's social security number** 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

## Part 4—General Information (continued)

| If you answer "Yes" to any of the following questions, you must attach additional information as described. | Yes | No |
|---|---|---|
| 10 Did the decedent at the time of death own any property as a joint tenant with right of survivorship in which (a) one or more of the other joint tenants was someone other than the decedent's spouse, and (b) less than the full value of the property is included on the return as part of the gross estate? If "Yes," you must complete and attach Schedule E | | X |
| 11a Did the decedent, at the time of death, own any interest in a partnership (for example, a family limited partnership), an unincorporated business, or a limited liability company; or own any stock in an inactive or closely held corporation? | X | |
| b If "Yes," was the value of any interest owned (from above) discounted on this estate tax return? If "Yes," see the instructions on reporting the total accumulated or effective discounts taken on Schedule F or G | | X |
| 12 Did the decedent make any transfer described in sections 2035, 2036, 2037, or 2038? (see instructions) If "Yes," you must complete and attach Schedule G | X | |
| 13a Were there in existence at the time of the decedent's death any trusts created by the decedent during his or her lifetime? | X | |
| b Were there in existence at the time of the decedent's death any trusts not created by the decedent under which the decedent possessed any power, beneficial interest, or trusteeship? | | X |
| c Was the decedent receiving income from a trust created after October 22, 1986, by a parent or grandparent? | | X |
| If "Yes," was there a GST taxable termination (under section 2612) on the death of the decedent? | | X |
| d If there was a GST taxable termination (under section 2612), attach a statement to explain. Provide a copy of the trust or will creating the trust, and give the name, address, and phone number of the current trustee(s). | | |
| e Did the decedent at any time during his or her lifetime transfer or sell an interest in a partnership, limited liability company, or closely held corporation to a trust described in lines 13a or 13b? | | X |
| If "Yes," provide the EIN for this transferred/sold item. ▶ | | |
| 14 Did the decedent ever possess, exercise, or release any general power of appointment? If "Yes," you must complete and attach Schedule H | | X |
| 15 Did the decedent have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account? | | X |
| 16 Was the decedent, immediately before death, receiving an annuity described in the "General" paragraph of the instructions for Schedule I or a private annuity? If "Yes," you must complete and attach Schedule I | | X |
| 17 Was the decedent ever the beneficiary of a trust for which a deduction was claimed by the estate of a predeceased spouse under section 2056(b)(7) and which is not reported on this return? If "Yes," attach an explanation | | X |

## Part 5—Recapitulation.

**Note.** If estimating the value of one or more assets pursuant to the special rule of Reg. section 20.2010-2T(a)(7)(ii), enter on both lines 10 and 23 the amount noted in the instructions for the corresponding range of values. (See instructions for details.)

| Item no. | Gross estate | | Alternate value | Value at date of death |
|---|---|---|---|---|
| 1 | Schedule A—Real Estate | 1 | | 33,709,373 |
| 2 | Schedule B—Stocks and Bonds | 2 | | 33,464,720 |
| 3 | Schedule C—Mortgages, Notes, and Cash | 3 | | 423,499 |
| 4 | Schedule D—Insurance on the Decedent's Life (attach Form(s) 712) | 4 | | 2,000,000 |
| 5 | Schedule E—Jointly Owned Property (attach Form(s) 712 for life insurance) | 5 | | 0 |
| 6 | Schedule F—Other Miscellaneous Property (attach Form(s) 712 for life insurance) | 6 | | 4,637,178 |
| 7 | Schedule G—Transfers During Decedent's Life (att. Form(s) 712 for life insurance) | 7 | | 4,960,000 |
| 8 | Schedule H—Powers of Appointment | 8 | | 0 |
| 9 | Schedule I—Annuities | 9 | | 0 |
| 10 | Estimated value of assets subject to the special rule of Reg. section 20.2010-2T(a)(7)(ii) | 10 | | 0 |
| 11 | Total gross estate (add items 1 through 10) | 11 | | 79,194,770 |
| 12 | Schedule U—Qualified Conservation Easement Exclusion | 12 | | 0 |
| 13 | Total gross estate less exclusion (subtract item 12 from item 11). Enter here and on line 1 of Part 2—Tax Computation | 13 | | 79,194,770 |

| Item no. | Deductions | | Amount |
|---|---|---|---|
| 14 | Schedule J—Funeral Expenses and Expenses Incurred in Administering Property Subject to Claims | 14 | 720,758 |
| 15 | Schedule K—Debts of the Decedent | 15 | 9,518,819 |
| 16 | Schedule K—Mortgages and Liens | 16 | 16,660,751 |
| 17 | Total of items 14 through 16 | 17 | 26,900,328 |
| 18 | Allowable amount of deductions from item 17 (see the instructions for item 18 of the Recapitulation) | 18 | 26,900,328 |
| 19 | Schedule L—Net Losses During Administration | 19 | |
| 20 | Schedule L—Expenses Incurred in Administering Property Not Subject to Claims | 20 | |
| 21 | Schedule M—Bequests, etc., to Surviving Spouse | 21 | |
| 22 | Schedule O—Charitable, Public, and Similar Gifts and Bequests | 22 | |
| 23 | Estimated value of deductible assets subject to the special rule of Reg. section 20.2010-2T(a)(7)(ii) | 23 | 0 |
| 24 | Tentative total allowable deductions (add items 18 through 23). Enter here and on line 2 of the Tax Computation | 24 | 26,900,328 |

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi | Decedent's social security number 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

## Part 6—Portability of Deceased Spousal Unused Exclusion (DSUE)

### Portability Election

A decedent with a surviving spouse elects portability of the deceased spousal unused exclusion (DSUE) amount, if any, by completing and timely-filing this return. No further action is required to elect portability of the DSUE amount to allow the surviving spouse to use the decedent's DSUE amount.

### Section A. Opting Out of Portability

The estate of a decedent with a surviving spouse may opt out of electing portability of the DSUE amount. Check here and do not complete Sections B and C of Part 6 only if the estate opts NOT to elect portability of the DSUE amount. ☐

### Section B. QDOT

| | Yes | No |
|---|---|---|
| Are any assets of the estate being transferred to a qualified domestic trust (QDOT)? | | X |

If "Yes," the DSUE amount portable to a surviving spouse (calculated in Section C, below) is preliminary and shall be redetermined at the time of the final distribution or other taxable event imposing estate tax under section 2056A. See instructions for more details.

### Section C. DSUE Amount Portable to the Surviving Spouse (To be completed by the estate of a decedent making a portability election.)

Complete the following calculation to determine the DSUE amount that can be transferred to the surviving spouse.

| | | | |
|---|---|---|---|
| 1 | Enter amount from line 9c, Part 2—Tax Computation | 1 | |
| 2 | Enter amount from line 7, Part 2—Tax Computation | 2 | |
| 3 | Divide amount on line 2 by 35% (0.35). (do not enter less than zero) | 3 | |
| 4 | Add lines 1 and 3 | 4 | |
| 5 | Enter the amount from line 5, Part 2—Tax Computation | 5 | |
| 6 | Subtract line 5 from line 4 (do not enter less than zero) | 6 | |
| 7 | DSUE amount portable to the surviving spouse (Enter the lesser of line 6 or line 9a, Part 2—Tax Computation) | 7 | |

### Section D. DSUE Amount Received from Predeceased Spouse(s) (To be completed by the estate of a deceased surviving spouse with DSUE amount from predeceased spouse(s))

Provide the following information to determine the DSUE amount received from deceased spouses.

| A<br>Name of Deceased Spouse (dates of death after December 31, 2010, only) | B<br>Date of Death (enter as mm/dd/yy) | C<br>Portability Election Made? Yes | No | D<br>If "Yes," DSUE Amount Received from Spouse | E<br>DSUE Amount Applied by Decedent to Lifetime Gifts | F<br>Year of Form 709 Reporting Use of DSUE Amount Listed in col E | G<br>Remaining DSUE Amount, if any (subtract col E from col D) |
|---|---|---|---|---|---|---|---|
| **Part 1 — DSUE RECEIVED FROM LAST DECEASED SPOUSE** | | | | | | | |
| | | | | | | | |
| **Part 2 — DSUE RECEIVED FROM OTHER PREDECEASED SPOUSE(S) AND USED BY DECEDENT** | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Total (for all DSUE amounts from predeceased spouse(s) applied) | | | | | | | |

Add the amount from Part 1, column D and the total from Part 2, column E. Enter the result on line 9b, Part 2—Tax Computation ▶ ______

DAA

GALAAMENDED 11/20/2014 ...
Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE A — Real Estate

- For jointly owned property that must be disclosed on Schedule E, see instructions.
- Real estate that is part of a sole proprietorship should be shown on Schedule F.
- Real estate that is included in the gross estate under sections 2035, 2036, 2037, or 2038 should be shown on Schedule G.
- Real estate that is included in the gross estate under section 2041 should be shown on Schedule H.
- If you elect section 2032A valuation, you must complete Schedule A and Schedule A-1.

**Note.** If the value of the gross estate, together with the amount of adjusted taxable gifts, is less than the basic exclusion amount and the Form 706 is being filed solely to elect portability of the DSUE amount, consideration should be given as to whether you are required to report the value of assets eligible for the marital or charitable deduction on this schedule. See the instructions and Reg. section 20.2010-2T (a)(7)(ii) for more information. If you are not required to report the value of an asset, identify the property but make no entries in the last three columns.

| Item number | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| 1 | House and lot-760 Piedmont Avenue, Atlanta, GA and more specifically Dis 14, LI49, Lot 47, Piedmont Avenue. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-1 | | | 728,000 |
| 2 | Vacant land-1730 NW 33rd St., Pompano Beach, FL, and more specifically The Cigna Freshna Plat Two 128-41B Tract "A". Value per appraisal attached as Exhibit A-2. | | | 1,520,000 |
| 3 | House and lot-13922 NW 13th St, Pembroke Pines, FL. and more specifically Lot 25 Block 17 Pembroke Falls Phase #5 164-7B. Value per appraisal attached as Exhibit A-3 | | | 500,000 |
| 4 | Vacant land-20 acres, Moapa Valley, Clark County, NV and more specifically APN 071-18-601-015. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-4. | | | 20,000 |
| 5 | Vacant land-2 parcels, Clark County NV and more specifically 2 acres APN 041-25-301-012 and 1 acre APN 041-25-301-013. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-5 | | | 48,000 |
| 6 | Vacant land-2 gross acres, Clark County, NV and more specifically apn 041-36-201-029. Titled in the name of JEG Family Trust. Value per appraisal attached as | | | 39,000 |
| | Total from continuation schedules or additional statements attached to this schedule | | | 30,854,373 |
| | TOTAL. (Also enter on Part 5 — Recapitulation, page 3, at item 1.) | | | 33,709,373 |

(If more space is needed, attach the continuation schedule from the end of this package or additional statements of the same size.)

There are 6 continuation schedules attached

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE A CONTINUATION SCHEDULE

Continuation Schedule 1 of 6

| Item number | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| | Exhibit A-6. | | | |
| 7 | Land and building-2112 Western Avenue, Las Vegas, NV and more specifically APN 162-04-302-006, 162-04-302-007, 162-04-403-001. Titled in the name of New International Properties, LLC. Value per appraisal attached as Exhibit A-7. | | | 2,260,000 |
| 8 | Land and building-2111 and 2121 Highland Avenue, Las Vegas, NV and more specifically APR 1652-04-403-002 and 162-04-403-003. Titled in the name of New International Properties, LLC. Value per appraisal attached as Exhibit A-8. | | | 380,000 |
| 9 | Vacant land-6.45 acres, Naples FL, and more specifically Royal Palm Golf Estates Replat #3 Tract B. Titled in the name of Jack E Galardi LLC. Value per appraisal attached as Exhibit A-9. | | | 84,000 |
| 10 | House and lot, 3445 Shoreland Dr., Buford GA, and more specifically LI167, 8th District, Lots 1-2, Block C, H E Compton, Hall County. Value per appraisal attached as Exhibit A-10. | | | 629,000 |
| 11 | House and lot, 18511 Royal Hammock Blvd.,Naples FL and more specifically Royal Palm Golf Estates Unit #1 Blk A Lot 66. Value per appraisal attached as Exhibit A-11 | | | 230,000 |
| 12 | 2 Unit Condominium warehouse/retail building located at7951 and 7971NW 33rd St., Doral, FL 33122 and more specifically Airport Ind Center Condo Whse Unit 1-B | | | 755,000 |
| | TOTAL. (Carry forward to main schedule.) | | | 4,338,000 |

Schedule A Continuation

DAA

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE A CONTINUATION SCHEDULE

Continuation Schedule 2 of 6

| Item number | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| | and 9-B-1 undivided 5% and 2.75% interest in common elements off rec Rec-11292-2134. Value per appraisal attached as Exhibit A-12 | | | |
| 13 | Vacant land-Lot 58 on S/S Lake Hammond Dr, Naples FL and more specifically Royal Palm Golf Estates Replat #3 Lot 58. Titled in the name of Jack Galardi LLC. Value per appraisal attached as Exhibit A-13 | | | 21,000 |
| 14 | Vacant land-1.47 acre residential lot-747-751 Scott Road, Forest Park, GA, and more specifically City of Forest Park Parcel ID# 13015D A012. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-14. | | | 30,000 |
| 15 | Vacant land-.341 acres-775 Conley Rd. SE, Atlanta, GA and more specifically City of Atlanta, Parcel ID# 14-0032-LL-080-6 and City of Forest Park Parcel ID# 13015B B002A. Titled in the name of Walleye LLC. Value perappraisal attached as Exhibit A-15. | | | 135,000 |
| 16 | Vacant land-.812 acres-3700 Jonesboro Rd SE, Atlanta GA and more specifically City of Atlanta Tax ID# 14 0032 LL0715 Titled in the name of JEG Family Trust.Value per appraisal attached as Exhibit A-16 | | | 530,000 |
| 17 | Vacant lot-1xx 15th St., Marathon, FL, and more specifically Parrish sub Marathon sub PB 2--18 S"ly lots 1 & 2 blk 2. Value per appraisal attached as Exhibit A-17. | | | 43,000 |
| 18 | Land and building,-1704 Hudson | | | 245,000 |

TOTAL. (Carry forward to main schedule.) 1,004,000

DAA

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number
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

## SCHEDULE A CONTINUATION SCHEDULE

Continuation Schedule 3 of 6

| Item number | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| | Bridge Rd., Stockbridge, GA and more specifically parcel ID 032-01012007. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-18 | | | |
| 19 | Land and building-3920 Jonesboro Road, Forest Park, GA and more specifically Clayton County parcel ID# 13015B B002. Titled in the name of Walleye LLC. Value per appraisal attached as Exhibit A-19 | | | 650,000 |
| 20 | Vacant land-425 Industrial Boulevard, McDonough, GA and more specifically Henry County, City of McDonough, Parcel ID# 093-01018005. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-20 | | | 440,000 |
| 21 | Land and buildings including personal property located at 18100 Royal Tree Parkway, Naples FL and more specifically APN 71370080006. Titled in the name of Jack E Galardi, LLC. Value per appraisal attached as Exhibit A-21 | | | 3,240,000 |
| 22 | Land and building-1901 Mr. Joe White Avenue, Myrtle Beach SC and more specificall APN 18100-01-031. Value per appraisal attached as Exhibit A-22 | | | 3,475,000 |
| 23 | Vacant land-Mokelumne Hill, Calaveral County, CA and more specifically APN 020-001-091. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit-A23 | | | 67,500 |
| 24 | House and lot-201 Navarro Isle A.K.A Gordon Rd., Ft. Lauderdale, FL, and more | | | 4,200,000 |
| | TOTAL. (Carry forward to main schedule.) | | | 12,072,500 |

Schedule A Continuation

DAA

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE A CONTINUATION SCHEDULE

Continuation Schedule 4 of 6

| Item number | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| | specifically Lot 7,8 Navarro Isle 15-40B. Property is titled in the name of JEG LV Qualified Personal Residence Trust per appraisal, but was deeded to JEG Family Trust On July 20, 2012. Value per appraisal attached as Exhibit A-24 . | | | |
| 25 | Land and building-29 NE 11th St., 1135 North Miami Avenue and adjacent vacant land, all located in Miami FL. This real estate is a part of a sale, agreed to prior to December 1, 2012 and consumated December 18, 2012. Titled in the name of Fino Property & Management Consulting LLC. Value per closing statement attached as Exhibit A-25 | | | 4,500,000 |
| 26 | Land and building-973 Marietta Street, Atlanta GA. This property is a part of a sale, agreed to prior to December 1, 2012 and consumated September 18, 2013. Value per closing statement attached as Exhibit A-26 | | | 750,000 |
| 27 | Land and building-4766 Frontage Road, Forest Park, GA and more specifically APN 13044C A002. Titled in the name of JGP&P LLC. Value per appraisal attached as Exhibit A-27. | | | 450,000 |
| 28 | Vacant land-2.718 acres 10710 Walker Road, Thonotosassa, Hillsborough County, FL and more specifically, Parcel ID #U182820ZZZ000002096900 or Folio Number 061121-000. Value per appraisal attached as Exhibit A-28. | | | 275,000 |
| | TOTAL. (Carry forward to main schedule.) | | | 5,975,000 |

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE A CONTINUATION SCHEDULE

Continuation Schedule 5 of 6

| Item number | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| 29 | Land and Building-1837 Corporate Boulevard, Atlant GA. and more specifically APN 18-156-01-003. Titled in the name of JEG Family Trust. Value per appraisal attached as Exhibit A-29 | | | 2,491,946 |
| 30 | Land-6220 E. Adamo Dr., Tampa FL and more specifically APN 81-96 -15-000-0. Titled in the name of Galardi Rentals LLC. Appraisal forthcoming. | | | 5,000 |
| 31 | Land and building-2608 Metropolitan Parkway, Atlanta, GA and more specifically Fulton County parcel ID's 14-0092-0003-053-6 and 14-0092-003-056-9. Titled in the name of Trinidad Creations,LLC. Value per appraisal attached as Exhibit A-31 | | | 1,600,000 |
| 32 | Land and buildings-826 Knox Chapel Rd.,Social Circle, Butts County, GA.and more specifically #C170-000000-0118-000. Titled in the name of Geno G's LLC, Value per appraisal attached as Exhibit A-32 | | | 448,000 |
| 33 | Land and building-4730 Frontage Road, Forest Park, GA and more specifically APN 13044C A002. Titled in the name of JGP&P LLC. Appraisal forthcoming. | | | 1,414,000 |
| 34 | Land and building-211 New Goff Mountain Rd., Cross Lanes WV 25313 and more specifically Part Parcel A-10 91/100 Rocky Fork Relocated State Route 622 and B-10 Containing 36/1000 SW Cross Lanes Exit 64, Union District, Deed Book 2524, Page 366. Value per appraisal attached as Exhibit A-34 | | | 650,000 |
| TOTAL. (Carry forward to main schedule.) | | | | 6,608,946 |

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE A CONTINUATION SCHEDULE

Continuation Schedule 6 of 6

| Item number | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| 35 | Vacant land 1477 Overseas Hwy., Marathon, FL. and more specifically Parrish Sub Marathon PB 2-18N 15" Lot 1 & 2 Blk 2. Value per appraisal attached as Exhibit A-16 | | | 225,000 |
| 36 | Vacant lot 1xx 15 Street (interior lot) and more specifically Parrish Sub Marathon PB 2-18 NLT 50' of the S'ly 115' Lots 1 & 2 Blk 2 | | | 41,000 |
| 37 | Condominium-354 Mcgill Pl, NE, Atlanta, GA 30312 and more specifically District 14 LL 47, Unit 354, Mcgill Place. Value per appraisal attached sa Exhibit A-30 | | | 85,000 |
| 38 | Vacant land, North Park Court, Stockbridge, GA. | | | 504,927 |

TOTAL. (Carry forward to main schedule.) ........ 855,927

Schedule A Continuation

DAA

Form 706 (Rev. 8-2012)

**Estate of:** Jack E Galardi

Decedent's social security number 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

## SCHEDULE B — Stocks and Bonds

(For jointly owned property that must be disclosed on Schedule E, see instructions.)

