## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **IN RE:** | ) | **CHAPTER 11** |
| | ) | |
| **TERI G. GALARDI,** | ) | **CASE NO. 22-50035-JPS** |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| **JACK E. GALARDI, JR. and** | ) | |
| **EMELITA P. SY, as the TRUSTEE** | ) | |
| **of the JACK E. GALARDI, JR.** | ) | |
| **SUB-TRUST** | ) | |
| | ) | |
| Plaintiffs, | ) | **Adversary Proceeding No. 22-05008** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TERI G. GALARDI,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## <u>JACK E. GALARDI'S RESPONSE TO DEFENDANT'S RENEWED MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO ABSTAIN</u>

Plaintiffs Jack. E. Galardi, Jr. ("**<u>Jack</u>**") and Emelita P. Sy ("**<u>Ms. Sy</u>**"), as the Trustee of the Jack E. Galardi, Jr. Sub-Trust (the "**<u>JGJ Subtrust</u>**") (collectively, "**<u>Plaintiffs</u>**"), respond to Defendant Teri G. Galardi's ("**<u>Defendant</u>**" or "**<u>Teri</u>**") Renewed Motion to Dismiss or, in the alternative, Motion to Abstain (the "**<u>Renewed Motion</u>**") as follows[1]:

## <u>INTRODUCTION</u>

In support of her Renewed Motion, Teri included all Nevada State Court Action pleadings to establish that the Nevada statute of limitations began to run on March 20, 2015 for Jack's claims

---

[1] Defined terms in this Response have the same meaning as the terms defined in Plaintiffs' Complaint and Plaintiffs' Response to Teri's first motion to dismiss.

for breach of fiduciary duty under Nevada state law and under 11 U.S.C. § 523(a)(6), § 523(a)(4), and § 523(a)(2)(A). Jack asserts that the Nevada statute of limitations began to run on his Nevada state law claims on December 6, 2018 when the Nevada Court ordered Teri to provide to Jack an extensive accounting of the JGJ Subtrust. The Nevada statute of limitations, however, is not relevant to Jack's claims on the Teri Note and the Mortgage Assumption as those claims are established.

Teri's Renewed Motion again fails to differentiate between the two types of claims asserted by Jack and the JGJ Subtrust in the Complaint. This understanding of Jack and the JGJ Subtrust's claims against Teri is crucial to the Court's analysis of her statute of limitations defense. For the Court's convenience, Jack includes his short summary of the claims against Teri.

| Conduct/Claim | Statute of Limitation Issue | Dischargeability Statute |
|---|---|---|
| The Teri Note and the Mortgage Assumption (the "**Established Claims**") | No issue as to statute of limitations as the debts are established. | 523(a)(4); 523(a)(6), and 523(a)(2)(a). |
| Jack's allegations that Teri had, among other things, not fully funded the subtrust, had sold subtrust property at a loss, had funded the subtrust with encumbered property, and had taken distributions from the subtrust for her personal use. (the "**Nevada Claims**") | Teri asserts that the Nevada statute of limitations began running no later than March 20, 2015 on Jack's claims for breach of fiduciary duty and fraud under Nevada state law. Jack asserts it began running on December 6, 2018. | 523(a)(4); 523(a)(6), and 523(a)(2)(a). |

As discussed below, the Court must deny the Renewed Motion as to the Established Claims on two grounds. The state statute of limitations does not apply to the Established Claims and the Complaint on its face states a claim against Teri under § 523(a). With the Established Claims, the Court moves directly to the issue of whether the claims are non-dischargeable.

Also as discussed below, the Court must deny the Renewed Motion as to the Nevada Claims on three grounds. First, the Complaint on its face shows that the Nevada Claims are not time barred. Second, the Nevada statute of limitations began running at the time Jack discovered Teri had breached her fiduciary duties. Third, Teri waived this affirmative defense in the Nevada State Court Action. The Nevada Claims are subject to the Nevada statute of limitations and Jack filed his state court petition alleging breach of fiduciary duty within that time period.

In the alternative, Teri asks the Court to permissively abstain from adjudicating the Complaint, because the claims in the Complaint are based upon Nevada state law causes of action. Jack incorporates by reference his Response to Defendant's Motion to Dismiss or, in the alternative, Motion to Abstain [Docket No. 11] regarding the abstention issue.

## **FACTUAL TIMELINE**

The Family Trust provisions indicate that Teri and Jack's father, Mr. Galardi, cared for Jack. Mr. Galardi named Teri to be the subtrustee of Jack's subtrust and required that Jack's share of the assets be held in the subtrust and "distributed to Jack Jr, as is necessary, in the discretion of the Trustee, for [his] support, comfort, well-being, education or health needs." Renewed Motion, Tab 2, p. 2.

Teri's opinion of Jack and his limitations is well-documented in the Nevada State Court Action pleadings. She made the following comments.

a. Jack has "Asperger's syndrome, a subset of autism spectrum disorder, and lacks the kinds of life skills that would permit him to care for and make decisions for himself." *Id.*

b. "Among other things, Jack cannot manage money and has demonstrated no ability to make a living for himself." *Id.*

c. Mr. Galardi "made it clear to her that she would have to run the family businesses after his death, and that Jack Jr. should not be involved." *Id.*

Teri's comments highlight the imbalance of power that existed and continues to exist between Teri and Jack.