**Note.** If the value of the gross estate, together with the amount of adjusted taxable gifts, is less than the basic exclusion amount and the Form 706 is being filed solely to elect portability of the DSUE amount, consideration should be given as to whether you are required to report the value of assets eligible for the marital or charitable deduction on this schedule. See the instructions and Reg. section 20.2010-2T (a)(7)(ii) for more information. If you are not required to report the value of an asset, identify the property but make no entries in the last four columns.

| Item number | Description, including face amount of bonds or number of shares and par value for identification. Give CUSIP number. If trust, partnership, or closely held entity, give EIN. | CUSIP number or EIN, where applicable | Unit value | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|---|---|
| 1 | 100% ownership - Trop, Inc., 2555 Chantilly Drive, Atlanta GA 30324. Value per appraisal attached as Exhibit B-1 | | | | | 6,299,800 |
| 2 | 100% ownership - Turntable Entertainment & Production Company, Inc. 2555 Chantilly Drive, Atlanta, GA 30324. Value per appraisal attached as Exhibit B-2 | | | | | 7,476,000 |
| 3 | 100% ownership - Country Club, Inc. 2555 Chantilly Drive, Atlanta, GA 30324 (a Georgia corporation). Value per appraisal attched as Exhibity B-3 | | | | | 1,453,600 |
| 4 | 100% ownership - Ponytail, Inc. 2555 Chantilly Drive, Atlanta, GA 30324. Value per appraisal attached as Exhibit B-4 | | | | | 4,086,900 |
| 5 | 100% ownership - Lafuente, Inc. 713 E Ogden St., Las Vegas, NV 89101. Value per appraisal attached as Exhibit B-5 | | | | | 1,848,300 |
| 6 | 100% ownership - Fly Low, Inc. 2555 Chantilly Drive, Atlanta, GA 30324. Value per appraisal attached as Exhibit B-6 | | | | | 1,892,500 |
| 7 | 100% ownership - Bella Mia, Inc. 2555 Chantilly Drive, Atlanta, GA 30324. Value per appraisal attached as Exhibit B-7 | | | | | 865,700 |
| 8 | 50% ownership - MBJG Inc. 2555 Chantilly Drive, Atlanta, GA. Value estimated.Value per appraisal attached as Exhibit B-8 | | | | | 1,853,000 |
| | Total from continuation schedules (or additional statements) attached to this schedule | | | | | 7,688,920 |
| | TOTAL. (Also enter on Part 5—Recapitulation, page 3, at item 2.) | | | | | 33,464,720 |

(If more space is needed, attach the continuation schedule from the end of this package or additional statements of the same size.)

DAA There are 2 continuation schedules attached

Form 706 (Rev. 8-2012)

**Estate of:** Jack E Galardi

**Decedent's social security number** 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

# SCHEDULE B CONTINUATION SCHEDULE

Continuation Schedule 1 of 2

| Item number | Description, including face amount of bonds or number of shares and par value for identification. Give CUSIP number. If trust, partnership, or closely held entity, give EIN. | CUSIP number or EIN, where applicable | Unit value | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|---|---|
| 9 | 100% ownership - Galardi Eagle Lakes LLC 2555 Chantilly Drive, Atlanta, GA 30324. Value per appraisal attached as Exhibit B-9 | | | | | 2,070,000 |
| 10 | 100% ownership - Country Club, Inc. 2555 Chantilly Drive, Atlanta GA 30324 (a South Carolina corporation). Value per appraisal attached as Exhibit B-10 | | | | | 2,451,600 |
| 11 | 100% ownership - LVA Management, Inc. 713 E. Ogden Street, Las Vegas, NV 89101. Value per appraisal attached as Exhibit B-11. | | | | | 1,832,100 |
| 12 | 100% ownership - Three Women, Inc., 2555 Chantilly Drive.tlanta, GA 30324. Value per appraisal attached as Exhibit B-12. | | | | | 1,207,000 |
| 13 | 100% ownership - Candy Pink, Inc. 713 E. Ogden St., Las Vegas, NV 89101. Value estimated. Appraisal forthcoming. | | | | | 10,000 |
| 14 | 100% ownership - E & J Inc. 2555 Chantilly Drive, Atlanta, GA 30324. Value estimated. Appraisal forthcoming. | | | | | 25,000 |
| 15 | 100% ownership - The Riviera Entertainment Group, Inc. 2555 Chantilly Drive, Atlanta, GA 30324. Value estimated, Appraisal forthcoming. | | | | | 10,000 |
| 16 | 100% ownership - GFT Management and Consulting, Inc., 2555 Chantilly Drive, Atlanta GA 30324. Value estimated. Appraisal forthcoming. | | | | | 10,000 |

TOTAL. (Carry forward to main schedule.) .......... 7,615,700

**Schedule B Continuation**

DAA

GALAAMENDED 11/10/2014 10:40 AM

Form 706 (Rev. 8-2012)

**Estate of:** Jack E Galardi

**Decedent's social security number** 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

## SCHEDULE B CONTINUATION SCHEDULE

Continuation Schedule 2 of 2

| Item number | Description, including face amount of bonds or number of shares and par value for identification. Give CUSIP number. If trust, partnership, or closely held entity, give EIN. | CUSIP number or EIN, where applicable | Unit value | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|---|---|
| 17 | 100% ownership - Extreme Tours, Inc. d/b/a Rebel Adventure Tours - 713 E. Ogden Street, Las Vegas, NV 89101. Value estimated, Appraisal forthcoming. | | | | | 10,000 |
| 18 | 100% ownership - WV Country Club, Inc., 2555 Chantilly Drive, Atlanta GA. 30324. Value estimated. Appraisal forthcoming. | | | | | 1,000 |
| 18 | 100% ownership - GFT Management & Consulting, Inc. 2555 Chantilly Drive, Atlanta, GA 30324. Value estimated. Appraisal forthcoming. | | | | | 10,000 |
| 19 | 50% ownership - Jacmak LLC Value estimated. Appraisal forthcoming. | | | | | 1,000 |
| 20 | 100% Ownership - Mia Luna, Inc. 2555 Chantilly Drive, Atlanta, Ga 30324. Value estimated. Appraisal forthcoming. | | | | | 1,000 |
| 21 | 18,000 shares - Sirius XM Radio Inc. common. CUSIP 98375YAU0 | | | | | 50,220 |

TOTAL. (Carry forward to main schedule.) 73,220

**Schedule B Continuation**

DAA

GALAAMENDED 11/10/2014 10:40 AM

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE C—Mortgages, Notes, and Cash

(For jointly owned property that must be disclosed on Schedule E, see instructions.)

**Note.** If the value of the gross estate, together with the amount of adjusted taxable gifts, is less than the basic exclusion amount and the Form 706 is being filed solely to elect portability of the DSUE amount, consideration should be given as to whether you are required to report the value of assets eligible for the marital or charitable deduction on this schedule. See the instructions and Reg. section 20.2010–2T (a)(7)(ii) for more information. If you are not required to report the value of an asset, identify the property but make no entries in the last three columns.

| Item number | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| 1 | Cash on hand | | | 20,000 |
| 2 | Nevada State Bank-230 Las Vegas Blvd South, Las Vegas, NV checking account | | | 1,136 |
| 3 | Bank of North Las Vegas - 6385 Simmons St., North Las Vegas, NV checking account. | | | 351 |
| 4 | Wells Fargo Bank - 1700 East Charleston Ave., Las Vegas, NV | | | 1,041 |
| 5 | Note receivable-James I Dent and Willye Dent, 17817 Simms Road, Odessa Fl, 33556, The note is dated September 16, 2011, payable monthly, interest only, with interest computed at 5.25% per annum. The note matures September 14, 2018 and is secured by real estate located in Hillsborough County, FL. | | | 400,000 |
| 6 | Accrued interest on Note receivable from James I Dent and Willye M Dent. $400,000 @5.25% per annum from November 15, 2012 to December 1, 2012, or 17 days. | | | 971 |
| | Total from continuation schedules (or additional statements) attached to this schedule | | | |
| | TOTAL. (Also enter on Part 5—Recapitulation, page 3, at item 3.) | | | 423,499 |

(If more space is needed, attach the continuation schedule from the end of this package or additional statements of the same size.)

DAA There are no continuation schedules attached

Estate of: Jack E Galardi

Decedent's social security number 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

# SCHEDULE D — Insurance on the Decedent's Life

You must list all policies on the life of the decedent and attach a Form 712 for each policy.

**Note.** If the value of the gross estate, together with the amount of adjusted taxable gifts, is less than the basic exclusion amount and the Form 706 is being filed solely to elect portability of the DSUE amount, consideration should be given as to whether you are required to report the value of assets eligible for the marital or charitable deduction on this schedule. See the instructions and Reg. section 20.2010-2T (a)(7)(ii) for more information. If you are not required to report the value of an asset, identify the property but make no entries in the last three columns.

| Item number | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| 1 | Universal Life Insurance Policy Pacific Life Insurance Company, P O Box 2030, Omaha, NV 89103-2030, Policy # VF50001050. | | | 2,000,000 |
| | Total from continuation schedules (or additional statements) attached to this schedule | | | |
| | TOTAL. (Also enter on Part 5 — Recapitulation, page 3, at item 4.) | | | 2,000,000 |

(If more space is needed, attach the continuation schedule from the end of this package or additional statements of the same size.)

DAA There are no continuation schedules attached

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE F—Other Miscellaneous Property Not Reportable Under Any Other Schedule

(For jointly owned property that must be disclosed on Schedule E, see instructions.)

(If you elect section 2032A valuation, you must complete Schedule F and Schedule A-1.)

**Note.** If the value of the gross estate, together with the amount of adjusted taxable gifts, is less than the basic exclusion amount and the Form 706 is being filed solely to elect portability of the DSUE amount, consideration should be given as to whether you are required to report the value of assets eligible for the marital or charitable deduction on this schedule. See the instructions and Reg. section 20.2010-2T (a)(7)(ii) for more information. If you are not required to report the value of an asset, identify the property but make no entries in the last three columns.

| | | Yes | No |
|---|---|---|---|
| 1 | Did the decedent own any works of art, items, or any collections whose artistic or collectible value at date of death exceeded $3,000? If "Yes," submit full details on this schedule and attach appraisals. | | X |
| 2 | Has the decedent's estate, spouse, or any other person received (or will receive) any bonus or award as a result of the decedent's employment or death? If "Yes," submit full details on this schedule. | | X |
| 3 | Did the decedent at the time of death have, or have access to, a safe deposit box? If "Yes," state location, and if held jointly by decedent and another, state name and relationship of joint depositor. If any of the contents of the safe deposit box are omitted from the schedules in this return, explain fully why omitted. | | X |

| Item number | Description. For securities, give CUSIP number. If trust, partnership, or closely held entity, give EIN | CUSIP number or EIN, where applicable | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|---|
| 1 | 31 Work and collectible vehicles known as the Circle G Ranch Automobile Collection. Value per appraisal attached as Exhibit F-1 | | | | 1,031,455 |
| 2 | Contents, 2200 Waldman Avenue, Las Vegas, NV. Value per appraisal attached as Exhibit F-2 | | | | 85,047 |
| 3 | Contents, 4205 Gordon Avenue, Ft. Lauderdale, FL. Appraisal forthcoming. | | | | 75,000 |
| 4 | Contents, 760 Piedmont Avenue, Atlanta, GA. Appraisal forthcoming. | | | | 75,000 |
| 5 | Cash bond established on appeal of judgement in the Nevada Supreme Court. On May 13, 2013 | | | | 2,227,626 |
| 6 | Accrued interest on cash bond - Item F5 from April 21,2011 through December 1, 2012 | | | | 188,350 |
| 7 | Gun Collection, Jewelry and other personal items - appraisals forthcoming. | | | | 120,000 |
| | Total from continuation schedules (or additional statements) attached to this schedule | | | | 834,700 |
| | TOTAL. (Also enter on Part 5—Recapitulation, page 3, at item 6.) | | | | 4,637,178 |

(If more space is needed, attach the continuation schedule from the end of this package or additional statements of the same size.)

DAA There is 1 continuation schedule attached

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE F CONTINUATION SCHEDULE

Continuation Schedule 1 of 1

| Item number | Description. For securities, give CUSIP number. If trust, partnership, or closely held entity, give EIN | CUSIP number or EIN, where applicable | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|---|
| 8 | 1.1192569% interest in Dominium Elwood Villas, L.P. - 2905 Northwest Blvd., ste 150, Plymouth MN. Estimated value. | | | | |
| 9 | 2007 Gift tax paid for which credit is being allowed. See Schedule G. | | | | 655,700 |
| 10 | 100% ownership in Hazeleyes LLC - (a disregarded entity) value estimated, appraisal forthcoming. | | | | 5,000 |
| 11 | 100% ownership - New International Properties, LLC., 713 East Ogden St., Las vegas, NV. The only asset is real estate subject to a mortgage. Value of the real estate is reflected on Schedule A7 and A8. Liabilty is reflected on Schedule G2. | | | | |
| 12 | 100% ownership - Jack E Galardi, LLC., 2555 Chantilly Drive, Atlanta, GA. The only assets are real estate subject to mortgages. Values of the real estate are reflected on Schedule A9, A11, A12, and A21. Mortgages are reflected on Schedule K9 and K10 | | | | |
| 13 | 100% ownership - Walleye, LLC, 2555 Chantilly Drive, Atlanta, GA 30324. The only asset is real estate subject to a mortgage. The value of the real estate is reflected on Schedule A31, The mortgage is reflected on Schedule K | | | | |
| 14 | 50% ownership in JG Holdings, LLC. The only asset held is real estate. Appraisal forthcoming. | | | | 174,000 |
| | TOTAL. (Carry forward to main schedule.) | | | | 834,700 |

Estate of:

Decedent's social security number 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

## SCHEDULE G—Transfers During Decedent's Life

(If you elect section 2032A valuation, you must complete Schedule G and Schedule A-1.)

**Note.** If the value of the gross estate, together with the amount of adjusted taxable gifts, is less than the basic exclusion amount and the Form 706 is being filed solely to elect portability of the DSUE amount, consideration should be given as to whether you are required to report the value of assets eligible for the marital or charitable deduction on this schedule. See the instructions and Reg. section 20.2010-2T (a)(7)(ii) for more information. If you are not required to report the value of an asset, identify the property but make no entries in the last three columns.

| Item number | Description. For securities, give CUSIP number. If trust, partnership, or closely held entity, give EIN | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| A. | Gift tax paid or payable by the decedent or the estate for all gifts made by the decedent or his or her spouse within 3 years before the decedent's death (section 2035(b)) | X X X X X | | |
| B. | Transfers includible under sections 2035(a), 2036, 2037, or 2038: | | | |
| 1 | House and lot-1245 Rancho Dr, Las Vegas, NV, and more specifically Parcel map, pg 28 & part NW4 sec 04 21 61. Property is titled in the name of Jeg LV Qual Personal Res Trust. Value per appraisal attached as Exhibit G2-1 | | | 2,000,000 |
| 2 | House and lot-2211 Edgewood Ave, Las Vegas, NV more specificall Parcel map File 31, page 28, Lot 1. Value per appraisal attached as Exhibit G2-2 | | | 330,000 |
| 3 | Vacant land-Hwy 42 South, Flovilla GA and more | | | 101,000 |
| | There is 1 continuation schedule attached | | | |
| | Total from continuation schedules (or additional statements) attached to this schedule | | | 2,529,000 |
| | **TOTAL.** (Also enter on Part 5—Recapitulation, page 3, at item 7.) | | | 4,960,000 |

## SCHEDULE H—Powers of Appointment

(Include "5 and 5 lapsing" powers (section 2041(b)(2)) held by the decedent.)
(If you elect section 2032A valuation, you must complete Schedule H and Schedule A-1.)

**Note.** If the value of the gross estate, together with the amount of adjusted taxable gifts, is less than the basic exclusion amount and the Form 706 is being filed solely to elect portability of the DSUE amount, consideration should be given as to whether you are required to report the value of assets eligible for the marital or charitable deduction on this schedule. See the instructions and Reg. section 20.2010-2T (a)(7)(ii) for more information. If you are not required to report the value of an asset, identify the property but make no entries in the last three columns.

| Item number | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| | There are no continuation schedules attached | | | |
| | Total from continuation schedules (or additional statements) attached to this schedule | | | |
| | **TOTAL.** (Also enter on Part 5—Recapitulation, page 3, at item 8.) | | | 0 |

(If more space is needed, attach the continuation schedule from the end of this package or additional statements of the same size.)