On March 4, 2015, Jack's first attorney requested an accounting of the Family Trust and JGJ Subtrust from Teri's counsel. *Id.*, Tab 8, p. 3. The response was limited and without factual details for determining valuation and/or breaches of fiduciary duty by Teri. *Id.*

Teri's counsel provided the IRS Decedent Form 706 ("**Form 706**") which indicated that the value of the JGJ Subtrust was $8,630,635. *Id.* The 2015 General Ledger provided indicated that the JGJ Subtrust's had a value of only $6,693,388.60. *Id.*

At some point after 2015, Jack, through his counsel, learned that to bridge this 25% gap in value, Teri issued the Teri Note, as the trustee of the Teri Galardi subtrust, to Teri Galardi as the trustee of the JGJ Subtrust. Teri also personally guaranteed the Teri Note. Teri made the decision to keep for herself the Family Trust assets valued at $1,688,742.00 instead of fully funding the JGJ Subtrust with assets from Family Trust. Teri indebted her subtrust to the JGJ Subtrust so that Jack would not assert any claims against her. *Id.,* Tab 1, Tab 2.

After March 2015 until September 19, 2018, Jack's counsel, Shirley Derke, had multiple conversations with Teri's counsel and Teri's accountant. Ms. Derke attempted to gather all the facts regarding Teri's funding of the JGJ Subtrust to make a determine if Jack had any claims against Teri as the trustee of his subtrust. During this time period, Teri made payments on the Teri Note and paid the Mortgage Assumption. Relying on Teri's obligations to repay the Teri Note,

Jack continued to be patient for the accounting while Teri was meeting her obligations under the Teri Note. *Id.,* Tab 1.

In 2017, Teri began to make sporadic payments under the Teri Note and failed to provide accounting information. Realizing that a settlement regarding the trust was not possible, on September 19, 2018, Ms. Derke filed the Nevada state court petition asking the probate court to take jurisdiction over the trust and requested the removal of Teri as the trustee (the "Removal Petition").During the initial stages of this litigation, Teri did not provide an accounting. *Id.*

On December 6, 2018, the Nevada court entered an Order Granting the Petition which ordered Teri to provide accountings to Jack of a) the funding of the assets to the sub-trust which would include all activities from the date of death until transferred to the sub-trust and identifying any assets that have been separated from the JEG Trust and b) of the sub-trust since its initial funding to date. The order required compliance within 30 days. *Id.,* Tab 4, p. 2.

Teri did not comply fully with the Order. At that point, January 6, 2019, Jack's counsel concluded that Jack had claims against Teri for breach of fiduciary duties. Ms. Derke continued to try and settle with Teri to no avail. *Id.*, Tab 7.

On March 20, 2019, Teri provided balance sheets and profit and loss statements for the periods ending 11/30/2013 and 11/30/2014 for the Family Trust. Neither Jack nor Ms. Derke had seen these documents before March 20, 2019. *Id.*, Tab 5, p. 8.

At this point, Jack learned for the first time that Teri had encumbered the Residence with A $750,000 debt shortly before she used this property to fund the JGJ Subtrust. *Id.* This encumbrance was not included on Form 706 or on the 2015 General Ledger provided to Jack in March 2015. *Id.* Teri valued the Residence at over $2,000,000 when she allocated it to the JGJ

Subtrust when in fact its value was $1,000,000 less. *Id.* Jack also learned that Teri had assumed the payments for this debt.

After receiving the financial documents in 2019, Ms. Derke filed a petition for the removal of Teri as the subtrustee. *Id., Tab 5.* On September 27, 2019, the Nevada Court entered a Stipulation and Order on the removal petition. *Id.*, Tab 6. Jack through his counsel agreed to allow Teri to resign as the trustee rather than having her removed and, in exchange, Teri through her counsel agreed that Jack did not "waive his individual right as a beneficiary to audit or investigate the accounts or administration" of Teri as trustee. *Id.*, Tab 6. Settlement discussions continued between counsel to no avail.

On January 12, 2021, Jack filed a Petition for Recovery of Assets from Teri Galardi, Co-Beneficiary of the JGJ Trust (the "**Recovery Petition**") asserting that Teri, amongst other things, failed to properly fund the JGJ Trust; took inequitable distributions during the funding of the Galardi Family Trust; allocated estate taxes on assets to her benefit and to the detriment of Jack and the JGJ SubTrust; and failed to disclose certain secured claims against assets she used to fund the JGJ SubTrust. *Id.,* Tab 7.

The Petition alleged that Teri's actions and failure to act in funding the JGJ SubTrust constituted a breach of her fiduciary duty. Teri failed to raise the affirmative defense of the expiration of the statute of limitations in the Nevada State Court Action, and she also failed to comply with Nevada Court's Accounting Order.

On March 24, 2021, Teri filed a Motion to Dismiss the Petition. *Id.,* Tab 8. Jack filed a Response to the Motion to Dismiss on May 12, 2021. *Id.,* Tab 9. On March 10, 2022, Jack filed a Petition to Enforce Court Order to Account. *Id.,* Tab 12.

It was not until two and a half years after Jack initiated his state court action against Teri that she raised the statute of limitations as a defense to Nevada State Court Action. Jack responded that Teri had waived the affirmative defense by waiting so long to raise it. *Id.,* Tab 8, p. 5.

In the Nevada State Court Action, Jack and Teri now have stipulated that three years is the applicable statute of limitations period under Nev. Rev. Stat. § 11.190(3)(d) for the fraud and breach of fiduciary claims against Teri as the trustee of the JGJ SubTrust. *Id.,* Tab 11.This statute provides that the period begins running from the date the aggrieved party discovered the facts constituting the fraud. The parties disagree on the date of discovery.

## ADMITTED FACTS IN THIS ADVERSARY

In Teri's Affirmative Defenses, Answer and Counterclaim [Docket No. 29] filed in response to Jack's Complaint (the "**Answer**"), Teri admits allegations that go to the heart of Jack's dischargeability claims as to the Established Claims and the Nevada Claims.

Teri's Fiduciary Duty

Teri's powers are "subject always to the discharge of [her] fiduciary obligations…." Answer ¶ 25.