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE G CONTINUATION SCHEDULE

Continuation Schedule 1 of 1

| Item number | Description. For securities, give CUSIP number. If trust, partnership, or closely held entity, give EIN | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| | specifically LL33,34 of the 4th LD, cont. 51.71 acres, See Deed Book 638-160. Deeded to JEG FL Qualified Personal Residence Trust, shown on apprasal as owned by Circle G Holdings, LLC. Value per appraisal attached as Exhibit G2-3 | | | |
| 4 | Vacant land-Hwy 42 South, Flovilla GA and more specifically LL33,34 of the 4th LD, cont. 30 acres. See Deed Book 434-524. Deeded to JEG FL Qualified Personal Residence Trust. Shown on appraisal as owned by Circle G Holdings, LLC, Value oer appraisal attached as Exhibit G2-4 | | | 79,000 |
| 5 | House and lot-Highway 42 S, Flovilla, GA and more specifically LL33,34,35,56,63,64 of the 4th LD, cont. 109.364 acres, Tract A & D. See Deed Book 638-160. Deeded to JEG FL Qualified Personal Residence Trust, shown on appraisal as titled in the name of Circle G Holdings. | | | 2,450,000 |
| | TOTAL. (Carry forward to main schedule.) | | | 2,529,000 |

DAA

Form 706 (Rev 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE J — Funeral Expenses and Expenses Incurred in Administering Property Subject to Claims

▶ Use Schedule PC to make a protective claim for refund due to an expense not currently deductible. For such a claim, report the expense on Schedule J but without a value in the last column.

**Note.** Do not list expenses of administering property not subject to claims on this schedule. To report those expenses, see instructions.

If executors' commissions, attorney fees, etc., are claimed and allowed as a deduction for estate tax purposes, they are not allowable as a deduction in computing the taxable income of the estate for federal income tax purposes. They are allowable as an income tax deduction on Form 1041, U.S. Income Tax Return for Estates and Trusts, if a waiver is filed to forgo the deduction on Form 706 (see Instructions for Form 1041).

| | Yes | No |
|---|---|---|
| Are you aware of any actual or potential reimbursement to the estate for any expense claimed as a deduction on this schedule? If "Yes," attach a statement describing the expense(s) subject to potential reimbursement. (see instructions) | | X |

| Item number | Description | Expense amount | Total amount |
|---|---|---|---|
| | A. Funeral expenses: | | |
| 1 | West Memorials<br>2481 Brood Ave., Memphis, TN 38112 | 509,013 | |
| | Horticulture Consultation and Desig | 78,725 | |
| | Total funeral expenses ▶ | | 587,738 |
| | B. Administration expenses: | | |
| | 1 Executors' commissions — (Strike out the words that do not apply.) | | 0 |
| | 2 Attorney fees — (Strike out the words that do not apply.) Paid | | 10,435 |
| | 3 Accountant fees — (Strike out the words that do not apply.) Amount estimated, Paid | | 60,725 |
| | 4 Miscellaneous expenses: | Expense amount | |
| | Wrights Appraisals. 211 Theall St. Sonora CA. - Real Estate appraisal. | 750 | |
| | Auto Appraisal Network, Inc. 19 Spectrum Pointe Dr. #605 Lake Forest, CA 92630 - Vehicle appraisals | 3,100 | |
| | Oracle Real Estate Services, Inc. 3544 Haberdham St., Tucker, GA 30084 - Real estate appraisals | 14,050 | |
| | David Arenaz CAGA International Estate Auctions 900 Las Vegas Blvd S., Las Vegas NV 89101. Personal property appraisal | 760 | |
| | Landauer Valuation & Advisory 1551 N Tustin Ave., Santa Ana, CA - Real estate appraisals | 20,500 | |
| | Pritchett, Ball & Wise, Inc. 2295 Parklake Dr,Atlanta GA 30345 - Real estate appraisals | 3,000 | |
| | Casey Dean Eisnor | | |
| | Total miscellaneous expenses from continuation schedules (or additional statements) attached to this schedule | 19,700 | |
| | Total miscellaneous expenses ▶ | | 61,860 |
| | TOTAL. (Also enter on Part 5—Recapitulation, page 3, at item 14.) ▶ | | 720,758 |

(If more space is needed, attach the continuation schedule from the end of this package or additional statements of the same size.)

DAA There is 1 continuation schedule attached

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE J CONTINUATION SCHEDULE

Continuation Schedule 1 of 1

| | Description of Miscellaneous expense | Expense amount |
|---|---|---|
| | 34 Mutiny Place, Key Largo, FL 33037 - Real estate appraisal | 800 |
| | Dover Realty 464 W 3rd St. Jackson, GA 30233 Real estate appraisals | 5,100 |
| | Bloom Sugarman Everett LLP 977 Ponce De Leon Ave., Atlanta, GA-Real estate appraisal | 12,000 |
| | Balsiero & Associates Inc P O Box 10725 Tampa, FL 33624 Real Estate appraisal | 1,800 |

TOTAL. (Carry forward to main schedule.) 19,700

Schedule J Continuation

DAA

Form 706 (Rev. 8-2012)

Estate of: | Decedent's social security number 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

## SCHEDULE K — Debts of the Decedent, and Mortgages and Liens

▶ Use Schedule PC to make a protective claim for refund due to a claim not currently deductible. For such a claim, report the expense on Schedule K but without a value in the last column.

| | Yes | No |
|---|---|---|
| Are you aware of any actual or potential reimbursement to the estate for any debt of the decedent, mortgage, or lien claimed as a deduction on this schedule? | | X |
| If "Yes," attach a statement describing the items subject to potential reimbursement. (see instructions) | | |
| Are any of the items on this schedule deductible under Reg. section 20.2053-4(b) and Reg. section 20.2053-4(c)? | | X |
| If "Yes," attach a statement indicating the applicable provision and documenting the value of the claim. | | |

| Item number | Debts of the Decedent — Creditor and nature of debt, and allowable death taxes | Amount |
|---|---|---|
| 1 | United States Treasury - 2012 income tax liability-estimated | 2,000,000 |
| 2 | United States Treasury-2011 amended Federal Income Tax Return | 508,692 |
| 3 | Accrued interest and penalty on 2011 amended Federal Income Tax return | 12,041 |
| 4 | United States Treasury- 2010 amended Federal income Tax return | 407,468 |
| 5 | Accrued interest and penalty on 2010 amended Federal Inome Tax return - estimated | 60,000 |
| 6 | State of Georgia-2012 State Income Tax return - estimated | 120,000 |
| 7 | TEPC loan re: Florida Department of Taxation lein against item A25 | 59,743 |
| 8 | Property taxes due on item A25 | 57,812 |
| | There is 1 continuation schedule attached | |
| | Total from continuation schedules (or additional statements) attached to this schedule | 6,293,063 |
| | TOTAL. (Also enter on Part 5 — Recapitulation, page 3, at item 15.) | 9,518,819 |

| Item number | Mortgages and Liens — Description | Amount |
|---|---|---|
| 1 | CITI Mortgage - Original loan was $1,805,000. Interest is computed at 5.3% per annum. Secured by item G2-1 | 1,330,451 |
| 2 | Sitis Companies - Original loan was $1,200,000. Interest is 8.5% per annum Secured by item A7 | 796,148 |
| 3 | United Western Mortgage - Original loan was $2,000,000. Interest is 8.3% per annum. Secured by item A-24 | 561,093 |
| 4 | Wachovia Bank - Original loan was $980,000. Interest is 7.5% per annum. Secured by item G5. | 570,973 |
| 5 | Hamilton State Bank - Original loan was $500,000. Interest is 5.5% per annum. Secured by item A18. | 397,582 |
| 6 | H Earl and Phyllis J Burchett - Original loan was $400,000. Interest is 8% per annum. Secured by item | |
| | There is 1 continuation schedule attached | |
| | Total from continuation schedules (or additional statements) attached to this schedule | 13,004,504 |
| | TOTAL. (Also enter on Part 5 — Recapitulation, page 3, at item 16.) | 16,660,751 |

(If more space is needed, attach the continuation schedule from the end of this package or additional statements of the same size.)

DAA

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi | Decedent's social security number 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

# SCHEDULE K CONTINUATION SCHEDULE - DEBTS

Continuation Schedule 1 of 1

| Item number | Debts of the Decedent — Creditor and nature of debt, and allowable death taxes | Amount |
|---|---|---|
| 9 | Judgement payable to Naples Polaris LLC under appeal as of December 1, 2012. Posted cash bond is shown at item F5. | 2,227,626 |
| 10 | Accrued interest on judgment from April 21, 2011 through December 1, 2012 | 188,401 |
| 11 | Judgement payable to Abramovitz Investment Properties LLC under appeal in the Superior Court of the State of Arizona in and for County of Maricopa as of date of decedents death. Judgement attached as Exhibit K-1. | 2,924,800 |
| 12 | Accrued interest on Abramowitz Investments Properties LLC judgement pending appeal. 312 days at 4.25% per annum. | 105,964 |
| 13 | Judgement payable to Marchiol Family Limited Partnership under appeal in the Superior Court of State of Arizona in and for the County of Maricopa as of date of decedents death. Judgement attached as as Exhibit K-1. | 518,837 |
| 14 | Accrued interest on Marichol Family Partnership judgement pending appeal. 312 days at 4.25% per annum. | 18,797 |
| 15 | Loan payable MBJG, Inc. The debt was incurred in 2010 and is non-interest bearing. | 308,638 |
| | TOTAL. (Carry forward to main schedule) | 6,293,063 |

Form 706 (Rev. 8-2012)

Estate of: Jack E Galardi

Decedent's social security number 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

## SCHEDULE K CONTINUATION SCHEDULE - MORTGAGES AND LIENS

Continuation Schedule 1 of 1

| Item number | Mortgages and Liens — Description | Amount |
|---|---|---|
| | A32 | 38,657 |
| 7 | James E Hammock - Original loan was $400,000. Interest is 6% per annum. Secured by item A27. | 337,583 |
| 8 | Chase Mortgage - Original loan was $$440,000. Interest is 6.7% per annum. Secured by item A10. | 391,549 |
| 9 | TransCapital Bank - Original loan was $2,600,000. Interest is 8.5% per annum. Secured by item A21. | 2,450,381 |
| 10 | TransCapital Bank - Original loan was $1,200,000. Interest is at 6% per annum Secured by item A21 | 1,142,413 |
| 11 | InterAmerican Bank - Original loan was $2,000,000. Interest is 9.2% per annum. Secured by item A25 | 1,362,863 |
| 12 | TransCapital Bank - Original loan was $4,000,000. Interest is 7.5% per annum. Secured by item A24 | 3,411,325 |
| 13 | Business First Bank- Original loan was $1,500,000. Interest is 8.75% per annum. Secured by item A33 | 1,607,829 |
| 14 | Tumlin Enterprises-Original loan was $1,900,000. Interest is at 7% per annum. Secured by item A31 | 993,045 |
| 15 | Key Bank R E Capital-Original loan was $1,500,000. Interest is computed at 7% per annum. Secured by item A22 | 576,029 |
| 16 | Wells Fargo Bank-Original loan was $736,250. Interest is computed at 6.875% per annum. Secured by item A3 | 692,830 |

TOTAL. (Carry forward to main schedule) . . . . . . . . . . 13,004,504

Schedule K Continuation Liens

DAA

| Form 706 | Election to Pay Estate Tax Related to Closely Held Business in Installments<br>Date of Death 12/01/12 | 2012 |
|---|---|---|

| Estate of: | Social Security Number |
|---|---|
| Jack E Galardi | 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 |

In accordance with IRC Section 6166(d) and Regulation 20.6166-1(b), the estate provides the following information with respect to its Section 6166 election:

Amount of tax being paid in installments $ 15,085,673

The first installment will be paid on 09/01/18

Tax will be paid in a total of 10 annual installments (including the first installment)

The property shown on the estate tax return that constitutes the closely held business interest is as follows:

| Estate Return Schedule | Item No. | Amount |
|---|---|---|
| See Statement 3 | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

The estate tax value of the property(ies) listed above totals: $ 44,686,246

This amount exceeds 35% of the value of the adjusted gross estate.

GALA AMENDED Galardi, Jack E
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
FYE: 12/1/2012

11/10/2014  10.37 AM

## Federal Statements

### Statement 1 - Form 706, Part 4, Line 5 - Beneficiaries Receiving $5,000 or More

| Name | TIN | Relationship to Decedent | Amount |
|---|---|---|---|
| Teri Gale Galardi | 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 | Daughter | $  25,891,903 |
| Jack Galardi Jr. | 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 | Son | 8,630,635 |
| Kathy Holder | 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 | Daughter | 300,000 |
| Emelita Sy | 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 | Employee | 200,000 |
| Maricar Martinez | 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 | Employee | 100,000 |
| Jeffrey Stromatt | 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 | | 65,000 |
| Diana Pontrelli | 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 | | 100,000 |
| Daniel Geiger | 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 | | 200,000 |
| MIchael Porter | 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 | | 20,000 |
| Daniel Purdy | 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 | | 100,000 |
| Charles Wright | 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 | Employee | 100,000 |
| Total | | | $  35,707,538 |

### Statement 2 - Form 706, Part 4, Line 8b and 8c - Federal Gift Tax Return Information

| Period(s) Covered | IRS Office(s) Where Filed |
|---|---|
| 2007 | Cincinnati, OH  45999 |
| 2012 | Cincinnati, OH  45999 |

GALAAMENDED Galardi, Jack E                                    11/10/2014  10:37 AM
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                    **Federal Statements**
FYE: 12/1/2012

## Statement 3 - Property which Comprises Closely Held Business Interest

| Schedule | Item No. | Amount |
|----------|----------|--------|
| A | 7 | $ 2,260,000 |
| A | 8 | 380,000 |
| A | 19 | 650,000 |
| A | 21 | 3,240,000 |
| A | 22 | 3,475,000 |
| A | 27 | 450,000 |
| A | 29 | 2,491,946 |
| A | 31 | 1,600,000 |
| A | 33 | 1,414,000 |
| B | 1 | 6,299,800 |
| B | 2 | 7,476,000 |
| B | 3 | 1,453,600 |
| B | 4 | 4,086,900 |
| B | 5 | 1,848,300 |
| B | 9 | 2,070,000 |
| B | 10 | 2,451,600 |
| B | 11 | 1,832,100 |
| B | 12 | 1,207,000 |
| Total | | $ 44,686,246 |

# EXHIBIT 4

EXHIBIT 4

Electronically Filed
9/19/2018 9:23 AM
Steven D. Grierson
CLERK OF THE COURT

PET

SHIRLEY A. DERKE, ESQ.
Nevada Bar No. 2686
627 S. Seventh St.
Las Vegas, NV 89101
702-386-6800
shirley@Derke.lvcoxmail.com
Attorney for Petitioner

DISTRICT COURT

CLARK COUNTY, NEVADA

* * *

| In the Matter of the<br><br>JEG TRUST - JACK GALARDI JR. SUB-TRUST | Case No. P P-18-096792-T<br>Dept. PC1<br>DATE:<br>TIME: 9:30 a.m. |
|---|---|

**PETITION TO ALLOW THIS COURT TO TAKE JURISDICTION OVER THE TRUST; AND REQUEST FOR REMOVAL OF NAMED SUCCESSOR TRUSTEE**

Comes now, the Petitioner, JACK GALARDI, JR., sole beneficiary of the JEG TRUST - JACK GALARDI JR. SUB-TRUST, by and through his attorney, Shirley A. Derke, Esq., hereby moves this court for an order taking jurisdiction of the trust in rem and for removal of Terri Gale Galardi, named Successor Trustee by alleging as follows:

**GENERAL FACTS**

1. JACK E. GALARDI, also known as Jack Harold Edward Galardi, created a revocable living trust on November 1, 2006 and this trust was totally amended and restated on August 16, 2012. At the time of restatement, Jack E. Galardi declared he was a resident of Clark County, Nevada. The Trustor was the Trustee of this trust. A copy of this trust is provided in camera for the court.

2. JACK E. GALARDI passed away on December 1, 2012, leaving a taxable estate of more than $50,000,000.

3. TERI GALE GALARDI, the named Personal Representative under JACK E. GALARDI's will dated August 16, 2012 caused probate proceedings to begin in Clark County, Nevada under case No. P-13-076839-E and a final discharge was granted by this court on June 25, 2014.

4. TERI GALE GALARDI also caused the filing of the Decedent's form 706, a copy of which is provided in camera for the court.

5. The Decedent's form 706 indicates and Section 5.3(b) of the amended and restated trust states as follows:

> (b) <u>THE JACK GALARDI, JR. SUB-TRUST</u>: Twenty-five percent (25%) of the remaining Trust estate shall be distributed to the JACK GALARDI, JR. SUB-TRUST

6. When attempting to fund twenty five percent of the remaining trust estate, the Successor Trustee, TERI GALE GALARDI, found that the many of the assets of the trust could not be held by the JACK GALARDI, JR. SUB-TRUST due to their restricted license requirements. As a result, TERI GALE GALARDI was unable to use any of the business interests in the funding of this trust.

7. From documents provided by TERI GALE GALARDI, Trustee of the JACK GALARDI, JR. SUB-TRUST, it appears that the trust was funded approximately January 2015. Based upon the 2015 General Ledger, the net assets recorded were $6,693,388.60 and the decedent's form 706 indicates that JACK GALARDI, JR.'S distribution was to be $8,630,635 (which was after deducting apportioned federal estate taxes in the amount of $4,146,726).

8. As stated in Paragraph 6 above, due to the sensitive licensing of many of the assets of the estate, TERI GALE GALARDI, the remaining beneficiary of the estate took these assets that required licensing, giving the JACK GALARDI, JR. SUB-TRUST an unsecured promissory note in the principal amount of $1,688,742.00, to make up the difference. This note is based upon a 30-year amortization with an annual interest rate of 3.32%. See Exhibit A attached hereto.

9. The interest rate for a 30-year secured mortgage loan for the period when this note was executed was approximately 4% as shown by HSH.COM and attached hereto as Exhibit B. Therefore, the interest rate appears to be below market.

10. TERI GALE GALARDI has made sporadic payments in various amounts since January 2015, and in fact her principal balance has increased at times when the payments failed

to fully cover the interest due at the time the payment was received. There have been checks written to TERI GALE GALARDI from the JACK E. GALARDI, JR. SUB-TRUST, increasing her principal balance, as follows:

| | |
|---|---|
| a. 1/29/16 taken out of the trust account by Debit | $1,500.00 |
| b. 7/8/16 taken out of the trust account by Debit - was apparently covered three days later with a deposit in the same amount | 10,000.00 |
| c. 7/19/16 taken out of the trust account by Debit - was apparently covered 3 days later with a deposit from Goodtimes Bar | 6,000.00 |
| d. 8/30/16 taken out of the trust account by Debit | 2,120.00 |
| e. 9/2/16 taken out of the trust account by Debit | 5,954.74 |
| f. 9/16/16 taken out of the trust account by Debit | 6,331.59 |
| g. 12/16/16 taken out of the trust account by Debit | 2,300.00 |
| h. 12/23/16 taken out of the trust account by Debit - was apparently covered 6 days later with a deposit | 7,900.00 |

11. TERI GALE GALARDI has made at least, if not more, than required under her note - $7,425.00 monthly or $89,100.00 annually. The sporadic payments, both increasing and decreasing the principal balance creates an accounting nightmare for the sub-trust. It also appears that the Trustee is using the trust bank account as her personal overdraft/temporary funds.