As the trustee of the JGJ Subtrust, Teri had a fiduciary duty to the subtrust and to Jack as the sole beneficiary. Answer ¶ 38.

During her term as the trustee of the JGJ Subtrust, [Teri] was a fiduciary under § 523(a)(4). Answer ¶ 66.

Teri was the trustee of an express trust created by a contract, which was the Family Trust requiring the creation of JGJ Subtrust with Teri designated as the trustee. She was in a position of trust over the JGJ Substrust assets with Jack as the beneficiary. Answer ¶ 67.

As the trustee of JGJ Subtrust, Teri owed fiduciary duties to the trust and to Jack as the sole beneficiary. Answer ¶ 70.

Teri's Funding of the JGJ Subtrust

Teri filed Form 706 which stated the "twenty-five percent (25%) of the remaining Trust estate shall be distributed to the Jack Galardi, Jr. Sub-Trust." Answer ¶ 22.

To bridge the gap in value and to fully fund the JGJ Subtrust as required under the Family Trust, Teri as the trustee of her subtrust, executed an unsecured promissory note in favor of JGJ Subtrust guaranteed by Teri individually in the amount of $1,688,742. Under the terms of this unsecured note, the Teri Subtrust was to make monthly payments to the JGJ Subtrust (the "Teri Note"). Answer ¶ 27, ¶ 34.

Teri on behalf of the Teri Subtrust executed the Teri Note in favor of JGJ Subtrust and guaranteed that Teri Note to equalize the division of assets required under the Family Trust. Answer ¶ 74.

Teri also placed Mr. Galardi's residence located in Las Vegas, Nevada into the JGJ Subtrust which had a value of $2,000,000 and contents with a value of $85,047.00 and a secured mortgage of $1,330,451 on the residence (the "Residence"). Again, to bridge the gap in value and to fund the JGJ Subtrust to the full twenty-five percent (25%) of its value as required under the Family Trust, Teri individually assumed the mortgage debt while paying the mortgage payments. Jack has always lived in and continues to live in the Residence. Answer ¶ 28.

Waiver of Nevada Statute of Limitations

On September 27, 2019, in accordance with the Removal Order in the Nevada State Court Action, Jack did not waive his individual right as a beneficiary to audit or investigate the accounts or administration of Teri. Answer ¶ 60.

### THE FIRST MOTION TO DISMISS

On August 29, 2022, this Court entered an Order on Teri's first Motion to Dismiss or, in the alternative, Motion for the Court to Abstain (the "**First Motion**") (the "**MTD Order**") [Docket No. 22]. The MTD Order denied the First Motion with prejudice except for the issue of whether Plaintiffs' claims were barred by the Nevada statute of limitations and whether that defense is waived. The Court stated that the "denial is without prejudice to the parties reasserting these arguments after the record is more fully developed" [Docket No. 22]. The Court also dismissed the motion for permissive abstention without prejudice to allow Teri to reassert the motion "after the record is more fully developed" [Docket No. 22].

### <u>MOTION TO DISMISS STANDARD</u>

When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), the Court must accept the facts pled in the complaint as true and construe them in the light most favorable to the plaintiff. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012); *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010); and *Kwok v. Delta Air Lines Inc.*, 994 F. Supp. 2d 1290, 1292 (N.D. Ga. 2014). A dismissal under Rule 12(b)(6) on statute of limitations grounds is appropriate only if it is "apparent from the face of the complaint" that the claim is time-barred. *La Grasta v. First Union Sec., Inc*., 358 F.3d 840, 845 (11th Cir. 2004). Consideration of a motion to dismiss for failing to state a claims is not a venue for resolving factual disputes.

Teri erroneously argues that Jack's claims are barred because the Nevada statute of limitations has run on the 11 U.S.C. § 523(a) Established Claims and the Nevada Claims he asserts under Nevada state law and § 523(a). Jack addresses Teri's position below for each claim

category and shows that the allegations of the Complaint are sufficient to preclude the Court from granting Teri's Renewed Motion.

## ARGUMENT AND CITATION TO AUTHORITY

### The Established Claims

**A. The Nevada Statute of Limitations does not apply to the Established Claims.**

Teri contends that because Jack did not bring his breach of fiduciary claims against Teri under Nevada state law within three years, his claims under § 523 are time barred. This argument does not apply to an established debt. Teri owes two established debts to the JGJ Subtrust: the Teri Note and the Mortgage Assumption. Teri fails to recognize the distinction between a suit brought under state law to enforce state created rights and a suit filed in bankruptcy court to determine dischargeability.

In the § 523(a) context, the applicable statute of limitations analysis for the underlying claims was first enunciated by the Tenth Circuit Court of Appeals in *Resolution Tr, Corp. v. McKendry (In re McKendry),* 40 F.3d 331 (10th Cir. 1994). This analysis requires two steps: first, "the establishment of the debt itself, which is subject to the applicable state statute of limitations; and second, a determination as to the nature of that debt, an issue within the exclusive jurisdiction of the bankruptcy court and thus governed by Bankruptcy Rule 4007." *Id.* at 337.  *See also Hurston v. Anzo (In re Anzo),* 547 B.R. 454, 464 (Bankr. N.D. Ga. 2016) (J., Sacca).

A debt is defined in the Bankruptcy Code as "liability on a claim." 11 U.S.C. § 101(12). Claim means the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 101(5)(A).