12. The JACK GALARDI, JR. SUB-TRUST was also funded with a $400,000 mortgage note given to the Decedent on September 16, 2011. This note provides for monthly interest payments at the annual rate of 5.25%. Petitioner has been informed and believes that the makers of this note are currently in bankruptcy and Petitioner has requested that TERI GALE GALARDI provide information regarding the underlying security as well as the creditor claim filed in the bankruptcy. TERI GALE GALARDI has failed to provide adequate information to determine if the investment is secure.

13. The JACK GALARDI, JR. SUB-TRUST was also funded with a residence and lot located at Navarro Isle, Ft. Lauderdale, FL with a date of death value of $4,200,000 per Form 706 (Schedule A, item 14) and noted in the 2015 general ledger at a value of $4,275,000. This property was subject to a mortgage, listed on Schedule K, item 13 of the Form 706 in the amount of $3,411,325. The information from the form 706 is confusing on this note as well. It is unclear from the financial records whether this property generated any income during the time the trust

held title, but the 2015 general ledger reflects that the trust had a loss of $1,243,346.63 when disposing of the property on 10/22/2015. Form 706 is also confusing (see Schedule K - item 12). It lists this loan amount as a security against another property - Schedule G, Item 3. I believe that this was a mistake on the 706 as this property is vacant land in Floville, GA valued at $101,000.

14. The JACK GALARDI, JR. SUB-TRUST was also funded with commercial property located at 211 New Goff Mountain Rd., Cross Lanes, WV, which was valued at $650,000 on Form 706 (Schedule A, Item 34) and also on the general ledger. This property was rented at the time of the Decedent's death, pursuant to verbal information received from DANIEL GEIGER, CPA for the Trust and named Successor Co-Trustee after TERRI GALE GALARDI, The existing tenant was unwilling to purchase the property at the appraised value, and therefore decided to vacate (unknown as to the date the tenant vacated). A new lease was entered into on July 12, 2016. See Exhibit C for the 7/15/16 lease. There are problems with this lease as follows:

a. First of all, the lessor on the lease is the JEG Trust - not the JACK GALARDI, JR. SUB-TRUST.

b. The terms of the lease are questionable, to say the least. The tenant has an option to purchase the property that states as follows:

> Tenant, upon satisfactory performance of this lease or *at any time within the term of this lease or any renewal period, shall have the option to purchase the real property described herein for a purchase price of $700,000.00 less all applied payments to date, as described,* provided that the Tenant timely executes the option to purchase and is not in default of the Lease Agreement.

With this broad period allowing the Tenant to exercise their option to purchase right up until the end of the lease including any extensions thereto, the tenant may use *all rental payments against the $700,000.00 purchase price*, as well as freezing the purchase price against any inflation on the property value and avoiding any interest on the principal paid over time!

15. The JACK GALARDI, JR. SUB-TRUST was also funded with raw land that has not been income producing since the Decedent's death as follows:

a. 20 acres in Moapa Valley, Clark County, Nevada APN 071-18-601-015 listed on the

Form 706 as $20,000 (Schedule A, item 4). It should be noted that this property was not retitled into the JACK GALARDI, JR. SUB-TRUST until 2017. The annual real property taxes on this parcel are $835.71 and the Clark County Assessor's taxable value is stated as $94,500. There have been 2 acre parcels next to this property that have sold for $14,000 each in 2006. The Trustee has made no moves to attempt to liquidate this property.

b. 2 acres in Moapa Valley, Clark County, NV APN 041-25-25-301-012 along with a 1 acre parcel near it - APN 041-25-301-013. (Schedule A, item 5). It should be noted that this property was not retitled into the JACK GALARDI, JR. SUB-TRUST until 2017. The annual real property taxes on this parcels are $571.99 and the Clark County Assessor's taxable values are a total of $66,551. There were two parcels totaling 5 acres adjacent to both these parcels (APN 041-25-301-028 and 041-25-301-029) that sold for $570,000 in 2006.

c. Vacant land located at 6220 E. Adamo Dr., Tampa, FL, APN 81-96-15-000-0 that was represented as titled in the name of Galardi Rentals, LLC. TERI GALE GALARDI presented documents showing that the Decedent assigned all membership interest in Galardi Rentals from himself personally to his 2006 trust on February 21, 2011. See Exhibit D attached hereto. There is no indication that the trust assigned the ownership interest to JACK GALARDI, JR. SUB-TRUST. Also, there does not appear to be any indication of income being earned and passed through this entity to JACK GALARDI, JR. and therefore it is assumed that this also is non-income producing. It is also interesting to note that this property was listed on Schedule A (Item 30) rather than on Schedule B - Stocks and Bonds as an LLC ownership. This property appeared to be sold in 2017 for the sales price of $43,778.49 according to the 2017 general ledger.

d. DANIEL GEIGER, CPA verbally informed Petitioner that vacant property located on 15th St., Marathon, Florida was sold in 2015 - but did not provide any supporting documents on the sale to indicate if there was a profit from the Form 706 value of $43,000 (Schedule A 17). This property was never listed on 2015 the general ledger nor the sales proceeds.

e. The Trust sold vacant property located on 425 Industrial Blvd., McDonough, GA (Schedule A Item 24 on form 706) valued at $440,000.00 for a sales price of $400,000 in 2017.

The 2017 general ledger indicates that the property was sold at a loss of $41,055.57.

16. The names, ages, relationships and residences of the beneficiaries, trustee and Successor Trustees of the trust, so far as known to the Petitioner are as follows:

Jack E. Galardi, Jr., sole beneficiary
C/O Shirley A. Derke, Esq.
627 S. Seventh St.
Las Vegas, NV 89101

Teri Gale Galardi, Trustee of the JACK E. GALARDI, JR. SUB-TRUST
C/O Greg Smith, Esq.
Smith & Shapiro, PLLC
2520 St. Rose Parkway #220
Henderson, NV 89074

Daniel Geiger, named Successor Co-Trustee of the JACK E. GALARDI, JR. SUB-TRUST
2850 S. Jones Blvd, Suite 2
Las Vegas, NV 89146

Emelita P. Sy, named Successor Co-Trustee of the JACK E. GALARDI, JR. SUB-TRUST
2121 S. Highland Dr.
Las Vegas, NV 89102

WHEREFORE, Petitioner prays that the court finds the following:

A. That this court take jurisdiction over the trust in rem pursuant to NRS 164.010 and 164.015;

B. That this court find that TERI GALE GALARDI has failed to perform her duties as trustee of this trust and therefore be removed;

C. That this court confirm DANIEL GEIGER and EMELITA P. SY as Co-Trustees of the JACK E. GALARDI, JR. SUB-TRUST; and

D. And for such other and further relief as to the Court may seem just and proper in the premises.

DATED this 17th day of September 2018.

SHIRLEY A. DERKE, ESQ.

STATE OF NEVADA )
) ss:
COUNTY OF CLARK )

JACK GALARDI, JR., being first duly sworn, deposes and says:

That he is the Petitioner in the above entitled matter; that he has read the above and foregoing Petition and knows the contents thereof, and that the same is true of his own knowledge, except as to those matters therein stated on information and belief, and for those matters, he believes them to be true.

JACK GALARDI, JR.

SUBSCRIBED and SWORN to before me this 17th day of September 2018.

NOTARY PUBLIC

SHIRLEY DERKE
Notary Public State of Nevada
No. 92-1690-1
My Appt. Exp. Dec. 16, 2020

SUBMITTED BY:

SHIRLEY A. DERKE, ESQ.

# EXHIBIT 5

EXHIBIT 5

Electronically Filed
8/16/2019 3:22 PM
Steven D. Grierson
CLERK OF THE COURT

PET

SHIRLEY A. DERKE, ESQ.
Nevada Bar No. 2686
627 S. Seventh St.
Las Vegas, NV 89101
702-386-6800
shirley@Derke.lvcoxmail.com
Attorney for Petitioner

DISTRICT COURT

CLARK COUNTY, NEVADA

* * *

| | |
|---|---|
| In the Matter of the<br><br>JEG TRUST - JACK GALARDI JR. SUB-TRUST | Case No. P 18-096792-T<br>Dept. PC1<br>DATE:<br>TIME: 9:30 a.m. |

**PETITION FOR REMOVAL OF TERI GALARDI, SUCCESSOR TRUSTEE**

Comes now, the Petitioner, JACK GALARDI, JR., sole beneficiary of the JEG TRUST - JACK GALARDI JR. SUB-TRUST, (hereinafter referred to as JACK, JR.). by and through his attorney, Shirley A. Derke, Esq., hereby moves this court for an order removing TERI GALE GALARDI, Successor Trustee (hereinafter referred to as TERI) by alleging as follows:

**GENERAL FACTS**

1. This Court has taken jurisdiction of this Sub Trust created under JACK GALARDI, SR.'s revocable living trust dated November 1, 2006 and amended and restated on August 16, 2012 and confirmed Teri Galardi as the Successor Trustee under an order entered on December 7, 2018.

2. Under the order entered on December 7, 2018 TERI was ordered to provide the JACK JR. the following documents within 30 days from the entry of the order, which was served on TERI's counsel on December 10, 2018:

A. An accounting of the funding of the assets of the sub-trust, which includes all activities from the date of death until the sub-trust was fully funded and fully identifying all assets separated from the Family Trust.

B. An accounting of the sub-trust, since initial funding to date.

C. All accounting is to be prepared in accordance with NRS 165.135.

3. Since the entry of this Court's order on December 10, 2018, the parties have met to discuss the issues numerous times, without any final resolution.

4. TERI has provided the following accounting records (some provided prior to this court's order and others not necessarily within the 30 days as ordered by this Court) as follows:

A. Trust Income tax return form 1041 for the Galardi Family Trust for the fiscal years ending 11/30/13; 11/30/14; 11/30/15 and 11/30/16 (which was marked as a final return)

B. 2007 gift tax return form 709 for Jack E. Galardi (this was for 2 qualified personal residence trusts created by Jack E. Galardi on June 4, 2007 - Las Vegas and Florida)

C. TERI's Final Trust Allocation for the Jack Galardi Trust with asset distributions as approved by TERI on 11/7/2014

D. 2015 Quickbooks general ledger for JACK JR.'s Sub-trust - which was the initial year of financial records on sub trust

E. 2016 Quickbooks general ledger; 12/31/16 Balance Sheet and 2016 Profit & Loss on JACK, JR's sub trust

F. 2017 Quickbooks general ledger; 12/31/16 Balance Sheet and 2016 Profit & Loss on JACK, JR.'s sub trust

G. Quickbooks general ledger for the period 12/1/17-11/30/18 for JACK, JR.'s sub trust - which is not on a fiscal year, but a calender year

H. Quickbooks general ledger for the period 12/1/17-11/30/18 for the Family Trust along with the 11/30/18 Balance sheet and Profit & Loss.

I. Our files indicate on approximately March 20, 2019 Emelita Sy dropped off a general ledger for the Galardi Family trust along with Balance Sheets and profits and Loss statements for the periods ending 11/30/13 and 11/30/14. The documents were reviewed by Shirley A. Derke, Esq. prior to a 3/26/19 meeting with counsel for TERI, but it was discovered in June 2019 that the records cannot be located and a duplicate copy (preferably an electronic version of the quickbooks data) was requested by e-mail to TERI's counsel on June 25, 2019 and nothing has been received for this period.

**ESTATE TAXES HAVE NOT BEEN ALLOCATED ON SPECIFIC BEQUESTS AND/OR ASSETS DISTRIBUTED DIRECTLY TO NAMED BENEFICIARIES**

4. Upon review of the Federal Estate Tax return, form 706, it appears that there were estate taxes imposed in the amount of $16,586,905. The assets taxed on this return included items that were paid out to beneficiaries named or listed as specific bequests in the Jack E. Galardi Family Trust restated on August 15, 2012 are as follows:

| | | |
|---|---|---|
| A. Life insurance paid directly to Teri Galardi, Schedule D of 706 | | $2,000,000 |
| B. Specific Bequests listed in the trust & Form 706, Part 4, Line 5 | | |
| a. Kathy Holder | $300,000 | |
| b. Emelita Sy | 200,000 | |
| c. Maricar Martinez | 100,000 | |
| d. Jeffrey Stromatt | 65,000[a] | |
| e. Diana Pontrelli | 100,000[c] | |
| f. Daniel Geiger | 200,000 | |
| g. Michael Porter | 20,000[b] | |
| h. Daniel Purdy | 100,000 | |
| i. Charles Wright | 100,000 | 1,185,000 |
| | | $3,185,000 |

5. This trust is governed by Nevada Law. Nevada adopted the Federal Estate Tax Apportionment Law in 1957 to equitably prorate payment of the federal estate tax among those persons interested in the estate subject to that tax and is a fundamental public policy of this state subject only to the expressed will of the testator to the contrary. NRS 150.310 states, in part, as follows:

> NRS 150.310 Proration of tax among persons interested in estate; exceptions.
>
> 1. If it appears upon any accounting, or in any appropriate action or proceeding, that a personal representative, trustee or other fiduciary has paid or may be required to pay an estate tax to the Federal Government under the provisions of any federal estate tax law, now existing or hereafter enacted, upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the

---

(a) Disposition of personal property states that Jeff Stromatt was to receive a Falcon 20 (airplane?) which is not listed on the form 706. Not sure if this was cash paid out or fair market value of the airplane. Not sure who owned the Falcon 20 - possibly an asset of LVA Management, Inc., an entity transferred to Teri Galardi per the distribution schedule.

(b) Disposition of personal property states that Michel Porter was to receive a gun collection. Item F7 on form 706 groups the gun collection with jewelry and other personal items for a total value of $120,000. Teri Galardi's distribution schedule shows that she received the entire value of $120,000.

(c) Disposition of personal property states that Diana Pontrelli was to receive $200,000 in cash, not $100,000. It appears that this bequest has not been fully satisfied.

amount of the tax must be equitably prorated among the persons interested in the estate, whether residents or nonresidents of this State, to whom the property was, is or may be transferred or to whom any benefit accrues, except:

(a) Where a testator otherwise directs in his or her will.

(b) Where by written instrument, including, without limitation, an electronic trust, executed inter vivos direction is given for apportionment among the beneficiaries of taxes assessed upon the specific fund dealt with in the instrument.

6. Upon review of the Total Amendment and Restatement of the JEG Family Trust and the pour over will as admitted to probate by this Court under Case P-13-076839-E, there was no direction indicating that these beneficiaries were to receive their inheritance free from any estate taxes.

7. TERI's distribution schedule incorrectly allocates all of the estate taxes to the residual beneficiaries. In this distribution schedule signed on 11/7/14 (See Exhibit A attached hereto) TERI allocated all of the estate taxes to her portion to reduce the value of the assets she has received and thereby overstating the trust value of her 75% residual share of the remaining trust estate.

**ASSETS APPEAR TO BE NOT PROPERLY ACCOUNTED FOR**

8. Upon review of the Estate income tax returns, form 1041, along with form 706, the following discrepencies were discovered:

A. The Family Trust forms 1041 for 2012 (FYE 11/30/13) thorough 2014 (FYE 11/30/15) indicate that there was a pass-through entity reported on Schedule E, namely Red Eyed, Inc. This entity was never listed on the estate tax return, form 706. As the division of assets dated 11/7/2014 uses assets as listed on form 706, this entity has not been taken into consideration in the division. It should be noted that the pass through from this entity were losses for each taxable year, but it unknown as to the value of the entity.

B. The 2013 form 1041, Schedule D and form 8949, page 2, reports that DAMM, Inc. was written off as a capital loss in the amount of $10,000. This entity was never listed on the estate tax return, form 706. As the division of assets on 11/7/2014 uses assets as listed on form 706, this entity has not been taken into consideration in the division. If it were a worthless asset as the date of death, then there would be no capital loss to take as of 9/20/14, the

disposition date used on the income tax return.

C. Form 706 lists GFT Management and Consulting, Inc. twice on Schedule B - See item 16 and item 19 (both item reflect a fair market value of $10,000). TERI's distribution schedule lists item 16 at a value of $10 and item 19 at a value of $10,000. It has been acknowledged by TERI's accountant, Dan Geiger, as well as her counsel, that the true value of this *one* asset is $10,000 and the value was over reported on form 706.

D. The 2013 form 1041, Schedule D and form 8949, page 2 reports a sale of real property located at 3010 Overseas Hwy., Marathon, FL for a sales price of $80,000 and a basis of $91,353 with a resulting net loss of $11,353. The only Overseas Hwy., Marathon, FL property listed on Form 706 was vacant land at 1477 Overseas Hwy (See 706, Schedule A, item 35) with a basis of $225,000 - which property was allocated to JACK GALARDI, JR. sub trust and sold 11/2015. It appears that there were two real properties held by the decedent on Overseas Highway and both parcels were not reported on the form 706. As the division of assets on 11/7/2014 uses assets as listed on form 706, this property has not been taken into consideration in the division.

E. The 2013 form 1041, Schedule D and form 8949, page 2 reports a sale of real property located at North Park Court, Stockbridge, GA (see 706, Schedule A, item 38) on 12/27/13. The basis on form 706 was $504,927 and the basis reported on the sale was $431,044. There is no supporting documentation provided to show a reduction in basis from the date of death.

F. Vacant land located at 6220 E. Adamo Dr., Tampa, FL, APN 81-96-15-000-0 (Form 706, Schedule A item 30 represented as titled in the name of Galardi Rentals, LLC., but Galardi Rentals, LLC was not listed on Schedule B of the form). TERI's distribution schedule funded JACK, JR.'s sub-trust with this real property. There is no disclosure as to other assets held in the Galardi, Rentals, LLC, if any on form 706.

G. Vacant property located on 15th St., Marathon, Florida (Form 706, Schedule A, item 17) valued at $43,000 and used to fund JACK, JR.'s sub-trust. DANIEL GEIGER, CPA

verbally informed Petitioner, during one of the meetings, that the property was sold in 2015. JACK JR's sub trust general ledger as of 12/31/16 lists the property as still being held. In fact, the 2016 Profit and Loss reflects the following amounts as Other Income/Expense:

| | |
|---|---|
| Forfeited deposits received from Great American Realty of Tampa | $5,000 |
| Loss on sale of Ft. Lauderdale property | < 65> |

The records do not clearly indicate it the property was sold or not. How can the Profit and Loss show a loss on sale, yet a forfeited deposit that exceeds the recorded loss? No sale was reported in JACK JR.'s sub trust 2015 form 1041 of this property.