Once a debt is established, the state statute of limitations is immaterial to dischargeability actions brought under 11 U.S.C. § 523. *See McKendry,* 40 F.3d at 337. *See also Richardson v. Hidy Honda, Inc. (In re Richardson),* 221 B.R. 956, 960 (D. Wyo. 1998)(state statute of limitations on embezzlement expired but debt was evidenced by a promissory note and plaintiff not barred from asserting nondischargeability under § 523(a)(4)); *Fledderman v. Glunk (In re Glunk),* 343 B.R. 754, 761 (Bankr. E.D. Pa. 2006)(whether plaintiffs asserted a timely fraud claim in state court "bears no significance in the bankruptcy court's ultimate determination of the nature of the debt and whether it is dischargeable").

 "The question of whether a debt is dischargeable in bankruptcy is a distinct issue governed by the time limits established in the Bankruptcy Code." *Anzo*, 547 B.R. at 464.  Once a debt is established, the state statute of limitations is no longer relevant. *Id.*  As the Tenth Circuit recognized, until a debtor filed his petition for relief under the Bankruptcy Code, a creditor "obviously" has no cause of action under § 523(a). *Id.*

"Whether or not the Plaintiffs asserted a timely fraud claim in the underlying state litigation bears no significance in the bankruptcy court's ultimate determination of the nature of the debt and whether such debt is dischargeable pursuant to § 523(a)(2)(A)." *In re Glunk*, 343 B.R. 754, 761 (Bankr. E.D. Pa. 2006). "[T]here is no requirement that the allegations of a complaint filed in state court prior to a debtor filing a petition in bankruptcy correspond to the elements of the grounds contained in § 523(a) of the Bankruptcy Code. Otherwise, plaintiffs in state court would be required to anticipate the bankruptcy of every defendant and litigate every conceivable issue under § 523(a) in the event a defendant should subsequently file bankruptcy. Such needless litigation is not required by the Bankruptcy Code. *In re Moran,* 152 B.R. 493, 496 (Bankr. S.D. Ohio 1993).

The facts in *Richardson* are instructive. The state statute of limitations had expired for an embezzlement cause of action, but the debt was evidenced by a promissory note. The Bankruptcy court found that the creditor was not barred from asserting a non-dischargeability claim under § 523(a)(4) because the debt was established by the terms of the promissory note. *Richardson,* 221 B.R. at 960.

Also the facts in *Glunk* are illustrative. The creditor filed a state court action but did not assert a timely fraud claim. The Bankruptcy Court held that the creditor's timely assertion in state court bore no significance in its determination of the nature of the debt and whether it was dischargeable under § 523(a)(2)(A). *Glunk,* 343 B.R. at 761.

In *Anzo,* Judge Sacca determined that once a debt has been established the state statute of limitations for fraud is no longer relevant. The creditor obtained a state court judgment against the debtor on a breach of contract claim. His choice of claim did not bar him from attempting to the have the debt declared non-dischargeable. *Anzo,* 547 B.R. at 464.

Here, Teri's debts to the JGJ Subtrust and to Jack as the sole beneficiary under the Teri Note and the Mortgage Assumption are established. Teri admits that she owes a debt to the JGJ Subtrust under the Teri Note and Mortgage Assumption. The debt has been established.

Plaintiffs are not required to file a state court lawsuit against Teri to determine the amount of the debt owed to them under the Teri Note. A mathematical computation will establish the remaining balance Teri owes. As a result, no statute of limitations is applicable to the debt established by the Teri Note. Also, Teri scheduled this debt in her Schedules with a value of $1,688,742 [Docket 34]. She intentionally issued a promissory note to the JGJ Subtrust from her subtrust and personally guaranteed the Teri Note, which represented the amount Teri failed to fund the JGJ Subtrust from the Family Trust. She made payments under the Teri Note. The Teri

Note is a continuing debt under the terms of that Teri Note.  Ms. Sy also filed a proof of claim for this debt which attaches the Teri Note and gives the principal amount of the debt as $1,053,191.20 [Proof of Claim 113].

Teri's debt to Plaintiffs arising under the Mortgage Assumption is established by its terms. Plaintiffs are not required to file a state court lawsuit against Teri to determine the existence of the amount of the debt owed to them under the Mortgage Assumption. A mathematical computation will establish the remaining balance Teri owes. The Mortgage Assumption is a continuing debt that Teri borrowed from a lender that she is no longer paying but that is secured by the Residence. She admits that she funded the JGJ Subtrust with the Residence upon which there is a substantial mortgage that she agreed to pay in order to fully fund the JGJ Subtrust. As a result, no statute of limitations is applicable to the debt established by the Mortgage Assumption.

Ms. Sy filed a proof of claim in the amount of $843,509.20 which represents the amount due and owing on the secured mortgage loan on the Residence [Proof of Claim 112]. Teri personally assumed this debt to fully fund the JGJ SubTrust.

Furthermore, Teri has filed a counterclaim seeking to recover the ordinary course of business payments she made under the Teri Note and Mortgage Assumption. Clearly Teri knows she owes these two debts to the JGJ Subtrust.

These two debts are established by the documents and Teri's admissions. Thus, the only applicable statute of limitation is the sixty-day period for filing a complaint to determine dischargeability of a debt. *Acuff-Rose Music, Inc. v. May (In re May),* 2006 WL 5940803, *4 (Bankr. N.D. Ga. Sept. 29, 2006).

**B.  The Complaint states a claim under 11 U.S.C. § 523 on the Teri Note and Mortgage Assumption.**

Teri argues that Jack's claims are barred as the statute of limitations has run on the claims he asserts under § 523(a). A dismissal under Rule 12(b)(6) on statute of limitations grounds is appropriate only if it is "apparent from the face of the complaint" that the claim is time-barred. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). As discussed above, the Nevada statute of limitations does not apply to these Established Claims.