9. Based upon prior conversations with TERI's counsel, it was questioned why the Galardi Family Trust general ledger would include the $2,000,000 of life insurance on Jack E. Galardi when TERI was the sole beneficiary. This indicates that TERI may have been co-mingling her personal assets with the Family Trust Assets.

10. The division of assets dated 11/7/2014 states that the decedent held a publicly traded stock - 18,000 shares of Sirus XM Radio with a date of death value of $50,220. This asset was used to fund JACK JR.'s sub-trust but does not appear on JACK, JR.'s sub-trust general ledger.

11. JACK JR.'s sub-trust was funded with a residence and lot located at Navarro Isle, Ft. Lauderdale, FL with a date of death value of $4,200,000 per Form 706 (Schedule A, item 24) and recorded in JACK JR.'s sub-trust 2015 general ledger at a different value of $4,275,000. This property was subject to a mortgage, listed on Schedule K, item 12 of the Form 706 in the amount of $3,411,325. The 706 implies that there was equity in the property of $788,675. The distribution schedule improperly allocated two liens secured by other real property of the estate in the total amount of $3,592,794 - an error of $181,469 undervaluing the assets received by JACK, JR.'s sub trust. It is interesting to note that JACK JR.'s sub trust general ledger reflected the proper mortgage of $3,411,325 as of the date of death - which presumes that no payments were made against the mortgage from the date of death to the date of distribution. When the property was sold by JACK, JR.'s sub-trust on 10/22/2015, the trust showed a loss of $1,243,346.63 - a difference in equity in the property of over $2,000,000. It is also interesting to

note that this property represented 13.8% of the total assets funding JACK, JR.'s sub-trust (788,675/5,694,500).

**THE DISTRIBUTION SCHEDULE FAILS TO ADDRESS THE CHANGES IN THE ASSETS HELD AT THE TIME OF DISTRIBUTION AS WELL AS THE INCOME AND EXPENSES ALLOCATED TO JACK, JR.'S SUB-TRUST FROM THE TIME OF DEATH TO DATE OF DISTRIBUTION**

12. Proper trust accounting requires the fiduciary to have an accurate record of the assets and liabilities of the trust at all times. TERI presented a distribution of assets to the residuary beneficiaries dated 11/7/2014. This list presumes that the trust held all of the assets as listed, but in fact it was attempting to account for distribution of the assets as of the date of death and as reported on form 706 - without regard to sales of assets during administration; income and expenses during administration; payment on any existing liabilities as of the date of death including any negotiated reductions as well as additional interest and assessments; and distributions to or on behalf of the residual beneficiaries. Note that the only information provided by the Trustee was income tax returns without any general ledgers to support.

13. The following assets were disposed of prior to the 11/7/2014 distribution proposal and should not have been part of the allocations:

A. Real Property - 1730 NW 33rd St., Pompano Beach, FL (Schedule A, Item 2) was sold 2/5/14 and reported a net capital loss of $395,999

B. Real property - 13922 NW 13th St., Pompano Beach, FL (Schedule A, Item 3) was sold 10/17/13 and reported a net capital loss of $10,480. The basis on form 706 was $500,000 and the basis on Form 1041, Schedule D was $530,480. No support as to the difference in basis.

C. Real property -3445 Shoreland Dr., Buford, GA (Schedule A, Item 10) was sold 9/12/13 and reported on 2012 form 4979, Line 10, Statement 6 with a net capital loss of $228,189.

D. Real property - 1704 Hudson Bridge Rd., Stockbridge, CA (Schedule A, Item 18) was sold 9/12/13 and reported on 2012 form 4979, Line 10, Statement 6 with a net capital

gain of $106,629.

E. Real property - 973 Marrietta St., Atlanta, GA (Schedule A, Item 26) was sold 9/18/13 and reported on the Family Trust 2012 form 1041, 4979, Line 10, Statement 6 with a net capital loss of $29,672. The basis on form 706 was $750,000 and the basis on Form 1041, Schedule D was $793,561. No support as to the difference in basis. In fact, the 706 states that the sale was agreed upon prior to death and the date of death basis was taken from the 9/18/2013 closing statement. The form 706 was signed by TERI GALE GALARDI on March 3, 2014.

**TERI HAS FAILED TO DISCLOSE ALL DEBTS OF THE DECEDENT AS WELL AS ALL SECURED DEBTS AGAINST THE SUB-TRUST ASSETS**

14. TERI, acting as Trustee of the JEG LV Qualified Personal Residence Trust dated June 4, 2007, encumbered the real property of the Decedent located at 1245 S. Rancho Drive on September 10, 2012 (within 90 days prior to the decedent's death) as indicated on the $750,000 Deed of Trust attached hereto as Exhibit B. This loan is not disclosed on the Decedent's 706 or any financial reports provided by TERI This property was used to fund JACK, JR.'s sub-trust and the lien is not reflected on JACK, JR's sub-trust general ledger.

15. TERI has also failed to disclose a prior $250,000.00 mortgage lien on the real property located at 1245 S. Rancho Drive, Las Vegas, NV as indicated in the Deed of Trust attached hereto as Exhibit C. This loan is not disclosed on the Decedent's 706 or any financial reports provided by TERI. This property was used to fund JACK, JR.'s sub-trust and the lien is not reflected on JACK, JR.'s sub-trust general ledger.

16. The names, ages, relationships and residences of the beneficiaries, trustee and Successor Trustees of the trust, so far as known to the Petitioner are as follows:

Jack E. Galardi, Jr., sole beneficiary
C/O Shirley A. Derke, Esq.
627 S. Seventh St.
Las Vegas, NV 89101

Teri Gale Galardi, Trustee of the JACK E. GALARDI, JR. SUB-TRUST
C/O Greg Smith, Esq.
Smith & Shapiro, PLLC
2520 St. Rose Parkway #220
Henderson, NV 89074

Daniel Geiger, named Successor Co-Trustee of the JACK E. GALARDI, JR. SUB-TRUST
2850 S. Jones Blvd, Suite 2
Las Vegas, NV 89146

Emelita P. Sy, named Successor Co-Trustee of the JACK E. GALARDI, JR. SUB-TRUST
2121 S. Highland Dr.
Las Vegas, NV 89102

17. Prior to the Decedent's death, Daniel Geiger was the accountant and income tax preparer for JACK GALARDI, SR. To the Petitioner's knowledge, he has remained the accountant and income tax preparer to TERI, as Trustee of the JACK, JR. sub trust. Due to many of the issues contained herein and his apparent participation in the accountings complained of, Petitioner hereby objects to him acting as Successor Trustee for this Trust.

WHEREFORE, Petitioner prays that the court finds the following:

A. That this court immediately suspend TERI GALE GALARDI as Trustee of the JACK E. GALARDI, JR. SUB-TRUST;

C. That this court confirm EMELITA P. SY as Successor Trustee of the JACK E. GALARDI, JR. SUB-TRUST; and

D. And for such other and further relief as to the Court may seem just and proper in the premises.

DATED this 16th day of August 2019.

SHIRLEY A. DERKE, ESQ.

STATE OF NEVADA )
) ss:
COUNTY OF CLARK )

JACK GALARDI, JR., being first duly sworn, deposes and says:

That he is the Petitioner in the above entitled matter; that he has read the above and foregoing Petition and knows the contents thereof, and that the same is true of his own knowledge, except as to those matters therein stated on information and belief, and for those matters, he believes them to be true.

JACK GALARDI, JR.

SUBSCRIBED and SWORN to before me this 16th day of September 2019.

SHIRLEY DERKE
Notary Public State of Nevada
No. 92-1690-1
My Appt. Exp. Dec. 16, 2020

NOTARY PUBLIC

SUBMITTED BY:

SHIRLEY A. DERKE, ESQ.
Case No. P-18-096792-T

# EXHIBIT 6

EXHIBIT 6

Electronically Filed
9/27/2019 11:55 AM
Steven D. Grierson
CLERK OF THE COURT

24

ORDR

SHIRLEY A. DERKE, ESQ.
Nevada Bar No. 2686
627 S. Seventh St.
Las Vegas, NV 89101
702-386-6800
shirley@Derke.lvcoxmail.com
Attorney for JACK E. GALARDI, JR.

DISTRICT COURT

CLARK COUNTY, NEVADA

* * *

In the Matter of the

JEG TRUST - JACK GALARDI JR. SUB-TRUST

Case No. P-18-096792-T
Dept. PC1
DATE: September 27, 2019
TIME: 9:30 a.m.

**STIPULATION AND ORDER RE: PETITION FOR REMOVAL OF TERI GALARDI, SUCCESSOR TRUSTEE**

IT IS HEREBY STIPULATED AND AGREED by and between the parties hereto, through their respective counsel as follows:

1. TERI GALE GALARDI has resigned as Successor Trustee of the JACK E. GALARDI, JR. SUB-TRUST created under the terms of the JACK GALARDI, SR.'s revocable living trust dated November 1, 2006 and amended and restated on August 16, 2012. (See resignation attached hereto as Exhibit A)

2. DANIEL GEIGER is named in Section 7.1 of said trust as Successor Co-Trustee upon the death or incapacity of TERI GALE GALARDI. DANIEL GEIGER is refusing to act as Successor Trustee of the JACK E. GALARDI, JR. SUB-TRUST created under the terms of the JACK GALARDI, SR.'s revocable living trust dated November 1, 2006 and amended and restated on August 16, 2012. (See Declination and refusal to act attached hereto as Exhibit B).

3. EMELITA P. SY is named in Section 7.1 of said trust as Successor Co-Trustee upon the death or incapacity of TERI GALE GALARDI. EMELITA P. SY has accepted the position of Successor Trustee of the JACK E. GALARDI, JR. SUB-TRUST created under the terms of the JACK GALARDI, SR.'s revocable living trust dated November 1, 2006 and amended and restated on August 16, 2012. (See Acceptance to act attached hereto as Exhibit C).

4. EMELITA P. SY, as Successor Trustee of the JACK E. GALARDI, JR. SUB-TRUST created under the terms of the JACK GALARDI, SR.'s revocable living trust dated November 1,

2006 and amended and restated on August 16, 2012 will not be held accountable for any acts of the prior trustee(s).

5. JACK E. GALARDI, JR., the sole adult beneficiary of the JACK E. GALARDI, JR. SUB-TRUST created under the terms of the JACK GALARDI, SR.'s revocable living trust dated November 1, 2006 and amended and restated on August 16, 2012 waives any right to demand EMELITA P. SY, as Successor Trustee to audit or investigate the accounts or administration of the prior trustee as stated in Article 7.3 of said trust.

6. JACK E. GALARDI, JR. does not waive his individual right as a beneficiary to audit or investigate the accounts or administration of the prior trustee.

DATED September 20, 2019

SHIRLEY A. DERKE, ESQ.
Attorney for JACK GALARDI, JR.
Bar No. 2686
627 S. Seventh St.
Las Vegas, NV 89101

DATED September __, 2019

MICHAEL D. RAWLINS, ESQ.
Bar No. 5467
SMITH & SHAPIRO, PLLC
Attorney for TERI GALE GALARDI, Succ Trustee
3333 E. Serene Ave., Ste. 130
Henderson, NV 89074

**ORDER**

IT IS HEREBY ORDERED AS FOLLOWS:

A. TERI GALE GALARDI is hereby removed as Successor Trustee of the JACK E. GALARDI, JR. SUB-TRUST created under the terms of the JACK GALARDI, SR.'s revocable living trust dated November 1, 2006 and amended and restated on August 16, 2012.

B. EMELITA P. SY is confirmed as Successor Trustee of the JACK E. GALARDI, JR. SUB-TRUST created under the terms of the JACK GALARDI, SR.'s revocable living trust dated November 1, 2006 and amended and restated on August 16, 2012.

C. This court will continue to retain jurisdiction over this trust, as well as over TERI GALE GALARDI for any actions taken by her when acting as Successor Trustee.

DATED this 27 day of September 2019.

DISTRICT COURT JUDGE

DocuSign Envelope ID: 00B5D0A6-DB06-4305-BE23-A405C85AD0E0

**STATEMENT OF NAMED SUCCESSOR TRUSTEE DECLINATION TO ACT**

I, DANIEL GEIGER, am named in Section 7.1 of the JACK E. GALARDI, JR. SUB-TRUST created under the terms of the JACK GALARDI, SR.'s revocable living trust dated November 1, 2006 and amended and restated on August 16, 2012 to act as Successor Co-Trustee upon the death or incapacity of TERI GALE GALARDI. TERI GALE GALARDI has resigned as Successor Trustee of said trust. I decline and refuse to act as Successor Trustee of said trust.

DATED this 18 day of September 2019.

DocuSigned by:
Dan Geiger
DANIEL GEIGER

STATE OF NEVADA )
) ss:
COUNTY OF CLARK )

SUBSCRIBED and SWORN to before me on September 18, 2019

NOTARY PUBLIC

NOTARY PUBLIC
WHITNEY A. MUGAN
STATE OF NEVADA - COUNTY OF CLARK
MY APPOINTMENT EXP. JULY 8, 2022
No: 10-2511-1

## ACCEPTANCE OF SUCCESSOR TRUSTEE POSITION

I, EMELITA P. SY am named in Section 7.1 of the JACK E. GALARDI, JR. SUB-TRUST created under the terms of the JACK GALARDI, SR.'s revocable living trust dated November 1, 2006 and amended and restated on August 16, 2012 as Successor Co-Trustee upon the death or incapacity of TERI GALE GALARDI. TERI GALE GALARDI has resigned as Successor Trustee of said trust. DANIEL GEIGER, the named Co-Trustee with me, has declined and refused to act as Successor Trustee. I hereby accept the position of sole Successor Trustee of said trust, upon the condition that I am not held accountable for the actions of the prior trustee, nor will I be required to audit or investigate the actions of the prior trustee.

DATED this 18 day of September 2019.

Emelita P. Sy
EMELITA P. SY

STATE OF NEVADA )
) ss:
COUNTY OF CLARK )

SUBSCRIBED and SWORN to before me on September 18, 2019

NOTARY PUBLIC

NOTARY PUBLIC
WHITNEY A. MUGAN
STATE OF NEVADA - COUNTY OF CLARK
MY APPOINTMENT EXP. JULY 8, 2022
No: 10-2511-1

**NOTICE OF RESIGNATION AS SUCCESSOR TRUSTEE**

I, TERI GALE GALARDI am resigning as Successor Trustee of the JACK E. GALARDI, JR. SUB-TRUST created under the terms of the JACK GALARDI, SR.'s revocable living trust dated November 1, 2006 and amended and restated on August 16, 2012, effective immediately.

DATED this 18 day of September 2019.

TERI GALE GALARDI

STATE OF NEVADA )
) ss:
COUNTY OF CLARK )

SUBSCRIBED and SWORN to before me on September 18, 2019

NOTARY PUBLIC

NOTARY PUBLIC
WHITNEY A. MUGAN
STATE OF NEVADA - COUNTY OF CLARK
MY APPOINTMENT EXP. JULY 8, 2022
No: 10-2511-1

# TAB 9

Electronically Filed
5/12/2021 4:17 PM
Steven D. Grierson
CLERK OF THE COURT

**OPPM**
Kirk D. Kaplan, Esq.
Nevada Bar No.: 005685
CREST KEY, PROF., L.L.C.
6980 O'Bannon Drive, Suite 100
Las Vegas, Nevada 89146
Telephone: (702) 202-4153
Kirk@CrestKey.com
*Attorney for Jack Galardi, Jr.*

DISTRICT COURT
CLARK COUNTY, NEVADA

| In the Matter of the<br><br>JEG TRUST -JACK GALARDI JR. SUB-TRUST, | Case No.: P-18-096792-T<br>Dept. No.: PC1<br><br>Date: June 3, 2021<br>Time: 9:30 am |
|---|---|

**Opposition to Motion to Dismiss Petition for Recovery of Assets from Teri Galardi, Co-Beneficiary of the JEG Trust**

TO: DISTRICT COURT, CLARK COUNTY, NEVADA

TO: MICHAEL D. RAWLINGS, ESQ., SMITH & SHAPIRO, PLLC

TO: DANA A. DWIGGINS, ESQ., SOLOMAN, DWIGGINS & FREER

Jack Galardi, Jr., (hereinafter may be referred to as "Jack") by and through legal counsel, Kirk D. Kaplan, Esq., of the law firm of CREST KEY, PROF., L.L.C., hereby submits this Opposition to the Motion to Dismiss Petition for Recovery of Assets from Teri Galardi, Co-Beneficiary of the JEG Trust (hereinafter referred to as the "Opposition"). Teri's Motion to Dismiss may herein after be referred to as the "Motion."

**IDENTIFICATION OF PARTIES AND OTHER APPLICABLE NAMES**

Teri Galardi hereinafter may be referred to as "Teri."

Jack Harold Edward Galardi, as "Trustor" created the JEG Family Trust, u/a/d November 1, 2006. The Trustor totally restated and amended the JEG Family Trust on August 16, 2012. The August 16, 2012 total restatement and amendment will hereinafter be referred to as the "Trust."

The JEG Trust -Jack Gakardi, Jr., Sub-Trust will hereinafter be referred to as the "Sub-Trust." Jack is the sole beneficiary of the Sub-Trust.

## I. MEMORANDUM OF POINTS AND AUTHORITIES

CREST KEY, PROF., L.L.C.
6980 O' Bannon Drive - Suite 100
Las Vegas, Nevada 89117
Telephone: (702) 202-4153; Facsimile: (702) 837-1879

CREST KEY, PROF., L.L.C.
6980 O' Bannon Drive - Suite 100
Las Vegas, Nevada 89117
Telephone: (702) 202-4153; Facsimile: (702) 857-1879

**A. Procedural Background**

Petition to Allow the Court to Take Jurisdiction over the Trust; and Request For Removal of Name Successor Trustee

1. Jack, through Shirley A. Derke, Esq, previous legal counsel, initiated this matter on September 19, 2018, when he filed the "Petition to Allow This Court to Take Jurisdiction Over The Trust; And Request For Removal of Named Successor Trustee." In the September 19, 2018 Petition, Jack, among other matters, averred several examples of Terri's actions failure to take action mounting to breach of fiduciary duty, which includes, but is not limited to:

a. Personally issuing a promissory note to the Sub-Trust with a below market rate of interest,

b. Sporadic payments on the promissory note,

c. Improper allocation of estate taxes to all named to take under the trust, and

d. Funding of assets in the Sub-Trust with various impairments or defects undermining asserted values.