After the debt is established, the bankruptcy court is barred from considering the state statute of limitations in determining whether the debt is dischargeable. *Anzo*, 547 B.R. at 464. ). As many courts have held, "the only limitations period applicable to the issue of dischargeability is the requirement of Bankruptcy Rule 4007(c) . . . ." *May*, 2006 WL 5940803, at *4 (citing cases). Thus, the only applicable limitations period is found in Federal Rule of Bankruptcy Procedure 4007(c). Rule 4007(c) requires that a complaint to determine the dischargeability of a debt under § 523 "be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." Fed. R. Bankr. P. 4007(c).

Plaintiffs filed this adversary proceeding timely and this Court has exclusive jurisdiction to decide whether Teri can discharge her obligations under the Teri Note and the Mortgage Assumption. Therefore, Plaintiffs claims under § 523(a)(4), (a)(2)(A), and (a)(6) for the Established Claims are not time-barred and the Complaint states a claim upon which relief can be granted as to the nondischargeability of debt evidenced by the Teri Note and the Mortgage Assumption.

The Court must dismiss Teri's Renewed Motion as to the Established Claims.

## The Nevada Claims

**A. The Nevada statute of limitations for fraud commenced when Jack learned of the facts giving rise to his claims.**

With regard to the remaining claims for Teri's breach of her fiduciary duties, Teri asserts that the three-year statute of limitations agreed upon by the parties in the Nevada State Court Action expired no later than March 25, 2018. Teri is incorrect in this assertion. The parties in the Nevada State Court Action entered into a stipulation agreeing that the statute of limitations for Teri's breach of fiduciary duties is three years. The parties, however, did not agree on the discovery date of the breach that would trigger the running of the statute of limitations. The date of Jack's discovery was December 6, 2018.

The applicable state statute of limitations provides that "an action for relief on the ground of fraud or mistake, but the cause of action in such a case shall be deemed to accrue upon the discovery by the aggrieved party of the facts constituting the fraud or mistake." *Nev. Rev. St.* 11.190(3)(d); *Golden Nugget, Inc. v. First National Bank of Nevada,* 98 Nev. 311 (1982). The "period of limitations is tolled until the injured party discovers or reasonably should have discovered facts supporting a cause of action." *Petersen v. Bruen,* 106 Nev. 271 (1990); *Prescott v. United States,* 523 F. Supp. 918, 940-941 (D. Nev.1981), aff'd, 731 F.2d 1388 (9th Cir.1984); *Fidler v. Eastman Kodak Co.,* 714 F.2d 192 (1st Cir.1983).

The rationale behind what is known as the "discovery rule" is to not foreclose plaintiffs from judicial remedies before they know they have been injured and can discover the cause of their injuries. "Plaintiffs should be put on notice before their claims are barred by the passage of time." *See Fidler,* 714 F.2d at 198. The Nevada Supreme Court also enunciated that when a fiduciary relationship exists, "the statute of limitations may be tolled when a fiduciary fails to fulfill his obligations and also fails to inform the other party of his failure, resulting in fraudulent concealment." *Id.*

When applying the doctrine of equitable tolling, the Nevada Supreme Court looks at the "interest of justice and the claimant's diligence in assessing if the statute of limitations should be equitably tolled." *State Dep't of Taxation v. Masco Builder Cabinet Group,* 127 Nev. 730, 739 (2011). Importantly, "[w]hen the plaintiff knew or in the exercise of proper diligence should have known of the facts constituting the elements of his cause of action is a question of fact for the trier of fact." *Nevada State Bank v. Jamison Family Partnership,* 801 P.2d 1377, 1382 (1990).

Here, Teri makes a point of detailing Jack's inability to manage and understand business and financial concepts. Their father recognized these inadequacies and to accommodate for them appointed Teri as Jack's sub-trust's trustee. It appears from the trust documents that Mr. Galardi cared for Jack and wanted to protect him financially and trusted Teri to fulfill his wishes. Teri has failed to do so. Knowing of his limitations, Teri took full advantage of the 24-year-old Jack when she began funding the JGJ Subtrust in 2014-2015. She continued this approach through her management of the JGJ Subtrust and her efforts now to discharge twenty-five percent (25%) of its value funded through the breach of fiduciary duties.

During the funding process, Teri did not retain separate counsel for Jack or the JGJ Subtrust. Jack did not have any input into the allocation of assets for his subtrust. Teri, her accountant, and her lawyers managed that allocation. Teri did not provide independent counsel for Jack during this process. Jack's trust was fully funded by January 2015, but Jack did not know or understand what assets had funded the JGJ Subtrust. Jack had no knowledge or information regarding the assets in his trust. In March 2015, he retained a lawyer so that someone could confirm that his father's wishes were followed.

After receipt of the March 2015 letter from Jack's counsel, Teri and her counsel provided minimal documents regarding the trusts. One document provided was Form 706 which listed the

value of Jack's Subtrust. Jack later learned that his trust was funded with almost two million dollars fewer assets. Again, later, he learned that Teri had indebted herself and her subtrust to his subtrust to make up the shortfall because she retained valuable assets for herself.

Teri's delivery of the Teri Note was an admission that she had done something wrong and to prevent Jack from filing an action against her when she was allocating assets. She delivered the note intending Jack to rely on it and not commence an immediate action against her. Teri's actions tolled the statute of limitations at that time as Jack was unaware of the reasons for her giving a note to the JGJ Subtrust.

Jack then retained Shirley Derke to represent him in this quest to gather information. Ms. Derke also was unsuccessful with her negotiations with Teri's counsel and accountant. So, on September 19, 2018, she filed the First Removal Petition. The Nevada Court recognized Jack's struggle to obtain information from Teri. On December 6, 2018, the Court granted the First Removal Petition and ordered Teri to provide an extensive accounting within 30 days.