2. Jack prayed this Court would take jurisdiction over the trust, find Teri failed to perform her fiduciary duty and be removed, and confirm successor co-trustees.

3. Teri, through her legal counsel, Michael D. Rawlins, Esq., on October 4, 2018, filed Teri's Objection to Jack's Petition of September 19, 2018. In the Objection, Teri responded with explanations of her perspective to Jack's assertions. Teri's objection is entitled "Trustee Teri Gale Galardi's Objection to Petition to Allow This Court to Take Jurisdiction Over the Trust; and Request for Removal of Trustee."

4. Teri claimed Jack had no legal authority supporting his assertions, that Teri served diligently, did not charge the Sub-Trust for her services, and fulfilled her father's wishes. Thus prayed: "[t]he Court should deny [Jack's] request[1]."

5. This Court in an order filed on December 7, 2018, assumed jurisdiction over the Trust, confirmed Teri as trustee, ordered an accounting, and most inportantly "an accounting of

[1] Trustee Teri Gale Galardi's Objection to Petition to Allow This Court to Take Jurisdiction over the Trust; and Request for Removal of Trustee, pg. 8, lns. 5-6.

the funding of assets to the sub-trust, which includes all activities from the date of death until transferred to the [S]ub-[T]rust; identifying any assets that have been separated from the JEG Trust."

Petition For Removal of Teri Galardi, Successor Trustee.

6. Jack, through Shirley A. Derke, Esq, on August 16, 2019, filed another "Petition For Removal of Teri Galardi, Successor Trustee. In the September 19, 2018, Petition, Jack, among other matters, while recognizing Teri provided documents and information, averred several examples of Terri's failure to comply with this Court's Order of December 7, 2018, which includes, but is not limited to:

a. Supporting information and documents could not be provided for the periods ended November 30, 2013, and November 30, 2014;

b. Improper allocation of estate taxes to all named to take under the trust; and

c. Teri's Distribution Schedule of November 7, 2014, does not correctly reflect changes of assets held at the date of death of the Trustor on December 1, 2012.

7. In the August 16, 2019 Petitioner, Jack prayed the Court will immediately suspend Teri as Trustee of the Sub-Trust and confirm successor trustees.

8. Because the matter was settled via Stipulation and order, Teri did not file any responsive pleadings.

9. Jack and Teri agreed to stipulations stated in, and the Court ordered in a Stipulation and Order Re: Petition for Removal of Teri Galardi, Successor Trustee, dated September 27, 2019, where in Teri was removed as trustee of the Sub-Trust and appointing a successor trustee.

10. Teri agreed "Jack . . . does not waive his individual right as beneficiary to audit or investigate the account or administration of the prior trustee."

11. Specifically, the Court ordered: "This Court will continue to retain jurisdiction over this trust, as well as TERI GALE GALARDI for any actions taken by her when acting as Successor Trustee."

Petition for Recovery of Assets from Teri Galardi, Co-Beneficiary of the JEG Trust

CREST KEY, PROF., L.L.C.
6980 O' Bannon Drive - Suite 100
Las Vegas, Nevada 89117
Telephone: (702) 202-4153; Facsimile: (702) 837-1879

12. Teri's instant Motion in the posture of NRCP 12(b)(5) is attacking Jack's Petition for Recovery of Assets from Teri Galardi, Co-Beneficiary of the JEG Trust for failing to file his Petition within a three (3) years limitation of action under NRS §11.190(3)(d) pursuant to Shup v. Ham, 89 Nev. 61, 64, 639 P.2d. 540, 542 (1982).

**B. Statement of Facts**

13. Except as stated, Jack agrees with the factual background Teri provided in her Motion. Jack does not agree he and his legal counsel were fully aware of the Trust assets, values, and allocations. The procedural posture in this matter, and how the Court has ruled to date and before Teri's instant Motion is informative.

**C. Statement of Authority and Respondent's Argument**

**1. Legal Authority**

CREST KEY, PROF., L.L.C.
6980 O' Bannon Drive - Suite 100
Las Vegas, Nevada 89117
Telephone: (702) 202-4153; Facsimile: (702) 837-1879

**Statute of Limitations, an affirmative defense, is waived when a party fails to plead in an initial responsive pleading.**

14. "An application to the court for an order shall be by motion . . . shall be in writing, shall state with particularity the grounds therefor, and shall set forth the relief . . . sought." NRCP 7 (1986).[2]

15. "In pleading to a preceding pleading, a party shall set forth affirmatively . . . statute of limitations . . . and any other matter constituting an avoidance or affirmative defense." NRCP (8)(c) (1986).

16. "Every defense, in law or fact, to claim for relief if any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defense may at the option of the pleader be made by motion: . . . numbered [NRCP12(b)](5)." NRCP(b).

17. "If the affirmative defenses are not so pleaded, asserted by a Rule 12(b) motion or tried by consent they are waived." Second Baptist Church of Reno v. First National Bank of Nevada, 89 Nev. 217, 220, 510 P.2d. 630, 631 (1973) (stating "[a] party waives all defense and objections which he does not present either by motion . . . or if he has made no motion in his answer or reply.

[2] Nev. Ruls. Civil Proc. (1986) was in effect at the time applicable court action began. NRCP 7 defines motions as a "pleading."

"), Idaho Resources, Inc. v. Freeport-McMoran Gold Co., 110 Nev. 459, 461, 874 P.2d 742, 743 (1994) (stating "equitable estoppel is an affirmative defense and must be plead. NRCP 8(c). If an affirmative defense is not properly asserted, or tried by consent, it is waived.) Martinez v. Fredianelli, 127 Nev. 1158, 373 P.3d 940 (2011) (unpublished) (stating "a challenge to the sufficiency of service of process is an affirmative defense that must be asserted in the pleadings or by motion or it is deemed waived.")

**When a Nevada Court assumes *in* rem jurisdiction over a trust, the court will have personal jurisdiction over the trustee.**

18. "When the court assumes jurisdiction pursuant to this section, the court: . . . (b) Shall . . . have personal jurisdiction over any trustee confirmed by the court." NRS 164.010(2017).

**2. Respondent's Argument**

**Teri has waived statute of limitations as an affirmative defense of for failing to raising it in her first responsive pleading, court clerk file stamped October 4, 2018**

19. For purposes of argument, using March 20, 2015, the date Teri transmitted a trust allocation schedule to Jack, the date three (3) years thereafter pursuant to NRS §11.190(3)(d) is March 20, 2018.

20. Jack filed his initial petition on September 18, 2018.

21. Teri in her objection dated October 4, 2018, prayed only, "[t]he Court should deny [Jack's] request.

22. The time, pursuant to NRCP (8) and 12(b) (1986), to raise statute of limitations as an affirmative defense should have been in Teri's objection filed on October 4, 2018, not in her Motion to Dismiss filed on March 24, 2021.

23. Since Teri failed to raise the affirmative defense of statute of limitation in her initial responsive pleading, she waived the affirmative defense, and thus Jack believes her Motion to Dismiss should fail.

**Teri has failed to timely object to the Court assuming personal jurisdiction over her as Trustee and thus is obligated to follow the Court's order.**

CREST KEY, PROF., L.L.C.
6980 O' Bannon Drive - Suite 100
Las Vegas, Nevada 89117
Telephone: (702) 202-4153; Facsimile: (702) 837-1879

24. Further, this Court has assumed jurisdiction over the Sub-Trust, confirmed Teri as trustee, and thus possesses personal jurisdiction over Teri to perform as ordered on December 7, 2018.

25. Teri neither objected to, nor appealed this Court's assuming personal jurisdiction over her as Trustee.

26. Nor did she object to what she was ordered to prepare an accounting from the date of death of the Trustor to the funding of the Sub-Trust to provide to Jack pursuant to Nevada law.

27. Thus Jack believe, the Court's assumption of jurisdiction continues due to her failure to follow and Order of this Court.

**Teri's failure to Complete Funding of the Sub-Trust is not Fraud**

28. The Probate Court is a court of equity and thus can compel a trustee to act to complete matters s/he has otherwise failed. In the case a bar, Teri has failed to convey clear title to the 1245 S. Rancho Residence to the Sub-Trust.

**Non Disclosed Mortgage was Discovered Within A Reasonable Time, and thus Three Years Limitation of Actions is Does not Prevent**

29. Only after Jack hired an attorney who was also a CPA was he informed of a mortgage encumbering the residence (1245 S. Rancho Drive, Las Vegas, Nevada) that Teri did not disclose on the List of Assets dated November 7, 2014. Upon his discovery, he began filing pleadings to remove Teri as trustee and to investigate the assets, and now, liabilities of the his father's total estate.

## II. PRAYER FOR RELIEF

A. Deny Teri Galardi's request to dismiss Respondent's Petition for Recovery of Assets from Teri Galardi, Co-Beneficiary of the JEG;

B. Set a date for a hearing on the Petition for Recovery of Assets from Teri Galardi, Co-Beneficiary of the JEG Trust, and

[This document continues and ends on the next page.]

CREST KEY, PROF., L.L.C.
6980 O' Bannon Drive - Suite 100
Las Vegas, Nevada 89117
Telephone: (702) 202-4153; Facsimile: (702) 837-1879

C. For such other relief as this Court finds proper in the circumstances.

Dated this 12th day of May, 2021.

Submitted by:

CREST KEY, PROF., L.L.C.

Kirk D. Kaplan, Esq.
Nevada Bar No.: 005685
CREST KEY, PROF., L.L.C.
6980 O'Bannon Drive, Suite 100
Las Vegas, Nevada 89117
Telephone: (702) 202-4153
Kirk@CrestKey.com
*Attorney for Jack Galardi, Jr.*

**VERIFICATION**

STATE OF NEVADA )
) ss.
COUNTY OF CLARK )

Jack Galardi, Jr., being first duly sworn on oath, according to the law, deposes and says:

I am the Respondent in the above Opposition to Motion to Dismiss Petition for Recovery of Assets from Teri Galardi, Co-Beneficiary of the JEG Trust; and I have read the same and know the contents thereof; and the same are true to the best of my own personal knowledge except for those statements made therein upon information and belief; and as to those statements, I believe them to be true.

Jack Galardi, Jr.

Subscribed and Sworn to before me
this 12th day of May, 2021.

NOTARY PUBLIC in and for said
County and State

jennifer bennion
NOTARY PUBLIC
STATE OF NEVADA
Appt. No. 17-1379-1
My Appt. Expires October 16, 2024

CREST KEY, PROF., L.L.C.
6980 O' Bannon Drive - Suite 100
Las Vegas, Nevada 89117
Telephone: (702) 202-4153; Facsimile: (702) 837-1879

# TAB 9

# TAB 10

Electronically Filed
5/27/2021 4:30 PM
Steven D. Grierson
CLERK OF THE COURT

Dana A. Dwiggins, Esq. (#07049)
ddwiggins@sdfnvlaw.com
Joshua M. Hood, Esq. (#12777)
jhood@sdfnvlaw.com
SOLOMON DWIGGINS FREER & STEADMAN, LTD.
9060 West Cheyenne Avenue
Las Vegas, Nevada 89129
Telephone: (702) 853-5483
Facsimile: (702) 853-5485

Michael D. Rawlins, Esq. (#005467)
mralwins@smithshapiro.com
SMITH & SHAPIRO, PLLC
3333 East Serene Avenue, Ste. 130
Henderson, Nevada 89074
Telephone: (702) 318-5033
Facsimile: (702) 318-5034

*Attorneys for Teri Gale Galardi*

SOLOMON DWIGGINS FREER STEADMAN
SDFS

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| In the Matter of the<br><br>JEG TRUST-JACK GALARDI, JR., SUB-TRUST | Case No.: P-18-096792-T<br>Dept.: 26<br><br>Hearing Date: June 6, 2021<br>Hearing Time: 9:30 a.m. |

**REPLY IN SUPPORT OF MOTION TO DISMISS PETITION FOR RECOVERY OF ASSETS FROM TERI GALARDI, CO-BENEFICIARY OF THE JEG TRUST**

Teri Gale Galardi ("Teri"), individually, as beneficiary, and as former Trustee of the JEG Family Trust, dated August 15, 2012, and all sub-trusts created thereunder, by and through her counsel of record, the law firm of Solomon Dwiggins Freer & Steadman, Ltd., hereby submits her Reply in Support of Motion to Dismiss Petition for Recovery of Assets from Teri Galardi, Co-Beneficiary of the JEG Trust (the "Reply"). This Reply is made and based upon the attached the attached Memorandum of Points and Authorities, all attached exhibits, and any oral argument that this Court may entertain at the time of hearing.

///

///

///

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Statement of Relevant Factual and Procedural Background.

1. As set forth in the Motion to Dismiss,[1] "as of March 20, 2015, Jack, Jr. and his counsel were fully aware of how the Trust assets were valued and distributed by Teri to both the Sub-Trust and herself."[2] Indeed, Jack, Jr. does not dispute this fact in any of his prior pleadings or in his Opposition.[3]

2. On September 20, 2015, Jack, Jr. filed his Original Petition,[4] essentially setting forth certain concerns that Jack, Jr. and his counsel had regarding the initial funding of the Sub-Trust, and highlighting concerns regarding the administration of the same.

3. Notably, Jack, Jr.'s Original Petition is entirely devoid of any factual allegations or assertions of any claims for breach of fiduciary duty. Indeed, the entire Original Petition does not contain the word "breach" at all. Notwithstanding, Jack, Jr sought Teri's removal as Trustee because she allegedly "failed to perform her duties as trustee…"[5]

4. On October 4, 2018, Teri filed her Objection to the Original Petition,[6] essentially addressing the concerns raised by Jack, Jr. in his Original Petition, and requesting that the same be denied as Jack, Jr. literally failed to assert any claims for breach that would warrant the removal of Teri as Trustee.

5. On December 10, 2018, an Order Granting Petition (in Part) to Allow This Court to Take Jurisdiction Over the Trust and Confirmation of Successor Trustee, Teri Gale Galardi was

---

[1] *See*, Motion to Dismiss Petition for Recovery of Assets From Teri Galardi, Co-Beneficiary of the JEG Trust, previously filed on March 24, 2021 (the "Motion to Dismiss").

[2] *Id.*, at p. 3:10-11.

[3] *See*, Opposition to Motion to Dismiss Petition for Recovery of Assets from Teri Galardi, Co-Beneficiary of the JEG Trust, previously filed with this Court on May 12, 2021 (the "Opposition").

[4] *See*, Petition to Allow this Court to Take Jurisdiction Over the Trust and Request for Removal of Named Successor Trustee, previously filed with this Court on September 19, 2018 (the "Original Petition").

[5] *Id.*, at p. 6:14-15.

[6] *See*, Trustee Teri Galardi's Objection to Petition to Allow this Court to Take Jurisdiction Over the Trust; and Request for Removal of Trustee, previously filed with this Court on October 4, 2018 (the "Objection to Original Petition").

SOLOMON DWIGGINS FREER STEADMAN

entered (the "Order"). Pursuant to the Order, this Court: (i) assumed *in rem* jurisdiction over the Trust; (ii) confirmed Teri as the Trustee; and (iii) required Teri to provide an accounting of the Trust.[7]

6. Notably, there were no findings of breach contained within the Order, nor was there an order scheduling an evidentiary hearing for any alleged breach of fiduciary duty committed by Teri. This makes sense given the fact that Jack, Jr. never alleged any claims for breach of fiduciary duty against Teri in his Original Petition.

7. After being provided the accountings, Jack, Jr. filed his Removal Petition on August 16, 2019,[8] wherein he contended that: (i) the estate taxes were not properly allocated on certain specific bequests;[9] (ii) assets *appear* not to be properly accounted for;[10] (iii) the list of distributions does not address changes in the assets held at the time of distribution and related issues with allocation of expenses and income;[11] and (iv) that Teri did not disclose debts of the decedent or debts of the sub-trust.[12]

8. <u>Again, Jack, Jr. did not set forth any claims for breach of fiduciary duty within the Removal Petition</u>. Nonetheless, Jack, Jr. requested that this Court suspend Teri and confirm Emelita P. Sy as Successor Trustee.[13]

9. On September 27, 2019, a Stipulation and Order Re: Petition for Removal of Teri Galardi, Successor Trustee (the "Stipulation and Order") was entered with this Court.

---

[7] *See*, Order, previously entered with this Court on December 10, 2018, at p. 1:25 to p. 2:10.

[8] *See*, Petition for Removal of Teri Galardi, Successor Trustee, previously filed with this Court on August 16, 2019 (the "Removal Petition").

[9] *Id.*, at p. 3:1 to p. 4:13, generally.

[10] *Id.*, at p. 4:14 to p. 7:2, generally.

[11] *Id.*, at p. 7:3 to p. 8:7, generally.

[12] *Id.*, at p. 8:8-20, generally.

[13] *Id.*, at p. 9:11-14.

SOLOMON DWIGGINS FREER STEADMAN

10. Within the Stipulation and Order, it was acknowledged that Teri resigned as Trustee of Jack, Jr.'s Sub-Trust, and Emelita P. Sy accepted to serve as the Successor Trustee thereof.[14]

11. Notably, within the Stipulation and Order, there were no findings of breach of fiduciary duty by Teri. Again, this makes sense given the fact that Jack, Jr. entirely failed to assert any claims for breach of fiduciary duty against Teri.

12. Again, Jack, Jr. was provided with the documentation and information regarding the funding of the Sub-Trust on March 20, 2015. On January 12, 2021, **more than five (5) years after being made fully aware of the funding of the Sub-Trust**, Jack, Jr. filed his Petition for Recovery,[15] wherein Jack, Jr., **for the first time**, asserts a claim that Teri breached her fiduciary duties as Successor Trustee in the manner in which the Sub-Trust was funded.[16]

13. Given that the Petition for Recovery is the very first pleading wherein Jack, Jr. actually asserts a claim for breach of fiduciary duty, such pleading is equivalent to a newly filed petition before this Court. ,. As such, and for the reasons set forth in the Motion to Dismiss as well as those set forth herein, Jack, Jr.'s Petition for Recovery must be dismissed, as any recovery is now barred by the applicable statute of limitations, which has not been waived.

## II. Legal Argument

### (A) Jack, Jr.'s Initial Pleadings Failed to Assert Any Claims of Breach of Fiduciary Duty Against Teri and, Therefore, Teri did Not Waive the Statute of Limitations as a Defense.