Not surprisingly, Teri did not comply fully with the Accounting Order. On March 20, 2019, Teri provided balance sheets and profit and loss statements for the periods ending 11/30/2013 and 11/30/2014 for the Family Trust. Neither Jack nor Ms. Derke had seen these documents before March 20, 2019.

Jack, through his counsel, learned for the first time in 2019 that Teri had encumbered the Residence with a $750,000 debt shortly before she funded the JGJ Subtrust with this Property. This encumbrance was not included on Form 706 or on the 2015 general ledger provided in March 2015. There was also a $250,000 mortgage on the Residence that Teri did not disclose on Form 706 or on the 2015 general ledger. She funded the JGJ Subtrust with this Residence that she valued

at $2,000,000 when it fact its value was closer to $1,000,000. Jack came to learn of this breach of fiduciary duty in 2019.

After finally receiving financial documents in 2019 under the Court's Accounting Order, Ms. Derke filed another petition for the removal of Teri as the trustee (the "Second Removal Petition"). On September 27, 2019, the Nevada Court entered a Stipulation and Order on the removal petition. Jack, through his counsel, agreed to allow Teri to resign as the trustee rather than having her removed and, in exchange, Teri, through her counsel, agreed that Jack did not "waive his individual right as a beneficiary to audit or investigate the accounts or administration" of Teri as trustee.

After efforts fell through to reach a settlement for the JGJ Subtrust, Ms. Derke then filed the Petition for Recovery of Assets from Teri Galardi, Co-Beneficiary of the JEG Trust on January 12, 2021 (the "Breach Petition"). This petition asserts that Teri breached her fiduciary duty to Jack when selecting assets to fund the JGJ Subtrust and in her failure to disclose the debt on the Residence, among other things

These undisputed and admitted facts show that from March 2015 Jack made enormous efforts to obtain information from Teri to determine whether she had breached her fiduciary duties to the JGJ Subtrust and to him. The timeline from March 2015 shows that a court order was required mandating that Teri provide the statutory accounting. And, even with the court order, Teri delayed and did not turn over all the required accounting records.  That Accounting Order was issued on December 6, 2018, which is the date Jack's Nevada counsel stipulated that the statute of limitation began to run on his fiduciary claims against Teri.

The period of time from March 2015 when Jack first asked for an accounting from Teri up to the Accounting Order was the discovery period during which Teri failed to fulfill her fiduciary

obligations by providing the accounting as required under Nevada state law. This period also was when Teri sporadically made payments on the Teri Note, all in an effort to conceal her actions and deter Jack from taking immediate action.

Until Jack received the accounting records in 2019, he did not have the facts to show that Teri had breached her fiduciary duties to the JGJ Subtrust and him. Jack's Nevada counsel stipulated that the limitations period began running on the date the Nevada Court order Teri to provide the accounting. It was from this date that Jack and the JGJ Subtrust were put on notice that they had been injured by Teri's actions. The Breach Petition was filed on January 12, 2021 before the statute of limitations ran under Nev. Rev. St. 11.190(3)(d). Thus, the Nevada Claims are not barred and the Court must deny Teri's Renewed Motion.

### B. Teri waived the statute of limitations defense.

Should the Court look beyond the Complaint and its exhibits to determine whether Jack's claims are time barred, the Court will find that Teri waived the affirmative defense of statute of limitations and Jack's Nevada Claims stand.

Nevada Rule of Civil Procedure 8(c) provides, "[i]n pleading to a preceding pleading, a party shall set forth affirmatively. . . statute of limitations. . .and any other matter constituting an avoidance or affirmative defense."[2] "Failure to timely assert an affirmative defense may operate as a waiver if the opposing party is not given reasonable notice and an opportunity to respond." *Williams v. Cottonwood Cove Dev. Co.,* 619 P.2d 1219, 1221 (Nev. 1980) (citing *Schwartz v. Schwartz,* 591 P.2d 1137, 1140 (Nev. 1979)). Put simply, "[a]n affirmative defense not pleaded

---

[2] At the time the court action began, the 1986 Nevada Rules of Civil Procedure were in effect.

in the answer is waived." *State, Univ. and Cmty. Coll. Sys. v. Sutton,* 103 P.3d 8, 18 (Nev. 2004) (citing *Tobler & Oliver Constr. v. Nev. St. Bank,* 510 P.2d 1364, 1365 (Nev. 1973)).

Under Nevada state law, however, "an affirmative defense not raised in the pleadings is ordinarily deemed waived," but the court will consider an affirmative defense if "fairness so dictates, and prejudice will not follow." *Whealon v. Sterling*, 119 P.3d 1241, 1244 (2005). In this instance, fairness does not dictate that Teri can now assert the defense and prejudice to Jack and the JGJ Subtrust will follow immediately.

Jack filed his initial petition on September 18, 2018. Teri answered his petition on October 4, 2018 with an eight-page pleading. In her answer, she only prayed that "[t]he Court should deny [Jack's] request." Renewed Motion, Tab 2, p. 8. At that time, she should and could have raised the statute of limitations as an affirmative defense, but she failed to do so. She had ample notice and an opportunity to raise this defense: multiple hearings were held and multiple court orders were filed between the time the initial Petition was filed (2018) and her motion to dismiss was filed (2021). Instead, she waited until March, 24, 2021—two and a half years after the initial Petition was filed. Based upon this timeline and the activity in the Nevada State Court Action, this Court should find that Teri waived her affirmative defense of statute of limitations.

Further, in the Accounting Order dated September 27, 2019, Teri stipulated that Jack did not waive his individual right as a beneficiary to audit or investigate the accounts or administration of Teri as the subtrustee. Answer ¶ 60. If Teri and her counsel believed that the Nevada statute of limitations had run, they had the opportunity to include that provision in the Accounting Order.