Within his Opposition, Jack, Jr. contends that Teri "waived [the] statute of limitations as an affirmative defense for failing to rais[e] it in her first responsive pleading."[17] What Jack, Jr. fails to acknowledge, however, is that the Original Petition and the Removal Petition did not assert any claims for breach of fiduciary duty to which Teri was required to affirmatively assert the statute of

---

14 *Id.*, at p. 1:14-17 and p. 1:23-27.

15 *See*, Petition for Recovery of Assets from Teri Galardi, Co-Beneficiary of the JEG Trust, previously filed with this Court on January 12, 2021 (the "Petition for Recovery").

16 *Id.*, at p. 4:14-15.

17 *See*, Opposition, at p. 5:11-12.

SOLOMON DWIGGINS FREER STEADMAN

limitations as a defense. Indeed, both the Original Petition and Removal Petition contain only Jack, Jr. and his counsel's purported "concerns" about the funding of Sub-Trust and the "alleged" deficiencies in the Trustee's accountings. Such pleadings did not assert a single claim for breach of any fiduciary duty, including that of loyalty, to avoid self-dealing or any other identifiable fiduciary duty that Teri owed to Jack, Jr. Nor did such pleadings allege any type of theft, embezzlement or fraud on the part of Teri. In fact, the Original Petition and Removal Petition further lack any allegations to any purported damages Jack, Jr. sustained, an element necessary for a claim of breach of fiduciary duty.

Given that the Original Petition and Removal Petition are completely devoid of any claims of breach of fiduciary duty against Teri, Teri could not have possibly waived the statute of limitations as a defense. Indeed, the very first time Jack, Jr. asserted any claims whatsoever for breach of fiduciary duty against Teri was in his recently filed Petition for Recovery, which, as set forth above, was filed more than five (5) years after he was provided the necessary documentation and information regarding the funding of the Sub-Trust.

Moreover, as breach of fiduciary duty is a "species of fraud," in order to adequately put Teri on notice of such claim, Jack, Jr. was required to plead such claim "with particularity." *See*, Ivory Ranch, Inc. v. Quinn River Ranch, Inc., 101 Nev. 471, 472-473, 705 P.2d 673, 675 (Nev. 1985) (stating that "NRCP 9(b) requires that special matters (fraud, mistake, or condition of the mind), be pleaded with particularity in order to afford adequate notice to the opposing party.") Indeed, when a party fails to specifically plead a claim such as fraud, "[i]t is recognized that an affirmative defense can be considered (if not pleaded) if fairness so dictates and prejudice will not follow." Id., at 473, 705 P.2d at 675.

In the instant matter, because Jack, Jr. did not specifically plead a claim for breach of fiduciary duty in either the Original Petition or Removal Petition, Teri could not, and did not, waive her affirmative defense of the statute of limitations. Moreover, to preclude such a defense without a particular pleading would certainly result in prejudice to Teri, as Teri was never reasonably previously placed on notice of Jack, Jr.'s newly asserted claims for breach of fiduciary duty.

SOLOMON DWIGGINS FREER STEADMAN
TRUST AND ESTATE ATTORNEYS

Although Jack, Jr. did not "waive his individual right as a beneficiary to audit or investigate the accounts or administration of the prior trustee,"[18] nothing in the Stipulation and Order: (1) waived Teri's right to assert the statute of limitations as a defense in the event Jack, Jr. decided to assert claims against her; or (2) otherwise extend or toll the applicable statute of limitations. Again, no claim of breach of fiduciary duty was ever asserted prior to the Petition for Recovery; therefore, Teri could not have waived such a defense until such time as the claim was specifically pled and Teri was forced to respond to the same.

In Guenther v. Lockheed Martin Corporation, 972 F.3d 1043 (9th Cir. 2020), Guenther argued that Lockheed Martin Corporation ("LMC") waived its defense of statute of limitations to the breach of fiduciary duty claim that was asserted in Guenther's second amended complaint because LMC never affirmatively raised such defense in its response to Guenther's first amended complaint. The Ninth Circuit Court of Appeals, however, held that: "[f]irst, the statute of limitations defense was unavailable to LMC in response to Guenther's [first amended complaint] because no breach of fiduciary duty was alleged in the [first amended complaint]. LMC's statute of limitations defense…only became available on remand after Guenther raised his breach of fiduciary duty claim in his [second amended complaint]. At that point, LMC properly raised its affirmative defense in its answer to the [second amended complaint]. LMC thus did not waive its right to raise this defense by not doing so in its initial answer."

As in the Guenther case, Teri did not have waive her defense of statute of limitation by not raising it in the prior responsive pleadings because Jack, Jr. utterly failed to raise such claim until he filed his Petition for Recovery. As such, the statute of limitations is still a viable and proper defense to Jack, Jr.'s recent and new claim for breach of fiduciary duty. *See also*, Moezinia v. Ashkenazi, 136 A.D.3d 990, 991, 25 N.Y.S.3d 632, 634 (N.Y. App. 2016) (holding that a defendant "may assert a statute of limitations defense for the first time in an answer served in response to a plaintiff's amended complaint."). Jack, Jr.'s failure to assert any claims for breach of fiduciary

---

[18] *See*, Stipulation and Order, at p. 2:8-9.

SOLOMON DWIGGINS FREER STEADMAN

duty in his Original Petition or Removal Petition prevented and otherwise did not require Teri to affirmatively assert the statute of limitations in her Objection to such petitions.

(B) Jack, Jr. has Not Argued that the Assertion of the Defense of Statute of Limitations Would Result in Prejudice to Him.

Although Jack, Jr. incorrectly asserts that Teri waived her defense of the statute of limitations, Jack, Jr. has failed to claim that the assertion of such defense in response to his newly raised claim of breach of fiduciary duty would result in any prejudice to him. In Schwartz v. Schwartz, 95 Nev. 202, 205, 591 P.2d 1137, 1139 (Nev. 1979), the Nevada Supreme Court held that "the Nevada Rules of Civil Procedure do permit an affirmative defense to be considered, even though it has not been raised by the pleadings." (Citations omitted). Moreover, the Nevada Supreme Court stated that "the district court may **and should liberally allow** an amendment to the pleadings if prejudice does not result." Id (emphasis added) (internal quotations and citations omitted); *see also*, Ivory Ranch, Inc., 101 Nev. at 473, 705 P.2d at 675 (stating that "[i]t is recognized that an affirmative defense can be considered (if not pleaded) if fairness so dictates and prejudice will not follow.") (Internal citations omitted). Given that Jack, Jr. has never particularly plead or asserted the claim of breach of fiduciary duty against Teri, this Court should permit Teri to raise such a defense at this juncture. To the extent any prejudice would result, it would be to the detriment of Teri, not Jack, Jr.

Indeed, Jack, Jr., through his counsel, admittedly received the necessary documents to put him on notice of any perceived claims of breach of fiduciary duty on March 20, 2015. Notwithstanding, his prior pleadings before this Court – filed more than three (3) years after he received such documentation – never specifically asserted any claim for breach of fiduciary duty, let alone sought any damages. Given that Jack, Jr. is now affirmatively asserting claims of breach of fiduciary duty for the first time in more than six (6) years since he received the relevant documents and seeking damages as a result thereof, this Court should permit the assertion of the defense of statute of limitation, especially since Jack, Jr. failed to argue that such defense would prejudice him in any way.

SOLOMON DWIGGINS FREER STEADMAN

(C) The Original Petition did not Assert Any Claims for Breach of Fiduciary Duty and Otherwise Failed to Put Teri on Notice of any Such Claim(s). As such, Jack, Jr.'s Petition for Recovery Does Not Relate Back to the Original Petition as it Asserts New Claims for Relief, Which are Barred by the Statute of Limitations.

In his Original Petition, Jack, Jr. expressly acknowledged that Teri "found that many of the assets of the trust could not be held by [Jack, Jr.'s Sub-Trust] due to their restricted license."[19] Thereafter, Jack, Jr. expressed concern with the limited assets that could be used to fund his Sub-Trust. Specifically, Jack, Jr. seemingly contended that the promissory note in the amount of $1,688,742.00 at 3.32% interest is "appears to be below market."[20] Jack, Jr., however, did not allege at such time that such interest rate agreed to by Teri was a breach of her fiduciary duty. Nor did he assert any damages stemming therefrom.

Thereafter, Jack, Jr. expressed concern with the payments towards the promissory note and contended that the transactions related thereto "creates an accounting nightmare..."[21] Jack, Jr., however, did not allege that the purported "accounting nightmare" constituted a breach of fiduciary duty. Nor did he assert any damages stemming therefrom.

Jack, Jr. then raised issues regarding the $400,000.00 mortgage at a 5.25% annual interest rate and the fact that the obligor had filed bankruptcy.[22] Jack, Jr., however, did not allege that the obligor's filing of bankruptcy somehow constituted a breach of Teri's fiduciary duties. Indeed, Jack, Jr. was thereafter informed that the mortgage was secured and would be paid in full through the obligor's bankruptcy estate.

Jack, Jr. then identified several parcels of real property that were used to fund his Sub-Trust and stated that for a few of the parcels the "Form 706 is confusing," but nonetheless failed to allege that such confusion regarding the parcels of real property and the information in the Form 706 constituted a breach of fiduciary duty. Indeed, the entirety of the Original Petition simply highlights Jack, Jr.'s questions regarding the assets used to fund his Sub-Trust, yet absolutely fails to allege

---

19 *See*, Original Petition, at p. 2:9-11.

20 *Id.*, at p. 2, ¶ 8-9.

21 *Id.*, at p. 3:12.

22 *Id.*, at p. 3, ¶ 12.

SOLOMON DWIGGINS FREER STEADMAN

even once that Teri breached her fiduciary duties. Nor did it assert any damages stemming therefrom.

In her Objection to Original Petition, Teri addressed each of these concerns and provided a detailed response related thereto. As a result, there were no further proceedings relative to the Original Petition. There was no scheduling order entered by this Court and no evidentiary hearing set. Had claims been asserted by Jack Jr. in the Original Petition, or the Removal Petition for that matter, discovery would have been conducted by the parties, a scheduling order issued and an evidentiary scheduled. None of this, however, occurred.

Simply put, nothing contained in the Original Petition can reasonably be construed to put Teri on notice that Jack, Jr. would assert any claims for breach of fiduciary duty more than two (2) years after he filed such pleading and more than five (5) years after he received the documentation and information regarding the assets used to fund his Sub-trust. Rather, if Jack, Jr. had any claims for breach of fiduciary duty, they were required to be alleged in his Original Petition, at which point Teri would have then had to affirmatively assert the defense of statute of limitations.

Notwithstanding his failure to asset such claims, Jack, Jr. now improperly attempts to assert claims for breach of fiduciary duty in his Petition for Recovery and alleges damages resulting therefrom. His new claims, however, are barred by the statute of limitations and does not relate back to the Original Petition. In Scott v. Department of Commerce, 104 Nev. 580, 763 P.2d 341 (Nev. 1988), the Scotts filed their complaint on the last dates of the applicable statute of limitations, asserting fraud and intentional misrepresentation. After the complaint was dismissed, the Scotts moved to amend the complaint to add a new cause of action, namely, negligence. The motion to amend the complaint to add negligence as a new claim was denied by the district court, and the Scotts appealed. In affirming the district court's denial of the motion to amend, the Nevada Supreme Court found that the amended complaint "provides respondents with no notice to defend against the alleging negligence," and found "no error in the district court's refusal to allow the Scott, after the statute of limitations had run, to amend their complaint to allege a new cause of action…" Scott, 104 Nev. at 586-87, 763 P.2d 345.

SOLOMON DWIGGINS FREER STEADMAN

The same is true in this matter. The Original Petition is entirely devoid of any claims for breach or any insinuation that such claims may be raised. Indeed, the Original Petition is more akin to a correspondence to this Court wherein Jack, Jr. raised inquiries regarding the funding of his Sub-Trust – which inquiries were subsequently answered. Again, nothing in the Original Petition placed Teri on notice of the newly asserted claim for breach of fiduciary duty and, therefore, his claim must be dismissed as it was asserted after the lapse of the applicable statute of limitations.

As set forth in Shupe v. Ham, 98 Nev. 61, 639 P.2d 540, 542 (Nev. 1982), "[a] breach of fiduciary duty is a fraud giving rise to the application of the three year statute of limitations." Clearly, and as acknowledged by Jack, Jr., he received the information and documentation regarding the funding of his Sub-Trust on March 20, 2015. As such, Jack, Jr. was required to bring his claim no later than March 20, 2018; however, he failed to do so. Therefore, Jack, Jr.'s Petition for Recovery, wherein he asserts for the first time a claim for breach of fiduciary duty, must be dismissed pursuant to NRCP 12(b)(5).

**III. Conclusion.**

As fully set forth in the Motion to Dismiss and as further set forth herein, Jack, Jr.'s Petition for Recovery and his claim for breach of fiduciary duty is barred by the applicable statute of limitations, namely, NRS 11.190(3)(d). As such, Jack, Jr.'s Petition for Recovery must be dismissed pursuant to NRCP 12(b)(5).

Dated this 27th day of May, 2021.

SOLOMON DWIGGINS FREER & STEADMAN, LTD.

Dana A. Dwiggins, Esq. (#07049)
ddwiggins@sdfnvlaw.com
Joshua M. Hood, Esq. (#12777)
jhood@sdfnvlaw.com
9060 West Cheyenne Avenue
Las Vegas, Nevada 89129
Telephone: (702) 853-5483
Facsimile: (702) 853-5485

*Attorneys for Teri Gale Galardi*

SOLOMON DWIGGINS FREER STEADMAN

# TAB 11

Electronically Filed
11/15/2021 10:45 AM
CLERK OF THE COURT

**ORDR**

DISTRICT COURT
CLARK COUNTY, NEVADA

| In the Matter of the<br><br>JEG TRUST -JACK GALARDI JR. SUB-TRUST, | Case No.: P-18-096792-T<br>Dept. No.: 26<br><br>Date of Hearing: June 3, 2021<br>Time of Hearing: 9:30 am |
| --- | --- |

**Order**

Having considered Teri Gale Galardi's Motion to Dismiss Petition for Recovery of Assets from Teri Galardi, Co-Beneficiary of the JEG Trust, and Jack Galardi, Jr.'s Opposition to Motion to Dismiss Petition for Recovery of Assets from Teri Galardi, Co-Beneficiary of the JEG Trust, having heard arguments from Dana Dwiggins, Esq., of the law firm of Solomon Dwiggins & Freer, on behalf of Teri Gale Galardi (hereinafter when referred to individually as "Teri") and from Kirk D. Kaplan, Esq. of the law firm CREST KEY, PROF., LLC. on behalf of Jack Galardi, Jr. (hereinafter when referred to individually as "Jack"). Teri and Jack may hereinafter be referred to jointly as the "Parties."

1. On Jack January 12, 2021, Jack filed a Petition for Recovery of Assets from Teri Galardi, Co-Beneficiary of the JEG (hereinafter the "Petition").

2. The Parties agree the three (3) year period of limitation under NRS §11.190(3)(d) applies to the present matter.

**Arguments**

3. Ms. Dwiggins, on behalf of Teri, argued March 20, 2015, is the applicable date the three (3) year limitation of action pursuant to NRS §11.190(3)(d) began, and therefore Jack's Petition filed on January 12, 2021, is outside the three (3) year period and thus should be

dismissed.

4. Mr. Kaplan, on behalf of Jack, argued December 6, 2018, is the applicable date the three (3) year limitation of action pursuant to NRS §11.190(3)(d) began and therefore, Jack's January 12, 2021, Petition was timely filed.

**Findings**

5. Additional briefing from Jack and Teri is required to clarify dates and facts to allow a proper ruling.

**Orders**

NOW, THEREFORE, good cause appearing:

IT IS HEREBY ORDERED, Jack Galardi, Jr. is to file a supplement to his Objection be filed no later July 9, 2021.

IT IS HEREBY FURTHER ORDERED, Teri Galardi may file a responsive pleading no later than ten (10) days from the notice of entry of this Order.

Dated: ________________________2021.

Dated this 15th day of November, 2021

______________________________
District Court Judge

5CA 61F 36AD 244E
Gloria Sturman
District Court Judge

**CSERV**

DISTRICT COURT
CLARK COUNTY, NEVADA

| In the Matter of the Trust of: | CASE NO: P-18-096792-T |
| --- | --- |
| JEG Trust - Jack Galardi Jr. Sub-Trust | DEPT. NO. Department 26 |

**AUTOMATED CERTIFICATE OF SERVICE**

This automated certificate of service was generated by the Eighth Judicial District Court. The foregoing Order was served via the court's electronic eFile system to all recipients registered for e-Service on the above entitled case as listed below:

Service Date: 11/15/2021

| | |
| --- | --- |
| Dana Dwiggins | ddwiggins@sdfnvlaw.com |
| Joshua Hood | jhood@sdfnvlaw.com |
| Jennifer Bidwell | jbidwell@smithshapiro.com |
| Michael Rawlins | mrawlins@smithshapiro.com |
| Shirley Derke | shirleyderke@gmail.com |
| America Gomez-Oropeza | aoropeza@smithshapiro.com |
| Kirk Kaplan | Kirk@CrestKey.com |
| Kirk Kaplan | Kirk@CrestKey.com |

# TAB 12

Electronically Filed
3/10/2022 9:15 AM
Steven D. Grierson
CLERK OF THE COURT

PET

Kirk D. Kaplan, Esq.
Nevada Bar No.: 005685
CREST KEY, PROF., L.L.C.
6980 O'Bannon Drive, Suite 100
Las Vegas, Nevada 89146
Telephone: (702) 202-4153
Facsimile: (702) 837-1879
Kirk@CRESTKEY.com
*Attorney for Jack Galardi, Jr., Petitioner*

DISTRICT COURT

CLARK COUNTY, NEVADA

In the Matter of the

JEG TRUST -JACK GALARDI JR. SUB-TRUST,

Case No.: P-18-096792-T
Dept. No.: PC1

HEARING REQUESTED

**Petition to Enforce Court Order to Account**

TO: DISTRICT COURT, CLARK COUNTY, NEVADA

TO: MICHAEL D. RAWLINGS, ESQ., SMITH & SHAPIRO, PLLC

TO: DANA A. DWIGGINS, ESQ., SOLOMAN, DWIGGINS & FREER

Jack Galardi, Jr., (hereinafter may be referred to as "Petitioner") by and through legal counsel, Kirk D. Kaplan, Esq., of the law firm of CREST KEY, PROF., L.L.C., hereby submits this Petition to Enforce Court Order to Account (herein "Petition"). This Petition is also meant to clarify the duties and responsibilities of the Trustee to account and provide information so as to save court recourses of expected repeated disputes over duties to account and allow ease of review of accounts.