Based upon these admitted and undisputed facts, fairness does not dictate and prejudice will follow if the Court finds that Jack's claims are time barred. Jack sought a complete accounting from Teri beginning in March 2015. Regardless of the Accounting Order issued in December 2018,

Teri has not provided a complete accounting the JGJ Subtrust. When Teri provided additional documents in 2019, Jack learned that Teri had breached her fiduciary duty to him.  She finally asserted the defense in 2021, three years later, in response to the Petition for breach of fiduciary duty contending for the first timethat the statute ran in 2018. To the contrary, it did not begin to run until 2018.

Teri waived this affirmative defense by failing to timely assert it in responsive pleadings, or in the stipulation in the Removal Order. Because of the prejudice that will result to the JGJ Subtrust and Jack if the defense stands, this Court should find that Teri waived the affirmative defense of the expiration of the statute of limitations.

### C.  The Complaint on its face shows that the Nevada statute of limitations began running on December 6, 2018.

Given that the standard for deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to only look to the four corners of the complaint and accept the facts pled in the complaint as true and construe them in the light more favorable to the plaintiff, Teri's Renewed Motion is premature. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012); *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010); and *Kwok v. Delta Air Lines Inc.*, 994 F. Supp. 2d 1290, 1292 (N.D. Ga. 2014).

Teri argues that Jack's claims are barred as the statute of limitations has run on the claims he asserts under § 523(a). A dismissal under Rule 12(b)(6) on statute of limitations grounds is appropriate only if it is "apparent from the face of the complaint" that the claim is time-barred.  *La Grasta v. First Union Sec., Inc*., 358 F.3d 840, 845 (11th Cir. 2004).

At this point in the proceedings, the only procedurally proper avenue for developing the record more fully is to conduct discovery, which Teri has not done. Teri simply attached all of the Nevada State Court Action pleadings to her Renewed Motion and states in conclusory fashion that

the "facts reflect that Jack Jr knew that Teri was paying the Note to the Sub-Trust in 2014."
Renewed Motion p. 5. Teri also references paragraphs 27 and 28 of the Complaint as determining
when Jack learned that Teri had breached her fiduciary duty to Jack and Jack's SubTrust. Teri is
mistaken. Those paragraphs merely state how Teri funded Jack's SubTrust. Paragraph 52 of the
Complaint expressly states: "In 2018, Jack became aware of Teri's breach of fiduciary duties to
the JGJ Subtrust and to Jack as its sole beneficiary." Complaint ¶ 52.

The Complaint also attaches the Removal Order dated September 27, 2019 entered in the
Nevada State Court Action which was stipulated to by Teri and Jack through their counsel.
Through counsel, Jack and Teri agreed that Teri would resign as the trustee rather than be removed
and Jack would retain his right as a beneficiary to audit or investigate the accounts or
administration of the JGJ Subtrust while Teri was the trustee. Complaint, Ex. B; ¶¶ 58, 60. This
agreed upon stipulated retention of Jack's right to audit or investigate the accounts or the
administration of the SubTrust allows for Jack to pursue his claims against Teri.

This Removal Order was entered on September 27, 2019, which is six months past the
expiration of the statute of limitations asserted by Teri. Taking the facts pled in the Complaint as
true, including exhibits, that Jack learned of Teri's breach of fiduciary duty in 2018 and that Teri
stipulated to Jack's retention of his rights in 2019, Teri's statute of limitations argument cannot
stand. Accordingly, the Court must deny the Renewed Motion.

**<u>ABSTENTION</u>**

A.     **The Court should not permissively abstain from Adjudicating the Adversary
       Proceeding.**

"The doctrine of abstention is an 'extraordinary and narrow exception' to a federal court's
strict duty to adjudicate a controversy properly before it and it 'may be invoked only in those
'exceptional circumstances' in which surrendering jurisdiction 'would clearly serve an important

countervailing interest.'" *Van–Voegler v. Myrtle (In re Myrtle),* 500 B.R. 441, 446 (Bankr. W.D. Va. 2013) (citing *Int'l Coll. of Surgeons v. Chicago,* 153 F.3d 356, 360 (7th Cir.1998)). This adversary proceeding presents a unique situation with a claim for nondischargeability of a debt that involves liquidating the underlying state law claims giving rise to some claims of breach of fiduciary duty.

As to the Established Claims, the debt is already liquidated and no statute of limitations applies. The only issue left for the Court to decide is whether the debt is non-dischargeable. Determining whether a debt is non-dischargeable is within the exclusive jurisdiction of the bankruptcy court; therefore, the Court cannot abstain from adjudicating the dischargeability of the Established Claims. *Dambowsky*, 526 B.R. at 607–08

28 U.S.C. § 1334(c)(1) allows the Court to permissively abstain from hearing a proceeding "arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). Generally, bankruptcy courts may abstain when it "best serves the interest of justice, judicial economy, or comity with state courts."

With regard to the underlying causes of action in the Nevada Claims, the Court has jurisdiction over these issues under the "related to" category. "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784, 788 (11th Cir. 1990) (quoting cases). The Court's determination of the amount of these claims will affect Teri's liabilities and the provisions of any liquidation or reorganization plan.

The next determination is whether the Complaint is a core or non-core proceeding. Pursuant to 28 U.S.C. § 157(b)(2)(I), "determinations as to the dischargeability of particular debt"

is a core proceeding. Section 157(b)(2)(B) provides that "allowance or disallowance of claims against the estate . . ." is a core proceeding. 28 U.S.C. § 157(b)(2)(B). Section 157(b)(3) states that the Court "shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by state law."