**IDENTIFICATION OF PARTIES AND OTHER APPLICABLE NAMES**

Teri Gale Galardi hereinafter may be referred to as "Trustee."

Jack Harold Edward Galardi, as "Trustor" created the JEG Family Trust, u/a/d November 1, 2006. The Trustor totally restated and amended the JEG Family Trust on August 16, 2012. The August 16, 2012 total restatement and amendment may hereinafter be referred to as the "JEG Family Trust."

The Petitioner, Jack Galardi, Jr.'s, sub-trust will hereinafter be referred to as the "Sub-Trust." Petitioner is the sole beneficiary of the Sub-Trust.

CREST KEY, PROF., L.L.C.
6980 O' Bannon Drive - Suite 100
Las Vegas, Nevada 89117
Telephone: (702) 202-4153; Facsimile: (702) 837-1879

CREST KEY, PROF., L.L.C.
6980 O' Bannon Drive - Suite 100
Las Vegas, Nevada 89117
Telephone: (702) 202-4153; Facsimile: (702) 837-1879

# I. MEMORANDUM OF POINTS AND AUTHORITIES

## A. Statement of Facts

1. This Court in an order filed on December 7, 2018 (Notice of Entry of Order dated December 10, 2018), assumed jurisdiction over the Trust, confirmed Teri Gale Galardi as Trustee, ordered an accounting of the assets funded in to the sub-trust. Specifically this Court ordered:

> 3. That this Court orders TERI GALE GALARDI, Successor Trustee[] of the JACK E. GALARDI, JR. SUB-TRUST to provide an accounting of the funding of the assets to the sub-trust, which would include all activities from the date of death until transferred to the sub-trust; identifying any assets that have been separated from the JEG Trust. This accounting should be in accordance with NRS 165.135. This accounting shall be provided to JACK E. GALARDI, Jr. within 30 days from the notice of entry of this order.
>
> 4. That this Court orders TERI GALE GALARDI, Successor Trustees of the JACK E. GALARDI, JR. SUB-TRUST to provide an accounting of the sub-trust since its initial funding to date.

## B. Statement of Authority and Argument

### 1. Legal Authority

2. Within in six years of after a court decree, an enforcement action may be brought. Specifically, the relevant part of NRS §11.190(1)(a)(2017) provides: "[A]ctions other than those for the recovery of real property, unless further limited by specific statute, may only be commenced as follows: 1. Within 6 years: (a) . . . an action upon a judgment or decree of any court of the United States, or of any state or territory within the United States, or the renewal thereof." *Cf.* Kuptz-Blinkinsop v. Blinkinsop 466 P.3 1271, 136 Nv Adv. Op. 40 (2020) (*confirming the scope of NRS §11.190(1)(a) while discussing timeliness of a partition action revolving real property pursuant to a divorce decree*).

### 2. Argument

**Trustee has Failed to Present an Inventory of the Assets and an Accounts Pursuant to NRS §165.135**

3. As of the date of filing this Petition, the Trustee has failed "to provide an accounting of the funding of the assets to the [S]ub-[T]rust, which would include all activities from the date of death until transferred to the [S]ub-[T]rust; identifying any assets that have been separated from the [JEG Family] Trust."

CREST KEY, PROF., L.L.C.
6980 O' Bannon Drive - Suite 100
Las Vegas, Nevada 89117
Telephone: (702) 202-4153; Facsimile: (702) 837-1879

## II. PRAYER FOR RELIEF

WHEREFORE, Petitioner prays the Court will Order and Compel the Trustee to:

A. Provide to Petitioner an initial Inventory of the JEG Family Trust so as to ease understanding of beginning balances as a foundation of "all activities from the date of death [of Jack Harold Edward Galardi] until transferred to the sub-trust."

B. Provide to Petitioner accounts pursuant to NRS §165.135 of "all activities from the date of death [Jack Harold Edward Galardi] until transferred to the [S]ub-[T]rust."

C. Provide to Petitioner an ending Inventory (naturally resulting from administrative activities) of the JEG Family Trust relied upon by Terri, so as to ease understanding, of the division the JEG Family Trust into the sub-trusts thereunder, including the Sub-Trust.

D. Provide to Petitioner an Account of the Sub-Trust pursuant to NRS §165.135 from date of funding to December 7, 2018, so as to ease identifying any assets that have been separated from the JEG Family Trust;

E. Provide to Petitioner detailed ledgers (commonly known in the accounting profession as a general ledger) along with journal entries (including explanations for the purpose, and whether it is to be reversed in a subsequent account period).

F. Provide to Petitioner, in an organized and easy to understand manner, all documents supporting balances of each asset and other items presented in inventories. By way of example, and not limited to, appraisals, value estimations, bank statements, financial statements tying to filing obligations to federal and local governments, other supporting documents, and files supporting filed fiduciary income tax returns for applicable trusts.

G. Provide to Petitioner, for purposes of allowing him ease of review of submitted accountings pursuant to NRS §165.1214(4)(a) 90-day objection period, in date ordered organized and easy to understand manner, all documents supporting transactions, including but not limited to sales and acquisition of assets, sources of income, expenditures, distributions, and other material transactions.

H. Provide to Petitioner a clear writing explaning all assumptions, estimates, and other matters not readily apparent that materially affecting the accounts and presented.

I. For such other relief as this Court finds proper in the circumstances.

Dated this 9th day of March, 2022.

Submitted by:

CREST KEY, PROF., L.L.C.

Kirk D. Kaplan, Esq.
Nevada Bar No.: 005685
CREST KEY, PROF., L.L.C.
6980 O'Bannon Drive, Suite 100
Las Vegas, Nevada 89117
Telephone: (702) 202-4153
Facsimile: (702) 837-1879
Kirk@CRESTKEY.com
*Attorney for Jack Galardi, Jr., Petitioner*

**VERIFICATION**

STATE OF NEVADA )
) ss.
COUNTY OF CLARK )

Jack Galardi, Jr., being first duly sworn on oath, according to the law, deposes and says:

I am the Petitioner in the above Petition to Enforce Court Order to Account; and I have read the same and know the contents thereof; and the same are true to the best of my own personal knowledge except for those statements made therein upon information and belief; and as to those statements, I believe them to be true.

Jack Galardi, Jr.

Subscribed and Sworn to before me
this 9 th day of March, 2022.

NOTARY PUBLIC in and for said
County and State

CARLA VON FELDEN
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 03-19-23
Certificate No: 19-1873-1

CREST KEY, PROF., L.L.C.
6980 O' Bannon Drive - Suite 100
Las Vegas, Nevada 89117
Telephone: (702) 202-4153; Facsimile: (702) 837-1879

# TAB 13

Electronically Filed
04/13/2022 5:13 PM
CLERK OF THE COURT

**SAO**

Kirk D. Kaplan, Esq
Nevada Bar No.: 005685
CREST KEY PROF., LLC
6980 O'Bannon Drive, Suite 100
Las Vegas, Nevada 89117
Telephone: (702) 202-4153
Facsimile: (702) 837-1879
Kirk@CRESTKEY.com
Attorney for Jack Galardi, Jr., Petitioner

**DISTRICT COURT**
**CLARK COUNTY, NEVADA**

In the Matter of the

JEG TRUST -JACK GALARDI JR. SUB-TRUST,

Case No.: P-18-096792-T
Dept. No.: PC1

STIPULATION AND ORDER TO CONTINUE HEARING

IT IS HEREBY STIPULATED AND AGREED between Petitioner, Jack Galardi, Jr., by and through Kirk D. Kaplan, Esq., of the law firm CREST KEY PROF., LLC, legal counsel and attorney of record for Teri Gale Galardi ("Teri") by and through legal counsel and attorney of record Dana A. Dwiggins of SOLOMON, DWIGGINS FREER & STEADMAN LTD. Petitioner and Teri may hereinafter be referred to jointly as the "Parties."

IT IS STIPULATED, on March 10, 2022, Petitioner filed a Petition to Enforce Court Order to Account, and

IT IS FURTHER STIPULATED AND AGREED, this Court set April 14, 2022 for a hearing on Petitioner's Petition, and

IT IS FURTHER STIPULATED AND AGREED, Teri G. Galardi filed in Middle District of Georgia, Macon Division for Chapter 11 Bankruptcy Case No. 22-50035-JPS on March 8, 2022.

IT IS FURTHER STIPULATED AND AGREED, the Parties believe 11 USC §362 may stay Petitioner's Petition from moving forward, and

IT IS FURTHER STIPULATED AND AGREED, Petitioner desires to petition the Bankruptcy Court for relief of stay to allow his Petition to be heard before this Court, and

IT IS FURTHER STIPULATED AND AGREED, that the hearing set for this matter for April 14, 2022 be continued for a date at least sixty (60) days from April 14, 2022, so as to allow

Muije & Varricchio
1320 South Casino Center Blvd.
Las Vegas, NV 89104
PH: 702/386-7002 FX: 702/386-9135

Petitioner the seek and lifting stay in the bankruptcy.

Dated this 11th day of April, 2022

CREST KEY, PROF., LLC

By: [signature]
Kirk D. Kaplan, Esq.
Nevada Bar No.: 005685
CREST KEY PROF., LLC
6980 O'Bannon Drive, Suite 100
Las Vegas, Nevada 89117
Telephone: (702) 202-4153
Facsimile: (702) 837-1879
Kirk@CRESTKEY.com
Attorney for Jack Galardi, Jr., Petitioner

Dated this 11th day of April, 2022

SOLOMON DWIGGINS FREER & STEADMAN, LTD.

By: /s/ Dana.A. Dwiggins
Dana A. Dwiggins, Esq.
Nevada Bar No.: 07049
SOLOMON DWIGGINS FREER & STEADMAN, LTD.
9060 West Cheyenne Avenue
Las Vegas, Nevada 89129
Telephone: (702) 853-5483
Facsimile: (702) 853-5485
ddwiggins@sdfnvlaw.com
Attorneys for Teri Gale Galardi

ORDER TO CONTINUE HEARING

Based upon the Stipulation of the Parties, and good cause appearing;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, to continue a hearing on Petitioner's Petition to Enforce Court Order to Account to June 16, 2022 at 9:30am, 2022 at __________ ___ m.

Dated this 13th day of April, 2022

[signature]
DISTRICT COURT JUDGE

018 FD0 4007 51D5
Gloria Sturman
District Court Judge

SUBMITTED BY:

CREST KEY, PROF., LLC

By: [signature]
Kirk D. Kaplan, Esq.
Nevada Bar No.: 005685
CREST KEY PROF., LLC
6980 O'Bannon Drive, Suite 100
Las Vegas, Nevada 89117
Telephone: (702) 202-4153
Facsimile: (702) 837-1879
Kirk@CRESTKEY.com
Attorney for Jack Galardi, Jr., Petitioner

Muije & Varricchio
1320 South Casino Center Blvd.
Las Vegas, NV 89104
PH: 702/386-7002 FX: 702/386-9135

**CSERV**

DISTRICT COURT
CLARK COUNTY, NEVADA

| In the Matter of the Trust of: | CASE NO: P-18-096792-T |
| --- | --- |
| JEG Trust - Jack Galardi Jr. Sub-Trust | DEPT. NO. Department 26 |

**AUTOMATED CERTIFICATE OF SERVICE**

This automated certificate of service was generated by the Eighth Judicial District Court. The foregoing Stipulation and Order was served via the court's electronic eFile system to all recipients registered for e-Service on the above entitled case as listed below:

Service Date: 4/13/2022

| | |
| --- | --- |
| Dana Dwiggins | ddwiggins@sdfnvlaw.com |
| Jennifer Bidwell | jbidwell@smithshapiro.com |
| Michael Rawlins | mrawlins@smithshapiro.com |
| Shirley Derke | shirleyderke@gmail.com |
| America Gomez-Oropeza | aoropeza@smithshapiro.com |
| Kirk Kaplan | Kirk@CrestKey.com |
| Kirk Kaplan | Kirk@CrestKey.com |

# TAB 14

Electronically Filed
08/14/2022 4:47 PM
CLERK OF THE COURT

Dana A. Dwiggins, Esq. (#07049)
ddwiggins@sdfnvlaw.com
SOLOMON DWIGGINS FREER & STEADMAN, LTD.
9060 West Cheyenne Avenue
Las Vegas, Nevada 89129
Telephone: (702) 853-5483
Facsimile: (702) 853-5485

Michael D. Rawlins, Esq. (#005467)
mralwins@smithshapiro.com
SMITH & SHAPIRO, PLLC
3333 East Serene Avenue, Ste. 130
Henderson, Nevada 89074
Telephone: (702) 318-5033
Facsimile: (702) 318-5034

*Attorneys for Teri Gale Galardi*

SOLOMON | DWIGGINS FREER | STEADMAN LTD
TRUST AND ESTATE ATTORNEYS
SDFS

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| In the Matter of the<br><br>JEG TRUST-JACK GALARDI, JR., SUB-TRUST | Case No.: P-18-096792-T<br>Dept.: 26<br><br>Hearing Date: August 18, 2022<br>Hearing Time: 9:30 a.m. |

**STIPULATED AND ORDER TO CONTINUE HEARING**

Teri Gale Galardi ("Teri"), individually, as beneficiary, and as former Trustee of the JEG Family Trust, dated August 15, 2012, and all sub-trusts created thereunder, by and through her counsel of record, the law firm of Solomon Dwiggins Freer & Steadman, Ltd., and Jack Galardi, Jr., ("Jack"), by and through his counsel, Kirk Kaplan, Esq., of the law firm Crest Key Prof., LLC, hereby stipulate and agree as follows:

The parties hereby stipulate and request an order continuing the hearing for at least sixty (60) days.

/ / /

/ / /

/ / /

/ / /

This stipulation is reasonably necessary and is not entered into for any improper purpose or delay.

SOLOMON DWIGGINS FREER & STEADMAN, LTD.

By: /s/ Dana A. Dwiggins
Dana A. Dwiggins, Esq. (NSB #007049)
9060 West Cheyenne Avenue
Las Vegas, NV 89129

*Attorneys for Teri Gale Galardi*

CREST KEY PROF., LLC

By: /s/ Kirk D. Kaplan
Kirk D. Kaplan, Esq.
6980 O'Bannon Drive, Suite 100
Las Vegas, Nevada 89117

*Attorneys for Jack Galardi, Jr.*

**ORDER**

Pursuant to the foregoing stipulation of the parties,

**IT IS HEREBY ORDERED** that the status check, scheduled for August 18, 2022 at 9:30 a.m., shall be and hereby continued to the 20TH day of October, 2022. AT 9:30AM

Dated this 14th day of August, 2022

AAB 664 E0AA A39F
Gloria Sturman
District Court Judge

Prepared and submitted by:
SOLOMON DWIGGINS FREER & STEADMAN, LTD.

By: /s/ Dana A. Dwiggins
Dana A. Dwiggins, Esq. (NSB #007049)
9060 West Cheyenne Avenue
Las Vegas, NV 89129

*Attorneys for Teri Gale Galardi*

SOLOMON | DWIGGINS FREER | STEADMAN LTD
TRUST AND ESTATE ATTORNEYS
SD FS

**Austrey Dwiggins**

**From:** Kirk Kaplan <kirk@crestkey.com>
**Sent:** Friday, August 12, 2022 6:45 AM
**To:** Dana Dwiggins
**Subject:** Re: 2022-08-10 Stipulation and Order to Continue Hearing 4855-0032-5678 (002)

**Follow Up Flag:** Follow up
**Flag Status:** Completed

**External Email**

Dana,

Looks good. Place my electronic signature onto the Stip and Order and transmit it to the Court. Thank you.

Kirk D. Kaplan, Esq., CPA
CREST KEY PROF., LLC
6980 O'Bannon Drive, Suite 100
Las Vegas, Nevada 89117
(T) (702) 202-4153
(F) (702) 837-1879
Kirk@CrestKey.com

---

**From:** Dana Dwiggins <ddwiggins@sdfnvlaw.com>
**Date:** Thursday, August 11, 2022 at 7:31 PM
**To:** Kirk Kaplan <kirk@crestkey.com>
**Cc:** Austrey Dwiggins <ADwiggins@sdfnvlaw.com>
**Subject:** 2022-08-10 Stipulation and Order to Continue Hearing 4855-0032-5678 (002)

**WARNING:** Do not click links or open attachments unless you recognize the source of the email and know the contents are safe.

Kirk,

Please see SAO to continue the hearing. Please let me know I am authorized to affix your electronic signature.

Dana Dwiggins

**CSERV**

DISTRICT COURT
CLARK COUNTY, NEVADA

| In the Matter of the Trust of: | CASE NO: P-18-096792-T |
| --- | --- |
| JEG Trust - Jack Galardi Jr. Sub-Trust | DEPT. NO. Department 26 |

**AUTOMATED CERTIFICATE OF SERVICE**

This automated certificate of service was generated by the Eighth Judicial District Court. The foregoing Stipulation and Order was served via the court's electronic eFile system to all recipients registered for e-Service on the above entitled case as listed below:

Service Date: 8/14/2022

| | |
| --- | --- |
| Dana Dwiggins | ddwiggins@sdfnvlaw.com |
| Jennifer Bidwell | jbidwell@smithshapiro.com |
| Michael Rawlins | mrawlins@smithshapiro.com |
| Shirley Derke | shirleyderke@gmail.com |
| America Gomez-Oropeza | aoropeza@smithshapiro.com |
| Kirk Kaplan | Kirk@CrestKey.com |
| Kirk Kaplan | Kirk@CrestKey.com |

**CERTIFICATE OF SERVICE**

This is to certify that I have on this day electronically filed the foregoing **DEFENDANT'S RENEWED MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO ABSTAIN** and **BRIEF IN SUPPORT** using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of and an accompanying link to the following parties in this case under the Bankruptcy Court's Electronic Case Filing Program:

The following parties were served by electronic notice:

| | |
|---|---|
| **William Russell Geer** | wgeer@geerlawgroup.com, notices@nextchapterbk.com; willgeer@ecf.courtdrive.com |
| **Garrett A. Nail** | gnail@pgnlaw.com |

This 4th day of January 2023.

Respectfully submitted,

**MCBRYAN, LLC**

/s/Louis G. McBryan
Louis G. McBryan, Ga. Bar No. 480993
6849 Peachtree Dunwoody Road
Building B-3, Suite 100
Atlanta, GA 30328
(678) 733-9322 Telephone
lmcbryan@mcbryanlaw.com
**Attorney for Defendant Teri Galardi**