"Entering a judgment liquidating the non-dischargeable claims is statutorily "core" under 28 U.S.C. § 157." *In re Dambowsky*, 526 B.R. 590, 606 (Bankr. M.D.N.C. 2015). The bankruptcy courts have statutory authority to hear and determine the amount and extent of any claims asserted to be non-dischargeable. *Id.*

Numerous circuit courts have found that "bankruptcy court, in addition to declaring a debt nondischargeable, has jurisdiction to liquidate the debt and enter a monetary judgment against the debtor." *Morrison v. W. Builders of Amarillo, Inc.* (*In re Morrison*), 555 F.3d 473, 478 (5th Cir. 2009); *Johnson v. Riebesell* (*In re Riebesell*), 586 F.3d 782, 793 (10th Cir. 2009); *Cowen v. Kennedy (In re Kennedy*), 108 F.3d 1015, 1017–18 (9th Cir.1997); *Longo v. McLaren (In re McLaren*), 3 F.3d 958, 965–66 (6th Cir.1993); *Abramowitz v. Palmer,* 999 F.2d 1274, 1278–79 (8th Cir.1993); *N.I.S. Corp. v. Hallahan (In re Hallahan*), 936 F.2d 1496, 1508 (7th Cir.1991).

In the Northern District of Georgia, Judge Diehl held that bankruptcy courts have the authority to liquidate debts and enter final monetary judgments on damages in a dischargeability action because "(i) "determination of the debt lies within the equitable jurisdiction of the bankruptcy court," (ii) a debtor "by filing bankruptcy has consented to jurisdiction of the bankruptcy court over matters necessary to the determination of adversarial [sic] proceedings," and (iii) interests in judicial economy and efficiency empower a bankruptcy court

to "settle both the dischargeability of the debt and the amount of the monetary judgment." *In re Tamri,* 2017 WL 4325564, at *4 (Bankr. N.D. Ga. Sept.27, 2017) (citations omitted).

Because liquidation of a claim is integral to the determination of the non-dischargeability of that claim, "the liquidation of the claim is tied to the core jurisdiction of the bankruptcy court as well because the dispute and its complete resolution invoke the court's equitable jurisdiction. *See Dragisic v. Boricich,* 464 B.R. 335 (Bankr. N.D. Ill. 2011); *In re Carroll,* 464 B.R. 293 (Bankr. N.D. Tex. 2011); *see also Stern v. Marshall,* 131 S. Ct. 2594, 2618 (2011) (the bankruptcy court's jurisdiction extends to actions that "would necessarily be resolved in the claims allowance process")." *In re Neves*, 500 B.R. 651, 659–60 (Bankr. S.D. Fla. 2013).

Judicial economy concerns do not weigh against this Court issuing a final judgment in this case; any underlying state law issues are not complicated; and judicial economy is favored by the Court retaining the case since dischargeability is in the exclusive province of this Court. Abstaining will result in the case returning to this Court on the dischargeability issues. The bankruptcy court has the statutory duty and exclusive jurisdiction to make the determination of whether Plaintiffs' claims are dischargeable. *Dambowsky*, 526 B.R. at 607–08.

## CONCLUSION

The Nevada statute of limitations does not apply to the Established Claims for nondischargeability. Jack and JGJ Subtrust stated a claim upon which relief can be granted in the Complaint. The Nevada Claims also survive Teri's Renewed Motion because the Nevada statute of limitations was tolled and did not begin to run until December 6, 2018 when Jack and the JGJ Subtrust learned of any possible claims against Teri. Teri also waived her right to assert this affirmative defense. And, under the motion to dismiss standard,, the Complaint on its face shows that the state statute of limitations began running on December 6, 2018. The Court has jurisdiction

and authority to determine the underlying Nevada Claims as they are core proceedings when intertwined with nondischargeability claims.

The Court should not permissively abstain from deciding the adversary proceeding because it is a core proceeding, the Court has exclusive jurisdiction over the dischargeability claims, and the Court has the authority to liquidate the Nevada Claims.

Wherefore, Jack respectfully asks the Court to deny Teri's Renewed Motion in full, and, in the alternative, should the Court grant the Motion to Dismiss, grant leave to Plaintiffs to amend the Complaint, and grant such other relief to Plaintiffs as the Court deems just and proper.

This 1st day of February 2023.

/s/Will Geer_____
Will Geer
Georgia Bar No. 940493
Ceci Christy
Georgia Bar No. 370092
Rountree, Leitman, Klein & Geer, LLC
Century Plaza
2987 Clairmont Road
Suite 350
Atlanta, Georgia 30329
T: 404-856-0540
F: 404-310-3371
wgeer@rlkglaw.com
cchristy@rlkglsw.com
*Attorneys for Jack Galardi*

/s/Garrett Nail_____
Garrett Nail
Georgia Bar No. 997924
Portnoy, Garner & Nail, LLC
3350 Riverwood Parkway
Suite 460

Atlanta, Georgia 30330
T: 404-688-8800
gnail@pnglsw.com
***Attorney for Emelita Sy, as the Trustee of
JGJ SubTrust***

CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing through the Court's CM/ECF system, which

will provide electronic notice to the following parties:

- **Will Bussell Geer**    wgeer@rlkglaw.com,
  notices@nextchapterbk.com;willgeer@ecf.courtdrive.com;2836@notices.ne
  xtchapterbk.com;6717577420@filings.docketbird.com;geer.willb117921@no
  tify.bestcase.com;kmoore@rlkglaw.com
- **Louis G. McBryan**    lmcbryan@mcbryanlaw.com,
  alepage@mcbryanlaw.com
- **Garrett A. Nail**    gnail@pgnlaw.com

Dated: February 1, 2023

/s/ Will Geer

Will Geer

Georgia Bar No. 940493

wgeer@rlkglaw.com